CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff / Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant / Counterclaim Plaintiff.* | § | 116th JUDICIAL DISTRICT |

### ORDER ON PLAINTIFF/COUNTERCLAIM DEFENDANT WATTSTOCK, LLC'S MOTION TO COMPEL DISCOVERY RESPONSES

Before the Court is Plaintiff/Counterclaim Defendant Wattstock, LLC's Motion to Compel

Discovery Responses, filed November 24, 2020 (the "Motion"). The Court, having considered the Motion

and Defendant/Counterclaim Plaintiff Alta Power, LLC's Response (filed December 31, 2020), together

with any arguments of counsel and evidence presented at the January 6, 2021 hearing on the Motion and

the contents of the Court's file for this matter, is of the opinion that the Motion should be:

☐ **GRANTED** and all objections raised by Alta Power, LLC ("Alta") are **OVERRULED;** or

☐ **GRANTED IN PART AND DENIED IN PART** as follows:

- Interrogatory No. 2
  - ○ ___✓___ **GRANTED** and all objections raised by Alta are **OVERRULED;**
  - ○ _____ **DENIED.**
  *and Alta is to provide general information as to what steps were taken to secure financing.*

- Interrogatory No. 5
  - ○ ___✓___ **GRANTED** and all objections raised by Alta are **OVERRULED;**
  - ○ _____ **DENIED.**

- Interrogatory No. 6
  - ○ ___✓___ **GRANTED** and all objections raised by Alta are **OVERRULED;**
  - ○ _____ **DENIED.**

- Request for Production No. 7
  - ○ ___✓___ **GRANTED** and all objections raised by Alta are **OVERRULED;**
  - ○ _____ **DENIED.**

8172317

- Request for Production No. 10
    - ○ _____ GRANTED and all objections raised by Alta are **OVERRULED**;
    - ○ ✓ **DENIED**.
- Request for Production No. 12
    - ○ ✓ GRANTED and all objections ~~raised by Alta are OVERRULED;~~ *Were withdrawn by Counsel for Defendant; Defendant May redact the name's equity holders*
    - ○ _____ **DENIED**.
- Request for Production No. 13
    - ○ ✓ **GRANTED** and all objections raised by Alta are **OVERRULED**;
    - ○ _____ **DENIED**.
- Request for Production No. 14
    - ○ ✓ GRANTED ~~and all objections raised by Alta are OVERRULED;~~
    - ○ ✓ DENIED *only as to statement of member's equity, otherwise Granted*
- Request for Production No. 16
    - ○ _____ GRANTED and all objections raised by Alta are **OVERRULED**;
    - ○ ✓ **DENIED**.

IT IS ORDERED that Alta is **COMPELLED** to provide a complete response to the foregoing interrogatories consistent with this Court's rulings on or within ten (10) days of the date of this Order.

IT IS FURTHER ORDERED that Alta is **COMPELLED** to produce all non–privileged documents in its possession, custody, or control responsive to the foregoing requests for production consistent with this Court's rulings on or within ~~ten (10)~~ *twenty-one (21)* days from the date of this Order.

Signed this **6**th day of January, 2021.

_____
JUDGE PRESIDING

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff / Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant / Counterclaim Plaintiff.* | § | 116th JUDICIAL DISTRICT |

## **PROTECTIVE ORDER**

In order to preserve the rights of litigants in these proceedings to claim confidentiality of certain documents to be produced in this litigation by the parties, the Court orders as follows:

1. Terms.

   a. "Confidential Information" means information that constitutes a trade secret or reveals confidential research, development, or commercial information. Confidential Information does not include information that has been disclosed in the public domain.

   b. "Highly Confidential Information" means Confidential Information that any party, in good faith, believes to be particularly or especially sensitive and confidential, including, without limitation, trade secrets, data compilations, standard operating procedures, and/or methodologies and that would provide any other party in the litigation with an unfair advantage in the marketplace. Such information is to be viewed ONLY by a receiving party's counsel and is not to be shared with counsel's clients or others not within the scope of counsel's immediate legal team.

   c. "Protected Documents" means materials, documents or discovery responses containing Confidential Information or Highly Confidential Information disclosed or produced by any party in this litigation.

   d. "Confidential Material" means any document(s) claimed pursuant to Section 2(a) or (b) of this Order and any Confidential Information or Highly Confidential Information claimed to be contained therein, to the extent allowed by this Order.

2. Designation.

    a.  A document (or portion of a document) that a party determines in good faith to be a Protected Document may be claimed as confidential or highly confidential by (1) stamping the term "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the document, or (2) using any other reasonable method agreed to by the parties. Such stamping shall not obscure any writings on the documents.

    b.  A party may, on the record of a deposition or by written notice to opposing counsel not later than seventy-two hours after receipt of the deposition transcript, claim any portion(s) of the deposition as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" based on a good faith determination that any portions so claimed constitute a Protected Document. To the extent possible, any portions so claimed shall be transcribed separately and marked by the court reporter as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as appropriate.

    c.  By claiming a document Confidential Material pursuant to Section 2(a) or 2(b), a party represents that it has made a bona fide, good faith determination that the document does, in fact, contain Confidential Information or Highly Confidential Information.

3. Challenge to Claim.

    a.  Any party may challenge a claim made under Section 2(a) or 2(b) by written notice of its objection to counsel for the claiming party or non-party. Challenge to a claim made under Section 2(b) may be made either upon the record of the deposition or as provided in the preceding sentence.

    b.  In the event a claim is challenged, the party requesting confidential treatment will move for an appropriate ruling from the Court. The material shall be treated as Confidential Material until the expiration of twenty days if no motion is made by the party requesting confidential treatment (at which time the material shall no longer be treated as Confidential Material), or, if a motion is made, until the Court rules.

    c.  A party shall not be obligated to challenge the propriety of the designation of documents as Confidential Materials at the time of designation, and failure to do so shall not preclude a subsequent challenge to the designation.

    d.  In the event of a successful challenge to any Confidential Material, the Court shall have the discretion to award reasonable and necessary attorneys' fees incurred in pursuing the challenge to the challenging party.

4. Use of Confidential Material Limited.

Confidential Material shall be treated as confidential and used (1) by counsel in this case solely for the litigation of this case or (2) by counsel in other

actions arising out of the same or similar set of facts, transactions, or occurrences that are asserted in the petition filed in this case solely for the litigation of such actions. Except as set forth in Section 6, Confidential Material shall not be revealed without the express written consent of the party claiming same as Confidential Material or upon written order of the Court.

5. Not Applicable to Trial.

This Order shall not apply to the disclosure of Protected Documents or the information contained therein at the time of trial, through the receipt of Protected Documents into evidence or through the testimony of witnesses. The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the Court. These issues may be taken up as a separate matter upon the motion of any party in compliance with Rule 76a TRCP.

6. Permitted Disclosures.

Confidential Material may be shown, disseminated, or disclosed only to the following persons:

a.    *The Court*—Any party may disclose and submit CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION to the Court, including all persons employed by the Court.   Any CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, and information derived therefrom, which are filed with the Court shall be filed in accordance with the following procedure: The party filing any paper which reflects, contains or includes any material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" subject to this Protective Order shall also file shall file the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material in a sealed envelope bearing a statement substantially in the following form until such time as this Court has considered the motion: "This envelope contains material subject to a Protective Order of this Court. Pursuant to the Protective Order, proceedings have been initiated according to the TRCP. The contents of this envelope should not be disclosed, revealed or made public."

b.    *Outside Counsel*—CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION may be disclosed to outside counsel for the parties in this action, including counsel's employees and outside contractors used to perform clerical functions.

c.    *Receiving Parties*—CONFIDENTIAL INFORMATION may be disclosed (1) to in-house counsel and (2) to other employees of a Receiving Party

whose participation in the prosecution or defense of the action, is necessary in the good faith assessment of counsel for the Receiving Party.

d.   *Expert Witnesses*—CONFIDENTIAL INFORMATION may be disclosed to outside experts retained to work on this action, including employees of such experts and persons providing clerical or support services. The Parties agree that before any CONFIDENTIAL INFORMATION is provided to an expert witness, the Receiving Party must obtain written consent from the Producing Party. The parties agree that such persons shall **agree in writing in a form** substantially similar to **Exhibit "A"** attached hereto **in advance of receiving** any CONFIDENTIAL INFORMATION to be subject to its terms.

e.   *Employees And Former Employees Of The Producing Party*—CONFIDENTIAL INFORMATION of the Producing Party may be disclosed by the Receiving Party during any deposition in this action or at trial of the action to any employee of the Producing Party or its affiliates and any former employee of the Producing Party or its affiliates who was employed by the Producing Party or its affiliates (1) on the date the document was prepared or dated, or (2) on the dates to which the information relates. Such information may also be disclosed to any attorney representing such person at his or her deposition.

f.   *Non-parties*—CONFIDENTIAL INFORMATION may be disclosed during any deposition in the action or at trial of the actions to a non-party witness (and any attorney representing such person at his or her deposition) so long as the non-party and its attorney execute Exhibit A attached to this order. By way of contrast, HIGHLY CONFIDENTIAL INFORMATION may not be disclosed to non-parties and in the event a non-party becomes a party, HIGHLY CONFIDENTIAL INFORMATION designated may not be provided to non-parties without express permission of the Producing Party.

g.   *Court Reporters*—CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION may be disclosed to court reporters rendering court reporting services for depositions or the trial in the Civil Actions, including the employees of such court reporters.

7. Agreement by Recipients.

> Before being given access to Confidential Material, each person described
> in paragraph 6(b), (c) or (e), shall be advised of the terms of this Order,
> shall be given a copy of this Order, and shall sign a copy of Exhibit "A."

8. Retention of Jurisdiction by Court.

> This Court shall retain jurisdiction to make amendments, modifications, and
> additions to this Order as the Court may, from time to time, deem appropriate,
> as well as to resolve any disputes.

9. Production Not a Waiver.

> The Production of Confidential Material pursuant to this Order is not intended
> to constitute a waiver of any privilege or right to claim the trade secret or
> confidential status of the documents, materials, or information produced.

10. Public Health and Safety.

> Nothing in this Order is intended to prevent any party from raising with the
> Court any concern that the non-disclosure of certain Confidential Material
> may have a possible adverse effect upon the general public health or safety,
> or the administration or operation of government or public office.

This Order does not seal Court Records in this case and is only intended to
facilitate the prompt production of discovery materials. Any motion to seal Court Records
must strictly adhere to Rule 76a, TRCP. No determination is being made by the Court at
this time that these documents are confidential or entitled to protection. Such issues are
reserved and will be ruled upon pursuant to this Order and any applicable notice and
hearing provisions. This Order merely provides a framework for the parties to claim such
materials as confidential to preserve their right to seek protection for these documents as
confidential proprietary information, and to preserve such issues for ruling until each
party may prepare their appropriate arguments on these issues.

Signed this the 6th day of January , 2020.

_____
Judge Presiding,
116th District Court

CAUSE NO. DC–20–08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff / Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant / Counterclaim Plaintiff.* | § | 116th JUDICIAL DISTRICT |

## **EXHIBIT A**

The undersigned states subject to the penalties of perjury:

1. I have been retained by a party to this litigation or by a party's counsel of record to offer analysis or advice, either as an expert witness or consultant.

2. I have been furnished a copy of the Protective Order entered in this case restricting the use of Confidential information.

3. I promise to abide by the Protective Order with respect to Confidential documents and information furnished to me in this litigation.

4. As a condition to receipt of Confidential documents and information in this litigation, I consent to personal jurisdiction over me in the 116th Judicial District Court, solely for the purpose of enforcing the Protective Order.

Signed: _____

Dated: _____

_____
Printed Name

_____
Address

_____
City, State, Zip

PROTECTIVE ORDER - Page 7 of 7
8077052v3 (72553.00002.000)

FILED
2/10/2021 3:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>      Plaintiff/Counter Defendant, | IN THE DISTRICT COURT OF |
| v. | DALLAS COUNTY, TEXAS |
| ALTA POWER LLC,<br>      Defendant/Counter Plaintiff. | 116th JUDICIAL DISTRICT |

## ALTA POWER LLC's UNOPPOSED MOTION
## FOR LEAVE TO JOIN ADDITIONAL PARTY

Pursuant to Paragraph Six of the Court's August 21, 2020 Scheduling Order, Defendant/Counter-Plaintiff Alta Power LLC ("Alta Power") respectfully submits this Unopposed Motion for Leave to Join Additional Party. Plaintiff/Counter-Defendant WattStock LLC ("WattStock") is unopposed to this Motion.

WattStock commenced this action against Alta Power on June 16, 2020. (WattStock's Original Petition.) On September 30, 2020, Alta Power requested permission to replace its previous counsel with Jordan, Lynch & Cancienne PLLC. (Unopposed Motion to Withdraw and Substitute Counsel.) The Court granted Alta Power's Motion on October 5, 2020, and Jordan, Lynch & Cancienne appeared as counsel of record for the first time on October 7, 2020. (*See* Order Granting Motion to Withdraw and Substitute Counsel; Notice of Appearance of Jordan, Lynch & Cancienne PLLC.)

Since appearing for the first time in October, Alta Power's new lawyers have determined that General Electric International, Inc., d/b/a GE Power Services ("GE") is also responsible for the injuries outlined in Alta Power's counterclaims. Accordingly, good cause exists to join GE as a party and Alta Power respectfully requests the Court's permission to amend its counterclaims and join GE as a party to this matter.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By:    *Michael Cancienne*
      Michael Cancienne
      State Bar No. 24055256
      Kevin Jordan
      State Bar No. 11014800
      Joseph W. ("Jeb") Golinkin II
      State Bar No. 24087596
      1980 Post Oak Blvd., Suite 2300
      Houston, Texas 77056
      Telephone:  713.955.4025
      Facsimile:  713.955.9644
      mcancienne@jlcfirm.com
      kjordan@jlcfirm.com
      jgolinkin@jlcfirm.com

ATTORNEYS FOR ALTA POWER LLC

## CERTIFICATE OF CONFERENCE

Counsel for Alta Power conferred with counsel for WattStock regarding this Motion on February 9, 2020, at which time counsel for WattStock indicated that WattStock was unopposed to this Motion.

      */s/ Michael Cancienne*
      Michael Cancienne

2

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the above and foregoing was transmitted to all counsel of record via the Court's electronic filing system on February 10, 2021.


_/s/ Michael Cancienne_
Michael Cancienne

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Linda Thomas on behalf of Michael Cancienne
Bar No. 24055256
lthomas@jlcfirm.com
Envelope ID: 50546214
Status as of 2/12/2021 8:34 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 2/10/2021 3:09:24 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 2/10/2021 3:09:24 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 2/10/2021 3:09:24 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 2/10/2021 3:09:24 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 2/10/2021 3:09:24 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 2/10/2021 3:09:24 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 2/10/2021 3:09:24 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 2/10/2021 3:09:24 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 2/10/2021 3:09:24 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 2/10/2021 3:09:24 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 2/10/2021 3:09:24 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 2/10/2021 3:09:24 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 2/10/2021 3:09:24 PM | SENT |
| Connie Nims | | cnims@krcl.com | 2/10/2021 3:09:24 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kevin Jordan | | kjordan@jlcfirm.com | 2/10/2021 3:09:24 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 2/10/2021 3:09:24 PM | SENT |

CAUSE NO. DC-20-08331

WATTSTOCK LLC,                                    IN THE DISTRICT COURT OF

    Plaintiff/Counter Defendant,

v.                                               DALLAS COUNTY, TEXAS

ALTA POWER LLC,

    Defendant/Counter Plaintiff.                 116th JUDICIAL DISTRICT

## ~~PROPOSED~~ ORDER

After considering Alta Power, LLC's ("Alta Power") Unopposed Motion for Leave
to Join Additional Party, and all arguments of counsel, the Court is of the opinion that the Motion
should be GRANTED.

SIGNED on the 15th day of Feb. , 2021.

_____
~~JUDGE~~ PRESIDING

FILED
2/24/2021 5:40 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC. <br>     *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC, <br>     *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | DALLAS COUNTY, TEXAS |
| WATTSTOCK LLC <br>     *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES <br>     *Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## ALTA POWER LLC'S FIRST AMENDED ANSWER AND COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION

Alta Power LLC ("Alta Power") files this First Amended Answer and Counterclaim and Original Third-Party Petition against Counter-Defendant WattStock LLC ("WattStock") and Third-Party Defendant General Electric International, Inc., d/b/a GE Power Services ("GE") and would respectfully show as follows:

### I.      SUMMARY OF ACTION

1.      This case is necessitated by repeated misrepresentation made by GE and WattStock to Alta Power concerning GE/WattStock's relationship, capabilities, and program to entice Alta Power to use GE/WattStock as the source of used aeroderivative gas turbines.

2.      Alta Power was created to develop power assets that would provide additional power capacity to the Texas energy grid when the grid was overburdened. As part of

this, Alta Power intended to purchase and place into service used aeroderivative gas turbines (essentially jet engines on skids) that can quickly turn on and off to meet instances where power demand exceeds available power supply. During these periods of excess demand, power prices are highest.

3.     GE was eager to participate in the used gas turbine market, a segment in which it historically had no presence. GE, however, did not want to be involved in the work of actually acquiring and selling the used turbines. Instead, GE engaged former GE employees who started WattStock to act as its sales force and point of entry into the used gas turbine market.

4.     Starting in 2018, GE and WattStock persuaded Alta Power to purchase used GE aeroderivative gas turbines, marketing the units as both more reliable and cost competitive, similar to the "Certified Pre-Owned Mercedes Benz®" program. Critically, Alta Power relied on GE's and WattStock's representations regarding the nature of the WattStock/GE relationship, the total acquisition cost of used units, and the benefits of GE's "OEM certified program." Ultimately, Alta Power agreed to move forward with WattStock/GE.

5.     GE's and WattStock's representations were false and have caused Alta Power to miss opportunities in the marketplace. Instead of the benefits claimed by GE and WattStock, Alta Power put money into potential units that were never going to fit their budgetary requirements because the units were either (1) burdened by undisclosed liabilities related to GE's "Long Term Services Agreements," (2) were prohibitively expensive for refurbishment by GE, or (3) were not available as marketed. Simply put, the acquisition costs and the benefits lauded by GE and WattStock were false.

6.     GE and WattStock's breaches of contract and tortious conduct caused Alta Power to lose more than one hundred million dollars of essential financing, profits related to its

business, and millions in payments to GE and WattStock for undelivered equipment and phantom services. After investing millions, Alta Power has nothing to show for what it has paid to GE and WattStock.

## II.      DISCOVERY CONTROL PLAN

7.      Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

## III.      PARTIES

8.      Alta Power is the Defendant in this case originally filed by WattStock, the original Plaintiff and Counter-Defendant. Both Alta Power and WattStock have already appeared.

9.      Third-Party Defendant GE is a company incorporated under the laws of Delaware doing business in Texas and can be served with Citation through its registered agent in Texas, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## IV.      VENUE AND JURISDICTION

10.      This Court has personal jurisdiction over WattStock related to Alta Power's claims as WattStock originally filed this case. This Court has personal jurisdiction over GE because a substantial amount of the acts giving rise to Alta Power's causes of action arose in Texas.

11.      Venue is proper in Dallas County, Texas under Section 15.002 of the Texas Civil Practice & Remedies Code because all, or a substantial part of the events or omissions giving rise to the claims against WattStock and GE, occurred in Dallas County and WattStock's principal place of business is in Dallas County, Texas.

12.      As required by Rule 47(b) of the Texas Rules of Civil Procedure, Alta Power seeks monetary relief of more than $1,000,000. Alta Power also seeks pre-judgment and post judgment interest at the highest legal rate.

## V.    GENERAL DENIAL

13.    Alta Power denies all the allegations set forth in WattStock's Original Petition and any subsequent amended petition and demands strict proof thereof as required by the laws of Texas.

## VI.    AFFIRMATIVE DEFENSES

14.    Alta Power asserts the following affirmative defenses:

a.  WattStock's claims are barred because of WattStock's material breaches of the Master Agreement, the LNTP, and the Ethos Authorization; and

b.  WattStock's claim for attorneys' fees fails for lack of presentment.

## VII.    FACTUAL ALLEGATIONS

A.    **Alta Power develops a strategy for meeting peak energy demands.**

15.    Alta Power was established to provide additional capacity to an overloaded energy grid in a creative and profitable manner.

16.    The market for power in Texas has evolved from traditional gas and coal fired power plants to more renewable sources like wind and solar. In 2019, renewable energy sources accounted for about 11% of total U.S. energy consumption and about 17% of electricity generation. Texas now meets 20% of its sizeable electricity demand with wind power.

17.    As electrical providers move towards renewable power production, there are times when the energy grid has more demand than supply. Aeroderivative gas turbine "peaker plants" have become imperative to meet this imbalance since these plants turn on quickly—in less than 10 minutes.

18.    Pricing for this "peak demand" power is often at a premium and can be sold under long-term contracts with investment grade counterparties. Alta Power determined that

peaker plants could help meet this demand, profitably for Alta Power if Alta Power could acquire aeroderivative gas turbines at a competitive price and locate them appropriately.

19.     Because of the high cost of new aeroderivative gas turbines, Alta Power's strategy relied on acquiring used aeroderivative gas turbines, which was the only way to make the projects work within the required budget.

20.     Developing natural gas-fired peaker projects is a complex process, including (1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing.

21.     This complexity, along with relatively high entry costs, means that there were only a few companies competing with Alta Power. However, given the limited size of the market, being a first mover was critical.

22.     By April 2018, Alta Power had identified several potential project sites through an extensive vetting process based on prevailing market conditions. Through this work, Alta Power earned a head start on its competitors and found itself with a brief window during which it would be the first mover in this niche market.

23.     At this point Alta Power turned to identifying surplus aeroderivative gas turbines units, which, once contractually secured, would allow it to obtain project financing.

**B.      GE and WattStock's Partnership**

24.     GE is one of the limited suppliers of aeroderivative gas turbines.

25.     GE historically has not had a presence in the sale of used aeroderivative gas turbines but recognized a need to be present in this market at some point prior to 2018. As such,

GE partnered with WattStock, a group of former GE executives. WattStock marketed itself (along with GE) as a fully integrated locator, dealer, refurbisher, and servicer of used aeroderivative gas turbines. WattStock markets itself as a unique solution in the used aeroderivative gas turbines, and as the only authorized distributor of used GE aeroderivative gas turbines.

26.    In reality, GE intended for, and held out WattStock to be, the *de facto* sales force in the used aeroderivative gas turbine market for GE. GE and WattStock work "hand-in-hand" as "partners" to provide the "TRUEPACKAGE™" or Certified Turbine Power—CTP™[1] system, "[t]he only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry."[2]

27.    GE and WattStock entered in a Memorandum of Understanding ("MOU") on June 26, 2018 that "outlines" their relationship. The MOU establishes that GE is in complete control, especially in the context of transactions related to aeroderivative gas turbines originally manufactured by GE.

28.    Consistent with their relationship, GE and WattStock held themselves out publicly and privately as "partners" both orally and in writing.

## C.    GE directs Alta Power to WattStock

29.    In 2018, Alta Power began to determine which used aeroderivative gas turbines would best suit its needs. Availability and total acquisition costs were key drivers in its decision on which aeroderivative gas turbines to select. Because the used aeroderivative gas turbines must be refurbished, acquisition costs necessarily include the costs associated with

---

[1]    GE/WattStock uses the TRUEpackage™ descriptor on GE's Website and CTP™ on WattStock's website. *See*    https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions    and https://www.WattStock.com/ctp.

[2]    https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions.

purchasing the units, the costs of refurbishment, and the costs associated with placing the unit at the location and into service.

30.     After sharing these considerations with GE and WattStock, and after meetings with GE, WattStock and others, Alta Power determined that used GE LM6000 aeroderivative turbine packages were best suited for Alta Power's strategy of tapping into the niche peaker plant market in Texas based on assurances from GE and WattStock.

31.     GE/WattStock were not the only companies that marketed used and refurbished GE LM6000s. Indeed, Alta Power met with several GE "certified" companies that refurbished used aeroderivative gas turbines. None, however, offered a fully OEM-certified and warranted end-to-end product like the TRUEpackage$^{TM}$, which GE/WattStock marketed as their "exclusive" service offering of being the "only authorized OEM certified preowned package offering in the industry."

32.     Alta Power had several meetings with both GE and WattStock personnel mainly at GE's Jacintoport facility where WattStock is co-located. To protect Alta Power's confidential information concerning its unique strategy, the parties entered into a Confidentiality Agreement.

33.     During these meetings, Alta Power disclosed to GE/WattStock the detailed budgetary requirements of Alta Power's business model. Alta Power repeatedly emphasized the cost sensitivity of its projects; that is, the cost of the gas turbine units cannot exceed a certain price point if the project is to remain within budget and financeable. GE and WattStock repeatedly confirmed that used units could be obtained for the prices Alta Power needed.

34.     GE/WattStock also persuaded Alta Power that its exclusive TRUEpackage$^{TM}$ OEM warranty was superior to anything offered in the market because GE would

provide an end-to-end package warranty covering both the aeroderivative gas turbine and the electrical generation components. GE/WattStock further stated that other competitors could only warrant a portion of the package.

35.     During these meetings, GE and WattStock described themselves as "partners." GE made it clear that the only way Alta Power could obtain the TRUEpackage$^{TM}$ equipment certification and warranty was by working with the GE and WattStock partnership.

36.     Specifically, GE refused to provide equipment certifications and warranties without WattStock.

37.     In addition to the pricing and warranties, GE and WattStock knew time was of the essence for Alta Power, as competitors were also attempting to enter the market. GE made it clear that delivery could occur within the time frame required by Alta Power's plans if Alta Power used the GE/WattStock TRUEpackage$^{TM}$ program.

38.     GE/WattStock emphasized that (1) GE had a proprietary global database of used LM6000 units including the operational and maintenance history on each, and (2) only GE and WattStock had access to this "proprietary" database. This "proprietary" data was a key selling point for Alta Power.

39.     GE/WattStock represented that GE and WattStock could efficiently locate used units, generate a detailed refurbishment scope, and cost estimate and streamline the acquisition, refurbishment, and delivery process all within Alta Power's required budget.

**D.     WattStock and Alta Power enter into a "Master Agreement."**

40.     Based on the representations concerning the benefits of the TRUEpackage$^{TM}$ program, including, (1) the benefits from GE and WattStock "collaborating" as "partners;" (2) the ready availability of used units that met Alta Power's project budget; (3) the

ability to timely close purchases and refurbish units; and (4) the "benefits" of the warranty with respect to the overall economics of the project, Alta Power agreed to move forward with GE/WattStock for the acquisition of used GE aeroderivative gas turbines to effectuate Alta Power's unique strategy.

41.     Through their discussions, GE and WattStock were keenly aware of the specific unit price requirements of Alta Power, and GE and WattStock assured Alta Power on multiple occasions that sufficient suitable units were available.

42.     The parties began negotiating financial and contractual terms for the relationship in February 2019. At GE's insistence, Alta Power contracted directly with WattStock. GE/WattStock required that WattStock (with GE standing behind it) negotiate the purchase price of each used GE aeroderivative unit with the prior owner and acquire the unit in WattStock's name for an agreed not to exceed price. GE/WattStock presented Alta Power with detailed total cost estimates for each unit showing that if each unit identified could be acquired at or below the "not to exceed price," then the fully refurbished unit could be delivered within Alta Power's budgetary requirements.

43.     The parties also agreed that in the event Alta Power paid any amounts prior to the units being acquired, those interim payments would be credited towards the purchase price Alta Power ultimately agreed to pay.

44.     GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world. GE and WattStock caused Alta Power to believe that WattStock had the financial resources to pay for the units or complete the necessary steps leading to GE's certification under the TRUEpackage$^{TM}$ OEM program.

45.     On February 27, 2019 WattStock and Alta Power entered into a "Master
Agreement" confirming the negotiations concerning how WattStock would be reimbursed for out-
of-pocket expenses and as part of a negotiated purchase price after WattStock purchased and
refurbished the used units. At no point was WattStock to be paid any mark-up on "down payments"
made by Alta Power or on any out-of-pocket expenses for which Alta Power reimbursed
WattStock.

46.     While not a named party to the Master Agreement, GE is an "affiliate" or
"representative" of WattStock and, therefore, a party to the Master Agreement.

47.     In the Master Agreement, Alta Power and GE and WattStock agreed to a
very strict confidentiality provision. GE/WattStock agreed to hold confidential information in
"strict confidence" and agreed such information would "not be disclosed in any manner
whatsoever." The Master Agreement also contains an exclusivity and non-circumvention
provision under which WattStock (and by extension, GE) agreed that neither WattStock nor GE
would directly or indirectly cause another person to either attempt to or purchase a unit inspected
on behalf of Alta Power (a service for which Alta Power paid).

48.     Additionally, the confidentiality provision required WattStock and GE not
to use any information obtained for any other purpose other than the agreed "business purpose,"
including but not limited to, providing any product or service, or establishing a relationship that is
competitive with or against the best interest of Alta Power.

49.     Under the "Master Agreement," the parties also agreed that Alta Power
would reimburse WattStock for specific out-of-pocket expenses incurred in arranging inspection
and evaluation of the condition of used aeroderivative gas turbines, with prior written approval
needed for expenditures more than $20,000.

**E.**     **WattStock and GE's misrepresentations continue.**

50.     Fully cognizant of the pricing sensitivities of Alta Power's projects, GE/WattStock presented Alta Power with financial information for the acquisition of available units.

51.     The knowledge of the availability of units was largely driven by GE's data. The financial information related to the acquisition of units included WattStock's own estimates based on its "experience" and data from GE based on GE's own data and detailed refurbishment pricing models for each unit.

52.     In February 2019, Pete Watson, WattStock's Vice President of CTP Operations, travelled to Turkey to begin inspections and negotiations on used GE aeroderivative gas turbine units. This was done at Alta Power's expense pursuant to the Master Agreement.

53.     Several used GE aeroderivative units were available in Turkey because changes in Turkish governmental regulations made the units uneconomical in country. In March 2019, WattStock presented Alta Power price and purchase options for nine used GE units based in Turkey.

54.     What WattStock and GE did not tell Alta Power was that the presented prices of the units were not the true prices. All the units GE/WattStock persuaded Alta Power to spend money on were burdened by hidden liabilities. Many of the potential units were significantly more expensive than represented because GE had Long Term Service Agreements ("LTSA") carrying hefty termination fees with the prior owners seeking to sell the used LM6000 aeroderivative gas turbine units. Units not burdened by LTSAs had other material undisclosed liabilities – all of which were driven by internal GE policies.

55.     These LTSAs generally required the prior owner pay GE millions of dollars to terminate. GE/WattStock failed to disclose the existence of these LTSA financial burdens to Alta Power up front. In fact, the LTSA termination fees were not disclosed until after (1) the units were targeted, (2) a purchase agreement was executed between the owners and WattStock, and (3) Alta Power paid WattStock millions of dollars in down payments associated with these purchase agreements.

56.     It was not until almost nine months after Alta Power had paid the first down payment that Alta Power learned of the existence of the LTSA termination fees. In February 2020, one of the sellers of two units, a Turkish company called Nuh Cemento, began demanding reimbursement for the LTSA termination fees to be paid GE in addition to the agreed upon purchase price. GE ultimately refused to waive the LTSA termination fee unless Alta Power entered into a multi-million dollar service agreement with GE. As a result, the project was burdened by expenses materially above Alta Power's project budgets.

57.     GE/WattStock were aware of the undisclosed termination fees before suggesting the Nuh Cemento units be targeted for acquisition. GE/WattStock knew adding the undisclosed termination fees would make the prices of those units higher than Alta Power's project budget. Utilizing a classic "bait and switch move," GE/WattStock deliberately hid the existence of the termination fees in the hope Alta Power would have no choice but to pay them at the 11th hour after Alta Power's project financing had been secured and the projects were already well underway.

58.     Prior to learning of the true cost of these units due to the undisclosed associated liabilities, Alta Power, relying on GE and WattStock, moved throughout 2019 and into 2020 attempting to purchase the two Nuh Cemento units.

59.    WattStock also improperly marked up Alta Power's down payment that would have never been made had Alta Power known the true price of the Nuh Cemento units. Per the terms of the Master Agreement, WattStock entered Equipment Purchase Agreements with Nuh Cemento. When WattStock sent an invoice to Alta Power for the $250,000 down-payment, WattStock added a "mark-up" of $125,000. Alta Power refused to pay the "mark-up" since it was inconsistent with the Master Agreement. Recognizing it had no entitlement to these funds, WattStock did not reiterate its demand for payment until litigation between the parties became imminent.

60.    WattStock, GE, and Alta Power identified an additional unit in Turkey owned by a Turkish company called Acarsoy.

61.    As with the Nuh Cemento units, WattStock/GE failed to disclose that the Acarsoy unit was burdened with a multi-million-dollar LTSA termination fee, which was not included in the pricing presented to Alta Power.

62.    Like with Nuh Cemento, Alta Power paid $475,000 in down payments related to this unit, unaware of the true cost of the unit. Alta Power would never have done so had GE/WattStock disclosed the liabilities associated with the unit which rendered it uneconomical for Alta Power's projects.

63.    Once again, WattStock even attempted to mark-up this down payment (as they did with every other payment from Alta Power) despite having no contractual basis to do so. Alta Power rebuffed these attempts, and WattStock recognized it had no basis for payments, and did not request the payments again until just before the filing of its lawsuit against Alta Power.

64.    In addition to units made uneconomical by LTSAs, WattStock also marketed units that were uneconomical for other reasons.

ALTA POWER LLC'S FIRST AMENDED ANSWER AND
COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION - PAGE 13

65.     In May of 2019, WattStock informed Alta Power of the existence of a package owned by EthosEnergy. WattStock suggested Alta Power purchase the package from EthosEnergy, claiming demand for the package was high. The "package" was essentially the housing for the aeroderivative gas turbine.

66.     GE and WattStock represented that Alta Power could obtain a gas turbine engine from the GE lease pool to marry with the EthosEnergy package and claimed a similar housing was available in Panama and could also easily be married with a lease pool engine.

67.     GE/WattStock claimed these leased units with the purchased housings would lead to a significantly lower price for Alta Power.

68.     Based on these representations, Alta Power purchased the EthosEnergy package for $200,000.

69.     When WattStock sent an invoice for this purchase, it marked up the purchase price initially by $175,000 and then later by $115,000.

70.     Once again Alta Power refused to pay the mark-up, as there was no contractual basis for such a mark-up. Indeed, the contractual relationship between Alta Power and WattStock contemplated that this package would not be marked up.

71.     GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition and was only suggested as a possibility so that GE/WattStock could increase their revenue stream for providing repairs. Furthermore, several months later when Alta Power inquired about the possibility of cost savings using the previously promised lease pool engines, WattStock and GE informed Alta Power that "that program was no longer being offered."

72.     Had GE/WattStock disclosed the true condition of the EthosEnergy unit or the unavailability of the lease pool, Alta Power would not have purchased the Ethos unit at any

price. Furthermore, WattStock still has possession of the EthosEnergy unit, despite having been paid for it.

73.    WattStock convinced Alta Power to make a down payment for a unit owned by a company in Turkey called Bosen. As with all other units, WattStock and GE represented that the delivered unit would be priced consistent with Alta Power's needs.

74.    Alta Power put $300,000 dollars down for the purchase of the Bosen unit. Alta Power was later informed that GE/WattStock would not service units containing non-GE components unless the non-GE components were first replaced—regardless of their condition.

75.    The Bosen unit contained non-GE components and as a result the "new" purchase price including the refurbishment work which was several million dollars higher than previously represented by GE/WattStock and the unit was uneconomical for Alta's projects.

**F.    WattStock scuttles Alta Power's efforts at financing.**

76.    Throughout 2019, Alta Power discussed potential financing options for its power project. Alta Power reached out to several sources of funding. In the summer of 2019, Alta Power identified its best source of funding for the purchase of the nine aeroderivative units: Deutsche Bank.

77.    Alta Power engaged in negotiations with Deutsche Bank concerning financing for its unique peaker plant strategy. As part of its due diligence, Deutsche Bank requested a meeting with WattStock. WattStock met with Deutsche Bank and during these meetings, WattStock confirmed that GE and WattStock were "partners."

78.    Of course, Deutsche Bank would rely not solely on WattStock's representation that GE and WattStock were "partners." Accordingly, Deutsche Bank formally asked GE to provide appropriate assurances. On July 31, 2019, GE responded to this request in a

letter confirming that if WattStock failed to meet its contractual obligations, GE would step in since GE and WattStock are partners in this venture. GE also confirmed that GE engineering will be overseeing WattStock's work and that GE has a "strong incentive" for the project to succeed.

79.    Sometime before financing was closed, WattStock disclosed to Ryan Castleman of Castleman Power Development LLC ("Castleman"), one of Alta Power's few competitors, that project financing from Deutsche Bank was imminent. Knowing the financing would decrease the available used units in the marketplace and would allow Alta Power's projects to come online first, Castleman predictably attempted to scuttle Alta Power's financing. Specifically, Castleman threatened to file a frivolous "trade secret" lawsuit against Alta Power to stop the financing.

80.    Alta Power was forced to disclose this frivolous claim to Deutsche Bank. Alta Power worked to quickly resolve the frivolous dispute, and ultimately had no choice but to pay Castleman an extortion fee to settle the frivolous claim. But the damage was already done. Castleman's strategy of causing delay to destroy financing worked.

81.    Deutsche Bank decided against providing financing to Alta Power, delaying Alta Power's ability to bring units into service.

**G.    WattStock steals $100,000 from Alta Power to finance WattStock's operations.**

82.    Despite the Deutsche Bank financing falling through, Alta Power remained committed to its unique peaker plant strategy and continued to explore other financing options in the fall of 2019.

83.    By the fall of 2019, GE and WattStock continued to lead Alta Power to believe that the targeted units could be acquired consistent with WattStock and GE's earlier pricing guidance. Because of this, Alta Power continued to fund the potential acquisition of units.

84.     In October 2019, Alta Power sent WattStock $100,000 for potential use in extending an option to purchase units from Bosen. During WattStock's negotiations with Bosen, Alta Power ultimately decided not to go through and told WattStock to cease negotiations. WattStock complied and the parties never entered into an agreement extending the option period with Bosen.

85.     WattStock never sent Alta Power's $100,000 to Bosen since the negotiations were called off before the $100,000 was used.

86.     Alta Power requested the return of the $100,000. WattStock acknowledged the funds would be returned, and repeatedly promised to do so on multiple occasions during the fall and winter of 2019-2020.

87.     WattStock broke these promises. Instead, WattStock converted Alta Power's $100,000 and used it to cover serious cash flow issues, which WattStock had previously failed to disclose to Alta Power and did not disclose until May of 2020.

**H.     WattStock continues to fail to disclose the true costs of units.**

88.     Despite the Deutsche Bank financing falling through, Alta Power was still committed to the development of its projects. Consistent with this and based on WattStock's false representations that other buyers were targeting the Turkish units, Alta Power paid WattStock over $200,000 for extensions to keep alive potential deals with Acarsoy and Nuh Cemento in the fall of 2019.

89.     At no time did WattStock inform Alta Power that the true costs of these units were inconsistent with WattStock's and GE's representations.

90.     During the fall of 2019, Alta Power considered a variety of funding structures, and decided to finance each project separately, rather than approaching potential lenders with a portfolio of three projects.

91.     Consistent with this, Alta Power and WattStock entered a Limited Notice to Proceed Proposal ("LNTP") on December 23, 2019 for two separate units to be acquired from Nuh Cemento. The total amount of the LNTP was almost $20 million. This included the "not to exceed price" of $6.5 million for WattStock to purchase the units from Nuh Cemento that GE/WattStock told Alta Power will be sufficient to purchase the units, with the balance for transportation, refurbishment, and installation of the units. This price included GE/WattStock's profit margin for the project.

92.     GE and WattStock represented to Alta Power that GE needed to be paid $1,500,000 to secure the purchase of long-lead hardware, start engineering activities and deliver preliminary drawings related to a potential TRUEpackage$^{TM}$ project. The $1,500,000 was divided into two payments of $750,000.

93.     Alta Power paid $750,000 on December 24, 2019 and paid another $750,000 on January 13, 2020.

94.     In February 2020, Alta Power was informed for the first time that the owner of the two Nuh Cemento units would only sell the two units for the agreed not to exceed price of $6.5 million **plus** the cancellation of GE's LTSA termination fee of over $1.4 million.

95.     The impact of the cancellation fee materially increased project costs above the previous budget and impacted Alta Power's ability to obtain financing for the project.

96.     For the units being considered (as with the Bosen unit), the significant liabilities were *not* disclosed until *after* Alta Power made the final payment to GE under the LNTP.

97.     By March 2020, the global economy was in the grips of the COVID-19 crisis. This delay impacted the closing of Alta Power's project financing. Regardless, Alta Power remained financially committed to the project and was ready, willing, and able to go forward with the two Nuh Cemento units under the LNTP.

98.     In the spring of 2020 WattStock informed Alta Power it was having financial issues. WattStock asked Alta Power to either provide a loan or acquire WattStock.

99.     During this time, Alta Power requested that GE step in and fulfill its commitment to Alta Power to assist in securing the units needed for Alta Power's project. GE refused.

100.     Alta Power was ready, willing, and able to go forward with the Nuh Cemento project with GE alone. GE refused to allow Alta to pay directly for the LNTP components, despite repeated requests by Alta Power due to concerns regarding WattStock's financial situation. And GE further refused to step in and take over for WattStock (despite contrary written representations) when Alta Power notified GE that WattStock was insolvent.

101.     Alta Power also continued to negotiate with other sources of funding for the Project, including Riverstone and Macquarie.

102.     Despite Alta Power's effort sand GE's prior representations, GE made it clear, once again, that it would only move forward with WattStock, thereby constructively cancelling the LNTP and the Nuh Cemento project.

103.     Consequently, Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market.

# VIII.    CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT (AGAINSTGE AND WATTSTOCK)

104.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

105.    Alta Power seeks a declaratory judgment pursuant to Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.* Alta Power requests the Court to declare that:

    a.  No contractual agreement exists by which WattStock is entitled to "mark-ups" on goods or services.

    b.  GE and WattStock are principal/agent or partners such that GE is responsible for WattStock's torts and breaches.

    c.  As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the Master Agreement, which excuses Alta Power of any further performance.

    d.  As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the December 23, 2019 LNTP.

    e.  GE's refusal to go forward with the Nuh Cemento project once WattStock became insolvent was a breach of the LNTP requiring GE to refund money paid to WattStock/GE by Alta Power.

## COUNT II: RESPONDEAT SUPERIOR (AGAINST GE)

106.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein. GE and WattStock represented to Alta Power that they were "partners" and that WattStock acted as GE's Authorized Service Provider.

107.    Alta Power justifiably relied on these representations by GE and WattStock in agreeing to the Master Agreement and the LNTP.

108.    In fact, without the representations, Alta Power would have never entered any contracts with WattStock.

109.    Accordingly, an ostensible agency existed between WattStock and GE.

110.    GE is estopped from denying liability for WattStock's breaches and torts and/or GE and WattStock engaged in a joint enterprise for which joint and several liability exists.

111.    Despite the fig leaf boiler-plate language in the MOU between GE and WattStock, the language of the MOU shows GE controlled WattStock. Accordingly, the "no partnership or agency" provision is a sham or subterfuge designed to conceal the true legal status of GE/WattStock. Extrinsic evidence also shows actual control by GE over WattStock.

112.    GE is *respondeat superior* liable for the breaches and torts of WattStock.

## COUNT III: BREACH OF CONTRACT (AGAINST WATTSTOCK)

113.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

114.    Alta Power and WattStock entered into the Master Agreement, which is and was a valid and enforceable contract. Alta has standing to sue for breach of the Master Agreement.

115.    Alta Power performed its obligations under the Master Agreement.

116.    WattStock breached the confidentiality provisions of the Master Agreement by disclosing confidential information about Alta Power and its financing to Castleman. WattStock's breach has proximately caused injury to Alta Power. Specifically, WattStock's breach caused Alta Power to lose project financing for its a unique strategy for developing power generation projects in the Texas market.

117.    Had WattStock not breached the confidentiality provisions, Alta Power would have closed financing with Deutsche Bank and been able to implement its unique strategy.

118.    As a direct result of WattStock's breaches, Alta Power has been severely damaged.

119.    Alta Power paid GE/WattStock $1.5 million related to the Nuh Cemento project for GE to acquire long-lead hardware, start engineering activities, and deliver preliminary drawings.

120.    The Master Agreement and LNTP were cancelled due to WattStock's insolvency.

121.    In addition to its liability under the theory of respondeat superior, GE is also vicariously liable for WattStock's breaches of the Master Agreement and LNTP. Consequently, GE must refund to Alta Power the $1.5 million under the contracts between the parties.

122.    To compensate it for the damages outlined above, Alta Power seeks unliquidated damages.

123.    Pursuant to Texas Civil Practice and Remedies Code section 38, Alta Power is entitled to attorney's fees, costs, and expenses, due to WattStock's breach of the agreement.

## COUNT IV: UNJUST ENRICHMENT (AGAINST GE)

124.    Alta Power incorporates each of the foregoing paragraphs as if fully set forth herein.

125.    GE has been unjustly enriched in the amount of $1.5 million to the detriment of Alta Power.

126.    Alta Power demands restitution of all amounts GE has been justly enriched.

## COUNT V: CONVERSION (AGAINST WATTSTOCK)

127.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

128.    In October 2019, Alta Power sent WattStock $100,000 to extend an option to purchase units from Bosen.

129.     Alta ultimately declined to extend the option and instructed WattStock to return the $100,000.

130.     Alta repeatedly demanded that WattStock return the $100,000 during the fall and winter of 2019-2020. WattStock refused (and continues to refuse) to return this money, and thereby assumed and exercised dominion and control over Alta's money in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Alta's rights.

## COUNT VI: TEXAS THEFT LIABILITY ACT (AGAINST WATTSTOCK)

131.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

132.     Alta has a possessory right to the $100,000 it paid WattStock.

133.     WattStock misappropriated and enjoyed these monies knowing full well it was not entitled to same.

134.     All of this was done without Alta's consent. WattStock intended to and did in fact deprive Alta of these monies which led Alta to suffer significant financial damages in an amount to be proven at trial, plus court costs and reasonable and necessary attorney's fees as allowed by the TLA.

## COUNT VII: FRAUD (AGAINST GE AND WATTSTOCK)

135.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

136.     GE and WattStock intentionally misrepresented the nature of their relationship to induce Alta Power to contract with GE/WattStock.

137.     GE represented it would "stand behind" WattStock. However, when the time came to do so GE did not.

138.     Simply put, the pricing provided by GE and WattStock was intentionally misrepresented and did not include the true cost of acquisition of the units. Alta Power relied on these representations to its detriment.

139.     GE had the right under its MOU with WattStock to force WattStock to sell GE any gas turbine purchased pursuant to the TRUE$_{\text{PACKAGE}}$$^{\text{TM}}$ program. In effect, GE had the right to push WattStock aside and ensure that any deal was consummated.

140.     Yet, when WattStock became insolvent GE refused to "stand behind" WattStock and take the necessary steps to consummate the LNTP with Alta Power and Nuh Cemento.

141.     GE/WattStock misrepresented the benefits of the TRUEpackage$^{\text{TM}}$ program.

142.     GE/WattStock represented that the program would enhance the ability to obtain financing when it did not.

143.     GE/WattStock represented that the program would be able to move quickly to service the narrow window Alta Power had for this unique strategy when in fact the GE/WattStock relationship created a bureaucracy that only slowed down projects.

144.     GE/WattStock represented that the TRUEpackage$^{\text{TM}}$ program was of a superior quality when in fact it was not.

145.     GE/WattStock represented that units from the TRUEpackage$^{\text{TM}}$ program were competitively priced with alternative refurbished gas turbine solutions when in fact they were not.

146.     GE/WattStock hid the existence of undisclosed liabilities on virtually every unit suggested using a classic bait and switch maneuver.

147.    GE/WattStock's misrepresentations were material and false.

148.    Both GE and WattStock knew these representations were false when they made them, or at the very least, these representations were made recklessly and without knowledge of their truth.

149.    These representations were made with the intent that Alta Power act on them.

150.    Alta Power relied on GE and WattStock's representations regarding their relationship.

151.    GE and WattStock's misrepresentations caused Alta Power injury well beyond the minimum jurisdictional limits of the Court.

152.    Alta Power has wasted at least $10 million based on GE/WattStock's misrepresentations.

153.    Had GE/WattStock not misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## COUNT VIII: NEGLIGENT MISREPRESENTATION (AGAINST GE AND WATTSTOCK)

154.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

155.    Alternatively, each fraudulent misrepresentation made by GE and WattStock were made negligently since GE/WattStock did not exercise reasonable care or competence in obtaining or communicating the information.

156.    Alta Power has wasted at least $10 million based on GE/WattStock's negligent misrepresentations.

157.    Had GE/WattStock not negligently misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## IX.    JURY DEMAND

158.    Alta Power requests trial by jury on all contested issues of fact. The requisite jury fee has been paid.

## X.    PRAYER

ACCORDINGLY, Alta Power prays that WattStock and GE be cited to appear and answer and that upon a final trial of this matter, the Court enter a final judgment against WattStock and GE awarding Alta Power the following relief:

a)  An award of the full amount of actual damages incurred by Alta Power and caused by the acts and omissions of GE and WattStock;

b)  An award of equitable damages, as requested above;

c)  An award of exemplary damages;

d)  Reasonable and necessary attorneys' fees;

e)  Pre-judgment and post-judgment interest at the maximum rate allowed by law;

f)  Cost of court; and

g)  Such other and further relief, general or special, at law or in equity, to which Alta Power may show itself to be justly entitled.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC


By: /s/ Michael Cancienne
      Michael Cancienne
      State Bar No. 24055256
      Kevin Jordan
      State Bar No. 11014800
      Joseph W. ("Jeb") Golinkin II
      State Bar No. 24087596
      1980 Post Oak Blvd., Ste. 2300
      Houston, Texas 77056
      713.955.4028
      713.955.9644 Facsimile
      mcancienne@jlcfirm.com
      kjordan@jlcfirm.com
      jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER
LLC**


## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above pleading was served on all parties through the Court's electronic filing service on the 24th day of February, 2021.


By:    /s/ Michael Cancienne
       Michael Cancienne

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Baumgartner on behalf of Michael Cancienne
Bar No. 24055256
lbaumgartner@jlcfirm.com
Envelope ID: 50890701
Status as of 2/25/2021 10:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 2/24/2021 5:40:13 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 2/24/2021 5:40:13 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 2/24/2021 5:40:13 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 2/24/2021 5:40:13 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 2/24/2021 5:40:13 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 2/24/2021 5:40:13 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 2/24/2021 5:40:13 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 2/24/2021 5:40:13 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 2/24/2021 5:40:13 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 2/24/2021 5:40:13 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 2/24/2021 5:40:13 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 2/24/2021 5:40:13 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 2/24/2021 5:40:13 PM | SENT |
| Connie Nims | | cnims@krcl.com | 2/24/2021 5:40:13 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 2/24/2021 5:40:13 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 2/24/2021 5:40:13 PM | SENT |

FILED
3/26/2021 3:19 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

**CAUSE NO. DC-20-08331**

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
|     *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
|     *Defendant, Counter-Plaintiff, and* | § | |
|     *Third-Party Plaintiff,* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| WATTSTOCK LLC | § | |
|     *Counter-Defendant, and* | § | |
| | § | |
| GENERAL ELECTRIC | § | 116th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES | § | |
|     *Third-Party Defendants.* | § | |
| | § | |

**<u>NOTICE OF APPEARANCE</u>**

Defendant, Counter-Plaintiff and Third-Party-Plaintiff Alta Power LLC ("Alta Power")
hereby notifies the Court that Jessica Pulliam of the firm Baker Botts LLP, 2001 Ross Avenue,
Suite 900, Dallas, Texas 75201, appears in this action as additional counsel on their behalf. In
connection with this notice, Ms. Pulliam requests that all future pleadings and other papers filed
be served on her at the below address and contact information.

> Jessica Pulliam
> Texas State Bar No. 24037309
> E-Mail: jessica.pulliam@bakerbotts.com
> **Baker Botts L.L.P.**
> 2001 Ross Avenue, Suite 900
> Dallas, Texas 75201
> Telephone: (214) 953-6500
> Facsimile: (214) 953-6503

DATE: March 26, 2021

Respectfully Submitted

By: */s/ Jessica B. Pulliam*_____
Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie Wallace
State Bar No. 24115920
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com

Michael Cancienne
State Bar No. 24055256
Kevin Jordan
State Bar No. 11014800
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
**JORDAN, LYNCH & CANCIENNE PLLC**
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER LLC**

## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above notice was served on all parties through the Court's electronic filing service on the 26th day of March, 2021.

By: */s/ Jessica B. Pulliam*
Jessica B. Pulliam

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Connie Nims | | cnims@krcl.com | 3/26/2021 3:54:16 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 3/26/2021 3:54:16 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |

Associated Case Party: ALTA POWER LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |

FILED
3/26/2021 3:19 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

**CAUSE NO. DC-20-08331**

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
| *Defendant, Counter-Plaintiff, and* | § | |
| *Third-Party Plaintiff,* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| WATTSTOCK LLC | § | |
| *Counter-Defendant, and* | § | |
| | § | |
| GENERAL ELECTRIC | § | 116th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES | § | |
| *Third-Party Defendants.* | § | |
| | § | |

**NOTICE OF APPEARANCE**

Defendant, Counter-Plaintiff and Third-Party-Plaintiff Alta Power LLC ("Alta Power")

hereby notifies the Court that John Lawrence of the firm Baker Botts LLP, 2001 Ross Avenue,

Suite 900, Dallas, Texas 75201, appears in this action as additional counsel on their behalf.  In

connection with this notice, Mr. Lawrence requests that all future pleadings and other papers filed

be served on him at the below address and contact information.

> John B. Lawrence
> State Bar No. 24055825
> E-Mail: john.lawrence@bakerbotts.com
> **Baker Botts L.L.P.**
> 2001 Ross Avenue, Suite 900
> Dallas, Texas 75201
> Telephone: (214) 953-6500
> Facsimile: (214) 953-6503

DATE: March 26, 2021

Respectfully Submitted

By: */s/ John B. Lawrence*
Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie Wallace
State Bar No. 24115920
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com


Michael Cancienne
State Bar No. 24055256
Kevin Jordan
State Bar No. 11014800
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
**JORDAN, LYNCH & CANCIENNE PLLC**
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER LLC**


## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above notice was served on all parties through the Court's electronic filing service on the 26th day of March, 2021.

By: *John B. Lawrence*
John B. Lawrence

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Kevin Jordan | | kjordan@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brian N. Hail | 8705500 | bhail@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 3/26/2021 3:54:16 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Associated Case Party: WATTSTOCK LLC

| Vicki Sedon | | vsedon@krcl.com | 3/26/2021 3:54:16 PM | SENT |
|---|---|---|---|---|
| Connie Nims | | cnims@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 3/26/2021 3:54:16 PM | SENT |

FILED
3/26/2021 3:19 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

## CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
| *Defendant, Counter-Plaintiff, and* | § | |
| *Third-Party Plaintiff,* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| WATTSTOCK LLC | § | |
| *Counter-Defendant, and* | § | |
| | § | |
| GENERAL ELECTRIC | § | 116th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES | § | |
| *Third-Party Defendants.* | § | |
| | § | |

## NOTICE OF APPEARANCE

Defendant, Counter-Plaintiff and Third-Party-Plaintiff Alta Power LLC ("Alta Power")

hereby notifies the Court that Kirstie Wallace of the firm Baker Botts LLP, 2001 Ross Avenue,

Suite 900, Dallas, Texas 75201, appears in this action as additional counsel on their behalf.  In

connection with this notice, Ms. Wallace requests that all future pleadings and other papers filed

be served on her at the below address and contact information.

Kirstie Wallace
State Bar No. 24115920
E-Mail: kirstie.wallace@bakerbotts.com
**Baker Botts L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

DATE: March 26, 2021

Respectfully Submitted

By*: /s/ Kirstie Wallace*_____
Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie Wallace
State Bar No. 24115920
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com

Michael Cancienne
State Bar No. 24055256
Kevin Jordan
State Bar No. 11014800
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
**JORDAN, LYNCH & CANCIENNE PLLC**
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER LLC**

## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above notice was served on all parties through the Court's electronic filing service on the 26th day of March, 2021.

By*: /s/ Kirstie Wallace*_____
Kirstie Wallace

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 3/26/2021 3:54:16 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 3/26/2021 3:54:16 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 3/26/2021 3:54:16 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 3/26/2021 3:54:16 PM | SENT |
| Connie Nims | | cnims@krcl.com | 3/26/2021 3:54:16 PM | SENT |

Associated Case Party: ALTA POWER LLC

### Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 51886982
Status as of 3/29/2021 8:19 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |
| Kevin Jordan | | kjordan@jlcfirm.com | 3/26/2021 3:54:16 PM | SENT |

FILED
4/9/2021 3:55 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| v. | 116TH JUDICIAL DISTRICT |
| GENERAL ELECTRIC INTERNATIONAL,INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | |

## GENERAL ELECTRIC INTERNATIONAL INC.'S RULE 91a MOTION TO DISMISS CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

Third-Party Defendant, General Electric International, Inc. ("GE"), files this motion pursuant Rule 91a of the Texas Rules of Civil Procedure ("TRCP") to dismiss causes of action alleged against GE by Alta Power LLC ("Alta Power") in its Third-Party Petition. Even accepting as true the allegations of the Third-Party Petition as required by Rule 91a (which GE does for purposes of this motion but otherwise denies the allegations), Alta's causes of action have no basis in law or fact and should accordingly be dismissed. In support, GE shows as follows:

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

## **Table of Contents**

| | | |
|---|---|---|
| **I.** | Summary of Argument ............................................................... | 2 |
| **II.** | Allegations of The Third-Party Petition........................................... | 3 |
| **III.** | Tex. R. Civ. P. Rule 91a Standard................................................. | 7 |
| **IV.** | Alta's Count I (Declaratory Judgment) Must be Dismissed as Against GE................. | 9 |
| **V.** | Alta's Count II (*Respondeat Superior*) Must be Dismissed.................................. | 11 |
| **VI.** | Alta's Count IV (Unjust Enrichment) Must be Dismissed.................................... | 14 |
| **VII.** | Alta's Counts VII and VIII (Fraud and Misrepresentation) Must be Dismissed as Against GE............................................................................................ | 16 |
| **VIII.** | Alta's Claims for Consequential Damages as Against GE (Counts I, II, VII and VIII) Must be Dismissed............................................................................................ | 20 |
| **IX.** | Conclusion.............................................................................................. | 24 |

### **I.    Summary of Argument**

The causes of action that Alta attempts to state in its Third-Party Petition have no basis in law or fact for the following reasons:

1.    The Third-Party Petition purports to state a claim against GE for breach of contract (Count I); but no contractual privity exists between Alta and GE.

2.    The Third-Party Petition attempts to state causes of action that GE is jointly and severally liable for the alleged acts and omissions of another party defendant under theories of partnership, principal-agent, estoppel, joint enterprise, and *respondeat superior.* (Counts I, II, VII and VIII). But Texas law provides for no such cause of action on the facts alleged by Alta.

3.    The Third-Party Petition does not distinguish between the alleged acts or omissions of the two defendants named in Alta's Third-Party Petition. GE cannot determine which party's conduct the other is alleged to be jointly and severally responsible for. (Counts I, II, VII and VIII). Instead, the Third-Party Petition simply "lumps together" the two defendants

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 2 of 78**

under a common designation without properly differentiating the two parties and the alleged acts or omissions of their respective personnel involved with the transactions at issue.

4.      The Third-Party Petition does not state facts to support Alta's alleged cause of action for unjust enrichment.  (Count IV).

5.      The Third-Party Petition does not allege with fair notice and sufficient particularity any acts or omissions of GE constituting fraud or misrepresentation.  (Counts VII and VIII).

6.      The Third-Party Petition attempts to state causes of action against GE for the recovery of consequential damages that are barred by the applicable contract terms.  (Counts I, II, VII and VIII).

For the above reasons, Alta's alleged claims and causes of action against GE in its Third-Party Petition have no basis in law or fact and should be dismissed.  Each of the foregoing reasons is detailed more specifically as follows:

## II.      Allegations of The Third-Party Petition

This action arises out of a written contract between Plaintiff, WattStock, LLC ("WattStock"), and Defendant/Third-Party Plaintiff, Alta Power LLC ("Alta").  WattStock sued Alta for payments allegedly due under the contract.  Alta answered the lawsuit alleging that WattStock had breached the contract (and could accordingly not recover against Alta); and Alta filed a counterclaim against WattStock for recovery of its damages allegedly caused by WattStock's breach.  More recently, Alta filed an amended answer and counterclaim, and included a Third-Party Petition against GE alleging that GE was jointly liable with WattStock for amounts allegedly owed to Alta.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 3 of 78**

The Third-Party Petition describes transactions showing that Alta was a sophisticated commercial actor with a speculative business plan. By April 2018, Alta had developed a strategy to purchase used industrial equipment to produce electrical power that would be sold to Texas consumers. The used equipment that Alta targeted for purchase was known as aeroderivative gas turbine packages. Each of these equipment packages would include a used gas turbine engine[1] and associated equipment to generate electrical power. *See,* Third-Party Petition at Paragraphs 2, 15-23.

Alta's plan was to purchase used power production equipment from current owners throughout the world, install it at strategic locations in Texas, and generate electrical power at opportune times when consumer demand exceeded the power supply available from existing power production facilities. *Id.* In other words, Alta planned to capitalize on times when consumer need for electrical power was most acute by selling the electrical power produced by its used equipment when "power prices are highest." *Id.* at paragraph 2.

To implement its business plan, Alta met with several companies who could identify and provide used power production equipment. *Id.* at 31. Thereafter, Alta signed contract agreements with WattStock. *Id.* at paragraphs 45 and 91. These contracts included a 27 February 2019 Master Agreement (attached hereto as Exhibit A) and a 23 December 2019 Limited Notice to Proceed (LNTP) (attached hereto as Exhibit B).[2] Through these contracts, WattStock and Alta worked together to pursue their express "Business Purpose" of "(i) locating, evaluating, and pricing surplus

---

[1] A gas turbine is a combustion engine that can convert natural gas or other liquid fuels to mechanical energy. This energy then drives a generator that produces electrical energy. This electrical energy moves along power lines to homes and businesses.

[2] Both of these contracts were attached to WattStock's Original Petition on file herein and they are accordingly appropriately considered for purposes of this Rule 91a Motion to Dismiss. *See,* TRCP Rule 91a.6 and Rule 59 (documents attached or incorporated into petition are considered for motion to dismiss).

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

combustion turbine generator assets available for purchase, (ii) purchasing and refurbishing of

selected generator assets, and (iii) designing, constructing and operating power generation plants

in the Texas market." *See,* Master Agreement (Exhibit A) at page 1 ("Business Purpose").

WattStock's activities under its contract with Alta included the task of locating used gas turbine

equipment packages that were available for purchase in different parts of the world and

refurbishing the equipment as provided in the contract. *Id.*

By the time WattStock and Alta had contracted in the 2019 Master Agreement, WattStock

had already entered into a June 2017 Memorandum of Understanding ("MOU") with GE. Through

this MOU, GE would provide engineering and related services in connection with WattStock's

activities to refurbish used gas turbine equipment packages that could be sold to WattStock's

customers. *See,* June 2017 Memorandum of Understanding Agreement (attached hereto as Exhibit

C).[3]

GE was not a party to the Alta/WattStock contracts.  Further, Alta alleges that neither Alta,

WattStock, nor GE intended that GE be a party to the Alta/WattStock contracts.  "GE is not a

named party to the Master Agreement."  "At GE's insistence, Alta Power contracted directly with

WattStock." *See,* Third-party Petition at paragraphs 42 and 46.  Further, the GE/WattStock MOU

specifically provided that GE and WattStock "do not intend this MOU to create any partnership,

---

[3] The MOU Exhibit C is being filed under seal on account of its confidential designation.  Alta
bases its Third-Party Petition claims on the GE/WattStock MOU and incorporates its terms. *See,*
Third-Party Petition at paragraphs 27, 111 and 139; and it is accordingly appropriate for the Court
to consider the MOU in ruling on this motion to dismiss.  TRCP Rules 91a.6 and 59.  Significantly,
Alta's allegations regarding the date of the MOU and its content are contradicted by the written
MOU itself.  The date of the MOU is June 2017 (Exhibit C, page 5), not June 26, 2018 as alleged
by Alta (Third-Party Petition at paragraph 27).  Similarly, Alta obscurely alleges that the MOU
purports to "outline" the GE-WattStock's relationship to establish that "GE is in complete control"
of the relationship and that GE "had the right to push WattStock aside and ensure that any deal
was consummated." (*Id.,* at paragraphs 111 and 139); but no such language is contained in the
MOU itself.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

corporation, agency, or fiduciary relationship among them," and that "[n]either party shall have

the right or power to bind the other party without the written consent of such other party." *See*,

MOU (Exhibit C) at page 4, paragraph 6(b). Correspondingly, the Alta/WattStock Master

Agreement provided that it "does not create any agency or employment relationship, partnership,

joint venture, or co-venture between Alta and WattStock." (Exhibit A at page 24, Section 12.7).

As it turned out, Alta's business strategy to purchase used industrial equipment for the sale

of electrical power to Texas consumers at times of acute demand and highest prices did not return

the results or the profits that Alta wanted. The Third-Party Petition describes a "complex process"

in which a conflux of factors operated in such a way that "Alta missed their opportunity to be a

first mover" in a highly competitive and speculative market. Third-Party Petition at Paragraphs

20 and 103. These factors included challenges and delays incident to: the process of identifying

used gas turbine equipment in different parts of the world that would satisfy Alta's business plan

and budgeting goals (Third-Party Petition at paragraphs 52-75); disputes between Alta and

WattStock concerning the propriety of "mark-up" pricing (*id.*, at paragraphs 59, 69-70); securing

financing (*id.*, at paragraphs 76-81); a competitor's threatened litigation claims against Alta for

trade secret violations (*id.*, at paragraphs 79-81); and the global COVID-19 crisis (*id.*, at paragraph

97).

Alta admits in its Third-Party Petition that GE is not a party to the Alta/WattStock Master

Agreement or any other contract with Alta. Rather, Alta alleges that GE is responsible for

WattStock's alleged contract breach and other acts or omissions because "GE is an 'affiliate' or

'representative' of WattStock and, therefore, a party to the Master Agreement" (Third-Party

Petition at paragraph 46); and Alta alleges other claims against GE related to Alta's contract with

WattStock. This motion requests the dismissal of those claims under TRCP Rule 91a because they

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 6 of 78**

have no basis in law or fact.

## III.    Tex. R. Civ. P. Rule 91a Standard

TRCP Rule 91a states the applicable standard for the dismissal of a cause of action as

follows:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis
> in law or fact. A cause of action has no basis in law if the allegations, taken as true,
> together with inferences reasonably drawn from them, do not entitle the claimant
> to the relief sought. A cause of action has no basis in fact if no reasonable person
> could believe the facts pleaded.

TRCP Rule 91a provides for a process that corresponds to Rule 12(b)(6) of the Federal

Rules of Civil Procedure ("FRCP"), which allows for the dismissal of a complaint for "failure to

state a claim upon which relief can be granted."  FRCP, Rule 12(b)(6).  Recognizing the similarities

between TRCP Rule 91a and FRCP 12(b)(6), Texas courts have interpreted Rule 91a to call for

a Rule 12(b)(6)-type analysis; and they have relied on case law interpreting Rule 12(b)(6) in

applying Rule 91a.[4]

For purposes relevant to this motion, the following standards apply to the determination of

whether the causes of action stated in Alta's Third-Party Petition have no basis in law or fact such

that they should be dismissed under Rule 91a:

1.    A cause of action has no basis in law if the allegations, taken as true, together with

inferences reasonably drawn from them, do not entitle the claimant to the relief

---

[4] *See, e.g., * Wooley v. Schaffer, 447 S.W.2d 71 (Tex. App., Houston [14th Dist.] 2014);
GoDaddy, 429 S.W.3d at 754; Vasquez v. Legend Nat. Gas III, L.P., 492 S.W.3d 448, 450-51
(Tex. App., San Antonio, 2016, no pet.); GoDaddy.com, L.L.C. v. Toups, 429 S.W.3d 752, 754
(Tex. App., Beaumont 2014); Bart Turner & Associates v. Krenke, 2014 WL 1315896 (N.D.
Tex. 2014).

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 7 of 78**

sought.  TRCP, Rule 91a.

2.      When the plaintiff's own allegations, taken as true, trigger a clear legal bar to the

plaintiff's claim, the cause of action has no basis in law and is subject to dismissal

under Rule 91a.[5]

3.      A cause of action has no basis in law under Rule 91a where the petition alleges

additional facts that, if true, bar recovery.[6]

4.      Where the facts alleged in a petition to support a cause of action are contradicted

or disproved by the documents attached to the petition, the documents control and

the cause of action has no basis in fact under Rule 91a.[7]

5.      Where a signed agreement establishes a waiver of a plaintiff's alleged claim, Rule

91a authorizes dismissal of the claim because it has no basis in law or fact.[8]

6.      Where a contract contains limitation of liability terms barring recovery of

consequential damage, dismissal of such claims is appropriate.[9]

---

[5] Reaves v. City of Corpus Christi, 518 S.W.3d 594 (Tex. App. Corpus Christi 2017).

[6] Reaves v. City of Corpus Christi, *supra*; Stallworth v. Ayers, 510 S.W.3d 187, 190 (Tex. App., Houston [1st Dist.] 2016, no pet.); Guillory v. Seaton, LLC, 470 S.W.3d 237, 240 (Tex. App., Houston [1st Dist.] 2015, pet. denied); Wooley v. Schaffer, 447 S.W.3d 71, 76 Tex. App., Houston [14th Dist.] 2014).

[7] Dailey v. Thorpe, 445 S.W.3d 785, 789–90 (Tex. App., Houston [1st Dist.] 2014, no pet.); *see also*, Copeland v. Hunt, 434 S.W.2d 156 (Tex. Civ. App. 1968) (where the obligation alleged in a pleading does not conform to writing exhibited as basis for alleged obligation, the writing controls); Southwest Stone Co. v. Railroad Commission, 173 S.W.2d 325 (Tex. Civ. App. 1943, writ ref'd) (where an administrative order attached to the petition was the basis for the claims, the terms of the order controlled where there was a variance between the order and the allegations in the complaint).

[8] Estate of Sheshtawy, 478 S.W.3d 82, 86–87 (Tex. App., Houston [14th Dist.] 2015).

[9] *See,* cases cited at footnote 19, *infra*.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

7.      A cause of action has no basis in fact if no reasonable person could believe the facts

pleaded.  TRCP, Rule 91a.

8.      A cause of action has no basis in law under Rule 91a where the petition alleges too

few facts to demonstrate and provide fair notice of a viable, legally cognizable right

to relief.[10]

9.      A Rule 91a dismissal of a fraud or misrepresentation claim is appropriate where the

petition does not allege facts demonstrating the elements of a fraud or

misrepresentation claim.[11]

10.     A Rule 91a dismissal of a fraud or misrepresentation claims should be ordered when

reliance on an alleged misrepresentation is not justifiable as a matter of law.[12]

Application of the foregoing standards requires that Alta's Third-Party Petition causes of

action or "Counts" against GE be dismissed, for the following reasons:

## IV.    Alta's Count I (Declaratory Judgment) Must be Dismissed as Against GE

Alta's Third-Party Petition purports to state a cause of action against GE for declaratory

judgment that "GE's refusal to go forward with the Nuh Cemento project once WattStock became

insolvent was a breach of the LNTP (Limited Notice to Proceed) contract requiring GE to refund

money paid to WattStock/GE by Alta Power."  Alta also requests declaratory judgment that "GE

and WattStock are principal/agent or partners such that GE is responsible for WattStock's torts

---

[10] Reaves v. City of Corpus Christi, *supra*; Stallworth v. Ayers, *supra*; Guillory v. Seaton, LLC, *supra*; Wooley v. Schaffer, *supra*.

[11] Zheng v. Vacation Network, Inc., 468 S.W.3d 180 (Tex. App., Houston [14th Dist.] 2015); Devoll v. Demonbreun, 2014 WL 7440314 (Tex. App., San Antonio, 2014).

[12] Patterson v. Five Point Capital Midstream Funds, L.P., 2020 WL 7213348 (Tex. App., Houston [1st Dist.] 2020); Darnell v. Rogers, 588 S.W.3d 295, 305 (Tex. App., El Paso 2019, no pet.).

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

and breaches." Third-Party Petition at Paragraphs 105(b) and (e).

As for Alta's allegation that GE breached the LNTP contract between Alta and WattStock (*Id.* at Paragraph 105(e)), Alta admits that GE was not a party to the Alta/WattStock contract agreements. (Third-Party Petition at paragraph 46); and there is no language in the signed contract documents identifying GE as a party to those agreements. *See,* Exhibits A and B. Further, the GE/WattStock MOU (Exhibit C) establishes that GE and WattStock "(did) not intend this MOU to create any partnership, corporation, agency, or fiduciary relationship among them," and that "[n]either party shall have the right or power to bind the other party without the written consent of such other party." *See*, MOU (Exhibit C) at page 4, paragraph 6(b). And Alta affirmatively alleges that GE expressly refused to contract with Alta in connection with the incident transactions. Third-Party Petition at paragraph 42.

Alta cannot maintain breach of contract claims against GE because Alta's allegations and the signed written agreements establish that no privity of contract exists between Alta and GE. Privity is an essential element to any recovery in an action based on contact. Thus, maintenance of an action for breach of contract requires privity between the party damaged and the party sought to be held liable. The plaintiff has the burden of proving that the defendant has obligated himself under the contract. Gonzales County Water Supply Corp. v. Jarzombek, 918 S.W.2d 57, 61 (Tex. Civ. App., Corpus Christi-Edinburg 1996) (citations omitted). Here, the contract presented by Alta establishes that privity exists only between Alta and WattStock; and Alta's claim for declaratory judgment that GE is liable for the breach of the Alta/WattStock LNTP (Count I) has no basis in law or fact. It should accordingly be dismissed under TRCP Rule 91a. *Id.*

As for Alta's alleged cause of action for declaratory judgment that "GE and WattStock are principal/agent or partners such that GE is responsible for WattStock's torts and breaches" (Third-

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 10 of 78**

Party Petition at Paragraph 105(b)); there is likewise no basis in law or fact for such claims.  This alleged claim is also addressed in the Third-Party Petition's alleged cause of action for "*respondeat superior*" (Count II), and it is accordingly addressed as follows below:

## V.    Alta's Count II (*Respondeat Superior*) Must be Dismissed

Alta's Third-Party Petition purports to state a cause of action for "*respondeat superior*" against GE (Count II).  This alleged cause of action corresponds with Alta's alleged declaratory judgment cause of action (Count I) that GE and WattStock "are principal/agent or partners".  To support these alleged causes of action, Alta makes repeated and obscure references throughout the Third-Party Petition to alleged representations (made by unnamed individuals at unspecified dates, circumstances and locations) that GE would "stand behind" or work "hand-in-hand" or "partner" with WattStock; and Alta proposes that it may accordingly impose WattStock's alleged liabilities on GE.

But this so-called *respondeat superior* cause of action is negated by the facts alleged by Alta and by the Alta/WattStock contract terms.  Alta acknowledges that GE was <u>not</u> a party to Alta/WattStock contracts; and Alta alleges that GE, in fact, expressly refused to contract with Alta.  Further, there is no reference whatsoever in the contract documents to any such representations or agreements that GE would assume or accept liability jointly with WattStock to Alta for any WattStock contract breaches or other acts or omissions.  To the contrary, the agreement signed by Alta provided that:

> The Contract represents the entire agreement between the Parties with respect to the Work, and supersedes in its entirety all prior agreements concerning the subject matter hereof, and no modification, amendment, revision, waiver or other change shall be binding on either Party unless consented to in writing by the Party's authorized representative. Any oral or written representation, warranty, course of dealing, or trade usage not contained or referenced herein shall not be binding on

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 11 of 78**

either Party. <u>Each party agrees that it has not relied on, or been induced by, any</u>
<u>representation of the other Party not contained in the Contract.</u>

*See* LNTP (Exhibit B) at page 15 (Section 33 – "Entire Agreement") (emphasis added).

It is elementary that written instruments such as the Alta/WattStock contracts may not be
varied by evidence of an oral agreement that contravenes the terms of the written instrument. And
this court should appropriately not consider such evidence in ruling on GE's motion to dismiss in
any event. Conversations and negotiations preceding the execution of written instruments are
inadmissible since they are deemed to have been merged in the writing itself – especially when the
writing itself says so.[13]

Under these familiar principles of law, the parol or "extrinsic" evidence alleged by Alta is
inadmissible because it is contrary to the written contract terms and because Alta expressly
represented in the contract that it "ha[d] not relied on, or been induced by, any representation of
the other Party not contained in the Contract."[14] There is no valid factual basis alleged to support
Alta's claims that GE is liable to Alta jointly with WattStock for WattStock's liabilities under
theories of *respondeat superior*, partnership, principal-agent or otherwise. The claims (Count II
and Count I at Paragraph 105b) should accordingly be dismissed pursuant to TRCP Rule 91a.

The dismissal of Alta's alleged declaratory judgment and *respondeat superior* cause of
action (Count II and Count I at Paragraph 105b) is appropriate for the additional reason that Texas

---

[13] <u>Tex. Exp. Dev. Corp. v. Schleder</u>, 519 S.W.2d 134, 139 (Tex. Civ. App., Dallas 1974, no writ);
<u>Holleman v. Halliburton Co.</u>, 450 S.W.2d 883, 886 (Tex. Civ. App., Fort Worth 1970, no
writ); <u>McPherson v. Johnson</u>, 436 S.W.2d 930, 932 (Tex. Civ. App., Amarillo 1968, writ ref'd
n.r.e.); <u>Wheeler v. Thomas</u>, 328 S.W.2d 891, 895 (Tex. Civ. App., Beaumont 1959, no writ); 2
McCormick and Ray, Texas Law of Evidences 1601 (2d ed. 1956).

[14] <u>Snowden v. Franklin Nat'l Bank</u>, 338 F.2d 995, 996 (5th Cir. 1964); <u>Kuper v. Schmidt</u>, 161 Tex.
189, 338 S.W.2d 948, 952 (1960); <u>Howeth v. Davenport</u>, 311 S.W.2d 480, 482 (Tex. Civ. App.,
San Antonio 1958, writ ref'd n.r.e.); <u>Jones v. Hubard</u>, 302 S.W.2d 493, 495 (Tex. Civ. App., Waco
1957, writ ref'd n.r.e.); and <u>Dean v. Allied Oil Co.</u>, 261 S.W.2d 900, 902 (Tex. Civ. App., Waco
1953, writ dism'd).

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

law does not allow for recovery under an alleged partnership or agency theory on the facts alleged by Alta in any event. *See,* V.T.C.A., Business Organizations Code § 152.053 (b). Here, the GE/WattStock MOU expressly provides that it did not create a partnership or agency relationship between GE and WattStock. Nor is there any allegation made by Alta that any indicia of partnership existed between GE and WattStock to show that they "carr[ied] on a business for profit as owners" as required for a partnership to exist under Texas law. *See,* V.T.C.A., Business Organizations Code § 152.051(b) and §152.052 (listing factors to determine if a partnership has been created).

More to the point, Alta is simply wrong, as a matter of law, to contend that GE may somehow be liable as WattStock's partner. Importantly, Texas law provides that even if there is a representation or other conduct falsely indicating that a person is a partner with another person or is a partner in an existing partnership (as Alta alleges in this case), such a representation or conduct does not of itself create a partnership or make that person a partner in a partnership. V.T.C.A., Business Organizations Code § 152.054. And, critically, Texas law provides if two persons are not partners as to each other (as GE and WattStock are not), then they are not liable as partners to third parties (like Alta). Specifically: "Except [in circumstances not alleged in Alta's pleading], a person who is not a partner in a partnership [under the Texas Business Organizations Code]" – which GE is not alleged to be, and its Memorandum of Understanding with WattStock clarifies that it is not – "is not a partner as to a third person and is not liable to a third person under [as a partner]." *See,* V.T.C.A., Business Organizations Code § 152.053(b). Accordingly, Alta's alleged *respondeat superior* cause of action (as well as its alleged declaratory judgment cause of action that GE "are principal/agent or partners" [Count I at Paragraph 105b]) are appropriately dismissed for this reason too.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 13 of 78**

**VI.    Alta's Count IV (Unjust Enrichment) Must be Dismissed**

Alta's Third-Party Petition purports to state a cause of action for "unjust enrichment" against GE (Count IV).  Specifically, Alta alleges that "GE has been unjustly enriched in the amount of $1.5 million to the detriment of Alta Power;" and Alta demands "restitution of all amounts GE has been justly enriched (sic)." *Id.* at Paragraphs 125-126.

A party may recover under a theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex.1992).  Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. Bransom v. Standard Hardware, Inc., 874 S.W.2d 919, 927 (Tex. Civ. App., Fort Worth 1994, writ denied).   Unjust enrichment occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc., 736 S.W.2d 247, 250 (Tex. Civ. App., Corpus Christi 1987, writ denied).

Count IV does not specify the details of the alleged $1.5 million "enrichment;" but it is the same amount referenced in other portions of the Third-Party Petition.  Specifically, Alta alleges that it paid $1.5 million "related to the Nuh Cemento project for GE to acquire long-lead hardware, start engineering activities, and deliver preliminary drawings."  Third-Party Petition at Paragraph 119 and 92-93.[15]

Significantly, there is no allegation that GE did not perform the services for which the

---

[15] The Third-Party Petition also obscures whether Alta made the payment to WattStock or GE. *See, id.,* at Paragraph 119 ("Alta Power paid GE/WattStock $1.5 million).  Alta also alleges that GE is "vicariously liable for WattStock's breaches of the Master Agreement and LNTP;" and that consequently "GE must refund to Alta Power the $1.5 million under the contracts between the parties." *Id.* at 121.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 14 of 78**

payment was made; nor does Alta allege that the value of the services was less than $1.5 million. Nor does Alta allege that it made the referenced $1.5 million payment because it was lured or compelled to do so by any fraud or duress; nor does Alta allege that any undue advantage was exercised by GE.

Alta has failed to allege any facts which would support a cause of action for unjust enrichment against GE. For that reason, Count IV of the Third-Party Petition should be dismissed. Patterson v. Five Point Capital Midstream Funds, L.P., 2020 WL 7213348 (Tex. Civ. App., Houston [1st Dist.] 2020) (dismissing unjust enrichment claim on Rule 91a motion).

Alta's alleged cause of action against GE for unjust enrichment should be dismissed for the additional reason that no such claim is available in any event because there is a written contract between Alta and WattStock governing the incident transactions. *See,* Fortune Production Company v. Conoco, 52 S.W.3d 671, 684 (Tex. 2000) (no recovery available for unjust enrichment where a written contract governs the transactions at issue).

Here, a written contract was signed by Alta and WattStock concerning the same transactions and payments upon which Alta's unjust enrichment claim is based. If there is an express contract that covers the dispute at issue, a quasi-contractual or equitable claim such as unjust enrichment or quantum meruit cannot lie.[16] When a valid agreement already addresses the matter, recovery under an equitable theory is inconsistent with the express agreement. *See also,* TransAm. Natural Gas Corp. v. Finkelstein, 933 S.W.2d 591, 600 (Tex. Civ. App., San Antonio 1966, writ denied). For this reason too, Alta's claim against GE for unjust enrichment should be

---

[16] *See, e.g.,* Becker v. Nat'l Educ. Training Grp., Inc., 2002 WL 31255021, at *4 & n.32 (N.D. Tex. 2002); Compton v. Citibank (S.D.), N.A., 364 S.W.3d 415, 418–19 (Tex. Civ. App., Dallas 2012, no pet.); Tex Star Motors, Inc. v. Regal Fin. Co., 401 S.W.3d 190, 202 (Tex. Civ. App., Houston [14th Dist.] 2012, no pet.); Christus Health v. Quality Infusion Care, Inc., 359 S.W.3d 719, 723–25 (Tex. Civ. App., Houston [1st Dist.] 2011, no pet.) (op. on reh'g); City of The Colony v. N. Tex. Mun. Water Dist, 272 S.W.3d 699, 731 (Tex. Civ. App., Fort Worth 2008, pet. dism'd).

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

dismissed because it has no basis in law.

## VII.    Alta's Counts VII and VIII (Fraud and Misrepresentation) Must be Dismissed as Against GE

Alta's Third-Party Petition purports to state a cause of action against GE for "fraud" and "misrepresentation" (Third- Party Petition at Counts VII and VIII); but no facts are alleged that support such claims. Rather, Alta generally alleges that it would not have contracted with WattStock if GE and WattStock had not "misrepresented the nature of their relationship," or had not assured that GE would "stand behind" WattStock, or had not made alleged misrepresentations to Alta "to induce Alta Power to contract." *Id*. at Paragraph 136. Alta alleges that it "justifiably relied on these misrepresentations" in contracting with WattStock. *Id*. at Paragraphs 107-108.

The elements of a fraud or misrepresentation claim are (1) the speaker made a material representation, (2) it was false, (3) the speaker knew the representation was false when he made it or he made it recklessly without any knowledge of its truth and as a positive assertion, (4) the speaker made the representation with intent that the other party act upon it, (5) the other party acted in reliance on the misrepresentation, and (6) that party suffered injury thereby. Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337 (Tex. 2011). For a fraudulent inducement claim (as alleged by Alta), the elements of fraud must be established as they relate to an inducement to enter into a contract between the parties. *See*, Haase v. Glazner, 62 S.W.3d 795, 798–99 (Tex. 2001).[17]

Throughout the entire twenty-six pages (158 paragraphs) of Alta's Third-Party Petition,

---

[17] Alta alleges that GE and WattStock's misrepresentations induced Alta into contracting with WattStock. A claim for fraud or misrepresentation does not exist where the only misrepresentation alleged concerns a breach of the contract itself. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). A plaintiff does not state a viable claim of fraud or misrepresentation by simply alleging that the defendant never intended to comply with the contract or by alleging claims that are similarly duplicative of the breach of contract claim. *Id*.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

there is not a single GE or WattStock individual speaker identified by name or affiliation who is alleged to have made "misrepresentations" to Alta. There is not a single Alta representative identified by name to whom any misrepresentations were allegedly made, nor any facts alleged to explain how that person acted on the representations. There are no particular details of the alleged misrepresentations made by any GE representative other than Alta's repeated obscure references to "meetings" and "discussions" in which there were "assurances" that GE would "stand behind," or work "hand-in-hand," or "partner" with WattStock. There is not a single date certain provided to identify when the various alleged "meetings" or "discussions" took place at which GE or WattStock speakers made the alleged misrepresentations, who was present at or participated in those meetings or discussions, or where these meetings/discussions allegedly took place. There are no factual details regarding the alleged fraud or misrepresentation claims sufficient to support the stated causes of action.

The elements of a claim for fraud or misrepresentation must be pleaded with particularity to provide fair notice rather than threadbare recitals of the legal elements for such claims. *See*, Zheng v. Vacation Network, Inc., 468 S.W.3d 180 (Tex. Civ. App., Houston [14th Dist.] 2015). Fraud and misrepresentation are serious allegations; and a party alleging that such conduct occurred is required to provide fair notice to a defendant of the details of such claims including references to particular dates, times, individual persons involved, media of communications and details of the communications' substance. A cause of action for fraud or misrepresentation accordingly has no basis in law or fact (and is properly dismissed under Rule 91a) where the petition does not identify with particularity the elements of such a claim. *See*, Zheng, *supra;* Devoll v. Demonbreun, 2014 WL 7440314 (Tex. Civ. App., San Antonio, 2014).

Here, Alta recites the elements of its alleged fraud and misrepresentation claims claim in a

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 17 of 78**

threadbare fashion; but it includes no supporting facts sufficient to support the claims. Counts VII and VIII of the Third-Party Petition against GE should accordingly be dismissed under Rule 91a.

In addition to its failure to state facts sufficient to support the claims, Alta's fraud and misrepresentation claims against GE should be dismissed for another reason:  Alta's alleged reliance on the so-called misrepresentations described in the Third-Party Petition are not justifiable because they are contradicted by the written agreements that were later signed by Alta.  In such circumstances, when reliance on an alleged misrepresentation is not justifiable as a matter of law, a fraud or misrepresentation claim should be dismissed under Rule 91a. Patterson v. Five Point Capital Midstream Funds, L.P., 2020 WL 7213348 (Tex. Civ. App., Houston [1st Dist.] 2020); Darnell v. Rogers, 588 S.W.3d 295, 305 (Tex. Civ. App., El Paso 2019, no pet.).

Specifically:  Alta signed its contracts with WattStock alone.  GE was not a party to those contracts nor is there any language in any of the contracts that GE would be responsible for WattStock's contract liabilities as a partner, principal or otherwise.  Alta alleges that GE specifically refused to contract with Alta.  Alta's contract with WattStock expressly provided that the price of any turbine equipment that may be purchased "may vary due to the variable conditions of each Asset and the variable scopes of refurbishment work that may be required for each Asset." See, Exhibit A (Master Agreement) at Article 4.2.  Nowhere in any of the contract agreements is there any mention that Alta's pricing targets, budget, or business plan would be assured or guaranteed, let alone by GE, who never even signed them.  Alta does not allege that it did not know about these contract terms; and Alta is presumed to have read and understood the contracts that it signed. UBS Financial Services, Inc. v. Branton, 241 S.W.3d 179 (Tex. Civ. App., Fort Worth, 2007).

GE executed an MOU with WattStock, not Alta. See, Exhibit C.  That MOU was executed

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

in June 2017 –more than a year before the February 2019 Master Agreement between Alta and WattStock.  Through this MOU, GE would provide engineering and related services in connection with WattStock's later activities to sell used and refurbished gas turbine equipment packages to WattStock's customers.  *Id.*  There is no language in the MOU to support Alta's obscure allegations that GE had the right to "push WattStock aside" and that GE was required to "stand behind" WattStock to "consummate" a later contract between Alta and a third-party.  *See*, Third-Party Petition at Paragraphs 139-140.

A fraud claim should be dismissed under Rule 91a when reliance on an alleged misrepresentation is not justifiable as a matter of law.  Patterson v. Five Point Capital Midstream Funds, L.P., 2020 WL 7213348 (Tex. Civ. App., Houston [1st Dist.] 2020); *see also,* Darnell v. Rogers, 588 S.W.3d 295, 305 (Tex. Civ. App., El Paso, 2019, no pet.) (affirming dismissal pursuant to Rule 91a because reliance on misrepresentation not justifiable as matter of law).

Under Texas law, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 658 (Tex. 2018) (*quoting,* DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858– 59 (Tex. Civ. App., Houston [14th Dist.] 2003, pet. Denied)); Nat'l Prop. Holdings, Inc., L.P. v. Westergren, 453 S.W.3d 419, 424–25 (Tex. 2015) (holding no justifiable reliance, as matter of law, on representations about contract which directly conflicted with the content of the contract).

Here, Alta claims to have been fraudulently induced into contracting with WattStock by alleged misrepresentations that were contradicted by the very contracts that it ultimately signed. Fraudulent inducement is not available as a cause of action to one who had the opportunity to read the contract, and by doing so could have discovered the alleged misrepresentation.  JPMorgan,

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 19 of 78**

*supra*; Nat'l Prop. Holdings, *supra.*  For this reason too, Alta's fraud and misrepresentation claims (Counts VII and VIII) should be dismissed.

### VIII.   Alta's Claims for Consequential Damages as Against GE  (Counts I, II, VII and VIII) Must be Dismissed

Alta's Third-Party Petition attempts to state claims against GE for the recovery of two categories of damages.  First, Alta demands that GE refund or return the $1.5 million that Alta allegedly paid for goods and services under the Alta/WattStock contract agreements (Counts I, II and IV) – again, agreements to which GE was never party.  In addition, Alta seeks consequential damages of "at least $10 million" for amounts that Alta allegedly "wasted" based on alleged "misrepresentations" made to Alta (Counts VII and VIII).  Even if this Court would not dismiss Alta's Third-Party Petition against GE in its entirety, a Rule 91a dismissal should still be ordered on this claim for consequential damages because Alta has no cause of action for such damages.

The Third-Party Petition's causes of action or "Counts" do not provide fair notice as to what particular amounts Alta seeks to recover from GE for consequential damages, what is meant by the allegation that certain amounts were "wasted," or how those amounts are calculated.  The allegations in the Counts are made even more obscure by Alta's other Petition allegations that GE and WattStock "caused Alta Power to lose more than one hundred million dollars of essential financing, profits related to its business, and millions in payments to GE … ."  *See,* Third-Party Petition at Paragraph 6.

Here, Alta's claims arise from its contract agreements with WattStock; and Alta seeks to hold GE responsible for WattStock's alleged breaches of those contracts.  But those contracts expressly bar recovery for the consequential damages that are claimed by Alta.

The Alta/WattStock contract terms contain Limitation of Liability provisions which stand

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

as a clear legal bar to the recovery of "consequential," "incidental," or "indirect" damages.

Specifically, the 27 February 2019 Master Agreement provides (in all capital letters and boldface type) as follows:

**NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, AND TO THE FULLEST EXTENT PERMITTED BY LAW, NEITHER PARTY, THEIR RESPECTIVE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, REPRESENTATIVES, CONTRACTORS OR SUBCONTRACTORS SHALL BE LIABLE TO THE OTHER OR SHALL MAKE ANY CLAIM FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR CONNECTED IN ANY WAY TO THIS AGREEMENT. THIS MUTUAL WAIVER OF CONSEQUENTIAL DAMAGES, SHALL INCLUDE, BUT IS NOT LIMITED TO, LOSS OF USE, LOSS OF PROFIT, LOSS OF BUSINESS, LOSS OF INCOME, LOSS OF REPUTATION OR ANY OTHER CONSEQUENTIAL DAMAGES THAT EITHER PARTY MAY HAVE INCURRED FROM ANY CAUSE OF ACTION INCLUDING NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT AND BREACH OF STRICT OR IMPLIED WARRANTEE.**

*See,* Exhibit A attached hereto (Master Agreement) at Article 9 (Limitation of Liability) (emphasis added).  Significantly, Alta promised in its contract with WattStock that it would not press claims for consequential damages against WattStock's contractors or subcontractors – exactly what it now attempts to do against GE.

The law expressly recognizes that parties may contract for the exclusion of consequential losses such as the damages allegedly sustained by Alta.  Specifically, the Alta/WattStock contract documents calls for the application of Texas law (Exhibit A at Section 12.1) which provides for contractual freedom in connection with the allocation of liability for such commercial losses.  *See,* Tex. Bus. & Com. Code, § 2.719(c) (contracting parties are authorized to limit the remedies available upon breach by excluding claims for consequential damages).  *See also,* Tex. Bus. & Com. Code, § 2.718(a) and §2.316(d).  Such contractual terms are recognized as an allocation of undeterminable risks to which a party may otherwise be subject. Tex. Bus. & Com. Code, §

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 21 of 78**

2.719(c).

Here, Alta's claims for losses of "essential financing," "profits related to its business," unspecified amounts that Alta claims to have "wasted," and other consequential or incidental losses allegedly incurred are clearly encompassed by contract terms which exclude liability for these types of damages.   Accordingly, Alta's claims for recovery of such damages are legally barred.

The Alta/WattStock contract terms reflect an agreement between two sophisticated business parties which allocates potential risks for Alta's speculative plan to purchase and strategically operate for profit used industrial turbine equipment packages.  If Alta was successful in its plan, it could reap rewards from capitalizing on consumer demand for electrical power at times of acute need when the highest prices could be charged.  But Alta also accepted certain risks of loss if this plan was not successful.   These contractual risk allocations included damage exclusions and reciprocal waivers of each party's potential claims not only against each other, but also against their respective "partners, employees, representatives, contractors, or subcontractors" for loss of profit, loss of business, loss of income, loss of reputation, or any other consequential damages that might arise from their contract transactions.  Master Agreement (Exhibit A) at Article 9.1B.

As it turned out, Alta's risky plan was not successful.   As alleged in the Third-Party Petition, the costs of purchasing and operating the used turbine equipment was more expensive than Alta wanted to pay under its "budget."  Such circumstances were clearly contemplated by the contract terms in which Alta acknowledged that the price of the turbine equipment "may vary due to the variable conditions of each Asset and the variable scopes of refurbishment work that may be required for each Asset." *See,* Exhibit A (Master Agreement) at Article 4.2.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 22 of 78**

Notwithstanding the failure of Alta's business plan, the risk of loss that was allocated under the contract terms remains intact; and the contract terms bar the consequential damage claims stated in Alta's Third-Party Petition.  For this reason, this Court should dismiss Alta's alleged causes of action for consequential damages because the damages alleged are barred by the parties' contract.

A Rule 91a dismissal is appropriate when the plaintiff's own allegations, taken as true, trigger a clear legal bar to the plaintiff's claim because the cause of action has no basis in law. Reaves v. City of Corpus Christi, 518 S.W.3d 594 (Tex. Civ. App., Corpus Christi, 2017).  *See also,* Copeland v. Hunt,  434 S.W.2d 156 (Tex. Civ. App. 1968), writ ref'd. n.r.e.) (where an obligation alleged in a pleading does not conform to the writing that is exhibited as basis for alleged obligation, the writing controls); Southwest Stone Co. v. Railroad Commission, 173 S.W.2d 325 (Tex. Civ. App. 1943, writ refused) (where plaintiff filed suit for relief based on an order which was attached to and made a part of the pleadings by reference, the order constituted the cause of action sued on by plaintiff and governed where there was a variance between allegations of the complaint and the rate order).

More particularly, where the contract upon which a plaintiff bases its claims includes terms and conditions which exclude the recovery of the damages alleged in the petition, dismissal of the claims should be ordered under Rule 91a.  Federal court decisions interpreting the corresponding FRCP Rule 12(b)(6) consistently hold that the dismissal is appropriate where the contract upon

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

**Page 23 of 78**

which they are based contains limitations of liability or damage exclusions which bar the claims.[18]

Here, even accepting Alta's claim that legal theories of partnership, principal-agent, estoppel, joint enterprise, and *respondeat superior* make GE liable for the breach of a contract to which it is not a party (Counts I, II, VII and VIII),[19] the contract terms upon which Alta's claims are based expressly bar the consequential damage claims alleged by Alta. Accordingly, Alta's alleged causes of action have no basis in law because Alta is not entitled to the relief sought in any event and a Rule 91a dismissal is appropriate for Alta's claims for consequential damages; namely, all damages other than the $1.5 million dollars that Alta alleges to have paid for services provided by GE in connection with the transactions at issue.

## IX.   CONCLUSION

Rule 91a was enacted for the important purpose of providing a mechanism for courts to dismiss unfounded causes of action. Now, the more heightened pleading standard of Rule 91a requires more particularized factual allegations for plaintiffs to avoid dismissal of their claims.

In this regard, a comparison of Alta's Original Answer and Counterclaim against

---

[18] *See, e.g.,* Berman v. ADT, No. 12-7705, 2013 WL 6916891 (D. N.J. Dec. 13, 2013) (unpublished) (granting 12(b)(6) dismissal on breach of warranty claim where contract disclaimed warranties); Ind. Mich. Power Co. v. Siemens Energy, Inc., No. 12-00861, 2013 WL 4537066 (S.D. Ohio Aug. 27, 2013) (unpublished) (granting 12(b)(6) dismissal where plaintiff's breach of warranty claim ignored application of contract's limitation of liability terms); Robert Wood Johnson Univ. Hosp. v. SMX Capital, Inc., No. 12-7049, 2013 WL 4510005 (D.N.J. Aug. 26, 2013) (unpublished) (granting 12(b)(6) dismissal on breach of contract claim where plaintiff claimed recovery for consequential damages that were excluded by contract's limitation of liability terms); Music Dealers LLC v. Sierra Bravo Corp, No. 12-00712, 2012 WL 4017950 (N.D. Ill. Sept. 12, 2012) (unpublished) (granting Rule 12(b)(6) motion to dismiss claim for consequential damages where contract terms barred recovery of consequential damages). *See generally,* Wright & Miller Federal Practice and Procedure: Civil 3d Section 1367 (2010).

[19] As demonstrated in this Motion, *supra,* Texas law does not authorize in any event the theories of liability on the facts alleged by Alta. But even if those claims were available, the dismissal of Alta's claims for consequential damages would still be appropriate.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

WattStock with Alta's pending Third-Party Petition against GE is a telling exercise.  When read side-by-side, it is apparent that the Third-Party Petition is basically a cut-and-paste of Alta's Original Answer in which the "GE/WattStock" title is inserted to revise the earlier claims that were made against WattStock alone.

No particular GE persons are identified in the Third-Party Petition, and no specific GE acts or omissions are identified to support the alleged claims against GE.  Rather, Alta has simply lumped together GE and WattStock under a joint "GE/WattStock" designation to suggest that the conduct of one is the responsibility of the other, notwithstanding the existence of admitted facts and clear language in signed contracts and agreements that dictate a contrary result and that require the dismissal of Alta's claims against GE.[20]

Here, even assuming that Alta's factual allegations are true – which GE must do for the purposes of this motion but rejects otherwise – Alta's claims must still be dismissed because they have no basis in law or fact.  Counts I, II, IV, VII and VIII against GE must be dismissed because they do not state legally or factually cognizable theories of recovery against GE on the facts alleged.  In any event, Alta's alleged claims for consequential damages should be dismissed because they are legally barred by contract.

Accordingly, GE's Rule 91a motion should be granted and this Court should enter judgment dismissing with prejudice Alta's claims against GE under said Counts of the Third-Party Petition, for

---

[20] For example, where the Original Answer and Counterclaim alleged that only *WattStock* made alleged misrepresentations to Alta regarding its relationship with GE and other matters, the Third-Party Petition now alleges that "*GE/WattStock*" made those representations.  *Compare*, Original Answer and Counterclaim at paragraph 33, *with* Third-Party Petition at Counts VII and VIII.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

attorney fees[21] (as authorized by TRCP Rule 91a.7), and for such other and further relief to which it may be entitled.

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

/s/ Michael D. Fisse
Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA  70447
Telephone:      985-871-0800
Facsimile:      985-871-0899
E-mail:          mfisse@daiglefisse.com

*Counsel for Third-Party Defendant,*
*General Electric International, Inc.*


### CERTIFICATE OF SERVICE

I do hereby certify that on this 9th day of April 2021, I have served a copy of the foregoing pleading on the following, by e-mail, facsimile, commercial courier, and/or by mailing the same by United States mail, properly addressed, certified mail, return-receipt requested, first class postage pre-paid or said pleading will be sent by electronic mail to all parties by operation of the Court's electronic filing system.

/s/ Michael D. Fisse
MICHAEL D. FISSE

---

[21] As authorized by TRCP Rule 91a.7, the Court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court.

GENERAL ELECTRIC INTERNATIONAL, INC.'S RULE 91A MOTION TO DISMISS
CAUSES OF ACTION ALLEGED IN ALTA POWER LLC'S THIRD-PARTY PETITION

# EXHIBIT

# A

## MASTER AGREEMENT

This Master Agreement ("Agreement") is made and entered into as of the 27th day of February 2019 ("Effective Date") by and between Alta Power LLC, a Texas limited liability company ("Alta") with offices at 4605 Post Oak Place Dr. Suite 270, Houston, TX 77027, and WattStock LLC, a Texas limited liability company ("WattStock") with offices at Suite 850, 4040 North Central Expressway, Dallas, Texas 75204. Alta and WattStock are also each referred to herein as a "Party" and collectively as the "Parties".

WHEREAS, Alta is a power plant developer with a unique strategy for developing power generation projects in the Texas market using surplus combustion turbine packages; and

WHEREAS, WattStock is a supplier of power generation equipment and services, with extensive knowledge of the power equipment market; and

WHEREAS, Alta and WattStock seek to enter into an agreement or agreements to leverage each Party's unique skills to provide for an expedited and efficient means for (i) locating, evaluating, and pricing surplus combustion turbine generator assets available for purchase, (ii) purchasing and refurbishing of selected generator assets, and (iii) designing, constructing, and operating power generation plants in the Texas market ("Business Purpose").

NOW, THEREFORE, for and in consideration of the mutual covenants and promises and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Alta and WattStock agree as follows:

### Article 1.     Definitions

Whenever used in this Agreement with initial capitalization, the following definitions shall be applicable:

"**Affiliate**" of a Party means any other person (natural person, corporation limited liability company, partnership, firm, association, or any other entity whether acting in an individual, fiduciary or other capacity) that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with, the Party specified, including, without limitation such Party's owners, directors, officers, and employees.

"**Assets**" means major sub-components of an LM6000 Generator Set that may qualify for purchase for the Business Purpose including (i) generator set package with combustion turbine engine and electric generator, (ii) generator set package without combustion turbine engine and/or electric generator, (iii) combustion turbine engine only, (iv) electric generator only, and/or (v) such other equipment as the Parties may agree.

"**Business Day**" means a Day, other than a Saturday or Sunday or a legal or bank holiday, in the State of Texas.

"**Business Purpose**" has the meaning ascribed to it in the Preamble.

1

Exhibit A - Page 1

"**Confidential Information**" means the existence and terms of this Agreement, the fact that discussions are taking place between the Parties concerning the Business Purpose, and any and all information related to the Business Purpose disclosed to a Receiving Party prior to, on or after the Effective Date by a Disclosing Party (whether written, oral, digital or visual) that has economic value and is not generally known to the public, or which would constitute a trade secret under the U.S. Uniform Trade Secrets Act and any oral, electronic or written communications thereof, including without limitation information concerning discoveries, developments, designs, improvements, inventions, formulas, software programs, processes, techniques, know-how, computer programs, program code, specifications, analyses, reports, drawings, sketches, models, samples, data, algorithms, trade secrets, models, samples, calculations, formulas, WattStock manufacturing specifications or methods, analytical or quality control methods, actual and projected sales information, cost, price and other financial information, information relating to actual or potential suppliers and customers. markets, marketing opportunities, business structure, assets, liabilities, budgets, operations and strategies or other technical or business information, together with any information developed or derived by Receiving Party from such disclosed information.

"**Day**" **or** "**day**" means a calendar day, unless otherwise specified.

"**Disclosing Party**" means a Party providing Confidential Information to the Receiving Party.

"**Effective Date**" has the meaning ascribed to it in the Preamble.

"**Equipment Purchase and Sale Agreement**" means a definitive agreement to be entered into by Alta and WattStock for the purchase by Alta from WattStock of an LM6000 Generator Set.

"**Exclusivity Period**" has the meaning ascribed to in Article 6.1.

"**Initial List of Assets**" has the meaning ascribed to in Article 2.1.

"**Inspection Conclusions and Estimates**" means any reports, condition assessments, analyses, recommendations, estimates to repair or refurbish, proposals, work scopes or other information prepared by WattStock or for WattStock by any WattStock subcontractor based upon Inspection Data.

"**Inspection Data**" means any information documenting the existing condition of the Asset including borescope photos, videos, operation and maintenance logs or other data obtained during the course of an Asset inspection but excluding any Inspection Conclusions and Estimates.

"**LM6000 Generator Set**" means a skid-mounted, GE aeroderivative combustion turbine power generation package refurbishment by WattStock.

2

**"Owner"** means the person or entity that owns or controls the right to sell an Asset. The term "Owner" may include third-party agents or brokers retained by the title holder of the Asset to find potential buyers.

**"Receiving Party"** means a Party to whom Disclosing Party provides Confidential Information.

**"Representatives"** of a Party means any attorneys, accountants, consultants, agents and advisors, as well as actual or prospective partners, joint venturers, co-owners, lenders, financing parties, underwriters, and equity investors.

**"Term"** has the meaning ascribed to it in Article 5.

### Article 2.    Identifying and Prioritizing LM6000 Generator Sets

2.1    Promptly following the Effective Date, WattStock will deliver to Alta as Confidential Information an initial list of Assets that WattStock believes may be available for purchase. The initial list will include general information about the country of the Asset's last known location, its approximate age, and if available, price being asked by the Owner ("Initial List of Assets").

2.2    Within two (2) Business Days following Alta's receipt of the Initial List of Assets, Alta shall (i) advise WattStock in writing of any Asset on the Initial List of Assets that Alta has been in negotiations with the Owner to purchase such Asset within the last six (6) months, and (ii) provide WattStock with reasonable documentation demonstrating Alta's prior awareness of the Asset and Alta's efforts to purchase same. Alta and WattStock will jointly determine the best strategy to transition the purchase lead from Alta to WattStock.

2.3    The Parties shall jointly rank-order the Initial List of Assets with goal of developing a list of top target Assets sufficient, once refurbished, as required, by WattStock, to make up nine (9) LM6000 Generator Sets.

2.4    At any time during the Term of this Agreement, either Party may disclose to the other Party as Confidential Information additional Assets that were not on the Initial List of Assets. In such event, the Party receiving the disclosure information shall within two (2) Business Days following its receipt of the newly disclosed Asset, (i) advise the disclosing Party in writing that the receiving Party has been in negotiations with the Owner to purchase such Asset within the last six (6) months, and (ii) provide the disclosing Party with reasonable documentation demonstrating the receiving Party's prior awareness of the Asset and its efforts to purchase same. Alta and WattStock will jointly determine the best strategy to transition the purchase lead from Alta to WattStock.

### Article 3.    Securing Right to Purchase Units

3.1    With approval of Alta, WattStock will arrange with the Owner of an Asset an inspection to evaluate the condition and refurbishment requirements of such Asset. Alta understands and acknowledges that the types of Asset inspections that WattStock will be able to perform in the

Exhibit A - Page 3

field cannot identify all defects in an Asset, even with the benefit of borescope inspections of the internals of a combustion turbine engine. Alta will be responsible for reimbursing WattStock for WattStock's out-of-pocket, expenses incurred in performing Asset inspections. Aggregate expenses in excess of $20,000 will require prior written Alta approval. WattStock shall provide Alta with a copy of the Inspection Data and WattStock may retain a copy of the Inspection Data. Any Inspection Conclusions and Estimates delivered by WattStock to Alta shall be WattStock Confidential Information.

3.2     Following inspection of Assets sufficient to make-up a generator package, WattStock will provide to Alta as Confidential Information a not-to-exceed price for an agreed upon scope of work to complete an LM6000 Generator Set. For the avoidance of doubt, the agreed upon scope of work for the LM6000 Generator Set will exclude any defects that are not reasonably identifiable through the field inspections performed by WattStock pursuant to Article 3.1.

3.3     Prior to WattStock securing from the Owner of an Asset the exclusive right to purchase same, WattStock and Alta would agree in writing on the terms, including the amount of any non-refundable payments Alta would agree upon in order that WattStock may secure the right to purchase the Asset.

3.4     WattStock would then enter into negotiations with the Owner of an Asset on purchase terms or a purchase option consistent with the terms approved by Alta. Commencing from the date that WattStock and Alta have agreed pursuant to Article 3.1 that WattStock should inspect an Asset and continuing through the first to occur of the date that (i) Alta rejects such Asset, (ii) Owner declines to grant WattStock an exclusive right to purchase such Asset, or (iii) is sixty (60) days following WattStock's latest proposal to the Owner of an Asset to grant WattStock an exclusive right to purchase such Asset (or such longer period as may be agreed by the Parties) and Owner still has not granted WattStock an exclusive right to purchase the Asset, WattStock agrees it shall not market such Asset to any third-parties.

### Article 4. Refurbishing of Assets for Alta

4.1     Alta and WattStock will enter into one or more definitive Equipment Purchase and Sale Agreement describing the scope, terms, and price under which Alta would purchase from WattStock each LM6000 Generator Set.

4.2     Alta acknowledges that the price for each LM6000 Generator Set may vary due to the variable conditions of each Asset and the variable scopes of refurbishment work that may be required for each Asset. Certain defects or conditions, including what is commonly referred to as "fallout", are not discoverable until the Asset is disassembled in a repair shop setting. To the extent such additional repairs are discovered, the Parties would agree to a change order to the Equipment Purchase and Sale Agreement, including price and schedule to perform the work.

4.3     All amounts paid by Alta to WattStock for payment to the Owner to secure the Asset (excluding reimbursement of WattStock expenses described in Article 3.1) shall be treated as payments toward the purchase price of the LM6000 Generator Set.

4

**Exhibit A - Page 4**

4.4     If Alta and WattStock are unable to reach agreement on an Equipment Purchase and Sale Agreement then the Parties will agree upon a plan for dealing with any Assets that were secured with the intent of incorporation into an LM6000 Generator Set.

4.5     Failure by the Parties to reach agreement on any one (1) Equipment Purchase and Sale Agreement shall not be grounds for terminating this Agreement.

## Article 5. Term

5.1     The term of this Agreement shall be twenty-four (24) months following the Effective Date, unless the Parties have agreed to an extension in writing or the Agreement has been earlier terminated pursuant to Article 11.

## Article 6. Exclusivity and Non-Circumvention

6.1     For any Assets that an Owner has granted WattStock an exclusive right to purchase during the Term of this Agreement, Alta will have an exclusive right to purchase an LM6000 Generator Set from WattStock utilizing such Asset for the period equal to WattStock's exclusivity ("Exclusivity Period").

6.2     Without derogation of any confidentially obligations pursuant to Article 7, during the Term of this Agreement and for a period of twelve (12) months following the expiration or termination of this Agreement for Assets that have been inspected pursuant to Article 3 of this Agreement or for a period of six (6) months for Assets that have not been inspected pursuant to Article 3 of this Agreement:

- A. Alta agrees that neither it, nor its agents, Representatives, or authorized assignees, will directly or indirectly (i) purchase or (ii) secure an exclusive right to purchase or (iii) cause another person or entity to purchase or secure an exclusive right to purchase an Asset (1) on the Initial Assets List or (2) otherwise disclosed by WattStock to Alta during the Term of this Agreement; and
- B. WattStock agrees that neither it, nor its agents, Representatives, or authorized assignees, will directly or indirectly (i) purchase or (ii) secure an exclusive right to purchase or (iii) cause another person or entity to purchase or secure an exclusive right to purchase an Asset disclosed by Alta to WattStock during the Term of this Agreement, except as otherwise provided in the Agreement.
- C. WattStock shall be free to purchase an Asset without any restrictions or further obligations to Alta with respect to such Asset in the following circumstances:
    - i.    If Alta rejects an Asset for use in connection with the Business Purpose for any reason;
    - ii.   If WattStock is unable to reach agreement with Owner on purchase terms or a purchase option consistent on the terms approved by Alta;
    - iii.  If Alta and WattStock cannot agree on terms of an Equipment Purchase Sale Agreement.

5

### Article 7. Confidentiality

7.1    The Parties agree that the WattStock Standard Mutual Nondisclosure Agreement that was entered by the Parties on or about May 8, 2018 is hereby superseded by this Agreement. Any Confidential Information disclosed pursuant to that prior Mutual Nondisclosure Agreement shall continue to be deemed Confidential Information protected against disclosure pursuant to this Article 7.

7.2    Confidential Information shall not be disclosed to any third party by Receiving Party or any of its Affiliates or Representatives, and shall not be used by Receiving Party or any of its Affiliates or Representatives for any purpose other than the Business Purpose, including but not limited to developing and/or providing any product or service or establishing any relationship that is competitive with or against the best interests of the Disclosing Party.  Confidential Information shall be held in strict confidence by the Receiving Party and shall not be disclosed in any manner whatsoever without the prior written consent of the Disclosing Party, except to those Affiliates or Representatives of the Receiving Party with a need to know the Confidential Information in connection with the Business Purpose. The Receiving Party shall inform any of its Affiliates or Representatives to whom Confidential Information is disclosed of the existence of the restrictions in this Article 7, and that the Confidential Information has been shared with the Receiving Party in strict confidence. The Receiving Party shall be responsible for any breach or threatened breach of this Article 7 by its Affiliates or Representatives or any third-party to whom its Affiliates or Representatives disclose Confidential Information. The Receiving Party and its Affiliates and Representatives shall protect the Confidential Information by using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized use, dissemination or publication of the Confidential Information as the Receiving Party uses to protect its own confidential and proprietary information.

7.3    The Disclosing Party has reserved and shall retain all rights, title, and interest to the Confidential Information disclosed to the Receiving Party. No express or implied license or right is granted to Receiving Party with respect to any intellectual property or other proprietary rights of the Disclosing Party with respect to the Confidential Information. The Receiving Party shall not acquire any patent, copyright, trademark, or other intellectual property rights in such Confidential Information except for the limited right to use the Confidential Information for the specific purposes described herein. Any invention made or discovery based upon or arising from the Confidential Information is, and shall remain, the sole property of the Disclosing Party.

7.4    This Article 7 imposes no obligation upon the Receiving Party with respect to Confidential Information that: (i) is or becomes generally known or publicly available through no fault of the Receiving Party; (ii) was known to the Receiving Party on a non-confidential basis prior to disclosure by the Disclosing Party (iii) is lawfully obtained by the Receiving Party from a third-party under no obligation of confidentiality or (iv) is independently developed by or for the Receiving Party without use of the Confidential Information.

7.5    In the event that the Receiving Party is requested or required (by oral questions, interrogatories, requests for information, or by applicable legal or regulatory authority or by any

**Exhibit A - Page 6**

rule or regulation of any stock exchange or market or by any administrative or government body) to disclose any Confidential Information, the Receiving Party shall promptly notify the Disclosing Party in writing of such request or requirement prior to disclosure so that the Disclosing Party may seek an appropriate protective order and/or waive compliance with the terms of this Article 7, as applicable. The Parties shall cooperate with each other and their respective counsel in any Party's efforts to prevent such disclosure of Confidential Information. In the event that a protective order or other remedy is not obtained, by the time that the Receiving Party is required to disclose the Confidential Information, or the Disclosing Party waives compliance with the provisions hereof, the Receiving Party agrees to furnish only that portion of the Confidential Information that it reasonably determines, in consultation with its counsel, is legally required to be disclosed, and to exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information after its disclosure.

7.6     At any time upon written request of the Disclosing Party, the Receiving Party shall promptly destroy (and supply written confirmation thereof to the Disclosing Party) all Confidential Information, including all copies, summaries, extracts and notes thereof, in possession of the Receiving Party or any of its Affiliates or Representatives.

7.7     Neither Party makes any representations or warranties, whether written or oral, statutory, express or implied. with respect to any information provided hereunder, including without limitation any warranty of accurateness, completeness, merchantability or fitness for a particular purpose. Neither the Disclosing Party nor any of its Affiliates or Representatives shall have any liability resulting from the use of the Confidential Information by the Receiving Party.

7.8     Notwithstanding any expiration or termination of this Agreement, all obligations of confidentiality and all restrictions on the use of Confidential Information under this Article 7 shall remain in effect for a period of three (3) years following the date of expiration of termination, and with respect to Confidential Information that constitutes a trade secret under applicable law, for as long as such information remains a trade secret.

7.9     The Parties hereto agree that money damages would not be a sufficient remedy for any breach of this Article 7 and that the Disclosing Party shall be entitled to injunctive or other equitable relief to remedy or prevent any breach or threatened breach of this Article 7. Such remedy shall not be the exclusive remedy for any breach of this Article 7 but shall be in addition to all other rights and remedies available at law or in equity.

## Article 8. Indemnification

8.1     Both Alta and WattStock agree to indemnify and hold one another harmless from and against any and all liability, loss, expense, attorneys' fees, or claims for physical injury to third-parties and/or physical damages to property of third-parties from or in any way connected to the performance of this Agreement, but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from such indemnifying Party's negligence, willful misconduct or intentional acts.

7

**Exhibit A - Page 7**

### Article 9. Limitation of Liability

9.1    EXCEPTING ARTICLE 6 (EXCLUSIVITY AND NON-CIRCUMVENTION), ARTICLE 7 (CONFIDENTIALITY), AND 8 (INDEMNIFICATION):

A. **TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH PARTY AGREES TO LIMIT THE OTHER PARTY'S LIABILITY FOR ANY AND ALL CLAIMS, LOSSES, COSTS, DAMAGES OF ANY NATURE WHATSOEVER OR CLAIMS EXPENSES FROM ANY CAUSE OR CAUSES, INCLUDING ATTORNEYS' FEES AND COSTS AND EXPERT-WITNESS FEES AND COSTS, SO THAT THE TOTAL AGGREGATE LIABILITY OF A PARTY TO THE OTHER SHALL NOT EXCEED THE AMOUNT OF USD $100,000. IT IS INTENDED THAT THIS LIMITATION SHALL APPLY TO ANY AND ALL LIABILITY OR CAUSE OF ACTION ARISING UNDER THIS AGREEMENT HOWEVER ALLEGED OR ARISING, UNLESS OTHERWISE PROHIBITED BY LAW.**

B. **NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, AND TO THE FULLEST EXTENT PERMITTED BY LAW, NEITHER PARTY, THEIR RESPECTIVE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, REPRESENTATIVES, CONTRACTORS OR SUBCONTRACTORS SHALL BE LIABLE TO THE OTHER OR SHALL MAKE ANY CLAIM FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR CONNECTED IN ANY WAY TO THIS AGREEMENT. THIS MUTUAL WAIVER OF CONSEQUENTIAL DAMAGES SHALL INCLUDE, BUT IS NOT LIMITED TO, LOSS OF USE, LOSS OF PROFIT, LOSS OF BUSINESS, LOSS OF INCOME, LOSS OF REPUTATION OR ANY OTHER CONSEQUENTIAL DAMAGES THAT EITHER PARTY MAY HAVE INCURRED FROM ANY CAUSE OF ACTION INCLUDING NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT AND BREACH OF STRICT OR IMPLIED WARRANTEE.**

### Article 10. Warranty Disclaimer

10.1    WattStock makes no warranty, express or implied, including regarding the condition of an Asset or title thereto. All warranties, if any, to be made by WattStock to Alta will be set forth in any executed Equipment Purchase and Sale Agreements.

### Article 11. Termination

11.1    Neither Party may terminate the Agreement for its convenience.

11.2    Alta may terminate the Agreement for cause in the event (i) of insolvency or bankruptcy of WattStock or (ii) a material breach of this Agreement by WattStock which WattStock fails to cure within thirty (30) days after notice thereof from Alta.

11.3    WattStock may terminate the Agreement for cause in the event (i) of insolvency or bankruptcy of Alta or (ii) a material breach of this Agreement by Alta which Alta fails to cure within thirty (30) days after notice thereof from WattStock.

11.5    Expiration or termination of this Agreement shall not terminate, modify or otherwise impact any Equipment Purchase and Sale Agreement in effect as of the effective date of

expiration or termination of this Agreement; provided, however, in the event of a bankruptcy by one Party, the non-filing Party shall have the right to terminate any or all pending Equipment Purchase and Sale Agreement(s) for cause.

### Article 12. Miscellaneous

12.1    The Agreement shall be governed by the laws of the state of Texas. Any disputes involving this Agreement will be adjudicated by any court of competent jurisdiction in Dallas, Texas.

12.2    Any notice or other formal communication to be given under this Agreement shall be in writing and signed by or on behalf of the Party giving it. All such communications will be deemed given: (a) at the time of delivery, if delivered to the appropriate address by hand or by internationally recognized overnight courier service (costs prepaid); (b) at the time of transmission, if sent by fax or email with confirmation of transmission by the transmitting equipment; or (c) at the time of receipt or rejection by the addressee, if sent by certified mail, return receipt requested, provided that, in each case, where the delivery, transmission, receipt or rejection occurs outside working hours, notice shall be deemed given at the start of working hours on the next business day. The mailing or delivery addresses, email addresses and fax numbers for the Parties for the purpose of this clause are:

**If to Alta:**

| | |
|---|---|
| COMPANY: | Alta Power LLC |
| ATTENTION: | Matthew Laterza |
| ADDRESS: | 4605 Post Oak Place Dr, Suite 270 |
| CITY: | Houston |
| STATE: | Texas |
| ZIP: | 77027 |
| EMAIL: | mlaterza@altapowerdev.com |
| Copy to: | twest@altapowerdev.com |

**If to WattStock:**

| | |
|---|---|
| COMPANY: | WattStock LLC |
| ATTENTION: | Jay Manning |
| ADDRESS: | Suite 850, 4040 North Central Expressway |
| CITY: | Dallas |
| STATE: | Texas |
| ZIP: | 75204 |
| EMAIL: | j.manning@wattstock.com |
| Copy to: | p.jenevein@wattstock.com |

12.3    Each Party hereto has been represented by counsel and participated in the drafting of this Agreement. This Agreement shall be construed as if drafted jointly by the Parties and no

9

**Exhibit A - Page 9**

presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

12.4    Each Party shall bear its own legal and other costs in connection with the negotiation and preparation of this Agreement and any subsequent definitive agreements contemplated hereby.

12.5    Each Party agrees to comply with all applicable laws during the performance of its obligations pursuant to this Agreement, including:

A. Fair Labor Standards Act of 1938, as amended;
B. Occupational Safety and Health Act of 1970, as amended;
C. anti-bribery and anti-corruption laws, including, as applicable, the United States Foreign Corrupt Practices Act and the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions dated 21 November 1997;
D. any applicable laws and regulations concerning the export or import of products or technology; and
E. applicable anti-money laundering, anti-terrorism and related laws of the United States and, when applicable, the country in which an Asset is located.

12.6    Each Party represents and covenants to the other that it will not directly or indirectly:

A. Offer, give, make, promise, pay or authorize the offering, giving, making, promising or payment of any money, gift, or anything of value to any government official, that is an officer or employee of any government, or any department, agency or instrumentality thereof, any public international organization, any person acting in an official capacity on behalf of such government, any candidate for or appointee to a political or government office, or any political party;
B. Knowingly engage in any transaction which involves:
    i.   Receiving, transferring, transporting, retaining, using, structuring, diverting, or hiding the proceeds of any criminal activity whatsoever, including drug trafficking, fraud, and bribery of any individual covered in 12.6.A above;
    ii.  Engaging, becoming involved in, financing, supporting financially or otherwise sponsoring, facilitating, or giving aid or comfort to any terrorist person, activity or organization; and
    iii. Employing, engaging in any transaction or otherwise conducting business with a "designated person," namely a person or entity that appears on any list issued by the United States or the United Nations with respect to money laundering, terrorism financing, drug trafficking, or economic or military embargoes.

12.7    This Agreement does not create any agency or employment relationship, partnership, joint venture or co-venture between Alta and WattStock. Neither Party is granted any express or implied right or authority to assume or to create any obligation on behalf of or in the name of the other Party. Each Party shall pay for all social security, federal income taxes, unemployment insurance, workmen's compensation insurance, pensions, annuities or other liabilities or taxes incurred by, or on behalf of, or for the benefit of such Party or any of its Representatives, agents,

**Exhibit A - Page 10**

employees or servants who are not directly employed by the other Party, and arising out of the
performance by the its obligations under this Agreement.

[*SIGNATURE PAGE FOLLOWS*]

IN WITNESS WHEREOF, the parties have executed this Master Agreement in duplicate originals effective as of the Effective Date.

WATTSTOCK LLC

By: _____

Printed Name: _____

Title: _PRESIDENT_

ALTA POWER LLC

By: _____

Printed Name: _Matthew Lederza_

Title: _CFO_

EXECUTION COPY

### FIRST AMENDMENT TO MASTER AGREEMENT

This First Amendment to Master Agreement ("Amendment") is made and entered into as of the 5th day of February, 2020 ("Amendment Effective Date") by and between ALTA POWER LLC, a Texas limited liability company ("Alta") with offices at 4605 Post Oak Place Dr. Suite 270, Houston, TX 77027, and WATTSTOCK LLC, a Texas limited liability company ("WattStock") with offices at Suite 850, 4040 North Central Expressway, Dallas, Texas 75204. Alta and WattStock are also each referred to herein as a "Party" and collectively as the "Parties".

WHEREAS, Alta and WattStock entered into that certain Master Agreement dated effective as of the 27th day of February 2019 ("Original Agreement"); and

WHEREAS, Alta and WattStock desire to amend the Original Agreement to make certain changes to the Original Agreement as are set forth in this Amendment.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree that the Original Agreement is hereby amended as is set forth below. Unless otherwise expressly provided in this Amendment, defined terms used in this Amendment shall have the meanings ascribed to them in the Original Agreement.

Section 6.2(A) of the Original Agreement is hereby amended and restated to read:

"Alta agrees that neither it, nor its agents, Representatives, or authorized assignees, will directly or indirectly (i) purchase or (ii) secure an exclusive right to purchase or (iii) cause another person or entity to purchase or secure an exclusive right to purchase an Asset (1) on the Initial Assets List or (2) otherwise disclosed by WattStock to Alta during the Term of this Agreement, except as may be expressly agreed by WattStock in writing; and."

1.      Miscellaneous.  This Amendment shall become effective only upon full execution and delivery by Alta and WattStock.  All provisions of the Original Agreement not explicitly amended or modified in this Amendment shall remain in full force and effect, and the Original Agreement, as modified by this Amendment, shall be binding upon and shall inure to the benefit of the parties hereto, their successors and permitted assigns.

2.      Applicable Law and Venue.  This Amendment shall be governed by the laws of the state of Texas.  Any disputes involving this Agreement will be adjudicated by any court of competent jurisdiction in Dallas, Texas.

3.      Counsel Review.  Each Party hereto has been represented by counsel and participated in the drafting of this Amendment. This Amendment shall be construed as if drafted

1

Exhibit A - Page 13

EXECUTION COPY

jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Amendment.

4.    Legal Costs. Each Party shall bear its own legal and other costs in connection with the negotiation and preparation of this Amendment.

5.    Counterparts. This Amendment may be executed in any number of counterparts. All counterparts together will be taken to constitute one instrument.

IN WITNESS WHEREOF, the parties have executed this Amendment in duplicate originals effective as of the Amendment Effective Date.

**ALTA POWER LLC**, a Texas limited liability company,

By: _____
Name: _Matthew Lutozq_
Title: _CFU_

**WATTSTOCK LLC**, a Texas limited liability company

By: _____
Name: _____
Title: _CEO_

2

**Exhibit A - Page 14**

# EXHIBIT
# B



# WattStock LLC Limited Notice to Proceed Proposal

## TO

## Alta Power LLC

### FOR THE

### Goodlow Peak Power Site

#### FOR

### Two (2) TRUEpackage™ LM6000 PC Sprint GTG's

##### December 23,, 2019

Prepared by: Jay C. Manning
J.MANNING@WATTSTOCK.COM
713.248.4148

WattStock Limited Notice to Proceed Proposal to Alta Power
CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 1 | 15

**Exhibit B - Page 1**



December 23, 2019

Mr. William Phelps
Alta Power LLC
4605 Post Oak Place Dr., Suite 270
Houston, TX 77027

Subject: LM6000PC TRUEPackage Limited Notice to Proceed Proposal for the Goodlow Site

Dear Bill,

After numerous meetings and discussions between and among WattStock LLC, Alta LLC, and GE, we have prepared the following revised proposal. This Proposal is also sometimes referred to herein as Purchase Order.

All terms and conditions of our proposal are contained within our attached Proposal/Purchase Order.

Thank you for this opportunity to work with Alta, and please do not hesitate to call me if you have any questions.

Regards,

WattStock LLC

Jay C. Manning
**President**

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

**Exhibit B - Page 2**



## 1. Scope of LNTP Work and LNTP Pricing

| Description | Quantity | Delivery | Price ($) |
|---|---|---|---|
| Woodard Controls Upgrade Hardware | 2 | 2/28/2020 | 453,218 |
| Fin-Fan Lube Oil Cooler | 1 | 2/28/2020 | 188,415 |
| Internal Gas Vent Valve | 2 | 2/28/2020 | 12,495 |
| Generator Enclosure Design to modify from 50Hz Design | 1 | 2/28/2020 | 431,635 |
| Gas Turbine/Generator Coupling | 1 | 2/28/2020 | 90,452 |
| Generator Lube Oil (GLO) Skid | 2 | 2/28/2020 | 443,390 |
| Automatic Voltage Regulator - EX2100e (AVR) | 2 | 2/28/2020 | 44,855 |
| External Block & Bleed Gas Valves | 2 | 2/28/2020 | 69,113 |
| Approx. 1100 hours of Engineering Support for Engineering Drawings | 1 | 2/28/2020 | 149,858 |
| Woodward Acarsoy Cancellation Fee 1 NA | 1 | N/A | 48,213 |
| GE Acarsoy Engineering Labor Charge 1 NA | 1 | N/A | 32,609 |
| Supplier Non-Returnable/Cancellation/Restocking fee's* | TBD* | TBD | TBD |
| 20% WattStock Markup | | N/A | 491,063 |
| TOTAL (subject to maximum increase of $285,000 for items marked *) | | | 2,455,316 |

Notes to Above Table:

(i) *Any Supplier materials related to the 3rd Acarsoy Unit have been cancelled. Those materials that are non-returnable, or subject to supplier cancellation/restocking fees, GE will invoice WattStock at cost plus 10%, and WattStock will in turn invoice Alta for the amount invoiced by GE without further markup. These fees are for items such as: Generator GLO, block valves, gas valves, AVR, etc.*

(ii) *Any reference to Acarsoy cancellation fees does not refer to any cancellation fees or liability that may be payable by WattStock if the Acarsoy PSA is terminated.*

(iii) *Note: The above price is in 2019 US Dollars, and does not include applicable sales, excise, value added, use or similar taxes.*

## 2. LIST OF ENGINEERING ITEMS – *Due within five (5) business days following project financial closing:*

Preliminary Main Unit (General Arrangement)
Preliminary Anchor Bolt
Preliminary One-Line Diagram
Preliminary Foundation Loads
Air Filter (General Arrangement)
Sprint Skid (General Arrangement)
Water Injection (General Arrangement)
Aux Skid (General Arrangement)
Plan & Elevation (P&E) for TCP
Technical Specification for package motors and heaters

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 3 | 15

Exhibit B - Page 3



## 3. Changes

The LNTP Price shall be adjusted as necessary to take account of (a) Change Orders, or (b) other adjustments specifically provided for in this Proposal. Prices shall not change without the express written consent of Customer in a Change Order signed by both parties.

Changes to specifications, drawings, services or hardware will be evaluated by Seller for a Change in Scope to the Proposal. Seller will quote the changes and a Customer Change Order must be received before work is to proceed.

Storage Costs, additional travel, delays at work, unit restart delays and overtime work out of scope of the project will be subject to the Change Order process above and considered additional work and will be charged according to Seller's published rates at time of execution and in lieu of any pre-existing agreement. As of the date of this revision to the Proposal, no such additional work has occurred.

## 4. Compliance

Compliance and certifications are within current Seller's design practices and standards. The price presented here does not include compliance with any state or local codes unless expressly defined by Customer prior to sale.

## 5. Proposal Basis

Price quoted herein is valid for five (5) days.
Price quoted is per the Terms and Conditions stated herein.
Parts and Services are subject to prior sale.
Subject to Article 2 on this LNTP, delivery time of drawings shall be confirmed upon the execution of Equipment and Services Supply Agreement.

## 6. Commercial Items

Terms and Conditions

This Proposal is in accordance with WattStock Terms and Conditions attached hereto as Exhibit A. In the event of any conflict in the terms and conditions between this LNTP agreement and the WattStock Terms and Conditions, the terms and conditions of the proposal shall govern. Customer and Seller agree that in the event a firm ESA is executed for the TRUEPackages (i) all payments made under this LNTP shall be applied to the ESA Purchase Price**, (ii) all work performed under this LNTP will be deemed to have been work performed pursuant to the ESA, and (iii) the terms and conditions of this LNTP shall be replaced in their entirety by the terms and conditions of the ESA. Upon execution of this LNTP by both parties and receipt by WattStock of the first $750,000 payment referenced in Article 7, this LNTP will supersede the letter signed by Alta Power LLC on August 9, 2019 that the parties have commonly referred to as the "backstop letter".

**As of the date of this LNTP Proposal, the Purchase Price is $19,583,426, based upon the below listed assumptions:
- Scope of work described in Exhibit B attached to December 21, 2019 draft of Equipment Supply Agreement;
- Purchase of 2 Nuh Cemento Units for a combined price of $8,125,000;
- Project financial closing no later than February 28, 2020;
- Guaranteed substantial completion no sooner than 330 days following the project financial closing and effective date of the Equipment Supply Agreement;
- Site does not change;

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 4 | 15

Exhibit B - Page 4



- Schedule is not substantially different from 330 days following the project financial closing and effective date of the Equipment Supply Agreement;
- Lender due diligence changes;
- ESA changes from present version;
- ESA Purchase Price subject adjustment in accordance with final terms of the Equipment Supply Agreement, including for example, discovery of latent or concealed conditions which differ materially from those described in the borescope inspection reports.

## 7. Payment Terms & Schedule

| Milestone | Amount | Net Receipt of Invoice |
|---|---|---|
| 1. Upon LNTP Purchase Order Execution | $750,000 | 2 business Days |
| 2. Second Invoice | $750,000 | 5 days |
| 3. Invoice Issued January 28, 2019 Prior to Expected Parts Shipment (Cash received prior to releasing material for shipment) | $464,253 | 25 days |
| 4. Supplier Non-Returnable/Cancellation/Restocking Fees (if any) - to be invoiced no later than January 28, 2020 | TBD | 25 days |
| 5. Upon Financial Close of the Project | $491,063 | 2 days |

All payments will be made via wire transfer and, except as otherwise provided in the Milestone table above, are due no later than 30 days from receipt of Seller's invoice without any setoff (including, without limitation, setoff under other contracts with Seller or with WattStock LLC or its affiliates). These terms will take precedence over any conflicting payment terms referenced. Seller agrees to provide Buyer within two (2) business days following Seller's receipt of Buyer's wire transfer of funds paid to Seller pursuant to this LNTP a wire transfer confirmation showing that such payments made by Buyer to Seller (excluding the payment for Seller's 20% markup to be made upon closing of Buyer's financing for the project referenced in Milestone #5) have been remitted to General Electric Company.

## 8. Termination Schedule

In the event Buyer terminates the Purchase Order through no fault of Seller, or Seller terminates the Purchase Order for Buyer default, the Buyer shall be liable to Seller for the following termination amounts:

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

**Exhibit B - Page 5**



| Termination on or Before | Termination Amount Due (USD) |
|---|---|
| 8/16/2019 | 15% of Contract |
| 9/16/2019 | 30% of Contract |
| 10/25/2019 | 75% of Contract |
| 12/6/2019 | 100% of Contract |

Upon receipt of payment of all amounts due, (i) WS will deliver to Buyer all materials procured under this LNTP to which WattStock has received title from GE, and (ii) Buyer and Seller shall then have no further liability to the other under this LNTP.

### 9. Invoicing Methods
Unless mutually agreed otherwise, WattStock shall submit invoices to Customer by e-mail, and if Customer so requests then WattStock shall also provide to Customer a paper invoice by regular mail.



## 10.Submittal and Acceptance

This proposal submitted by:

Name:   Jay C. Manning

Title:   President

For:   WattStock LLC

Date:   July 19, 2019

This Proposal is accepted by Customer:

Name:

Title:   CFO

For:   Alta Power LLC



**EXHIBIT A – TERMS AND CONDITIONS OF SALE**

1. Scope of Supply

1.1. The Seller shall supply the Equipment and perform the associated Services as more fully described in the Proposal, subject to the terms and conditions as set forth in the Contract. The Equipment and Services are collectively referred to herein as the "Work".

2. Price

2.1. The Buyer shall pay to the Seller the Contract Price in consideration of the Work. The Contract Price is exclusive of sales, VAT or other taxes, which will be added at the time of invoicing, unless a tax exemption or resale certificate is provided. The Contract Price shall be adjusted as necessary to take account of (a) Change Orders, including those related to the exercise of any options that may be described in the Proposal, or (b) other adjustments provided for in the Contract.

3. Payments

3.1. Payment of the Contract Price shall be made via wire transfer in accordance with the Payment Schedule and the payment terms set forth in the Proposal..

3.2. Wire transfer instructions shall be provided on each invoice. Payments are due ten [10] days from Buyer's receipt of Seller's invoice. Late payments shall be subject to an interest charge equal to the lesser of (i) five percentage points (5%) in excess of the prime rate as published in the Wall Street Journal, at that time, compounded on a monthly basis or (ii) the maximum rate allowed by applicable law.

3.3. Seller may require that any or all payments by Buyer to Seller will be secured by an on-demand irrevocable standby letter of credit issued or confirmed by a United States or other bank acceptable to Seller on terms acceptable to Seller ("Payment Security"). If required by Seller, the Payment Security shall become operative and delivered to Seller within (30) thirty Days after the Effective Date, but in any event prior to Seller delivery of the Equipment to Buyer. All Payment Security shall provide for partial payments pro rata on partial deliveries and for the payment of any charges for storage, export shipment, price adjustments, cancellation or termination, and all other payments due from Buyer under this Contract against Seller's invoice and certification of the charges and grounds for such payment. Buyer will increase the amount(s) and/or extend the validity period(s) and make appropriate modifications to any Payment Security within-ten (10) days of Seller's notification that such is necessary to provide for payments to become due.

4. Effect of Changes in Contract Price

4.1. If any adjustment results in an increase to the Contract Price, Buyer shall pay for the increase in accordance with the applicable Change Order and corresponding invoice submitted by Seller. If any adjustment results in a decrease in the Contract Price, payments previously made shall be retained by the Seller and will be applied to subsequent payments as they become due.

4.2. Seller shall not be responsible for back charges or field modifications performed by Buyer unless Seller authorizes such charges in writing prior to the incurrence thereof. Buyer specifically waives any right of set-off relating to such charges. Any claim or set-off for back charges

shall be accompanied by a copy of such written authorization. In no event shall Buyer offset any amounts due under the Contract by amounts that may be due Buyer from Seller or any of its Affiliates under this Contract or any other agreement, judgment or order.

5. Certain Buyer Obligations

5.1. In addition to the other Buyer obligations described in the Contract, Buyer shall be responsible for timely obtaining all permits required for owning, installing, operating and maintaining the Equipment, including environmental and use permits, all other licenses (including but not limited to export licenses, import licenses), exemptions, permits (including but not limited to foreign exchange permits and work permits), authorizations, approvals, local building and construction permits, and easements necessary for the construction and operation of the Facility, and shall be responsible for any additional costs, fees or fines arising from any delay or failure to obtain such permits, licenses, exemptions, authorizations or approvals, even though any such permits, licenses, exemptions, authorizations or approvals may be applied for by Seller.

5.2. Seller shall not be liable if any permits, licenses, exemptions, authorizations or approvals are delayed, denied, revoked, restricted or not renewed and Buyer shall not be relieved thereby of its obligations under this Contract, including paying Seller for the Equipment.

6. Delivery.

6.1. The Seller shall deliver the Equipment ExWorks (Incoterms 2010) ("Delivery").

7. Risk of Loss.

7.1. With respect to each item of Equipment, risk of loss shall pass to the Buyer upon the earliest of (i) Delivery, (ii) shipment to storage as provided hereinbelow, or (iii) passage of title to the Buyer pursuant to Contract.

8. Shipment to Storage.

8.1. If any part of the Equipment cannot be shipped to the Buyer when ready due to any cause not attributable to the Seller, the Seller may ship such Equipment to storage, such storage being in accordance with any technical specifications or other instructions provided by the Seller. Buyer shall make all reasonable efforts to inform Seller of the potential for this event to occur. If such Equipment is placed in storage, including storage at the Seller's facility, the following conditions shall apply: (i) title and risk of loss shall thereupon pass to the Buyer; (ii) any amounts otherwise payable to the Seller upon Delivery or shipment shall be payable upon presentation of the Seller's invoice(s); (iii) all expenses incurred by the Seller, such as for preparation for and placement into storage, handling, inspection, short-term preservation, storage, removal charges and any taxes shall be payable by the Buyer upon submission of the Seller's invoice(s); (iv) if the Contract includes Services, any such Services shall be subsequently changed to the rate prevailing at the time of actual use and Buyer shall pay the net increase; and (v) when conditions permit and upon payment of all amounts due hereunder, the Seller shall resume Delivery of the Equipment. Notwithstanding anything to the contrary contained herein, storage and shipment to storage, and arranging for insurance once in storage is

W A T T S T O C K   L I M I T E D   N O T I C E   T O   P R O C E E D   P R O P O S A L   T O   A L T A   P O W E R

C O N F I D E N T I A L :   N O T   F O R   D I S T R I B U T I O N

P a g e   8 | 15

**Exhibit B - Page 8**



8.2. the sole and direct responsibility of the Buyer and the Seller shall not assume any liability associated therewith and Buyer shall indemnify, defend and hold Seller harmless for any damages, costs, expenses and fees, including reasonable attorneys' fees associated therewith. Any Seller invoicing or collection related to shipment is only a service provided to the Buyer and represents no direct or indirect responsibility associated with storage.

9. Observation and Inspection

9.1. Observation at the Site.

9.1.1. The Seller shall be afforded access during normal business hours to observe the Work in progress at the Site. The Seller may visit the Site at any time or times, or may maintain representatives to observe Buyer's or Buyer's contractors work, provided such activity and Inspections do not unreasonably interfere with the Work.

9.2. Inspections and Tests at Seller's Facilities.

9.2.1. Upon the Buyer's request, the Buyer's inspector shall be provided reasonable access to the Seller's facilities during normal business hours to obtain information on production progress and make Inspections.

9.2.2. Inspections and Tests at Suppliers' Facilities.

9.2.3. Subject to the conditions set forth in the foregoing paragraph, the Seller will make reasonable efforts to obtain for the Buyer's access to Seller's suppliers' facilities for the purposes described in the paragraph above if applicable.

10. Warranty

10.1. Warranty Period.

10.1.1. The Seller shall warrant the Equipment and the associated Services on the terms set forth in this Article for twelve (12) months following the date the Equipment is energized at the Site or eighteen (18) months following the date of Seller's Notice of Delivery/Readiness to Ship, whichever period shall first expire (the "Warranty Period"), unless otherwise stated in the Proposal. Equipment must be transported and stored in accordance with Seller's recommendations.

10.2. Warranty Coverage

10.3. The Seller warrants to the Buyer that during the Warranty Period (i) the Equipment to be delivered hereunder (A) shall meet the technical specifications outlined in the Proposal when operated in accordance with the Seller's or original manufacturer's written guidelines or operation instructions and, in the absence thereof, in accordance with generally accepted operation practices of the electric power producing industry, and (B) shall be free from defects in material, workmanship and title; and (ii) the Services shall be performed in a competent, diligent manner.

10.4. Remedy

10.4.1. If the Equipment delivered or Services performed hereunder do not meet the above warranties during the Warranty Period, the Buyer shall promptly notify the Seller in writing and make the Equipment available for correction. The Seller shall thereafter, as soon as is practicable, correct any warranty defect, at its option and expense, (i) by re-performing the defective Services, (ii) repairing the defective part of the Equipment, or (iii) by making available necessary

replacement parts at Seller's factory. Buyer shall, at Seller's option, return any defective part that is replaced by Seller at Buyer's expense to Seller's designated repair facility within thirty (30) Days from the date of written instruction by Seller. The Seller shall provide technical advisory Services reasonably necessary for any such repair of the Equipment, but the Seller shall not be responsible for (i) removal or replacement of structures or other parts of the facility and (ii) site labor or transportation of parts or components. The Buyer shall be responsible for the installation of any repaired or replacement part and for payment of any customs duties or similar levies, which may be assessed as a result of the shipment of any such replacement parts. If a defect in the Equipment or part thereof cannot be corrected by the Seller's reasonable efforts, the Parties will negotiate an equitable adjustment in price with respect to such Equipment or part thereof, however the adjustment in price shall be limited to the price of the respective equipment

10.5. Warranty on Remedial Work.

10.5.1. Any re-performed service or repaired or replacement part furnished under this warranty shall carry warranties on the same terms as set forth above, except that the applicable warranty period for the repair/replacement part or re-performed Service shall be for the longer of (a) the remainder of the original Warranty Period or (b) three (3) months from the date of such re-performance, repair or replacement. In any event the repair/replacement warranty period and the Seller's responsibilities set forth herein for such repaired or replacement part shall end no later than three (3) months after expiration of the original Warranty Period.

10.6. Exclusions.

10.6.1. The Seller does not warrant the Equipment or any repaired or replacement parts against normal wear and tear, including that due to environment or operation, or erosion, corrosion or material deposits from fluids. The warranties and remedies set forth herein are further conditioned upon (i) the proper storage, installation, operation, and maintenance of the Equipment in conformance with the operation instruction manuals (including revisions thereto) provided by the Seller and/or its subcontractors or suppliers, as applicable (including any required warranty preservation services in the event of long term storage) and (ii) repair or modification pursuant to the Seller's instructions or approval. The Buyer shall keep proper records of operation and maintenance during the Warranty Period and make such records available to Seller for reasonable review and inspection.

11. Exclusive Remedies and Warranties.

11.1. THE PRECEDING PARAGRAPHS SET FORTH THE SOLE AND EXCLUSIVE REMEDIES FOR ALL CLAIMS BASED ON FAILURE OF OR DEFECT IN THE EQUIPMENT AND SERVICES PROVIDED UNDER THE CONTRACT, WHETHER THE FAILURE OR DEFECT ARISES BEFORE OR DURING THE WARRANTY PERIOD AND WHETHER A CLAIM, HOWEVER INSTITUTED, IS BASED ON CONTRACT, INDEMNITY, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE. THE FOREGOING WARRANTIES ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES AND GUARANTEES WHETHER WRITTEN, ORAL, IMPLIED

WattStock Limited Notice to Proceed Proposal to Alta Power

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 9 | 15

**Exhibit B - Page 9**



OR STATUTORY.    NO IMPLIED STATUTORY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL APPLY

12. Taxes

12.1. Seller Taxes.

12.1.1. Unless otherwise specified in the Contract, the Seller shall be responsible for, and shall pay directly, all sales and use taxes imposed on Seller or its subcontractors and for which they are required to pay sales and use tax, (b) all personal property taxes imposed on Seller, (c) all franchise and income taxes imposed on Seller or its subcontractors, and (d) all payroll, unemployment, occupational, or employment compensation tax, social security tax, or similar tax, each as imposed on Seller or its subcontractors ("Seller Taxes"). If Buyer deducts or withholds Seller Taxes, the Buyer shall furnish within thirty (30) Days of the Seller's request official receipts from the appropriate governmental authority for each deducted or withheld Seller Taxes.

12.2. Buyer Taxes.

12.2.1. Equipment exported from the United States is presumed to be exempt from Buyer taxes levied with the United States. When requested by Seller, Buyer agrees to furnish without charge evidence of tax or duty exemption acceptable to the taxing or customer authorities. Furthermore, if Buyer arranges for export shipment, Buyer agrees to provide Seller without charge, an export bill of lading. The Buyer shall be responsible for, and shall pay directly when due and payable, (a) any sales or use taxes, duties, or dues directly imposed on Buyer with respect to the Work or Equipment (b) real and personal property taxes on the Site, Facility or any Equipment to which Owner holds title at the relevant time; and (c) income taxes directly imposed on Buyer ("Buyer Taxes"). All payments due and payable by the Buyer to the Seller hereunder shall be made in the full amount of the Contract Price, free and clear of all deductions and withholding, for Buyer Taxes. If the Buyer deducts or withholds Buyer Taxes from Seller payments, the Buyer shall pay additional amounts to the Seller to cause the amounts actually received by the Seller, net of deducted or withheld Buyer Taxes, to equal the full amount of the Contract Price, and shall provide to the Seller within thirty (30) Days of Seller's request, accurate official receipts from the appropriate governmental authority for deducted or withheld Buyer Taxes. If the Seller is required to pay Buyer Taxes, the Buyer shall, promptly upon presentation of the Seller's invoice for such Buyer Taxes, pay to the Seller in the Contract Currency an amount equal to the U.S. dollar of such Buyer Taxes

13. Invoices.

13.1. The Seller shall issue an official value-added, sales (or similar) tax invoice in addition to the Contract Price, in accordance with applicable laws

14. Duty Drawback.

14.1. All rights to drawback of customs duties paid by the Seller to the customs authorities of the country of manufacture of any Equipment belong to and shall remain with Seller. Buyer agrees to cooperate with Seller and to furnish such documents to Seller as may be necessary to obtain drawback.

15. Changes

15.1. Changes Resulting from Force Majeure, Changes in Codes, or Changes in Law.

15.1.1. If any change to the Codes and Standards, Ambient Site Conditions, Site Requirements or any Change in Law has a negative impact in the cost or time to perform the Work or requires a change to the Equipment or Services, the Seller shall be entitled to a Change Order that includes equitable adjustments to the Contract Price and to the Scheduled Delivery Date(s) and other provisions of the Contract that are impacted. If the Seller is entitled to a Change Order, the Seller shall submit to the Buyer a draft Change Order.

15.2. Buyer-Initiated Changes.

15.2.1. The Buyer shall have the right to request that the Seller consider changes to the Equipment or the Services, including modifications, alterations or additions. If the Buyer wishes to request such a change, the Buyer shall notify the Seller in writing. Within fifteen (15) Days after receipt of such notice (unless otherwise extended by mutual agreement), the Seller shall advise the Buyer of the feasibility of the requested change, and shall submit to the Buyer a draft Change Order, unless the matter requires further investigation and research in which case Seller will provide an estimate of the time frame in which Seller will be able to submit a detailed response to Buyer.

15.3. Seller-Initiated Changes.

15.3.1. If the Seller wishes to propose a change, or if the Seller is entitled to a Change Order pursuant to the provisions of this Contract, the Seller shall submit to the Buyer a draft Change Order.

15.4. Contents of Draft Change Order

15.4.1. Any draft Change Order shall include: (i) a technical description of the proposed change in such detail as the Buyer may reasonably require, (ii) a lump sum firm price adjustment (increase or decrease) in the Contract Price, if any, caused by the proposed change, (iii) all potential effect(s), if any, on the Scheduled Delivery Date(s), or any other schedule or date for performance by the Seller hereunder caused by the proposed change, and (iv) all potential effect(s), if any, on the Seller's ability to comply with any of its obligations hereunder, including the Seller's warranties and Performance Guarantees caused by the proposed change.

15.5. Process for Concluding Change Order.

15.5.1. The Buyer shall, within two (2) Days from the date of receipt of such information, either approve or disapprove the draft Change Order in writing or request additional time to consider the draft Change Order. If the Buyer approves the Change Order, the Buyer and the Seller shall then sign the Change Order that shall operate as an amendment to this Contract. Any delays resulting from a delay in this procedure are the sole responsibility of the Buyer.

15.6. Agreement Required.

15.6.1. Except for Change Orders to which the Seller is expressly entitled pursuant to this Contract, all changes under this contract shall be subject to mutual agreement, and no Change Order will be effective until signed by both Parties.

16. Excusable Delays

WattStock Limited Notice to Proceed Proposal to Alta Power

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 10 | 15

Exhibit B - Page 10



16.1. The Seller shall not have any liability or be considered to be in breach or default of its obligations under this Contract to the extent that performance of such obligations is delayed or prevented, directly or indirectly, due to, but not limited to, the following:

16.1.1. causes beyond its reasonable control;

16.1.2. acts of God;

16.1.3. acts (or failures to act) of governmental authorities;

16.1.4. fires, severe weather conditions, floods earthquakes;

16.1.5. strikes or other labor disturbances;

16.1.6. war (declared or undeclared), terrorism, epidemics, civil unrest, riots;

16.1.7. delays or accidents in transportation or car or transporter shortages; or

16.1.8. delays in the prerequisite work of the Buyer, Buyer's other contractors or suppliers, or other acts (or omissions) of the Buyer, including but not limited to failure to promptly: (A) provide the Seller with information and approvals necessary to permit the Seller to proceed with work immediately and without interruption, or (B) comply with the terms of payment; or shipment to storage in accordance with the Contract.

16.2. The Seller shall notify the Buyer of any such excusable delay. Seller shall be entitled to a Change Order that includes equitable adjustments to the Contract Price and to the Scheduled Delivery Date(s) and other provisions of the Contract that are impacted.

17. General Indemnity

17.1. General Indemnity.

17.1.1. Each party (each an "Indemnifying Party") shall be liable to and indemnify the other party, its officers, employees, agents and subcontractors (each an "Indemnified Party") for any physical injuries to third parties or physical damage to third party property, and, at its expense, shall defend against and hold the Indemnified Party harmless from any claims raised by a third party arising in connection with the Contract, to the extent such physical damages are caused by the negligence of the Indemnifying Party or its officers, employees, agents or subcontractors to the extent the Indemnified Party is liable to the third party under applicable law.

17.2. Concurrent Negligence.

17.2.1. If physical damage or injury is caused by the joint or concurrent negligence of the parties, their officers, employees, agents, or subcontractors, the parties shall bear the loss in proportion to their or their officers', employees', agents' or subcontractors' degree of negligence.

17.3. Notice.

17.3.1. The indemnities provided in this Article shall apply only if the party seeking indemnity gives the Indemnifying Party prompt notice of any claim and provides the Indemnifying Party all necessary information and assistance so that the Indemnifying Party may, at its option, defend or settle the claim.

17.4. "Third Parties" Defined.

17.4.1. "Third parties" under this Article do not include the Parties, the owner of the Site, their affiliates, agents, successors or assigns, any operation or maintenance contractor of the Parties or the owner of

the Site, or any entity (i) with an equity or security interest in any Party or the owner of the Site, or their assets or property, (ii) that seeks to claim any rights, power or privileges of one of the Parties or the owner of the Site, or (iii) that seeks to claim as a third party beneficiary of one of the Parties or the owner of the Site. No portion of the Equipment, the Facility, electricity, fuel or hydrocarbons is "third party property" for the purposes of this Article.

18. Insurance

18.1. Insurance for Injuries to Workers (Worker's Compensation).

18.1.1. During the term of this Contract, both Parties shall maintain the insurance for work-related injuries or disease of their own employees in such forms and amounts as may be required by laws that are applicable to each Party and its employees.

18.2. General Liability and Automobile Insurance

18.2.1. During the term of this Contract, each Party shall maintain the following insurance coverage at its own expense to protect its own interests: (i) Commercial General Liability or Public Liability insurance, in broad form, either per occurrence and effective for at least three years after the expiration of the Contract, that includes coverage for contractual liability, bodily injury and third party property damage, with a combined single limit of not less than U.S. $1,000,000 per occurrence and U.S. $1,000,000 in the aggregate annually, for primary and excess policies combined; and (ii) automobile liability insurance covering all owned, non-owned, and hired automobiles used by it in connection with the Work, if any, with a combined single limit of not less than U.S. $1,000,000 per occurrence, for primary and excess policies combined.

18.2.2. Each of the foregoing insurance policies shall not be cancelled or materially changed without thirty (30) Days' advance written notice to the other Party or, in the case of non-payment, ten (10) Days' advance written notice. Upon request, each Party shall deliver to the other Party certificates of insurance showing that the foregoing insurance is in full force and effect.

18.3. Failure to Maintain Insurance.

18.3.1. If at any time the Buyer fails to maintain insurance complying with the requirements of the Contract in full force and effect, (a) the Buyer shall be responsible for any resulting losses or costs sustained by the Seller and shall hold the Seller harmless from actions brought against the Seller as the result of the absence of the Buyer's required insurance, and (b) the Seller shall not be required but may elect to do any of the following: (i) immediately suspend all or a portion of the Work and be entitled to an equitable adjustment in the price, schedule and other terms of this Contract for the impact of the suspension, (ii) pay premiums or purchase alternate insurance at Buyer's expense or (iii) pursue such other remedies as may be allowed by law, equity, or the Contract.

19. Buyer's Risks.

19.1. In no event shall the Seller be responsible for Buyer's Risks. Buyer's Risks include damages and losses due to (i) war, hostilities, terrorism, rebellion, revolution, civil disturbances, nuclear radiation or similar occurrence, (ii) acts or omissions of the Buyer, (iii) natural perils (such as flood or earthquake) or other perils to the extent that peril is



excluded from the ARBR/CAR policy coverage or the loss is in excess of the policy limits.

20. Suspension

20.1. Suspension by Buyer of Work at Site.

20.1.1. The Buyer shall have the right, at any time, to suspend Work at the Site upon written notice to the Seller. Any cost incurred by the Seller in accordance with any such suspension (including storage costs) shall be payable by the Buyer upon submission of the Seller's invoice(s). Performance of the Seller's obligations shall be extended for a period of time reasonably necessary to overcome the effects of such suspension.

20.2. Suspension by Buyer of Work in Seller's Facilities.

20.2.1. It is expressly agreed that the Buyer shall have no right to suspend Work of Seller on the Equipment before Delivery.

20.3. Suspension by Seller.

20.3.1. The Seller shall have the right to suspend all Work, including the delivery of any Equipment, upon the failure of the Buyer to make any payment when due. The Seller shall further have the right to suspend any shipment of the Equipment if all payments due prior to the applicable Scheduled Delivery Date have not been made. Any cost incurred by the Seller in accordance with any such suspension (including storage costs) shall be payable by the Buyer upon submission of the Seller's invoice(s). Performance of the Seller's obligations shall be extended for a period of time reasonably necessary to overcome the effects of such suspension, except that Seller's suspension shall not be deemed to extend the Warranty Period hereunder.

21. Termination for Cause

21.1. Grounds for Termination by Buyer.

21.1.1. The Buyer shall have the right to terminate the Contract for cause in the event that the Seller: (i) becomes insolvent, makes an assignment for the benefit of its creditors, has a receiver or trustee appointed for the benefit of its creditors, or files for protection from creditors under any bankruptcy or insolvency laws; (ii) substantially breaches and fails to comply or perform its material obligations hereunder (but only with respect to a material obligation for which this Contract does not provide exclusive remedies), (iii) notwithstanding satisfaction of all conditions precedent, Seller refuses to execute a loan agreement on terms substantially in accordance with the Loan Agreement Term Sheet attached to this LNTP, provided that: (A) the Buyer shall first have provided the Seller with written notice of the nature of such breach and of the Buyer's intention to terminate this Contract as a result of such breach, and (B) the Seller shall have failed within thirty (30) Days after receipt of such notice (or such extended period as is considered reasonable by the Parties) either (1) to commence to cure such breach and diligently thereafter to pursue such cure, or (2) to provide reasonable evidence that no such breach has occurred; or (iv) Seller's relationship with General Electric Company, or any of its affiliates, is terminated through no fault of the Buyer.

21.2. Remedy in the Event of Termination by Buyer.

21.2.1. If the Buyer terminates the Contract as provided above, the Buyer shall pay the Seller for that portion of the Contract Price allocable to the Equipment title transferred or Services performed prior to the termination. If the payments received by the Seller as of the date of such termination are in excess of such portion of the Contract Price, the Seller shall return the excess of such payments to the Buyer. In addition, the Seller shall pay to Buyer an amount equal to the difference between that portion of the Contract Price allocable to the terminated Work and such actual and reasonable amount paid by the Buyer to another vendor for equipment comparable to those terminated, subject to the limitation of liability set forth in Article 22.

21.3. Grounds for Termination by Seller.

21.3.1. The Seller shall have the right to terminate the Contract for cause in the event that the Buyer: (i) becomes insolvent, makes an assignment for the benefit of its creditors, has a receiver or trustee appointed for the benefit of its creditors, or files for protection from creditors under any bankruptcy or insolvency laws; or (ii) substantially breaches and fails to comply or perform its material obligations hereunder, including failure to comply with the requirement of the Contract, or fails to make any payment when due or to fulfill any payment conditions, including any payment security, as set forth in this Contract, provided: (A) that the Seller shall first have provided the Buyer with written notice of the nature of such failure and of the Seller's intention to terminate this Contract as a result of such failure, and (B) that the Buyer shall have failed within thirty (30) Days after receipt of such notice to correct such failure.

21.4. Remedy in the Event of Termination by Seller.

21.4.1. If the Seller terminates the Contract as provided above, the Buyer shall pay to the Seller the charges set forth in the Termination Schedule. In such event, Seller shall retain title to all Equipment not yet delivered to Buyer as of the effective date of termination.

22. Limitation of Liability

22.1. Limitation.

22.1.1. The total liability of the Seller for all claims arising out of or relating to the performance or breach of the Contract or use of any Equipment shall not exceed the portion of the Contract Price allocable to the portion of the Equipment giving rise to the claim. The Seller's liability shall terminate at the end of the Warranty Period for the Equipment giving rise to the claim. The Buyer may enforce a claim that accrued before that date by commencing an action, as applicable under the dispute resolution clause, before the expiration of the applicable statute of limitations or repose, but not later than ninety (90) Days after the expiry of the Warranty Period.

22.2. Consequential Damages.

22.2.1. The Seller shall not be liable for loss of profit or revenues, loss of product, loss of use of the Work or any associated equipment, interruption of business, cost of capital, cost of replacement equipment, downtime costs, increased operating costs, claims of the Buyer's customers for such damages, or for any special, consequential, incidental, indirect, punitive or exemplary damages.

23. Sale, Transfer, Assignment to Third Party.

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 12 | 15

Exhibit B - Page 12



23.1. If the Buyer is supplying, transferring or assigning the Work to a third party, the Buyer shall require the third party to agree to be bound by this Article. If the Buyer does not obtain this agreement for the Seller's benefit, or if the agreement is found void or unenforceable, the Buyer shall indemnify, defend and hold the Seller, its Affiliates, subcontractors and suppliers of any tier, and their agents and employees, individually or collectively, harmless from and against any and all liability arising out of claims made by the third party in excess of the limitations and exclusions of this Article.

24. Gratuitous Advice.
24.1. The Seller shall not be liable for any advice or assistance that is not required under this Contract.

25. Limitations to Prevail.
25.1. The limitations and exclusions in the Contract shall apply regardless whether a claim is based in contract (including warranty or indemnity), tort (including negligence or strict liability), statute, equity or any other extra-contractual theory.

26. Limitation of Remedies; Overriding Effect.
26.1. The Buyer's and the Seller's rights, obligations and remedies arising out of or relating to the Work are limited to those rights, obligations and remedies described in the Contract. This Article shall prevail over any conflicting or inconsistent terms in the Contract, unless those terms further restrict the Seller's liability.

27. Export Control
27.1. Export Controls.
27.1.1. The Buyer hereby agrees that it shall not, except as said laws and regulations may expressly permit, make any disposition by way of transshipment, re-export, diversion or otherwise, of U.S. origin goods and technical data (including computer software), or the direct product thereof, supplied by the Seller hereunder. The obligations of the Parties to comply with all applicable export control laws and regulations shall survive any termination, or discharge of any other contract obligations.
27.2. Buyer to Keep Informed.
27.2.1. The Buyer undertakes to keep itself fully informed of, and to comply with, the export control laws and regulations of the respective Government and any amendments thereof.

28. Assignment
28.1. Eligible Assignees.
28.1.1. An Eligible Assignee is: (i) an Affiliate of the Buyer, or (ii) an engineering or construction contractor under contract with the Buyer for the installation of the Equipment, provided that the Eligible Assignee offers Seller satisfactory evidence of its ability (both financial and otherwise) to fulfill the obligations of Buyer hereunder; in either case provided that the Seller would not be penalized or become subject to additional requirements under any Law as a result of entering into contract with such person.
28.2. Buyer's Right to Assign to Eligible Assignees.
28.2.1. The Buyer may once assign its rights and delegate its obligations under the Contract to an Eligible Assignee, provided: (i) that the Buyer shall notify the Seller of its intent to assign no less than ten (10) Days prior to the execution of any such assignment; (ii) that Buyer

shall either (at Seller's option and election) (A) guarantee the obligations of the assignee by executing a guaranty in a form acceptable to Seller or (B) retain its obligations under any payment, indemnity and any bonus provisions of the Contract; (iii) that the first assignee may not further assign or delegate any rights or obligations hereunder except to the original Buyer; and (iv) that the Buyer shall in no event assign to its engineering or construction contractor the right to receive liquidated damages under the Contract.

28.3. Collateral Assignment.
28.3.1. The Buyer may also assign a collateral interest in this Contract to a lender who is not an Eligible Assignee as collateral security for a loan for the acquisition of the Equipment, provided however, that Buyer and Lender agree that any future assignment to the Lender shall occur only as the result of the exercise by Lender of its remedies under the loan agreements relative to a bankruptcy or liquidation of Buyer. Under no circumstances, however, shall a collateral assignment require Seller to deliver Equipment to Buyer or an assignee if Seller has not been fully paid for such Equipment.

28.4. All Other Assignments and Transfers by Buyer.
28.4.1. All other assignments or transfers by Buyer of any or all of its duties or rights under this Contract (by operation of law or otherwise) are subject to Seller's prior written consent. Further, Buyer agrees that, until Buyer receives title to the Equipment as set forth herein, Buyer shall not, directly or indirectly sell, offer to sell or otherwise broker the Equipment.

28.5. Seller's Right to Assign.
28.5.1. The Seller may assign its rights and delegate its obligations under this Contract to any Affiliate or subsidiary company. Seller may assign its rights and obligations to other parties with the prior written consent of Buyer. In the event of such assignment, the Seller's assignee will be responsible for the assigned Work and will invoice directly to and collect payments directly from the Buyer.

28.6. Conditions.
28.6.1. Any assignment shall be subject to all limitations of liability contained in this Contract. The Buyer may not assign this Contract except in accordance with this Article. Any purported assignment not in accordance with this Article shall be void and without effect.

29. Dispute Resolution
29.1. Referral to Senior Management.
29.1.1. Any and all controversies, disputes or differences between the Parties to the Contract, if not amicably settled by the Parties within thirty (30) Days following written notice of dispute, shall be referred to senior management of the Parties for resolution. In the event the dispute has not been resolved within forty-five (45) Days following referral to senior management, or such longer period as the Parties may mutually agree, then either Party may, upon ten (10) Days' notice to the other party, pursue their remedies at law.

30. Venue.
30.1. Any legal action or proceeding with respect to the Contract shall be brought in the United States District Court for the Southern District of Texas or, in a District Court of the State of Texas in Harris County. Each of the Parties hereby accepts and consents to, generally and



unconditionally, the jurisdiction of the aforesaid courts and appellate courts from any appeal thereof. Each of the Parties irrevocably consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such Party at the address first set forth in the this Contract. Each of the Parties hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Contract brought in the courts referred to above and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

31. Governing Law

31.1. The Contract, including but not limited to, the validity, performance and all matters relating to the interpretation and effect of this Contract and all further documents executed pursuant to it, shall be construed and interpreted in accordance with the laws of the State of Texas, excluding their conflict of law rules, provided that any provision of such law invalidating any provision of this Contract or modifying the intent of the Parties as expressed in the terms of this Contract shall not apply.

32. Effective Date

32.1. The Contract shall become effective when it is signed by both Parties (the "Effective Date"), however, the Seller shall not be required to commence any Work associated with, connected to, or arising from, directly or indirectly, the Equipment or Services, until the Seller receives the initial payment described in the Proposal, together with any required Payment Security. Further, if the initial payment or required Payment Security is not timely received in accordance with the terms of this Contract (the "Delayed NTP"), in addition to Seller's right to terminate, the Seller shall have the right to adjust the Scheduled Delivery.

33. Entire Agreement

33.1. The Contract represents the entire agreement between the Parties with respect to the Work, and supersedes in its entirety all prior agreements concerning the subject matter hereof, and no modification, amendment, revision, waiver, or other change shall be binding on either Party unless consented to in writing by the Party's authorized representative. Any oral or written representation, warranty, course of dealing, or trade usage not contained or referenced herein shall not be binding on either Party. Each Party agrees that it has not relied on, or been induced by, any representations of the other Party not contained in the Contract.

34. Miscellaneous Provisions

34.1. Third-Party Beneficiaries.

34.1.1. Except as provided in the Article entitled "Limitation of Liability", these provisions are for the benefit of the Parties hereto and not for any other third party.

34.2. Survival.

34.2.1. All provisions or obligations contained in the Contract which by their nature or effect are required or intended to be observed, kept or performed after termination or expiration of this Contract shall survive and remain binding upon and for the benefit of the Parties, including, without limitation, the Articles with the following titles, which shall survive termination of this Contract: Taxes, Warranty, Patents, General Indemnity, Limitation of Liability, Proprietary Information, Dispute Resolution, Governing Law, Software License, Personal Data Protection, Export Control, Contract Documents, Entire Agreement and Miscellaneous Provisions.

34.3. Non-Waiver.

34.3.1. Waiver by either Party of any right under the Contract shall not be deemed a waiver by such Party of any other right hereunder.

34.4. Invalidity.

34.4.1. The invalidity in whole or in part of any part of the Contract shall not affect the validity of the remainder of this Contract.

35. Counterparts.

This Contract may be signed in any number of counterparts, each of which shall constitute one and the same instrument.

WATTSTOCK LIMITED NOTICE TO PROCEED PROPOSAL TO ALTA POWER

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 14 | 15

Exhibit B - Page 14



WattStock Limited Notice to Proceed Proposal to Alta Power

CONFIDENTIAL: NOT FOR DISTRIBUTION

Page 15 | 15

Exhibit B - Page 15

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT

# C

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

### Memorandum of Understanding

This Memorandum of Understanding (this "MOU") is by and between WattStock, LLC ("WS") and General Electric International, Inc., acting through its GE Power Services business ("GE").

**WHEREAS,** WS may purchase, refurbish and resale existing LM2500 and LM6000 Gas Turbines manufactured by GE or its affiliates and their associated packages (together, "LM Package(s)") (each such purchase, refurbishment and resale, a "Transaction"); and

**WHEREAS,** GE may assist WS in certain Transactions by (i) providing evaluations of the LM Package, (ii) purchasing the gas turbine(s) associated with a LM Package, (iii) providing a new or refurbished gas turbine for installation into a LM Package, iv) providing installation and commissioning supervision, and (iv) providing other parts and services for the upgrade of a LM Package, in each case, in accordance with the terms of a separately issued purchase order or purchase agreement.

**WHEREAS,** this MOU is not intended to bind either Party to sell any equipment, parts or services to the other but shall only be an expression of the parties' current understanding of the Transactions and to serve as the framework for further discussions and the negotiation and documentation of definitive agreements with respect to the Transaction.

NOW, THEREFORE, the parties agree as follows:

1) **Purchase Transactions Description; Scope of Responsibilities**

   a) WS may negotiate and purchase LM Packages regardless of whether such LM Packages have been placed into commercial operation.

   b) GE may support WS in such negotiations and purchases by providing evaluations of the gas turbines of an LM Package including, but not limited to, operational history and pedigree, borescope reports, past depot and other technical reports, and incident reports (to the extent such history and reports are available to GE), plus the then-current GE gas turbine acquisition price for the available turbine(s) (the "Evaluation"); provided that the provision of any such Evaluation shall not be deemed to be an offer to purchaser unless such offer is explicitly included therein.

   c) For any LM Package purchased by WS from a third-party owner, GE, at its sole option, may purchase the associated gas turbine(s) from WS, pursuant to terms and conditions to be set forth on Exhibit A, which may include mutually agreed modifications, and which shall be attached to or incorporated by reference in a purchase order or purchase agreement (a "<u>GT Purchase Agreement</u>"). The price of such associated gas turbine shall be as agreed upon by the Parties in the applicable GT Purchase Agreement. The Parties shall determine such price utilizing a pre-established pricing algorithm and/or matrix which would utilize some or all of the following: inbound engine configuration, age,

GE Confidential Information

Exhibit C - Page 1

**Page 59 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

history of operation and maintenance, and current condition and such other factors as the parties may agree. For the avoidance of doubt, GE would not be obligated to purchase any such gas turbine that are included in any LM Package except gas turbines subject to an executed GT Purchase Agreement.

2) **Refurbish Transactions Description; Scope of Responsibilities**

   a) When necessary to refurbish the LM Package or significant subassemblies (other than the gas turbine purchased by GE) at a location other than WS, WS may endeavor to utilize the GE Jacintoport facility pursuant to terms and conditions to be set forth in a separate agreement (a "Package Refurbishment Agreement").

   b) WS shall endeavor to also give GE a right of first offer to perform any of the following parts and services on a LM Package, whether executed at GE's Jacintoport facility or otherwise:

      i) OEM-compliant control system upgrade or refurbishment, whether hardware and software or limited to software upgrade;

      ii) Fuel system conversion, such as from natural gas to dual fuel; and/or

      iii) Additional package equipment where GE may have existing inventory or supply chain advantages.

   Such services would be performed by GE pursuant to terms and conditions to be set forth in the Package Refurbishment Agreement or in such separate agreement as may be agreed by WS and GE.

   c) GE may sell to WS and WS would re-sell any of the following as a function of customer value/market conditions and asset availability:

      i) a used full life gas turbine, meaning the gas turbine has been prudently maintained such that it is expected to achieve typical maintenance intervals, such as 25,000 hours before hot section refurbishment and 50,000 hours before major inspection, and potentially with value-added upgrades such as increased output or improved durability,

      ii) a used gas turbine with some estimate of remaining life but otherwise only nominally refurbished, referred to as partial life assets, or

      iii) a new gas turbine of required configuration.

   Purchase shall be pursuant to terms and conditions to be set forth on Exhibit B, which may include mutually agreed modifications, and which shall be attached to or incorporated by reference in a purchase order or purchase agreement (a "GT Sales Agreement").

   d) Availability and final obligation of any of the above may be coordinated prior to WS entering into final end-contract with a customer to ensure on-time delivery of a

GE Confidential Information

Exhibit C - Page 2

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

Refurbished LM Package, with an expectation that final need for the gas turbine is normally at least 5 months from contract signature.

e) GE may also charge a separate test fee, necessary for performance guarantees if required by a customer, on engines not refurbished to full life intervals.

f) With respect to any gas turbine sold to WS for an LM Package in accordance with this MOU, GE may provide WS with a transferrable gas turbine warranty upon with delivery and title transfer to the customer. For a new or used full life gas turbine, such warranty would not be less than one year of operation or eighteen months from delivery, whichever comes first. For a partial life asset, GE would endeavor to supply an operational warranty of at least six months of such gas turbine operation. GE's standard warranty terms and conditions would also apply.

g) GE and WS would coordinate package refurbishment activity such that, where end-customer value warrants, GE would provide a full, transferrable package warranty in conjunction with the gas turbine. WS would compensate GE for assumption of the warranty risk on WS' package refurbishment scope as described in this Section subject to the terms and conditions of a signed purchase agreement for WS purchase of the gas turbine for identified resale to end customer.

h) Any warranty provided by GE on the gas turbine or any other parts of a refurbished LM Package is subject to proper installation and commissioning ("I&C"), and shall be conditioned upon GE's oversite of such I&C, to be defined and subject to terms and conditions to be negotiated. GE may offer additional I&C scope, as needed on a deal by deal basis.

i) In addition to any other payments to GE for gas turbines or other services to be provided by GE as described in the applicable signed agreement between the parties, WS would pay to GE a fee for each re-sold Refurbished LM Package, subject to the terms and conditions of a signed purchase agreement for WS purchase of the gas turbine for identified resale to end customer, for which GE would provide some or all of the following:

   i) Test-cell based gas turbine thermal performance guarantees, such as MW output, heat rate or both. The ability to translate used engine test cell performance plus refurbished package performance into a site guarantee would be evaluated if market conditions warrant.

   ii) Associated thermal performance degradation curves to establish customer economic expectations but not for guarantee. Note: GE would, in most circumstances, be willing to guarantee thermal performance degradation over time in some form of maintenance agreement negotiated separately from unit purpose.

   iii) Product reliability and availability experience, operational flexibility characteristics and other information to support marketing of the products as industry leading.

   iv) Reasonable marketing and other consultation to position the WS/GE collaboration as the preferred reseller and installer of Refurbished LM packages.

   v) Full Refurbished LM Package warranty as described above.

GE Confidential Information

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

3) **Service Agreements.** For each Refurbished LM Package quoted, GE would be permitted to offer, under a separate agreement, a service contract, at the end customer's option, that would include post-commissioning thermal and operational performance guarantees, life cycle cost risk transfer or other provisions. GE would have a right of first refusal to these opportunities if end customer requests or otherwise indicates interest in same from WS.

4) **Confidentiality**

The terms of the Mutual Nondisclosure Agreement dated 1 March 2017 between GE and WS (the "MNDA") are hereby incorporated herein by reference and shall continue in full force and effect until the termination of this MOU. This MOU shall constitute Confidential Information subject to such terms. Neither party nor any of its affiliates shall make or cause the making of any public statements with respect to this MOU without the prior written consent of the other party, except to the extent permitted under the terms of the MNDA.

5) **TERMINATION**

Either party may terminate this MOU at any time upon notice to the other party.

6) **Non-Binding; Disclaimer**

a) **Except for Section 4 (Confidentiality) and Section 7 (Governing Law), each of which is intended to be binding, the parties agree that this MOU shall not constitute a legally binding or enforceable obligation or agreement on the part of either party. For the avoidance of doubt, neither party shall be obligated to purchase or sale any equipment, parts or services solely pursuant to this MOU.**

b) The parties do not intend this MOU to create any partnership, corporation, agency or fiduciary relationship among them. Neither party shall have the right or power to bind the other party without the written consent of such other party.

c) Neither party shall have any liability to the other party for any failure to enter into any definitive agreements or documents, and either party may terminate any discussion, communication or negotiations with respect to a Transaction at any time for any reason or no reason at all.

d) **THIS MOU AND THE INFORMATION CONTAINED HEREIN (THIS "INFORMATION") IS MADE AVAILABLE BY EACH PARTY TO THE OTHER AT NO CHARGE. THIS INFORMATION IS PROVIDED ON AN "AS IS" BASIS. EACH PARTY EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT**

GE Confidential Information

Exhibit C - Page 4

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A
PARTICULAR PURPOSE.

7) **Governing Law**

This MOU shall be governed by and construed in accordance with the laws of the State of
New York.

Signed                                              Date

Selma Kivran
General Manager – Aero Product Line
GE Power Services

Jay Manning
President
WattStock, LLC

GE Confidential Information

**Exhibit C - Page 5**

**Page 63 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

Exhibit A

**GE PACKAGED POWER, INC.**

**EQUIPMENT AND SERVICES CONTRACT**

**FOR THE PURCHASE OF (Qty) LM_____ GAS GENERATOR/TURBINE(S)**

**FROM**

**Wattstock, LLC.**

**Contract Number:_____**

**Date: _____**

GE Confidential Information

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

## 1. Definitions

1.1. "Buyer" means the entity to which Seller is providing equipment for purchase under the Contract and/or its affiliates and permitted assigns.

1.2. "Buyback Equipment" means Seller's gas turbine(s) which include all major components available for purchase by Buyer.

1.3. "Contract" means either the contract signed by parties for the sale of Seller's Equipment or any other documents incorporated by reference.

1.4. "Seller" means the entity providing Buyback Equipment under this Contract.

1.5. "Site" means the premises where the Buyer's Equipment is located.

## 2. Terms of Payment

2.1. For the Seller's Gas Turbine(s): **ESN** _____

2.2. 100% of the purchase offer listed below is payable to the Seller thirty (30) days after receipt of asset(s) at the Seller's Site. Buyer to remove unit from site within 6 months of signed agreement.

## 3. Terms of Buyback

3.1. The purchase offer of the Seller's Gas Turbine(s) with serial numbers _____ shall be the amount shown in the table below. This amount shall be paid to the Seller according to the terms under Terms of Payment referenced in this offer.

| Item | Qty | Description | Buyback Amount |
|------|-----|-------------|----------------|
| _ | _ | **Purchase of** _____ | **$_____ USD** |

3.2. This Buyback amount does not include any taxes or duties that may apply.

3.3. The offer included in the Terms of Payment for title transfer of the Seller's Gas Turbine, serial number _____ is based on the given condition on the date of this proposal and the assumption that condition will remain unchanged until the time of title transfer. "Given" is defined as the condition of the unit as inspected or based on the available data with no unknown physical damage to structural Gas Turbine(s) parts such as cases, frames, and rotors. The offer is also based on Engine having _____ hours since new operating hours. Further requirement is that the Gas Turbine(s) not be exposed to a corrosive environment or over temperature condition. Individual blades, vanes, nozzles, and shrouds

Page 7 of 20

CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER

are required and expected to be in fully serviceable condition at the time of purchase.
There is no specific performance level required for the Gas Turbine(s).

3.4.   The Seller's Gas Turbines with serial number _____ shall continue to be preserved until the
transfer of title at Seller's expense. The Seller is responsible to arrange/ authorize access
to _____. Seller will be responsible to ensure that the engine is clear of any temporary
importation bond at the time of title transfer.

3.5.   For acceptance of the proposed offer, the Seller must complete and return all applicable
documents contained in the New Supplier Package along with a signed copy of the offer.
Buyer will not finalize offer _____ for the purchase of _____ until the receipt and
acceptance of Seller's required documents and data.

3.6.   After proposed offer finalization and the retrieval of the Seller Gas turbine(s) _____ the
Seller should issue an invoice to the Seller for Gas Turbine(s) _____ for the proposed offer
amount with net thirty (30) payment terms. Payment will be based on the completeness of
the invoice and the new supplier package provided with this proposal. GEPPI will issue
payment in USD currency.

3.7.   Seller warrants to Buyer and its successors and permitted assignees that the title to the
Gas Turbine(s) with serial number _____ are free and clear of all liens and encumbrances
on the date of transfer and Seller will defend such title against all claims and demands.

3.8.   Seller further warrants to Buyer that Seller is the beneficial owner of the aforesaid Gas
Turbine(s) with serial number _____ and that Seller has full right, power, and authority to
execute this Bill of Sale.

3.9.   The Seller's Gas Turbine(s) with serial number _____ will be delivered to Buyer "as is
where is" in a completely assembled and in Serviceable condition. All external hardware
and components will be properly installed on the engine.

3.10.   The offer included in the Terms of Payment for title transfer of the Seller's Gas
Turbine, with serial number _____, will remain valid for 30 days. After 30 days, if the offer
is not accepted the validity will expire; the offer will be immediately revoked and can only
be re-established by the Buyer.

3.11.   The Seller's Gas Turbine _____ if applicable will be permanently exported from the
country of purchase and will not be subject for temporary import duty.

3.12.   The proposed offer assumes that Seller's Gas Turbine with serial number
_____ includes all OEM original hardware and / or hardware that have been repaired in

GE Confidential Information

Exhibit C - Page 8

Page 66 of 78

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

accordance with approved GE Industrial Repair Manual procedures. Buyer has the right to
adjust pricing if this is not the case.

4. **Terms and Conditions of Sale**

    4.1.  Seller's offer is in accordance with this Contract.

5. **Freight and Delivery**

    5.1.  Buyer is responsible for the freight; export taxes and duties to return the removed Gas
Turbine(s) _____ to the designated Buyer's facility.  The Seller's Gas Turbine _____ will be
permanently exported from the country of purchase.

    5.2.  Delivery will be Ex-Works from Seller's site.  Buyer will take title to Seller's Gas Turbine(s),
serial number _____, at Seller's representative site once Gas Turbine is loaded on
transportation truck.

6. **Indemnification**

    6.1.  Each party (each the "Indemnifying Party") shall indemnify and hold harmless the other
party (each the "Indemnified Party") from and against any loss or expense arising by
reason of physical damage to the property of third parties or bodily injury, including death,
of persons to the extent that such damage or injury results directly from the negligence of
the Indemnifying Party or its subcontractors in relation to this Contract and to the extent
the Indemnifying Party is liable to the third party or injured person under applicable law. If
damage or injury is caused by the joint or concurrent negligence of the Parties, their
officers, employees, agents, or subcontractors, these Parties shall bear the loss in
proportion to their or their officers', employees', agents' or subcontractors' percentage of
negligence. The indemnities provided in this Article 6.1, shall apply only if the Indemnified
Party gives the Indemnifying Party prompt notice of any claim and provides the
Indemnifying Party all necessary information and assistance so that the Indemnifying Party
may, at its option, defend or settle the claim. For purposes of Buyer's indemnity
responsibility under this Article 6.1, no portion of Parts, Seller's Equipment or Site is
considered third party property.

7. **Insurance**

    7.1.  Buyer's Insurance - During the term of the Contract, Buyer shall maintain for its
protection the following insurance coverage: (i) Worker's Compensation, Employer's

GE Confidential Information

**Exhibit C - Page 9**

**Page 67 of 78**

CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER

Liability and other statutory insurance required by law with respect to work related injuries or disease of employees of Buyer in such form(s) and amount(s) as required by applicable laws; (ii) Automobile Liability insurance with a combined single limit of $2,500,000; and (iii) Commercial General Liability or Public Liability insurance for bodily injury and third party property damage with a combined single limit of $2,500,000 per occurrence and $5,000,000 in the aggregate annually. If required in the Contract, Buyer shall provide a certificate of insurance reflecting such coverage.

7.2. Seller's Insurance - The Seller's or Owner of the facility's All Risk Property / Equipment Insurance Policy shall include a waiver of rights of subrogation against the Buyer until title transfer

## 8. Limitation of liability

8.1. Limitation - The total liability of Buyer for all claims arising out of or relating to the performance or breach of this contract or use of the work shall not exceed the portion of the contract price allocable to the equipment or services giving rise to the claim. All liability of Buyer on all claims of any kind shall terminate upon removal of asset from site and demobilization of Buyer's or Affiliate's Field Service Representatives.

8.2. Consequential damages - Buyer shall not be liable for loss of profit or revenues, loss of product, loss of use of the equipment or any associated equipment, interruption of business, cost of capital, cost of replacement equipment or power, downtime costs, increased operating costs, claims of Seller's customers for such damages, or for any special, consequential, incidental, indirect, punitive or exemplary damages.

8.3. Limitations to prevail - for the purposes of this Article 8, the term "Buyer" shall mean Buyer, its affiliates, subcontractors and suppliers of any tier, and their respective agents and employees, whether individually or collectively. The limitations in this Article 8 shall apply regardless of whether a claim is based in contract, warranty, indemnity, extra-contractual liability (including negligence), strict liability or otherwise, and shall prevail over any conflicting terms, except to the extent that such terms further restrict Buyer's liability.

## 9. Health And Safety Matters

9.1. Seller agrees to comply with all applicable health, safety, security and environmental laws and will maintain a safe working environment for Buyer's personnel or any of its representatives at Site.

9.2. Buyer has the right to review and inspect procedures and conditions at Site.

GE Confidential Information

Exhibit C - Page 10

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

9.3.  Buyer may suspend performance or evacuate its personnel at any time, without liability, if it reasonably believes its personnel may be a risk.

9.4.  Seller agrees to manage and dispose of all waste generated during the course of the Services on the Site.

9.5.  Seller shall inform Buyer of, and Buyer shall have no liability for the pre-existing condition of Seller's Equipment or the Site.

9.6.  Seller agrees to provide site security measures and on-site first aid support for Buyer's personnel at Site.

9.7.  Seller shall release, defend, indemnify and hold harmless Buyer against any and all claims arising from Seller's breach of its obligations under Article 9.

## 10. Validity

10.1.      This contract is valid for thirty (30) days from the date of this proposal

## 11. Attachments

New Supplier Package

GE Confidential Information

Exhibit C - Page 11

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

**Submittal and Acceptance**

This contract submitted to:

**Wattstock LLC.**

Name:_____

Signature:_____

Title:_____

Date:_____

This contract submitted by:

**GE Packaged Power Inc.**

_____

_____

_____

_____

*Upon acceptance of this Contract and the acceptance by the Buyer of the required Seller's documents, shall constitute the entire agreement between the parties and any understanding, promise, representation, warranty or conditions not incorporated herein shall not be binding on either party.

This offer is accepted and finalized by:

**GE Packaged Power, Inc.**

Name:_____

Title_____

Signature:_____

Date:_____

GE Confidential Information

**Exhibit C - Page 12**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

## Exhibit B:
## Products and/or Services Terms and Conditions

NOTICE: Sale of any Products and/or Services is expressly conditioned on Buyer's assent to these Terms and Conditions. Any acceptance of Seller's offer is expressly limited to acceptance of these Terms and Conditions and Seller expressly objects to any additional or different terms proposed by Buyer. No facility entry form shall modify these Terms and Conditions even if signed by Seller's representative. Any order to perform work and Seller's performance of work shall constitute Buyer's assent to these Terms and Conditions. Unless otherwise specified in the quotation, Seller's quotation shall expire 30 days from its date and may be modified or withdrawn by Seller before receipt of Buyer's conforming acceptance.

**1. Definitions**

"**Buyer**" means the entity to which Seller is providing Products and/or Services under the Contract.

"**Contract**" means either the contract agreement signed by both parties, or the purchase order signed by Buyer and accepted by Seller in writing, for the sale of Products and/or Services, together with these Terms and Conditions, Seller's final quotation, the agreed scope(s) of work, and Seller's order acknowledgement. In the event of any conflict, the Terms and Conditions shall take precedence over other documents included in the Contract.

"**Contract Price**" means the agreed price stated in the Contract for the sale of Products and/or Services, including adjustments (if any) in accordance with the Contract.

"**Hazardous Materials**" means any toxic or hazardous substance, hazardous material, dangerous or hazardous waste, dangerous good, radioactive material, petroleum or petroleum-derived products or by-products, or any other chemical, substance, material or emission, that is regulated, listed or controlled pursuant to any national, state, provincial, or local law, statute, ordinance, directive, regulation or other legal requirement of the United States ("U.S.") or the country of the Site.

"**Insolvent/Bankrupt**" means that a party is insolvent, makes an assignment for the benefit of its creditors, has an administrator, receiver, liquidator or trustee appointed for it or any of its assets, or files or has filed against it a proceeding under any bankruptcy, insolvency dissolution or liquidation laws.

"**Products**" means the equipment, parts, materials, supplies, software, and other goods Seller has agreed to supply to Buyer under the Contract.

"**Seller**" means the entity providing Products or performing Services under the Contract.

"**Services**" means the services Seller has agreed to perform for Buyer under the Contract.

"**Site**" means the premises where Products are used or Services are performed, not including Seller's premises from which it performs Services.

"**Terms and Conditions**" means these "Products and/or Services Terms and Conditions", including any relevant addenda pursuant to Article 18, together with any modifications or additional provisions specifically stated in Seller's final quotation or specifically agreed upon by Seller in writing.

"**USD**" means United States Dollars.

**2. Payment**

2.1  Buyer shall pay Seller for the Products and/or Services by paying all invoiced amounts by direct bank transfer in the currency specified by Seller in the Contract, without deduction, withholding or set-off for any payment or claim, within thirty (30) days from the invoice date. If the Contract Price is less than two hundred fifty thousand USD ($250,000), Seller shall issue invoices upon shipment of Products and as Services are performed. If the Contract Price is two hundred fifty thousand USD ($250,000) or more, progress payments shall be invoiced starting with twenty-five percent (25%) of the Contract Price for Products and/or Services upon the earlier of Contract signature or issuance of Buyer's order acknowledgement and continuing such that ninety percent (90%) of the Contract Price for Products and/or Services is received before the earliest scheduled Product shipment and Services are invoiced as performed ("Progress Payments"). For each calendar month, or fraction thereof, that payment is late, Buyer shall pay a late payment charge computed at the rate of 1.5% per month on the overdue balance, or the maximum rate permitted by law if it is less. If the price is set by the Contract in a currency other than USD, references to USD in this Section 2.1 shall mean the equivalent amount in the applicable currency.

2.2  As and if requested by Seller, Buyer shall at its expense establish and keep in force payment security in the form of an irrevocable, unconditional, sight letter of credit or bank guarantee allowing for pro-rata payments as Products are shipped and Services are performed, plus payment of cancellation and termination charges, and all other amounts due from Buyer under the Contract ("Payment Security"). The Payment Security shall be (a) in a form, and issued or confirmed by a bank acceptable to Seller, (b) payable at the counters of such acceptable bank or negotiating bank, (c) opened at least sixty (60) days prior to both the earliest scheduled shipment of Products and commencement of Services, and (d) remain in effect until the latest of ninety (90) days after the last scheduled Product shipment, completion of all Services and Seller's receipt of the final payment required under the Contract. Buyer shall, at its expense, increase the amount(s), extend the validity period(s) and make other appropriate modifications to any Payment Security within ten (10) days of Seller's notification that such adjustment is necessary in connection with Buyer's obligations under the Contract.

2.3  Seller is not required to commence or continue its performance unless and until any required Payment Security is received, operative and in effect and all applicable Progress Payments have been received. For each day of delay in receiving any Progress Payments or acceptable Payment Security, Seller shall be entitled to an equitable extension of time to durations or periods of time (if any) expressly agreed to by the Parties in the written schedule for performance and/or completion of the Services or any parts thereof. If at any time Seller reasonably determines that Buyer's financial condition or payment history does not justify continuation of Seller's performance, Seller shall be entitled to require full or partial payment in advance or otherwise restructure payments, request additional forms of Payment Security, suspend its performance or terminate the Contract.

**3. Taxes and Duties**

GE Confidential Information

**Exhibit C - Page 13**

**Page 71 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

Seller shall be responsible for all corporate taxes measured by net income due to performance of or payment for work under this Contract ("Seller Taxes"). Buyer shall be responsible for all taxes, duties, fees, or other charges of any nature (including, but not limited to, consumption, gross receipts, import, property, sales, stamp, turnover, use, or value-added taxes, and all items of withholding, deficiency, penalty, addition to tax, interest, or assessment related thereto, imposed by any governmental authority on Buyer or Seller or its subcontractors) in relation to the Contract or the performance of or payment for work under the Contract other than Seller Taxes ("Buyer Taxes"). The Contract Price does not include the amount of any Buyer Taxes. If Buyer deducts or withholds Buyer Taxes, Buyer shall pay additional amounts so that Seller receives the full Contract Price without reduction for Buyer Taxes. Buyer shall provide to Seller, within one month of payment, official receipts from the applicable governmental authority for deducted or withheld taxes.

### 4. Deliveries; Title Transfer; Risk of Loss; Storage

**4.1** For shipments that do not involve export, including shipments from one European Union ("EU") country to another EU country, Seller shall deliver Products to Buyer FCA Seller's facility or warehouse (Incoterms 2010). For export shipments, Seller shall deliver Products to Buyer FCA Port of Export (Incoterms 2010). Buyer shall pay all delivery costs and charges or pay Seller's standard shipping charges plus up to twenty-five (25%) percent. Partial deliveries are permitted. Seller may deliver Products in advance of the delivery schedule. If Products delivered do not correspond in quantity, type or price to those itemized in the shipping invoice or documentation, Buyer shall so notify Seller within ten (10) days after receipt.

**4.2** For shipments that do not involve export, title to Products shall pass to Buyer upon delivery in accordance with Section 4.1. For export shipments from a Seller facility or warehouse outside the U.S., title shall pass to Buyer upon delivery in accordance with Section 4.1. For shipments from the U.S. to another country, title shall pass to Buyer immediately after each item departs from the territorial land, seas and overlying airspace of the U.S. The 1982 United Nations Convention of the law of the Sea shall apply to determine the U.S. territorial seas. For all other shipments, title to Products shall pass to Buyer the earlier of (i) the port of export immediately upon clearance of Products for export or (ii) immediately after each item departs from the territorial land, seas and overlying airspace of the sending country. When Buyer arranges the export or intercommunity shipment, Buyer will provide evidence of clearance or intercommunity shipment acceptable to the relevant tax and custom authorities. Buyer may not use any third party vendor for providing customs clearance services until Seller has approved such party prior to shipment of the Parts. Notwithstanding the foregoing, Seller grants only a non-exclusive license, and does not pass title, for any software provided by Seller under this Contract, and title to any leased equipment remains with Seller.

**4.3** Risk of loss shall pass to Buyer upon delivery pursuant to Section 4.1, except that for export shipments from the U.S., risk of loss shall transfer to Buyer upon title passage.

**4.4** If any Products to be delivered under this Contract or if any Buyer equipment repaired at Seller's facilities cannot be shipped to or received by Buyer when ready due to any cause attributable to Buyer or its other contractors, Seller may ship the Products and equipment to a storage facility, including storage at the place of manufacture or repair, or to an agreed freight forwarder. If Seller places Products or equipment into storage, the following apply: (i) title and risk of loss immediately pass to Buyer, if they have not already passed, and delivery shall be deemed to have occurred; (ii) any amounts otherwise payable to Seller upon delivery or shipment shall be due; (iii) all expenses and charges incurred by Seller related to the storage shall be payable by Buyer upon submission of Seller's invoices; and (iv) when conditions permit and upon payment of all amounts due, Seller shall make Products and repaired equipment available to Buyer for delivery.

**4.5** If repair Services are to be performed on Buyer's equipment at Seller's facility, Buyer shall be responsible for, and shall retain risk of loss of, such equipment at all times, except that Seller shall be responsible for damage to the equipment while at Seller's facility to the extent such damage is caused by Seller's negligence.

**4.6** Except as otherwise expressly agreed to by the Parties in writing, acceptance of Products shall be deemed to occur upon delivery and acceptance of Services, upon performance.

### 5. Warranty

**5.1** Seller warrants that Products shall be delivered free from defects in material, workmanship and title and that Services shall be performed in a competent, diligent manner in accordance with any mutually agreed specifications incorporated into the Contract.

**5.2** The warranty for Products shall expire one (1) year from first use or eighteen (18) months from delivery, whichever occurs first, except that software is warranted for ninety (90) days from delivery; and the warranty for Services shall expire one (1) year after performance of the Service, except that software-related Services are warranted for ninety (90) days (as applicable, the "Warranty Period").

**5.3** If Products and/or Services do not meet the above warranties, Buyer shall promptly notify Seller in writing prior to expiration of the applicable Warranty Period. Seller shall (i) at its option, repair or replace defective Products and (ii) re-perform defective Services. If despite Seller's reasonable efforts, a non-conforming Product cannot be repaired or replaced, or non-conforming Services cannot be re-performed, Seller shall refund or credit monies paid by Buyer for such non-conforming Products and/or Services. Warranty repair, replacement or re-performance by Seller shall not extend or renew the applicable Warranty Period. Buyer shall obtain Seller's agreement on the specifications of any tests it plans to conduct to determine whether a non-conformance exists.

**5.4** Buyer shall bear the costs of access for Seller's remedial warranty efforts (including removal and replacement of systems, structures or other parts of Buyer's facility), de-installation, decontamination, re-installation and transportation of defective Products to Seller and back to Buyer.

GE Confidential Information

**Exhibit C - Page 14**

**Page 72 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

5.5  The warranties and remedies are conditioned upon (a) proper storage, installation, use, operation, and maintenance of Products, (b) Buyer keeping accurate and complete records of operation and maintenance during the warranty period and providing Seller access to those records, and (c) modification or repair of Products and/or Services only as authorized by Seller in writing. Failure to meet any such conditions renders the warranty null and void. Seller is not responsible for normal wear and tear.

5.6  This Article 5 provides the exclusive remedies for all claims based upon the failure of or defect in Products or Services, whether the claim is based in contract, negligence, statute, or any tortious/extra-contractual liability theory, strict liability or otherwise. The foregoing warranties in this Article 5 are exclusive and are in lieu of all other warranties, conditions and guarantees whether written, oral, implied or statutory.  NO IMPLIED OR STATUTORY WARRANTY, OR WARRANTY OR CONDITION OF MERCHANTABILITY, QUALITY OR FITNESS FOR A PARTICULAR PURPOSE APPLIES.

## 6.  Confidentiality

6.1  Seller and Buyer (as to information disclosed, the "Disclosing Party") may each provide the other party (as to information received, the "Receiving Party") with Confidential Information in connection with this Contract. "Confidential Information" means information that is designated in writing as "confidential" or "proprietary" by Disclosing Party at the time of written disclosure. In addition, prices for Products and/or Services shall be considered Seller's Confidential Information.

6.2  Receiving Party agrees: (i) to use the Confidential Information only in connection with the Contract and use of Products and/or Services, (ii) to take reasonable measures to prevent disclosure of the Confidential Information to third parties, and (iii) not to disclose the Confidential Information to a competitor of Disclosing Party. Notwithstanding these restrictions, (a) Seller may disclose Confidential Information to its affiliates and subcontractors in connection with performance of the Contract, (b) a Receiving Party may disclose Confidential Information to its auditors, (c) Buyer may disclose Confidential Information to lenders as necessary for Buyer to secure or retain financing needed to perform its obligations under the Contract, and (d) a Receiving Party may disclose Confidential Information to any third party with the prior written permission of Disclosing Party, and in each case, only so long as the Receiving Party obtains a non-disclosure commitment from any such subcontractors, auditors, lenders or other permitted third party that prohibits disclosure of the Confidential Information and provided further that the Receiving Party remains responsible for any unauthorized use or disclosure of the Confidential Information. Receiving Party shall upon request return to Disclosing Party or destroy all copies of Confidential Information except to the extent that a specific provision of the Contract entitles Receiving Party to retain an item of Confidential Information. Seller may also retain one archive copy of Buyer's Confidential Information.

6.3  The obligations under this Article 6 shall not apply to any portion of the Confidential Information that: (i) is or becomes generally available to the public other than as a result of disclosure by Receiving Party, its representatives or its affiliates; (ii) is or becomes available to Receiving Party on a non-confidential basis from a source other than Disclosing Party when the source is not, to the best of Receiving Party's knowledge, subject to a confidentiality obligation to Disclosing Party; (iii) is independently developed by Receiving Party, its representatives or affiliates, without reference to the Confidential Information; (iv) is required to be disclosed by law or valid legal process provided that the Receiving Party intending to make disclosure in response to such requirements or process shall promptly notify the Disclosing Party in advance of such disclosure and reasonably cooperate in attempts to maintain the confidentiality of the Confidential Information.

6.4  Each Disclosing Party warrants that it has the right to disclose the information that it discloses.  Neither Buyer nor Seller shall make any public announcement about the Contract without prior written approval of the other party.  As to any individual item of Confidential Information, the restrictions under this Article 6 shall expire five (5) years after the date of disclosure.  Article 6 does not supersede any separate confidentiality or nondisclosure agreement signed by the parties.

## 7.  Intellectual Property

7.1  Seller shall defend and indemnify Buyer against any claim by a non-affiliated third party (a "Claim") alleging that Products and/or Services furnished under this Contract infringe a patent in effect in the U.S., an EU member state or the country of the Site (provided there is a corresponding patent issued by the U.S. or an EU member state), or any copyright or trademark registered in the country of the Site, provided that Buyer (a) promptly notifies Seller in writing of the Claim, (b) makes no admission of liability and does not take any position adverse to Seller, (c) gives Seller sole authority to control defense and settlement of the Claim, and (d) provides Seller with full disclosure and reasonable assistance as required to defend the Claim.

7.2  Section 7.1 shall not apply and Seller shall have no obligation or liability with respect to any Claim based upon (a) Products and/or Services that have been modified, or revised, (b) the combination of any Products and/or Services with other products and/or services when such combination is a basis of the alleged infringement, (c) failure of Buyer to implement any update provided by Seller that would have prevented the Claim, (d) unauthorized use of Products and/or Services, or (e) Products and/or Services made or performed to Buyer's specifications.

7.3  Should any Product and/or Service, or any portion thereof, become the subject of a Claim, Seller may at its option (a) procure for Buyer the right to continue using the Product and/or Service, or applicable portion thereof, (b) modify or replace it in whole or in part to make it non-infringing, or (c) failing (a) or (b), take back infringing Products and/or discontinue infringing Services and refund the price received by Seller attributable to the infringing Products and/or Services.

7.4  Article 7 states Seller's exclusive liability for intellectual property infringement by Products and/or Services.

GE Confidential Information

**Exhibit C - Page 15**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

7.5  Each party shall retain ownership of all Confidential Information and intellectual property it had prior to the Contract. All rights in and to software not expressly granted to Buyer are reserved by Seller. All new intellectual property conceived or created by Seller in the performance of this Contract, whether alone or with any contribution from Buyer, shall be owned exclusively by Seller. Buyer agrees to deliver assignment documentation as necessary to achieve that result.

**8. Indemnity**

Each of Buyer and Seller (as an "Indemnifying Party") shall indemnify the other party (as an "Indemnified Party") from and against claims brought by a third party, on account of personal injury or damage to the third party's tangible property, to the extent caused by the negligence of the Indemnifying Party in connection with this Contract. In the event the injury or damage is caused by joint or concurrent negligence of Buyer and Seller, the loss or expense shall be borne by each party in proportion to its degree of negligence. For purposes of Seller's indemnity obligation, no part of the Products or Site is considered third party property.

**9. Insurance**

During the term of the Contract, Seller shall maintain for its protection the following insurance coverage: (i) Worker's Compensation, Employer's Liability and other statutory insurance required by law with respect to work related injuries or diseases of employees of Seller in such form(s) and amount(s) as required by applicable laws; (ii) Automobile Liability insurance with a combined single limit of $2,500,000.00; and (iii) Commercial General Liability or Public Liability insurance for bodily injury and property damage with a combined single limit of $2,500,000.00. If required in the Contract, Seller shall provide a certificate of insurance reflecting such coverage.

**10. Schedule and Excusable Events**

10.1  Any durations or periods of time quoted on the schedule or otherwise agreed for performance, delivery and/or completion of the Services or delivery of Products shall be regarded as estimated only. In addition, delivery times are dependent upon prompt receipt by Seller of all information necessary to proceed with the work without interruption. In the event Seller agrees in writing to guaranteed performance, delivery and/or completion times and specific sums as liquidated damages for late performance, delivery or completion, any such liability for damages shall only commence when the period of delay exceeds the guaranteed date or time by 14 (fourteen) calendar days and liquidated damages may be applied and be levied only from that 14th day onwards. Payment of liquidated damages shall be in full and final settlement of any and all liability of the Seller for delays under the Contract and shall be Buyer's sole and exclusive remedy for failing to achieve the performance, delivery and/or completion guarantee. The Seller's maximum aggregate liability for liquidated damages for delay shall in no circumstances exceed 5% (five per cent) of the total amount of the Contract Price paid to the Seller.

10.2  Seller shall not be liable and shall not be considered in breach of any obligations to supply manpower, deliver Products or to perform, deliver or complete the Services or any parts thereof within specified durations or periods or by a specified time) if it is delayed or prevented, directly or indirectly, by any cause beyond its reasonable control, or by armed conflict, acts or threats of terrorism, epidemics, strikes or other labor disturbances, or acts or omissions of any governmental authority or, of the Buyer or Buyer's contractors or suppliers or for any period of suspension under Section 11.3. If any such cause or excusable event occurs, the schedule for Seller's performance shall be adjusted accordingly and dates or times stated in the schedule for performance and/or completion of the Services shall be extended by the amount of time lost by reason of the event plus such additional time as may be needed to overcome the effect of the event. If acts or omissions of the Buyer or its contractors or suppliers cause the delay, Seller shall also be entitled to an equitable price adjustment.

**11. Termination and Suspension**

11.1  Buyer may terminate the Contract (or the portion affected) for cause if Seller (i) becomes Insolvent/Bankrupt, or (ii) commits a material breach of the Contract which does not otherwise have a specified contractual remedy, provided that: (a) Buyer shall first provide Seller with detailed written notice of the breach and of Buyer's intention to terminate the Contract, and (b) Seller shall have failed, within 30 days after receipt of the notice, to commence and diligently pursue cure of the breach.

11.2  If Buyer terminates the Contract pursuant to Section 11.1, (i) Seller shall reimburse Buyer the difference between that portion of the Contract Price allocable to the terminated scope and the actual amounts reasonably incurred by Buyer to complete that scope, and (ii) Buyer shall pay to Seller (a) the portion of the Contract Price allocable to Products and/or Services completed, (b) lease fees incurred, and (c) amounts for Services performed before the effective date of termination. The amount due for Services shall be determined in accordance with the milestone schedule (for completed milestones) and rates set forth in the Contract (for work toward milestones not yet achieved and where there is no milestone schedule), as applicable or, where there are no milestones and/or rates in the Contract, at Seller's then-current standard time and material rates.

11.3  Seller may suspend or terminate the Contract (or any affected portion thereof) immediately for cause if Buyer (i) becomes Insolvent/Bankrupt, or (ii) materially breaches the Contract, including, but not limited to, failure or delay in Buyer providing Payment Security, making any payment when due, or fulfilling any payment conditions.

11.4  If the Contract (or any portion thereof) is terminated for any reason other than Seller's default under Section 11.1, Buyer shall pay Seller for all Products completed, lease fees incurred and Services performed before the effective date of termination, plus expenses reasonably incurred by Seller in connection with the termination. The amount due for Services shall be determined in accordance with the milestone schedule (for completed milestones) and rates set

GE Confidential Information

**Exhibit C - Page 16**

**Page 74 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

forth in the Contract (for work toward milestones not yet achieved and where there is no milestone schedule), as applicable or, where there are no milestones and/or rates in the Contract, at Seller's then-current standard time and material rates. In addition, Buyer shall pay Seller a cancellation charge equal to 80% of the Contract Price applicable to uncompleted made-to-order Products and/or Services and 15% of the Contract Price applicable to all other uncompleted Products and/or Services.

**11.5** Either Buyer or Seller may terminate the Contract (or the portion affected) upon twenty (20) days advance notice if there is an excusable event (as described in Article 10) lasting longer than one hundred and twenty (120) days. In such case, Buyer shall pay to Seller amounts payable under Section 11.4, excluding the cancellation charge for uncompleted Products and/or Services.

**11.6** Buyer shall pay all reasonable expenses incurred by Seller in connection with a suspension, including, but not limited to, expenses for repossession, fee collection, demobilization/remobilization, and costs of storage during suspension. The schedule for Seller's obligations shall be extended for a period of time reasonably necessary to overcome the effects of any suspension.

## 12. Compliance with Laws, Codes and Standards

**12.1** Seller shall comply with laws applicable to the manufacture of Products and its performance of Services. Buyer shall comply with laws applicable to the application, operation, use and disposal of the Products and Services. All transactions hereunder shall at all times be subject to and conditioned upon compliance with all applicable laws, including, without limitation, export control laws and regulations of the U.S. Government and any amendments thereof."

**12.2** Seller's obligations are conditioned upon Buyer's compliance with all U.S., EU and other applicable trade control laws and regulations. Buyer shall not trans-ship, re-export, divert or direct or otherwise make or allow any disposition of Products other than in and to the ultimate country of destination declared by Buyer and specified as the country of ultimate destination on Seller's invoice. Buyer hereby certifies that the equipment, materials, services, technical data, software or other information or assistance furnished by Seller under this Contract will not be used in the design, development, production, stockpiling or use of chemical, biological, or nuclear weapons either by Buyer or by any entity acting on Buyer's behalf.

**12.3** Notwithstanding any other provision, Buyer shall timely obtain, effectuate and maintain in force any required permit, license, exemption, filing, registration and other authorization, including, but not limited to, building and environmental permits, import licenses, environmental impact assessments, and foreign exchange authorizations, required for the lawful performance of Services at the Site or fulfillment of Buyer's obligations, except that Seller shall obtain any license or registration necessary for Seller to generally conduct business and visas or work permits, if any, necessary for Seller's personnel. Buyer shall provide reasonable assistance to Seller in obtaining such visas and work permits.

## 13. Environmental, Health and Safety Matters

**13.1** Buyer shall maintain safe working conditions at the Site, including, without limitation, implementing appropriate procedures regarding Hazardous Materials, confined space entry, and energization and de-energization of power systems (electrical, mechanical and hydraulic) using safe and effective lock-out/tag-out ("LOTO") procedures including physical LOTO or a mutually agreed upon alternative method.

**13.2** Buyer shall timely advise Seller in writing of all applicable Site-specific health, safety, security and environmental requirements and procedures. Without limiting Buyer's responsibilities under Article 13, Seller has the right but not the obligation to, from time to time, review and inspect applicable health, safety, security and environmental documentation, procedures and conditions at the Site.

**13.3** If, in Seller's reasonable opinion, the health, safety, or security of personnel or the Site is, or is apt to be, imperiled by security risks, terrorist acts or threats, the presence of or threat of exposure to Hazardous Materials, or unsafe working conditions, Seller may, in addition to other rights or remedies available to it, evacuate some or all of its personnel from Site, suspend performance of all or any part of the Contract, and/or remotely perform or supervise work. Any such occurrence shall be considered an excusable event. Buyer shall reasonably assist in any such evacuation.

**13.4** Operation of Buyer's equipment is the responsibility of Buyer. Buyer shall not require or permit Seller's personnel to operate Buyer's equipment at Site.

**13.5** Buyer will make its Site medical facilities and resources available to Seller personnel who need medical attention.

**13.6** Seller has no responsibility or liability for the pre-existing condition of Buyer's equipment or the Site. Prior to Seller starting any work at Site, Buyer will provide documentation that identifies the presence and condition of any Hazardous Materials existing in or about Buyer's equipment or the Site that Seller may encounter while performing under this Contract. Buyer shall disclose to Seller industrial hygiene and environmental monitoring data regarding conditions that may affect Seller's work or personnel at the Site. Buyer shall keep Seller informed of changes in any such conditions.

**13.7** Seller shall notify Buyer if Seller becomes aware of: (i) conditions at the Site differing materially from those disclosed by Buyer, or (ii) previously unknown physical conditions at Site differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract. If any such conditions cause an increase in Seller's cost of, or the time required for, performance of any part of the work under the Contract, an equitable adjustment in price and schedule shall be made.

Page **17** of **20**

**Exhibit C - Page 17**

**Page 75 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

13.8 If Seller encounters Hazardous Materials in Buyer's equipment or at the Site that require special handling or disposal, Seller is not obligated to continue work affected by the hazardous conditions. In such an event, Buyer shall eliminate the hazardous conditions in accordance with applicable laws and regulations so that Seller's work under the Contract may safely proceed, and Seller shall be entitled to an equitable adjustment of the price and schedule to compensate for any increase in Seller's cost of, or time required for, performance of any part of the work. Buyer shall properly store, transport and dispose of all Hazardous Materials introduced, produced or generated in the course of Seller's work at the Site.

13.9 Buyer shall indemnify Seller for any and all claims, damages, losses, and expenses arising out of or relating to any Hazardous Materials which are or were (i) present in or about Buyer's equipment or the Site prior to the commencement of Seller's work, (ii) improperly handled or disposed of by Buyer or Buyer's employees, agents, contractors or subcontractors, or (iii) brought, generated, produced or released on Site by parties other than Seller.

## 14. Changes

14.1 Each party may at any time propose changes in the schedule or scope of Products and/or Services. Seller is not obligated to proceed with any change until both parties agree upon such change in writing. The written change documentation will describe the changes in scope and schedule, and the resulting changes in price and other provisions, as agreed.

14.2 The scope, Contract Price, schedule, and other provisions will be equitably adjusted to reflect additional costs or obligations incurred by Seller resulting from a change, after Seller's proposal date, in Buyer's Site-specific requirements or procedures, or in industry specifications, codes, standards, applicable laws or regulations. Unless otherwise agreed by the parties, pricing for additional work arising from such changes shall be at Seller's time and material rates.

14.3 It shall be acceptable and not considered a change if Seller delivers a Product that bears a different, superseding or new part or version number compared to the part or version number listed in the Contract.

## 15. Limitations of Liability

15.1 To the maximum extent permitted by applicable law, the total liability of Seller for all claims arising from or related to the formation, performance or breach of this Contract, or provision of any Products and/or Services, shall not exceed the (i) Contract Price, or (ii) if Buyer places multiple order(s) under the Contract, the price of each particular order for all claims arising from or related to that order and ten thousand USD (US $10,000) for all claims not part of any particular order.

15.2 Seller shall not be liable for loss of profit or revenues, loss of use of equipment or systems, interruption of business, cost of replacement power, cost of capital, downtime costs, increased operating costs, any special, consequential, incidental, indirect, or punitive damages, or claims of Buyer's customers for any of the foregoing types of damages.

15.3 All Seller liability shall end upon expiration of the applicable warranty period, provided that Buyer may continue to enforce a claim for which it has given notice prior to that date by commencing an action or arbitration, as applicable under this Contract, before expiration of any statute of limitations or other legal time limitation but in no event later than one year after expiration of such warranty period.

15.4 Seller shall not be liable for advice or assistance that is not required for the work scope under this Contract.

15.5 If Buyer is supplying Products and/or Services to a third party, or using Products and/or Services at a facility owned by a third party, Buyer shall either (i) indemnify and defend Seller from and against any and all claims by, and liability to, any such third party in excess of the limitations set forth in this Article 15, or (ii) require that the third party agree, for the benefit of and enforceable by Seller, to be bound by all the limitations included in this Article 15.

15.6 For purposes of this Article 15, the term "Seller" means Seller, its affiliates, subcontractors and suppliers of any tier, and their respective employees. The limitations in this Article 15 shall apply regardless of whether a claim is based in contract, negligence, statute, indemnity, tortious/extra-contractual liability theory, strict liability or otherwise.

## 16. Governing Law and Dispute Resolution

16.1 This Contract shall be governed by and construed in accordance with the laws of (i) the State of New York if Buyer's place of business is in the U.S. or (ii) England and Wales, if the Buyer's place of business is outside the U.S., in either case without giving effect to any choice of law rules that would cause the application of laws of any other jurisdiction (the "Governing Law").

16.2 All disputes and, to the maximum extent permitted by applicable law, all non-contractual obligations arising in any way whatsoever out of or in connection with this Contract arising in connection with this Contract, including any question regarding its existence or validity, shall be resolved in accordance with this Article 16. If a dispute is not resolved by negotiation, either party may, by giving written notice, refer the dispute to a meeting of appropriate higher management, to be held within twenty (20) business days after the giving of notice. If the dispute is not resolved within thirty (30) business days after the giving of notice, or such later date as may be mutually agreed, either party may commence arbitration or court proceedings, depending upon the location of the Buyer, in accordance with one of the following:

GE Confidential Information

**Exhibit C - Page 18**

**Page 76 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

(a) if the Buyer's pertinent place of business is in the U.S., legal action shall be commenced in federal court with jurisdiction applicable to, or state court located in, either New York, New York (and Buyer hereby consents to be subject to such New York federal and state jurisdiction) or the location of Buyer's principal place of business; or

(b) if the Buyer's pertinent place of business is outside the U.S., the dispute shall be submitted to and finally resolved under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules (the "Rules"). The seat of arbitration shall be in London, England. The arbitration shall be conducted in English. The decision of the arbitrators shall be final and binding upon the parties.

16.3 Notwithstanding the foregoing, each party shall have the right at any time, at its option and where legally available, to commence an action or proceeding in a court of competent jurisdiction, subject to the terms of this Contract, to seek a restraining order, injunction, or similar order (but not monetary damages), or to seek interim or conservatory measures.

### 17. Inspection and Factory Tests

Seller will apply its normal quality control procedures in manufacturing Products. Seller shall attempt to accommodate requests by Buyer to witness Seller's factory tests of Products, subject to appropriate access restrictions, if such witnessing can be arranged without delaying the work.

### 18. Software, Leased Equipment, Remote Diagnostic Services, PCB Services

If Seller provides any software to Buyer, the Software License Addendum shall apply.  If Seller leases any of Seller's equipment or provides related Services to Buyer, including placing Seller's equipment at Buyer's site to provide remote Services, the Lease Addendum shall apply. If Seller provides remote diagnostic services to Buyer, the Remote Diagnostic Services Addendum shall apply.  If Seller provides PCB Services to Buyer, the PCB Services Addendum shall apply. If there is any conflict between these Products and/or Services "Terms and Conditions" and the terms of any addendum incorporated pursuant to this Article 18, the terms of the addendum shall take precedence with respect to the applicable scope.

### 19. General Clauses

19.1 Products and Services sold by Seller are not intended, in whole or in part, for application (and will not be used) in connection with or nearby any nuclear facility or activity, and Buyer warrants that it shall not use or permit others to use Products and/or Services for any such purposes, without the advance written consent of Seller.

19.2 Seller may assign or novate its rights and obligations under the Contract, in whole or in part, to any of its affiliates or may assign any of its accounts receivable under this Contract to any party without Buyer's consent.  Buyer agrees to execute any documents that may be necessary to complete Seller's assignment or novation. Seller may subcontract portions of the work, so long as Seller remains responsible for it.  The delegation or assignment by Buyer of any or all of its rights or obligations under the Contract without Seller's prior written consent (which consent shall not be unreasonably withheld) shall be void.

19.3 Buyer shall notify Seller immediately upon any change in ownership of more than fifty percent (50%) of Buyer's voting rights or of any controlling interest in Buyer. If Buyer fails to do so or Seller objects to the change, Seller may (a) terminate the Contract, (b) require Buyer to provide adequate assurance of performance (including but not limited to payment), and/or (c) put in place special controls regarding Seller's Confidential Information.

19.4 If any Contract provision is found to be void or unenforceable, the remainder of the Contract shall not be affected. The parties will endeavor to replace any such void or unenforceable provision with a new provision that achieves substantially the same practical and economic effect and is valid and enforceable.

19.5 The following Articles shall survive termination or cancellation of the Contract: 2, 3, 4, 5, 6, 7, 8, 10,  11, 12, 13, 15, 16, 18, 19 and 20.

19.6 The Contract represents the entire agreement between the parties.  No oral or written representation or warranty not contained in this Contract shall be binding on either party. Buyer's and Seller's rights, remedies and obligations arising from or related to Products and/or Services sold under this Contract are limited to the rights, remedies and obligations stated in this Contract.  No modification, amendment, rescission or waiver shall be binding on either party unless agreed in writing.

19.7 Except as provided in Article 15 (Limitations of Liability), this Contract is only for the benefit of the parties and not for any third parties.

19.8 This Contract may be signed in multiple counterparts that together shall constitute one agreement.

### 20. U.S. Government Contracts

20.1 This Article 20 applies only if the Contract is for the direct or indirect sale to any agency of the U.S. government and/or is funded in whole or in part by any agency of the U.S. government.

GE Confidential Information

**Exhibit C - Page 19**

**Page 77 of 78**

**CONFIDENTIAL TO BE FILED UNDER
SEAL PURSUANT TO PROTECTIVE ORDER**

**20.2** Buyer agrees that all Products and/or Services provided by Seller meet the definition of "commercial-off-the-shelf" ("COTS") or "commercial item" as those terms are defined in Federal Acquisition Regulation ("FAR") 2.101. To the extent the Buy American Act, Trade Agreements Act, or other domestic preference requirements are applicable to this Contract, the country of origin of Products is unknown unless otherwise specifically stated by Seller in this Contract. Buyer agrees any Services offered by Seller are exempt from the Service Contract Act of 1965 (FAR 52.222-41). Buyer represents and agrees that this Contract is not funded in whole or in part by American Recovery Reinvestment Act funds unless otherwise specifically stated in the Contract. The version of any applicable FAR clause listed in this Article 20 shall be the one in effect on the effective date of this Contract.

**20.3** If Buyer is an agency of the U.S. Government, then as permitted by FAR 12.302, Buyer agrees that all paragraphs of FAR 52.212-4 (except those listed in 12.302(b)) are replaced with these Terms and Conditions. Buyer further agrees the subparagraphs of FAR 52.212-5 apply only to the extent applicable for sale of COTS and/or commercial items and as appropriate for the Contract Price.

**20.4** If Buyer is procuring the Products and/or Services as a contractor, or subcontractor at any tier, on behalf of any agency of the U.S. Government, then Buyer agrees that FAR 52.212-5(e) or 52.244-6 (whichever is applicable) applies only to the extent applicable for sale of COTS and/or commercial items and as appropriate for the Contract Price.

GE Confidential Information

**Exhibit C - Page 20**

**Page 78 of 78**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 52394267
Status as of 4/14/2021 9:51 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 4/13/2021 10:12:29 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 4/13/2021 10:12:29 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 4/13/2021 10:12:29 AM | SENT |
| Michael D.Fisse |  | mfisse@daiglefisse.com | 4/13/2021 10:12:29 AM | SENT |
| Kaitlyn Faucett |  | kfaucett@lightfootlaw.com | 4/13/2021 10:12:29 AM | SENT |
| Jared Levinthal |  | levinthal@lightfootlaw.com | 4/13/2021 10:12:29 AM | SENT |
| Natalie Sanchez |  | nsanchez@lightfootlaw.com | 4/13/2021 10:12:29 AM | SENT |
| Ann Requena |  | arequena@lightfootlaw.com | 4/13/2021 10:12:29 AM | SENT |
| Jeannine Peyton |  | jpeyton@lightfootlaw.com | 4/13/2021 10:12:29 AM | SENT |
| Ted Lefebvre |  | ted.lefebvre@ge.com | 4/13/2021 10:12:29 AM | SENT |
| Julie Frauenhofer |  | Julie.frauenhofer@ge.com | 4/13/2021 10:12:29 AM | SENT |
| Jessica Pulliam |  | jessica.pulliam@bakerbotts.com | 4/13/2021 10:12:29 AM | SENT |
| John Lawrence |  | john.lawrence@bakerbotts.com | 4/13/2021 10:12:29 AM | SENT |
| Kirstie Wallace |  | kirstie.wallace@bakerbotts.com | 4/13/2021 10:12:29 AM | SENT |
| Jessica Aquino |  | jessica.aquino@bakerbotts.com | 4/13/2021 10:12:29 AM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon |  | vsedon@krcl.com | 4/13/2021 10:12:29 AM | SENT |
| MARTI BEAUJEAN |  | mbeaujean@krcl.com | 4/13/2021 10:12:29 AM | SENT |
| Connie Nims |  | cnims@krcl.com | 4/13/2021 10:12:29 AM | SENT |

Associated Case Party: ALTA POWER LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 52394267
Status as of 4/14/2021 9:51 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 4/13/2021 10:12:29 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 4/13/2021 10:12:29 AM | SENT |

FILED
4/14/2021 11:32 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

CAUSE NO. DC-20-06931

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| **Plaintiff/Counterclaim-Defendant,** | § | |
| VS. | § | **116TH JUDICIAL DISTRICT** |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| **Defendant/Counterclaim-Plaintiff.** | § | **DALLAS COUNTY, TEXAS** |

## RETURN OF SERVICE

Came to my hand on **Monday, April 12, 2021 at 11:27 AM,**
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **12:48 PM,** on **Monday, April 12, 2021,**
by delivering to the within named:

### DEUTSCHE BANK TRUST COMPANY NATIONAL ASSOCIATION

By delivering to its **Registered Agent, CT CORPORATION SYSTEM**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM OF NON–PARTY DEUTSCHE BANK TRUST COMPANY
NATIONAL ASSOCIATION, SUBPOENA DUCES TECUM AND DEPOSITION UPON
WRITTEN QUESTIONS DUCES TECUM TO NON–PARTY DEUTSCHE BANK TRUST
COMPANY NATIONAL ASSOCIATION, AND EXHIBITS**

having first endorsed thereon the date of the delivery.
An $11.00 witness fee was tendered.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Adil Tadli** who after being duly sworn on oath states: "My name is **Adil Tadli.** I am a person not less than eighteen (18) years of age and I am competent to make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as they apply to service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and 501.2 of the TRCP."

By: _____

**Adil Tadli - PSC 1206 - Exp 05/31/22**
served@specialdelivery.com

**Subscribed and Sworn to by Adil Tadli, Before Me, the undersigned authority, on this / 14th day of April, 2021.**

_____
Notary Public in and for the State of Texas

THOMAS E CONSIDINE
Notary Public
STATE OF TEXAS
ID#12516820-9
My Comm. Exp. April 13, 2025

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON
WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY
DEUTSCHE BANK TRUST COMPANY NATIONAL ASSOCIATION**

To:   CT Corporation System, as Registered Agent for Deutsche Bank Trust Company National
Association, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and

205.2, Plaintiff will take the deposition upon written questions of Non-Party Deutsche Bank

Trust Company National Association at 10:00 a.m. on Monday, May 3, 2021, before a Notary

Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum

requiring appearance for the deposition upon written questions and production of responsive

materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct

questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit

A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq.

(Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell

Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and

time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure

205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By: ___/s/ Brian N. Hail_____
    Brian N. Hail
    State Bar No. 08705500
    E-mail: bhail@krcl.com
    Andrew D. Robertson
    State Bar No. 24090845
    E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:    (214) 777-4299

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Deutsche Bank Trust Company National Association
c/o CT Corporation System, its registered agent
350 N. St. Paul Street, Suite 2900
Dallas, Texas 75201

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/*
*Counterclaim Plaintiff*

_/s/ Brian N. Hail_____
Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY DEUTSCHE BANK TRUST COMPANY NATIONAL ASSOCIATION

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:   Deutsche Bank Trust Company NA
350 N. St. Paul Street, Suite 2900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Deutsche Bank Trust Company National Association to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Deutsche Bank Trust Company National Association to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff

and the deponent, and there to produce and permit inspection and copying of the original or an exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## <u>EXHIBIT A</u>

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4.  Have you complied?  If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____

WITNESS (Custodian of Records)


Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____

NOTARY PUBLIC


My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means Deutsche Bank Trust Company National Association, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);

- Accounting Application data (e.g., QuickBooks, Juris, Money data files);
- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.      The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.      The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.     The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

## Request for Documents

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/14/2021 11:32 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

CAUSE NO. DC-20-08531

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff/Counterclaim-Defendant, | § | |
| VS. | § | 116TH JUDICIAL DISTRICT |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim-Plaintiff. | § | DALLAS COUNTY, TEXAS |

## RETURN OF SERVICE

Came to my hand on **Monday, April 12, 2021 at 11:27 AM**,
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **12:48 PM**, on **Monday, April 12, 2021**,
by delivering to the within named:

### DEUTSCHE BANK SECURITIES, INC.

By delivering to its **Registered Agent, CT CORPORATION SYSTEM**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM OF NON–PARTY DEUTSCHE BANK SECURITIES, INC. and
SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES
TECUM TO NON–PARTY DEUTSCHE BANK SECURITIES, INC., AND EXHIBITS**

having first endorsed thereon the date of the delivery.
An $11.00 witness fee was tendered.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Adil Tadli** who after being duly sworn on oath states: "My name is **Adil Tadli**. I am a person not less than eighteen (18) years of age and I am competent to make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as they apply to service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and 501.2 of the TRCP."

By: _____

    **Adil Tadli - PSC 1206 - Exp 05/31/22**
    served@specialdelivery.com

**Subscribed and Sworn to by Adil Tadli, Before Me, the undersigned authority, on this** _14th_ **day of April, 2021.**

_____
**Notary Public in and for the State of Texas**



THOMAS E CONSIDINE
Notary Public
STATE OF TEXAS
ID#12516820-9
My Comm. Exp. April 13, 2025

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM OF NON-PARTY DEUTSCHE BANK SECURITIES, INC.**

To:    CT Corporation System, as Registered Agent for Deutsche Bank Securities, Inc., 1999
Bryan St., Ste. 900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and

205.2, Plaintiff will take the deposition upon written questions of Non-Party Deutsche Bank

Securities, Inc. at <u>10:00 a.m. on Monday, May 3, 2021</u>, before a Notary Public in and for the State

of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for

the deposition upon written questions and production of responsive materials, which is served "at

the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to

the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition

upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at

bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main

Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance

above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure

205.1, the above-referenced deponent is required to produce for inspection and copying at the

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON-PARTY DEUTSCHE BANK SECURITIES, INC.

PAGE 1 OF 11
8396248 (72553.00002.000)

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: ___/s/ Brian N. Hail_____
　　Brian N. Hail
　　State Bar No. 08705500
　　E-mail: bhail@krcl.com
　　Andrew D. Robertson
　　State Bar No. 24090845
　　E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:　(214) 777-4200
Facsimile:　(214) 777-4299

***Attorneys for Plaintiff/Counterclaim Defendant***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Deutsche Bank Securities, Inc.
c/o CT Corporation System, as Registered Agent
1999 Bryan St., Ste. 900
Dallas, Texas 75201

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/*
*Counterclaim Plaintiff*


/s/ Brian N. Hail
Brian N. Hail

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON-PARTY DEUTSCHE BANK SECURITIES, INC.

PAGE 3 OF 11
8396248 (72553.00002.000)

## EXHIBIT 1

### CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

## SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY DEUTSCHE BANK SECURITIES, INC.

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:     Deutsche Bank Securities, Inc.
c/o CT Corporation System, as Registered Agent
1999 Bryan St., Ste. 900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Deutsche Bank Securities, Inc. to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Deutsche Bank Securities, Inc. to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and

there to produce and permit inspection and copying of the original or an exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## EXHIBIT A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To: **As described by the attached 'Exhibit B'**

Type of Records: **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____

WITNESS (Custodian of Records)


Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____

NOTARY PUBLIC


My Commission Expires: _____

# EXHIBIT B

## DEFINITIONS

1.    "You" or "Your" means Deutsche Bank Securities, Inc., including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.    "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.    "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.    "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.    "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.    The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.    The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., .avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.    The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.    The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.    The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

### REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1. All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3. All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5. All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7. All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/14/2021 11:35 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

CAUSE NO. DC-20-06531

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **Plaintiff/Counterclaim-Defendant,** | § | |
| VS. | § | **116TH JUDICIAL DISTRICT** |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| **Defendant/Counterclaim-Plaintiff.** | § | **DALLAS COUNTY, TEXAS** |

## RETURN OF SERVICE

Came to my hand on **Monday, April 12, 2021 at 11:27 AM,**
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **12:48 PM**, on **Monday, April 12, 2021,**
by delivering to the within named:

### DEUTSCHE BANK TRUST COMPANY AMERICAS

By delivering to its **Registered Agent, CT CORPORATION SYSTEM**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM OF NON–PARTY DEUTSCHE BANK TRUST COMPANY
AMERICAS, SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM TO NON–PARTY DEUTSCHE BANK TRUST COMPANY
AMERICAS, AND EXHIBITS**

having first endorsed thereon the date of the delivery.
An $11.00 witness fee was tendered.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Adil Tadli** who after being duly sworn on oath states: "My name is **Adil Tadli**. I am a person not less than eighteen (18) years of age and I am competent to make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as they apply to service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and 501.2 of the TRCP."

By: _____
   **Adil Tadli - PSC 1206 - Exp 05/31/22**
   **served@specialdelivery.com**

**Subscribed and Sworn to by Adil Tadli, Before Me, the undersigned authority, on this _14th_ day
of April, 2021.**

_____
Notary Public in and for the State of Texas

THOMAS E CONSIDINE
Notary Public
STATE OF TEXAS
ID#12516820-9
My Comm. Exp. April 13, 2025

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY DEUTSCHE BANK TRUST COMPANY AMERICAS

To:     CT Corporation System, as Registered Agent for Deutsche Bank Trust Company Americas, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party Deutsche Bank Trust Company Americas at 10:00 a.m. on Monday, May 3, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By:   /s/ Brian N. Hail
    Brian N. Hail
    State Bar No. 08705500
    E-mail: bhail@krcl.com
    Andrew D. Robertson
    State Bar No. 24090845
    E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

***Attorneys for Plaintiff/Counterclaim Defendant***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Deutsche Bank Trust Company Americas
c/o CT Corporation System, its registered agent
1999 Bryan Street, Suite 900
Dallas, Texas 75201

**VIA E-SERVICE:**

| | |
|---|---|
| Michael Cancienne | Jessica B. Pulliam |
| mcancienne@jlcfirm.com | jessica.pulliam@bakerbotts.com |
| Kevin Jordan | John B. Lawrence |
| kjordan@jlcfirm.com | john.lawrence@bakerbotts.com |
| Joseph W. ("Jeb") Golinkin II | Kirstie Wallace |
| jgolinkin@jlcfirm.com | kirstie.wallace@bakerbotts.com |
| JORDAN, LYNCH & CANCIENNE PLLC | BAKER BOTTS L.L.P. |
| 1980 Post Oak Blvd., Suite 2300 | 2001 Ross Avenue, Suite 900 |
| Houston, Texas 77056 | Dallas, Texas 75201 |

*Attorneys for Defendant/*
*Counterclaim Plaintiff*


_/s/ Brian N. Hail_____
Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY DEUTSCHE BANK TRUST COMPANY AMERICAS

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:   Deutsche Bank Trust Company Americas
1999 Bryan St., Ste. 900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Deutsche Bank Trust Company Americas to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Deutsche Bank Trust Company Americas to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an exact

duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.


_____
Officer's Signature

## EXHIBIT A

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____
WITNESS (Custodian of Records)


Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____
NOTARY PUBLIC


My Commission Expires: _____

# EXHIBIT B

## DEFINITIONS

1.    "You" or "Your" means Deutsche Bank Trust Company Americas, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.    "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.    "Alta" and/or "Defendant" means Alta Power LLC, including any of its members, employees, agents, representatives, or anyone acting on its behalf.

4.    "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.    "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.    The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.    The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.      The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.      The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.     The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

## REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1. All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3. All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5. All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7. All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/14/2021 11:35 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| **Plaintiff/Counterclaim-Defendant,** | § | |
| VS. | § | **116TH JUDICIAL DISTRICT** |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| **Defendant/Counterclaim-Defendant.** | § | **DALLAS COUNTY, TEXAS** |

## RETURN OF SERVICE

Came to my hand on **Monday, April 12, 2021 at 11:27 AM,**
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **12:48 PM,** on **Monday, April 12, 2021,**
by delivering to the within named:

### MUFG CAPITAL ANALYTICS, LLC

By delivering to its **Registered Agent, NATIONAL REGISTERED AGENTS, INC.**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN
QUESTIONS DUCES TECUM OF NON–PARTY MUFG CAPITAL ANALYTICS, LLC,
SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES
TECUM TO NON–PARTY MUFG CAPITAL ANALYTICS, LLC, AND EXHIBITS**

having first endorsed thereon the date of the delivery.
An $11.00 witness fee was tendered.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Adil Tadli** who after being duly sworn on oath
states: "My name is **Adil Tadli**. I am a person not less than eighteen (18) years of age and I am competent to make this
oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and
aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest
in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am
familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as they apply to
service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and other notices
from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and 501.2 of the
TRCP."

By: _____

    **Adil Tadli - PSC 1206 Exp 05/31/22**
    served@specialdelivery.com

**Subscribed and Sworn to by Adil Tadli, Before Me, the undersigned authority, on this _14th_ day
of April, 2021.**

_____
**Notary Public in and for the State of Texas**



THOMAS E CONSIDINE
Notary Public
STATE OF TEXAS
ID#12516820-9
My Comm. Exp. April 13, 2025

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

### PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY MUFG CAPITAL ANALYTICS, LLC

To:     National Registered Agents, Inc., as Registered Agent for MUFG Capital Analytics, LLC, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party MUFG Capital Analytics, LLC at 10:00 a.m. on Monday, May 3, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By: _/s/ Brian N. Hail_
Brian N. Hail
State Bar No. 08705500
E-mail: bhail@krcl.com
Andrew D. Robertson
State Bar No. 24090845
E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**

MUFG Capital Analytics, LLC
c/o National Registered Agents, Inc.
1999 Bryan Street, Suite 900
Dallas, Texas 75201

**VIA E-SERVICE:**

| | |
|---|---|
| Michael Cancienne | Jessica B. Pulliam |
| mcancienne@jlcfirm.com | jessica.pulliam@bakerbotts.com |
| Kevin Jordan | John B. Lawrence |
| kjordan@jlcfirm.com | john.lawrence@bakerbotts.com |
| Joseph W. ("Jeb") Golinkin II | Kirstie Wallace |
| jgolinkin@jlcfirm.com | kirstie.wallace@bakerbotts.com |
| JORDAN, LYNCH & CANCIENNE PLLC | BAKER BOTTS L.L.P. |
| 1980 Post Oak Blvd., Suite 2300 | 2001 Ross Avenue, Suite 900 |
| Houston, Texas 77056 | Dallas, Texas 75201 |

*Attorneys for Defendant/*
*Counterclaim Plaintiff*

   */s/ Brian N. Hail*
Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

## SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY MUFG CAPITAL ANALYTICS, LLC

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:    MUFG Capital Analytics, LLC
1999 Bryan Street, Suite 900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for MUFG Capital Analytics, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for MUFG Capital Analytics, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an exact duplicate of the

original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## <u>EXHIBIT A</u>

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To: **As described by the attached 'Exhibit B'**

Type of Records: **Any and all records as described by the attached 'Exhibit B'**

1. Please state your full name.

Answer: _____

2. Please state by whom you are employed and the business address.

Answer: _____

3. What is the title of your position or job?

Answer: _____

4. Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5. Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6. Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7. Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8. Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____

_____
WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.

_____
NOTARY PUBLIC

My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.     "You" or "Your" means MUFG Capital Analytics, LLC, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.     "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.     "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.     "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.     "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.     The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.     The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.     The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.     The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.    The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

## REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/16/2021 12:31 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

## **AFFIDAVIT OF SERVICE**

State of Texas                     County of Dallas                     116th Judicial District Court

Case Number: DC-20-08331

WATTSTOCK, LLC,
     **Plaintiff/Counterclaim Defendant,**

v.

**ALTA POWER LLC,**
     **Defendant/Counterclaim Plaintiff,**

Received these papers on the 12th day of April, 2021 at 3:30 pm to be served on **MUFG  AMERICAS FUNDING CORPORATION care of its Registered Agent, REGISTERED AGENT SOLUTIONS, INC., 1701 Directors Blvd, Suite 300, Austin, Travis County, TX 78741**.

I, Thomas Kroll, being duly sworn, depose and say that on the **13th day of April, 2021** at **12:55 pm, I:**

hand delivered a true copy of this **Plaintiff's Notice of Intention to Take the Deposition Upon Written Questions Duces Tecum of Non-Party MUFG Americas Funding Corporation together with Exhibit "1", $11.00 witness tender and Exhibits "A" & "B" to MUFG  AMERICAS FUNDING CORPORATION care of its Registered Agent, REGISTERED AGENT SOLUTIONS, INC.,** by and through its designated agent, **ADAM SAYRE,** at the address of: **1701 Directors Blvd, Suite 300, Austin, Travis County, TX 78741,** having first endorsed upon such copy of such process the date of delivery.

I certify that I am approved by the Judicial Branch Certification Commission, Misc. Docket No. 05-9122 under rule 103, 501, and 501.2 of the TRCP to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas.  I am competent to make this oath; I am not less than 18 years of age, I am not a party to the above-referenced  cause, I have not been convicted of a felony or a crime of moral turpitude, and I am not interested in the outcome of the above-referenced cause.

Subscribed and Sworn to before me on the 13th day of
April, 2021 by the affiant who is personally known to me.

NOTARY PUBLIC

Helen Broussard
My Commission Expires
11/04/2023
ID No. 130429927

**Thomas Kroll**
PSC - 3012, Exp. 8/31/2021

Our Job Serial Number: THP-2021001643

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1z

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

### PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY MUFG AMERICAS FUNDING CORPORATION

To:    National Registered Agents, Inc., as Registered Agent for MUFG Americas Funding Corporation, 1701 Directors Blvd., Suite 300, Austin, Texas 78744.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party MUFG Americas Funding Corporation at 10:00 a.m. on Monday, May 3, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By: _/s/ Brian N. Hail_____
     Brian N. Hail
     State Bar No. 08705500
     E-mail: bhail@krcl.com
     Andrew D. Robertson
     State Bar No. 24090845
     E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:    (214) 777-4200
Facsimile:    (214) 777-4299

***Attorneys for Plaintiff/Counterclaim Defendant***

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON-PARTY MUFG AMERICAS FUNDING CORPORATION
8400240 (72553.00002.000)

PAGE 2 OF 11

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
MUFG Americas Funding Corporation
c/o National Registered Agents, Inc.
1701 Directors Blvd., Suite 300
Austin, Texas 78744

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/*
*Counterclaim Plaintiff*


_/s/ Brian N. Hail_
Brian N. Hail

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON-PARTY MUFG AMERICAS FUNDING CORPORATION
8400240 (72553.00002.000)

PAGE 3 OF 11

## EXHIBIT 1

### CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY MUFG AMERICAS FUNDING CORPORATION

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:     MUFG Americas Funding Corporation
1701 Directors Blvd. Suite 300
Austin, Texas 78744

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for MUFG Americas Funding Corporation to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for MUFG Americas Funding Corporation to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an exact

duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## EXHIBIT A

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To: **As described by the attached 'Exhibit B'**

Type of Records: **Any and all records as described by the attached 'Exhibit B'**

1. Please state your full name.

Answer: _____

2. Please state by whom you are employed and the business address.

Answer: _____

3. What is the title of your position or job?

Answer: _____

4. Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5. Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6. Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7. Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8. Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9.  Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____

WITNESS (Custodian of Records)


Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____

NOTARY PUBLIC


My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means MUFG Americas Funding Corporation, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.      The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.      The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.     The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/16/2021 12:43 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

## AFFIDAVIT OF SERVICE

**State of Texas**                    **County of Dallas**                    **116th Judicial District Court**

Case Number: DC-20-08331

**WATTSTOCK, LLC,**
    **Plaintiff/Counterclaim Defendant,**

v.

**ALTA POWER LLC,**
    **Defendant/Counterclaim Plaintiff,**

Received these papers on the 12th day of April, 2021 at 3:30 pm to be served on **MUFG SECURITIES AMERICAS INC. care of its Registered Agent, CORPORATION SERVICE COMPANY D/B/A CSC – LAWYERS INCORPORATING SERVICE COMPANY, 211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701.**

I, Vivian Smith, being duly sworn, depose and say that on the **13th day of April, 2021 at 10:30 am, I:**

hand delivered a true copy of this **Plaintiff's Notice of Intention to Take the Deposition Upon Written Questions Duces Tecum of Non-Party MUFG Securities Americas Inc. together with Exhibit "1", $11.00 witness tender and Exhibits "A" & "B"** to **MUFG SECURITIES AMERICAS INC. care of its Registered Agent, CORPORATION SERVICE COMPANY D/B/A CSC – LAWYERS INCORPORATING SERVICE COMPANY,** by and through its designated agent, **SAMANTHA GUERRA,** at the address of: **211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701,** having first endorsed upon such copy of such process the date of delivery.

I certify that I am approved by the Judicial Branch Certification Commission, Misc. Docket No. 05-9122 under rule 103, 501, and 501.2 of the TRCP to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas. I am competent to make this oath; I am not less than 18 years of age, I am not a party to the above-referenced cause, I have not been convicted of a felony or a crime of moral turpitude, and I am not interested in the outcome of the above-referenced cause.

Subscribed and Sworn to before me on the 13th day of
April, 2021 by the affiant who is personally known to me.

NOTARY PUBLIC

SCOTT L. THOMAS
NOTARY PUBLIC
STATE OF TEXAS
ID# 10407286
EXPIRES 1-9-2024

**Vivian Smith**
PSC-12617, Exp. 5/31/2022

Our Job Serial Number: THP-2021001641
Ref: 1020210

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1z



CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY MUFG SECURITIES AMERICAS INC.

To: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, as Registered Agent for MUFG Securities Americas Inc., 211 E. 7th Street, Suite 620, Austin, Texas 78701.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party MUFG Securities Americas Inc. at 10:00 a.m. on Monday, May 3, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON-PARTY MUFG SECURITIES AMERICAS INC.
8403197 (72553.00002.000)

PAGE 1 OF 11

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By:   */s/ Brian N. Hail*
   Brian N. Hail
   State Bar No. 08705500
   E-mail: bhail@krcl.com
   Andrew D. Robertson
   State Bar No. 24090845
   E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

***Attorneys for Plaintiff/Counterclaim Defendant***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
MUFG Securities Americas Inc.
c/o Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, Texas 78701

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/*
*Counterclaim Plaintiff*

     /s/ Brian N. Hail
Brian N. Hail

## EXHIBIT 1

### CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

## SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON–PARTY MUFG SECURITIES AMERICAS INC.

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:    MUFG Securities Americas Inc.
211 E. 7th Street, Suite 620
Austin, Texas 78701

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for MUFG Securities Americas Inc. to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for MUFG Securities Americas Inc. to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an exact duplicate of

the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.


_____
Officer's Signature

## EXHIBIT A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To: **As described by the attached 'Exhibit B'**

Type of Records: **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your
    custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct
    copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or
    communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct
    copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____

_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.

_____

NOTARY PUBLIC

My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.     "You" or "Your" means MUFG Securities Americas Inc., including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.     "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.     "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.     "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.     "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.     The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.     The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.    The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.    The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.    The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

### REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/20/2021 1:34 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

**PLAINTIFF'S AMENDED NOTICE OF INTENTION TO TAKE THE DEPOSITION
UPON WRITTEN QUESTIONS DUCES TECUM OF NON–PARTY
RIVERSTONE HOLDINGS, LLC**

To:    Riverstone Holdings, LLC, by and through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non–Party Riverstone Holdings, LLC at 10:00 a.m. on Tuesday, May 11, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above–referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 20, 2021.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: _/s/ Brian N. Hail_
   Brian N. Hail
   State Bar No. 08705500
   E-mail: bhail@krcl.com
   Andrew D. Robertson
   State Bar No. 24090845
   E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 20, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Riverstone Holdings LLC
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

**VIA E-SERVICE:**

| | |
|---|---|
| Michael Cancienne | Jessica B. Pulliam |
| mcancienne@jlcfirm.com | jessica.pulliam@bakerbotts.com |
| Kevin Jordan | John B. Lawrence |
| kjordan@jlcfirm.com | john.lawrence@bakerbotts.com |
| Joseph W. ("Jeb") Golinkin II | Kirstie Wallace |
| jgolinkin@jlcfirm.com | kirstie.wallace@bakerbotts.com |
| JORDAN, LYNCH & CANCIENNE PLLC | BAKER BOTTS L.L.P. |
| 1980 Post Oak Blvd., Suite 2300 | 2001 Ross Avenue, Suite 900 |
| Houston, Texas 77056 | Dallas, Texas 75201 |

*Attorneys for Defendant/*
*Counterclaim Plaintiff*

_/s/ Brian N. Hail_____
Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON–PARTY RIVERSTONE HOLDINGS, LLC

THE STATE OF TEXAS

ISSUED ON: APRIL 20, 2021

TO CUSTODIAN OF RECORDS FOR:     Riverstone Holdings, LLC
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Riverstone Holdings, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Tuesday, May 11, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Riverstone Holdings, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Tuesday, May 11, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and

there to produce and permit inspection and copying of the original or an exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above–styled and –numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

**CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.**

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

*/s/  Brian N. Hail*
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.


_____
Officer's Signature

## EXHIBIT A

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4.  Have you complied?  If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9.   Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____
WITNESS (Custodian of Records)


      Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____
NOTARY PUBLIC


My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means Riverstone Holdings, LLC, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.    The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.    The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.    The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

## REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1. All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3. All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5. All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7. All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 52639535
Status as of 4/21/2021 12:00 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 4/20/2021 1:34:15 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 4/20/2021 1:34:15 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 4/20/2021 1:34:15 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 4/20/2021 1:34:15 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 4/20/2021 1:34:15 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 4/20/2021 1:34:15 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 4/20/2021 1:34:15 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 4/20/2021 1:34:15 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 4/20/2021 1:34:15 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 4/20/2021 1:34:15 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 4/20/2021 1:34:15 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 4/20/2021 1:34:15 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 4/20/2021 1:34:15 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 4/20/2021 1:34:15 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 4/20/2021 1:34:15 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 4/20/2021 1:34:15 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 4/20/2021 1:34:15 PM | SENT |
| Connie Nims | | cnims@krcl.com | 4/20/2021 1:34:15 PM | SENT |

Associated Case Party: ALTA POWER LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 52639535
Status as of 4/21/2021 12:00 PM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 4/20/2021 1:34:15 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 4/20/2021 1:34:15 PM | SENT |

FILED
4/20/2021 2:38 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| v. | 116TH JUDICIAL DISTRICT |
| GENERAL ELECTRIC INTERNATIONAL,<br>INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | |

## NOTICE OF HEARING

Please take notice that General Electric International, Inc.'s Rule 91a Motion to Dismiss Causes of Action Alleged in Alta Power LLC's Third-Party Petition is set for oral hearing on 18 May 2021 at 10:45 a.m. via teleconference hearing with Honorable Tonya Parker, presiding. The teleconference hearing can be accessed by dialing 425-436-6373 and entering the access code of 590035 to participate.

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

*/s/ Michael D. Fisse*
Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA  70447
Telephone:      985-871-0800
Facsimile:      985-871-0899
E-mail:          mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

## CERTIFICATE OF SERVICE

This certifies that a copy of the above and foregoing was sent to the following counsel of

record through the Court's electronic filing system on 20 April 2021.

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX  75202
bhail@krcl.com
drobertson@krcl.com
Counselors for WattStock LLC, Plaintiff and
Counter-Defendant

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX  75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
Additional Counselors for Alta Power LLC,
Defendant, Counter-Plaintiff and Third-Party
Plaintiff

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX  77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
Counselors for Alta Power LLC, Defendant,
Counter-Plaintiff and Third-Party Plaintiff

*/s/ Michael D. Fisse*
MICHAEL D. FISSE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 52644704
Status as of 4/21/2021 2:28 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 4/20/2021 2:38:14 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 4/20/2021 2:38:14 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 4/20/2021 2:38:14 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 4/20/2021 2:38:14 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 4/20/2021 2:38:14 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 4/20/2021 2:38:14 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 4/20/2021 2:38:14 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 4/20/2021 2:38:14 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 4/20/2021 2:38:14 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 4/20/2021 2:38:14 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 4/20/2021 2:38:14 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 4/20/2021 2:38:14 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 4/20/2021 2:38:14 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 4/20/2021 2:38:14 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 4/20/2021 2:38:14 PM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 4/20/2021 2:38:14 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 4/20/2021 2:38:14 PM | SENT |
| Connie Nims | | cnims@krcl.com | 4/20/2021 2:38:14 PM | SENT |

Associated Case Party: ALTA POWER LLC

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 52644704
Status as of 4/21/2021 2:28 PM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan |  | kjordan@jlcfirm.com | 4/20/2021 2:38:14 PM | SENT |
| Joseph Golinkin |  | jgolinkin@jlcfirm.com | 4/20/2021 2:38:14 PM | SENT |

FILED
4/22/2021 12:23 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

## AFFIDAVIT OF SERVICE

**State of Texas**                **County of DALLAS**                **116th Judicial District Court**

Case Number: DC-20-08331   Court Date: 5/3/2021

Plaintiff:
**WATTSTOCK LLC**

vs.

Defendant:
**ALTA POWER LLC**

Received these papers on the 12th day of April, 2021 at 12:10 pm to be served on **MACQUARIE ENERGY, LLC, 500 DALLAS STREET, SUITE 3100, HOUSTON, TX 77002.**

I, ALEXANDRA TEDDER, being duly sworn, depose and say that on the **14th day of April, 2021** at **12:44 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON–PARTY MACQUARIE ENERGY, LLC WITH EXHIBITS AND $11 WITNESS FEE** with the date and hour of service endorsed thereon by me, to: **BYRON JOURNET as AUTHORIZED AGENT FOR SERVICE** at the address of: **500 DALLAS STREET, SUITE 3100, HOUSTON, TX 77002**, who stated they are authorized to accept service for **MACQUARIE ENERGY, LLC**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 36, Sex: M, Race/Skin Color: Black, Height: 5'6", Weight: 150, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 16th day of April, 2021 by the affiant who is personally known to me.

NOTARY PUBLIC

*Alexandra Tedder*
**ALEXANDRA TEDDER**
Process Server

Our Job Serial Number: DNE-2021000275
Ref: 1020214

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1p



DONNIE DENKINS MORELAND, SR.
Notary Public, State of Texas
Comm. Expires 03-10-2023
Notary ID 125315149

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY MACQUARIE ENERGY, LLC

To:   Custodian of Records for Macquarie Energy, LLC, 500 Dallas Street, Suite 3100, Houston, Texas 77002.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party Macquarie Energy, LLC at 10:00 a.m. on Monday, May 3, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, Galleria Tower II, 5051 Westheimer Road, 10th Floor, Houston, Texas 77056, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, Galleria Tower II, 5051 Westheimer Road, 10th Floor, Houston, Texas 77056, on or before the date and time specified for compliance above.

Dated: April 12, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By:___*/s/ Brian N. Hail*_____
    Brian N. Hail
    State Bar No. 08705500
    E-mail: bhail@krcl.com
    Andrew D. Robertson
    State Bar No. 24090845
    E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

***Attorneys for Plaintiff/Counterclaim Defendant***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 12, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Custodian of Records
Macquarie Energy LLC
500 Dallas Street, Suite 3100
Houston, Texas 77002

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/*
*Counterclaim Plaintiff*


_/s/ Brian N. Hail_____
Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

## SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY MACQUARIE ENERGY, LLC

THE STATE OF TEXAS

ISSUED ON: APRIL 12, 2021

TO CUSTODIAN OF RECORDS FOR:     Macquarie Energy, LLC
500 Dallas Street, Suite 3100
Houston, Texas 77002

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Macquarie Energy, LLC to appear at the offices of Kane Russell Coleman Logan PC, Galleria Tower II, 5051 Westheimer Road, 10th Floor, Houston, Texas 77056 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Macquarie Energy, LLC to appear at the offices of Kane Russell Coleman Logan PC, Galleria Tower II, 5051 Westheimer Road, 10th Floor, Houston, Texas 77056 on or before 10:00 a.m. on Monday, May 3, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an

exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/ Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## EXHIBIT A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4.  Have you complied?  If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9.  Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____

_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.

_____

NOTARY PUBLIC

My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.     "You" or "Your" means Macquarie Energy, LLC, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.     "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.     "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.     "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.     "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.     The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.     The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.    The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.    The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.   The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

### REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1. All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3. All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5. All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7. All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

FILED
4/22/2021 3:02 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

**CAUSE NO. DC-20-08331**

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | **116TH JUDICIAL DISTRICT** |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| **Defendant(s).** | § | **DALLAS COUNTY, TEXAS** |

## RETURN OF SERVICE

Came to my hand on **Wednesday, April 21, 2021 at 12:36 PM**,
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **1:50 PM, on Wednesday, April 21, 2021**,
by delivering to the within named:

### RIVERSTONE HOLDINGS, LLC

By delivering to its **Registered Agent, CT CORPORATION SYSTEM**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

**PLAINTIFF'S AMENDED NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON
WRITTEN QUESTIONS DUCES TECUM OF NON–PARTY RIVERSTONE HOLDINGS, LLC
and SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES
TECUM TO NON–PARTY RIVERSTONE HOLDINGS, LLC with EXHIBITS attached**

having first endorsed thereon the date of the delivery.
**And tendered a witness fee of $11.00 in cash**

BEFORE ME, the undersigned authority, on this day personally appeared **Ryan McColm** who after being duly sworn on
oath states: "My name is **Ryan McColm**. I am a person not less than eighteen (18) years of age and I am competent to
make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained
herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have
no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral
turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Codes as
they apply to service of process. I am certified by the Judicial Branch Certification Commission to deliver citations and
other notices from any District, County and Justice Courts in and for the State of Texas in compliance with rule 103 and
501.2 of the TRCP."

By: _____

    **Ryan McColm - PSC 6317 - Exp 01/31/23**
    **served@specialdelivery.com**

**Subscribed and Sworn to by Ryan McColm, Before Me, the undersigned authority, on this
_22_ day of April, 2021.**

GEOFFREY HINER
Notary Public
STATE OF TEXAS
ID#13014096-1
My Comm. Exp. Mar. 4, 2023

Notary Public in and for the State of Texas

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON-PARTY RIVERSTONE HOLDINGS, LLC

To:   Riverstone Holdings, LLC, by and through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non-Party Riverstone Holdings, LLC at 10:00 a.m. on Tuesday, May 11, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above-referenced deponent is required to produce for inspection and copying at the

time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202, on or before the date and time specified for compliance above.

Dated: April 20, 2021.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC

By:   /s/ Brian N. Hail
      Brian N. Hail
      State Bar No. 08705500
      E-mail: bhail@krcl.com
      Andrew D. Robertson
      State Bar No. 24090845
      E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 20, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**
Riverstone Holdings LLC
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

**VIA E-SERVICE:**

Michael Cancienne
mcancienne@jlcfirm.com
Kevin Jordan
kjordan@jlcfirm.com
Joseph W. ("Jeb") Golinkin II
jgolinkin@jlcfirm.com
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

Jessica B. Pulliam
jessica.pulliam@bakerbotts.com
John B. Lawrence
john.lawrence@bakerbotts.com
Kirstie Wallace
kirstie.wallace@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

*Attorneys for Defendant/—— —*
*Counterclaim Plaintiff*


        /s/ Brian N. Hail
        Brian N. Hail

## EXHIBIT 1

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

### SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM TO NON-PARTY RIVERSTONE HOLDINGS, LLC

THE STATE OF TEXAS

ISSUED ON: APRIL 20, 2021

TO CUSTODIAN OF RECORDS FOR:    Riverstone Holdings, LLC
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Riverstone Holdings, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Tuesday, May 11, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Riverstone Holdings, LLC to appear at the offices of Kane Russell Coleman Logan PC, 901 Main Street, Suite 5200, Dallas, Texas 75202 on or before 10:00 a.m. on Tuesday, May 11, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and

there to produce and permit inspection and copying of the original or an exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above-styled and -numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/  Brian N. Hail
Brian N. Hail

OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

**RETURN / AFFIDAVIT
PROOF / ATTACHED**

## EXHIBIT A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To: **As described by the attached 'Exhibit B'**

Type of Records: **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4. Have you complied? If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9. Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____


_____
WITNESS (Custodian of Records)


Before me, the undersigned authority, on this _day_ personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.


_____
NOTARY PUBLIC


My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means Riverstone Holdings, LLC, including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.      The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.      The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.     The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

### REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10.  All communications between You and Alta referring to, or related to, WattStock.

11.  All communications between You and Alta referring to, or related to, GE.



# JORDAN, LYNCH JL&C CANCIENNE PLLC

### 1980 POST OAK BLVD, SUITE 2300
### HOUSTON, TEXAS 77056
### (713) 955-4020
### WWW.JLCFIRM.COM

**MICHAEL CANCIENNE**
**DIRECT DIAL : (713) 955-4028**
**EMAIL : mcancienne@jlcfirm.com**

April 23, 2021

*Via E-Mail*

Kane Russell Coleman Logan PC
901 Main St. Ste 5200
Dallas, TX 75202
DRobertson@krcl.com
BHail@krcl.com

Daigle Fisse & Kessenich
227 Highway 21
Madisonville, LA 70447
mfisse@daiglefisse.com

Re:    Cause No. DC-20-08331; *WattStock LLC v. Alta Power, LLC*; in the 116th Judicial
District Court of Dallas County, Texas

Counsel:

This Rule 11 agreement will confirm the parties' agreement to suspend all
deadlines set out in the Court's August 21, 2020 Scheduling Order. Future deadlines will
be provided by a revised scheduling order to be entered by the Court at a later date.

If this accurately reflects our agreement, please sign below to confirm your
agreement and return a copy of the executed agreement to me by email at
jgolinkin@jlcfirm.com.

Very truly yours,

Michael Cancienne

MC: jg; jp; lb

_____

Counsel for Alta Power, LLC

/s/ Brian N. Hail
Counsel for WattStock LLC

/s/ Michael D. Fisse
Counsel for General Electric International, Inc.
d/b/a/ GE Power Services

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joseph Golinkin II on behalf of Joseph Golinkin II
Bar No. 24087596
jgolinkin@jlcfirm.com
Envelope ID: 52852158
Status as of 4/28/2021 11:25 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Robertson | 24090845 | drobertson@krcl.com | 4/27/2021 10:19:08 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 4/27/2021 10:19:08 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 4/27/2021 10:19:08 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 4/27/2021 10:19:08 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 4/27/2021 10:19:08 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 4/27/2021 10:19:08 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 4/27/2021 10:19:08 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 4/27/2021 10:19:08 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 4/27/2021 10:19:08 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 4/27/2021 10:19:08 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 4/27/2021 10:19:08 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 4/27/2021 10:19:08 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 4/27/2021 10:19:08 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 4/27/2021 10:19:08 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 4/27/2021 10:19:08 AM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 4/27/2021 10:19:08 AM | SENT |
| Connie Nims | | cnims@krcl.com | 4/27/2021 10:19:08 AM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 4/27/2021 10:19:08 AM | SENT |

Associated Case Party: ALTA POWER LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joseph Golinkin II on behalf of Joseph Golinkin II
Bar No. 24087596
jgolinkin@jlcfirm.com
Envelope ID: 52852158
Status as of 4/28/2021 11:25 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 4/27/2021 10:19:08 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 4/27/2021 10:19:08 AM | SENT |

FILED
4/30/2021 3:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Eduardo Suarez DEPUTY

228

CAUSE NO. DC-20-08331

WATTSTOCK LLC,                          ) IN THE DISTRICT COURT OF
  Plaintiff/Counter Defendant,          )
                                        )
v.                                      ) DALLAS COUNTY, TEXAS
                                        )
ALTA POWER LLC,                         )
  Defendant/Counter Plaintiff.          ) 116th JUDICIAL DISTRICT

VOLUME 1 OF 1
REPORTER'S CERTIFICATION
ORAL VIDEO-RECORDED VIDEOCONFERENCED DEPOSITION OF
PETE WATSON
TAKEN ON JANUARY 12, 2021

        I, AUDREY L. WALDROP, Certified Shorthand Reporter
in and for the State of Texas, hereby certify to the
following:
        That the witness, PETE WATSON, was duly sworn by
the officer and that the transcript of the oral
deposition is a true record of the testimony given by
the witness;
        That the deposition transcript was submitted on
_February 10, 2021_ to the witness or to the attorney
for the witness for examination, signature and return to
Continental Court Reporters, Inc., by
_March 8, 2021_;
        That the amount of time used by each party at the
deposition is as follows:

        Mr. Michael Cancienne:  4 hours, 56 minutes
        Mr. Brian N. Hail:  0 hours, 0 minutes

        That pursuant to information given to the
deposition officer at the time said testimony was taken,
the following includes counsel for all parties of
record:

        Mr. Brian N. Hail, Attorney for Plaintiff/Counter
Defendant WattStock LLC
        Mr. Michael Cancienne, Attorney for
Defendant/Counter Plaintiff Alta Power LLC

        I further certify that I am neither counsel for,
related to, nor employed by any of the parties in the
action in which this proceeding was taken, and, further,
that I am not financially or otherwise interested in the
outcome of the action.

CONTINENTAL COURT REPORTERS, INC.
(713) 522-5080

1        Further certification requirements pursuant to Rule
203 of TRCP will be certified to after they have
2   occurred.
         Certified to by me this _____ day of February,
3   2021.

4

5

6                              Audrey L. Waldrop, CSR
                               Texas CSR No. 6218
7                              Expiration Date:  October 31, 2021
                               Continental Court Reporters, Inc.
8                              Firm Registration No.:  61
                               Expiration Date:  January 31, 2023
9                              5300 Memorial Drive
                               Suite 250
10                             Houston, Texas 77007-8250
                               713-522-5080

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   PW/AL

230

FURTHER CERTIFICATION PURSUANT TO RULE 203

The original deposition ~~was~~/was not returned to the deposition officer on _March 8, 2021_ ;

If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Mr. Michael Cancienne, Custodial Attorney;

That $ _1972.10_ is the deposition officer's charges to Defendant/Counter Plaintiff Alta Power LLC for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3 and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me this _30_ day of _April_ , 2021.

Audrey L. Waldrop, CSR
Texas CSR No. 6218
Expiration Date:  October 31, 2021
Continental Court Reporters, Inc.
Firm Registration No.:  61
Expiration Date:  January 31, 2023
5300 Memorial Drive
Suite 250
Houston, Texas 77007-8250
713-522-5080

**NO CHANGES
MADE**

PW/AL

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 53009870
Status as of 5/3/2021 11:48 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 4/30/2021 3:36:21 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 4/30/2021 3:36:21 PM | SENT |
| Connie Nims | | cnims@krcl.com | 4/30/2021 3:36:21 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 4/30/2021 3:36:21 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 4/30/2021 3:36:21 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 4/30/2021 3:36:21 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 4/30/2021 3:36:21 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 4/30/2021 3:36:21 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 4/30/2021 3:36:21 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 4/30/2021 3:36:21 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 4/30/2021 3:36:21 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 4/30/2021 3:36:21 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 4/30/2021 3:36:21 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 4/30/2021 3:36:21 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 4/30/2021 3:36:21 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 4/30/2021 3:36:21 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 4/30/2021 3:36:21 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 4/30/2021 3:36:21 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 4/30/2021 3:36:21 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 4/30/2021 3:36:21 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 53009870
Status as of 5/3/2021 11:48 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 4/30/2021 3:36:21 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 4/30/2021 3:36:21 PM | SENT |

FILED
5/3/2021 2:35 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS DUCES TECUM OF NON–PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.

To:    Starwood Capital Group Holdings, L.P., 1601 Washington Avenue, Suite 800, Miami Beach, FL 33139.

PLEASE TAKE NOTICE that, pursuant to Texas Rules of Civil Procedure 200.1(b) and 205.2, Plaintiff will take the deposition upon written questions of Non–Party Starwood Capital Group Holdings, L.P. at 10:00 a.m. on Monday, May 31, 2021, before a Notary Public in and for the State of Texas. Attached as **Exhibit 1** is a copy of the subpoena duces tecum requiring appearance for the deposition upon written questions and production of responsive materials, which is served "at the same time" as this notice pursuant to Rule 205.2. The "direct questions to be propounded to the witness" are attached to the subpoena duces tecum as "Exhibit A." Responses to the deposition upon written questions shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC c/o Agent for CSI Global Deposition Services, 12260 S.W. 132nd Court, Suite 113, Miami FL 33186, on or before the date and time specified for compliance above.

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON–PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.
10426.001

Page 1 of 11
8425393 (72553.00002.000)

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Texas Rule of Civil Procedure 205.1, the above–referenced deponent is required to produce for inspection and copying at the time and place for taking of the deposition upon written questions, the information, documents, and/or tangible things requested and identified in "Exhibit B" to the subpoena duces tecum (attached hereto as **Exhibit 1**). Production shall be delivered to Brian Hail, Esq. (Plaintiff's counsel) electronically at bhail@krcl.com or, alternatively, at the offices of Kane Russell Coleman Logan PC c/o Agent for CSI Global Deposition Services, 12260 S.W. 132nd Court, Suite 113, Miami FL 33186, on or before the date and time specified for compliance above.

Dated: May 03, 2021.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By:   _/s/ Brian N. Hail_
　　Brian N. Hail
　　State Bar No. 08705500
　　E-mail: bhail@krcl.com
　　Andrew D. Robertson
　　State Bar No. 24090845
　　E-mail: drobertson@krcl.com

901 Main Street, Suite 5200
Dallas, Texas  75202
Telephone:    (214) 777-4200
Facsimile:     (214) 777-4299

*Attorneys for Plaintiff/Counterclaim Defendant*

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON–PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.
10426.001

Page **2** of **11**
8425393 (72553.00002.000)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on May 03, 2021 in accordance with the Texas Rules of Civil Procedure.

**VIA HAND DELIVERY:**

Starwood Capital Group Holdings, L.P.
1601 Washington Avenue, Suite 800
Miami Beach, FL 33139

**VIA E-SERVICE:**

| | |
|---|---|
| Michael Cancienne | Jessica B. Pulliam |
| mcancienne@jlcfirm.com | jessica.pulliam@bakerbotts.com |
| Kevin Jordan | John B. Lawrence |
| kjordan@jlcfirm.com | john.lawrence@bakerbotts.com |
| Joseph W. ("Jeb") Golinkin II | Kirstie Wallace |
| jgolinkin@jlcfirm.com | kirstie.wallace@bakerbotts.com |
| JORDAN, LYNCH & CANCIENNE PLLC | BAKER BOTTS L.L.P. |
| 1980 Post Oak Blvd., Suite 2300 | 2001 Ross Avenue, Suite 900 |
| Houston, Texas 77056 | Dallas, Texas 75201 |

*Attorneys for Defendant/*
*Counterclaim Plaintiff*

  */s/ Brian N. Hail*
Brian N. Hail

## EXHIBIT 1

### CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | 116TH JUDICIAL DISTRICT |

**SUBPOENA DUCES TECUM AND DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM TO NON–PARTY STARWOOD CAPITAL GROUP**

THE STATE OF TEXAS

ISSUED ON: MAY 03, 2021

TO CUSTODIAN OF RECORDS FOR:    <u>Starwood Capital Group Holdings, L.P.</u>
1601 Washington Avenue, Suite 800
Miami Beach, FL 33139

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN TEXAS RULE OF CIVIL PROCEDURE 176:

YOU ARE HEREBY COMMANDED to summon a custodian of records for Starwood Capital Group Holdings, L.P. to appear at the offices of Kane Russell Coleman Logan PC c/o Agent for CSI Global Deposition Services, 12260 S.W. 132nd Court, Suite 113, Miami FL 33186 on or before 10:00 a.m. on Monday, May 31, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to answer under oath the written deposition questions shown on the attached Exhibit A. The written questions to be propounded to the deponent will be propounded by a Notary Public or certified court reporter at the time and place specified above or as otherwise mutually agreed. The deposition will continue day to day until completed.

YOU ARE, FURTHER, HEREBY COMMANDED to summon the same custodian of records for Starwood Capital Group Holdings, L.P. to appear at the offices of Kane Russell Coleman Logan PC c/o Agent for CSI Global Deposition Services, 12260 S.W. 132nd Court, Suite 113,

Miami FL 33186 on or before 10:00 a.m. on Monday, May 31, 2021, or at such other time and place as mutually agreed to by Plaintiff and the deponent, and there to produce and permit inspection and copying of the original or an exact duplicate of the original of the documents or tangible things described on the attached Exhibit B that are in such custodian of records' possession, custody, or control. The documents are desired as evidence in the above–styled and –numbered civil action currently pending in the 116th Judicial District Court of Dallas County, Texas.

Pursuant to Texas Civil Practice and Remedies Code § 22.004, payment in the amount of $1.00 is also included with this subpoena. Additional payment for the reasonable costs of reproducing these documents will be paid at the time of production.

**CONTEMPT: FAILURE BY ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED IN CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA IS ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH.**

This subpoena and deposition upon written questions was issued at the request of Plaintiff, WattStock LLC, whose attorney of record is:

Brian Hail
State Bar No. 08705500
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200

/s/  Brian N. Hail
Brian N. Hail

## OFFICER'S RETURN

I hereby state that on this _____ day of _____, 2021, I delivered a true and

correct copy hereof, along with all fees required by law, to the within named witness by serving

_____.

Returned this _____ day of _____, 2021.

_____
Officer's Signature

## EXHIBIT A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4.  Have you complied?  If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

Notice of Intention to Take the Deposition Upon Written Questions
Duces Tecum of Non–Party Starwood Capital Group Holdings, L.P.
10426.001

Page 7 of 11
8425393 (72553.00002.000)

9.  Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____

_____
WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.

_____
NOTARY PUBLIC

My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means Starwood Capital Group Holdings, L.P., including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);

- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.     The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.     The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.    The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

## REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1. All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3. All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4. All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5. All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6. All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7. All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9. All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

NOTICE OF INTENTION TO TAKE THE DEPOSITION UPON WRITTEN QUESTIONS
DUCES TECUM OF NON–PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.
10426.001

Page **11** of 11
8425393 (72553.00002.000)

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL DISTRICT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

WATTSTOCK LLC,

       Plaintiff/Counterclaim Defendant,

                                      Case No.: _____

vs.

                                        Foreign Cause No.: <u>DC-20-08331</u>

ALTA POWER LLC,

       Defendant/Counterclaim Plaintiff.

_____/

## SUBPOENA DUCES TECUM WITHOUT DEPOSITION

**TO:**   Custodian of Records for:
       **Starwood Capital Group Holdings, L.P.**
       **1601 Washington Avenue, Suite 800**
       **Miami Beach, FL 33139**

YOU ARE COMMANDED to furnish to **Kane Russell Coleman & Logan PC c/o Agent for CSI Global Deposition Services, 12260 S.W. 132nd Court, Suite 113, Miami FL 33186** within ten (10) days of receipt of this Subpoena and to have with you at that time and place the following:

       **Any and all records as described by the attached 'Exhibit B'; and**
       **Direct questions to be propounded to the witness attached as 'Exhibit A'.**

HIPAA Certificate- This certifies that this subpoena has been issued in compliance with the Health Insurance Portability and Accountability Act of 1996, (HIPAA), Public Law 104-901 and 45 CFR 164.512(e)(1)(ii) as this subpoena has been issued pursuant to Rules 1.410 and 1.351, Fla. R. Civ. P. The Party issuing this subpoena has made a good faith attempt to provide written notice to the Plaintiff/Patient listed above by sending his/her attorney, a notice of the issuance of this subpoena which included sufficient information about the litigation to permit the Plaintiff/Patient to raise an objection to the court or administrative tribunal.  The time for the Plaintiff/Patient to raise an objection pursuant to Rule 1.351, Fla. R. Civ. P. has expired and no objections were filed.

These items will be inspected and may be copied at that time.  You will not be required to surrender the original items.  You may comply with this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.  You may mail or deliver the copies to **CSI Global Deposition Services**, whose name appears on this subpoena and thereby eliminate the requirement of your appearance at this time and place specified above.

You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney and **CSI Global Deposition Services**, whose name appears on this subpoena**.**

### THIS WILL NOT BE A DEPOSITION. NO TESTIMONY WILL BE TAKEN.

**WITNESS MY HAND, this _____ day of _____, 2021.**

Brian N. Hail
TX State Bar No. 08705500
E-mail: bhail@krcl.com
Andrew D. Robertson
TX State Bar No. 24090845
E-mail: drobertson@krcl.com
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Ste. 5200
Dallas, Texas 75202
Telephone (214) 777-4200
*Attorney for Plaintiff/Counterclaim*
*Defendant, Wattstock LLC*

By: _____
                              Clerk of Court

*Contempt*.  Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed in contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served.

<u>**EXHIBIT A**</u>

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS**

Records Pertaining To:  **As described by the attached 'Exhibit B'**

Type of Records:  **Any and all records as described by the attached 'Exhibit B'**

1.  Please state your full name.

Answer: _____

2.  Please state by whom you are employed and the business address.

Answer: _____

3.  What is the title of your position or job?

Answer: _____

4.  Are these documents and/or communications outlined in the subpoena duces tecum in your custody or subject to your control, supervision or direction?

Answer: _____

5.  Are you able to identify these aforementioned records as the originals or true and correct copies of the originals?

Answer: _____

6.  Please hand to the Officer taking this deposition copies of the documents and/or communications mentioned in Question No. 4.  Have you complied?  If not, why?

Answer: _____

7.  Are the copies, which you have handed to the Officer taking this deposition true and correct copies of such documents and/or communications?

Answer: _____

8.  Were such documents and/or communications kept in the regular course of your business?

Answer: _____

9.  Was it in your regular course of business for a person with knowledge of the acts, events, conditions, opinion, or diagnoses recorded to make the record or to transmit information thereof to be included in such record?

Answer: _____

10. Were the entries on these records made at or shortly after the time of the transaction recorded?

Answer: _____

11. Was the method of preparation of these records trustworthy?

Answer: _____

_____
WITNESS (Custodian of Records)

     Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2021.

_____
NOTARY PUBLIC

My Commission Expires: _____

## EXHIBIT B

### DEFINITIONS

1.      "You" or "Your" means Starwood Capital Group Holdings, L.P., including any of Your officers, principals, employees, agents, representatives, or anyone acting on Your behalf.

2.      "WattStock" and/or "Plaintiff" means WattStock LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

3.      "Alta" and/or "Defendant" means Alta Power LLC, including any of its officers, members, employees, agents, representatives, or anyone acting on its behalf.

4.      "GE" means General Electric Company, including any of its officers, members, principals, employees, agents, representatives, or anyone acting on its behalf.

5.      "Goodlow Project" means Alta's plan to develop one or more power generation sites in the Texas market using surplus combustion turbine packages.

6.      The term "Communication(s)" means any documentary or non-documentary transmission or expression of information, ideas or images and includes mechanical, computer or electronic transmissions, oral statements, telephone conversations, faxes, negotiations, conferences, or meetings, however formal or informal, mailings and publications.

7.      The term "Document(s)" means and includes all "documents and tangible things," including but not limited to, any printed typewritten, hand written, drawn, punched, taped, mechanically, electronically, or magnetically, or otherwise recorded matter of whatever character, including but without limitation, letters, records, purchase orders, bills, invoices, delivery documents, work orders, memoranda, tabulations, telegrams, notes, charts, graphs, catalogues, brochures, books, pamphlets, periodicals, publications, advertisements, diaries, letters, resumes, reports, work sheets, manuals, surveys, studies, calendars, inter- or intra- office communications, statements, investigative reports, announcements, depositions, answers to interrogatories, affidavits, pleadings, judgments, newspaper articles, photographs, microfiche, microfilm, computer programs, computer disks, tape recordings, video recordings, motion pictures, e-mails, printouts of web pages, and any carbon or photographic copies of any such material if You do not have custody or control of the original. The term "Document(s)" shall also include not only hard-copy form, but also any documents in their native form, including as electronically-stored information ("ESI"). ESI should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as:

- Digital communication (e.g., email, voicemail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or lotus 123 worksheet);
- Accounting Application data (e.g., QuickBooks, Juris, Money data files);
- Image and Facsimile files (e.g., .pdf, .tiff, .jpg, .gif images);

- Sound recordings (e.g., .wav and .mp3 files);
- Video and animation (e.g., avi and .mov files);
- Databases (e.g., Access, Oracle SQL Server, SAP);
- Contact and relationship management data (e.g. outlook, ACT!);
- Calendar and diary application data (e.g. Outlook PST, Yahoo, blog tools);
- Online access data (e.g., temporary internet files, history, cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network access and server activity logs;
- Project management application data;
- Computer aided design/drawing files; and
- Back-up and archival files (e.g., Zip, .gho).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to You, but also in areas You may deem not reasonably accessible

8.      The term "Custody, control, or possession" means in your physical possession, as "Your" is defined above, and/or if you have the right to secure the document or a copy thereof from another person or entity having physical possession thereof.

9.      The terms "Reflect," "Reflecting," "Refer," "Referring," "Relate," "Related" and/or "Relating" mean, without limitation, referring to, relating to, having any relationship to, pertaining to, evidencing or constituting evidence of, originated by, representing, memorializing, summarizing, describing, discussing, analyzing, evaluating, directly or indirectly, or in whole or in part, the subject matter of the particular request.

10.      The terms "And," "Any," "All," "As Well As," and "Or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information which might otherwise be construed to be outside the scope.

DUCES TECUM OF NON-PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.      8425393 (72553.00002.000)
10426.001

### REQUEST FOR DOCUMENTS

Please produce for inspection and copying the following documents, information, or tangible things in your possession, custody or control:

1.  All financing agreements, loan documents, term sheets, or other documents evidencing any financing provided by You for either the Goodlow Project or Alta.

2.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

3.  All drafts of any financing agreements, loan documents, terms sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that is currently being negotiated.

4.  All communications between You and Alta related to any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

5.  All drafts of any financing agreements, loan documents, term sheets, or other documents evidencing any potential financing to be provided by You for either the Goodlow Project or Alta that did not close for any reason.

6.  All communications between You and Alta related to any drafts of any financing agreements, loan documents, term sheets, or other documents produced by You in response to the previous request for documents.

7.  All past or current business plans for Alta, including but not limited to business plans for the Goodlow Project.

8.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to the Goodlow Project.

9.  All project summaries, compilations, investor materials, marketing materials, presentations, or other documents related to Alta's experience as a power project developer or any specific projects developed by Alta other than the Goodlow Project.

10. All communications between You and Alta referring to, or related to, WattStock.

11. All communications between You and Alta referring to, or related to, GE.

DUCES TECUM OF NON–PARTY STARWOOD CAPITAL GROUP HOLDINGS, L.P.          8425393 (72553.00002.000)
10426.001

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 53052724
Status as of 5/4/2021 12:01 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/3/2021 2:35:11 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/3/2021 2:35:11 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/3/2021 2:35:11 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/3/2021 2:35:11 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/3/2021 2:35:11 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/3/2021 2:35:11 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/3/2021 2:35:11 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/3/2021 2:35:11 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/3/2021 2:35:11 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/3/2021 2:35:11 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/3/2021 2:35:11 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/3/2021 2:35:11 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/3/2021 2:35:11 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/3/2021 2:35:11 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/3/2021 2:35:11 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/3/2021 2:35:11 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/3/2021 2:35:11 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/3/2021 2:35:11 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/3/2021 2:35:11 PM | SENT |

Associated Case Party: WATTSTOCK LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 53052724
Status as of 5/4/2021 12:01 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Connie Nims | | cnims@krcl.com | 5/3/2021 2:35:11 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 5/3/2021 2:35:11 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/3/2021 2:35:11 PM | SENT |

FILED
5/11/2021 8:00 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

## CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
| *Defendant, Counter-Plaintiff, and* | § | |
| *Third-Party Plaintiff,* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| WATTSTOCK LLC | § | |
| *Counter-Defendant, and* | § | |
| | § | |
| GENERAL ELECTRIC | § | 116th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES | § | |
| *Third-Party Defendants.* | § | |
| | § | |

## RESPONSE TO GENERAL ELECTRIC INTERNATIONAL INC.'S RULE 91A MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

STANDARD OF REVIEW ....................................................................................... 9

ARGUMENT ......................................................................................................... 10

   I.    GE fails to satisfy its burden to demonstrate that the request for declaratory
       judgment in Count I, paragraph 105(e), has no basis in law or fact. .................................10

   II.   GE fails to satisfy its burden to demonstrate that there is no basis in law or fact for
       holding GE liable for WattStock's torts, as set forth in Count 1, paragraph 105(b),
       and Count II. ..............................................................................................14

   III.  GE fails to satisfy its burden to demonstrate that Alta Power's allegation of unjust
       enrichment has no basis in law or fact. ..................................................................15

   IV.  GE fails to satisfy its burden to demonstrate that the claims for fraud and
       negligent misrepresentation lack a basis in law or fact.................................................18

   V.   GE fails to satisfy its burden to demonstrate that Alta Power's claim for
       consequential damages lacks a basis in law or fact. ...................................................21

CONCLUSION..................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Burke v. Union Pac. Res. Co.*,
    138 S.W.3d 46 (Tex. App.—Texarkana 2004, pet. denied) ...................................22

*Bransom v. Standard Hardware, Inc.*,
    874 S.W.2d 919 (Tex. App.—Fort Worth 1994, writ denied)..........................17, 18

*CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*,
    734 S.W.2d 653, 655 (Tex. 1987)........................................................................23

*City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*,
    736 S.W.2d 247 (Tex. App.—Corpus Christi 1987, writ denied) .........................17

*Devoll v. Demonbreun*,
    No. 04-14-00116-CV, 2014 WL 7440314 (Tex. App.—San Antonio Dec. 31, 2014, no pet.)
    ..............................................................................................................................19

*Doe v. Tenant Landlord Connection Properties LLC*,
    No. 05-19-00672-CV, 2020 WL 6304996 (Tex. App.—Dallas Oct. 28, 2020, pet. abated)...15

*First Nat. Bank of Luling v. Nugent*,
    384 S.W.2d 224 (Tex. App.—San Antonio 1964, writ ref'd n.r.e.) .......................23

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)..................................................................................19

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)..................................................................................17

*Heldenfels Bros. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992)..................................................................................16

*Hooks v. Samson Lone Star, Ltd. P'ship*,
    457 S.W.3d 52 (Tex. 2015)..................................................................................22

*In re Credit Suisse First Bos. Mortg. Cap., L.L.C.*,
    273 S.W.3d 843 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).........................10

*In re Merrill Lynch Tr. Co. FSB*,
    235 S.W.3d 185 (Tex. 2007).................................................................................10

*In re Odebrecht Constr., Inc.*,
    548 S.W.3d 739 (Tex. App.—Corpus Christi 2018, orig. proceeding) ....................9

*In re RNDC, Texas, LLC*,
   No. 05-18-00555-CV, 2018 WL 2773262 (Tex. App.—Dallas June 11, 2018, orig.
   proceeding) ................................................................................................................9, 10

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018)...............................................................................19, 20, 21

*Oxy USA, Inc. v. Sw. Energy Prod. Co.*,
   161 S.W.3d 277 (Tex. App.—Corpus Christi 2005, pet. denied)...........................................23

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156 (Tex. 1995)...........................................................................................22

*Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*,
   336 S.W.3d 764 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ....................................11, 13

*Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*,
   No. 05-17-00577-CV, 2019 WL 92038 (Tex. App.—Dallas Jan. 3, 2019, pet. denied)...........9

*Royale v. Knightvest Mgmt.*,
   LLC, No. 05-18-00908-CV, 2019 WL 4126600 (Tex. App.—Dallas Aug. 30, 2019, no pet.)
   ................................................................................................................................9, 10

*Schleder Texas Exp. Dev. Corp. v. Schleder*,
   519 S.W.2d 134 (Tex. App.—Dallas 1974, no writ) ............................................................15

*Suarez v. Fernandez*,
   No. 05-18-00921-CV, 2019 WL 1922732 (Tex. App.—Dallas Apr. 30, 2019, no pet.).........18

*TransAmerican Nat. Gas Corp. v. Finkelstein*,
   933 S.W.2d 591 (Tex. App.—San Antonio 1996, writ denied).............................................17

*Tryad Serv. Corp. v. Mach. Tool Ctr., Inc.*,
   512 S.W.2d 785 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). ...................11, 12

*Undavia v. Avant Med. Grp., P.A.*,
   468 S.W.3d 629 (Tex. App.—Houston [14th Dist.] 2015, no pet.)........................................10

**STATUTES**

TEX. BUS. ORGS. CODE § 152.052...............................................................................................14

**OTHER AUTHORITIES**

TEX. R. CIV. P. 45........................................................................................................................1

TEX. R. CIV. P. 91a.............................................................................................................1, 2, 9,14

## INTRODUCTION AND SUMMARY

Alta Power LLC ("Alta Power") responds to Third Party Defendants, General Electric International, Inc., d/b/a GE Power Services' ("GE") Rule 91a Motion to Dismiss ("Motion") Alta Power's Third-Party Petition ("Petition") under Texas Rule of Civil Procedure 91a.

GE's Motion misstates Texas law and ignores Alta Power's Petition. The Motion scrapes together its argument only by pretending that certain of the Petition's legal claims and factual allegations, which preclude dismissal, do not exist.

The Motion repeatedly misconstrues and misstates the Rule 91a standard—by suggesting its purpose is to complain about a pleading containing "too few facts," Mot. at 9, or claiming that dismissal is proper where claims for fraud and negligent misrepresentation lack "particularity," *id.* at 17. It takes only a quick smartphone internet search to realize that Texas is a notice-pleading state and that Rule 45 contains no such requirements.

The flaws in GE's Motion go well beyond distorting the Rule 91a standard of review. The Motion is also woefully lacking in its substantive discussion of Alta Power's claims. The Petition's 158 paragraphs contain extensive details describing how GE directed a scheme to defraud Alta Power and how GE is liable for the torts and breaches of Counter-Defendant WattStock LLC ("WattStock"), whom GE repeatedly referred to as its "partner." GE has not come close to demonstrating that—after taking as *true* the Petition's factual allegations "along with the inferences reasonably drawn from them"—Alta Power *cannot* recover under *any* legal theory supporting its claims. Tex. R. Civ. P. 91a.

***GE's liability for WattStock's breaches and torts.*** As described in Argument **Parts I and II**, GE simply ignores legally valid theories—expressly alleged in the Petition and supported by detailed factual allegations—for holding GE liable for WattStock's breaches and torts. Because

GE fails even to address these theories, the Court must deny the Motion given that GE has failed to demonstrate that there is no legal basis for Alta Power's claims.

***Unjust enrichment.*** As set forth in Argument **Part III**, Alta Power's claim for unjust enrichment must survive dismissal even by the terms of GE's own argument, which acknowledges that unjust enrichment is a remedy for a claim for fraud (which Alta Power alleges against GE).

***Fraud and negligent misrepresentation.*** Argument **Part IV** addresses Alta Power's claims for fraud and negligent misrepresentation. Setting aside GE's baseless argument that such claims must be pleaded with "particularity," GE's only remaining argument misconstrues Supreme Court precedent concerning the "direct contradiction" rule related to the element of justifiable reliance. Because GE's misrepresentations do not even relate—much less "directly contradict" the contractual provisions to which GE points, the "direct contradiction" rule does not apply.

***Consequential damages.*** Finally, as set forth in Argument **Part V**, Texas law has no requirement of the kind of detailed information GE suggests is required for pleading a claim for consequential damages. GE's argument concerning consequential damages also ignores that the contractual waiver on which it relies does not apply to Alta Power's fraud claim and contains an exception for the very kind of conduct alleged in the Petition.

For each of these reasons, the Court should deny GE's Motion. Because GE premises its Motion on a misconstruction of the most basic principles of Texas law and repeatedly ignores factual statements and legal theories expressly pleaded in the Petition, Alta Power also seeks its attorneys' fees for responding to the Motion pursuant to Rule 91a.7.

## STATEMENT OF FACTS

According to the Petition, GE actively participated—and indeed controlled and directed— a scheme whereby GE and WattStock defrauded Alta Power and breached the very contracts that they fraudulently induced. Alta Power was born from the desire to add power capacity to an

ALTA POWER LLC'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS    PAGE - 2

overloaded energy grid. Pet. ¶ 15. Alta Power planned to do so through the development of so-called "peaker plants," designed to turn on quickly when demand for energy exceeds supply. *Id.* ¶¶ 17–18. Because "peak demand" power commands a premium in the marketplace, Alta Power stood to reap considerable profits while also helping to stabilize the grid. *Id.* Alta Power's peaker plants would use aeroderivative natural gas turbines—essentially, jet engines on skids, that could be fired up as needed. *Id.* ¶ 2. New gas turbines are prohibitively expensive for use in peaker plants—given that peak demand periods occur sporadically—thus Alta Power's strategy depended on sourcing quality, used turbines to keep the project financeable and within budget. *Id.* ¶¶ 19, 33. Alta Power met with several companies who could assist Alta Power in locating, purchasing, and refurbishing used gas turbines for use generating power in Alta Power's peaker plants. *Id.* ¶ 31.

***GE marketed WattStock as its sole distributor and "partner" in the market for used aeroderivative gas turbines.*** One such company was GE—one of the largest companies in the world. *Id.* ¶ 44. GE is a manufacturer of aeroderivative gas turbines who is generally recognized as a leader in the industry and known for quality products. GE historically had no presence in the used turbine segment but was eager to tap into this burgeoning market. *Id.* ¶¶ 3, 25. GE, however, did not want to be involved in the work of actually acquiring and selling the used turbines. *Id.* ¶ 3. So, GE engaged some of its former employees who started WattStock to act as its sales force and point of entry into the market. *Id.*

Although GE was a new player in the niche used turbine market, GE's name as a major manufacturer of gas turbines carried heft in the industry overall. *Id.* ¶¶ 4, 44. To alleviate concerns about WattStock being an unknown, GE marketed their relationship as a "partnership." *Id.* ¶¶ 35, 44. They represented that together, GE and WattStock would work "hand-in-hand" to provide the

"exclusive" TRUEpackage™, the "only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry." *Id.* ¶¶ 26, 31. GE marketed the TRUEpackage™ as both more reliable and cost competitive and similar to the Certified Pre-Owned Mercedes Benz program. *Id.* ¶ 4. GE and WattStock held themselves out publicly and privately as "partners," but hid the terms of their Memorandum of Understanding ("MOU"). *Id.* ¶ 28.

***GE made numerous misrepresentations in order to convince Alta Power to allow WattStock and GE to provide Alta Power with refurbished turbines.*** GE succeeded in reeling Alta Power in. *Id.* ¶ 4. During several meetings at GE's Jacintoport facility, where GE and WattStock are co-located, GE persuaded Alta Power to purchase used GE aeroderivative gas turbines. *Id.* ¶¶ 30, 32. GE touted its TRUEpackage™ as superior to anything else offered in the market because GE could provide an end-to-end warranty—for turbine as well as electrical generation components—whereas other competitors could only warrant a portion of the package. *Id.* ¶ 34.

GE made clear to Alta Power, however, that the only way Alta Power could obtain the "exclusive" TRUEpackage™ warranty was by working with what GE repeatedly referred to as the GE and WattStock "partnership." *Id.* ¶ 35. GE sweetened the deal by emphasizing GE's "proprietary" global database, which gave GE exclusive access to information on used gas turbines including the operational and maintenance history of each. *Id.* ¶ 38. When Alta Power disclosed to GE its business model and detailed cost requirements—emphasizing the cost sensitivity of its project—GE repeatedly confirmed that it could obtain readily available used turbines at the price points Alta Power required. *Id.* ¶ 33. Alta Power was sold. *Id.* ¶ 40. Alta Power relied on these

representations and chose to go with GE and WattStock rather than with another provider. *Id.* ¶¶ 31, 40. At GE's insistence, however, Alta Power contracted directly with WattStock. *Id.* ¶ 42.

***GE and WattStock "jointly determined" that Alta Power would enter a Master Agreement with WattStock, while GE represented that GE stood ready to "assume responsibility" for the agreements with WattStock.*** *Id.* ¶ 78 (referring to Exhibit 1, July 31, 2019 Letter from General Electric). GE and WattStock agreed between themselves that WattStock would "take the lead" regarding Alta Power's project, but GE directed and remained intimately involved in WattStock's contract negotiations with Alta Power. *Id.*; Pet. ¶¶ 40–42, 44. During negotiations, GE led Alta Power to believe that GE's involvement would insulate Alta Power from risks related to the financial viability of WattStock. Pet. ¶ 44. Should WattStock fail to meet its contractual obligations, GE would "step in" and "assume responsibility" since GE and WattStock were "partners." *Id.* ¶ 78; Ex. 1. GE itself also presented Alta Power with detailed cost build ups demonstrating that fully refurbished gas turbines could be delivered within Alta Power's project cost requirements. Pet. ¶ 42.

Unbeknownst to Alta Power, however, the pricing and purchase options that GE and WattStock presented were never going to come anywhere close to what they could actually deliver. *Id.* ¶¶ 53–54. GE deliberately hid the existence of undisclosed liabilities—all driven by GE's own internal policies—on every unit suggested to Alta Power using a classic "bait and switch" maneuver. *Id.* ¶¶ 54, 146. GE's scheme was simple. GE and WattStock identified for Alta Power, using GE's data, gas turbines burdened with hidden liabilities so that GE could recover profits under the Alta Power/WattStock contracts **and** additional profits associated with terminating those hidden liabilities. *Id.* ¶¶ 50–51, 56, 71. Alta Power only found out about the hidden liabilities after (1) the turbines were targeted, (2) purchase agreements were executed between the owners

and WattStock, and (3) Alta Power paid millions of dollars in down payments toward the gas turbines and equipment required for the refurbishments. *Id.* ¶¶ 55, 62, 71, 74.

Relying on GE's representations regarding turbine prices and the lauded benefits of GE's and WattStock's "partnership," Alta Power executed the Master Agreement with WattStock in February 2019. *Id.* ¶¶ 40, 45. The Master Agreement generally provides that WattStock would identify nine aeroderivative gas turbines for Alta Power, arrange inspections to evaluate their condition and refurbishment requirements, and negotiate the purchase price with the existing owners (with GE standing behind it). *Id.* ¶¶ 42, 49. Alta Power would reimburse WattStock for its out-of-pocket expenses incurred in performing inspections, and Alta Power acknowledged that prices could vary due to variable conditions or defects undiscoverable until the turbines were disassembled in a repair shop setting. *Id.* ¶ 45; Mot., Ex. A, Master Agreement, at 4. Should additional repairs be required beyond what the initial inspection indicated, the parties agreed to execute change orders. Mot., Ex. A, Master Agreement, at 4. Despite its name, the Master Agreement governs only the preliminary aspects of the turbines' acquisition. Mot., Ex. A, Master Agreement, at 3–4. The parties anticipated in the Master Agreement that, after the steps above, they would enter one or more "definitive" agreements "describing the scope, terms, and price under which Alta would purchase from WattStock each" used gas turbine. *Id.*

***GE continued to make misrepresentations to Alta Power, including providing a written letter stating that GE had "oversight over all aspects of WattStock's work."*** With the Master Agreement in place, Alta Power began exploring several financing options for the project and ultimately settled on Deutsche Bank as the best source of funding. Pet. ¶ 76. As part of the due diligence process, Deutsche Bank asked GE to confirm the nature of its relationship with WattStock—which WattStock had described to Deutsche Bank as "partners." *Id.* ¶¶ 77–78. GE

responded to this request in a letter confirming in writing what Alta Power had already been repeatedly told. *Id.* ¶ 78. Specifically, GE wrote that "[s]hould WattStock fail to meet its contractual obligations to Alta Power, GE would be in a position to assume responsibility to complete any outstanding work," that "GE is willing to warranty WattStock's work on this project," and that GE "already conduct[s] oversight of all aspects of WattStock's work." *Id.* (referring to Ex. 1). As the letter was consistent with Alta Power's long held understanding, Alta Power moved forward attempting to purchase used gas turbines that GE and WattStock sourced for Alta Power. *Id.* ¶ 83.

***After even further misrepresentations concerning the pricing of certain turbines, GE and WattStock convinced Alta Power to pay $1.5 million towards two turbines with a promised "not to exceed" price of $6.5 million.*** GE and WattStock suggested that Alta Power acquire two used turbines from a Turkish company called Nuh Cemento, which they represented as comfortably within Alta Power's project budget. *Id.* ¶¶ 56, 58, 95. Alta Power and WattStock executed the Limited Notice to Proceed ("LNTP") for the Nuh Cemento turbines for a total price of almost $20 million. *Id.* ¶ 91. This included the supposedly "not to exceed" price of $6.5 million for the turbines, plus the balance for their transportation, refurbishment, and installation at Alta Power's project site. *Id.* At no time did GE or WattStock inform Alta Power that the true cost of these turbines was inconsistent with their prior representations, as memorialized in the LNTP. *Id.* ¶ 89. Shortly after executing the LNTP, GE pressured Alta Power to pay $1.5 million to secure "long-lead" hardware and start engineering/design drawing activities, allegedly to ensure that these deliverables would be available when needed during the refurbishment process. *Id.* ¶¶ 92–93.

*Only after GE convinced Alta Power to fork over the $1.5 million did Alta Power learn that GE would require an additional $1.5 million (on top of the $6.5 million not to exceed price) for a cancellation fee about which GE was aware all along.* Months after Alta Power agreed to and paid for the LNTP, Nuh Cemento began demanding reimbursement for GE's "Long Term Service Agreement" ("LTSA") termination fees—fees Alta Power had no idea existed. *Id.* ¶ 56. As Alta Power soon discovered, however, GE has LTSAs in place with existing turbine owners, which generally impose steep penalties for their early termination. *Id.* ¶¶ 54–55. Not only did GE fail to disclose these fees to Alta Power, GE refused to waive them, demanding as an ultimatum that Alta Power pay GE millions more dollars as a result of the undisclosed LTSAs. *Id.* ¶ 56. GE had been aware of these agreements and associated fees before even suggesting the Nuh Cemento turbines, but deliberately hid them from Alta Power in hopes that Alta Power would be forced to pay the fees at the 11th hour once project financing had been secured and the project was well underway. *Id.* ¶ 57.

*As a result of GE's and WattStock's misrepresentations and breaches, Alta Power experienced out-of-pocket and consequential damages and GE was unjustly enriched.* Ultimately, Alta Power learned that GE never intended to keep its promises about backing the unknown WattStock. *Id.* ¶¶ 98–100, 102. WattStock began experiencing financial issues in the spring of 2020. *Id.* ¶ 98. Alta Power requested that GE "step in" as promised to fulfill its commitment to Alta Power and assist Alta Power in securing the Nuh Cemento turbines. *Id.* ¶ 99. GE refused. *Id.* As WattStock's financial troubles mounted, GE continued to reject repeated requests by Alta Power to allow Alta Power to pay GE directly for the LNTP deliverables. *Id.* ¶ 100. Despite GE's prior representations that it would "step in" and "assume responsibility" if WattStock faltered, GE again refused, even once WattStock was insolvent. *Id.* ¶¶ 100, 102; Ex. 1.

GE walked away having pocketed $1.5 million and Alta Power did not even have "long-lead" hardware or design drawings to show for it. *Id.* ¶ 6. With a chunk of its equity capital wasted and after learning that the supposed GE/WattStock "partnership" was a fraud, Alta Power had no feasible pathway forward and missed its opportunity to be a first mover in the Texas peaking electricity market. *Id.* ¶ 103. As a direct result of GE's misrepresentations and breaches, Alta Power has suffered the loss of millions of dollars in equity investment capital, lost profits and financing. *Id.* ¶ 6.

## STANDARD OF REVIEW

The Petition must survive dismissal if Alta Power's claims have a basis in law and fact. Tex. R. Civ. P. 91a. "Dismissal on the pleadings is a harsh remedy, requiring courts to strictly construe rule 91a's requirements." *Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *10 (Tex. App.—Dallas Jan. 3, 2019, pet. denied). "The rule is not a substitute for special exception [] or summary judgment practice [], both of which come with protective features." *Royale v. Knightvest Mgmt.*, LLC, No. 05-18-00908-CV, 2019 WL 4126600, at *4 (Tex. App.—Dallas Aug. 30, 2019, no pet.). Under Rule 91a, if fair notice is given, "[i]t is not a valid objection to generally claim that the pleading does not set out enough factual details . . . ." *In re Odebrecht Constr., Inc.*, 548 S.W.3d 739, 746 (Tex. App.—Corpus Christi 2018, orig. proceeding) (citation omitted).

The plaintiff's burden is minimal. The plaintiff need only "plead sufficient facts to supply a legal basis for his claim but not so much that he affirmatively negates his right to relief." *Renate*, 2019 WL 92038, at *10. When applying the fair notice pleading standard to a Rule 91a motion, the court must construe the petition liberally, look to the pleader's intent, and accept as true all factual allegations. *In re RNDC, Texas, LLC*, No. 05-18-00555-CV, 2018 WL 2773262, at *1 (Tex. App.—Dallas June 11, 2018, orig. proceeding). "If a petition provides sufficient facts to

give fair notice of the claim, then a motion seeking dismissal based on lack of a basis in fact should

be denied." *Id.* The petition gives fair notice if the defendant can ascertain "the nature of the

controversy, its basic issues, and the type of evidence that may be relevant." *Royale*, 2019 WL

4126600, at *4. Moreover, "if nothing in the pleading itself triggers a clear legal bar to the claim,

then there is a basis in law and the motion should be denied." *RNDC*, 2018 WL 2773262, at *1.

## ARGUMENT

I.    **GE fails to satisfy its burden to demonstrate that the request for declaratory
judgment in Count I, paragraph 105(e), has no basis in law or fact.**

Dismissal of the claim for declaratory judgment in paragraph 105(e) is improper. GE's

only ground for dismissal—the supposed absence of contractual privity between Alta Power and

GE—ignores that Alta Power's well-pleaded allegation of an agency relationship between GE and

WattStock supplies the requisite allegation of privity. GE's argument amounts to nothing more

than: "GE was not a party to" the LNTP, therefore privity is lacking, and the request for declaratory

judgment should thus be dismissed. Mot. at 10. This argument sidesteps entirely a well settled

rule: "Texas law has long recognized that nonparties may be bound to a contract under traditional

contract rules like agency . . . ." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 194 (Tex.

2007). Issues involving the existence of an agency relationship "are generally questions of fact"

to be "decided at trial on the merits." *Undavia v. Avant Med. Grp., P.A.*, 468 S.W.3d 629, 635

(Tex. App.—Houston [14th Dist.] 2015, no pet.).

Contrary to GE's suggestion, determining whether privity exists requires more than a

perfunctory look at the signature page of a contract. "An 'agent' is one who is authorized to

transact business, or manage some affair, for the principal entity." *In re Credit Suisse First Bos.

Mortg. Cap., L.L.C.*, 273 S.W.3d 843, 849 (Tex. App.—Houston [14th Dist.] 2008, orig.

proceeding). Even when actual agency is absent, agency may arise through apparent authority.

"Apparent agency arises either from (1) a principal knowingly permitting an agent to hold himself out as having authority, or (2) a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise." *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 784, 790 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (affirming judgment based on the existence of apparent authority, even where *actual* authority was absent). Thus, privity may exist among parties, even with no direct contractual relationship between them, where an agent has apparent authority to act for the principal. *See, e.g.*, *Tryad Serv. Corp. v. Mach. Tool Ctr., Inc.*, 512 S.W.2d 785 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

In *Tryad*, the plaintiff sought to purchase a used threadmill machine for use in its business cutting and threading pipe. *Id.* at 786. The potential purchaser approached a machinery dealer, who pointed to another party seeking to sell its used threadmill. *Id.* The plaintiff purchaser and the dealer visited the potential seller to inspect the machine, and the next day all three parties discussed the price and deal structure. *Id.* The parties discussed the seller making necessary repairs, the dealer purchasing the threadmill from the seller, and the dealer then selling to the purchaser-plaintiff with a small mark-up. *Id.* The seller's vice-principal orally approved this deal structure, and the purchaser and dealer signed a purchase and sale agreement. *Id.* at 786–87. After the dealer informed the purchaser that the seller refused to sell, the purchaser sued both the seller and the dealer for breach of contract. *Id.* at 788. The trial court granted a directed verdict on the claim for breach of contract in favor of the seller, but the court of appeals reversed because of evidence that the seller "created authority" in the dealer to "bind Reed [the seller]" to the contract. *Id.* at 789.

The Petition sets forth even more facts than those in *Tryad* to support an allegation of apparent agency. The Complaint alleges not only that GE was aware of and approved the deal structure between Alta Power, WattStock, and GE, but also that GE expressed orally and in writing that it was "partners" with WattStock and that it would "step in" and assume responsibility if WattStock faltered:

- "GE engaged former GE employees who started WattStock to act as its sales force and point of entry into the used gas turbine market." Pet. ¶ 3.

- "GE and WattStock persuaded Alta Power to purchase used GE aeroderivative gas turbines, marketing the units as both more reliable and cost competitive, similar to the 'Certified Pre-Owned Mercedes Benz®' program." *Id.* ¶ 4.

- "GE intended for, and held out WattStock to be, the *de facto* sales force in the used aeroderivative gas turbine market for GE." *Id.* ¶ 26.

- According to GE's and WattStock's websites, "GE and WattStock work 'hand-in-hand' as 'partners' to provide the 'TRUEpackage™' or Certified Turbine Power—CTP™ system, '[t]he only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry.'" *Id.*

- "GE is in complete control, especially in the context of transactions related to aeroderivative gas turbines originally manufactured by GE." *Id.* ¶ 27.

- "GE and WattStock held themselves out publicly and privately as 'partners' both orally and in writing." *Id.* ¶ 28.

- "Alta Power had several meetings with both GE and WattStock personnel mainly at GE's Jacintoport facility where WattStock is co-located." *Id.* ¶ 32.

- "During these meetings, GE and WattStock described themselves as 'partners.' GE made it clear that the only way Alta Power could obtain the TRUEpackage™ equipment certification and warranty was by working with the GE and WattStock partnership." *Id.* ¶ 35.

- "At GE's insistence, Alta Power contracted directly with WattStock." *Id.* ¶ 42.

- "GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world." *Id.* ¶ 44.

- In response to a request from Deutsche Bank for assurances, GE responded "in a letter confirming that if WattStock failed to meet its contractual obligations, GE would step in" and that GE would be "overseeing WattStock's work."[1]  *Id.* ¶ 78.

These allegations are far more than sufficient to serve as a factual basis for claiming that GE either "knowingly permit[ted] [WattStock] to hold [it]self out as having authority" or that GE "lack[ed] such ordinary care as to clothe [WattStock] with the indicia of authority, thus leading a reasonably prudent person to believe that [WattStock] ha[d] the authority [it] purport[ed] to exercise." *Reliant*, 336 S.W.3d at 784.

Further, GE's reliance on language in the MOU stating that neither GE nor WattStock had authority to bind the other, Mot. at 10, does not support dismissal. At most, this language indicates the existence of a fact issue concerning the issue of *actual* agency. But in any event, the MOU has no bearing at all on the issue of *apparent* agency. There is no indication that Alta Power ever saw the MOU until discovery in this litigation. The Petition supports an allegation that, regardless of the terms of the MOU (known only to GE and WattStock), GE either permitted WattStock to hold itself out has having authority or clothed WattStock with the indicia of such authority. Thus, GE's citation to the MOU as evidence that GE and WattStock were not principal/agent could not carry the day on a motion for summary judgment, let alone a Rule 91a motion to dismiss.

The Petition alleges agency as a legal and factual basis for creating privity between Alta Power and GE. The only ground in GE's Motion requesting dismissal of the request for declaratory judgment in paragraph 105(e) is the supposed lack of privity of contract between Alta

---

[1]    The letter, which is attached as Exhibit 1, states among other things: "With regard to the Alta Power project, we [GE and WattStock] *jointly determined* that WattStock would take the lead, and GE will perform its engineering and engine overhaul work as a subcontractor to WattStock." Ex. 1 (emphasis supplied). The letter further states that "[s]hould WattStock fail to meet its contractual obligations to Alta Power, *GE would be in a position to assume responsibility* to complete any outstanding work, subject to several considerations," that "*GE is willing to warranty WattStock's work* on this project," and that GE "already *conduct[s] oversight of all aspects of WattStock's work*." *Id.* (emphasis supplied).

Power and GE, and the Petition's facts more than support an allegation of agency creating such

privity. Accordingly, this Court should refuse to dismiss the request for declaratory relief.

II.    **GE fails to satisfy its burden to demonstrate that there is no basis in law or fact for holding GE liable for WattStock's torts, as set forth in Count 1, paragraph 105(b), and Count II.**

GE has not come close to satisfying its Rule 91a burden concerning Alta Power's

allegations that GE should be held liable for WattStock's torts.

***First***, GE's Motion *fails even to address* each of the alleged legal theories under which GE

may be held liable for WattStock's torts. GE focuses only on whether GE's and WattStock's

repeated reference to themselves as "partners" formed a technical partnership under Texas

Business Organizations Code § 152.052. But the Petition alleges multiple legal theories for GE's

liability for WattStock's torts, including joint enterprise, agency, and ostensible (or apparent)

agency. Pet. ¶¶ 109–12 (alleging in the alternative that "an ostensible agency existed," that GE

and WattStock "engaged in a joint enterprise," and that GE exercised "actual control" over

WattStock and that the MOU's provision claiming the absence of "agency" is a "sham or

subterfuge"). GE waived any argument that the Court should dismiss Count I, paragraph 105(b),

and Count II because its Motion fails to address any legal theory (other than partnership) under

which GE may be liable for WattStock's torts. Accordingly, the Court should deny GE's Motion

on that basis alone. *See* TEX. R. CIV. P. 91a (allowing a motion to dismiss only if "a cause of action

. . . has *no* basis in law or fact" and requiring such motion to state "specifically the reasons the

cause of action has *no* basis in law, *no* basis in fact, or both") (emphasis supplied).

***Second***, the parol evidence rule, which GE argues renders Alta Power's allegations

supporting vicarious liability "inadmissible," *see* Mot. at 12, is irrelevant to the question whether

GE can be **held liable for WattStock's torts** under any of the above theories. The parol evidence

rule bars the consideration of extra-contractual evidence in interpreting a contractual term and

determining **whether a party breached a contract**. *See Doe v. Tenant Landlord Connection Properties LLC*, No. 05-19-00672-CV, 2020 WL 6304996, at *9 (Tex. App.—Dallas Oct. 28, 2020, pet. abated) ("parol evidence rule applies 'only where such evidence is offered for the purpose of *enforcing* an inconsistent agreement . . .'") (emphasis in original) (citation omitted). By seeking to hold GE liable for WattStock's **torts** under various theories of vicarious liability such as agency or ostensible agency, Alta Power is not attempting to enforce an agreement inconsistent with the one Alta Power had with GE. For example, in *Doe*, the court held that the parol evidence rule was inapplicable to a claim for fraud. 2020 WL 6304996, at *9.

GE relies on nine promissory note cases to support its parol evidence argument, but all emanate from a string cite in a single case and are readily distinguishable. *See Schleder Texas Exp. Dev. Corp. v. Schleder*, 519 S.W.2d 134, 137 (Tex. App.—Dallas 1974, no writ). All involved a promisor who contractually agreed to satisfy a note yet raised various arguments for why—notwithstanding the note's plain language—the promisor should not have to pay. *See, e.g., id.* (alleged oral agreement that payee would not look to maker of note for payment was inadmissible parol evidence that "negate[d] the very obligation imposed upon [maker] in the written instrument"). This principle is not at all pertinent to whether GE and WattStock were partners, principal/agent, or participants in a joint enterprise.

Accordingly, the Court should deny the motion to dismiss the claim that GE is liable for WattStock's torts.

## III.    GE fails to satisfy its burden to demonstrate that Alta Power's allegation of unjust enrichment has no basis in law or fact.

Even the authorities on which GE relies contradict its argument concerning Alta Power's claim for unjust enrichment in Count IV. There are two reasons the Court should not dismiss the claim that GE was unjustly enriched.

*First*, the Petition alleges that GE committed fraud, and GE itself acknowledges that unjust enrichment is an appropriate remedy for fraud. GE concedes that "[a] party may recover under a theory of unjust enrichment when one person has obtained a benefit from another by fraud." Mot. at 14 (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). With this concession, GE resorts to misconstruing the Petition by suggesting "Alta [does not] allege that it made the referenced $1.5 million payment because it was lured [] to do so by any fraud." Mot. at 15. But the Petition alleges exactly that: "GE/WattStock told Alta Power" that the "'not to exceed price' of $6.5 million" "will be sufficient to purchase the units." Pet. ¶ 91. Alta Power subsequently paid $1.5 million toward that price so that GE could begin the project, *id.* ¶¶ 92–93, only later to find out "for the first time" that the $6.5 million "not to exceed price" did not include the cancellation of GE's own "LTSA termination fee of over $1.4 million." *Id.* ¶ 94; *see also id.* ¶¶ 138, 146 (alleging that "the pricing provided by GE [] was intentionally misrepresented and did not include the true cost of acquisition of the units" and that "GE[] hid the existence of undisclosed liabilities on virtually every unit suggested using a classic bait and switch maneuver").

GE's misconstruction of the Petition is alone enough to reject its bid to dismiss the claim for unjust enrichment. What is more, none of the cases on which GE relies bears any resemblance to the facts in the Petition. In *Heldenfels*, a subcontractor sued a city for payment for work done on a recreation center after the general contractor abandoned the project and filed for bankruptcy, leaving the subcontractors unpaid. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 40 (Tex. 1992). The subcontractor did not allege the city had committed fraud. Rather, the Texas Supreme Court affirmed reversal of the judgment for the subcontractor because (in the absence of fraud) the subcontractor could not use unjust enrichment to recover against the city when the contract afforded the subcontractor a remedy against the general contractor. *Id.* at 42; *see also*

*City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 248–50 (Tex. App.—Corpus Christi 1987, writ denied) (rendering judgment against a subcontractor because the city had paid the general contractor for the subcontractor's services and had thus not been unjustly enriched and because there was no evidence the city "made a knowing or reckless" misrepresentation to the subcontractor).

There likewise was no allegation of fraud in *TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591 (Tex. App.—San Antonio 1996, writ denied). There, the court of appeals reversed a judgment for a royalty interest owner for unjust enrichment because the lease agreement "unambiguously limited his right to royalty payments" to "gas produced" and did not give the plaintiff any right to proceeds from a settlement. *Id.* at 598, 600.

Similarly, in *Fortune Production Co. v. Conoco, Inc.*, a gas producer claimed that its buyer was unjustly enriched with compensation for "field liquids" that the buyer extracted from the pipeline and sold. 52 S.W.3d 671, 674 (Tex. 2000). The producer did not claim that the buyer defrauded the producer with respect to the field liquids. Rather, the Texas Supreme Court reversed the judgment against the buyer for unjust enrichment because the parties' contract "governed the parties' respective rights and obligations with regard to" the field liquids. *Id.* at 684.

Unlike these cases, Alta Power contends that GE received funds unjustly from Alta Power as a result of fraud. *See, e.g.*, Pet. ¶¶ 91–94, 96. Accordingly, just as GE concedes, there is a legal and factual basis for Alta Power's unjust enrichment claim due to GE's alleged fraud.

**Second**, setting aside GE's own alleged fraud, GE's passive receipt of benefits from WattStock's alleged fraud supplies an additional reason to deny the motion to dismiss. For example, in *Bransom v. Standard Hardware, Inc.*, the plaintiff company's controller embezzled almost half a million dollars, and the plaintiff alleged unjust enrichment against the controller's

husband.  874 S.W.2d 919, 922 (Tex. App.—Fort Worth 1994, writ denied).  Although the court

of appeals noted no evidence that the husband participated in or knew about the wife's fraudulent

scheme, *id.* at 924–25, the court nonetheless affirmed the trial court's judgment awarding actual

damages for unjust enrichment based on the husband having received the benefits of his wife's

fraud.  *Id.* at 927.  As under *Bransom*, Alta Power alleges that GE benefited from WattStock's

fraud and has thus appropriately alleged a factual and legal basis for its claim for unjust

enrichment.

The Court should deny GE's 91a Motion with respect to the unjust enrichment count.

## IV.    GE fails to satisfy its burden to demonstrate that the claims for fraud and negligent misrepresentation lack a basis in law or fact.

GE advances two equally unavailing arguments for dismissing the claims for fraud and

negligent misrepresentation, the first of which betrays a misunderstanding of the most basic of

Texas pleading rules.

***First,*** ignoring the Texas Rules of Civil Procedure, GE incorrectly contends that Alta

Power's claims for fraud and negligent misrepresentation should be dismissed because of a lack

of "particularity."  Mot. at 17.  The Texas Rules state the opposite: "The fair notice standard

relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity."

*Suarez v. Fernandez*, No. 05-18-00921-CV, 2019 WL 1922732, at *2 (Tex. App.—Dallas Apr.

30, 2019, no pet.) (fraud claim need not be pleaded with particularity).

GE cites only two cases.  In *Zheng v. Vacation Network, Inc.*, the court of appeals affirmed

the trial court's Rule 91a dismissal of the plaintiff's fraud claim because the plaintiff utterly failed

to plead any supporting facts.  468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet.

denied) (plaintiff "includes ***no*** supporting facts," plaintiff's pleading is "merely a threadbare

recital" of fraud "without ***any*** alleged facts," plaintiff "fails to allege ***any*** misrepresentations," and

plaintiff failed to "amend his petition to identify *any* facts supporting" fraud) (emphasis supplied).

In *Devoll v. Demonbreun*, the court of appeals affirmed the trial court's Rule 91a dismissal of the

plaintiff's fraud claim because the plaintiff ***did not allege a critical element*** of the fraud claim:

reliance on the supposedly forged document or damages as a result.  No. 04-14-00116-CV, 2014

WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.).[2]

Here, Alta Power's 158-paragraph Petition pleads more than enough facts to state claims

against GE for fraud and negligent misrepresentation: GE misrepresented its "partnership" with

WattStock, the benefits and security it afforded, and the true price of each and every turbine GE

suggested for acquisition (Pet. ¶¶ 4, 26, 33, 44, 54, 57, 78); these representations were false or

misleading (*id.* ¶¶ 5, 54, 57, 100); Alta Power relied on GE's misrepresentations by foregoing

other opportunities and in paying money to GE/WattStock (*id.* ¶¶ 31, 40, 55, 62, 92–94); Alta

Power suffered injury as a result—incurring out-of-pocket expenses, payments to GE/WattStock,

wasting equity capital, and losing profits and essential financing (*id.* ¶¶ 6, 95, 103, 152).

***Second***, GE next misunderstands and misapplies the "direct contradiction" rule relating to

the element of justifiable reliance, which does not come close to acting as a legal bar to recovery.

Mot. at 18.  The "direct contradiction" rule is as follows: "reliance upon an oral representation that

is directly contradicted by the ***express, unambiguous terms*** of a written agreement between the

parties is not justified as a matter of law." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.,*

*L.L.C.*, 546 S.W.3d 648, 658 (Tex. 2018) (citation omitted).  Under this rule, if "no reasonable,

---

[2]      Relegated to a footnote—the purpose of which is unclear—GE also invokes the Texas Supreme
Court's decision in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d
41, 47 (Tex. 1998).  GE cites *Formosa* for the proposition that "[a] plaintiff does not state a viable claim of
fraud or misrepresentation by simply alleging that the defendant never intended to comply with the contract
. . . ."  Mot. at 16.  *Formosa* states the precise opposite: "As a general rule, the failure to perform the terms
of a contract is a breach of contract, not a tort.  However, when one party enters into a contract with no
intention of performing, that misrepresentation may give rise to an action in fraud." *Formosa*, 960 S.W.2d
at 46 (citation omitted).

sophisticated entity could read the [contractual term] and plausibly believe the [misrepresentation], they are in direct contradiction." *Id.* at 660. There is no contradiction at all between GE's representations and the contractual language on which it relies, much less a "direct" contradiction that satisfies this high standard.

Despite GE's insistence that it is not in a principal/agent relationship with WattStock and is not a party to the Master Agreement, GE *invokes* the Master Agreement in a last-ditch effort to escape liability. GE cherry-picks a single phrase in a single sentence in Article 4.2 of the Master Agreement, which states in its entirety:

> Alta acknowledges that the price for each LM6000 Generator Set may vary **due to the variable conditions of each Asset and the variable scopes of refurbishment work** that may be required for each Asset. Certain **defects or conditions, including what is commonly referred to as 'fallout,' are not discoverable until the Asset is disassembled in a repair shop setting**. To the extent such additional repairs are discovered, the Parties would agree to a change order to the Equipment Purchase and Sale Agreement, including price and schedule to perform the work.

Mot., Ex. A, Master Agreement, at 4 (emphasis supplied).

Article 4.2 does not even touch upon GE's alleged misrepresentations, much less directly contradict them. For example, Article 4.2 does not relate in any way to GE's representations concerning its relationship or "partnership" with WattStock or its representations that GE would "stand behind" WattStock. But Article 4.2 also does not relate to the pricing misrepresentations. A contractual term that prices may vary due to "conditions" of the Asset or undiscoverable "defects" at the inspection stage (e.g., "fallout") is not an acknowledgement that prices may vary for *any* reason whatsoever. GE ignores that Alta Power alleges that GE lured Alta Power into a relationship and into putting purchase money down by concealing known "Long Term Service Agreements ('LTSA') carrying hefty termination fees." Pet. ¶ 54. The LTSAs—known to GE because GE was a party to the LTSAs—had nothing to do with the "conditions of [the] Asset";

they were contractual agreements with GE.  To fall within Article 4.2's ambit, the "condition" must be both physical and undiscoverable.  The adjacent clauses in Article 4.2 plainly contemplate only undiscoverable physical conditions, a reading confirmed by all other instances in the Master Agreement where the term "condition" appears.[3]

Under Texas Supreme Court precedent, there is no direct conflict if a reasonable person can read the contract provision and still plausibly claim to believe the earlier misrepresentation.  *Orca Assets G.P., L.L.C.*, 546 S.W.3d at 659.  The only reasonable reading of the contractual provision to which GE points is that it would not negate any of the prior representations, including those concealing the presence of contractual termination fees.  The "direct contradiction" rule does not stand as a legal bar to the fraud claim.

The Court should deny the motion to dismiss with respect to Alta Power's claims for fraud and negligent misrepresentation.

**V.    GE fails to satisfy its burden to demonstrate that Alta Power's claim for consequential damages lacks a basis in law or fact.**

GE advances two arguments for dismissing Alta Power's consequential damages claim, each of which border on the frivolous.  *First*, GE cites zero authority—no rule or case law—to support its contention that Alta Power must provide fair notice of the "particular amounts Alta

---

[3]    In the definitions section, *Inspection Data* is defined as "any information documenting the existing **condition** of the Asset including borescope photos, videos, operation and maintenance logs or other data obtained during the course of an Asset inspection."  Mot., Ex. A, Master Agreement, at 2 (emphasis supplied).  And Article 3.1 states that "WattStock will arrange with the Owner of an Asset an inspection to evaluate the **condition** and refurbishment requirements of such Asset.  Alta understands and acknowledges that the types of Asset inspections that WattStock will be able to perform in the field cannot identify all defects in an Asset, even with the benefit of borescope inspections of the internals of a combustion turbine engine."  *Id.* at 4 (emphasis supplied).  In both instances, the use of the term "condition" in the Master Agreement necessarily relates to physical conditions.  Regarding the first, only physical conditions can be documented by "photos, videos, operation and maintenance logs."  *Id.* at 2.  Regarding the second, the term "condition" appears in a provision entirely about Asset "inspections."  Given that the "inspections" in Article 3.1 are expressly keyed to "evaluat[ing]" the Asset's "condition" for the purpose of ascertaining "refurbishment requirements," it strains credulity to claim that the term "condition" means anything other than the physical state of a piece of used equipment.

seeks to recover from GE for consequential damages" or "how those amounts are calculated." Mot. at 20. This argument wholly ignores Texas notice pleading rules. Consistent with those rules, Alta Power's petition gives GE fair notice of the ***nature*** of the consequential damages Alta Power seeks. *See* Pet. ¶ 6 (alleging that Alta has lost millions of dollars in essential financing and lost profits related to its business). Alta Power need not also plead those damages in terms of specific dollars and cents. *See, e.g.*, *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 66–68 (Tex. App.—Texarkana 2004, pet. denied) (petition sufficient to specifically plead special damages where plaintiff generally alleged damages for "dead cattle" and "weight loss of cattle").

***Second***, GE is wrong that there is no theory of recovery under which GE can be liable for consequential damages. GE's argument pointing to a contractual provision ignores that Alta Power alleges that GE committed fraud. It is axiomatic that "fraud vitiates whatever it touches." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015). For example, the Supreme Court of Texas has noted: "A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is,' and then disavow the assurance which procured the 'as is' agreement." *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995). That is exactly what Alta Power has alleged here: GE defrauded Alta Power into believing that it would stand behind WattStock, Pet. ¶ 137; tied Alta Power up into a Master Agreement that expressly precluded Alta Power from pursuing the gas turbines from other sources for 12 months after the termination of the Master Agreement—so that Alta Power would be boxed out of the market and barred from seeking another turbine supplier, Mot., Ex. A, Master Agreement, at 5; and knew all along it had no intention of doing what it promised, Pet. ¶¶ 42, 54, 102. Accordingly, the contractual consequential damages bar has no bearing on Alta Power's fraud claim.

In any event, Article 9.1(B) of the Master Agreement between Alta Power and WattStock contains a limit that GE ignores entirely.  It encompasses typical business claims—and does not provide any immunity to claims such as fraud, conversion, or theft.  By its very terms Article 9.1(B) refers to "ANY CAUSE OF ACTION INCLUDING NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT AND BREACH OF STRICT OR IMPLIED WARRANTEE."  Mot., Ex. A, Master Agreement, at 8.  Texas courts have long recognized the maxim *expressio unius est exclusio alterius*—"the expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed."  *First Nat. Bank of Luling v. Nugent*, 384 S.W.2d 224, 226 (Tex. App.—San Antonio 1964, writ ref'd n.r.e.) (holding that a release of "all notes and obligations" did not release an unmentioned note because the agreement set forth with particularity five notes being released); *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) (applying *expressio unius* to settlement agreement).  Here, Article 9.1(B)'s enumeration of specific types of causes of action implies the exclusion of other causes of action, such as fraud, conversion, and theft, that do not conform to those types.  *See Oxy USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 285 (Tex. App.—Corpus Christi 2005, pet. denied).

Moreover, Article 9.1(B) explicitly excepts Article 7 (confidentiality) from Article 9.1(B)'s consequential-damages waiver.  Mot., Ex. A, Master Agreement, at 8 ("EXCEPTING ARTICLE 6 (EXCLUSIVITY AND NON-CIRCUMVENTION), **ARTICLE 7 (CONFIDENTIALITY)**, AND 8 (INDEMNIFICATION)") (emphasis supplied).  Alta Power alleges that WattStock "breached the confidentiality provisions of the Master Agreement by disclosing confidential information about Alta Power and its financing to Castleman, Pet. ¶ 116, that GE is responsible for that breach, *id.* ¶¶ 109–12, and that the breach caused Alta Power "to

lose project financing", which "severely damaged" Alta Power, *id.* ¶¶ 116, 118.  Accordingly, GE's reliance on Article 9.1(B) ignores an exception providing an additional factual and legal basis for the claim for consequential damages.

The Court should deny GE's motion to dismiss Alta Power's claim for consequential damages.

## CONCLUSION

For the foregoing reasons, GE's Motion should be denied in full.  The Motion misconstrues the most basic principles of Texas law, chronically disregards the Petition's legal theories and facts, and then puts forth haphazard arguments that border on the frivolous.   Alta Power accordingly seeks its attorneys' fees for responding to the Motion pursuant to Rule 91a.7.

DATE: May 11, 2021                    Respectfully Submitted

By: /s/ Jessica B. Pulliam
Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie L. Wallace
State Bar No. 24115920
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com

Michael Cancienne
State Bar No. 24055256
Kevin Jordan
State Bar No. 11014800
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
**JORDAN, LYNCH & CANCIENNE PLLC**
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER LLC**

## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above response was served on all parties through the Court's electronic filing service on the 11th day of May, 2021.

By: /s/ Jessica B. Pulliam
Jessica B. Pulliam

# Exhibit 1



GE Power

**Lance Herrington**
Global Sales Leader
Aero Upgrades

Power Services

16415 Jacintoport Blvd
Houston, TX 77015

T +1 832 418 9788
www.lance.herrington@ge.com

Matt Laterza
Alta Power LLC
4605 Post Oak Place Dr.
Suite 270
Houston, TX 77027

July 31, 2019

Subject: GE TRUEpackage LM6000's and WattStock Refurbishment Services

Dear Matt:

We understand that your lenders seek clarification regarding the GE-WattStock relationship, and how GE could respond in the event that WattStock becomes unable to meet its contractual obligations to Alta Power LLC under agreements between WattStock and Alta Power for WattStock to supply a minimum of 9 refurbished LM6000 units.

WattStock and GE have entered into a Memorandum of Understanding that sets out how WattStock and GE will work together to refurbish previously owned aero-derivative power units, including the LM6000 series units. In general, GE is committed to overhauling engines and supplying engineering analysis and diagrams to ensure the entire unit is refurbished to GE-specifications, and WattStock is committed to acquiring used units and refurbishing the balance-of-plant. By refurbishing units in this fashion, GE is able to warranty the completed unit. WattStock and GE have agreed that either party might act in the role of prime contractor, depending on a variety of factors. With regard to the Alta Power project, we jointly determined that WattStock would take the lead, and GE will perform its engineering and engine overhaul work as a subcontractor to WattStock.

Should WattStock fail to meet its contractual obligations to Alta Power, GE would be in a position to assume responsibility to complete any outstanding work, subject to several considerations. For illustration and without limitation, those considerations would likely include: (1) the absence of any legal or access issues; (2) GE and Alta being able to agree to a revised scope of work, associated cost, and terms and conditions, (3) GE's assessment that there are no insurmountable engineering or manufacturing issues, and  (4) any applicable Purchase Orders or Change Orders should be modified and reassigned to GE.

There are a number of reasons that GE is willing to warranty WattStock's work on this project. First, WattStock's operation is co-located next to our engine overhaul facility, GE will be tracking project progress daily and could quickly assume work scope without transportation. Second, as part of our engineering services on this project we already conduct oversight of all aspects of WattStock's work – we will be intimately acquainted with each unit and its refurbishment program. Third, as the leader in aero-derivative power plants, we have a broad network suppliers that we expect to be able to call on to assist if need be. Fourth – and most importantly – GE has a strong incentive for this project to succeed.

Closing,

Lance Herrington
Global Sales Leader
Aero Upgrades

cc

Alex Babu, GE
Jay Manning, WattStock LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 53344552
Status as of 5/13/2021 11:41 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 5/11/2021 8:00:43 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/11/2021 8:00:43 PM | SENT |
| Connie Nims | | cnims@krcl.com | 5/11/2021 8:00:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/11/2021 8:00:43 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/11/2021 8:00:43 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/11/2021 8:00:43 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/11/2021 8:00:43 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/11/2021 8:00:43 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/11/2021 8:00:43 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/11/2021 8:00:43 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/11/2021 8:00:43 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/11/2021 8:00:43 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/11/2021 8:00:43 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/11/2021 8:00:43 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/11/2021 8:00:43 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/11/2021 8:00:43 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/11/2021 8:00:43 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/11/2021 8:00:43 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/11/2021 8:00:43 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/11/2021 8:00:43 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jessica Aquino on behalf of Jessica Pulliam
Bar No. 24037309
jessica.aquino@bakerbotts.com
Envelope ID: 53344552
Status as of 5/13/2021 11:41 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan |  | kjordan@jlcfirm.com | 5/11/2021 8:00:43 PM | SENT |
| Joseph Golinkin |  | jgolinkin@jlcfirm.com | 5/11/2021 8:00:43 PM | SENT |

FILED
5/14/2021 9:46 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC–20–08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
| *Defendant/Counterclaim Plaintiff.* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| | § | |
| WATTSTOCK LLC, | § | |
| *Counterclaim Defendant,* | § | |
| | § | |
| and | § | |
| | § | |
| GENERAL ELECTRIC INTERNATIONAL, | § | |
| INC. d/b/a GE POWER SERVICES, | § | |
| *Third-Party Defendant.* | § | 116TH JUDICIAL DISTRICT |

## PLAINTIFF WATTSTOCK, LLC'S MOTION FOR SCHEDULING CONFERENCE

Plaintiff/Counterclaim Defendant WattStock LLC ("WattStock") files this Motion for Scheduling Conference ("Motion"), and respectfully shows the Court as follows:

WattStock requests a brief, fifteen-minute Scheduling Conference with the Court, either telephonically or by video conference, to discuss resetting the current trial date and amending the existing deadlines in the Scheduling Order (Level 2) entered by this Court on August 21, 2020 (the "Scheduling Order"). Defendant/Counterclaim Plaintiff **Alta Power LLC ("Alta") is in agreement** with the relief requested by this Motion. Third-Party Defendant **General Electric International, Inc. d/b/a GE Power Services ("GE") is opposed** to the relief requested by this Motion.

The Scheduling Order sets this matter for non-jury trial on July 26, 2021. However, since the Scheduling Order was signed, Alta filed an Unopposed Motion for Leave to Join Additional Party GE ("Motion for Leave"). On February 15, 2021, the Court granted Alta's Motion for Leave. On

February 24, 2021, Alta then filed its First Amended Answer and Counterclaim and Original Third-Party Petition, which named GE as a party for the first time. GE subsequently filed a Motion to Dismiss pursuant to Texas Rule of Civil Procedure 91a, which is now fully briefed and currently scheduled to be heard by the Court on May 18, 2021.

The Scheduling Order's current deadlines and trial setting have been rendered impracticable by GE's recent joinder to the case and **all parties are in agreement that this matter cannot reasonably be made ready for trial by July 26, 2021**. The parties have attempted to confer on a new scheduling order, but have been unable to reach an agreement. WattStock and Alta believe that such conferral efforts would benefit from a brief conference with the Court to discuss recent COVID-19 developments and the Court's existing trial calendar. GE is opposed.

Accordingly, WattStock requests that the Court grant this Motion and set this matter for a brief Scheduling Conference—no more than fifteen (15) minutes is expected—to discuss options for a new trial date and other issues related to an amended scheduling order.

Dated May 14, 2021.

Respectfully submitted,

By: */s/ Andrew D. Robertson*
　　Brian N. Hail
　　State Bar No. 08705500
　　bhail@krcl.com
　　Andrew D. Robertson
　　State Bar No. 24106027
　　drobertson@krcl.com

KANE RUSSELL COLEMAN LOGAN PC
901 Main St.
Suite 5200
Dallas, Texas 75202
Telephone:　　(214) 777-4200
Facsimile:　　(214) 777-4299

*Counsel for Plaintiff/Counterclaim Defendant WattStock LLC*

## CERTIFICATE OF SERVICE

I certify that I have conferred with counsel for Alta and counsel for GE regarding the relief requested in this Motion on multiple occasions, including May 5, 2021 (email), May 6, 2021 (email), May 10, 2021 (phone), May 11, 2021 (email), and May 13, 2021 (email).

Alta is in agreement with the relief requested by this Motion. GE is opposed to the relief requested by this Motion.

*/s/ Andrew D. Robertson*
Andrew D. Robertson

## CERTIFICATE OF SERVICE

I do hereby certify that on this 14th day of May 2021, I have served a copy of the foregoing pleading on the following, by e-service to all parties by operation of the Court's electronic filing system.

*/s/ Andrew D. Robertson*
Andrew D. Robertson

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Vicki Sedon on behalf of Andrew Robertson
Bar No. 24090845
vsedon@krcl.com
Envelope ID: 53442658
Status as of 5/17/2021 10:10 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 5/14/2021 9:46:50 AM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/14/2021 9:46:50 AM | SENT |
| Connie Nims | | cnims@krcl.com | 5/14/2021 9:46:50 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/14/2021 9:46:50 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/14/2021 9:46:50 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/14/2021 9:46:50 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/14/2021 9:46:50 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/14/2021 9:46:50 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/14/2021 9:46:50 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/14/2021 9:46:50 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/14/2021 9:46:50 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/14/2021 9:46:50 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/14/2021 9:46:50 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/14/2021 9:46:50 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/14/2021 9:46:50 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/14/2021 9:46:50 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/14/2021 9:46:50 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/14/2021 9:46:50 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/14/2021 9:46:50 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/14/2021 9:46:50 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Vicki Sedon on behalf of Andrew Robertson
Bar No. 24090845
vsedon@krcl.com
Envelope ID: 53442658
Status as of 5/17/2021 10:10 AM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/14/2021 9:46:50 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/14/2021 9:46:50 AM | SENT |

FILED
5/14/2021 10:51 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| v.<br>GENERAL   ELECTRIC INTERNATIONAL,INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | 116TH JUDICIAL DISTRICT |

## GENERAL ELECTRIC INTERNATIONAL INC.'S
## REPLY TO ALTA POWER LLC'S RESPONSE TO RULE 91a MOTION TO DISMISS

Third-Party Defendant, General Electric International, Inc. ("GE"), files the above captioned Reply to the Response to GE's Rule 91 Motion to Dismiss filed by Alta Power LLC (hereafter, "Alta's Response"). GE would show that the Response does not cure the deficiencies identified in Alta's Third-Party Petition (hereafter, the "Petition") for reasons including the following:

### REPLY POINTS

### Reply Point No. 1:   Alta's Response does not address the Petition's failure to plead facts to support the alleged breach of contract claim against GE.

Alta's Response does not contradict GE's showing that the Petition's own affirmative allegations preclude a breach of contract claim against GE, including (1) the Petition's

acknowledgment that GE was not a party to the Alta/WattStock contract (the breach of which GE

is alleged to be liable for) *and* that there is no contractual privity between GE and Alta; *see,* Petition

at Paragraph 46; and (2) that the Petition affirmatively alleges that GE expressly refused to enter

into a contract with Alta, *see,* Petition at Paragraph 42.

> **Reply Point No. 2:  Alta's Response does not establish that the Petition sufficiently
> pleads or provides proper notice of Alta's alleged fraud and misrepresentation claims
> against GE.**

It is true that Texas State courts have traditionally followed a "notice pleading" standard.

But fraud and misrepresentation are serious allegations where reasonable and proper notice to a

party accused of such conduct should require more than the conclusory statements contained in the

Alta Petition.  In similar contexts where fraud or misrepresentation is alleged, Texas courts have

required more detailed allegations specifying the circumstances of the alleged fraud or

misrepresentation.[1]

More recently with the adoption of TRCP Rule 91a, Texas courts have looked to the

standards applied by federal courts addressing motions to dismiss under FRCP 12(b)(6).  In that

regard, the identification of the particulars of fraud and misrepresentation claims is accepted as a

---

[1] *See, e.g.*, *Fiamma Statler, LP v. Challis*, No. 02-18-374, 2020 WL 6334470, *9-10 (Tex. App. 10/29/2020) (holding that the plaintiff's failure to allege specific facts regarding its fraud claim did not give defendant fair notice of the alleged misrepresentations); *Monroe v. Hunsicker*, No. 05-97-1942, 2000 WL 31876, *2 (Tex. App. 1/18/2000) (granting special exception against the plaintiff's fraud claim where the plaintiff failed to plead sufficient facts in support, including facts demonstrating that (i) the defendant submitted the allegedly fraudulent appraisal with intent that the plaintiff would rely on it; (ii) the plaintiff acted in reliance upon any misrepresentations; and (iii) the plaintiff suffered damages as a result of the misrepresentations); *Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469, 480 (Tex. App. 1997) (upholding petition in which the elements of fraud were "specifically alleged" therein); *Box v. Flynn*, 870 S.W.2d 585, 595 (Tex. App. 1993) (finding that petition sufficiently alleged fraud where the petition outlined specific facts supporting the six elements of fraud, including:  1) that a material representation was made; 2) that it was false; 3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as positive assertion; 4) that he made it with the intention that it should be acted upon by the party; 5) that the party acted in reliance upon it, and 6) that he thereby suffered injury).

GENERAL ELECTRIC INTERNATIONAL, INC.'S REPLY TO ALTA POWER LLC'S
RESPONSE TO RULE 91a MOTION TO DISMISS

most basic requitement to include the "who," "what," "where," "when," and "how" details that allow a party accused of fraud or misrepresentation to know the details of the conduct of which it is accused.[2]

Alta's Response does not contradict GE's showing that the Petition entirely fails to identify (1) any GE or WattStock individual speaker who is alleged to have made "misrepresentations" to Alta; (2) any Alta representative to whom any misrepresentations were allegedly made; (3) any facts alleged to explain how that person acted on the representations; (4) any details of the alleged misrepresentations made by any GE representative (other than Alta's repeated obscure references to "meetings" and "discussions" in which there were  "assurances" that GE would "stand behind," or work "hand-in-hand," or "partner" with WattStock); or (5) any particular dates to identify when the various alleged "meetings" or "discussions" took place at which GE or WattStock speakers made the alleged misrepresentations, who was present at or participated in those meetings or discussions, or where these meetings/discussions allegedly took place.

In federal courts, "[t]he specificity requirement when pleading fraud is intended to give a defendant a reasonable ability to investigate and to respond when charged with something as serious as fraud." *Dalwadi v. Holiday Hosp. Franchising, Inc.*, No. H-16-2588, 2017 WL 4479962, at *7 (S.D. Tex. July 5, 2017); *see also Tigue Invest. Co. v. Chase Bank of Texas, N.A.*,

---

[2] Specifically, the United States Court of Appeals for the Fifth Circuit requires the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). At a minimum, a plaintiff "must set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) (quoting *WMX Techs., Inc.*, 112 F.3d at 179). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000). Therefore, "[f]acts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968); *see Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419–20 (5th Cir. 2001).

No. 03-CV-2490, 2004 WL 3170789, *2 (N.D. Tex. 11/15/2004) (noting that the particularity requirement for pleading fraud is based upon the rationale that "[f]raud charges can seriously damage a defendant's reputation, even when the claim is ultimately defeated"). GE maintains that with the Texas adoption of TRCP Rule 91a (and Texas courts use of federal court precedent under FRCP Rule 12(b)(6) as instructive), fair notice of Alta's alleged fraud and misrepresentation claims is not specified in the Petition and those claims are properly dismissed.[3]

> **Reply Point No. 3: Alta's Response does not cure the Petition's failure to distinguish between the alleged acts or omissions of the two defendants named in the Petition.**

Alta's Response continues to "lump together" WattStock and GE as a single entity or party without any differentiation between them. It still cannot be determined from the Petition what are the acts or omissions of one defendant that the other is allegedly responsible for (on a vicarious or *respondeat superior* basis). The Petition is sweepingly non-specific as to GE and WattStock – a deficiency that Alta's Response does not cure.

> **Reply Point No. 4: Alta's attachment of a July 2019 letter to its Response does not cure the Petition's deficiencies.**

Alta attaches to its Response as Exhibit 1 a letter dated 31 July 2019 allegedly sent to Matt Laterza (Alta) by Lance Herrington (GE), but this proposed Exhibit does not cure the Petition's

---

[3] Nor should a plaintiff be permitted to use discovery to support vague allegations of fraud or misrepresentation. As the Supreme Court of Texas has recognized, discovery may not be used as a fishing expedition. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180-81 (Tex. 1999). A "fishing expedition" is one aimed not at supporting existing claims but at finding new ones. *See Dillard Dept. Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex. 1995). Accordingly, Alta cannot rely on its vague and unsupported fraud claim to attempt the development through discovery of a fraud claim. Indeed, the specificity requirement for fraud claims serves to prevent such fishing expeditions. "The greater pleading specificity . . . guards against the institution of a fraud-based action in order to discover whether unknown wrongs actually have occurred-the classic fear of 'fishing expeditions.'" *Indiana Bell Tel. Co. Inc. v. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 508108, at *2, n.16 (W.D. Tex. Jan. 11, 2006) (citing C. Wright & A. Miller, 5A Fed. Prac. & Proc. 1296 (2005)).

deficiencies.  Primarily, the Exhibit is proffered as *evidence* – it is not the pleadings or pleading

exhibits, and it is accordingly not properly considered by the Court in ruling on GE's motion.

TRCP, Rule 91a.6.  Further, Alta's Response includes only selective quotations from the letter and

omits the qualifying terms that are dispositive of Alta's alleged claims (including qualifications

"subject to several considerations" that Alta's Response omits from reference).  In addition, the

letter is dated *July* 2019, which is five months *after* the February 2019 Alta/WattStock Master

Agreement that Alta contends it was induced to enter.  Accordingly, this letter has no relevant

bearing on the Alta/WattStock contract terms.

### Reply Point No. 5:  Alta's Response does not cure the deficiencies in Alta's Petition's claims for consequential damages.

Alta's Response ignores the relevant terms of the Alta/WattStock Master Service

Agreement, which provide that none of the referenced parties "shall be liable to the other or shall

make any claim for any incidental, indirect or consequential damages arising out of *or connected*

*in any way* to this agreement."  *See,* GE Motion to Dismiss at Exhibit A (Alta/WattStock Master

Agreement) at Article 9 (Limitation of Liability) Alta also contends that in "enumerat[ing]…

specific types of causes of action," Article 9.1(B) of this Master Service Agreement leaves some

of its claims intact (it says not exactly which ones), because they do not sound in the causes of

action enumerated.   *See*, Alta Response at page 23.  This argument, however, simply ignores

Article 9.1(B)'s plain language:  that its "mutual waiver of consequential damages shall include,

*but is not limited to*, loss of use, loss of profit, loss of business, loss of income, loss of reputation,

or any other consequential damages…incurred from any cause of action including" those it

expressly cites.  To be clear:  Even *if* Article 9.1(B)'s second sentence treats claims for

consequential losses sounding *only* in the causes of action it lists by name – a point open to debate

– it unambiguously states that its list is non-exclusive.  Put another way, while it is true that there

GENERAL ELECTRIC INTERNATIONAL, INC.'S REPLY TO ALTA POWER LLC'S
RESPONSE TO RULE 91a MOTION TO DISMISS

is no express reference to fraud claims in the sentence selectively quoted by Alta, no such reference is necessary – first because the list of claims referenced by Alta is part of a non-exclusive list of losses for which claims for consequential damages are barred, and second because the preceding sentence, on its own, squarely bars claims for the losses claimed.

### Reply Point No. 6:  Alta's Response does not cure the Petition's failure to plead facts to support the alleged unjust enrichment claim against GE.

Alta's Response does not change the allegations in the Petition that fail to allege a viable claim for unjust enrichment against GE.  Alta's Response does not contradict GE's showings that the written contract between Alta and WattStock precludes such a claim, and that the failure to allege that GE did not perform the referenced services likewise preclude Alta's alleged claims for unjust enrichment.

### CONCLUSION

GE's Motion to Dismiss is currently set for hearing on 18 May 2021.  The foregoing Reply Points are intended to generally highlight the deficiencies in Alta's Petition that are not addressed or cured by Alta's Response to GE's Motion to Dismiss.  There are other more particular examples of how Alta's Response fails to address or adequately respond to the showings in GE's Motion to Dismiss; and GE will be prepared to address those items at the 18 May 2021 hearing.  GE accordingly requests that its Rule 91a motion should be granted, and this Court should enter judgment dismissing with prejudice Alta's claims against GE under the Counts of Alta's Third-Party Petition, together with such other and further relief to which it may be entitled.

GENERAL ELECTRIC INTERNATIONAL, INC.'S REPLY TO ALTA POWER LLC'S
RESPONSE TO RULE 91a MOTION TO DISMISS

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

*/s/ Michael D. Fisse*
_____
Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA  70447
Telephone:    985-871-0800
Facsimile:    985-871-0899
E-mail:       mfisse@daiglefisse.com

***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

## CERTIFICATE OF SERVICE

I do hereby certify that on this 13th day of May 2021, I have served a copy of the foregoing

pleading on the following, by e-mail, facsimile, commercial courier, and/or by mailing the same

by United States mail, properly addressed, certified mail, return-receipt requested, first class

postage pre-paid or said pleading will be sent by electronic mail to all parties by operation of the

Court's electronic filing system.

*/s/ Michael D. Fisse*
_____
MICHAEL D. FISSE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 53447749
Status as of 5/17/2021 10:21 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/14/2021 10:51:31 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/14/2021 10:51:31 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/14/2021 10:51:31 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/14/2021 10:51:31 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/14/2021 10:51:31 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/14/2021 10:51:31 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/14/2021 10:51:31 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/14/2021 10:51:31 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/14/2021 10:51:31 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/14/2021 10:51:31 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/14/2021 10:51:31 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/14/2021 10:51:31 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/14/2021 10:51:31 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/14/2021 10:51:31 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/14/2021 10:51:31 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/14/2021 10:51:31 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/14/2021 10:51:31 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/14/2021 10:51:31 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/14/2021 10:51:31 AM | SENT |

Associated Case Party: WATTSTOCK LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 53447749
Status as of 5/17/2021 10:21 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Connie Nims | | cnims@krcl.com | 5/14/2021 10:51:31 AM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 5/14/2021 10:51:31 AM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/14/2021 10:51:31 AM | SENT |

FILED
5/18/2021 11:33 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Eduardo Suarez DEPUTY

CAUSE NO. DC–20–08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff / Counterclaim Defendant*, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant / Counterclaim Plaintiff*. | § | 116th JUDICIAL DISTRICT |

## NOTICE OF HEARING ON PLAINTIFF'S MOTION
## FOR SCHEDULING CONFERENCE

Plaintiff WattStock LLC, serves this Notice of Hearing on Plaintiff/Counterclaim Defendant WattStock, LLC's Motion for Scheduling Conference, e-filed May 14, 2021, which have been scheduled for July 2, 2021 at 10:30 a.m. via teleconference hearing with Hon. Tonya Parker, Presiding.  Procedures for the hearing will be forwarded by the Court to all parties.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Brian N. Hail*
      **Brian N. Hail**
      bhail@krcl.com
      State Bar No. 08705500
      **Andrew D. Robertson**
      drobertson@krcl.com
      State Bar No. 24090845

901 Main St., Suite 5200
Dallas, Texas 75202
Telephone:    (214) 777-4200
Facsimile:     (214) 777-4299
**ATTORNEYS FOR PLAINTIFF /
COUNTERCLAIM DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that on the 18th day of May, 2021, a true and correct copy of the foregoing has been forwarded to all counsel of record as follows:

Michael Cancienne
Kevin Jordan
Joseph W. ("Jeb") Golinkin II
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

*And*

Jessica B. Pulliam
John B. Lawrence
Kirstie L. Wallace
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF, AND THIRD-
PARTY PLAINTIFF, ALTA POWER LLC

Michael D. Fisse
Daigle Fisse & Kessenich, PLC
227 Highway 21
Madisonville, LA 70447

ATTORNEY FOR THIRD-PARTY
DEFENDANT, GENERAL ELECRIC
INTERNATIONAL, INC.

/s/ Brian N. Hail
Brian N. Hail

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Vicki Sedon on behalf of Brian Hail
Bar No. 8705500
vsedon@krcl.com
Envelope ID: 53548286
Status as of 5/19/2021 2:28 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 5/18/2021 11:33:02 AM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/18/2021 11:33:02 AM | SENT |
| Connie Nims | | cnims@krcl.com | 5/18/2021 11:33:02 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/18/2021 11:33:02 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/18/2021 11:33:02 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/18/2021 11:33:02 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/18/2021 11:33:02 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/18/2021 11:33:02 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/18/2021 11:33:02 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/18/2021 11:33:02 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/18/2021 11:33:02 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/18/2021 11:33:02 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/18/2021 11:33:02 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/18/2021 11:33:02 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/18/2021 11:33:02 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/18/2021 11:33:02 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/18/2021 11:33:02 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/18/2021 11:33:02 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/18/2021 11:33:02 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/18/2021 11:33:02 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Vicki Sedon on behalf of Brian Hail
Bar No. 8705500
vsedon@krcl.com
Envelope ID: 53548286
Status as of 5/19/2021 2:28 PM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/18/2021 11:33:02 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/18/2021 11:33:02 AM | SENT |

**CAUSE NO. DC-20-08331**

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
|     *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
|     *Defendant, Counter-Plaintiff, and* | § | |
|     *Third-Party Plaintiff,* | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| WATTSTOCK LLC | § | |
|     *Counter-Defendant, and* | § | |
| | § | |
| GENERAL ELECTRIC | § | 116th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES | § | |
|     *Third-Party Defendants.* | § | |
| | § | |

**ORDER DENYING GENERAL ELECTRIC INTERNATIONAL INC.'S
RULE 91A MOTION TO DISMISS**

Before the Court is Third Party Defendant General Electric International Inc.'s Rule 91a

Motion to Dismiss ("Motion"). Having considered the Motion, response and oral arguments of

counsel, it is hereby ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

SIGNED on the ____18th____ day of ___May___, 2021

_____
JUDGE PRESIDING

FILED
5/19/2021 3:17 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY



JORDAN, LYNCH JL& CANCIENNE PLLC

1980 POST OAK BLVD, SUITE 2300
HOUSTON, TEXAS 77056
(713) 955-4020
WWW.JLCFIRM.COM

Joseph W. Golinkin II
DIRECT DIAL : (713) 955-4019
EMAIL : jgolinkin@jlcfirm.com

*VIA E-FILE*

May 19, 2021

Dallas County District Clerk
600 Commerce St #103
Dallas, TX 75202

     Re:    Cause No. DC-20-08331; Wattstock LLC v. Alta Power LLC in the 116th
          Judicial District Court of Dallas County, Texas

Clerk of Court:

     Enclosed please find the $40.00 Jury fee in the above-referenced
matter.  Please do not hesitate to contact me if you have any questions or comments.

                Very truly yours,

                Joseph W. Golinkin II

Enclosure

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Thomas on behalf of Michael Cancienne
Bar No. 24055256
lthomas@jlcfirm.com
Envelope ID: 53609216
Status as of 5/20/2021 5:01 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/19/2021 3:17:32 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/19/2021 3:17:32 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/19/2021 3:17:32 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/19/2021 3:17:32 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/19/2021 3:17:32 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/19/2021 3:17:32 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/19/2021 3:17:32 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/19/2021 3:17:32 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/19/2021 3:17:32 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/19/2021 3:17:32 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/19/2021 3:17:32 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/19/2021 3:17:32 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/19/2021 3:17:32 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/19/2021 3:17:32 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/19/2021 3:17:32 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/19/2021 3:17:32 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/19/2021 3:17:32 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/19/2021 3:17:32 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/19/2021 3:17:32 PM | SENT |

Associated Case Party: WATTSTOCK LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Linda Thomas on behalf of Michael Cancienne
Bar No. 24055256
lthomas@jlcfirm.com
Envelope ID: 53609216
Status as of 5/20/2021 5:01 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 5/19/2021 3:17:32 PM | SENT |
| Connie Nims | | cnims@krcl.com | 5/19/2021 3:17:32 PM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/19/2021 3:17:32 PM | SENT |

FILED
5/28/2021 11:09 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Treva Parker-Ayodele DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| v. | 116TH JUDICIAL DISTRICT |
| GENERAL ELECTRIC INTERNATIONAL,<br>INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | |

### GENERAL ELECTRIC INTERNATIONAL INC.'S
### MOTION TO SET ANSWER DATE

Third-Party Defendant, General Electric International, Inc. ("GE") respectfully files the above captioned motion showing as follows:

1.

GE previously filed herein its Rule 91a Motion to Dismiss the claims made against GE in the First Amended Answer and Counterclaim and Original Third-Party Petition ("Third-Party Petition") filed herein by Defendant, Alta Power, LLC ("Alta").

2.

Said motion was denied by this Court by Order dated 18 May 2021. GE did not receive notice of said Order until 26 May 2021.

GENERAL ELECTRIC INTERNATIONAL INC.'S
MOTION TO SET ANSWER DATE                                                                      1

3.

GE respectfully requests that it be allowed time within which to determine and prepare its answer, defenses, denials, and other claims or matters appropriate in response to Alta's Third -Party Petition.  GE respectfully request that it be allowed three weeks (or until 18 June 2021) within which GE may make these filings.

**Certificate of Conference**

Undersigned counsel for movant and counsel for respondent have personally conducted a conference at which there was a substantive discussion of every item presented to the Court in this motion and despite best efforts the counsel have not been able to resolve those matters presented.

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

*/s/ Michael D. Fisse*
Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA  70447
Telephone:     985-871-0800
Facsimile:      985-871-0899
E-mail:          mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

## **CERTIFICATE OF SERVICE**

This certifies that a copy of the above and foregoing was sent to the following counsel of

record through the Court's electronic filing system on 28 May 2021.

| | |
|---|---|
| Brian N. Hail<br>Andrew D. Robertson<br>Kane Russell Coleman Logan PC<br>901 Main Street, Suite 5200<br>Dallas, TX 75202<br>bhail@krcl.com<br>drobertson@krcl.com<br>Counselors for WattStock LLC, Plaintiff and<br>Counter-Defendant | Michael Cancienne<br>Kevin Jordan<br>Joseph W. "Jeb" Golinkin, II<br>1980 Post Oak Blvd., Suite 2300<br>Houston, TX 77056<br>mcancienne@jlcfirm.com<br>kjordan@jlcfirm.com<br>jgolinkin@jlcfirm.com<br>Counselors for Alta Power LLC, Defendant,<br>Counter-Plaintiff and Third-Party Plaintiff |
| Jessica Pulliam<br>Kirstie Wallace<br>John B. Lawrence<br>Baker Botts L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201<br>Jessica.pulliam@bakerbotts.com<br>Kirstie.wallace@bakerbotts.com<br>john.lawrence@bakerbotts.com<br>Additional Counselors for Alta Power LLC,<br>Defendant, Counter-Plaintiff and Third-Party<br>Plaintiff | |

*/s/ Michael D. Fisse*
MICHAEL D. FISSE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 53917520
Status as of 6/1/2021 10:42 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 5/28/2021 11:09:37 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 5/28/2021 11:09:37 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 5/28/2021 11:09:37 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 5/28/2021 11:09:37 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 5/28/2021 11:09:37 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 5/28/2021 11:09:37 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 5/28/2021 11:09:37 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 5/28/2021 11:09:37 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 5/28/2021 11:09:37 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 5/28/2021 11:09:37 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 5/28/2021 11:09:37 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 5/28/2021 11:09:37 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 5/28/2021 11:09:37 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 5/28/2021 11:09:37 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 5/28/2021 11:09:37 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 5/28/2021 11:09:37 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 5/28/2021 11:09:37 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 5/28/2021 11:09:37 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 5/28/2021 11:09:37 AM | SENT |

Associated Case Party: WATTSTOCK LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 53917520
Status as of 6/1/2021 10:42 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Connie Nims | | cnims@krcl.com | 5/28/2021 11:09:37 AM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 5/28/2021 11:09:37 AM | SENT |
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 5/28/2021 11:09:37 AM | SENT |

FILED
6/9/2021 9:19 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC. <br> *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC, <br> *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC <br> *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES <br> *Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

### PAUL R. TRAPANI, III'S
### MOTION FOR PERMISSION TO PARTICIPATE *PRO HAC VICE*

TO THE HONORABLE JUDGE OF SAID COURT:

I, Paul R. Trapani, III, file this motion for permission to participate *pro hac vice* on behalf of Third-Party Defendant, General Electric International, Inc., before the Court, under the authority of the Rules governing Admission to the Bar of Texas, Rule XIX.

### **FACTS**

1.    I will be associated with Michael D. Fisse, State Bar number 07070550, in this proceeding.  Mr. Fisse's office address, telephone number, facsimile number, and e-mail address are:

> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA  70447
> Telephone:    (985) 871-0800
> Facsimile:    (985) 792-8209

PAUL R. TRAPANI, III'S MOTION FOR PERMISSION
TO PARTICIPATE *PRO HAC VICE*

mfisse@daiglefisse.com

2.      I am an active member in good standing with the State Bar of Louisiana, U.S.

District Courts for the Eastern, Middle and Western Districts of Louisiana, and U.S. Court of

Appeals for the Fifth Circuit.

3.      I have never been the subject of any disciplinary action by the State Bar of

Louisiana or courts of any jurisdiction in which I have been licensed.

4.      I have never been denied admission to the courts of any State or to any federal

court.

5.      I am familiar with the State Bar Act, the State Bar Rules, and the Texas

Disciplinary Rules of Professional Conduct governing conduct of members of the State Bar of

Texas, and I will at all times abide by and comply with same as long as this Texas proceeding is

pending, and I have not withdrawn as counsel from the proceeding.

6.      In the last two years, I have appeared in the following matters in the State Court

of Texas:

> *Braun Intertec Corporation vs. GE Oil & Gas, Inc.*
> In the Civil District Court of Harris County, Texas
> 152nd Judicial District
> Cause No. 2018-01554
>
> *Bar Source International, LLC vs. GE Oil & Gas, Lufkin Industries Inc., and Lufkin Industries, LLC*
> In the District Court of Harris County, Texas
> 157th Judicial District
> Cause No. 2016-43399

7.      My office address, telephone number, fax number, and e-mail address are:

> Paul R. Trapani, III
> Louisiana Bar No. 32735
> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA  70447

PAUL R. TRAPANI, III'S MOTION FOR PERMISSION
TO PARTICIPATE *PRO HAC VICE*

Telephone:    (985) 871-0800
Facsimile:    (985) 792-8209
ptrapani@daiglefisse.com

8.      I have applied for *pro hac vice* admission to the Texas Board of Examiners.
Attached is a copy of the Board of Law Examiners' 8 June 2021 Acknowledgment Letter
attesting to payment of the associated application fee, as Exhibit A.

## PRAYER

I, Paul R. Trapani, III ask this Court to grant this Motion for Permission to Participate *pro
hac vice* and allow me to appear before this Court until the conclusion of this case.

Respectfully submitted,

*/s/ Paul R. Trapani, III*
Paul R. Trapani, III (LA Bar No. 32735)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA  70447
Telephone:    985-871-0800
Facsimile:    985-792-8209
Email:       ptrapani@daiglefisse.com
**Counsel for Third-Party Defendant, General
Electric International, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that true and correct copies of *Paul R. Trapani, III's Motion for Permission to Participate pro hac vice, Michael D. Fisse's Motion in Support of Paul R. Trapani, III's Motion for Permission to Participate pro hac vice* and proposed *Order* have been served upon the following:

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX 75202
bhail@krcl.com
drobertson@krcl.com
***Counselors for WattStock LLC, Plaintiff and Counter-Defendant***

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
***Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff***

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
***Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff***

by electronic transmission on the 9th day of June, 2021.

/s/ Paul R. Trapani, III

# EXHIBIT

# A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

June 08, 2021

Paul R. Trapani, III
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

**Non-resident attorney: Paul R. Trapani, III**

**Case: DC-20-08331**

**Texas court or body: 116th Judicial District Court of Dallas County, Texas**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Signed,

*Susan Henricks*

**Susan Henricks**
**Executive Director**

| MAILING ADDRESS | TELEPHONE: 512- 463-1621 - FACSIMILE: 512- 463-5300 | STREET ADDRESS |
|---|---|---|
| Post Office Box 13486 | WEBSITE: www.ble.texas.gov | 205 West 14th Street, Ste.500 |
| Austin,Texas 78711-3486 | | Austin, Texas 78701 |

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC. <br> *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC, <br> *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | DALLAS COUNTY, TEXAS |
| WATTSTOCK LLC <br> *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES <br> *Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## MICHAEL D. FISSE'S MOTION IN SUPPORT OF
## PAUL R. TRAPANI, III'S MOTION FOR PERMISSION
## TO PARTICIPATE *PRO HAC VICE*

I, Michael D. Fisse, file this Motion in Support of Paul R. Trapani, III's Motion for Permission to Participate *pro hac vice*.

## FACTS

1.      I am associated with Paul R. Trapani, III in this case, as counsel for Third-Party Defendant, General Electric International, Inc.

2.      I find that Paul R. Trapani, III is a reputable attorney, and I recommend that the Court permit him to participate in this case.

MICHAEL D. FISSE'S MOTION IN SUPPORT OF
PAUL R. TRAPANI, III'S MOTION FOR PERMISSION
TO PARTICIPATE *PRO HAC VICE*

**PRAYER**

3.      For these reasons, I ask this Court to grant Paul R. Trapani, III's Motion for

Permission to Participate *pro hac vice* and allow Mr. Trapani to appear before this Court until the

conclusion of this case.

Respectfully submitted,

*/s/ Michael D. Fisse*

Michael D. Fisse (TX Bar No. 07070550)
**DAIGLE FISSE & KESSENICH, PLC**
227 Highway 21
Madisonville, LA  70447
Telephone:      985-871-0800
Facsimile:      985-792-8209
Email:          mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54235935
Status as of 6/10/2021 12:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/9/2021 9:19:25 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/9/2021 9:19:25 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/9/2021 9:19:25 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/9/2021 9:19:25 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/9/2021 9:19:25 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/9/2021 9:19:25 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/9/2021 9:19:25 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/9/2021 9:19:25 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/9/2021 9:19:25 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/9/2021 9:19:25 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/9/2021 9:19:25 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/9/2021 9:19:25 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/9/2021 9:19:25 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/9/2021 9:19:25 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/9/2021 9:19:25 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/9/2021 9:19:25 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/9/2021 9:19:25 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/9/2021 9:19:25 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/9/2021 9:19:25 AM | SENT |

Associated Case Party: WATTSTOCK LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54235935
Status as of 6/10/2021 12:43 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 6/9/2021 9:19:25 AM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 6/9/2021 9:19:25 AM | SENT |
| Connie Nims | | cnims@krcl.com | 6/9/2021 9:19:25 AM | SENT |

FILED
6/9/2021 9:59 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC. <br> *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC, <br> *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | DALLAS COUNTY, TEXAS |
| WATTSTOCK LLC <br> *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES <br> *Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## PATRICK B. FISSE'S
## MOTION FOR PERMISSION TO PARTICIPATE *PRO HAC VICE*

TO THE HONORABLE JUDGE OF SAID COURT:

I, Patrick B. Fisse, file this motion for permission to participate *pro hac vice* on behalf of

Third-Party Defendant, General Electric International, Inc., before the Court, under the authority

of the Rules governing Admission to the Bar of Texas, Rule XIX.

### **FACTS**

1.      I will be associated with Michael D. Fisse, State Bar number 07070550, in this

proceeding.  Mr. Fisse's office address, telephone number, facsimile number, and e-mail address

are:

> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA  70447
> Telephone:     (985) 871-0800
> Facsimile:      (985) 792-8209

mfisse@daiglefisse.com

2.      I am an active member in good standing with the State Bar of Louisiana, U.S.

District Courts for the Eastern, Middle and Western Districts of Louisiana, U.S. District Court of

Southern District of Texas, and U.S. Court of Appeals for the Fifth Circuit.

3.      I have never been the subject of any disciplinary action by the State Bar of

Louisiana or courts of any jurisdiction in which I have been licensed.

4.      I have never been denied admission to the courts of any State or to any federal

court.

5.      I am familiar with the State Bar Act, the State Bar Rules, and the Texas

Disciplinary Rules of Professional Conduct governing conduct of members of the State Bar of

Texas, and I will at all times abide by and comply with same as long as this Texas proceeding is

pending, and I have not withdrawn as counsel from the proceeding.

6.      In the last two years, I have appeared in the following matters in the State Court

of Texas:

> *Argos Ports (Houston), LLC v. Kirby Inland Marine, LP and Greens Bayou Fleeting, LLC*
> United States District Court, Southern District of Texas, Houston Division
> Civil Action No. 4:18-cv-00327

7.      My office address, telephone number, fax number, and e-mail address are:

> Patrick B. Fisse
> Louisiana Bar No. 36457
> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA  70447
> Telephone:    (985) 871-0800
> Facsimile:    (985) 792-8209
> pfisse@daiglefisse.com

PATRICK B. FISSE'S MOTION FOR PERMISSION
TO PARTICIPATE *PRO HAC VICE*

8.      I have applied for *pro hac vice* admission to the Texas Board of Examiners. Attached is a copy of the Board of Law Examiners' 8 June 2021 Acknowledgment Letter attesting to payment of the associated application fee, as Exhibit A.

### **PRAYER**

I, Patrick B. Fisse ask this Court to grant this Motion for Permission to Participate *pro hac vice* and allow me to appear before this Court until the conclusion of this case.

Respectfully submitted,

*/s/ Patrick B. Fisse*
Patrick B. Fisse (LA Bar No. 36457)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA  70447
Telephone:      985-871-0800
Facsimile:      985-792-8209
Email:      pfisse@daiglefisse.com
**Counsel for Third-Party Defendant, General
Electric International, Inc.**

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of *Patrick B. Fisse's Motion for Permission to Participate pro hac vice, Michael D. Fisse's Motion in Support of Patrick B. Fisse's Motion for Permission to Participate pro hac vice* and proposed *Order* have been served upon the following:

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX 75202
bhail@krcl.com
drobertson@krcl.com
*Counselors for WattStock LLC, Plaintiff and Counter-Defendant*

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
*Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff*

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
*Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff*

by electronic transmission on the 9th day of June, 2021.

/s/ Patrick B. Fisse

# EXHIBIT

# A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

June 08, 2021

Patrick B. Fisse
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

**Non-resident attorney: Patrick B. Fisse**

**Case: DC-20-08331**

**Texas court or body: 116th Judicial District Court of Dallas County, Texas**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Signed,

Susan Henricks
Executive Director

| MAILING ADDRESS | TELEPHONE: 512- 463-1621 - FACSIMILE: 512- 463-5300 | STREET ADDRESS |
|---|---|---|
| Post Office Box 13486 | WEBSITE: www.ble.texas.gov | 205 West 14th Street, Ste.500 |
| Austin,Texas 78711-3486 | | Austin, Texas 78701 |

Page 6 of 8

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC. | IN THE DISTRICT COURT OF |
| *Plaintiff* | |
| | |
| v. | |
| | |
| ALTA POWER LLC, | |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| | DALLAS COUNTY, TEXAS |
| v. | |
| | |
| WATTSTOCK LLC | |
| *Counter-Defendant, and* | |
| | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES | 116th JUDICIAL DISTRICT |
| *Third-Party Defendants.* | |

## MICHAEL D. FISSE'S MOTION IN SUPPORT OF PATRICK B. FISSE'S MOTION FOR PERMISSION TO PARTICIPATE *PRO HAC VICE*

I, Michael D. Fisse, file this Motion in Support of Patrick B. Fisse's Motion for Permission to Participate *pro hac vice*.

## **FACTS**

1.      I am associated with Patrick B. Fisse in this case, as counsel for Third-Party Defendant, General Electric International, Inc.

2.      I find that Patrick B. Fisse is a reputable attorney, and I recommend that the Court permit him to participate in this case.

## PRAYER

3.       For these reasons, I ask this Court to grant Patrick B. Fisse's Motion for Permission to Participate *pro hac vice* and allow Mr. Fisse to appear before this Court until the conclusion of this case.

Respectfully submitted,

*/s/ Michael D. Fisse*

Michael D. Fisse (TX Bar No. 07070550)
**DAIGLE FISSE & KESSENICH, PLC**
227 Highway 21
Madisonville, LA  70447
Telephone:      985-871-0800
Facsimile:      985-792-8209
Email:          mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54238585
Status as of 6/10/2021 1:10 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/9/2021 9:59:20 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/9/2021 9:59:20 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/9/2021 9:59:20 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/9/2021 9:59:20 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/9/2021 9:59:20 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/9/2021 9:59:20 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/9/2021 9:59:20 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/9/2021 9:59:20 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/9/2021 9:59:20 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/9/2021 9:59:20 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/9/2021 9:59:20 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/9/2021 9:59:20 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/9/2021 9:59:20 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/9/2021 9:59:20 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/9/2021 9:59:20 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/9/2021 9:59:20 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/9/2021 9:59:20 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/9/2021 9:59:20 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/9/2021 9:59:20 AM | SENT |

Associated Case Party: WATTSTOCK LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54238585
Status as of 6/10/2021 1:10 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| MARTI BEAUJEAN | | mbeaujean@krcl.com | 6/9/2021 9:59:20 AM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 6/9/2021 9:59:20 AM | SENT |
| Connie Nims | | cnims@krcl.com | 6/9/2021 9:59:20 AM | SENT |

FILED
6/17/2021 11:44 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC.<br>    *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>    *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | DALLAS COUNTY, TEXAS |
| WATTSTOCK LLC<br>    *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES<br>    *Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

### PAUL R. TRAPANI, III'S VERIFIED
### MOTION FOR PERMISSION TO PARTICIPATE *PRO HAC VICE*

TO THE HONORABLE JUDGE OF SAID COURT:

I, Paul R. Trapani, III, file this verified motion for permission to participate *pro hac vice* on behalf of Third-Party Defendant, General Electric International, Inc., before the Court, under the authority of the Rules governing Admission to the Bar of Texas, Rule XIX.

### **FACTS**

1.    I will be associated with Michael D. Fisse, State Bar number 07070550, in this proceeding. Mr. Fisse's office address, telephone number, facsimile number, and e-mail address are:

> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA 70447
> Telephone:    (985) 871-0800
> Facsimile:    (985) 792-8209

mfisse@daiglefisse.com

2.      I am an active member in good standing with the State Bar of Louisiana, U.S. District Courts for the Eastern, Middle and Western Districts of Louisiana, and U.S. Court of Appeals for the Fifth Circuit.

3.      I have never been the subject of any disciplinary action by the State Bar of Louisiana or courts of any jurisdiction in which I have been licensed.

4.      I have never been denied admission to the courts of any State or to any federal court.

5.      I am familiar with the State Bar Act, the State Bar Rules, and the Texas Disciplinary Rules of Professional Conduct governing conduct of members of the State Bar of Texas, and I will at all times abide by and comply with same as long as this Texas proceeding is pending, and I have not withdrawn as counsel from the proceeding.

6.      In the last two years, I have appeared in the following matters in the State Court of Texas:

> *Braun Intertec Corporation vs. GE Oil & Gas, Inc.*
> In the Civil District Court of Harris County, Texas
> 152nd Judicial District
> Cause No. 2018-01554
>
> *Bar Source International, LLC vs. GE Oil & Gas, Lufkin Industries Inc., and Lufkin Industries, LLC*
> In the District Court of Harris County, Texas
> 157th Judicial District
> Cause No. 2016-43399

7.      My office address, telephone number, fax number, and e-mail address are:

> Paul R. Trapani, III
> Louisiana Bar No. 32735
> Daigle Fisse & Kessenich, PLC
> 227 Highway 21
> Madisonville, LA  70447

PAUL R. TRAPANI, III'S VERIFIED MOTION FOR PERMISSION
TO PARTICIPATE *PRO HAC VICE*

Telephone:    (985) 871-0800
Facsimile:    (985) 792-8209
ptrapani@daiglefisse.com

8.      I have applied for *pro hac vice* admission to the Texas Board of Examiners. Attached is a copy of the Board of Law Examiners' 8 June 2021 Acknowledgment Letter attesting to payment of the associated application fee, as Exhibit A.

### **VERIFICATION**

I, Paul R. Trapani, III, hereby verify that all statements and information mentioned above are true, complete, and correct to the best of my knowledge.

### **PRAYER**

I, Paul R. Trapani, III ask this Court to grant this Verified Motion for Permission to Participate *pro hac vice* and allow me to appear before this Court until the conclusion of this case.

Respectfully submitted,

*/s/ Paul R. Trapani, III*
Paul R. Trapani, III (LA Bar No. 32735)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA  70447
Telephone:    985-871-0800
Facsimile:    985-792-8209
Email:         ptrapani@daiglefisse.com
***Counsel for Third-Party Defendant, General
Electric International, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of *Paul R. Trapani, III's Verified Motion for Permission to Participate pro hac vice, Michael D. Fisse's Motion in Support of Paul R. Trapani, III's Verified Motion for Permission to Participate pro hac vice* and proposed *Order* have been served upon the following:

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX 75202
bhail@krcl.com
drobertson@krcl.com
*Counselors for WattStock LLC, Plaintiff and Counter-Defendant*

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
*Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff*

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
*Counselors for Alta Power LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff*

by electronic transmission on the 17th day of June, 2021.

/s/ Paul R. Trapani, III

# EXHIBIT

# A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

June 08, 2021

Paul R. Trapani, III
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

      **Non-resident attorney: Paul R. Trapani, III**

      **Case: DC-20-08331**

      **Texas court or body: 116th Judicial District Court of Dallas County, Texas**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Signed,

**Susan Henricks**
**Executive Director**

| MAILING ADDRESS | TELEPHONE: 512- 463-1621 - FACSIMILE: 512- 463-5300 | STREET ADDRESS |
|---|---|---|
| Post Office Box 13486 | WEBSITE: www.ble.texas.gov | 205 West 14th Street, Ste.500 |
| Austin,Texas 78711-3486 | | Austin, Texas 78701 |

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC.<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | DALLAS COUNTY, TEXAS |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## MICHAEL D. FISSE'S MOTION IN SUPPORT OF
## PAUL R. TRAPANI, III'S VERIFIED MOTION FOR PERMISSION
## TO PARTICIPATE *PRO HAC VICE*

I, Michael D. Fisse, file this Motion in Support of Paul R. Trapani, III's Verified Motion for Permission to Participate *pro hac vice*.

### FACTS

1.     I am associated with Paul R. Trapani, III in this case, as counsel for Third-Party Defendant, General Electric International, Inc.

2.     I find that Paul R. Trapani, III is a reputable attorney, and I recommend that the Court permit him to participate in this case.

MICHAEL D. FISSE'S MOTION IN SUPPORT OF
PAUL R. TRAPANI, III'S VERIFIED MOTION FOR
PERMISSION TO PARTICIPATE *PRO HAC VICE*

## PRAYER

3.    For these reasons, I ask this Court to grant Paul R. Trapani, III's Verified Motion

for Permission to Participate *pro hac vice* and allow Mr. Trapani to appear before this Court until

the conclusion of this case.

Respectfully submitted,

*/s/ Michael D. Fisse*
Michael D. Fisse (TX Bar No. 07070550)
**DAIGLE FISSE & KESSENICH, PLC**
227 Highway 21
Madisonville, LA  70447
Telephone:    985-871-0800
Facsimile:    985-792-8209
Email:      mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

MICHAEL D. FISSE'S MOTION IN SUPPORT OF
PAUL R. TRAPANI, III'S VERIFIED MOTION FOR
PERMISSION TO PARTICIPATE *PRO HAC VICE*

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54515826
Status as of 6/18/2021 12:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/17/2021 11:44:26 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/17/2021 11:44:26 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/17/2021 11:44:26 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/17/2021 11:44:26 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/17/2021 11:44:26 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/17/2021 11:44:26 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/17/2021 11:44:26 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/17/2021 11:44:26 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/17/2021 11:44:26 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/17/2021 11:44:26 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/17/2021 11:44:26 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/17/2021 11:44:26 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/17/2021 11:44:26 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/17/2021 11:44:26 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/17/2021 11:44:26 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/17/2021 11:44:26 AM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/17/2021 11:44:26 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/17/2021 11:44:26 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/17/2021 11:44:26 AM | SENT |

Associated Case Party: WATTSTOCK LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54515826
Status as of 6/18/2021 12:53 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| VICKI SEDON | | vsedon@krcl.com | 6/17/2021 11:44:26 AM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 6/17/2021 11:44:26 AM | SENT |
| Connie Nims | | cnims@krcl.com | 6/17/2021 11:44:26 AM | SENT |

FILED
6/17/2021 4:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC, | IN THE DISTRICT COURT OF |
|     Plaintiff, | |
| | |
| v. | |
| | |
| ALTA POWER LLC, | |
|     Defendant, Counter Plaintiff, and | |
|     Third-Party Plaintiff, | DALLAS COUNTY, TEXAS |
| | |
| v. | |
| | |
| WATTSTOCK LLC, | |
|     Counter-defendant, and | |
| | |
| GENERAL ELECTRIC INTERNATIONAL, | |
| INC., d/b/a GE POWER SERVICES, | |
|     Third-Party Defendant. | 116th JUDICIAL DISTRICT |

## AGREED FIRST MOTION FOR CONTINUANCE AND FOR ENTRY OF DOCKET CONTROL ORDER

Plaintiff and Counter-Defendant Wattstock LLC, Defendant, Counter-Plaintiff and Third-Party Plaintiff Alta Power, LLC, and Third-Party Defendant General Electric International, Inc. (together, "the Parties") file this First Agreed Motion for Continuance.

**I.**

This lawsuit was filed on June 16, 2020, and Alta Power, LLC answered and filed a counterclaim on June 22, 2020. On February 15, 2021, the Court granted Alta Power, LLC's Unopposed Motion for Leave to Join General Electric International, Inc. ("GE") as a Party. GE filed a Rule 91a Motion to Dismiss, which was denied on May 18, 2021.

This matter is currently set for trial beginning July 26, 2021. This is the first request for a continuance.

## II.

The Parties have exchanged written discovery and documents, and taken one deposition. Although the Parties have worked diligently to prepare the case for trial, GE was only recently joined to this case and the Parties need to conduct additional discovery and take additional depositions before this case proceeds to trial.

While the Parties desire to process this case as efficiently and expeditiously as possible, the Parties request additional time to prepare the case for trial and determine the most efficient manner to litigate the issues. The Parties request the trial date be continued to September 19, 2022. Furthermore, the Parties respectfully request that the Court sign the Agreed Docket Control Order attached, providing additional time to amend pleadings and complete discovery in this matter.

The Parties to this case approve of this request for continuance. This continuance is not sought for delay, but for the sole purpose that justice may be done.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: */s/ Michael Cancienne*
      Michael Cancienne
      State Bar No. 24055256
      Kevin Jordan
      State Bar No. 11014800
      Joseph W. ("Jeb") Golinkin II
      State Bar No. 24087596
      1980 Post Oak Blvd., Suite 2300
      Houston, Texas 77056
      Telephone: 713.955.4025
      Facsimile: 713.955.9644
      mcancienne@jlcfirm.com
      kjordan@jlcfirm.com
      jgolinkin@jlcfirm.com

BAKER BOTTS L.L.P.

      Jessica B. Pulliam
      State Bar No. 24037309
      John B. Lawrence
      State Bar No. 24055825
      Kirstie L. Wallace
      State Bar No. 24115920
      2001 Ross Avenue, Suite 900
      Dallas, Texas 75201
      Telephone: (214) 953-6500
      Facsimile: (214) 953-6503
      jessica.pulliam@bakerbotts.com
      john.lawrence@bakerbotts.com
      Kirstie.wallace@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC

DAIGLE FISSE & KESSENICH, PLC

By: */s/ Michael D. Fisse*
    Michael D. Fisse
    State Bar No. 07070550
    227 Highway 21
    Madisonville, Louisiana 70447
    Telephone: 985.871.0800
    Facsimile: 985.871.0899
    mfisse@daiglefisse.com

ATTORNEYS FOR GENERAL ELECTRIC
INTERNATIONAL, INC.

KANE RUSSELL COLEMAN LOGAN PC

By: */s/ Brian N. Hail*
    Brian N. Hail
    State Bar No. 08705500
    Andrew D. Robertson
    State bar No. 24106027
    901 Main Street, Suite 5200
    Dallas, Texas 75202
    Telephone: 214.777.4200
    Facsimile:  214.777.4299
    bhail@krcl.com
    drobertson@krcl.com

ATTORNEYS FOR WATTSTOCK LLC

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the above and foregoing was served on all parties through the Court's electronic filing service on June 17, 2021.


　　　　　　　　　　　　　　*/s/ Joseph Golinkin*　　　　　　
Joseph Golinkin

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joseph Golinkin II on behalf of Joseph Golinkin II
Bar No. 24087596
jgolinkin@jlcfirm.com
Envelope ID: 54534763
Status as of 6/18/2021 12:56 PM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 6/17/2021 4:13:14 PM | SENT |
| VICKI SEDON | | vsedon@krcl.com | 6/17/2021 4:13:14 PM | SENT |
| Connie Nims | | cnims@krcl.com | 6/17/2021 4:13:14 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/17/2021 4:13:14 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/17/2021 4:13:14 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/17/2021 4:13:14 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/17/2021 4:13:14 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/17/2021 4:13:14 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/17/2021 4:13:14 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/17/2021 4:13:14 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/17/2021 4:13:14 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/17/2021 4:13:14 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/17/2021 4:13:14 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/17/2021 4:13:14 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/17/2021 4:13:14 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/17/2021 4:13:14 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/17/2021 4:13:14 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/17/2021 4:13:14 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/17/2021 4:13:14 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/17/2021 4:13:14 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joseph Golinkin II on behalf of Joseph Golinkin II
Bar No. 24087596
jgolinkin@jlcfirm.com
Envelope ID: 54534763
Status as of 6/18/2021 12:56 PM CST

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/17/2021 4:13:14 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/17/2021 4:13:14 PM | SENT |

FILED
6/18/2021 4:39 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC, *Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC, *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC *Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL,INC., d/b/a GE POWER SERVICES *Third-Party Defendant.* | 116th JUDICIAL DISTRICT |

## THIRD-PARTY DEFENDANT'S ANSWER, DEFENSES, AND JURY DEMAND

General Electric International, Inc. ("GE"), improperly identified herein as "General Electric International, Inc., d/b/a GE Power Services ('GE')" (hereafter, "Third-Party Defendant" or "GE") files its Answer, Defenses, and Jury Demand to the First Amended Answer and Counterclaim and Third-Party Petition (hereafter "Third-Party Petition") filed herein by Alta Power LLC (hereafter, "Alta" or "Third-Party Plaintiff"). In support, Third-Party Defendant states as follows:

## SPECIAL EXCEPTIONS

Third-Party Defendant incorporates by reference herein its previously filed Rule 91a Motion to Dismiss Causes of Action Alleged in Alta Power LLC's Third-Party Petition, and specially excepts under Rule 91 of the Texas Rules of Civil Procedure to the insufficiency of the allegations contained in the Third-Party Petition as specified in said Rule 91a Motion to Dismiss.

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

**Page 1 of 8**

## GENERAL DENIAL

As authorized by Rule 92 of the Texas Rules of Civil Procedure, Third-Party Defendant denies each and every, all and singular, of the allegations contained in Alta's Third-Party Petition and demands strict proof thereof.

## VERIFIED DENIAL

Pursuant to Texas Rule of Civil Procedure 93, Third-Party Defendant provides its verified denial of the following matters alleged in Alta's Third-Party Petition: that a partnership existed between GE and WattStock LLC as alleged in the Third-Party Petition.

## DEFENSES

Without admitting any of the allegations contained in the Third-Party Petition, GE states that Alta's claims are barred or limited as specified by the following defenses. To the extent that any defense may be inconsistent with Third-Party Defendant's denials herein or with any other defense, such defenses are pleaded in the alternative.

1.

The allegations stated in the Third-Party Petition purport to state claims or causes of action that have no basis in law or fact and that fail to state claims or causes of action for which relief might be granted.

2.

The allegations stated in the Third-Party Petition are insufficient because they are vague, obscure, generalized, and otherwise fail to provide a short and plain statement of the alleged claims and fail to state with particularity the alleged facts upon which the asserted causes of action are based.

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

3.

The claims attempted to be asserted by Alta may be time-barred by the applicable statute of limitations, laches, and/or by the written terms and conditions of the contract documents governing the relationships among the parties to this litigation.

4.

Alta has not alleged and there is no evidence establishing that contractual privity exists between GE and Alta.

5.

The claims attempted to be asserted by Alta are barred or waived by the terms and conditions of written contract documents relating to the transactions and occurrences described in the Third-Party Petition. Alternatively, the terms and conditions of these contract documents bar or limit any rights, recovery, and remedies that may be available to Alta herein (if any).

6.

Alta's alleged claims against GE for breach of contract are barred by the statute of frauds.

7.

There is no evidence that there was any fault, commission, omission or breach of any contractual duty or warranty on the part of GE; or that any such fault, commission, omission or breach of any contractual duty or warranty caused, contributed to, or brought about by the claims and damages alleged in the Third-Party Petition. To the contrary, the claims and damages alleged in the Third-Party Petition were caused by Alta's own fault, negligence, commissions, omissions or breach of contractual duty or warranty; or were the result of such actions on the part of others for whom GE was not responsible and for whom GE has no legal liability. Such fault of Alta and/or other parties serves to bar any recovery by Alta herein or to proportionately reduce any such

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

recovery.

8.

Alta assumed the risk of the losses alleged in the Third-Party Petition.

9.

GE is entitled to credit and/or set-off for any settlement that Alta may reach with other persons in connection with the matters in dispute, and for any benefits, collateral sources, or other sources of set-off or recoupment available to Alta; and GE accordingly claims such set-offs, credits and recoupments as may be allowed by law.

10.

Alta may not recover against GE because Alta itself materially breached and/or failed to perform or satisfy conditions precedent in the contract agreements to which Alta was party.

11.

Alta's alleged claims are barred for failure to provide notice, presentment, or amicable demand as required by law and/or contract.

12.

Alta has failed to mitigate its alleged damages.

13.

Alta may not recover attorney fees from GE because Alta has not alleged and there is no evidence establishing that contractual privity exists between GE and Alta.  Alternatively, the attorney fees and other expenses allegedly paid or incurred by Alta were not reasonable; and/or were not necessarily incurred in connections with the transactions at issue; and/or there was a failure of presentment as required by Tex. Civ. Prac. & Rem. Code § 38.002.  Alternatively, Alta may not recover from GE attorney fees in pursuing claims against WattStock.

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

14.

There is no evidence establishing that any partnership, principal-agent, or other relationship existed between GE and WattStock such that either of them could be responsible for the actions or omissions of the other as alleged in the Third-Party Petition.

15.

GE specifically denies that the doctrine of *respondeat superior* or any other alleged basis for vicarious, joint, or several liability applies as alleged in the Third-Party Petition.

16.

Alta's alleged claims are barred by V.T.C.A., Business Organizations Code §§ 152.053(b) and 152.054.

17.

Alta's alleged claims may be barred by waiver and estoppel as those terms are known and understood at law.

18.

Alta's alleged claims may be barred or limited by set-off, compromise, accord and satisfaction, payment and/or release as those terms are known and understood at law.

19.

Alta's alleged claims may be barred or limited by equitable estoppel, collateral estoppel, issue preclusion, and/or *res judicata* as those terms are known and understood at law.

20.

There is no evidence establishing that GE was in breach of any contract agreement or failed to satisfy or comply with any contractual obligations.

21.

There is no evidence establishing that Alta's alleged reliance on the alleged misrepresentations described in the Third-Party Petition was justifiable.

22.

Alta expressly agreed and accepted that the price of any turbine equipment that it might purchase under its contract with WattStock might vary due to the variable conditions of the equipment and the variable scopes of refurbishment work that may be required for the equipment.

23.

There is no evidence establishing that Alta may recover for consequential, incidental, or indirect damages as alleged in the Third-Party Petition.

24.

Alta may not recover exemplary damages because the award of such damages under the circumstances of this case are not authorized by fact or law and because an award of exemplary damages would by violative of Third-Party Defendant's rights under the United States and Texas Constitutions.

25.

Alta may not assert claims for equitable relief because such claims are not authorized by law.  Alternatively, such claims are barred by Alta's "unclean hands" or other conduct.

26.

Alta's claim for attorney fees is barred by the excessive demand doctrine.

27.

No clear and convincing evidence supports Alta's claims as required by law.

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

28.

Third-Party Defendant reserves its right to supplement and/or amend this Answer and these Defenses as may be appropriate under the Texas Rules of Civil Procedure.

## JURY DEMAND

Third-Party Defendant demands a jury trial on all claims so triable.

**ACCORDINGLY**, General Electric International, Inc. respectfully requests that all of Alta's claims be dismissed with prejudice, and that there be judgment in GE's favor against Alta on the alleged claims, and for costs and expenses (including attorney fees) as may be recoverable by GE as may be allowed by law, and for such other and further relief to which GE may be entitled.

Respectfully submitted this 18th day of June 2021.

**DAIGLE FISSE & KESSENICH, PLC**

*/s/ Michael D. Fisse*
Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA  70447
Telephone:    985-871-0800
Facsimile:    985-871-0899
E-mail:        mfisse@daiglefisse.com
***Counsel for Third-Party Defendant,***
***General Electric International, Inc.***

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that true and correct copies of ***Third-Party Defendant's Answer,***

***Defenses, and Jury Demand*** have been served upon the following:

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX 75202
bhail@krcl.com
drobertson@krcl.com
***Counselors for WattStock LLC, Plaintiff and
Counter-Defendant***

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
***Counselors for Alta Power LLC, Defendant,
Counter-Plaintiff and Third-Party Plaintiff***

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
***Counselors for Alta Power LLC, Defendant,
Counter-Plaintiff and Third-Party Plaintiff***

by electronic transmission on the 18th day of June, 2021.

/s/ Michael D. Fisse

THIRD-PARTY DEFENDANT'S ANSWER,
DEFENSES, AND JURY DEMAND

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54577243
Status as of 6/23/2021 10:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/18/2021 4:39:26 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/18/2021 4:39:26 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/18/2021 4:39:26 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/18/2021 4:39:26 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/18/2021 4:39:26 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/18/2021 4:39:26 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/18/2021 4:39:26 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/18/2021 4:39:26 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/18/2021 4:39:26 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/18/2021 4:39:26 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/18/2021 4:39:26 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/18/2021 4:39:26 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/18/2021 4:39:26 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/18/2021 4:39:26 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/18/2021 4:39:26 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/18/2021 4:39:26 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/18/2021 4:39:26 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/18/2021 4:39:26 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/18/2021 4:39:26 PM | SENT |

Associated Case Party: WATTSTOCK LLC

# Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Fisse on behalf of Michael Fisse
Bar No. 07070550
mfisse@daiglefisse.com
Envelope ID: 54577243
Status as of 6/23/2021 10:04 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 6/18/2021 4:39:26 PM | SENT |
| VICKI SEDON | | vsedon@krcl.com | 6/18/2021 4:39:26 PM | SENT |
| Connie Nims | | cnims@krcl.com | 6/18/2021 4:39:26 PM | SENT |

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC.<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## ORDER GRANTING PAUL R. TRAPANI, III'S
## VERIFIED MOTION FOR PERMISSION TO PARTICIPATE *PRO HAC VICE*

Before the Court is Paul R. Trapani, III's Verified Motion for Permission to Participate *pro hac vice* on behalf of Third-Party Defendant, General Electric International, Inc. After considering the motion, this Court finds that the motion should be granted. Therefore, it is ORDERED:

1.     Paul R. Trapani, III's Verified Motion for Permission to Participate *pro hac vice* is GRANTED.

2.     Paul R. Trapani, III may appear before this Court as counsel for Third-Party Defendant, General Electric International, Inc., until the conclusion of this case.

SIGNED this **25th** day of _____**June**_____ 2021.

_____
PRESIDING JUDGE

ORDER GRANTING PAUL R. TRAPANI, II
VERIFIED MOTION FOR PERMISSION TO
PARTICIPATE *PRO HAC VICE*

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>        Plaintiff,<br><br>v.<br><br>ALTA POWER LLC,<br>        Defendant, Counter Plaintiff, and<br>        Third-Party Plaintiff,<br><br>v.<br><br>WATTSTOCK LLC,<br>        Counter-defendant, and<br><br>GENERAL ELECTRIC INTERNATIONAL,<br>INC., d/b/a GE POWER SERVICES,<br>        Third-Party Defendant. | IN THE DISTRICT COURT OF<br><br><br><br><br>DALLAS COUNTY, TEXAS<br><br><br><br><br>116th JUDICIAL DISTRICT |

## AGREED DOCKET CONTROL ORDER

The Court enters the following Order to control the schedule of this case. Unless otherwise specified, the following items must be completed by the dates listed below. If no date is listed, the item is governed by the Texas Rules of Civil Procedure.

| | |
|---|---|
| March 23, 2022 | **Experts:** Experts for parties seeking affirmative relief. |
| April 22, 2022 | **Experts:** All other experts. |
| June 21, 2022 | **Discovery.** Parties must complete all discovery. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period so that the deadline for responding will be within the discovery period. |
| August 19, 2022 | **Dispositive Motions.** Parties must set for hearing all motions or pleas, that if granted by the Court would dispose of all or part of the case. |
| September 9, 2022 | **Pre-Trial Matters.** Deadline to file and serve Party/Attorney List, Trial Witness List, Draft Jury Charge, Exhibits, Deposition Excerpts or Edited Videotapes, Motions in Limine, Trial Scheduling, and other pretrial motions not yet filed. |
| September 19, 2022 | **Trial.** This case is set for trial on this date. If not assigned by the second Friday following this date, the case will be reset. |

All deadlines that expired under the prior scheduling order are not revived unless expressly reset herein. Except for the trial setting, the deadlines in this Order may be modified by the written consent of counsel of record for all parties.

SIGNED THIS 25th DAY OF _____June_____, 2021.


_____
JUDGE PRESIDING

FILED
6/30/2021 12:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kevin Molden DEPUTY

CAUSE NO. DC–20–08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff / Counterclaim Defendant,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALTA POWER LLC, | § | |
| | § | |
| *Defendant / Counterclaim Plaintiff.* | § | 116th JUDICIAL DISTRICT |

## NOTICE OF CANCELLATION OF HEARING ON PLAINTIFF'S MOTION
## FOR SCHEDULING CONFERENCE

Plaintiff WattStock LLC, serves this Notice of Cancellation of Hearing on Plaintiff/Counterclaim Defendant WattStock, LLC's Motion for Scheduling Conference, which was scheduled for July 2, 2021 at 10:30 a.m.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Brian N. Hail*
   Brian N. Hail
   bhail@krcl.com
   State Bar No. 08705500
   Andrew D. Robertson
   drobertson@krcl.com
   State Bar No. 24090845

901 Main St., Suite 5200
Dallas, Texas 75202
Telephone:   (214) 777-4200
Facsimile:   (214) 777-4299

**ATTORNEYS FOR PLAINTIFF/
COUNTERCLAIM DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of June, 2021, a true and correct copy of the foregoing has been forwarded to all counsel of record as follows:

VIA EFILE
Michael Cancienne
Kevin Jordan
Joseph W. ("Jeb") Golinkin II
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056

*And*

Jessica B. Pulliam
John B. Lawrence
Kirstie L. Wallace
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201

ATTORNEYS FOR DEFENDANT COUNTER-PLAINTIFF, AND THIRD-PARTY PLAINTIFF ALTA POWER LLC

Michael D. Fisse
Daigle Fisse & Kessenich, PLC
227 Highway 21
Madisonville, LA  70447

ATTORNEY FOR THIRD-PARTY DEFENDANT, GENERAL ELECTRIC INTERNATIONAL, INC.

*/s/ Brian N. Hail*
Brian N. Hail

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 54930362
Status as of 7/2/2021 9:54 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 6/30/2021 12:13:40 PM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 6/30/2021 12:13:40 PM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 6/30/2021 12:13:40 PM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 6/30/2021 12:13:40 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 6/30/2021 12:13:40 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 6/30/2021 12:13:40 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 6/30/2021 12:13:40 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 6/30/2021 12:13:40 PM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 6/30/2021 12:13:40 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 6/30/2021 12:13:40 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 6/30/2021 12:13:40 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 6/30/2021 12:13:40 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 6/30/2021 12:13:40 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 6/30/2021 12:13:40 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 6/30/2021 12:13:40 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 6/30/2021 12:13:40 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 6/30/2021 12:13:40 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 6/30/2021 12:13:40 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 6/30/2021 12:13:40 PM | SENT |

Associated Case Party: WATTSTOCK LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Connie Nims on behalf of Brian Hail
Bar No. 8705500
cnims@krcl.com
Envelope ID: 54930362
Status as of 7/2/2021 9:54 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Connie Nims | | cnims@krcl.com | 6/30/2021 12:13:40 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 6/30/2021 12:13:40 PM | SENT |
| VICKI SEDON | | vsedon@krcl.com | 6/30/2021 12:13:40 PM | SENT |

FILED
7/23/2021 2:57 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Carmen Moorer DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
| *Defendant, Counter-Plaintiff, and* | § | |
| *Third-Party Plaintiff*, | § | DALLAS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| WATTSTOCK LLC, | § | |
| *Counter-Defendant*, and | § | |
| | § | |
| GENERAL ELECTRIC INTERNATIONAL, | § | |
| INC., d/b/a GE POWER SERVICES, | § | |
| *Third-Party Defendant*. | § | 116th JUDICIAL DISTRICT |

## NOTICE OF APPEARANCE OF JOHN T. COX III

PLEASE TAKE NOTICE that Third-Party Defendant General Electric International, Inc.

("GE") hereby provides notice that attorney John T. Cox III is appearing as additional counsel of

record in this case. GE respectfully requests that copies of all pleadings, orders, notices, and other

papers filed in this action be provided to Mr. Cox as follows:

> John T. Cox III
> GIBSON, DUNN & CRUTCHER LLP
> 2001 Ross Avenue, Suite 2100
> Dallas, TX 75201
> Telephone: 214.698.3256
> Facsimile: 214.571.2923
> TCox@gibsondunn.com

DATED:  July 23, 2021                    Respectfully submitted,


                                         */s/ John T. Cox III*
                                         John T. Cox III
                                           Texas Bar No. 24003722
                                         GIBSON, DUNN & CRUTCHER LLP
                                         2001 Ross Avenue, Suite 2100
                                         Dallas, TX 75201-2923
                                         Telephone: 214.698.3256
                                         Facsimile:  214.571.2923
                                         TCox@gibsondunn.com

                                         **Counsel for Third-Party Defendant
                                         General Electric International, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of July, 2021, a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *John T. Cox III*
John T. Cox III

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cara Fitzgerald on behalf of Andrew LeGrand
Bar No. 24070132
cfitzgerald@gibsondunn.com
Envelope ID: 55656135
Status as of 7/27/2021 9:52 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vicki Sedon | | vsedon@krcl.com | 7/23/2021 2:57:56 PM | SENT |
| VICKI SEDON | | vsedon@krcl.com | 7/23/2021 2:57:56 PM | SENT |
| Connie Nims | | cnims@krcl.com | 7/23/2021 2:57:56 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 7/23/2021 2:57:56 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 7/23/2021 2:57:56 PM | SENT |

Associated Case Party: General Electric International, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew PatrickLeGrand | | ALeGrand@gibsondunn.com | 7/23/2021 2:57:56 PM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 7/23/2021 2:57:56 PM | SENT |

Case Contacts

| Name |
|------|
| Bill Merrill |
| Andrew Robertson |
| Brian N. Hail |
| Michael Cancienne |
| Cara Fitzgerald |
| Renee Rubert |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Cara Fitzgerald on behalf of Andrew LeGrand
Bar No. 24070132
cfitzgerald@gibsondunn.com
Envelope ID: 55656135
Status as of 7/27/2021 9:52 AM CST

Case Contacts

| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
|---|---|---|---|---|
| Jared Levinthal | | levinthal@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 7/23/2021 2:57:56 PM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 7/23/2021 2:57:56 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 7/23/2021 2:57:56 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |

FILED
7/23/2021 2:57 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Carmen Moorer DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
|     *Defendant, Counter-Plaintiff, and* | § | |
|     *Third-Party Plaintiff,* | § | DALLAS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| WATTSTOCK LLC, | § | |
|     *Counter-Defendant*, and | § | |
| | § | |
| GENERAL ELECTRIC INTERNATIONAL, | § | |
| INC., d/b/a GE POWER SERVICES, | § | |
|     *Third-Party Defendant.* | § | 116th JUDICIAL DISTRICT |

## NOTICE OF APPEARANCE OF ANDREW P. LEGRAND

PLEASE TAKE NOTICE that Third-Party Defendant General Electric International, Inc.

("GE") hereby provides notice that attorney Andrew P. LeGrand is appearing as additional counsel

of record in this case.  GE respectfully requests that copies of all pleadings, orders, notices, and

other papers filed in this action be provided to Mr. LeGrand as follows:

> Andrew P. LeGrand
> GIBSON, DUNN & CRUTCHER LLP
> 2001 Ross Avenue, Suite 2100
> Dallas, TX 75201
> Telephone: 214.698.3405
> Facsimile:  214.571.2960
> ALeGrand@gibsondunn.com

DATED:  July 23, 2021         Respectfully submitted,

*/s/ Andrew P. LeGrand*
Andrew P. LeGrand
  Texas Bar No. 24070132
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3405
Facsimile:  214.571.2960
ALeGrand@gibsondunn.com

**Counsel for Third-Party Defendant**
**General Electric International, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2021, a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Andrew P. LeGrand*
Andrew P. LeGrand

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cara Fitzgerald on behalf of Andrew LeGrand
Bar No. 24070132
cfitzgerald@gibsondunn.com
Envelope ID: 55656135
Status as of 7/27/2021 9:52 AM CST

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| VICKI SEDON | | vsedon@krcl.com | 7/23/2021 2:57:56 PM | SENT |
| Connie Nims | | cnims@krcl.com | 7/23/2021 2:57:56 PM | SENT |
| Vicki Sedon | | vsedon@krcl.com | 7/23/2021 2:57:56 PM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Jordan | | kjordan@jlcfirm.com | 7/23/2021 2:57:56 PM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 7/23/2021 2:57:56 PM | SENT |

Associated Case Party: General Electric International, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew PatrickLeGrand | | ALeGrand@gibsondunn.com | 7/23/2021 2:57:56 PM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 7/23/2021 2:57:56 PM | SENT |

Case Contacts

| Name |
|------|
| Bill Merrill |
| Andrew Robertson |
| Brian N. Hail |
| Michael Cancienne |
| Cara Fitzgerald |
| Renee Rubert |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Cara Fitzgerald on behalf of Andrew LeGrand
Bar No. 24070132
cfitzgerald@gibsondunn.com
Envelope ID: 55656135
Status as of 7/27/2021 9:52 AM CST

Case Contacts

| Michael D.Fisse | | mfisse@daiglefisse.com | 7/23/2021 2:57:56 PM | SENT |
|---|---|---|---|---|
| Ted Lefebvre | | ted.lefebvre@ge.com | 7/23/2021 2:57:56 PM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 7/23/2021 2:57:56 PM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 7/23/2021 2:57:56 PM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 7/23/2021 2:57:56 PM | SENT |

FILED
8/19/2021 11:08 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

CAUSE NO. DC-20-08331

| | | |
|---|---|---|
| WATTSTOCK LLC | § | IN THE DISTRICT COURT OF |
|   Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | |
|   Defendant, Counter-Plaintiff, and | § | |
|   Third-Party Plaintiff, | § | |
| | § | DALLAS COUNTY, TEXAS |
| v. | § | |
| | § | |
| WATTSTOCK LLC, | § | |
|   Counter-Defendant, and | § | |
| | § | |
| GENERAL ELECTRIC | § | |
| INTERNATIONAL, INC., d/b/a GE | § | |
| POWER SERVICES, | § | |
|   Third-Party Defendant. | § | 116th JUDICIAL DISTRICT |

## NOTICE OF SUGGESTION OF BANKRUPTCY

PLEASE TAKE NOTICE that on August 17, 2021, Wattstock, LLC (the "Debtor") commenced a voluntary case (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Bankruptcy Case is styled *In re Wattstock, LLC*, Case No. 21-31488.

PLEASE TAKE FURTHER NOTICE that the Debtor is represented in the Bankruptcy Case by Davor Rukavina, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800, Dallas, Texas 75201, who can be reached at (214) 855-7500 or drukavina@munsch.com.

PLEASE BE ADVISED that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

debtor that was or could have been commenced before the commencement of the case under [the

Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement

of the case under [the Bankruptcy Code]" and "any act to obtain possession of property of the

estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.

§§ 362(a)(1), (3) (the "Automatic Stay").

PLEASE BE FURTHER ADVISED that any action taken against the Debtor without

obtaining relief from the Automatic Stay by the Bankruptcy Court may be void *ab initio* and may

result in a finding of contempt for violation of the Automatic Stay. The Debtor reserves and retains

its statutory right to seek relief in the Bankruptcy Court from any judgment, order, or ruling entered

in violation of the Automatic Stay.


Dated: August 19, 2021.

Respectfully submitted,                    **MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Thomas Berghman
      Davor Rukavina, Esq.
      Texas Bar No. 24030781
      Thomas D. Berghman, Esq.
      Texas Bar No. 24082683
      3800 Ross Tower
      500 N. Akard Street
      Dallas, Texas  75201-6659
      Telephone: (214) 855-7500
      Facsimile: (214) 855-7584
      drukavina@munsch.com
      tberghman@munsch.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 19th day of August, 2021, a true and correct copy of this document was served via the Court's electronic notification system on all parties entitled to notice thereby.

By: /s/ Thomas Berghman
    Thomas D. Berghman, Esq.

4831-1437-0807v.1 .

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Patricia Moore on behalf of Thomas Berghman
Bar No. 24082683
pmoore@munsch.com
Envelope ID: 56459540
Status as of 8/20/2021 10:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bill Merrill | | bmerrill@susmangodfrey.com | 8/19/2021 11:08:23 AM | SENT |
| Andrew Robertson | 24090845 | drobertson@krcl.com | 8/19/2021 11:08:23 AM | SENT |
| Brian N. Hail | 8705500 | bhail@krcl.com | 8/19/2021 11:08:23 AM | SENT |
| Michael Cancienne | 24055256 | mcancienne@jlcfirm.com | 8/19/2021 11:08:23 AM | SENT |
| Kaitlyn Faucett | | kfaucett@lightfootlaw.com | 8/19/2021 11:08:23 AM | SENT |
| Jared Levinthal | | levinthal@lightfootlaw.com | 8/19/2021 11:08:23 AM | SENT |
| Natalie Sanchez | | nsanchez@lightfootlaw.com | 8/19/2021 11:08:23 AM | SENT |
| Cara Fitzgerald | | cfitzgerald@gibsondunn.com | 8/19/2021 11:08:23 AM | SENT |
| Michael D.Fisse | | mfisse@daiglefisse.com | 8/19/2021 11:08:23 AM | SENT |
| Ted Lefebvre | | ted.lefebvre@ge.com | 8/19/2021 11:08:23 AM | SENT |
| Julie Frauenhofer | | Julie.frauenhofer@ge.com | 8/19/2021 11:08:23 AM | SENT |
| Jessica Pulliam | | jessica.pulliam@bakerbotts.com | 8/19/2021 11:08:23 AM | SENT |
| John Lawrence | | john.lawrence@bakerbotts.com | 8/19/2021 11:08:23 AM | SENT |
| Kirstie Wallace | | kirstie.wallace@bakerbotts.com | 8/19/2021 11:08:23 AM | SENT |
| Jessica Aquino | | jessica.aquino@bakerbotts.com | 8/19/2021 11:08:23 AM | SENT |
| Renee Rubert | | rrubert@susmangodfrey.com | 8/19/2021 11:08:23 AM | SENT |
| Ann Requena | | arequena@lightfootlaw.com | 8/19/2021 11:08:23 AM | ERROR |
| Jeannine Peyton | | jpeyton@lightfootlaw.com | 8/19/2021 11:08:23 AM | SENT |
| Thomas Berghman | | tberghman@munsch.com | 8/19/2021 11:08:23 AM | SENT |

Associated Case Party: General Electric International, Inc.

| Name |
|------|
| Andrew PatrickLeGrand |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patricia Moore on behalf of Thomas Berghman
Bar No. 24082683
pmoore@munsch.com
Envelope ID: 56459540
Status as of 8/20/2021 10:35 AM CST

Associated Case Party: General Electric International, Inc.

| | | | | |
|---|---|---|---|---|
| John T.Cox | | TCox@gibsondunn.com | 8/19/2021 11:08:23 AM | SENT |

Associated Case Party: ALTA POWER LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kevin Jordan | | kjordan@jlcfirm.com | 8/19/2021 11:08:23 AM | SENT |
| Joseph Golinkin | | jgolinkin@jlcfirm.com | 8/19/2021 11:08:23 AM | SENT |

Associated Case Party: WATTSTOCK LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Vicki Sedon | | vsedon@krcl.com | 8/19/2021 11:08:23 AM | SENT |
| Connie Nims | | cnims@krcl.com | 8/19/2021 11:08:23 AM | SENT |
| VICKI SEDON | | vsedon@krcl.com | 8/19/2021 11:08:23 AM | SENT |