**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel: 214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com

Eric T. Haitz (Tex. Bar No. 24101851)
811 Main Street, Suite 3000
Houston, Texas 77002
Tel: 346.718.6600
EHaitz@gibsondunn.com

*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** | **Case No. 21-31488-sgj11V** |
| *Debtor.* | **Chapter 11**<br>**Subchapter V** |
| | **Adv. No. 21-03083-sgj** |
| **WATTSTOCK LLC,** | *Removed from the District Court of* |
| *Plaintiff,* | *Dallas County, Texas, 116th Judicial* |
| **v.** | *District* |
| **ALTA POWER LLC,** | **Case No. DC-20-08331** |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| **v.** | |
| **WATTSTOCK LLC,** | |
| *Counter-Defendant,* **and** | |
| **GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE** | |

**POWER SERVICES,**

  ***Third-Party Defendant.***

**GENERAL ELECTRIC INTERNATIONAL INC.'S BRIEF IN SUPPORT OF 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS ON ALTA POWER LLC'S THIRD-PARTY PETITION**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  LEGAL STANDARD .......................................................................................... 4

IV.   ARGUMENT ........................................................................................................ 5

    A.   Counts I and II: Alta Fails to Plead a Viable Contract and Tort Claim against GE under Joint-Venture, Partnership or Agency Theories of Liability ...................... 5

        1.   Alta Has Failed to Plausibly Plead a Joint-Venture or Partnership between GE and WattStock .......................................................................................... 5

        2.   Alta Has Failed to Plausibly Allege that GE Is Liable under an Agency Theory. ................................................................................................ 12

    B.   Alta Has Failed to Plausibly Allege a Claim for Unjust Enrichment (Count IV). 15

    C.   Alta Has Not Stated a Claim for Fraud or Negligent Misrepresentation (Count VII and Count VIII) ......................................................................................... 16

        1.   Alta Did Not Plead Fraud with Particularity as Required under Federal Rule of Civil Procedure 9(b). .............................................................. 16

        2.   Alta's Negligent Misrepresentation Claim Is Insufficiently Pleaded. ...... 18

    D.   Alta's Fraud And Negligent Misrepresentation Claims Are Also Legally Barred (Count VII and Count VIII) .......................................................................... 19

        1.   Alta's Fraudulent Inducement and Negligent Misrepresentation Claims Fail because Alta's Reliance Is Unjustified as a Matter of Law. .............. 19

        2.   Alternatively, the Economic-Loss Rule Bars Alta's Negligent Misrepresentation Claim. .................................................................... 21

    E.   Consequential Damages Are Not Recoverable as a Matter of Law ...................... 23

        1.   Alta Has Not Sufficiently Alleged Consequential Damages. ................... 23

        2.   Alta Is Contractually Barred from Seeking Consequential Damages. ...... 24

V.    CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

*2616 S. Loop LLC v. Health Source Home Care, Inc.*,
    201 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2006, no pet.)........................................13

*Acad. of Skills & Knowledge, Inc. v. Charter Schs., USA, Inc.*,
    260 S.W.3d 529 (Tex. App.—Tyler 2008, pet. denied)....................................................21, 23

*Ackerson v. Bean Dredging LLC*,
    589 F.3d 196 (5th Cir. 2009) ...................................................................................................5

*AIG Risk Mgmt., Inc. v. Motel 6 Operating L.P.*,
    960 S.W.2d 301 (Tex. App.—Corpus Christi 1997, no pet.) ...................................................9

*Am. Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of Am.*,
    362 F. Supp. 2d 744 (N.D. Tex. 2005) ............................................................................18, 19

*Andres Holding Corp. v. Villaje Del Rio, Ltd.*,
    Nos. 09-cv-127, 09-cv-268, 2011 WL 3444010 (W.D. Tex. Aug. 8, 2011)...........................17

*Armstrong v. Am. Home Shield Corp.*,
    333 F.3d 566 (5th Cir. 2003) .................................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................5

*BCC, Merch. Sols., Inc. v. Jet Pay, LLC*,
    129 F. Supp. 3d 440, 466–67 (N.D. Tex. 2015) ....................................................................23

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003), *modified on denial of reh'g*,
    355 F.3d 356 (5th Cir. 2003) .................................................................................................18

*Blue Gordon, C.V. v. Quicksilver Jet Sales, Inc.*,
    444 F. App'x 1 (5th Cir. 2011) ..............................................................................................24

*Bombardier Aerospace Corp. v. SPEP Aircraft Hldgs.*,
    LLC, 572 S.W.3d 213 (Tex. 2019) ........................................................................................25

*Bosarge v. Miss. Bureau of Narcotics*,
    796 F.3d 435 (5th Cir. 2015) ...................................................................................................5

*Bowgene Fluidics, Inc. v. Alfa Laval Dortmund GmbH*,
    CV H-11-2414, 2012 WL 13042501 (S.D. Tex. Mar. 22, 2012)...........................................7, 8

*Brown v. Aetna Life Ins. Co.*,
    No. 13-cv-131, 2013 WL 3442042 (W.D. Tex. July 8, 2013)................................................23

ii

# TABLE OF AUTHORITIES

Page(s)

*United States ex rel. Capshaw v. White*,
   12-cv-4457, 2018 WL 6068806 (N.D. Tex. Nov. 20, 2018) ...................................................17

*Cass v. Stephens*,
   156 S.W.3d 38 (Tex. App.—El Paso, 2004).........................................................................22

*In re Cavu/Rock Properties Project I, LLC*,
   516 B.R. 414 (Bankr. W.D. Tex. 2014), *aff'd*,
   530 B.R. 349 (W.D. Tex. 2015), *aff'd*,
   637 F. App'x 123 (5th Cir. 2016) ....................................................................................7, 12

*D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*,
   973 S.W.2d 662 (Tex. 1998) ...............................................................................................21

*Davidson v. AT&T Mobility, LLC*,
   3:17-CV-0006-D, 2018 WL 4075722 (N.D. Tex. Aug. 27, 2018) .........................................13

*Derrick Petroleum Services v. PLS, Inc.*,
   CIV.A. H-14-1520, 2014 WL 7447229 (S.D. Tex. Dec. 31, 2014)......................6, 7, 9, 12, 15

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) .................................................................................................5

*Doe v. YUM! Brands, Inc.*,
   01-19-00844-CV, 2021 WL 5113021
   (Tex. App.—Houston [1st Dist.] Nov. 4, 2021) ....................................................................15

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333, 338 (5th Cir. 2008) ........................................................................................11

*Emtel, Inc. v. Lipidlabs, Inc.*,
   583 F. Supp. 2d 811 (S.D. Tex. 2008) .............................................................................13, 14

*Exxon Mobil Corp. v. Rincones*,
   520 S.W.3d 572 (Tex. 2017)................................................................................................12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009) ...............................................................................................17

*Formosa Plastics Corp., USA v. Presidio Eng'rs and Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998)..............................................................................................21, 22

