

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 1, 2022**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>WATTSTOCK, LLC,<br><br>　　Debtor.<br><br>WATTSTOCK, LLC, Plaintiff,<br><br>　　v.<br><br>ALTA POWER LLC, Defendant, Counter-Plaintiff, and　Third-Party Plaintiff,<br><br>　　v.<br><br>WATTSTOCK, LLC, Counter-Defendant, and<br><br>GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES, Third-Party Defendant. | §§§§§§§§§§§§§§§§§§§§§§§§ | Case No. 21-31488-sgj11V<br><br>Chapter 11<br>Subchapter V<br><br><br>Adv. No. 21-3083<br><br>*Removed from the District Court of Dallas County, Texas, 116th Judicial District*<br><br>*Cause No. DC-20-08331* |

**STIPULATED PROTOCOL REGARDING THE PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION**

Alta Power LLC ("Alta"), the Defendant (and also a Counter-Plaintiff and Third-Party Plaintiff), WattStock, LLC ("WattStock"), the Plaintiff (and also a Counter-Defendant), and General Electric International, Inc. ("GE Power"), the Third-Party Defendant, (hereinafter, collectively "Parties" or individually a "Party") have agreed to the following Protocol for the collection and production of documents in the above-captioned matter (the "Action"), including electronically stored information ("ESI").

### A.   General Principles

1. Nothing in the Protocol alters a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure and any other applicable orders and rules.

2. This Protocol does not establish any agreement as to either the appropriate temporal or subject matter scope of discovery in the Action.

3. Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

4. The production of certain documents or ESI may require adherence to special procedures under applicable laws. Nothing in this Protocol shall be interpreted to limit or excuse such adherence where it is required, and the Parties will use all reasonable efforts to produce documents and ESI in accordance both with this Protocol and with applicable laws.

5. This Protocol may be modified in the Court's discretion or by agreement of the Parties. If the Parties cannot resolve their disagreements regarding any modifications, either Party may move the Court for an order modifying or clarifying the obligations of the Parties under this Order.

6. The Parties recognize that certain documents produced by both Parties may include highly sensitive business information that is unrelated to the Parties' claims and defenses in this matter. The Parties agree to cooperate and meet and confer, to the extent requested by any Party, to resolve any issues related to such documents and redactions thereto.

7. This Protocol may only apply to the Parties in this matter, though non-parties to this Action are encouraged to adhere to them. The Parties agree to use reasonable efforts to ensure that any production of ESI by a non-party complies with the terms of this Protocol.

B. **Scope of Document Review and Production**

1. The Parties acknowledge and agree that, to the extent they possess ESI that is required to be produced pursuant to the Federal Rules of Civil Procedure, each Party shall be responsible for identifying its own relevant materials and information, whether electronic or hard copy.

2. Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processing, including but not limited to backup tapes, disks, SAN, or other forms of media, to comply with its discovery obligations in the present case.

3. The Parties agree that the following categories of ESI shall not require preservation, retention or production, except that no Party shall delete data that it reasonably believes could contain unique, relevant information to the instant matter: (a) "deleted," "slack," "fragmented," or "unallocated" data on hard drives; (b) random access memory (RAM) or other ephemeral data; (c) on-line access data such as temporary internet files, history, cache, cookies, etc.; (d) data in metadata fields that are frequently updated automatically, such as last-opened dates; (e) backup data; (f) common system and program files; and (g) Network Access and Server Activity Logs.

4. The Parties agree to cooperate and meet and confer, to the extent requested by either Party, to identify (a) the proper custodial and noncustodial data sources for collection and review and (b) additional parameters for scoping the review and production efforts (e.g., search terms, date filters/ranges, de-NISTing, de-duping, etc.) to identify documents that are potentially relevant to claims or defenses in this matter and are proportional to the needs of the case.

5. The Parties agree to negotiate regarding the custodians and data sources to be searched for relevant ESI, and may utilize a phased approach focused initially on the most accessible sources.

6. The Parties agree to negotiate the use of search terms, date filters or other culling criteria that either Party may apply to collected data to focus the Parties' review and production efforts on documents and ESI that are relevant to the claims and defenses in this matter and proportional to the needs of the case.

