**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel.: 214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com

Eric T. Haitz (Tex. Bar No. 24101851)
811 Main Street, Suite 3000
Houston, Texas 77002-6117
Tel.: 346.718.6600
EHaitz@gibsondunn.com

*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** *Debtor*. | Case No. 21-31488-sgj11V<br>Chapter 11<br>Subchapter V |
| **WATTSTOCK LLC,** *Plaintiff*,<br>v.<br>**ALTA POWER LLC,** *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,*<br>v.<br>**WATTSTOCK LLC,** *Counter-Defendant,* **and**<br>**GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE** | Adv. No. 21-03083-sgj<br>*Removed from the District Court of Dallas County, Texas, 116th Judicial District*<br>Case No. DC-20-08331 |

POWER SERVICES,

*Third-Party Defendant.*

# GENERAL ELECTRIC INTERNATIONAL, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

# I. INTRODUCTION

As GE explained in its opening brief, Alta's "vicarious liability" claims fail as a matter of law because GE and WattStock were not in a partnership or joint venture—and Alta cannot plausibly plead otherwise. On this, the parties agree. Opp. at 13. Alta argues, instead, that its claims are "premised on theories of estoppel, joint enterprise, and agency." *Id*. But these theories do not apply. And even if they did, Alta's petition makes mere passing references to estoppel and joint enterprise in paragraph 105, and to an "ostensible agency" in paragraph 109, which qualify as threadbare legal conclusions entitled to no weight under *Twombly* and *Iqbal*. Alta's separate fraud-based and negligent-misrepresentation claims come nowhere close to satisfying Rule 9(b)'s particularity requirement. And, in any event, those claims are defective as a matter of law because Alta cannot show justifiable reliance or overcome the economic loss rule. The Court should dismiss all of Alta's claims against GE with prejudice and without leave to amend.[1]

# II. ARGUMENT

**A.  Alta Fails to Plead a Viable Contract or Tort Claim against GE**

    **1.  The "partnership by estoppel" doctrine does not apply because Alta cannot allege that it extended credit to a partnership.**

After conceding that GE and WattStock were not actual partners, Alta pivots to arguing that GE should be held liable for WattStock's alleged conduct under the "partnership by estoppel" doctrine. Alta does not identify a single case applying that narrow doctrine outside of the creditor-debtor context—for good reason, as the one state court case Alta does cite makes clear that the

---

[1] Alta's detour into unripe discovery disputes shows precisely why GE's motion should be granted. Alta has no viable claim against GE, and—despite disclaiming consequential damages—it seeks to litigate this $1.5 million case like a dispute over ten times that amount. Alta wants to unduly burden GE without first carrying its own burden to plausibly allege that GE is vicariously liable for WattStock's conduct, much less plead with particularity its fraud-based and negligent-misrepresentation claims. Alta has known for months that the federal rules would apply when GE moved to dismiss its claims. Yet it sat on its hands and did nothing—likely because it also knew that any amendment would be futile.

doctrine, which is codified in the Texas Uniform Partnership Act, is "expressly applied to circumstances involving the extension of credit to a partnership." *CCR, Inc. v. Chamberlain*, 2000 WL 35721225, at *11 (Tex. App.—Corpus Christi June 1, 2000, pet. denied) (collecting cases). This case does not involve an extension of credit, so Alta's attempt to apply the partnership by estoppel doctrine fails as a matter of law. Even if its theory were viable (it is not), Alta comes nowhere close to pleading a plausible claim under the partnership by estoppel doctrine.

"To find a partnership by estoppel, two elements must be met: (1) there must be a representation that the one sought to be bound is a member of a partnership; and (2) the one to whom the representation is made must rely on the representation by giving credit to the partnership." *Kondos Ent., Inc. v. Quinney Elec., Inc.*, 948 S.W.2d 820, 823 (Tex. App.—San Antonio 1997), *rev'd on other grounds*, 988 S.W.2d 212 (Tex. 1999); 57 Tex. Jur. 3d Partnership § 27 (2018). Alta does not plausibly plead that GE represented that WattStock was its legal partner, and Alta cannot plausibly plead it relied on that representation to extend credit to a partnership. Opp. at 10–11. Instead, Alta pleads itself out of court by relying on the MOU and acknowledging that it expressly states that GE and WattStock "do not intend this MOU to create any partnership, corporation, agency or fiduciary relationship among them." APP25.

