**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel:  214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com
*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** | **Case No. 21-31488-sgj11V** |
| *Debtor.* | **Chapter 11** |
| | **Subchapter V** |
| **WATTSTOCK LLC,** | **Adv. No. 21-03083-sgj** |
| *Plaintiff,* | *Removed from the District Court of Dallas County, Texas, 116th Judicial District* |
| **v.** | |
| **ALTA POWER LLC,** | **Case No. DC-20-08331** |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| **v.** | |
| **WATTSTOCK LLC,** | |
|      *Counter-Defendant,* **and** | |
| **GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES,** | |
|      *Third-Party Defendant.* | |

**BRIEF IN SUPPORT OF GENERAL ELECTRIC INTERNATIONAL, INC.'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS FROM ALTA POWER LLC**

Third-Party Defendant General Electric International, Inc. ("GE") hereby respectfully moves the Court to order Defendant and Third-Party Plaintiff Alta Power, LLC ("Alta") to (1) collect and produce relevant documents currently in the possession of Alta's outside counsel as requested in Requests for Production ("RFP") 23, 57, 73, and 74 and (2) search for and produce relevant documents currently within Alta's possession that involve Alta's outside counsel for these same RFPs.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 4

 A. The Castleman Dispute Plays a Prominent Role in the Third-Party Petition and Is Essential to Alta's Assertion that Its Lost-Profits Claim Is Not Contractually Barred.................................................................................................................. 4

 B. GE Posed Discovery Requests Encompassing the Communications Held by Alta's Outside Counsel, but Alta Obfuscated Whether Responsive Documents Existed and then Refused to Collect and Produce Them. ...................................................... 5

 C. The Castleman Documents Produced So Far Reflect Their Relevance to This Dispute, the Limited Timeframe in Which They Occurred, and the Gaps in Alta's Production ............................................................................................................... 9

III.    LEGAL STANDARD ........................................................................................ 11

IV.     ARGUMENT ..................................................................................................... 12

 A. Documents Held by Alta's Outside Counsel Are Discoverable. .......................... 12

 B. The Castleman Documents Are Plainly Relevant................................................. 13

 C. Collecting and Producing the Documents Is Not Unduly Burdensome. .............. 16

 D. Alta Offers No Other Valid Basis for Resisting This Discovery.......................... 17

V.      CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abraham v. Alpha Chi Omega*,
    271 F.R.D. 556 (N.D. Tex. 2010) ........................................................................................16

*In re Anderson News, LLC*,
    615 B.R. 45 (Bankr. D. Del. 2020) ......................................................................................12

*SEC v. Brady,*
    238 F.R.D. 429 (N.D. Tex. 2006) ...................................................................................14, 15

*Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*,
    No. 3:17-CV-2719-B, 2018 WL 3655574 (N.D. Tex. July 16, 2018)....................................11

*Gruss v. Zwirn*,
    296 F.R.D. 224 (S.D.N.Y. 2013) .........................................................................................12

*Holdings, Inc. v. U.S. Dep't of Justice*,
    No. 3:07-CV-2084-B, 2008 WL 2002050 (N.D. Tex. May 9, 2008) ....................................12

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) .............................................................................................11

*Merrill v. Waffle House, Inc.*,
    227 F.R.D. 467 (N.D. Tex. 2005) .............................................................................11, 13, 15

*Metro. Prop. and Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*,
    CV 15-12939-LTS, 2019 WL 13180448 (D. Mass. Feb. 1, 2019)........................................12

*Nguyen v. Excel Corp.*,
    197 F.3d 200 (5th Cir. 1999) ...............................................................................................17

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).......................................................................................................11, 13

*In re Ruppert*,
    309 F.2d 97 (6th Cir. 1962) ................................................................................................12

*Samsung Elecs. Am., Inc. v. Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) .............................................................................11, 14. 16

*Spiegelberg Mfg., Inc. v. Hancock*,
    No. 3-07-CV-1314-G, 2007 WL 4258246 (N.D. Tex., Dec. 3, 2007)...................................11

*Williams v. Hampton*,
    797 F.3d 276 (5th Cir. 2015) ...............................................................................................14

*Wingnut Films, Ltd. v. Katja Mot. Pictures Corp.*,
    No. CV 05-1516-RSWL SHX, 2007 WL 2758571 (C.D. Cal. Sept. 18, 2007) .....................12