*Gaines v. Kelly*,
   235 S.W.3d 179 (Tex. 2007)................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

*Guerrero v. Taylor Cnty., Texas*,
  17-CV-050, 2018 WL 1033261 (N.D. Tex. Feb. 23, 2018) ................................................16

*United States ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) .........................................................................................17

*Higher Perpetual Energy, LLC v. Higher Power Energy, LLC*,
  No. 17-cv-0414, 2018 WL 3031780 (E.D. Tex. June 18, 2018) ............................................23

*Hoss v. Alardin*,
  338 S.W.3d 635 (Tex. App. 2011).................................................................................9, 10, 11

*IAS Servs. Grp., LLC v. Buckley & Assocs., Inc.*,
  900 F.3d 640 (5th Cir. 2018) ...............................................................................................17

*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) ...............................................................................................17

*Ingram v. Deere*,
  288 S.W.3d 886 (Tex. 2009)........................................................................6, 7, 8, 9, 10

*Jim Walter Homes, Inc. v. Reed*,
  711 S.W.2d 617 (Tex. 1986).........................................................................................21, 22

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
  546 S.W.3d 648 (Tex. 2018)........................................................................................19, 20

*KIBO Software, Inc. v. Pink Coconut Boutique, LLC*,
  No. 17-cv-1196, 2018 WL 7286482 (W.D. Tex. Nov. 19, 2018)...........................................23

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
  242 S.W.3d 1 (Tex. 2007)......................................................................................................21

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
  583 S.W.3d 553 (Tex. 2019)................................................................................................20

*Miller v. CitiMortgage, Inc.*,
  970 F. Supp. 2d 568 (N.D. Tex. 2013) ............................................................................22, 23

*Myers v. Bank of Am., N.A.*,
  No. 11-cv-457, 2012 WL 1107687 (E.D. Tex. Mar. 31, 2012) .............................................23

*Nazareth Int'l, Inc. v. J.C. Penney Corp. Inc.*,
  2005 WL 1704793 (N.D. Tex. July 19, 2005) .....................................................................18

iv

# TABLE OF AUTHORITIES

Page(s)

*In re Parkcentral Glob. Litig.*,
    8884 F. Supp. 2d 464 (N.D. Tex. 2012) ...............................................................17

*In re Soporex, Inc.*,
    446 B.R. 750 (Bankr. N.D. Tex. 2011) .................................................................10

*Paynev. Wells Fargo Bank, N.A.*,
    637 F. App'x 833, 837 (5th Cir. 2016) .................................................................23

*Stephens v. Three Finger Black Shale Partn.*,
    580 S.W.3d 687 (Tex. App.—Eastland 2019) .......................................................9

*Sullivan v. Leor Energy, L.L.C.*,
    600 F.3d 542 (5th Cir. 2010) ...............................................................................15

*Super Starr Intl., LLC v. Fresh Tex Produce, LLC*,
    531 S.W.3d 829 (Tex. App.–Corpus Christi 2017) ..............................................10

*Sw. Bell Tel. Co. v. DeLanney*,
    809 S.W.2d 493 (Tex. 1991)................................................................................21

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) .................................................................................6

*Valdez v. Pasadena Healthcare Mgt., Inc.*,
    975 S.W.2d 43 (Tex. App.—Houston [14th Dist.] 1998)......................................14

*Westside Wrecker Serv., Inc. v. Skafi*,
    361 S.W.3d 153 (Tex. App.—Houston [1st Dist.] 2011) .......................7, 9, 10, 11

*Young v. City of Houston*,
    599 F. App'x 553 (5th Cir. 2015)...........................................................................5

*Zamora-Garcia v. Moore*,
    2006 WL 2663802 (S.D. Tex. Sept. 15, 2006) ....................................................22

**Statutes**

Tex. Bus. Orgs. Code §152.052 ....................................................................................6

**Rules**

Fed. R. Bankr. P. 7009...............................................................................................17

Fed. R. Civ. P. 9(b) ....................................................................................................17

## TABLE OF AUTHORITIES

<u>Page(s)</u>

Fed. R. Civ. P. 12(c) ......................................................................................................................5

# I. INTRODUCTION

Alta Power LLC ("Alta") entered into contracts with WattStock LLC ("WattStock") for used aeroderivative gas turbines that Alta planned to install at "peaker plants" to generate power during "peak demand," when the energy grid in Texas has more demand than supply. Alta alleges that it sought to be the "the first mover in this niche market." Its plan ultimately failed.

General Electric International Inc. ("GE") is a supplier of aeroderivative gas turbines, including the LM6000s that Alta determined were best suited for its plan to tap into the niche peaker plant market in Texas. Alta admits that GE was "not a named party" to any agreement with Alta, and "[a]t GE['s] insistence, Alta Power contracted directly with WattStock" for turbines. Nonetheless, Alta sued GE for breach of the Alta-WattStock contracts. Alta claims GE is responsible any breach by WattStock because GE and WattStock were in a joint venture, partnership, or agency relationship. But Alta's contract claims against GE fail as a matter of law for two reasons.

First, Alta does not and cannot allege any facts to support its joint venture and partnership claims under Texas law. Instead, it hangs its hat on a handful of allegations that GE and WattStock referred to themselves as "partners." But the Texas Supreme Court has made clear that business entities that colloquially refer to themselves as "partners" do not create a legally binding joint venture or partnership absent some other conduct manifesting an intent to do so. Alta does not allege that GE or WattStock took *any* of the actions required by Texas law to express an intent to form a joint venture or partnership.

Second, Alta does not and cannot allege the type of control necessary to establish an agency relationship between GE and WattStock. At most, Alta alleges in conclusory fashion that "GE controlled WattStock" and was in "complete control" of the relationship. But even that threadbare conclusion is contradicted by Alta's admission that the contract between GE and WattStock

1

expressly states that the parties "do not intend" to create "any partnership" or "agency," and "[n]either party shall have the right or power to bind the other party without the written consent of such other party." APP25.

In addition to its legally defective contract claims, WattStock also asserts claims against GE for unjust enrichment, fraud, and negligent misrepresentation. But these tag-along tort claims are not plausibly pleaded—Alta's third-party complaint is peppered with group pleadings that lump GE and WattStock together and fall far short of alleging facts with sufficient particularity to state fraud-based claims against GE under Rule 9(b)'s heightened pleading standard. Moreover, Alta could not, as a matter of law, have justifiably relied on any oral statements by GE because Alta's contracts expressly disclaim any such reliance.

All of Alta's claims should be dismissed under Rule 12(c). If any of Alta's claims survive, however, its request for consequential damages should be dismissed, and struck from its complaint, for a separate and independent reason: The very contracts that Alta seeks to enforce against GE plainly bar any claim for consequential damages against any "party, their respective officers, directors, partners, employees, representatives, contractors or subcontractors." The parties should not be forced to litigate a claim for consequential damages that Alta contractually agreed to waive.