7. The Parties will make all reasonable efforts to ensure that any productions made are free from viruses and malware.  The Parties will take reasonable efforts to ensure that all documents and ESI they produce are decrypted, although media on which the Parties produce documents and ESI may be encrypted for security purposes provided that appropriate password information is provided to all Parties to which such media are produced.  Productions shall be provided using industry standard encryption software or hardware.  Any electronic transmission of produced materials must be done via a secure file transfer system.

8. No receiving Party shall bear the costs and expenses associated with the producing Party's failure to comply with the ESI agreements contemplated herein, including without limitation, the costs and expenses that may be associated with assembling, processing, reviewing, and producing ESI.

**C.    De-Duplication**

1.    A producing Party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI.

2.    Removal of duplicate documents shall only be done on duplicate documents based on industry standard MD5 and/or SHA-1 hash values across custodians.  However, family relationships will be maintained and only exact email family groups will be de-duplicated.  No email attachment will be de-duplicated against a loose file.  The producing Party will maintain and produce references to all removed duplicate files upon a good faith request to do so by another Party.

3.    Global de-duplication across the entire collection will be employed.  This eliminates duplicates to retain only one copy of each document per case.  For example, if an identical document resides with three custodians, only one copy will be included in the review set.

4.    To the extent exact duplicate documents reside within a Party's ESI data set, the Party is only required to produce a single copy of a responsive document.  The Parties shall undertake reasonable efforts to de-duplicate stand-alone documents or entire document families in their ESI across custodial and non-custodial data sources.

5.    A producing Party may de-duplicate documents across custodians, provided that the identity of other custodians of de-duplicated items must be listed in the "AllCustodian" field (or its reasonable equivalent) of the copy of the single record that is produced.  Entity/departmental custodians and all other non-custodial sources shall be identified with a description of the entity or department to the extent reasonably applicable.  A producing Party shall use a uniform description of a particular custodian across productions.  Multiple custodians in the "AllCustodian" field shall be separated by a semicolon.  To the extent necessary, an overlay with updated information must be provided promptly upon a Party's good faith request for an overlay.

**D.     Format of Productions**

1.     *Timing.*  The Parties agree to make rolling productions on a good faith basis.

2.     *Footer.*  Each document image shall contain a footer in the lower right-hand corner with a sequentially ascending Bates production number.  Production images should be adjusted to allow for placement of the production number without interfering with the content of the document.  Bates numbers must always: (l) be unique across the entire document production; (2) maintain a constant length across the entire production; and (3) be sequential within a given document and family.

3.     *Native Files.*

    (a)     The parties shall produce in native format those spreadsheets (e.g., Excel, Numbers, Sheets), audio files, video files, and other file types that cannot be accurately represented in TIFF format.  When produced in native format, and as appropriate, such documents shall be redacted consistent with the terms of this Protocol, with applicable metadata as specified in Exhibit A and extracted searchable text.  The parties at their option may elect to perform native redactions.  Presentation files (e.g., PowerPoint, Keynote, Slides) shall be produced as color images in presentation or full slide view and in JPEG format.

    (b)     To the extent a Party determines that it must apply redactions to a native file and redactions cannot reasonably be applied to such file, a Party may produce that document in TIFF format, with applicable metadata as specified in Exhibit A and extracted searchable text.  The Parties will confer and agree upon the other types of files that are not easily converted to image format, and will therefore be produced in native format.  If production in

        native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing Party will honor reasonable requests made in good faith for the production of specific documents in their native formats. To the extent native files are used as exhibits to court filings or during depositions, hearings, trial, or other proceedings in this matter, the Parties will meet and confer regarding protocols to ensure that such documents bear the appropriate Bates identifiers and confidentiality designations.

4. *Color or Higher-Resolution Documents.*

    (a)    Documents or ESI containing color that has meaning to the content of document shall be produced in color. The production of documents and/or ESI in color shall be made in TIFF or JPEG format that provides sufficient quality for the review of these documents and/or ESI. All requirements for productions stated in this Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternate format.