Alta responds in two ways. First, it argues that it did not see the MOU until discovery began in this litigation. Even if true, as the master of its own complaint, Alta incorporated the MOU by reference and expressly acknowledged that the document says GE and WattStock are not partners. APP48. Alta has no qualms about relying on the MOU when arguing (wrongly) that GE "controlled" WattStock. Opp. at 19–20 ("the MOU"); *see also* APP33 ("MOU establishes"); APP48 ("MOU shows"); APP51 ("GE had the right under its MOU").

2

Second, Alta argues that the Court should analyze this issue "through Alta's eyes," and that "[f]rom Alta's vantage point," the doctrine applies because WattStock was founded by former GE employees and "co-located" in the same facility, and WattStock and GE marketed themselves as "partners" and were both involved in contract negotiations. Opp. at 15. Who founded WattStock or where it was located is immaterial. *Fleishman-Hillard, Inc. v. Oman*, 2012 WL 13028770, at *5 (W.D. Tex. Nov. 21, 2012). Colloquial statements about being "partners" are not enough. Opp. at 7–10. And Alta does not actually allege that GE was "heavily involved in all the contract negotiations," as it claims. It does, however, allege that "[a]t GE's insistence, Alta Power contracted directly with WattStock." APP36. That is fatal. *Mayers v. Addison Brown, LLC*, 2020 WL 7646973, at *3 (N.D. Tex. Dec. 22, 2020) (dismissing where party did not carry its "burden to prove that the non-party obligated itself under the contract"); *see also Lost Maples Gen. Store, LLC v. Ascentium Cap., LLC*, 2019 WL 1966671, at *5 (Tex. App. May 2, 2019).

**2.    Alta's "joint enterprise" theory fails because Alta alleges GE had "complete control" over WattStock and cannot claim the two entities pooled profits.**

Alta concedes, as it must, that GE cannot be liable for WattStock's alleged conduct under the law governing joint ventures. Alta cannot plead a joint venture, in part, because its petition alleges GE was in "complete control" of the WattStock relationship and joint venture law requires "each participant" to have some right of control. Opp. at 5–6. Alta attempts to avoid dismissal by pointing to the principles of "joint enterprise" liability. Opp. at 15. Although Alta claims that joint enterprise and joint venture are "wholly distinct concept[s]," *id.*, many courts—including the Texas Supreme Court—have "often used [the concepts] interchangeably and meaning the same thing." *E.g., Nelson v. Fulkerson*, 155 Tex. 298, 300 (1956). To the extent a substantive difference exists, the law on joint enterprise liability appears more exacting. Where joint venture law requires proof that each participant has some right of control, joint enterprise law requires proof that the

3

participants have "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." Opp. at 16. Alta's "joint enterprise" theory thus fails for the same reason that GE argued a joint venture theory would: Alta's allegation that GE had "complete control" over WattStock negates the existence of shared (much less equal) control. *See, e.g.*, *Ecoquij-Tzep v. Le Arlington, Inc.*, 2017 WL 6527317, at *3 (N.D. Tex. Dec. 21, 2017).

Because its petition misses the mark, Alta attempts to plead joint enterprise liability in its Opposition by setting out the legal elements and asserting new factual allegations over three full pages. A legal brief is no substitute for a well-pleaded complaint. *Lakewood Devs. Corp. v. Schultheis*, 2004 WL 764729, at *5 (N.D. Tex. Apr. 6, 2004) ("A complaint cannot be amended by the briefs in opposition to a motion to dismiss."); *see also Langston v. San Jacinto Jr. Coll.*, 25 F. Supp. 3d 1009, 1016 (S.D. Tex. 2014) (same). But even Alta's brief supports dismissal. The Opposition admits that joint enterprise liability requires a showing that "a community of pecuniary interests exists," meaning the "pooling of . . . monetary resources." Opp. at 17; *see also Harrison v. Aztec Well Servicing Co.*, 2021 WL 6073164, at *22 (N.D. Tex. Dec. 23, 2021). Even so, Alta does not argue that GE and WattStock pooled their money or profits. Instead, it sheepishly claims that "the factual details of GE's and WattStock's financial relationship are within their exclusive possession"—ignoring the Statement of Financial Affairs that identifies who has control over WattStock's bank accounts and in which businesses the debtor has or has had an interest (not GE). Opp. at 9–10 (citing Dkt. 50). Alta falls back "upon information and belief" and its inconsequential allegations that "GE was 'eager to participate in the used gas turbine market'" and GE had "strong incentive" for the project to succeed. Opp. at 17. Neither is sufficient. *See In re Parkcentral Glob. Litig.*, 2010 WL 3119403, at *9 (N.D. Tex. Aug. 5, 2010); *Harrison*, 2021 WL 6073164, at *22. Alta's claims against GE that are based on joint enterprise liability should be dismissed.