**RULES**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................11, 16

Fed. R. Civ. P. 34(a)(1)................................................................................................................2

## I.        INTRODUCTION

Alta has brought various claims against GE and WattStock LLC ("WattStock") related to Alta's failed attempt to purchase used gas turbines from WattStock.  As relevant here, Alta asserts that it was harmed by WattStock's alleged breach of a confidentiality agreement in which WattStock purportedly disclosed to Alta's rival Castleman that Alta would imminently be receiving financing from Deutsche Bank.  Alta claims this disclosure caused Castleman to threaten a "frivolous" trade secret claim that in turn caused Deutsche Bank to decline to finance Alta's proposed project.  Alta never subsequently obtained financing, and it claims lost profits for its failure to develop its power generation plants.  Alta specifically seeks $11.5 million for the damages it spent pursuing the Alta/WattStock deal, an unspecified amount of lost profits likely to be in the tens of millions of dollars, and an award of attorneys' fees.

GE has sought discovery from Alta through several document requests related to WattStock's alleged disclosure of confidential information to Castleman.  For two months, Alta asserted boilerplate objections to producing relevant documents and obfuscated whether it was withholding any relevant documents.  At the same time, Alta had produced some relevant documents, but these documents only revealed clear gaps in Alta's production.  After several rounds of meet-and-confer letters, Alta finally confirmed that (1) it was not withholding any responsive documents captured by the current agreed search terms, and (2) any additional relevant documents would be in the possession of its outside counsel.  After GE requested that Alta collect and produce the relevant documents from Alta's outside counsel and add search terms that would hit on documents related to Alta's counsel, Alta categorically refused both requests.  Despite having unequivocally stated in the parties' meet-and-confer meeting that Alta had no further relevant documents, Alta also suddenly discovered additional Castleman dispute documents that

1

it promised to produce.  This final set of documents, which Alta produced on September 22, still contained no documents collected from Alta's outside counsel.

This Court should grant GE's motion to compel for four reasons.  ***First***, any documents held by Alta's outside counsel are within Alta's control for purposes of discovery, and all relevant non-privileged documents must be collected and produced in compliance with GE's discovery requests.  Fed. R. Civ. P. 34(a)(1).  GE's discovery requests defined that the terms "Alta" and "You" referred to Alta and any of its "agents, representatives, or others that act for or on its behalf" and that the term "documents" included all writings "in your possession, custody or control, or known by you to exist."  There is no reasonable basis to say that requests seeking "*all* communications between you and Ryan Castleman and/or Castleman Power Development," or "*all* documents and communications related to Alta's dispute with Castleman Power Development" would not capture relevant documents known to exist that were held by Alta's outside counsel.

***Second***, the requested materials are relevant.  For one, the documents are likely to answer whether Alta's financing was declined *because* of the Castleman dispute or merely *after* the Castleman dispute arose.  GE is aware from the documents that Alta has produced, for example, that Deutsche Bank's counsel and Alta's outside counsel corresponded about the Castleman dispute and its effect on Alta's financing request.  Those particular correspondences have not been produced.  GE is also aware that Deutsche Bank's outside counsel Baker Botts (the same law firm currently representing Alta) analyzed the settlement of the Castleman dispute and opined on its relevance to Alta's financing request.  But any exchanges between Baker Botts and Alta's former counsel have not been produced.  Without documents like these that would reflect why Alta's

request for financing was denied, GE cannot adequately defend against the misimpression Alta seeks to create: that the Castleman dispute alone caused Alta's proposed project to collapse.

Separately, the substance of Castleman's trade secrets claim is also highly relevant to this dispute. Alta alleges in the Third-Party Petition that Castleman's litigation threat was "frivolous." It does so because it must—if Castleman's claim that Alta unlawfully copied Castleman's own peaker plants ideas was meritorious, the Alta's allegation that it was going to be the "first mover" in the "niche" peaker power plant market in Texas is false. Documents related to the Castleman dispute will likely also bear upon several other relevant issues, including (1) whether Castleman learned about Alta's financing from someone other than WattStock, (2) how Alta came to believe that it was WattStock that gave Castleman that information, and (3) whether Alta lacks a reasonable basis for other allegations in the Third-Party Petition, including its assertions that the Castleman litigation threat was "frivolous," that it had no choice but to pay Castleman "an extortion fee," and that it would have secured financing for its proposed project but for the Castleman dispute.