## II.    FACTUAL BACKGROUND

GE manufactures and sells aeroderivative power generation equipment—gas turbines (called "aeroderivatives" because they are derived from engines that power aircraft) and their associated "packages," which include associated equipment necessary to generate electricity. APP32.. Aeroderivative gas turbines have niche value in the energy market because they can be deployed quickly to meet excess power demands when the energy grid is strained. APP31. In June 2017, WattStock and GE entered into a Memorandum of Understanding ("MOU") for GE to provide WattStock with parts, engineering, and related services for used GE aeroderivative gas

turbines, which WattStock would proceed to sell to their ultimate users. APP22.

Alta alleges that it decided to develop a business plan to purchase such used gas turbines as power production equipment in April 2018. APP28. Alta planned to use these turbines to produce electrical power that it would market to Texas consumers and that its goal depended upon it being a "first mover" in the Texas market. APP32. Alta alleges it recognized that this process was "complex" and posed "high entry costs" as it needed to locate used gas turbines around the world successfully, obtain sufficient financing, timely negotiate prices within its budget and acquire the turbines, obtain any necessary refurbishing, and identify strategic areas within Texas for energy plants—all before being outstripped by competitors. APP32.

Alta alleges that it met with potential suppliers, including WattStock, GE, and other companies that refurbished used aeroderivative gas turbines, and ultimately signed contracts with WattStock, including a February 2019 Master Agreement and a December 2019 Limited Notice to Proceed ("LNTP"). APP72–APP131; APP37; APP45. Both Alta and WattStock were represented by counsel in connection with the negotiation and execution of those agreements. *E.g.*, APP81. Under the terms of the agreements, WattStock was obligated to locate used gas turbine equipment packages available for purchase and refurbish the necessary equipment. APP81. Although GE refurbished gas turbines for WattStock under the preexisting MOU, GE was not a party to the Alta-WattStock agreements. *See generally* APP72; APP36. Indeed, Alta alleges that GE expressly refused to enter a contract with Alta and instead "insist[ed]" that Alta contract directly with WattStock. APP36.

Alta's relationship with WattStock unfortunately soured. Alta and WattStock repeatedly disagreed over the propriety of "mark up" prices, which Alta refused to pay. APP40. Alta also alleges that it did not anticipate third-party sellers of the used turbines would demand that Alta

reimburse them for certain termination fees—which it claims WattStock failed to list in the purchase prices. APP38–APP39. During this same period, Alta was embattled in threatened trademark litigation by a competitor that allegedly led to a loss in critical financing. *Id*. ¶¶ 79–81. Alta's business plan ultimately failed.

In July 2020, WattStock sued Alta in Texas state court for breach of contract, alleging that Alta had repeatedly failed to obtain project financing or adhere to closing deadlines, failed to pay amounts owed to WattStock under their agreements, and terminated their agreements in June 2020 without cause. APP65. Alta later filed an amended answer and third-party petition, asserting counterclaims against WattStock and claims against GE for breach of contract, unjust enrichment, fraud, and negligent misrepresentation. *See generally* APP27–APP55. GE answered and filed a Rule 91(a) motion seeking dismissal on the basis that Alta had not stated claims under Texas's generous pleading standard. The state court denied GE's motion.

On August 17, 2021, WattStock filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (Case No. 21-31488), and the state court proceedings were automatically stayed. On November 9, 2021, WattStock removed this matter to the United States District Court for the Northern District of Texas, which referred the matter to the Bankruptcy Court pursuant to the standing order of reference. Alta filed a motion to withdraw the reference, which remains pending before the District Court (Case No. 3:21cv03183). GE now files its 12(c) motion for judgment on the pleadings seeking judgment on all of Alta's claims against it.

## III. LEGAL STANDARD

Where, as here, a party challenges the sufficiency of a complaint after filing an answer, courts treat such motions as motions for judgment on the pleadings. *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015). A party may move for judgment on the pleadings any time

after "pleadings are closed–but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

Although the court must accept all well-pleaded facts in the pleadings as true, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (evaluating a Rule 12(c) motion). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto." *Id.* at 440 (internal quotation marks and citation omitted). But a court may also consider those documents that are incorporated by reference into the complaint without converting the motion into one for summary judgment. *Id.*

## IV.     ARGUMENT

### A.     Counts I and II: Alta Fails to Plead a Viable Contract and Tort Claim against GE under Joint-Venture, Partnership or Agency Theories of Liability

Alta alleges three theories by which it seeks to hold GE liable for WattStock's alleged breach of contract or tortious conduct: partnership, joint-venture, and agency. But Alta does not— and cannot—plausibly allege that GE and WattStock had a partnership, joint-venture, or agency relationship. All of Alta's claims should be dismissed.

### 1.     Alta Has Failed to Plausibly Plead a Joint-Venture or Partnership between GE and WattStock.

To determine whether a joint venture or partnership has been created under Texas law, courts employ a five-factor test, asking whether *each participant* in the alleged joint venture or partnership: (1) shares in the profits of the business, (2) has expressed intent to be a partner, (3) has the right of control, (4) shares in the losses or liabilities, and (5) has contributed money or property to the business. *Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009) (citing Tex. Bus. Orgs. Code § 152.052). No single factor is dispositive; courts assess the "totality of the circumstances." *Id.* at 898.

When a party offers evidence of just one factor, that "normally will be insufficient to establish the existence of a partnership" or joint venture. *Id.* The party asserting the partnership or joint venture has the burden of proving its creation. *Derrick Petroleum Servs. v. PLS, Inc.*, CIV.A. H-14-1520, 2014 WL 7447229, at *3 (S.D. Tex. Dec. 31, 2014). Where, as here, a party claims that a putative partner is estopped from denying the existence of a partnership based on its representations to others, courts consider the factors noted above in determining whether that party's reliance on the representation was reasonable. *See id.* at *14.

Alta has failed to plausibly allege even a single factor suggesting a joint venture or partnership between GE and WattStock.[1] Starting with the first and third factors—that the parties shared profits and control of the entity, which are considered the "two most important" for partnership formation—Alta's allegations fall woefully short. *Bowgene Fluidics, Inc. v. Alfa Laval Dortmund GmbH*, CV H-11-2414, 2012 WL 13042501, at *4 (S.D. Tex. Mar. 22, 2012). For instance, on the profits factor, Alta does not (and cannot) even try to claim that WattStock and GE

---

[1]     While Alta offers no factual allegations on most of the partnership factors, it does assert bald legal conclusions regarding the existence of a partnership. *See* APP33 ("GE partnered with WattStock, a group of former GE executives."). This is insufficient as a matter of law. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (internal quotation and citation omitted)).