    (b)    The Parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing Party shall not object if the document as originally produced is illegible or difficult to read. The producing Party shall have the option of responding by producing a native-file version of the document. If a dispute

arises with regard to requests for higher-resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

5. *Electronic Production of Hard Copy Documents.* To the extent they exist and must be produced, the Parties agree to the following:

(a) The Parties agree that documents existing in hard copy form should be produced size-for-size, color-for-color, in single-page Group IV, 300-dpi TIFF format and accompanied by a Concordance DAT data load file and a Concordance Image Viewer OPT image load file. Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page.

(b) The Parties agree that each Party shall be responsible for reviewing and identifying unique, hard copy information and scanning or otherwise reproducing it into a database format from which it shall be produced to the other Parties. Wherever possible, the Parties shall avoid producing large quantities of information on hard copy documents if such information is more readily available electronically and kept as ESI in the normal course of business.

(c) In scanning hard copy documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be physically unitized). The Parties will undertake reasonable efforts to unitize documents correctly, as the documents are kept in the usual course of business. For example, images

of binder and/or folder covers should be preserved and produced with the contents of such binder and/or folder.

(d) Text of hard copy documents shall be extracted using industry-standard optical character recognition ("OCR") technology. Text files shall not contain the redacted portions of the documents. The full OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

(e) Wherever a hard copy file contains additional relevant information (for example, handwritten notes or a title/other information on the cover of a binder or folder), the producing Party shall produce a scanned version of such file(s), and to the extent known, identify the custodian or source of the information.

(f) The Parties will utilize reasonable efforts to ensure that hard copy records for a particular custodian, where included in a single production, are produced in consecutive Bates stamp order.

(g) The Parties agree that this order governs only the format of electronic production of documents, and does not preclude a request for the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

6. *Production of ESI.*

(a) The Parties agree that, except as provided herein, ESI shall be produced in single-page Group IV TIFF, 300-dpi format, black and white, and accompanied by a Concordance DAT data load file and a Concordance

          Image Viewer OPT image load file.  Each TIFF file shall be given a unique file name that matches the Bates number label on the corresponding page.

(b)    Documents with hidden content, track changes, comments, hidden slides, speaker notes, or any other content that can be toggled "on" or "off", shall be processed with all content unhidden and any notes displayed on the TIFF image.  The Parties will produce the specific content of embedded objects or other embedded user-generated information that appear on the face of the documents produced, but are not required to produce the separate, underlying files or databases from which the embedded objects were extracted.

(c)    The Parties agree to produce complete families of documents.  To the extent a document is determined to be responsive, non-privileged family members of that document shall also be produced.  Parent-child relationships (the association between an attachment and its parent document) should be preserved.  For example, if a Party is producing an e-mail with its attachments, the attachments shall be processed in order behind the e-mail and shall contain the appropriate parent/child relationship fields as shown on Exhibit A.

(d)    The Parties agree that certain fields of metadata shall be preserved, collected, and produced as noted below.

(e)    The producing Party will provide extracted full text (i.e., text extracted from ESI), where available, for all material originating as ESI.  The extracted text

from electronic documents shall be provided in a metadata text field encoded in UTF-8.

(f) If a production contains documents in native format, an associated placeholder for images should be included for the native documents. The placeholder image should include the confidentiality designation as well as the production number for the file. The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

(g) ESI productions may be processed to remove any non-user created file types and/or system files, to the extent they contain no relevant information to the instant matter.

(h) Upon a reasonable and good faith request by the receiving Party, for any ESI that exists in encrypted format or is password protected, the producing Party will make reasonable efforts to provide the receiving Party a means to gain access to those native files (for example, by supplying passwords where known).

7. *Data Load File.*

(a) A data load file shall be provided with each production of ESI or hard copy documents.

(b) The data load file shall be a Concordance-loadable data file (DAT file) and shall contain Bates-stamp and metadata information as detailed below.

(c) The delimiters and qualifiers to be used in the DAT file are:

*Record delimiter*: Windows newline/Hard return (ASCII 10 followed by ASCII 13)

       *Field delimiter*: (ASCII 20)
       *Multi-value delimiter*: Semicolon ; (ASCII 59)
       *Text qualifier*: Small thorn þ (ASCII 254)

    (d)    With respect to DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

    (e)    The DAT file shall include metadata information as discussed below.

8.    *Image Load File.*

    (a)    A single-page image load file shall be provided with each production of ESI or hard copy documents.