4

*Weston Grp., Inc. v. Sw. Home Health Care, LP*, 2014 WL 940329, at *5 (N.D. Tex. Mar. 11, 2014).

> **3.  Alta fails to respond to GE's motion and does not plausibly plead agency and ostensible agency claims.**

In a last-ditch effort to hold GE liable for WattStock's alleged breach of a contract that GE did not sign (and on Alta's own case, in fact refused to sign) and for WattStock's alleged torts related to Alta's failed business deal, Alta argues that GE "fails to address Alta's allegations of an agency relationship between GE and WattStock." Opp. at 19.  As an initial matter, Alta's assertion is demonstrably false—Section IV.B.2 of GE's brief (at 12–15) argues that Alta cannot plausibly allege that GE is liable under an agency theory.  As GE explained, the MOU vitiates Alta's claim of an actual or implied agency relationship between GE and WattStock. Opp. at 13.  Alta does not dispute this point, but instead tries to assert *new* facts in its brief to support an agency claim. *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013).  Neither the allegations included in Alta's petition nor the ones it asserts for the first time in its Opposition are enough to plausibly plead actual or ostensible agency.

Alta's conclusory allegation that GE had "complete control" over WattStock is entitled to no weight.  APP33.  Its contention that GE had oversight of WattStock's work and tracked the Alta project's daily progress does not move the ball.  Opp. at 13.  Its bald assertion that GE "held out WattStock to be[] the *de facto* sales force" fares no better.  *Id*. at 19.  And although Alta claims that GE can force WattStock to sell any of the turbines it acquires to GE under the MOU, *id*. at 20, Section 6(a) of the MOU makes clear that "neither party shall be obligated to purchase or sale any equipment, parts or services solely pursuant to this MOU."  APP25.  None of this is comparable to the level of control at issue in *Emtel, Inc. v. Lipidlabs, Inc.*—where the court had little trouble rejecting agency claims where an alleged principal had the right to order the alleged agents "to

5

purchase liability insurance, follow generally accepted professional standards, schedule times to be on call, and to use certain administrative steps." 583 F. Supp. 2d 811, 837–38 (S.D. Tex. 2008). Alta's allegations pale in comparison.

Alta's "ostensible agency" argument suffers from yet another defect: Alta's petition includes no facts to plausibly support an inference that a "reasonably prudent person" in its position and "using diligence and discretion to ascertain the agent's authority" would reasonably believe that WattStock was GE's agent. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017) ("Agency is not presumed."). Alta argues that "GE not only was aware of and approved the deal structure with Alta, but it actively participated in the negotiation, execution, and performance of the deal"—a claim that Alta's pleadings fail to factually support. At the same time, Alta glosses over its actual allegation that GE refused to be a party to those contracts, APP36, and the MOU expressly states that there was "no partnership or agency" relationship between GE and WattStock, APP48. On Alta's own pleading, its purported belief that WattStock had authority to bind GE was objectively unreasonable as a matter of law. *E.g.*, *Doe v. YUM! Brands, Inc.*, 2021 WL 5113021, at *14 (Tex. App.—Houston [1st Dist.] Nov. 4, 2021, no pet.).