*Third*, collecting and producing these documents will not impose an undue burden on Alta. Based on the documents Alta has produced, it appears that the time between when Castleman served its cease-and-desist letter to the time when Alta terminated its financing efforts with Deutsche Bank is roughly a month. Given that Alta is seeking millions of dollars in damages, whatever burden Alta would incur to collect and produce these documents is more than justified by the needs of this case.

*Fourth*, Alta has no other valid basis for resisting this discovery. Attorney-client privilege does not apply to communications between Alta or its outside lawyers, on the one hand, and Castleman or Deutsche Bank or their outside lawyers, on the other. Likewise, that the parties

negotiated for certain custodians at the outset of discovery does not relieve Alta of the responsibility to truthfully answer GE's discovery requests without evasion regarding whether relevant documents were in the hands of other custodians, nor does it prevent GE from seeking to obtain those documents and add custodians as warranted as the case progresses.

## II.    BACKGROUND

### A.    The Castleman Dispute Plays a Prominent Role in the Third-Party Petition and Is Essential to Alta's Assertion that Its Lost-Profits Claim Is Not Contractually Barred.

The Third-Party Petition makes clear that Alta's "trade secret" dispute with Castleman is central to Alta's claim that WattStock breached the confidentiality agreement, causing Alta's subsequent failure to obtain financing. Alta alleges that in summer 2019, it sought financing from Deutsche Bank, who was Alta's "best source of funding." *See* Third Party Petition ("TPP") ¶ 76, APP130. "[S]ometime before financing was closed," WattStock supposedly "disclosed to Ryan Castleman of Castleman Power Development LLC" that "financing from Deutsche Bank was imminent." APP131 ¶ 79. This led Castleman to "attempt[ ] to scuttle Alta Power's financing" by "threaten[ing] to file a frivolous 'trade secret' lawsuit against Alta Power." *Id.* Alta was thus "forced to disclose this *frivolous* claim to Deutsche Bank," and while Alta worked to "quickly resolve the *frivolous* dispute," it ultimately had to "pay Castleman an extortion fee to settle the *frivolous* claim." *Id.* ¶ 80 (emphases added). "But the damage was already done," and "Castleman's strategy of causing delay to destroy financing worked" because "Deutsche Bank decided against providing financing to Alta Power." *Id.* ¶¶ 80–81. Alta alleges that "by disclosing confidential information about Alta Power and its financing to Castleman," WattStock "proximately caused injury to Alta Power" because its "breach caused Alta Power to lose project financing for its unique strategy for developing power generation projects in the Texas market." APP136 ¶ 116. Alta asserts that GE is vicariously liable for WattStock's breach. APP137 ¶ 121.

Alta seeks lost profits in an unspecified amount likely to be in the millions of dollars.  *See* APP117

¶ 6 ("WattStock's breaches of contract and tortious conduct caused Alta Power to lose more than

one hundred million dollars of essential financing, profits related to its business, and millions in

payments to GE and WattStock for undelivered equipment and phantom services."); Alta's Initial

Disclosures at 12, APP13. (explaining that Alta seeks damages for "[t]he revenue Alta Power

would have made serving the market as described in its Second Amended Counterclaim").

Together with playing a key role in one of Alta's causes of action, the alleged breach of

the confidentiality provision is critical to Alta's efforts to bring its claims outside of a damages

waiver from Alta's contract with WattStock.  As explained in GE's brief in support of its motion

for judgment on the pleadings, Section 9.1(b) of the Alta-WattStock Master Agreement bars Alta

from seeking consequential damages against GE or WattStock.  Dkt. 31 at 24–25.  Alta's

opposition to that motion stressed that the "damages waiver exempts Article 7 (Confidentiality),"

and Alta argued it could seek lost profits because it had alleged that it had been "severely damaged"

from WattStock's purported breach of the confidentiality agreement.  Dkt. 39 at 24–25.

### B.    GE Posed Discovery Requests Encompassing the Communications Held by Alta's Outside Counsel, but Alta Obfuscated Whether Responsive Documents Existed and then Refused to Collect and Produce Them.