"pooled their profits and then divided them among themselves or were entitled to an accounting regarding each other's profits." *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166–67 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

With respect to the third factor—that each participant has an "equal right to control and manage" the partnership, *Ingram*, 288 S.W.3d at 901—Alta undermines its own claim by alleging that GE was in "complete control" of the relationship with WattStock.  APP33; APP48 (stating in a conclusory manner that "the language of the MOU shows GE controlled WattStock").  Even accepting this conclusory allegation as true—which would be inappropriate under *Iqbal*— "complete control" by GE would actually *negate* the existence of any joint venture or partnership.[2] *See, e.g.*, *In re Cavu/Rock Properties Project I, LLC*, 516 B.R. 414, 419 (Bankr. W.D. Tex. 2014) (ruling that a party had not established existence of partnership where there was some evidence that one party exercised "some control over certain aspects of the business," but that its control was "limited and less extensive" than its putative partner), *aff'd*, 530 B.R. 349 (W.D. Tex. 2015), *aff'd*, 637 F. App'x 123 (5th Cir. 2016).

If that were not enough, Alta also admits that GE's and WattStock's MOU expressly states that the parties "do not intend this MOU to create any partnership, corporation, agency or fiduciary relationship among them.  Neither party shall have the right or power to bind the other party without the written consent of such other party."  APP25.  In *Bowgene*, a court interpreted similar language in which the parties' agreement stated that "[n]either Bowgene or Anderson, or its employees or representatives may make commitments of any type that would be binding on the

---

[2]      Alta does not allege that WattStock exercised any control over the alleged joint venture or partnership, and it certainly does not allege the type of control necessary under Texas law, such as the ability to write checks on the business's checking account, control or access its books, exercise authority over its operations, or receive and manage all of the business assets or monies.  *Cf. Ingram*, 288 S.W.3d at 901; *accord Derrick Petroleum*, 2014 WL 7447229, at *15 (collecting Texas case law).

second party. . . without the express written consent of the second party." 2012 WL 13042501, at *4. The court ruled, based on this language, that the "control factor clearly weighs against the existence of a partnership." *Id.* (granting 12(b)(6) motion for claim premised on existence of partnership). The same is true here.

On the fourth and fifth factors, Alta offers nothing. Alta's complaint contains no allegations that GE and WattStock agreed to, or actually did, share losses or liabilities (factor four) or contribute money or property to the alleged joint venture or partnership (factor five). The mere fact that GE and WattStock are alleged to have each performed a role in the Alta project does not satisfy the requirement that each have contributed "money or property" to a joint venture, as "every business relationship inherently requires businesses to work together." *Bowgene*, 2012 WL 13042501, at *3–4.

Alta does not allege any facts satisfying four of the five factors that this Court must consider to determine the existence of a joint venture or partnership, and its claims against GE based on these theories of liability should thus be dismissed. *See, e.g.*, *id.* (dismissing breach-of-fiduciary-duty claim premised on existence of partnership). Although Alta attempts to allege that GE and WattStock "expressed intent to be partners" (factor three), "normally [this factor alone is] insufficient to establish the existence of a partnership." *Ingram*, 288 S.W.3d at 898. The Texas Supreme Court has made clear that "[t]he terms used by the parties in referring to the arrangement do not control, and merely referring to another person as 'partner' in a situation where the recipient of the message would not expect the declarant to make a statement of legal significance is not enough." *Id*. at 900. Courts have consistently applied this rule,[3] particularly "because the term

---

[3]    *See Westside Wrecker*, 361 S.W.3d at 170; *accord Derrick Petroleum*, 2014 WL 7447229, at *14; *Stephens v. Three Finger Black Shale Partn.*, 580 S.W.3d 687, 711 (Tex. App.—Eastland 2019, no pet.); *Hoss v. Alardin*, 338

'partner' is regularly used in common vernacular and may be used in a variety of ways." *Westside Wrecker*, 361 S.W.3d at 170. What matters is not only what was said, but also "the context in which the statement was made, and the identity of the speaker." *Id.* Colloquially using the term "partners" to describe a business relationship—without taking any action consistent with forming a legal partnership—is insufficient as a matter of law.

In *Ingram*, for example, the Texas Supreme Court refused to find the existence of a partnership despite a putative partner stating that "this was a joint venture, or that we were partners, or we were doing this together" because the business did not change its name, the party claiming the existence of a partnership did not sign legal documents on behalf of the business, neither party filed taxes as a partner, and the parties maintained separate insurance. 288 S.W.3d at 901; *see also Westside Wrecker*, 361 S.W.3d at 170 (holding that the parties' references to each other as partners were legally irrelevant where they took none of actions identified in *Ingram* as consistent with forming a legal partnership). Alta does not allege that GE or WattStock took *any* of the actions that *Ingram* makes clear are prerequisites to establishing an intent to form a joint venture or partnership. Alta cannot allege that GE and WattStock changed their names or registered an assumed partnership name, opened a bank account together or gave each other signatory authority over their own bank accounts, obtained partnership insurance, or filed partnership tax returns. In fact, WattStock's Schedules of Assets and Liabilities, which was filed under oath under penalty of perjury, list GE as a creditor, not a joint-venture partner (Dkt. 49). Similarly, WattStock's Statement of Financial Affairs requires disclosure of business relationships like partnerships and a list of who has control over WattStock's bank accounts, but it does not list GE (Dkt. 50). This

---

S.W.3d 635, 644–45 (Tex. App.—Dallas 2011, no pet.); *AIG Risk Mgmt,. Inc. v. Motel 6 Operating L.P.*, 960 S.W.2d 301, 307 (Tex. App.—Corpus Christi 1997, no pet.).

Court may take judicial notice of these bankruptcy filings. *See In re Soporex, Inc.*, 446 B.R. 750, 764 n.12 (Bankr. N.D. Tex. 2011) (noting that the "Court is permitted to take judicial notice of documents filed in the bankruptcy case").

Alta's allegations, viewed individually or collectively, reflect nothing more than GE and WattStock colloquially referring to themselves as partners. Under *Ingram*, that is not enough. 288 S.W.3d at 898. Even so, for the reasons explained in the chart that follows, none of the five alleged statements would allow this Court to reasonably infer the existence of a partnership.

| Alta's Allegation | Legal Defect |
|---|---|
| "GE and WattStock work 'hand-in-hand' as 'partners' to provide the 'TRUEpackage$^{TM}$' or Certified Turbine Power—CTP$^{TM}$ system, '[t]he only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry.'" APP33 & nn.1-2. | This statement does not plausibly support an inference that both WattStock and GE intended to create a partnership. Alta cites two websites in its footnotes, but only one says anything about working "hand-in-hand" and being "partners"—*WattStock's* website.[4] That is not enough. *See Hoss*, 338 S.W.3d at 644; *Westside Wrecker*, 361 S.W.3d at 168. |
| "Consistent with their relationship, GE and WattStock held themselves out publicly and privately as 'partners' both orally and in writing." APP33. | This bare allegation in no way suggests these statements were made "in a situation where the recipient of the message would . . . expect the declarant to make a statement of legal significance." *Ingram*, 288 S.W.3d at 900. |
| "During these meetings, GE and WattStock described themselves as 'partners.' GE made it clear that the only way Alta Power could obtain the TRUEpackage$^{TM}$ equipment certification and warranty was by working with the GE and WattStock partnership." APP35. | Alta offers no allegations suggesting that the term "partner" was used in more than a colloquial sense. *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 840 (Tex. App.–Corpus Christi 2017, no pet.) (evidence that parties referred to a "proposed partnership" and spoke of how they had enjoyed a "good partnership" over the years |