    (b)    The image load file shall use the Concordance Image Viewer (OPT) format, as in the sample below. Note, the volume label information ("MSC001" in sample OPT file) is optional:

*Sample Concordance Image Viewer .OPT file*:

```
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,
```

9.    *Time Zone.* The Parties agree to process documents using the US Eastern Standard Time Zone.

10.    *Metadata.* Metadata information should be produced in the Concordance DAT file format for ESI as set forth in Exhibit A and for hard copy documents as set forth in Section D.10.b. Each of the metadata and coding fields set forth below, to the extent that they are available for extraction, shall be extracted and produced for that document.

    (a)    The Parties are not obligated to populate manually any of the metadata fields set forth in Exhibit A if such fields cannot be reasonably extracted

12

from a document, with the exception of the following fields for all ESI: (a) ProdBegBates, (b) ProdEndBates, (c) ProdBegAttach, (d) ProdEndAttach, (e) Custodian, (f) NativeFile (if applicable), (g) confidentiality, (h) ECI, and (i) TextPath fields, which should be populated by the Party or the Party's vendor regardless of whether the fields can be populated pursuant to an automated process. The Parties agree to assume their own costs for manually populating or "objectively coding" the above-referenced fields wherever the information is not available in an automated fashion. For a document that is being produced with redaction, fielded data subject to redaction (for example, for privilege or non-relevance) may also be redacted.

(b) For productions of hard copy documents, the following production fields shall be produced in the accompanying data load file: (a) ProdBegBates, (b) ProdEndBates, (c) ProdBegAttach, (d) ProdEndAttach, (e) Custodian, (f) TextPath, (g) confidentiality, (h) export controlled, and (i) the discovery request number(s) to which each file or group of files is responsive.

(c) Upon a reasonable and good faith request by the receiving Party, the producing Party shall provide an explanation when it is unable to produce metadata for a particular field.

(d) The Parties reserve the right to request additional metadata fields should the Party show good cause for the necessity of such additional metadata.

11. *Confidentiality.*

(a)     The Parties have entered into a Protective and Confidentiality Order, dated February 21, 2022. Documents designated "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS EYES ONLY"; pursuant to the Protective and Confidentiality Order shall be branded on each page with their confidentiality designation in the lower left-hand corner of the document without obscuring any document text. Each document produced in native format will have its confidentiality designation reflected on the endorsement on the bottom left-hand corner of the corresponding TIFF image placeholder slipsheet. Documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall be branded on each page with their confidentiality designation in the lower center of each page. Each document designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" that is produced in native format will have such designation reflected on the endorsement on the lower center portion of the corresponding TIFF image placeholder slipsheet.

(b)     Documents designated "CONFIDENTIAL ATTORNEYS EYES ONLY" shall be produced in segregated productions together with other documents bearing the same designation, shall be clearly marked as such in the production volume name or accompanying cover letter, and shall not be produced in commingled productions to the extent permissible with a Party's compliance with Section 11(c) of the ESI Protocol concerning the segregated production of documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION."

   (c)  Documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall be produced in segregated productions together with other documents bearing the same designation and shall be clearly marked as such in the production volume name or accompanying cover letter. In all cases of segregated productions, "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall take precedence over any other segregated categories. As such, one or more documents within a family designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall render the entire family to be produced in the segregated production for documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION", even though there are other documents within families or this segregated production bearing different designations. Any repository containing documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall be secured and restricted against access by any persons not authorized to view the information contained therein, including persons who manage the database software. Repositories containing documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall comply with all applicable laws and regulations, including but not limited to regulations restricting the use of cloud-based storage.

  12. *Text-Searchable Documents.* Document-level extracted text or OCR for documents without extracted text will be provided by the producing Party for every record, including for

scanned hard copy documents as described above. The full text file name will be composed of the Bates number of the associated document, with a .txt file extension. If a document is provided in native format with a single-page placeholder TIFF image (e.g., spreadsheet files), the text file shall contain the full extracted text of the native file. When a Party is unable to produce extracted full text, it will provide an explanation of that inability upon reasonable request by the other Party. Documents for which extracted text is not available shall be produced with a text file generated utilizing Optical Character Recognition (OCR) software. Extracted text will not be provided for electronic documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed after the redaction is applied to capture the visible text and those results will be provided in lieu of the original extracted text.