**B.    Alta Has Failed to Plausibly Plead a Claim for Unjust Enrichment**

Alta does not dispute that its petition impermissibly lumps GE and WattStock together. Instead, it argues that its unjust enrichment claim is cognizable because "GE benefitted from WattStock's fraud." Opp. at 12. Alta's contention that "the Petition alleges GE received the $1.5 million in connection with a fraud perpetrated against Alta" is founded on fiction, not fact. The petition does not allege that Alta paid GE *any* money (or *how* GE allegedly obtained *any* benefit from Alta). Although paragraph 92 states that "GE and WattStock represented to Alta [] that GE needed to be paid $1,500,000," the petition's very next paragraph asserts that Alta paid $750,000 on December 24, 2019 and $750,000 on January 13, 2020, without specifying to whom those

6

payments were made. APP45. That omission is telling—but not surprising given that the Alta-WattStock contracts make clear that WattStock's obligations were triggered on "receipt by WattStock of the first" of the payments that Alta now seeks to recoup. APP94 (emphasis added). Alta's allegations are impermissibly vague and insufficient to survive dismissal. *See Guerrero v. Taylor Cnty., Tex.*, 2018 WL 1033261, at *2 (N.D. Tex. Feb. 23, 2018). But even if this Court credited Alta's conclusory claim that "GE benefitted from WattStock's fraud" (or the contention in its Opposition that "GE committed fraud, too"), Opp. at 12–13, dismissal would still be appropriate, as explained below, because Alta did not plead these fraud-based claims with particularity. *Chau v. Aviva Life & Annuity Co.*, 2011 WL 1990446, at *8 (N.D. Tex. May 20, 2011) (holding unjust enrichment claims "grounded in fraud" are "subject to Rule 9(b)").

**C.     Alta's Fraud-Based and Negligent-Misrepresentation Claims Fail under Rule 9(b), the Doctrine of Reasonable Reliance, and the Economic Loss Rule**

Alta's fraud-based and negligent-misrepresentation claims fail because its petition does not (a) specify *who* at GE made the alleged misrepresentation or (b) allege any particularized facts that would give rise to an inference that GE acted with fraudulent intent. Rule 9(b) requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). It is not enough to allege that the corporate defendant (like GE) made a misrepresentation; a party alleging fraud must identify the individual speaker. *See Flores Cazares v. Allstate Vehicle and Prop. Ins. Co.*, 2018 WL 8805005, at *2 (S.D. Tex. July 26, 2018). Alta never identifies the speaker of the alleged misstatements; instead, it impermissibly uses group pleadings that lump GE and WattStock together as corporate entities. *United States ex rel. Capshaw v. White*, 2018 WL 6068806, at *4 (N.D. Tex. Nov. 20, 2018). And both Alta's petition and its Opposition are silent regarding *specific facts* that would reasonably support an inference

7

that GE acted with fraudulent intent. *E.g.*, *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016).

Alta does not seriously dispute that its petition lacks the specific details required by Rule 9(b). That is why it highlights that Texas has no Rule 9(b) equivalent and claims, in a footnote, that leave to replead "would be doubly appropriate as to Alta's negligent misrepresentation claim." Opp. at 7, 10 n.3. But this case was removed to federal court over four months ago, and over two months ago, the parties negotiated a scheduling order that expressly contemplates motions to dismiss. Alta was on notice and could have filed an amended complaint. It likely elected not to because repleading would be futile, for at least two reasons: because Alta cannot allege justifiable reliance, and its claims are barred by the economic loss rule.

Reliance is unjustified as a matter of law when either (1) the express terms of a contract directly contradict the representation or (2) "red flags" warn a party away from relying. Alta cannot overcome either of these obstacles. First, the express terms of Alta-WattStock contracts directly contradict the representations that Alta allegedly relied on by making clear that only Alta and WattStock (and **not** GE) were parties to the agreements and expressly disclaiming reliance on any extra-contractual representations.[2] Parties may "negate a fraudulent inducement claim" through merger clauses that specifically disclaim reliance on another party's representations. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). The merger clause at issue in this case fits squarely in that camp: "Each Party agrees that it has not relied on, or been induced by, any representations of the other Party not contained in the Contract." *See* ¶ 33.1; *see also DT Apartment Grp., LP v. CWCapital, LLC*, 2013 WL 2317061, at *10 (N.D. Tex. May 28, 2013) (finding no justifiable reliance in light of merger clause).