GE posed four requests for production ("RFP") that sought information related to the

Castleman dispute and Alta's attempts to receive financing from Deutsche Bank.  These RFPs

involved two broad definitions that would encompass the documents and communications held by

Alta's outside counsel.  The RFPs defined "Alta," "You," or "Your" to mean "any of [Alta's]

officers, employees, agents, representatives, or others that act for or on its behalf."  GE's First RFP

("First RFP"), APP16; GE's Second RFP ("Second RFP"), APP37.  The RFPs also define

"document" to include "writings of every kind, . . . in your possession, custody, or control, or

known by you to exist."  APP16, APP38.

The first relevant RFP is as follows:

- RFP 23: All communications between you and Ryan Castleman and/or Castleman Power Development LLC concerning the "trade secret" claim described in Paragraphs 79 and 80 of your First Amened answer and Counterclaim and Third-Party Petition.  APP32.

Alta objected to RFP 23 in July 2022 stating only that it was "vague, overbroad, and unduly burdensome" and that it "failed to identify the documents it seeks with reasonable particularity." Alta's Amended Responses and Objections to GE's First RFP ("First R&O"), APP62.  Alta's response added the curious note that "[s]ubject to the foregoing, none."  *Id.*  GE sent a letter on July 25th requesting that Alta withdraw its boilerplate objections and clarify whether "none" means that it does not possess any requested documents about the Castleman dispute.  First Meet-and-Confer Letter, APP70.  Alta's counsel refused to withdraw the objections and stated that "[t]o the extent there are documents that are not captured by the search protocol that we agreed to . . . Alta Power stands on its objections."  Alta July 26 Email, APP74.[1]  No mention was made of how the requested documents were in the hands of Alta's outside counsel (and thus within Alta's possession, custody, and control), but that Alta was refusing to collect or produce them because its outside counsel were not selected as custodians.

GE posed three other relevant RFPs in its Second Set of RFPs:

- RFP 57: All documents and communications related to Alta's dispute with Castleman Power Development LLC ("Castleman"), including any pleadings, motions, transcripts, mediation statements, and/or settlement agreements.  APP45.

- RFP 73: All documents and communications concerning Castleman, including all documents related to the allegations in paragraphs 79 and 80 of the Third-Party Petition about how WattStock disclosed confidential information to Castleman, and all documents related to the allegations in paragraph 103 that "Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market."  APP48.

---

[1] The parties' agreed-upon search terms include the term "Castleman*."  GE's Proposed Search Terms, APP77.

- RFP 74: All documents and communications with any financial institutions or lenders, including Deutsche Bank, concerning Castleman.  *Id.*

Alta again responded with boilerplate objections and evasive answers.  Alta noted for RFPs 73 and 74 that "[t]o the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case." Alta's Amended Responses and Objections to GE's Second RFP ("Second R&O"), APP95.  Alta agreed to produce "any non-privileged [documents] it identifies as responsive" to RFPs 73 and 74, but it did not note that it was aware of other documents that it refused to collect from its outside counsel.  *Id.*  For RFP 57, however, which sought all documents and communications related to the Alta dispute, including "mediation statements," Alta did not even hint that it was refusing to collect or produce responsive documents known to exist based on the then-agreed search protocol. Alta replied merely that it "objects to this Request because it is overbroad, vague, and does not seek relevant information."  APP90.  Alta also did not add any objection based on privilege that would alert GE that it was withholding at least some privileged documents from its outside counsel.

On August 18, GE replied in its second meet-and-confer letter requesting clarification of whether Alta was withholding documents related to RFPs 23 and 57.  Second Meet-and-Confer Letter, APP98–103.  GE explained that documents it expected to find in Alta's production were absent.  APP100.  And GE noted that it was implausible that Alta's custodians—including CEO William Phelps, CFO Matt Laterza, and General Counsel Robert Perkins—would have no additional responsive documents regarding the Castleman dispute given its alleged significance for Alta.  APP102–03.  The parties ultimately met to discuss discovery issues on August 31. During this meeting, Alta's counsel clarified for the first time that (1) it was not withholding any

7

responsive documents captured by the current agreed search terms for these RFPs, (2) it had produced all such responsive documents, and (3) all additional relevant documents would be in the possession of its outside counsel. LeGrand Decl. ¶ 4, APP110. Upon learning that Alta was aware of other documents held by its outside counsel that had not been collected or mentioned in any discovery responses, GE's counsel explained that such documents fell within the scope of the requests already made and that if there was any confusion on that point, GE was informing Alta of that fact as of that meeting. *Id* ¶ 5.