---

[4] The GE webpage Alta cites lacks any statements referring to WattStock as a "partner," nor does it state that GE was working "hand-in-hand" with WattStock. This is true of the website as it is in February 2022, as it was when the Petition was filed in February 2021, and at times previous to the Petition being filed. *See* APP33 n.1; APP4–APP17. And in any case, even if GE had, in some unspecified context, referred to how WattStock was a "partner" and that it was working "hand-in-hand" with WattStock, these statements without more would be insufficient as a matter of law to establish an intent to enter a partnership. *Ingram*, 288 S.W.3d at 898.

| | was insufficient because "the parties' use of the term 'partner' was colloquial, not legal"). |
|---|---|
| "As part of its due diligence, Deutsche Bank requested a meeting with WattStock. WattStock met with Deutsche Bank and during these meetings, **WattStock** confirmed that GE and WattStock were 'partners.'" APP42 (emphasis added). | At most, this reflects that *WattStock* expressed an intent that GE and WattStock be considered partners, which is not sufficient. *See Hoss*, 338 S.W.3d at 644 ("[T]here must be evidence that *both* parties expressed their intent to be partners."); *Westside Wrecker*, 361 S.W.3d at 168 ("Skafi and Cannon's printed statement on checks is evidence of their own intent to be partners but is not evidence that Westside expressed an intent to be partners."). |
| "Deutsche Bank formally asked GE to provide appropriate assurances. On July 31, 2019, GE responded to this request in a letter confirming that if WattStock failed to meet its contractual obligations, GE would step in since GE and WattStock are partners in this venture." APP42–APP43. | The letter, which is incorporated by reference into Alta's complaint, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008), flatly contradicts Alta's assertions, as it states GE and WattStock agreed to "work together to refurbish previously owned aero-derivative power units" and "WattStock would take the lead, and GE will perform engineering and engine overhaul work as subcontractor to WattStock."[5] APP18. |

Finally, the MOU that Alta repeatedly references plainly contradicts its claim that WattStock and GE intended to create a joint venture or partnership. Courts consider the language of an MOU in determining whether a partnership has been formed. *See, e.g.*, *Derrick Petroleum*, 2014 WL 7447229, at *14. While Alta asserts in a conclusory manner that the MOU's language

---

[5] With this context, the only plausible inference that may be drawn from GE's statement that it could "assume responsibility to complete any outstanding work, **subject to several considerations**" if "WattStock fail[s] to meet its contractual obligations" is that GE had the capacity to perform the role of either being the prime contractor or subcontractor for these transactions and could consummate the transaction if WattStock failed to perform as the prime contractor—"subject to several considerations." Contrary to Alta's description of the letter, GE did not provide a blank-check commitment to step in no matter what if WattStock failed to perform. It stated that the considerations for whether GE could step in would likely include, among others, "(1) the absence of any legal or access issues; (2) GE and Alta being able to agree to a revised scope of work, associated cost, and terms and conditions, (3) GE's assessment that there are no insurmountable engineering or manufacturing issues, and (4) any applicable Purchase Orders or Change Orders should be modified and reassigned to GE." *Id.* Thus, the letter does not support Alta's assertion that GE expressed an intent to form a partnership, and instead reflects that GE accurately described how GE and WattStock were working together on these types of deals and GE *could* step in if certain conditions were met.

in paragraph 6(b) expressly disclaiming any partnership is a "sham or subterfuge designed to conceal the true legal status of GE/WattStock" and that unspecified "extrinsic evidence shows actual control by GE over WattStock," APP48, this Court must credit the parties' words for what they say—that WattStock and GE never created any partnership—notwithstanding Alta's threadbare allegations to the contrary.  *See In re Cavu*, 516 B.R. at 419 (noting among evidence negating the existence of a partnership that the parties' agreement stated, "[n]othing in this Agreement shall be construed, deemed or interpreted by the parties or by any third person to create the relationship of principal and agent or of partnership, joint venture or any other association other than that of debtor-creditor between the parties.").

Even if the MOU had stated an intent to form a partnership, such language would not be dispositive.  *See Derrick Petroleum*, 2014 WL 7447229, at *14 (concluding that even an MOU that explicitly referred to the parties as "joint venture partners" was insufficient evidence of an intent to create a partnership considering the broader context of the parties' relationship).  In *Derrick Petroleum*, as here, the parties did not take any other actions consistent with the intent to form a partnership, and the court found that the reference to "partners" was not enough.  *Id.* at *18.

##### 2.     Alta Has Failed to Plausibly Allege that GE Is Liable under an Agency Theory.

Alta's claim that GE is liable for WattStock's torts and breaches under theories of actual or ostensible agency fare no better.  The "two essential elements" of an actual agency relationship are "[a]uthority to act on the principal's behalf and control."  *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017).  "[T]he key question is whether the principal has the right to control the agent with respect to the details of that conduct."  *Id.*  A right of control "requires more than a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe

alterations and deviations . . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 837 (S.D. Tex. 2008). "Agency is not presumed; a party alleging the existence of an agency relationship bears the burden of proving it." *Exxon*, 520 S.W.3d at 589. And a third party's "good faith belief" that a person with whom it is dealing is the agent of another is not enough to hold the purported principal liable for the agent's actions. *2616 S. Loop LLC v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Alta has failed to allege facts sufficient to establish the "control" element of agency, and accordingly, its claims for vicarious liability as to WattStock's alleged breaches and torts fail as a matter of law. As explained above, at most, Alta asserts unadorned legal conclusions that "GE controlled WattStock" and was in "complete control" of the relationship. APP33, APP48.[6] But these assertions are "mere labels and conclusions, which are insufficient to plausibly plead a claim." *Davidson v. AT&T Mobility, LLC*, 3:17-CV-0006-D, 2018 WL 4075722, at *4 (N.D. Tex. Aug. 27, 2018) (dismissing complaint where agency allegations included such statements as that "AT&T was able to control . . . and did control . . . the actions of Defendant" and that the defendant was "'working' for AT&T in his capacity as an agent"). To support this threadbare legal conclusion, Alta alleges that GE was granted the "right under its MOU with WattStock to force WattStock to sell GE any gas turbine purchased pursuant to the TRUEpackage™ program." APP51. But Alta quotes no such provision in the MOU, and in fact, there is none. Rather, the MOU indicates that WattStock's role in the relationship is to "purchase, refurbish and res[ell] existing LM2500 and LM6000 Gas Turbines," and it clarifies that it "is not intended to bind either

---

[6]  Alta also offers the unsupported statement that "extrinsic evidence also shows actual control by GE over WattStock." APP48. What this "extrinsic evidence" is remains unstated, and this conclusory allegation cannot establish an agency relationship.