13. *Non-Standard Data.* To the extent any Party identifies relevant discovery data that may not be exported into a standard litigation format as described above, the Parties agree to meet and confer within a reasonable amount of time after such data is identified.

14. *Production Media and Protocol.* A producing Party may provide documents via encrypted file, with the transfer format of the production at the discretion of the producing Party, based on size of the deliverable. Documents designated "RESTRICTED ACCESS / EXPORT CONTROLLED INFORMATION" shall be transmitted in accordance with the governing laws and regulations regarding the treatment of such materials.

15. *System Files.* Initial culling of documents by file type may be performed by any of the following methods: (i) ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology; (ii) a Party may remove system files from its production; and/or (iii) a Party may remove non-user created files generated in the background on a user device. No Party

shall remove any file or file type that it reasonably believes could contain unique, relevant information to the instant matter.

      **E.**      **Privileged or Work Product Information**

      1.      With respect to privileged or attorney work product information generated after the filing of the complaint, Parties are not required to include any such information in privilege logs.

      2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      3.      The Parties agree to confer regarding other categories of information that may be excluded from logging requirements.

      4.      Any other responsive documents withheld or partially withheld from a Party's production on the basis of privilege or work product shall be described on a privilege log, produced in Excel format, which includes the date of the document, author, recipient(s) and a short description of the document and indicates the basis for withholding the document from production.

      5.      No later than 45 days after a production is delivered to the receiving Party, the producing party shall provide a privilege log describing the documents withheld from the corresponding production.  To the extent any Party produces a privilege log on or around the close of fact discovery, the receiving Party shall have a reasonable amount of time (including time after the close of fact discovery) to challenge the inadequacy of the privilege log and/or the producing Party's claim(s) of privilege contained therein.  To the extent the Parties disagree on the adequacy of a privilege log, the Parties shall meet and confer and use all reasonable methods to resolve the dispute before raising with the Court.

      6.      The Parties reserve the right to request additional information regarding individual documents on the privilege log.

7.  The production of any information claimed to be subject to the attorney-client privilege, the work-product doctrine, or any other protection from disclosure is not a waiver of that privilege or protection and the Parties agree there is no need to demonstrate that the disclosure was inadvertent or that reasonable steps were taken to prevent such disclosure.  If, during the course of this matter, a Party produces a document or any other piece of information the Party claims is privileged or protected, that Party may give notice to the other Party in writing, and the Parties agree that the document or information will be returned or destroyed, and all copies, notes, quotations or summaries thereof will be destroyed, within five (5) days.  This paragraph shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

F.  **Best Efforts Compliance**

1.  The Parties agree to use reasonable efforts to comply with and resolve any differences concerning compliance with any provision(s) of this Protocol.  If a producing Party cannot comply with any aspect of the Protocol, such Party shall inform the requesting Party in writing that compliance with the Protocol is unreasonable or not possible.  No Party may seek relief from the Court concerning compliance with the agreement until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

**# # # End of Order # # #**

**AGREED AS TO FORM:**

/s/ *Thomas Berghman*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR THE DEBTOR


By: */s/ Joseph W. Golinkin II*
JORDAN, LYNCH & CANCIENNE PLLC
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

and

BAKER BOTTS L.L.P.
Jessica B. Pulliam,
Texas Bar No. 24037309
John B. Lawrence
Texas Bar No. 24055825
Kevin Chiu, TX SBN 24109723
*kevin.chiu@bakerbotts.com*
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
Telephone:    214.953.6500
Facsimile:    214.953.6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

-and-

/s/ *Eric T. Haitz*
Eric T. Haitz (Texas Bar No. 24101851)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel:    346.718.6600
Email: EHaitz@gibsondunn.com

*and*

John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
Pooja Patel (Tex. Bar No. 24104064)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
       ALegrand@gibsondunn.com
       PPatel@gibsondunn.com

COUNSEL TO GENERAL ELECTRIC
INTERNATIONAL, INC.

David R. Eastlake, TX SBN 24074165
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:    713.229.1234
Facsimile:    713.229.1522
david.eastlake@bakerbotts.com

COUNSEL FOR ALTA POWER LLC