---

[2] Alta's tortured reading of the "directly contradicted" rule would require parties to explicitly list every entity that was *not* bound by the contract. But parties can convey the same meaning by listing *only* the contractual parties.

8

Second, multiple red flags warned Alta away from relying on the alleged representations, including GE's refusal to contract with Alta and the MOU's express disclaimer of any partnership or agency relationship between GE and WattStock. Alta argues the MOU is irrelevant because it is "extra-contractual," but the Alta-WattStock contracts are not the only source of relevant red flags. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 656–58 (Tex. 2018). And, contrary to Alta's claim that this issue cannot be resolved at the pleading stage, justifiable reliance is a question of law and a required element of fraud, which must be pleaded with particularity to avoid dismissal. *See Stabilis Fund II, LLC v. Compass Bank*, 2018 WL 3618012, at *8 (N.D. Tex. July 30, 2018). When the reasonableness of reliance is undermined by "red flags," the plaintiff must allege with specificity the "additional investigation [it undertook] in order to exercise reasonable diligence and avoid negation of justifiable reliance." *Id.* (internal quotation marks omitted). Nowhere in its petition has Alta "pleaded that it was reasonably diligent in pursuing [GE's refusal to contract with it or the terms in the MOU] but nevertheless could not uncover" the alleged misrepresentations. *Id.* That ends the inquiry as a matter of law.

The economic loss rule imposes a separate and independent legal impediment to Alta's negligent misrepresentation claim. Alta makes virtually no effort to address the rule and identifies no injury independent of the contract giving rise to its claim. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Alta cites (and misreads) only one case, *Yumilicious*, which held that the rule does not apply to claims where the "alleged *injuries* preceded the contractual relationship, and do not arise solely from the parties' contractual relationship." *Yumilicious Franchise, LLC v. Barrie*, 2015 WL 1856729, at *7 n.8 (N.D. Tex. Apr. 23, 2015) (emphasis added). Alta's fraud-based and negligent-misrepresentation claims should be dismissed with prejudice because amendment would be futile. *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013).

9

### D. Alta Contractually Waived Consequential Damages

Alta selectively reads the relevant contracts to argue that it did not waive consequential damages for claims of fraud or breach of confidentiality. Both its approach and conclusions are wrong. "Texas courts examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." *Weeks Marine, Inc. v. Standard Concrete Prods., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013). Section 9.1(B) makes clear that Alta waived consequential damages for all claims—including fraud. It states that the waiver "**shall include, but is not limited to** . . . **any other consequential damages** that either party may have **incurred from any cause of action**." Alta's interpretation of the agreements is unreasonable because it would render meaningless these key phrases (as well as Section 9.1(B)'s first sentence barring claims "to the fullest extent permitted by law" for consequential damages "arising out of or connected in any way to this agreement"). *See Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex. App.—Houston 2009, no pet.). Texas courts routinely hold that mutual waivers using phrases like these must be construed broadly to apply to any and all causes of action, particularly where, as here, the agreement is between two sophisticated parties. *E.g., Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 53–54, 59 (Tex. 2008); *Biscamp v. Special Pals, Inc.*, 2020 WL 716739, at *1–2 (Tex. App.—Houston [1st] Feb. 13, 2020, pet. denied). Alta's argument to the contrary is unreasonable and unsupported by Texas law. As is Alta's contention that the waiver does not apply to breaches of the confidentiality provisions. Breach of contract claims are expressly listed in Section 9.1(B)'s waiver clause, and Section 7 does not mention "consequential damages" at all. Alta waived consequential damages for its fraud and breach of contract claims.

### III. CONCLUSION

Because Alta has not stated any cognizable claims against GE, this Court should grant GE's 12(c) motion and dismiss Alta's claims against GE with prejudice and without leave to amend.

10

Dated:  March 31, 2022

Respectfully submitted,

/s/     *Andrew LeGrand*
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201-2911
Tel.:    214.698.3100
Email: TCox@gibsondunn.com
ALegrand@gibsondunn.com

and

Eric T. Haitz (Texas Bar No. 24101851)

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel.:    346.718.6600
Email: EHaitz@gibsondunn.com

COUNSEL TO GENERAL ELECTRIC INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/    *Andrew LeGrand*
Andrew LeGrand

*Counsel for General Electric International, Inc.*

11