GE's counsel followed up the next day reiterating in writing that Alta must collect and produce the relevant documents held by Alta's counsel. September 2022 Correspondence, APP180–81. GE also requested that Alta add search terms that would hit on such documents out of those Alta already collected. APP180. On September 8, Alta categorically refused GE's requests, stating: "no, we are not going to add Robin Gibbs, Lee Kaplan, Richard Mithoff, or any of the other lawyers at their firms as custodians. We also will not run the law firm specific search terms you have requested that we add." APP178. Despite having affirmed at the meeting that Alta possessed no further responsive Castleman documents from its custodians, Alta's counsel then added without explanation that "we will be producing additional documents responsive to your Castleman RFPs." *Id.* For the first time, Alta also mentioned that it was withholding documents for RFP 57 based on privilege. *Id.* On September 14, GE's counsel responded asking what these other documents were, when they would be received, and why they were not mentioned at the meet-and-confer meeting. APP177. Alta produced additional Castleman documents on September 22, purporting to explain their sudden discovery only by saying that they had been "tagged as privileged [but during a re-review had] determined [that] several attachments of privileged documents that contained the term Castleman could be produced." APP176. Later that day, the

parties met to confer, and Alta's counsel reiterated that its document production was substantially
complete and that Alta intended to produce no further Castleman documents.  GE's counsel stated
at the meeting that it would seek relief from the Court related to this issue. LeGrand Decl. ¶ 7,
APP110. That night, GE's counsel sent an email asking for confirmation of Alta's position and
restated that additional Castleman documents within the possession of Alta's outside counsel were
relevant and should be collected and produced.  APP172–73.  Alta's counsel replied on September
27 confirming that it did not anticipate producing further Castleman documents.  APP172.

### C.    The Castleman Documents Produced So Far Reflect Their Relevance to This Dispute, the Limited Timeframe in Which They Occurred, and the Gaps in Alta's Production

The documents Alta has produced so far reflect why the Castleman dispute is relevant to
this dispute and why Alta seems so eager to prevent these documents from being collected or
produced.  Although the Third-Party Petition is vague about what Castleman's "trade secret" claim
is, Alta has produced some letters exchanged between Castleman and Alta that reveal it concerned
two things: (1) whether Alta's employment of Roy Hart and Travis West, who had previously
worked for Castleman in developing its own peaker plants, violated their noncompete agreements,
and (2) whether "Mr. Hart and Mr. West [were] utilizing Castleman's confidential information and
trade secrets" in developing Alta's peaker plants.  *See* Cease-and-Desist Letter, APP144–46.  In
other words, the dispute concerned whether Alta's planned peaker plants copied Castleman's.
Statements Alta's, Castleman's, and Deutsche Bank's counsel made on this subject are relevant to
assessing whether Alta "missed [its] opportunity to be a first mover" in utilizing its "unique"
strategy to succeed in the "niche [peaker] market."  TPP ¶¶ 21–22, 30, 103, 153, APP120–21,
APP134, APP140.  On September 6, 2016, Alta and Castleman ultimately settled their dispute
after participating in a mediation.  Castleman Settlement, APP148–54.  Alta then disclosed the
settlement to Deutsche Bank, who noted on September 9 that its internal counsel and its outside

counsel Baker Botts would review the settlement.  APP156.  On September 12, Alta sent a message

with a subject line of "our counsel" asking if it "would it help to have Baker Botts speak with our

counsel," to which Deutsche Bank replied "I doubt it.  They've given their view, now it's up to

the senior folks here to make a call."  APP158.  The next day, Alta requested a formal termination

of its engagement with Deutsche Bank, citing the "lack of progress over the past week, and the

indication yesterday that this process is not likely to move forward."  APP160.[2]

      While Alta produced some Castleman-dispute documents, even these documents reflect

clear gaps as noted below:

- The Castleman settlement mentions that the "[p]arties participated in voluntary mediation on September 6, 2019."  APP148.  No documents reflecting any mediation statements or any other documents related to the mediation have been produced.

- On August 22, 2019, Matt Laterza (Alta's CFO) wrote Deutsche Bank's internal counsel introducing her to "Kelly Keller at Smyser Kaplan & Veselka" and asked Keller to send the cease-and-desist letter and Alta's response to Deutsche Bank's counsel.  APP162.  This email has not been produced.