Party to sell any equipment, parts or services to the other" at all.  APP22.  Alta does not and cannot point to anything in the MOU giving GE the right to supervise or direct WattStock's work or dictate how it must complete any of its required tasks.  And Alta does not allege that GE had the "right to order the work [WattStock performed] stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations"—a level of control that itself is insufficient to establish an agency relationship.  *Emtel*, 583 F. Supp. 2d at 837.

Alta's alternative theory of ostensible agency likewise is inadequately pleaded.  "To establish a claim of ostensible agency, a plaintiff must show that (1) he had a reasonable belief in the agent's authority, (2) his belief was generated by some holding out by act or neglect of the principal, and (3) he was justified in relying on the representation of authority." *Valdez v. Pasadena Healthcare Mgmt., Inc.*, 975 S.W.2d 43, 46 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  In determining whether such a claim is established, "only the conduct of the principal is relevant." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).  The standard is that of a "reasonably prudent person, using diligence and discretion to ascertain the agent's authority," and thus the court must "examine the conduct of the principal and the reasonableness of the third party's assumptions about authority."  *Id.* at 183.

Alta's claims fall far short of satisfying this standard.  Alta alleged only that GE called WattStock its "partner" and represented that WattStock was its "Authorized Service Provider."[7]

---

[7]     Alta argues that "GE is estopped from denying liability for WattStock's breaches and torts" because Alta "justifiabily [sic] relied on the[] representations" that GE and WattStock were "partners."  APP47–APP48.  But Texas law does not support estoppel here.  *See Derrick Petroleum*, 2014 WL 7447229, at *14 (rejecting defendant's estoppel argument because defendant was "experienced in business and presumed to know Texas law," so "[t]heir reliance on a representation that the parties were partners was not reasonable").  As an entity formed to service the Texas energy market, APP28–APP29, Alta is charged with the knowledge of Texas law on partnerships and agency, and its reliance on statements that were not made in a context of legal significance renders its reliance on GE's alleged assurances unreasonable and insufficient, as a matter of law, to establish estoppel.

APP47.  But it is unclear how these allegations support a reasonable belief that GE held out WattStock as its *agent* as opposed to its business counterpart.  In *Doe v. YUM! Brands, Inc.*, the court rejected a similar attempt to conflate evidence suggesting only a business relationship between two entities as supporting an ostensible agency.  01-19-00844-CV, 2021 WL 5113021, at *14 (Tex. App.—Houston [1st Dist.] Nov. 4, 2021) (holding that "under Texas law, evidence of a relationship does not by itself evidence an agency relationship").  Here, Alta offers no facts supporting that a "reasonably prudent person" in the position of signing a multimillion-dollar deal and "using diligence and discretion to ascertain the agent's authority" would reasonably rely on the facts as alleged here to conclude that WattStock was GE's agent.  In sum, Alta's ostensible agency theory fails for the same reason as its partnership and joint-venture theories: It is unreasonable as a matter of law for Alta to have concluded that GE was WattStock's principal as opposed to its business counterpart.  Accordingly, Alta's claims based on ostensible agency fail, and GE is not estopped from denying liability for WattStock's breaches and torts.

**B.    Alta Has Failed to Plausibly Allege a Claim for Unjust Enrichment (Count IV)**

To survive a Rule 12(c) motion on an unjust-enrichment claim, a plaintiff must plead facts sufficient to lead to the plausible inference that the defendant "obtained a benefit from [the plaintiff] by fraud, duress, or the taking of an undue advantage."  *Sullivan v. Leor Energy, L.L.C.*, 600 F.3d 542, 550 (5th Cir. 2010).

Alta's complaint purports to state a claim for $1.5 million against GE, but the facts needed to support its claim are absent.  The unjust-enrichment count consists of three sentences that simply state that all prior paragraphs are incorporated into the count,  that "GE has been unjustly enriched in the amount of $1.5 million to the detriment of Alta Power," and that "Alta Power demands restitution of all amounts GE has been [un]justly enriched." APP49.  The $1.5 million seems to reference the same amount that appears just before the unjust-enrichment count in which Alta

vaguely alleges that "Alta Power paid GE/WattStock $1.5 million related to the Nuh Cemento project for GE to acquire long-lead hardware, start engineering activities, and deliver preliminary drawings." APP49. If this is the basis of the figure, Alta has failed to plausibly plead a claim for unjust enrichment for two reasons.

First, Alta has not plausibly alleged that GE engaged in any wrongful conduct related to the $1.5 million. Indeed, Alta does not allege *any* conduct, wrongful or not, by GE at all related to the $1.5 million. Second, Alta fails to plausibly allege that GE, as opposed to WattStock, obtained the $1.5 million benefit. Instead, Alta simply lumps GE and WattStock together, and alleges that "GE/WattStock" were paid $1.5 million. APP49. This allegation is impermissibly vague and insufficient to survive dismissal. *See Guerrero v. Taylor Cnty., Tex.*, 17-CV-050, 2018 WL 1033261, at *2 (N.D. Tex. Feb. 23, 2018) (noting that complaint failed to "reach the level of plausible pleading" where certain allegations lumped multiple defendants together).

**C.      Alta Has Not Stated a Claim for Fraud or Negligent Misrepresentation (Count VII and Count VIII)**

**1.      Alta Did Not Plead Fraud with Particularity as Required under Federal Rule of Civil Procedure 9(b).**

Alta's pleadings do not meet the baseline plausibility pleading standard, much less the heightened pleading requirement for fraud claims under Federal Rule of Civil Procedure 9(b). To establish a claim for fraudulent inducement, plaintiffs must show: (1) a material misrepresentation; (2) that was false and either known to be false at the time made or made without knowledge of the truth; (3) that was intended to be and was relied upon by the injured party; and (4) that the injured party's reliance caused its injury. *IAS Servs. Grp., LLC v. Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018).

Rule 9(b) requires that plaintiffs plead facts establishing those elements with particularity. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009 (applying Rule 9(b) to bankruptcy proceedings). "This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation omitted). The requirement for specificity extends to the scienter element as well. "The complaint must thus set forth specific facts supporting an inference of fraudulent intent." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016). This "requires more than a simple allegation that a defendant had fraudulent intent." *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, Nos. 09-cv-127, 09-cv-268, 2011 WL 3444010, at *3 (W.D. Tex. Aug. 8, 2011) (internal quotation omitted).

Further, both the Fifth Circuit and this district have held that to satisfy Rule 9(b), "[p]arties cannot merely 'lump all defendants together.'" *United States ex rel. Capshaw v. White*, 12-cv-4457, 2018 WL 6068806, at *4 (N.D. Tex. Nov. 20, 2018) (quoting *In re Parkcentral Glob. Litig.*, 8884 F. Supp. 2d 464, 470 (N.D. Tex. 2012)). "There has to be some work that segregate[s] the alleged wrongdoing of one from another." *Id.* (quoting *Parkcentral*, 884 F. Supp. 2d at 471); *see also United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008) (upholding dismissal where relators "made broad claims against numerous defendants without identifying specifications of specific individuals at specific times that would constitute fraud against the government" (internal quotation omitted)).