- On August 26, 2019, Deutsche Bank's internal counsel replied to Laterza's questions about Deutsche Bank's review of the cease-and-desist letter and noted that "*we have an email chain going with your counsel*, [White & Case], Baker Botts and myself and plan to speak this afternoon."  APP164.  Neither this email thread nor any other emails Alta's counsel received from Deutsche Bank's internal counsel, White & Case, or Baker Botts have been produced.  Alta has produced a single email reflecting certain documents that were sent to White & Case and Baker Botts on August 28, 2019, but this contains no reply.  APP167.

- No documents reflecting any views that Baker Botts or Deutsche Bank shared with Alta about the Castleman dispute or settlement have been produced.

- No document of any type has been produced reflecting that Castleman had learned of Alta's financing from WattStock or that Alta or any other party believed that to be the case.  Given

---

[2] The Alta financing was likely already doomed by the time the Castleman dispute arose.  On August 13, 2019, Deutsche Bank replied to the letter Alta cites regarding the GE/WattStock relationship and noted that it "does not offer the contractual protection we were seeking.  I've spoken with my internal management and several members of our investment committee. Candidly, *we will only be able to proceed with this transaction if GE is subject to an unconditional obligation to step into Wattstock's contract in the event of a Wattstock default*."  APP169 (emphasis added).  This issue was not resolved by the time Alta terminated its engagement with Deutsche Bank.

what Alta has asserted in its Third-Party Petition, it seems implausible that there are no documents reflecting or even discussing how Alta came believe that WattStock disclosed confidential information to Castleman.

## III.    LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value.  If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).  Accordingly, "relevance" is an exceedingly low standard.  It includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

If a party refuses to disclose discoverable material in accordance with this Rule, Rule 37(a) of the Federal Rules of Civil Procedure allows an opposing party to move to compel disclosure of discoverable materials.  The party moving to compel discovery bears the burden of establishing that its "document requests are within the scope of permissible discovery," at which point "the burden shifts to [the party resisting discovery] to show why discovery should not be permitted." *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex., Dec. 3, 2007).  "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-CV-2719-B, 2018 WL 3655574, at *6 (N.D. Tex. July 16, 2018) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

## IV.    ARGUMENT

### A.    Documents Held by Alta's Outside Counsel Are Discoverable.

As an initial matter, the fact that some of the relevant and responsive documents are in the hands of Alta's outside counsel is immaterial to their discoverability. Indeed, "it is a well settled principle that if the client may be compelled to produce documents in his possession[,] then the attorney may be compelled to produce the same documents when they are in his custody." *In re Ruppert*, 309 F.2d 97, 98 (6th Cir. 1962). If it were otherwise, "then the client could always evade his duty to produce by placing the documents with his attorney." *Id.*; *see also can Holdings, Inc. v. U.S. Dep't of Justice*, No. 3:07-CV-2084-B, 2008 WL 2002050, at *5 n.3 (N.D. Tex. May 9, 2008) ("Documents within an attorney's files are discoverable as constructively possessed by the client.").

The caselaw does nothing to distinguish between outside and internal counsel for this principle. Quite the contrary, courts across the country have repeatedly held that "documents held by outside counsel are in the possession, custody, and control of their clients." *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (citation omitted); *see also Wingnut Films, Ltd. v. Katja Mot. Pictures Corp.*, No. CV 05-1516-RSWL SHX, 2007 WL 2758571, at *12 (C.D. Cal. Sept. 18, 2007) ("Documents held by outside counsel that pertain to work performed for a client are within the 'possession, custody or control' of the client for purposes of Rule 34."); *Metro. Prop. and Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, CV 15-12939-LTS, 2019 WL 13180448, at *2 (D. Mass. Feb. 1, 2019). Indeed, "it appears uncontroversial that things held by a party's outside counsel are still within that party's control." *In re Anderson News, LLC*, 615 B.R. 45, 55 (Bankr. D. Del. 2020).

There can be no serious dispute that Alta has possession, custody, and control over documents held by its outside counsel. So the only issue remaining is whether the documents are

responsive to any of GE's discovery requests.  They plainly are—and Alta doesn't contend

otherwise.  In addition to requesting "all communications between [Alta] and Ryan Castleman

and/or Castleman Power Development," GE asked for "all documents and communications related

to Alta's dispute with Castleman Power Development," "all documents concerning Castleman,"

and "all documents . . . with any financial institutions or lenders, including Deutsche Bank,

concerning Castleman."  APP32,  APP45, APP48.  GE's discovery requests expressly define the

terms "Alta" and "You" to include "agents, representatives, or others that act for or on its behalf."