Alta falls short on each of these requirements. Alta alleges that at some point during meetings with Alta and WattStock, GE represented that it was "partners" with WattStock. But Alta never identifies the GE representative who made such statements or when the representations

were made. Likewise, while Alta alleges that GE represented it would "stand behind" WattStock, it does not provide any details regarding who made that statement or when or where it was made. Alta also does not plead any facts supporting a reasonable inference of scienter—it just offers generic assertions of bad intent. And Alta's fraud pleadings impermissibly lump GE and WattStock together as "GE/WattStock," leaving GE without notice of the specific allegations supporting Alta's fraud-based claim against it. Alta's bare-bones pleadings simply restate the elements of fraud and fail to distinguish between parties. This is insufficient to satisfy Rule 9(b).

### 2.     Alta's Negligent Misrepresentation Claim Is Insufficiently Pleaded.

While Rule 9(b) generally does not apply to negligent misrepresentation claims, courts have recognized an exception if the plaintiff has simply alleged that its fraud allegations support its negligent misrepresentation claim and the court cannot easily strip out the inadequate allegations of fraud. *Am. Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 362 F. Supp. 2d 744, 750–52 (N.D. Tex. 2005). In other words, Rule 9(b) applies to negligent misrepresentation claims—like the one in this case—that are "based on the same set of alleged facts" as the fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003), *modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (negligent misrepresentation claim must satisfy Rule 9(b)); *see also Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. 304-cv-1265, 2005 WL 1704793, at *3 (N.D. Tex. July 19, 2005). Rule 9(b)'s heightened pleading standard applies here because Alta's negligent misrepresentation claim is inextricably intertwined with its fraud allegations.

To support its negligent misrepresentation claim, Alta simply "incorporates each of the foregoing paragraphs [in its complaint] by reference." APP52. The allegations of fraud are so intertwined in the factual pleadings that the court would be required to engage in a "line-by-line

redaction" in a dismissal order to divine which statements cannot be used in support of the negligent misrepresentation claim. *Am. Realty Trust,* 362 F. Supp. 2d at 752. Because modification of a complaint by such a complex order "is unlikely to provide the defendant with a simple, concise, and direct statement of allegations it faces, as required by the Federal Rules," dismissal is appropriate. *Id.*

**D.      Alta's Fraud And Negligent Misrepresentation Claims Are Also Legally Barred (Count VII and Count VIII)**

**1.      Alta's Fraudulent Inducement and Negligent Misrepresentation Claims Fail because Alta's Reliance Is Unjustified as a Matter of Law.**

Alta's fraudulent inducement and negligent misrepresentation claims also fail for a separate reason: Alta's reliance is unjustifiable as a matter of law under the facts as alleged. The Texas Supreme Court recently clarified that reliance may be unjustifiable as a matter of law in two circumstances: (a) where the parties' contract expressly contradicts the alleged representation, or (b) where red flags should have alerted the plaintiff that a statement was incorrect. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 654–55 (Tex. 2018).

While GE is not party to any contract with Alta, the Alta-WattStock contracts were a glaring "red flag" that should have alerted a sophisticated entity, like Alta, that was engaged in a multimillion-dollar transaction not to rely on GE's alleged representations as Alta interpreted them. Alta alleges that it would not have entered into the contracts with WattStock without assurances that GE and WattStock were "partners" and that GE would "stand behind" WattStock. APP47, APP50. But reliance on GE's alleged assurances is not justified as a matter of law because the plain language of the Alta-WattStock contracts contradicts any claims of reliance and should have put Alta on notice that such reliance would be unreasonable. *See Mercedes-Benz USA, LLC*

19

*v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019) (reliance on a misrepresentation "that the written contract directly and unambiguously contradicts" is a "red flag").

At the outset, the Alta-WattStock Master Agreement states that it is a contract between Alta and WattStock—by its express terms, the scope of the agreement is limited to those parties and does not include GE. And Alta admits that GE refused to contract with it. APP36. These facts directly contradict any suggestion that GE and WattStock were legal partners or that GE was party to the Alta-WattStock agreements. And, at minimum, these facts should have caused Alta to investigate the legal status of any relationship between GE and WattStock, which would have confirmed what the Alta-WattStock agreements make clear by their plain terms. For instance, the MOU expressly disclaims any partnership or agency relationship between these entities. *Orca Assets G.P., LLC*, 546 S.W.3d at 654 ("[W]hen a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated."). Alta cannot plausibly claim that it justifiably relied on alleged oral statements by GE during sales meetings while turning a blind eye to these red flags.

In any event, the plain terms of the Alta-WattStock agreements, which contain a merger clause, also render Alta's alleged reliance on oral statements by WattStock or GE unreasonable. The merger clause makes clear that "[a]ny oral or written communication . . . not contained or referenced herein shall not be binding on either Party" and "[e]ach Party agrees that it has not relied on, or been induced by, any representations of the other Party not contained in the Contract." *See* APP104 ("The Contract represents the entire agreement between the Parties with respect to the Work, and supersedes in its entirety all prior agreements concerning the subject matter hereof . . . ."). So Alta's fraudulent inducement and negligent misrepresentation claims fail as a matter of law. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) ("[A] fraud claim

can be negated where a merger clause evinces a party's clear and unequivocal expression of intent to disclaim reliance on specific representations.").

### 2. Alternatively, the Economic-Loss Rule Bars Alta's Negligent Misrepresentation Claim.

Even if Alta could plausibly allege justifiable reliance, the economic-loss rule bars its negligent misrepresentation claim. Under well-settled Texas law, parties may not raise tort-based theories when their claims sound in contract. This doctrine, known as the economic-loss rule, generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. *Formosa Plastics Corp., USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 43 (Tex. 1998). The economic-loss rule dictates that when the plaintiff's only alleged harm is an economic loss caused by the defendant's failure to perform a contract, the defendant has breached a contractual duty, not a tortious one. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). As such, "[t]he focus of the rule 'is on determining whether the injury is to the subject of the contract itself.'" *Acad. of Skills & Knowledge, Inc. v. Charter Schs., USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App.—Tyler 2008, pet. denied) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)).

Negligent misrepresentation is one class of tort claim subject to the economic-loss rule. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) (per curiam). To determine whether a specific party's claims are barred, courts ask whether the claims are based on a duty and an injury independent from a contract. *Cass v. Stephens*, 156 S.W.3d 38, 68–69 (Tex. App.—El Paso, 2004, pet. denied). The nature of the injury is often determinative, and when "the injury is only the economic loss *to the subject of a contract itself*, the action sounds in contract alone." *Formosa Plastics Corp.*, 960 S.W.2d at 45 (emphasis added) (internal quotation omitted).

So the question is whether Alta's negligent misrepresentation claim arises directly from the subject of a contract. Alta's pleadings reveal that it does.