APP16, APP37.  It is therefore unsurprising that Alta never contended during the parties' multiple

meet and confers that the documents held by its outside counsel are not responsive to any of GE's

discovery requests.  Alta therefore has no reasonable basis to withhold non-privileged documents

held by its outside lawyers that relate to Alta's dispute with Castleman.  Alta should be ordered to

produce those documents.

### B.    The Castleman Documents Are Plainly Relevant.

Alta's responses to GE's requests for documents related to the Castleman dispute include

relevance objections.  Alta argues that the requests "fail[] to seek information relevant to any cause

of action or issue in this case."  APP94–95.  But Alta's own Third-Party Petition puts the

Castleman dispute in issue.  Indeed, its lost profits claim against GE is based entirely on its

contention that Castleman threatened Alta with "frivolous" litigation with the intent and effect of

scuttling Alta's financing.  And, at minimum, communications between Alta's counsel and third

parties about the merits of Castleman's claim (again, that Alta had copied features of Castleman's

business model) bears directly on Alta's contention that it had a "unique strategy" for peaker plants

and was destined to be the "first mover" in that space.

Relevant information includes "any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case."  *Merrill*, 227 F.R.D. at

470 (quoting *Sanders*, 437 U.S. at 351).  This is not a stringent test.  After all, "[t]o be relevant

under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or

defense or have strong probative force or value."  *Chung*, 321 F.R.D. at 280.  That is to say,

"[u]nless it is clear that the information sought can have *no possible bearing* on the claim or

defense of a party, the request for discovery should be allowed."  *SEC v. Brady*, 238 F.R.D. 429,

437 (N.D. Tex. 2006) (emphasis added).

The Castleman documents clear this low hurdle with room to spare.  Indeed, these

documents are *central* to this case.  More specifically, they go directly to Alta's claim that

WattStock "proximately caused injury to Alta Power" because its "breach [of a confidentiality

agreement] caused Alta Power to lose project financing for its unique strategy for developing

power generation projects in the Texas market."  APP136 ¶ 116.  The documents are relevant to

this claim in several ways, each independently sufficient.

First, they are necessary to assess the causal link between the Castleman dispute and Alta's

failure to obtain financing.  Just because Alta ran into trouble with Deutsche Bank *after* the

Castleman dispute does not mean that the latter *caused* the former.  Although "[t]hese events

followed one another in time . . . chronology is not causation."  *Williams v. Hampton*, 797 F.3d

276, 297 (5th Cir. 2015) (Elrod, J., concurring).  Alta's request for financing from Deutsche Bank

and other financial institutions surely came up during the Castleman dispute—indeed, Alta's

Third-Party Petition makes clear that Alta itself disclosed Castleman's litigation threat to Deutsche

Bank.  Thus, documents and communications related to the Castleman dispute are likely to bear

directly on how, if at all, the Castleman dispute impacted Alta's standing with Deutsche Bank and

other prospective lenders and whether the Castleman dispute actually caused Alta to lose funding

for its proposed project.  GE is aware that Alta has these types of documents in its possession

(constructively through its outside counsel or otherwise).  For instance, Alta's outside counsel corresponded in an email thread with Deutsche Bank's internal counsel and Deutsche Bank's outside counsel White & Case and Baker Botts regarding the Castleman dispute.  APP164.  Alta has failed to produce any documents reflecting these discussions.  Baker Botts and Deutsche Bank also appear to have explained their assessment of the Castleman dispute to Alta, but no documents reflecting this assessment have been produced.  APP158.

Second, the documents related to the Castleman dispute "reasonably could lead to other matter[s]" that are directly relevant to Alta's claim that WattStock is responsible for leaking information about Alta's allegedly "imminent financing" to Castleman.  *Merrill*, 227 F.R.D. at 470.  Even *if* the Castleman dispute caused Alta's financing troubles, the documents might reveal that Castleman learned about Alta's proposed project from some source other than WattStock.  The documents might also show how or why Alta came to believe that WattStock breached its nondisclosure agreement and purportedly shared confidential information about Alta's proposed project with Castleman.  So Alta cannot show that "the information can have no possible bearing on" GE's defenses to its claims.  *Brady*, 238 F.R.D. at 437 (emphasis added).