Here, Alta points to no tort duty that arises independent of the Alta-WattStock contracts. GE's alleged misrepresentations—regarding the pricing and quality of turbines, process for acquiring them, and its relationship to the entity acquiring the turbines—fall squarely within the subject of Alta's contracts with WattStock. *See Zamora-Garcia v. Moore*, 2006 WL 2663802, at *12 (S.D. Tex. Sept. 15, 2006) (dismissing negligent misrepresentation claims because plaintiffs "request[ed] identical damages for their breach of contract and negligent misrepresentation claims" and thus "failed to allege an injury independent of their damages for breach of contract"); *Jim Walter Homes, Inc.*, 711 S.W.2d at 618 ("When the injury is only the economic loss to the subject of a contract itself," the plaintiff cannot proceed with a negligence or fraud cause of action.).

Even assuming that Alta had alleged that GE owed a duty independent of the contract that Alta seeks to enforce against GE, the Court still may find that the "tort claim is merely a repackaged breach of contract claim" if the claim seeks economic damages recoverable under contract. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 586–87 (N.D. Tex. 2013). Alta's negligent misrepresentation claim does exactly that. Indeed, Alta alleges the same damages for its breach-of-contract claim and negligent misrepresentation claim (through an unjust enrichment theory).[8] For both claims, Alta is seeking $1.5 million in damages for funds it allegedly paid under the Alta-WattStock Master Agreement and LNTP, and these damages flow from an alleged breach of these contracts with WattStock.[9]

---

[8]    At the state court hearing on GE's 91(a) motion, Alta represented that its unjust enrichment claim was intended to allege a form of remedy recoverable under its fraud and negligent-misrepresentation theories.

[9]    For the same reason, Alta's fraud claim is also barred by the economic loss rule. *See, e.g.*, *Payne v. Wells Fargo Bank, N.A.*, 637 F. App'x 833, 837 (5th Cir. 2016); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 466–67 (N.D. Tex. 2015).

The fact that Alta is also seeking consequential and exemplary damages does not alter the analysis. Courts have held that the economic-loss rule applies even when plaintiffs seek damages "incurred in reliance on the alleged representations," as long as plaintiffs are requesting economic damages recoverable in contract. *Miller*, 970 F. Supp. 2d at 587; *see also Acad. of Skills & Knowledge, Inc*, 260 S.W.3d at 541 ("[I]t is not the nature of the damages sought, but the nature of the injury, here economic losses, that affects the applicability of the economic loss rule."). Because Alta's negligent misrepresentation claim seeks to recover for economic loss flowing from an alleged breach of Alta's contracts with WattStock, its tort claim is barred. *See, e.g.*, *KIBO Software, Inc. v. Pink Coconut Boutique, LLC*, No. 17-cv-1196, 2018 WL 7286482, at *7 (W.D. Tex. Nov. 19, 2018); *Myers v. Bank of Am., N.A.*, No. 11-cv-457, 2012 WL 1107687, at *3 (E.D. Tex. Mar. 31, 2012).

**E.    Consequential Damages Are Not Recoverable as a Matter of Law**

    **1.    Alta Has Not Sufficiently Alleged Consequential Damages.**

Alta's claims for consequential damages also fail as a matter of law, and should be struck from the complaint, because Alta does not and cannot allege any facts to support recovery of such damages. *See Brown v. Aetna Life Ins. Co.*, No. 13-cv-131, 2013 WL 3442042, at *5 (W.D. Tex. July 8, 2013) (granting motion to dismiss punitive damages requests that were statutorily barred); *see also Higher Perpetual Energy, LLC v. Higher Power Energy, LLC*, No. 17-cv-0414, 2018 WL 3031780, at *7 (E.D. Tex. June 18, 2018) (holding pleadings insufficient where plaintiff did not adequately allege damages). To recover consequential damages, a plaintiff must show that the alleged misconduct "proximately caused the harm." *Blue Gordon, C.V. v. Quicksilver Jet Sales, Inc.*, 444 F. App'x 1, 10 (5th Cir. 2011). "[I]t is not sufficient to show that [the plaintiff] would not have entered into the Agreement if [the defendant] had not made the alleged misrepresentations

or nondisclosures; that allegation goes to the element of reliance. Rather, [the plaintiff] must show that [the defendant's] misrepresentations or nondisclosures caused the injury [the plaintiff] suffered." *Id.* at 10–11. Alta's complaint misses that mark.

Here, Alta alleges generally that it "has wasted at least 10 million dollars" due to GE's alleged fraudulent inducement. But it offers no detail as to what generated those losses and makes no factual allegation linking any of the alleged misrepresentations to these losses. While Alta states that it could have contracted with other providers beside WattStock, it does not allege that any competitors would have offered better prices than WattStock. Alta thus has not sufficiently alleged facts that show any misrepresentations proximately caused consequential damages.

## 2. Alta Is Contractually Barred from Seeking Consequential Damages.

Setting aside Alta's pleading deficiencies, Alta's claims for consequential damages are also barred by the express terms of contracts it seeks to enforce against GE. Section 9.1(b) of the Alta-WattStock Master Agreement provides in bolded, all-caps language that "neither Party, their respective officers, directors, *partners*, employees, representatives, *contractors or subcontractors* shall be liable to the other . . . for any incidental, indirect or consequential damages arising out of or connected in any way to this agreement." APP80 (emphasis added). GE contracted with WattStock to sell parts, engineering, and related services for used aeroderivative gas turbines, and as a contractor to WattStock, Section 9.1(b) bars Alta's claims for consequential damages. Moreover, Alta's contention that GE and WattStock are "partners" also runs headlong into Section 9.1(b). Either way, Alta is contractually barred from seeking consequential damages against GE.

Texas law permits commercial parties to contractually waive remedies, and courts routinely enforce such provisions. *See Bombardier Aerospace Corp. v. SPEP Aircraft Hldgs., LLC*, 572 S.W.3d 213, 233 (Tex. 2019) (upholding contractual waiver of punitive damages and

determining that defendant's fraud did not vitiate agreement to limit damages). Alta cannot premise its claims against GE on the Alta-WattStock contracts while simultaneously ignoring the limitations in those contracts when it seeks damages. Because Alta expressly waived its right to recover consequential damages, the Court should dismiss Alta's claims for consequential damages and strike any references to such damages from Alta's complaint.

## V.    CONCLUSION

Because Alta has not stated any legally cognizable claim against GE, GE asks that this Court grant its 12(c) motion for judgment on the pleadings as to each of Alta's claims against it and as to Alta's request for consequential damages.

Dated:  February 28, 2022

Respectfully submitted,

/s/  Eric T. Haitz
John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
           ALegrand@gibsondunn.com

           and

Eric T. Haitz (Texas Bar No. 24101851)

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel:    346.718.6600
Email: EHaitz@gibsondunn.com

COUNSEL TO GENERAL ELECTRIC
INTERNATIONAL, INC.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/ Eric T. Haitz
Eric T. Haitz

*Attorney for General Electric*
*International, Inc.*

26