Finally, the documents related to the Castleman dispute are likely to shed light on the substance of Alta's claim that it had developed a "unique strategy for developing power generation projects in the Texas market" and would have been the "first mover" in the "niche" peaker plant market.  APP 136 ¶ 116.  This explains why Alta tries so hard to paint Castleman's litigation threat as "frivolous" and its payment to resolve the Castleman dispute as an "extortion fee."  APP131 ¶ 80.  If Castleman's claim that Alta copied the peaker plant strategy that Castleman had previously developed and deployed is true, then Alta's allegation that it had a "unique strategy" to be a first mover in this market is false.  Alta's and Castleman's representations about the merits of

Castleman's litigation threat, together with Deutsche Bank's and Baker Botts' assessments of those representations, will likely be dispositive.  And here, too, GE is aware that Alta has withheld key documents.  For example, Alta's produced documents indicate that a mediation took place on the same day that Alta entered into a settlement agreement with Castleman.  APP148.  But Alta has failed to produce any documents from that mediation.

### C.    Collecting and Producing the Documents Is Not Unduly Burdensome.

With the documents' relevance established, the burden shifts to Alta to "show *specifically how each document request* is overly broad, burdensome, or oppressive."  *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010) (emphases added).  Moreover, it must do so "[i]n a *nonconclusory fashion*."  *Id.* (emphasis added).  Alta cannot carry this burden.

The inquiry here turns on whether the documents are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Chung*, 325 F.R.D. at 589 (quoting Fed. R. Civ. P. 26(b)(1)).

Applied here, these factors compel production.  To reiterate, the Castleman documents go directly to one of Alta's principal claims in this case: that WattStock leaked confidential information to Castleman, who then threatened Alta with a "frivolous" lawsuit with the intent and effect of destroying Alta's ability to obtain financing.  The requested documents will likely confirm or disprove Alta's allegations that WattStock breached the confidentiality agreement it had with Alta and that the Castleman dispute caused Alta to lose financing.  And they will likely shed light as well on the merits of Alta's claim that it was positioned to become the "first mover" in a "niche" peaker plant market.  The absence of these documents substantially undermines GE's ability to prepare a defense.  Additionally, the potential time and cost investment required to produce these

documents are dwarfed by the millions of dollars that Alta seeks in "lost profits" here—as the documents GE seeks are cabined to primarily the single month between Castleman's service of its cease-and-desist letter and the termination of Alta's financing efforts with Deutsche Bank and any other prospective lender.  GE's requests are proportional to the needs of this case, and Alta's boilerplate, conclusory objections to the contrary should be overruled.  *See* First R&O, APP62; Second R&O, APP90, APP94–95.

> **D.     Alta Offers No Other Valid Basis for Resisting This Discovery.**

With questions of possession, relevance, and undue burden out of the way, nothing stands between Alta and its obligation to produce the documents.  Although Alta belatedly asserted privilege for RFP 57 and had previously asserted privilege for RFPs 73 and 74, no privilege applies to Alta's communications with Castleman, Deutsche Bank, White & Case, or Baker Botts.  *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege.").  Similarly, that the parties shared an initial set of custodians at the start of discovery did not relieve Alta of its obligation to answer truthfully whether it had relevant documents within its possession, custody, or control (nor prevent GE's efforts to obtain those additional documents).

## V.     CONCLUSION

For the foregoing reasons, GE respectfully requests that the Court grant its motion and order Alta to promptly (1) collect and produce relevant documents currently in the possession of Alta's outside counsel as requested in Requests for Production 23, 57, 73, and 74 and (2) search for and produce relevant documents currently within Alta's possession that involve Alta's outside counsel for these same RFPs.

Dated:  October 5, 2022

Respectfully submitted,

/s/   *Andrew LeGrand*
John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
        ALegrand@gibsondunn.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/ Andrew LeGrand*
Andrew LeGrand

*Attorney for General Electric*
*International, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Bankruptcy Rule 7007-1, I certify that on August 31, 2022 and September 22, 2022, counsel for GE met and conferred with counsel for Alta Power LLC. The parties were unable to reach agreement and have reached an impasse, leaving the open issues for the court to resolve. The motion is opposed by Alta Power LLC.

*/s/ Andrew LeGrand*
Andrew LeGrand
*Attorney for General Electric*
*International, Inc.*