**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel: 214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com
*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** | **Case No. 21-31488-sgj11V** |
| *Debtor.* | **Chapter 11**<br>**Subchapter V** |
| **WATTSTOCK LLC,** | **Adv. No. 21-03083-sgj** |
| *Plaintiff,* | *Removed from the District Court of Dallas County, Texas, 116th Judicial District* |
| v. | |
| **ALTA POWER LLC,** | **Case No. DC-20-08331** |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| v. | |
| **WATTSTOCK LLC,** | |
| *Counter-Defendant,* and | |
| **GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES,** | |
| *Third-Party Defendant.* | |

**GENERAL ELECTRIC INTERNATIONAL, INC.'S APPENDIX IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM ALTA POWER LLC**

Third-Party Defendant General Electric International, Inc. d/b/a GE Power Services ("GE") respectfully submits this Appendix in Support of its Motion to Compel Production of Documents from Alta Power LLC.

| Exhibit | Description | App. Pages |
|---|---|---|
| A | Alta Power's Rule 26 Disclosures served August 3, 2022 | 1-13 |
| B | General Electric International, Inc.'s First Set of Interrogatories and Requests for Production of Documents to Alta Power LLC served June 22, 2021 | 14-34 |
| C | General Electric International, Inc.'s Second Set of Requests for Production of Documents to Alta Power LLC served June 23, 2022 | 35-50 |
| D | Alta Power, LLC's First Amended Objections and Responses to General Electric's First Request for Production served July 2, 2022 | 51-63 |
| E | Letter from Andrew LeGrand to John B. Lawrence and Joseph Golinkin, II dated July 25, 2022 | 64-71 |
| F | Email chain between counsel for General Electric International, Inc. and Alta Power, LLC dated July 26, 2022 | 72-75 |
| G | General Electric International, Inc.'s List of Proposed Search Terms for Alta Power, LLC dated June 23, 2022 | 76-78 |
| H | Alta Power, LLC's Objections and Responses to General Electric's Second Request for Production served July 25, 2022 | 79-96 |
| I | Letter from Andrew LeGrand to John B. Lawrence and Joseph Golinkin, II dated August 18, 2022 | 97-107 |
| J | Declaration of Andrew LeGrand in Support of General Electric International, Inc.'s Motion to Compel Production of Documents from Alta Power LLC dated September 30, 2022 | 108-114 |
| K | Alta Power LLC's First Amended Answer and Counterclaim and Original Third-Party Petition filed February 24, 2021 | 115-142 |
| L | Letter from David M. Gregory to Alta Power LLC, Roy J. Hart, and Travis West dated August 16, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0040837-Alta 0040839 | 143-146 |

| Exhibit | Description | App. Pages |
|---------|-------------|------------|
| M | Confidential Settlement Agreement and Mutual Release between Castleman Power Development LLC, Alta Power LLC, Roy Hart, and Travis West dated September 6, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0058007-Alta 0058013 | 147-154 |
| N | Email chain between Matthew Laterza and Joshua Presner dated September 9, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0027636 | 155-156 |
| O | Email chain between Matthew Laterza, Jeremy Eisman, et al. dated September 12, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0058818 | 157-158 |
| P | Email from Matthew Laterza to Joshua Presner et al. dated September 13, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0010074 | 159-160 |
| Q | Email from Matthew Laterza to Jacqueline Elson and Kelley Keller dated August 22, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0058223 | 161-162 |
| R | Email chain between Jacqueline Elson, Matthew Laterza, et al. dated August 26, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0018967-Alta 0018968 | 163-165 |
| S | Email from Lee Kaplan to Owen Pell, et al. dated August 28, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0078636 | 166-167 |
| T | Email from Joshua Presner to Matthew Laterza, et al. dated August 13, 2019, produced by Alta Power, LLC in this litigation and bates numbered Alta 0017997 | 168-169 |
| U | Email chain between counsel for General Electric International, Inc. and Alta Power, LLC dated September 14, 2022 | 170-182 |

Dated:  October 5, 2022

Respectfully submitted,

/s/   Andrew LeGrand
John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
        ALegrand@gibsondunn.com

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel

of record pursuant to the Federal Rules of Civil Procedure.

*/s/ Andrew LeGrand*
Andrew LeGrand

*Attorney for General Electric
International, Inc.*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WATTSTOCK LLC,

     *Plaintiff/Counter Defendant*,

v.

ALTA POWER LLC,

     *Defendant/Counter Plaintiff,*

v.

GENERAL ELECTRIC INTERNATIONAL
INC., d/b/a GE POWER SERVICES,

     *Third-Party Defendant.*

Case No. 3:21-CV-03183-X

Adv. Proc 21-03083

## ALTA POWER'S RULE 26 DISCLOSURES

TO:    Third-Party Defendant General Electric International, Inc ("GE"), by and through its attorneys of record, Trey Cox, Andrew Legrand, and Pooja Patel of Gibson, Dunn & Crutcher LLP AND Plaintiff/Counter-Defendant WattStock LLC ("WattStock") by and through its counsel of record, Thomas D Berghman, Musnch Hardt, Kopf & Harr, PC.

       Alta Power LLC ("Alta" or "Alta Power") makes these initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1).

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *Jeb Golinkin*
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
Telephone:  713.955.4025
Facsimile:  713.955.9644
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

BAKER BOTTS L.L.P.

Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie L. Wallace
State Bar No. 24115920
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
Kirstie.wallace@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC

2

APP.3

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the above and foregoing was sent to the following counsel of record by electronic mail on August 3, 2022:

Trey Cox
Andrew Legrand
Pooja Patel
Gibson Dunn & Crutcher LLP
2001 Ross Ave Suite 2100
Dallas, TX 75201
*Attorneys for Third-Party Defendant*
*General Electric International, Inc.*

And

Thomas D Berghman
Munsch, Hardt, Kopf & Harr, PC;
500 N. Akard St., Ste. 500
Dallas, TX 75201
*Attorneys for Wattstock LLC*

_____*/s/ Jeb Golinkin*_____
Jeb Golinkin

APP.4

## A. INDIVIDUALS WITH DISCOVERABLE INFORMATION

1. The names, addresses, and telephone numbers of individuals likely to have discoverable information that Alta Power may use to support its claims or defenses are:

| Name and Contact Information | Description |
|---|---|
| **Matthew Laterza**<br>c/o Jordan, Lynch & Cancienne PLLC<br>1980 Post Oak Blvd., Ste. 2300<br>Houston, Texas 77007<br>(713) 955-4019 | Mr. Laterza is the Chief Financial Officer of Alta Power. Mr. Laterza has knowledge related to Alta Power's business, as well as knowledge of the events that gave rise to this case, including the representations made by GE and Wattstock. Mr. Laterza's knowledge includes but is not limited to Alta Power's efforts to obtain the necessary supplies, equipment, permits, financing, and all other necessary items/information in order to implement Alta Power's business plan. Mr. Laterza has knowledge related to Alta Power's interactions with GE, WattStock, and other third parties related to its efforts to implement its business plan. He also has knowledge concerning the damages sustained as a result of GE and WattStock's actionable conduct. |
| **William Phelps**<br>c/o Jordan, Lynch & Cancienne PLLC<br>1980 Post Oak Blvd., Ste. 2300<br>Houston, Texas 77007<br>(713) 955-4019 | Mr. Phelps is Chief Executive Officer of Alta Power. Mr. Phelps has knowledge related to Alta Power's business, as well as of the events that gave rise to this case. This knowledge includes but is not limited to Alta Power's efforts to obtain the necessary supplies, equipment, permits, financing, and all other necessary items/information in order to implement Alta Power's business plan. Mr. Phelps has knowledge related to Alta Power's interactions with GE, WattStock, and other third parties related to its efforts to implement its business plan. He also has detailed knowledge concerning the damages sustained as a result of GE and WattStock's actionable conduct. |

APP.5

| | |
|---|---|
| **Travis West**<br>c/o Jordan, Lynch & Cancienne PLLC<br>1980 Post Oak Blvd., Ste. 2300<br>Houston, Texas 77007<br>(713) 955-4019 | Mr. West has knowledge concerning, but not limited to, information related to Alta Power's efforts to obtain peaker power units and GE and WattStock's involvement in that process. |
| **Carlos Gaset**<br>c/o Jordan, Lynch & Cancienne PLLC<br>1980 Post Oak Blvd., Ste. 2300<br>Houston, Texas 77007<br>(713) 955-4019 | Mr. Gaset has knowledge concerning, but not limited to, information related to Alta Power's efforts to obtain peaker power units and GE and WattStock's involvement in that process. |
| **Jay Manning**<br>c/o Munsch Hardt Kopf & Harr PC<br>500 N Akard St, Suite 3800<br>Dallas, TX 75201<br>(214) 855-7554 | Mr. Manning is President and EVP Sales of WattStock. He has knowledge related to the TruePackage Program and GE/WattStock's practice of selling and servicing both new and used LM6000s. He also has knowledge of WattStock's relationship/communications/interactions with and related to GE, Alta Power, and Castleman. Manning also has knowledge related to the availability and pricing of LM6000s, and WattStock's representations and communications related to the same. Mr. Manning also has knowledge concerning the damage caused to Alta Power by WattStock and GE, and other information related to this case. Finally, Manning has knowledge regarding WattStock's financial condition during the periods at issue in this case. |
| **Patrick Jenevein**<br>c/o Munsch Hardt Kopf & Harr PC<br>500 N Akard St, Suite 3800<br>Dallas, TX 75201<br>(214) 855-7554 | Mr. Jenevein was Chairman of Wattstock. He has knowledge of all aspects of the TruePackage Program, WattStock's business, WattStock's financial condition, and all of the events that form the basis of Alta Power's claims against both WattStock and GE in this case. |

APP.6

| | |
|---|---|
| **Pete Watson**<br>c/o Munsch Hardt Kopf & Harr PC<br>500 N Akard St, Suite 3800<br>Dallas, TX 75201<br>(214) 855-7554 | Mr. Watson is VP, CTP Operations for WattStock. Mr. Watson has knowledge related to the TruePackage Program and GE/WattStock's practice of selling and servicing both new and used LM6000s. He also has knowledge of WattStock's relationship/communications/interactions with and related to GE, Alta Power, and Castleman. Mr. Watson also has knowledge related to the availability and pricing of LM6000s. Mr. Watson also has knowledge concerning the damage caused to Alta Power by WattStock, and other information related to this case. |
| **Andrew Herr**<br>c/o Munsch Hardt Kopf & Harr PC<br>500 N Akard St, Suite 3800<br>Dallas, TX 75201<br>(214) 855-7554 | Mr. Herr is CFO of WattStock. He has knowledge of WattStock's operations, including its financial affairs, products, and services offered, and books and records. Mr. Herr also has knowledge of WattStock's relationship with GE/ communications with GE and Alta Power/ interactions with and related to GE, Alta Power, Castleman, and of the damage caused by WattStock, and other information related to this case. Mr. Herr also has knowledge related to WattStock's financial condition during the period at issue in this case. |
| **Alex Babu**<br>Address Unknown<br>(346) 269-9514<br>Alex.Babu@Siemens-Energy.com | Mr. Babu was Sales Manager for GE Power Services. Mr. Babu has detailed knowledge of all aspects of the TruePackage program. Mr. Babu has knowledge related to the availability of units at issue, including pricing and costs of those units. Mr. Babu also is aware of GE's relationship with Wattstock and Alta Power, and the representations made by Wattstock and GE to Alta Power. |

| | |
|---|---|
| **Lance Herrington**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Lance Herrington is the Global Sales Leader, Aero Services for GE. He has knowledge of all aspects of the TruePackage Program and GE's practice of selling and servicing both new and used LM6000s (including costs and availability). He has knowledge of all aspects of GE's TruePackage Program, as well as all of the events that form the basis of Alta Power's claims against both WattStock and GE in this case. Mr. Herrington has knowledge of the representations made by GE regarding the TruePackage Program (both to Alta Power and others). |
| **Clayton Yancy**<br>Solar Turbines<br>10203 Sam Houston Park Dr.<br>Houston, TX 77064<br>(713) 895-2300 | Mr. Yancy was a Sales Application Engineer. Mr. Yancy has detailed knowledge of all aspects of the Truepackage program. He also has detailed knowledge related to GE's relationship, interactions, and work done by GE with/for WattStock and Alta Power, and other information related to this case. |
| **Daniel D. Hill**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Hill has knowledge related to all aspects of GE's TruePackage Program and GE's practice of selling and servicing both new and used LM6000s. He also has detailed knowledge related to the events that gave rise to this case, including but not limited to the work performed by GE for WattStock and Alta Power. |
| **Cherrylyn Aranas**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Ms. Aranas is a Sales Applications Engineer at GE. Ms. Alston has knowledge about GE's dealings with Alta Power and Wattstock, and the work performed for both. She also has knowledge of all aspects of the TruePackage Program and GE's practice of selling and servicing both new and used LM6000s, and other knowledge related to this case. |

| | |
|---|---|
| **Ashley Alston (Young)**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Ms. Alston was Lead Commercial Proposal manager for GE Power Services. In that capacity, she served as "sole aeroderivative commercial manager" for Texas. Ms. Alston has knowledge about GE's dealings with Alta Power and Wattstock, and the work performed for both. She also has knowledge of all aspects of the TruePackage Program and GE's practice of selling and servicing both new and used LM6000s. She also has knowledge of the risk analysis conducted by the "PMO" office of the "Alta Opportunity." |
| **Gavin Hall**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Hall is Global Project Quality Leader at GE. Previously, Mr. Hall was Project Management Director-Aero, and Senior Project Manager for GE Power. Mr. Hall has knowledge related to GE's industrial gas turbine projects including all aspects of GE's TruePackage Program. Mr. Hall has knowledge related to GE's TruePackage Program, its dealings with Wattstock and Alta, and other information related to this case. Mr. Hall also has knowledge related to analysis conducted by GE of the risk/rewards posed by the "Alta Opportunity." |
| **Saieed Tajbakhsh**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Tajbakhsh was PMO Risk Leader and assisted GE analyze the "Alta Opportunity." He has knowledge related to the events that gave rise to this case. |
| **Heather Jubber**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Ms. Jubber is the Director of Sales Operations for GE Power. Previously, Ms. Jubber served as Senior Sales Operations Leader at GE Power. Ms. Jubber has knowledge of the various business factors considered by GE in its business interactions with Alta Power and others. She also has knowledge of all aspects of the TruePackage Program and GE's practice of selling and servicing both new and used LM6000s, and other information related to this case. |

APP.9

| | |
|---|---|
| **Amol Mody**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Mody has knowledge related to GE's internal analysis of the "Alta Opportunity," and other facts related to this case. |
| **Patrick Georges**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Georges is a Manager IV, Commercial at General Electric. He has knowledge of all aspects of GE's TruePackage Program, and of GE's business and its interactions with Alta Power, Wattstock, and of the Alta projects generally. |
| **Nilay Basegmez**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Ms. Basegmez has knowledge related to the costs associated with LM6000 units at issue in this case. |
| **Fernando Celdran**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Celdran has knowledge related to costs associated with various LM6000 units at issue in this case. |
| **James Canon**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Canon is GE's head of Conversions, Modifications & Upgrades in North America. He has knowledge of all aspects of the TruePackage Program and GE's practice of selling and servicing both new and used LM6000s. He has knowledge of GE's relationship with Wattstock, its work related to Alta, the termination fees attached to the LM6000s WattStock and GE considered selling Alta, GE's interactions with Castleman, GE's interactions with financiers, and other information related to this case. |
| **Ozgun Gun**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Gun has knowledge related to the undisclosed termination fees and other events giving rise to the litigation. |
| **Luis Barbero**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Barbero has knowledge related to the costs associated with the units at issue and other events giving rise to this litigation. |

| | |
|---|---|
| **Valeiano Bernardi**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Bernardi has knowledge concerning GE's representations to Alta Power and other event giving rise to this litigation, including undisclosed termination fees. |
| **Samuel Cathey**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Cathey is GE's General Manager of Project Management Operations. He has knowledge related to the events giving rise to this litigation. |
| **Xavi Mesegeur**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Mesegeur has knowledge related to the costs associated with the units at issue and other events giving rise to this litigation. |
| **Joshua Minnix**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Minnix has knowledge related to all aspects of the TruePackage Program, as well as GE's interactions and actions with Alta Power and WattStock related to this case. |
| **Mohamed Nabil Talhaoui**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Talhoui has information related to the costs associated with the units at issue and other events giving rise to this case. |
| **Selma Kivran**<br>c/o Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>(214) 698-3193 | Mr. Kivran was General Manager—Aero Product Line, GE Power Services. In that capacity, she signed the June 26, 2017 Memorandum of Understanding between Wattstock and GE. She has knowledge related to GE's relationship with Wattstock, and the work performed related to Alta. |

APP.11

| | |
|---|---|
| **Abdullah Kurt**<br>Pro-Per Energy Services<br>Esentepe M. Kasap S.<br>No:4 K:1 D:1<br>34394 Sisli/Istanbul<br><br>or<br><br>5718 Westheimer Rd. Ste. 1000<br>Houston, TX 77057<br><br>Abdullah@pro-per.net<br>+90 (212) 347-5151 | Mr. Kurt is Co-Founder and Chairman of Pro-Per Energy Services. He has knowledge related to the negotiations related to the purchases of peaker units at issue in this case. |
| **Soner Ozkan**<br>Pro-Per Energy Services<br>Esentepe M. Kasap S.<br>No:4 K:1 D:1<br>34394 Sisli/Istanbul<br><br>or<br><br>5718 Westheimer Rd. Ste. 1000<br>Houston, TX 77057<br><br>Ozkan@pro-per.net<br>+90 (212) 347-5151 | Mr. Ozkan has knowledge related to the preparation of the visual inspection reports prepared by Pro-Per related to the various Turkish units considered for purchase by Alta Power. |
| **Ibrahim Kurt**<br>Pro-Per Energy Services<br>Esentepe M. Kasap S.<br>No:4 K:1 D:1<br>34394 Sisli/Istanbul<br><br>or<br><br>5718 Westheimer Rd. Ste. 1000<br>Houston, TX 77057<br><br>kurt@pro-per.net<br>+90 (212) 347-5151 | Mr. Kurt has knowledge related to the preparation of the visual inspection reports prepared by Pro-Per related to the various Turkish units considered for purchase by Alta Power. |
| **Ryan Castleman**<br>5850 San Felipe St.<br>Houston, TX 77057<br>713-275-7999 | Mr. Castleman is the CEO of Castleman Power development. He has knowledge related to the peaker power business model, as well as his interactions with GE and/or WattStock related to Alta Power. |

11

APP.12

**B. DISCOVERABLE DOCUMENTS, ELECTRONICALLY STORED INFORMATION & TANGIBLE THINGS**

2. Alta Power has produced discoverable documents pursuant to the search terms agreed to by the parties.  *See* Alta0000001-Alta0076408

**C. INFORMATION RELATED TO CALCULATION OF DAMAGES**

3. As described in Alta Power LLC's First Amended Answer and Counterclaim and Original Third Party Petition, Alta Power seeks to recover actual, consequential, and exemplary damages from both GE and WattStock. These damages include, but are not limited to:

- Roughly $1.5 million for payments made in December 2019 and January 2020 to Wattstock for GE;

- Roughly $10 million Alta Power spent based on GE/WattStock's representations;

- The revenue Alta Power would have made serving the market as described in its Second Amended Counterclaim;

- Attorneys' fees.

The documents supporting these damages can be found in Alta's existing productions (Alta0000001-Alta0076408).

Alta Power will supplement this response consistent with its obligations under the Federal Rules of Civil Procedure.

**D. INSURANCE**

4. *N/A.*

# EXHIBIT B

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC,<br>*Plaintiff,*<br><br>v.<br><br>ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party*<br>*Plaintiff,*<br><br>v.<br><br>WATTSTOCK LLC,<br>*Counter-Defendant, and*<br><br>GENERAL ELECTRIC INTERNATIONAL,INC.,<br>d/b/a GE POWER SERVICES,<br>*Third-Party Defendant.* | IN THE DISTRICT COURT OF<br><br><br><br><br>DALLAS COUNTY, TEXAS<br><br><br><br>116TH JUDICIAL DISTRICT |

**GENERAL ELECTRIC INTERNATIONAL, INC.'s FIRST SET OF**
**INTERROGATORIES AND REQUESTS FOR PRODUCTION**
**OF DOCUMENTS TO ALTA POWER LLC**

To:    Defendant/Third-Party Plaintiff, Alta Power LLC ("Alta")
      By and through its attorneys of record:
      JORDAN, LYNCH & CANCIENNE PLLC
      Michael Cancienne
      Kevin Jordan
      Joseph W. Golinkin II
      1980 Post Oak Blvd., Suite 2300
      Houston, Texas 77056

Third-Party Defendant, General Electric International, Inc. ("GE") serves the above

captioned First Set of Interrogatories and Requests for Production of Documents (collectively,

the "Requests") on Defendant/Third-Party Plaintiff Alta Power LLC ("Alta"). Alta is required to

serve on undersigned counsel for Third-Party Defendant written responses to the Requests,

including verified responses, and to produce documents responsive to these Requests within

thirty (30) days and as otherwise required by the Texas Rules of Civil Procedure.

2

## DEFINITIONS AND INSTRUCTIONS

As used in these Interrogatories and Requests for Production of Documents, the following Definitions and Instructions apply:

**"Alta", "You", and "Your"** refers to Alta Power LLC and any of its officers, employees, agents, representatives, or others that act for or on its behalf.

**"WattStock"** means WattStock LLC and any of its officers, employees, agents, representatives, or others that act for or on its behalf.

**"GE"** refers to General Electric International, Inc. and any of its officers, employees, agents, representatives, or others that act for or on its behalf.

**"First Amended Answer and Counterclaim and Third-Party Petition"** refers to the pleading filed by you under that title in the above captioned lawsuit.

**"Communication"** or **"communications"** refers to the transmission or exchange of information, either orally or in writing, and includes without limitation any conversation, letter, handwritten notes, memorandum, inter or intraoffice correspondence, electronic mail, deleted electronic mail, text messages, deleted text messages or any other electronic transmission, telephone call, telegraph, telex telecopy, facsimile, cable, conference, tape recording, video recording, digital recording, discussion, or face-to-face communication.

**"Document"** means all hard copy documents and all data or information that exists in electronic or magnetic form (including writings, drawings, graphs, charts, photographs, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, into reasonably usable form). "Documents" shall include writings of every kind, both originals and all non-identical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or

APP.16

transmitted internally by you, or intended for transmitted to any other person or entity (including any governmental agency or department or other governmental personnel). "Documents" shall include handwritten, typewritten, printed, photocopied, photographed and/or recorded matter. It shall include communications in words, symbols, pictures, sound records, films, tapes, and information stored in or accessible through computer or other information storage or retrieval systems, together with the codes and/or programming instructions or other materials necessary to understand and use such systems. (i.e., electronically stored information as provided by the Texas Rules of Civil Procedure). For purposes of illustration and not limitation, the term "documents" shall include correspondence; transcripts of testimony or statements; letters; handwritten or printed notes, meeting minutes; reports; papers; files; books; records; contracts; agreements; telegrams; teletypes; facsimiles; diaries; calendars; bulletins; notices; circulars; announcements; instructions; schedules; notes or summaries or other records or recordings of any conversations, conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, invoices, purchase orders or other records of obligations or expenditures; canceled checks, vouchers, receipts, or other records of payments; affidavits; charts; drawings; specifications; manuals; brochures; and memoranda of all kinds to or from any person(s), entity(s), or agency(s).

Electronically stored information means data or information that exists in electronic or magnetic form and is retrievable in perceivable form, any data on server hard drives or on personal or company computers, and any system backup tapes of any electronically created or stored information, including the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise).

Per the Rule 196.4 of the Texas Rules of Civil Procedure, electronically stored information shall be produced in the following forms: any electronic mail and other electronic correspondence, whether on an exchange or other similar system, and whether active, archived, unsent, or in a sent or deleted-items folder; activity listings of electronic mail receipts; text messaging, chats, and instant messages; video, audio, and image files; word processing and spreadsheet files, databases, unorganized data, document metadata; presentation files; website activity and history; information posted on social networking websites; sound recordings, voice mails and video mail; and computer programming information regardless of how or where the information is stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. If, and to the extent that electronically stored information is maintained in a database or other proprietary software, the production shall include documentation and software that will enable access to the ESI or database as such access would occur in the ordinary course of business.

If you cannot produce responsive documents or electronically stored information according to these Instructions, Third-Party Defendant requests immediate notice of such circumstances so an alternative means of production can be determined.

If any Document responsive to any Request has been destroyed, lost, erased, misplaced, or is otherwise unavailable or no longer in your possession or control, identify the document and provide an explanation as to why the Document is no longer available or in your possession or control. Identification of each Document shall include without limitation the following information: date of disposal, manner of disposal, reason for disposal, persons authorizing such disposal, persons having knowledge of the disposal, and any persons disposing of the Documents.

5

**"Identify" or "Identification"** when used with reference to a natural person means to state his or her full name, residential address, present or last known business address and telephone number, and present or last known employer.

**"Identify" or "Identification"** when used with reference to a corporation, limited liability company, or other business organization means to state its full name and any other names under which it does business, its form or organization, its state of incorporation, its present or last known address, and the identity of the officers or other persons who own, operate, or control the entity.

**"Identify" or "Identification"** when used with reference to a document means to state the number of pages and nature of the document (e.g., email, letter, memorandum, contract, etc.), its title, its date, the name or names of its authors and recipients, and its present location and custodian.

**"Identify" or "Identification"** when used with reference to a written communication means to identify the document(s) in which any part of the communication was written.

**"Identify" or "Identification"** when used with reference to a non-written communication means to identify each person participating in the communication and to state the date, manner, place, and substance of the communication.

## INTERROGATORIES

### Interrogatory Number 1:

In Paragraph 1 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that "[t]his case is necessitated by repeated misrepresentation made by GE and WattStock to Alta Power concerning GE/WattStock's relationship, capabilities, and program to entice Alta Power to use GE/WattStock as the source of used aeroderivative gas turbines." For each

6

statement or communication made by any person which you claim to constitute a "misrepresentation," please identify the communication, including the following information:

a. State verbatim the statement or representation that was made, and identify whether the statement or representation was made verbally or in writing;

b. Identify the person who made the statement or representation;

c. Identify the person(s) to whom the statement or representation was made;

d. Identify all persons who were present when the statement or representation was made;

e. State the date on which the statement or representation was made;

f. State the location at which the statement or representation was made; and

g. Describe in detail how the person to whom the representation was made (or any other person who acted for Alta) acted in reliance on the representation and how Alta suffered injury thereby.

**Interrogatory Number 2:**

In Paragraph 6 of your First Amended Answer and Counterclaim and Third-Party Petition, you allege that "GE and WattStock's breaches of conduct and tortious conduct caused Alta Power to lose more than one hundred million dollars of essential financing, profits related to (your) business, and millions in payments to GE and WattStock." Please state separately the precise amount of (a) "essential financing" that you claim to have lost, (2) the precise amount of "profits related to your business" that you claim to have lost, and (3) the precise amount of "payments to GE and WattStock" that you claim to have lost. In addition, please describe how you have calculated these amounts.

7

**Interrogatory Number 3:**

Please state the date on which Alta first obtained the "Memorandum of Understanding" described in Paragraph 27 of your First Amended Answer and Counterclaim and Third-Party Petition; and describe how Alta came into possession of said Memorandum of Understanding.

**Interrogatory Number 4:**

In Paragraph 31 your First Amended Answer and Counterclaim and Third-Party Petition, you allege that you met with "GE 'certified' companies that refurbished used aeroderivative gas turbines." Please identify all such "GE 'certified' companies" with whom you met; and please identify any other person or business group with whom you met or considered for the purchase of refurbished used aeroderivative gas turbines as alleged in your First Amended Answer and Counterclaim and Third-Party Petition. In addition, please state the dates and locations which said meetings took place and the persons who were present at such meetings.

**Interrogatory Number 5:**

In Paragraphs 21, 22, and 37 of your First Amended Answer and Counterclaim and Third-Party Petition, you allege that you had "competitors" or "companies competing with (you)" to enter the used aeroderivative gas turbines market. Please identify all of these competitors.

**Interrogatory Number 6:**

Please identify all documents in which any of the statements or representations identified in response to Interrogatory Number 1 were contained.

**Interrogatory Number 7:**

Please identify all documents containing any of the alleged misrepresentations alleged by you in Paragraph 1 of your First Amended Answer and Counterclaim.

**Interrogatory Number 8:**

Please identify all documents that advertise or describe the Alta commercial enterprise or business plan and that were prepared in order to attract or inform clients, members, buyers, or investors, including without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe Alta's "strategy for meeting peak energy demands" as alleged in Section VII A of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 9:**

Please identify all documents prepared in connection with the establishment or organization of Alta or that concern, describe, or analyze any financial risks that were presented by the Alta commercial enterprise or business plan, including without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe or analyze any such financial risks, whether or not the documents are internal to Alta or not provided to clients, members, buyers, or investors.

**Interrogatory Number 10:**

Please identify all documents that show or concern the "budgets" referenced in Paragraphs 19, 20, 33 and 95 of your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation documents that were prepared or collected by Alta in connection

APP.22

with the preparation of these budgets as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 11:**

Please identify all documents that that show or concern the activities or actions of Alta in developing its natural gas-fired peaker projects as alleged in Paragraph 20 of your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation documents collected or prepared by Alta in connection with "(1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing" as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 12:**

Please identify all documents that that show or concern how you "identified several project sites through an extensive vetting process based on prevailing market conditions" as alleged in Paragraph 22 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 13:**

Please identify all documents that contain written communications between you and WattStock concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 14:**

Please identify all documents that contain Alta internal communications concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition involving Alta.

**Interrogatory Number 15:**

Please identify all documents that contain written communications between you and GE concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 16:**

Please identify all documents which support, show or concern how you calculate the "more than one hundred million dollars of essential financing, profits related to (your) business, and millions in payments to GE and WattStock" as alleged in Paragraph 6 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 17:**

Please identify all documents containing written communications between you and any lender or any other person or business group that concerns financing for the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation Deutche Bank and any other lender or financing person or business group.

**Interrogatory Number 18:**

Please identify all documents that contain written communications between you and any "GE 'certified' companies that refurbished used aeroderivative gas turbines" with whom you met as described in Paragraph 31 your First Amended Answer and Counterclaim and Third-Party Petition.

APP.24

**Interrogatory Number 19:**

Please identify all documents that contain written communications and between you and any person or business group with whom you met or considered (other than those identified in Interrogatory Number 19 above) for the purchase of refurbished used aeroderivative gas turbines as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 20:**

Please identify all documents that contain written communications between you and any person or business group with whom you negotiated or contracted to sell and/or operate any of the gas turbine equipment described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 21:**

Please identify all documents containing all financial statements (both audited and unaudited) prepared by or for Alta over the last 10 years.

**Interrogatory Number 22:**

Please identify all documents that contain all bid packages, proposals, and similar documents that you provided to any person or business group for the sale or operation of any aeroderivative gas turbines as described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 23:**

Please identify all documents that show or concern the "detailed cost estimates" identified in Paragraph 42 of your First Amended Answer and Counterclaim and Third-Party Petition.

APP.25

**Interrogatory Number 24:**

Please identify all documents that support your allegation in Paragraph 46 of your First Amended Answer and Counterclaim and Third-Party Petition that GE is an "affiliate" or "representative" of WattStock.

**Interrogatory Number 25:**

Please identify all documents that show or concern the "financial information for the acquisition of available units" identified in Paragraph 50 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 26:**

Please identify all documents that contain written communications between you and Ryan Castleman and/or Castleman Power Development LLC concerning the "trade secret" claim described in Paragraphs 79 and 80 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 27:**

Please identify all documents that show or concern the "variety of funding structures" referenced in Paragraph 90 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 28:**

Please identify all documents containing written communications between you and WattStock concerning WattStock's "inform(ing) Alta Power it was having financial issues" as described in Paragraph 98 of your First Amended Answer and Counterclaim and Third-Party Petition.

APP.26

**Interrogatory Number 29:**

Please identify all documents containing written communications between you and Riverstone concerning your negotiations with Riverstone as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 30:**

Please identify all documents containing written communications between you and Macquarie concerning your negotiations with Macquarie as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Interrogatory Number 31:**

Please identify all documents showing or concerning the services and amounts charged and paid for the "reasonable and necessary attorneys' fees" referenced in Section X (d) of your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation all bills, invoices, time sheets, logs, expense records, receipts, proofs of payment, and similar records.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request for Production Number 1:**

Produce all documents in which any of the statements or representations identified in response to Interrogatory Number 1 were contained.

**Request for Production Number 2:**

In Paragraph 15 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that "Alta was established to provide additional capacity to an overloaded energy grid in a creative and profitable manner." Please provide documents that advertise or describe the Alta commercial enterprise or business plan and that were prepared in order to attract or inform

14

clients, members, buyers, or investors.  This Request includes without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe Alta's "strategy for meeting peak energy demands" as alleged in Section VII A of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 3:**

Please provide documents prepared in connection with the establishment or organization of Alta or that concern, describe, or analyze any financial risks that were presented by the Alta commercial enterprise or business plan.  This Request includes without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe or analyze any such financial risks.  This Request includes without limitation any documents that were internal to Alta and not provided to clients, members, buyers, or investors.

**Request for Production Number 4:**

In Paragraphs 19, 20, 33 and 95 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that the Alta projects had "budgets."  Please provide documents that show or concern these budgets, and all documents that were prepared or collected by Alta in connection with the preparation of these budgets as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

APP.28

**Request for Production Number 5:**

In Paragraph 20 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that "[d]eveloping natural gas-fired peaker projects is a complex process" that includes various activities.  Please provide documents that show or concern the activities or actions of Alta in developing its natural gas-fired peaker projects, including without limitation documents collected or prepared by Alta in connection with "(1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing" as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 6:**

In Paragraph 22 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that Alta "identified several project sites through an extensive vetting process based on prevailing market conditions."  Please provide documents that concern or that were prepared or collected by Alta in connection with this vetting process as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 7:**

Please produce all written communications between you and WattStock concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

16

**Request for Production Number 8:**

Please produce all internal Alta communications and documents concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition involving Alta.

**Request for Production Number 9:**

Please produce all written communications between you and GE concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 10:**

Please produce all internal Alta communications and documents concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition involving GE.

**Request for Production Number 11:**

Please produce all documents which support, show or concern how you calculate the "more than one hundred million dollars of essential financing, profits related to (your) business, and millions in payments to GE and WattStock" as alleged in Paragraph 6 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 12:**

Please produce all written communications between you and any lender or any other person or business group or that concern financing for the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation Deutche Bank and any other lender or financing person or business group.

17

**Request for Production Number 13:**

Please produce all written communications between you and any "GE 'certified' companies that refurbished used aeroderivative gas turbines" with whom you met as described in Paragraph 31 your First Amended Answer and Counterclaim and Third-Party Petition, and between you and any other person or business group with whom you met or considered for the purchase of refurbished used aeroderivative gas turbines as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 14:**

Please produce all written communications between you and any person or business group with whom you negotiated or contracted to sell and/or operate any of the gas turbine equipment described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 15:**

Please produce all of your Federal and State income tax returns for the past 10 years.

**Request for Production Number 16:**

Please produce all financial statements (both audited and unaudited) prepared by or for Alta over the last 10 years.

**Request for Production Number 17:**

Please produce all bid packages, proposals, and similar documents that you provided to any person or business group for the sale or operation of any aeroderivative gas turbines as described in your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 18:**

Please produce a copy of the "Confidentiality Agreement" described in Paragraph 32 of your First Amended Answer and Counterclaim and Third-Party Petition.

18

**Request for Production Number 19:**

Please produce a copy of the "True Package OEM warranty" identified in Paragraph 34 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 20:**

Please produce all documents that show or concern the "detailed cost estimates" identified in Paragraph 42 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 21:**

Please produce all documents concerning your allegation in Paragraph 46 of your First Amended Answer and Counterclaim and Third-Party Petition that GE is an "affiliate" or "representative" of WattStock.

**Request for Production Number 22:**

Please produce all documents that show or concern the "financial information for the acquisition of available units" identified in Paragraph 50 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 23:**

All communications between you and Ryan Castleman and/or Castleman Power Development LLC concerning the "trade secret" claim described in Paragraphs 79 and 80 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 24:**

All documents showing or concerning the "variety of funding structures" referenced in Paragraph 90 of your First Amended Answer and Counterclaim and Third-Party Petition.

19

**Request for Production Number 25:**

Please produce all written communications between you and WattStock concerning WattStock's "inform(ing) Alta Power it was having financial issues" as described in Paragraph 98 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 26:**

Please produce all written communications between you and Riverstone concerning your negotiations with Riverstone as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 27:**

Please produce all written communications between you and Macquarie concerning your negotiations with Macquarie as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 28:**

Please produce all bills, invoices, time sheets, logs, expense records, receipts, proofs of payment, and similar records showing or concerning the services and amounts charged and paid for the "reasonable and necessary attorneys' fees" referenced in Section X (d) of your First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 29:**

Please produce your Initial Disclosures with all of the content and information described in Rule 194.2 of the Texas Rules of Civil Procedure.

**Request for Production Number 30:**

Please produce your Expert Disclosures and Reports with all of the content and information described in Rule 195.5 of the Texas Rules of Civil Procedure.

20

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

Michael D. Fisse (TX Bar No. 07070550)
227 Highway 21
Madisonville, LA 70447
Telephone:     985-871-0800
Facsimile:      985-871-0899
E-mail:         mfisse@daiglefisse.com
***Counsel for Third-Party Defendant, General
Electric International, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of ***General Electric International, Inc.'s***

***First Set of Interrogatories and Requests for Production of Documents to Alta Power LLC***

have been served on this 22nd day of June 2021 by electronic transmission upon the following:

Brian N. Hail
Andrew D. Robertson
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, TX 75202
bhail@krcl.com
drobertson@krcl.com
***Counselors for WattStock LLC, Plaintiff and
Counter-Defendant***

Jessica Pulliam
Kirstie Wallace
John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Jessica.pulliam@bakerbotts.com
Kirstie.wallace@bakerbotts.com
john.lawrence@bakerbotts.com
***Counselors for Alta Power LLC, Defendant,
Counter-Plaintiff and Third-Party Plaintiff***

Michael Cancienne
Kevin Jordan
Joseph W. "Jeb" Golinkin, II
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056
mcancienne@jlcfirm.com
kjordan@jlcfirm.com
jgolinkin@jlcfirm.com
***Counselors for Alta Power LLC, Defendant,
Counter-Plaintiff and Third-Party Plaintiff***

Michael D. Fisse

21

# EXHIBIT C

**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel: 214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com

Eric T. Haitz (Tex. Bar No. 24101851)
811 Main Street, Suite 3000
Houston, Texas 77002
Tel: 346.718.6600
EHaitz@gibsondunn.com

*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** | **Case No. 21-31488-sgj11V** |
| *Debtor.* | **Chapter 11**<br>**Subchapter V** |
| **WATTSTOCK LLC,** | **Adv. No. 21-03083-sgj** |
| *Plaintiff,* | *Removed from the District Court of*<br>*Dallas County, Texas, 116th Judicial*<br>*District* |
| **v.** | |
| **ALTA POWER LLC,** | **Case No. DC-20-08331** |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| **v.** | |
| **WATTSTOCK LLC,** | |
| *Counter-Defendant,* **and** | |
| **GENERAL        ELECTRIC INTERNATIONAL,    INC.,    d/b/a    GE** | |

1

**POWER SERVICES,**

*Third-Party Defendant.*

## GENERAL ELECTRIC INTERNATIONAL, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALTA POWER LLC

To:   Defendant/Third-Party Plaintiff, Alta Power LLC ("Alta")
      By and through its attorneys of record:
      JORDAN, LYNCH & CANCIENNE PLLC
      Michael Cancienne
      Kevin Jordan
      Joseph W. Golinkin II
      1980 Post Oak Blvd., Suite 2300
      Houston, Texas 77056

Third-Party Defendant, General Electric International, Inc. ("GE") serves the above captioned Second Set of Requests for Production of Documents (collectively, the "Requests") on Defendant/Third-Party Plaintiff Alta Power LLC ("Alta"). Alta is required to serve on undersigned counsel for Third-Party Defendant written responses to the Requests, including verified responses, and to produce documents responsive to these Requests within thirty (30) days and as otherwise required by the Federal Rules of Civil Procedure.

## DEFINITIONS AND INSTRUCTIONS

As used in these Requests for Production of Documents, the  following Definitions and Instructions apply:

"**Alta**", "**You**", **and** "**Your**" refers to Alta Power LLC and any of its officers,  employees, agents, representatives, or others that act for or on its behalf.

"**WattStock**" means WattStock LLC and any of its officers, employees, agents, representatives, or others that act for or on its behalf.

"**GE**" refers to General Electric International, Inc. and any of its officers, employees, agents, representatives, or others that act for or on its behalf.

"**First Amended Answer and Counterclaim and Third-Party Petition**" or "**Third Party Petition**" refers to the pleading filed by you under that title in the above captioned lawsuit.

"**Communication**" or "**communications**" refers to the transmission or exchange of information, either orally or in writing, and includes without limitation any conversation, letter, handwritten notes, memorandum, inter or intraoffice correspondence, electronic mail, deleted electronic mail, text messages, deleted text messages or any other electronic transmission, telephone call, telegraph, telex telecopy, facsimile, cable, conference, tape recording, video recording, digital recording, discussion, or face-to-face communication.

"**Document**" means all hard copy documents and all data or information that exists in electronic or magnetic form (including writings, drawings, graphs, charts, photographs, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, into reasonably usable form). "Documents" shall include writings of every kind, both originals and all non-identical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for transmitted to any other person or entity (including any governmental agency or department or other governmental personnel). "Documents" shall include handwritten, typewritten, printed, photocopied, photographed and/or recorded matter. It shall include communications in words, symbols, pictures, sound records, films, tapes, and information stored in or accessible through computer or other information storage or retrieval systems, together with the codes and/or programming instructions or other materials necessary to understand and use such systems (i.e., electronically stored information as provided by the Federal Rules of Civil Procedure). For purposes of illustration and not limitation, the term "documents" shall include correspondence; transcripts of testimony or statements; letters;

handwritten or printed notes; meeting minutes; reports; papers; files; books; records; contracts; agreements; telegrams; teletypes; facsimiles; diaries; calendars; bulletins; notices; circulars; announcements; instructions; schedules; notes or summaries or other records or recordings of any conversations, conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, invoices, purchase orders or other records of obligations or expenditures; canceled checks, vouchers, receipts, or other records of payments; affidavits; charts; drawings; specifications; manuals; brochures; and memoranda of all kinds to or from any person(s), entity(s), or agency(s).

The terms "**relating to**," "**relate to**," or "**related to**" means referring to, commenting on, regarding, discussing, describing, mentioning, reflecting, pertaining to, concerning, contradicting, constituting, supporting, proving, forming the basis for, undermining, or otherwise relating to in any manner.

"**Lender**" refers is an individual, a public or private group, or financial institution that makes funds available to a person or business with the expectation that the funds will be repaid.

The terms "**person**" and "**persons**" refer to any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government or political subdivision thereof, and any other non-natural person of whatever nature.

"**Including**" means including but not limited to.

"**LNTP**" or "**Limited Notice to Proceed**" means the agreement referenced in the Third-Party Petition at paragraph 91 as entered into on December 23, 2019, between Alta Power and WattStock for two separate units to be acquired from Nuh Cemento.

"**Master Agreement**" means the agreement referenced in the Third-Party Petition at paragraph 45 as entered into on February 27, 2019, between Alta Power and WattStock.

"**Electronically stored information**" means data or information that exists in electronic or magnetic form and is retrievable in perceivable form, any data on server hard drives or on personal or company computers, and any system backup tapes of any electronically created or stored information, including the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise).

Electronically stored information shall be produced in accordance with Stipulated Protocol Regarding the Production of Documents (Dkt. 34)

If you cannot produce responsive documents or electronically stored information according to these Instructions, Third-Party Defendant requests immediate notice of such circumstances so an alternative means of production can be determined.

If any Document responsive to any Request has been destroyed, lost, erased, misplaced, or is otherwise unavailable or no longer in your possession or control, identify the document and provide an explanation as to why the Document is no longer available or in your possession or control.   Identification of each Document shall include without limitation the following information:  date of disposal, manner of disposal, reason for disposal, persons authorizing such disposal, persons having knowledge of the disposal, and any persons disposing of the  Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request for Production Number 31:**

All documents and communications that reference, describe, or summarize any meetings between or involving Alta, WattStock, and/or GE related to aeroderivative gas turbines.

**Request for Production Number 32:**

All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals between Alta and any other person that refurbished used aeroderivative gas turbines, including the "GE 'certified' companies" referenced in the Third-Party Petition.

**Request for Production Number 33:**

All documents and communications that reference or constitute communications with the third-party owners of used aeroderivative gas turbines.

**Request for Production Number 34:**

All documents and communications that reference, record, or show any money paid to WattStock by Alta related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 35:**

All documents and communications that reference, record, or show any money paid to GE by Alta related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 36:**

All documents and communications that reference, record, or show any goods or services provided to WattStock by Alta related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 37:**

All documents and communications that reference, record, or show any goods or services provided to WattStock by GE related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 38:**

All documents and communications that reference, record, or show any goods or services provided to Alta by WattStock related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 39:**

All documents and communications that reference, record, or show any goods or services provided to Alta by GE related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 40:**

All documents and communications that reference, record, or show any goods or services provided to GE by Alta related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 41:**

All documents and communications that reference, record, or show any goods or services provided to GE by WattStock related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 42:**

All documents and communications in which Alta or any other person referenced a partnership, including "strategic alliance partnership," between GE and Alta, GE and WattStock, or WattStock and Alta.

**Request for Production Number 43:**

All documents and communications in which Alta referred to any other person as a "partner," or referred to any other actual or anticipated contractual or business arrangement as a "partnership."

**Request for Production Number 44:**

All documents and communications in which Alta referred to any other person as a "principal" or "agent," or referred to any other actual or anticipated contractual or business arrangement as an "agency," "venture," or "enterprise."

**Request for Production Number 45:**

All documents and communications referencing how Alta Power would become a "partner" of or would "partner" with WattStock, GE, or any lender from whom Alta sought financing related to used aeroderivative turbines.

**Request for Production Number 46:**

All documents and communications in which Alta referred to WattStock as GE's agent or otherwise reflected a belief that an agency relationship existed between WattStock and GE.

**Request for Production Number 47:**

All documents and communications related to your allegation, in paragraph 44 of the First Amended Answer and Counterclaim and Third-Party Petition, that "GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world."

**Request for Production Number 48:**

All documents and communications related to your allegation, in paragraph 71 of the First Amended Answer and Counterclaim and Third-Party Petition, that "GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition," including all documents reflecting the EthosEnergy unit's allegedly "dilapidated" condition.

**Request for Production Number 49:**

All documents and communications reflecting Alta's knowledge of WattStock's governance structure and ownership, including communications or documents related to WattStock's articles of association, a corporate structure chart, ultimate beneficial owners, or the names of WattStock's directors or senior persons responsible for its operation, as well as any documents reflecting that WattStock shared such information with lenders or other third parties.

**Request for Production Number 50:**

All documents and communications that reference or constitute communications with or from WattStock related to its governance structure or ownership, including any communications by Alta or WattStock with any lender or any other person.

**Request for Production Number 51:**

All documents and communications related to any investigation by Alta into the nature of the legal relationship between WattStock and GE.

**Request for Production Number 52:**

All documents and communications reflecting the "extrinsic evidence" referenced in paragraph 111 of the First Amended Answer and Counterclaim and Third-Party Petition that you allege "shows actual control by GE over WattStock."

**Request for Production Number 53:**

All documents and communications related to any "not to exceed price" for used aeroderivative gas turbines, including the $6.5 million "not to exceed price" for the two Nuh Cemento units referenced in the LNTP.

**Request for Production Number 54:**

All documents and communications referencing the two $750,000 payments referenced in paragraphs 92 and 93 of the Third-Party Petition.

**Request for Production Number 55:**

All documents and communications related to Alta's allegations in the First Amended Answer and Counterclaim and Third-Party Petition that in 2020 Alta "remained financially committed to the project and was ready, willing, and able to go forward with the two Nuh Cemento units under the LNTP," including any documents supporting that allegation.

**Request for Production Number 56:**

The following documents referenced in Alta's Requests for Production:

- "LM6000PC TRUEPackage LNTP between GE and WattStock" (Alta RFP No. 18)
- "LM6000PC Contractual Services Agreement Budgetary Proposal" (Alta RFP No. 19)
- "September 16, 2019 proposal prepared by GE related to the 'ALTA LNTP project'" (Alta RFP No. 32)
- "GE Power Services-Aero Contract Change Order transmitted to or discussed with WattStock on November 22, 2019" (Alta RFP No. 33)
- "December 23, 2019 Limited Notice to Proceed Proposal to Alta for the Goodlow Peak Power Site for Two (2) TRUEpackage LM6000 PC Sprint GTG's" (Alta RFP No. 34)
- "'Equipment Purchase and Sale Agreement' between Acarsoy Energy Electric Oretim San. Ve Tic. AS. and WattStock" (Alta RFP No. 35)

**Request for Production Number 57:**

All documents and communications related to Alta's dispute with Castleman Power Development LLC ("Castleman"), including any pleadings, motions, transcripts, mediation statements, and/or settlement agreements.

**Request for Production Number 58:**

All documents and communications showing, referencing, or relating to the terms and conditions of all nondisclosure agreements between Alta and any third parties concerning the transactions referenced in the First Amended Answer and Counterclaim and Third-Party Petition.

**Request for Production Number 59:**

All communications from 2018 through present with third parties related to Alta's planned entrance into the Texas renewable energy market and its projects involving used aeroderivative gas turbines for the Texas energy market.

**Request for Production Number 60:**

All documents and communications concerning or related to Alta's funding or financing of this litigation.

**Request for Production Number 61:**

All documents and communications received from any other person, including third parties, in response to any formal or informal request or subpoena made or served by you in connection with this litigation.

**Request for Production Number 62:**

All documents that reference or relate to the "Memorandum of Understanding" between GE and WattStock referenced in the July 31, 2019 letter sent by GE to Alta.

**Request for Production Number 63:**

All documents and communications that reference or relate to any termination fee or cancellation fee associated with Alta's purchase of any used aeroderivative gas turbine from GE or WattStock.

**Request for Production Number 64:**

All documents and communications that reference or related to any pricing discussed by Alta with WattStock or GE for any used aeroderivative gas turbine.

**Request for Production Number 65:**

All documents and communications that reference or relate to the terms and conditions of any long-term service agreement on any used aeroderivative gas turbine, including the proposed scope

of work for Alta Power Site #1 and proposed pricing, that Alta intended or attempted to purchase related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 66:**

All documents and communications related to any references by WattStock or GE that GE would "step in" for WattStock under the Master Agreement or LNTP as alleged in the Third-Party Petition at paragraph 78.

**Request for Production Number 67:**

All documents and communications showing, referencing, or relating to  any false or fraudulent statements that you believe were made by GE or WattStock.

**Request for Production Number 68:**

All documents and communications that show or relate to any "lost profits" or "lost business" incurred by Alta that was allegedly caused by any party in this litigation.

**Request for Production Number 69:**

All documents and communications concerning GE or WattStock related to the actual or prospective cost of any of the projects or transactions at issue in this litigation.

**Request for Production Number 70:**

All documents and communications with any third-party concerning GE or WattStock that are related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 71:**

All documents and communications relating to your efforts to obtain financing, or financing obtained, in connection with any of the projects or transactions at issue in this litigation.

**Request for Production Number 72:**

All documents and communications concerning WattStock or GE since January 1, 2018 that are related to any of the projects or transactions at issue in this litigation.

**Request for Production Number 73:**

All documents and communications concerning Castleman, including all documents related to the allegations in paragraphs 79 and 80 of the Third-Party Petition about how WattStock disclosed confidential information to Castleman, and all documents related to the allegations in paragraph 103 that "Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market."

**Request for Production Number 74:**

All documents and communications with any financial institutions or lenders, including Deutsche Bank, concerning Castleman.

**Request for Production Number 75:**

All documents and communications concerning any "hidden liabilities" referenced in paragraph 54 of the Third-Party Petition that Alta claims to have burdened any used aeroderivative gas turbine that Alta intended or attempted to purchase.

**Request for Production Number 76:**

All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals in which Alta claims that GE or WattStock misrepresented the nature of their relationship, created the impression that they were partners or agents, or in a joint venture together.

**Request for Production Number 77:**

All documents and communications concerning the negotiation and execution of the Master Agreement or LNTP between Alta and WattStock, including drafts of these agreements and communications regarding contract terms, including Article 9 of the Master Agreement.

**Request for Production Number 78:**

All documents and communications in which Alta referred to WattStock as GE's partner or otherwise reflected a belief that a partnership relationship existed between WattStock and GE.

Dated:  June 23, 2022

Respectfully submitted,

*/s/    Andrew LeGrand*
John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
         ALegrand@gibsondunn.com

         and

Eric T. Haitz (Texas Bar No. 24101851)

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel:    346.718.6600
Email: EHaitz@gibsondunn.com

COUNSEL   TO   GENERAL   ELECTRIC
INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of General Electric International, Inc.'s Second Set of Interrogatories to Alta Power LLC have been served on counsel for Alta Power LLC on this twenty-third day of June 2022 by electronic transmission.


*/s/    Andrew LeGrand*
Andrew LeGrand

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WATTSTOCK LLC,

     *Plaintiff/Counter Defendant*,

v.

ALTA POWER LLC,

     *Defendant/Counter Plaintiff,*

v.

GENERAL ELECTRIC INTERNATIONAL
INC., d/b/a GE POWER SERVICES,

     *Third-Party Defendant.*

Case No. 3:21-CV-03183-X

## ALTA POWER, LLC'S FIRST AMENDED OBJECTIONS AND RESPONSES TO GENERAL ELECTRIC'S FIRST REQUEST FOR PRODUCTION

TO:    Third-Party Defendant General Electric International, Inc ("GE"), by and through its attorneys of record, Trey Cox, Andrew Legrand, and Pooja Patel of Gibson, Dunn & Crutcher LLP

        Pursuant to the Federal Rules of Civil Procedure, Alta Power LLC ("Alta" or "Alta Power") serves this, its Amended Responses to Third-Party Defendant General Electric International, Inc.'s Request for Production.

        Respectfully submitted,

        JORDAN, LYNCH & CANCIENNE PLLC

        By: *Jeb Golinkin*
            Michael Cancienne
            State Bar No. 24055256
            Joseph W. ("Jeb") Golinkin II
            State Bar No. 24087596
            1980 Post Oak Blvd., Suite 2300

Houston, Texas 77056
Telephone:  713.955.4025
Facsimile:  713.955.9644
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

BAKER BOTTS L.L.P.

Jessica B. Pulliam
State Bar No. 24037309
John B. Lawrence
State Bar No. 24055825
Kirstie L. Wallace
State Bar No. 24115920
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
Kirstie.wallace@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC

------

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the above and foregoing was sent to the following counsel of record by electronic mail on July 2, 2022:

Trey Cox
Andrew Legrand
Pooja Patel
Gibson Dunn & Crutcher LLP
2001 Ross Ave Suite 2100
Dallas, TX 75201
*Attorneys for Third-Party Defendant*
*General Electric International, Inc.*

And

Thomas D Berghman
Munsch, Hardt, Kopf & Harr, PC;
500 N. Akard St., Ste. 500
Dallas, TX 75201
*Attorneys for Wattstock LLC*

_____/s/ Jeb Golinkin_____
Jeb Golinkin

## <u>GENERAL OBJECTIONS</u>

1.  Alta objects to GE's Definitions and Instructions contained in the discovery to the extent that same seek to alter or expand Alta's obligations to respond to same under the Federal Rules of Civil Procedure.

2.  To the extent the definition of "you" and "your" includes Alta's attorneys, the discovery seeks information protected from discovery by the attorney/client privilege and the attorney work product doctrine.

3.  Alta objects to producing documents as requested by GE.  Responsive documents will be made available for inspection and copying at the offices of Alta's counsel during normal business hours.

APP.55

## OBJECTIONS AND RESPONSES TO REQUESTS FOR RODUCTION[1]

Request for Production Number 1:

Produce all documents in which any of the statements or representations identified in response to Interrogatory Number 1 were contained.

**RESPONSE:** Alta Power objects to this Request for Production since it is premised on an interrogatory that is objectionable. Alta Power therefore incorporates its objections to Interrogatory 1 by reference. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 2:

In Paragraph 15 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that "Alta was established to provide additional capacity to an overloaded energy grid in a creative and profitable manner." Please provide documents that advertise or describe the Alta commercial enterprise or business plan and that were prepared in order to attract or inform clients, members, buyers, or investors. This Request includes without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe Alta's "strategy for meeting peak energy demands" as alleged in Section VII A of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request for Production because it is overly broad and unduly burdensome. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 3:

Please provide documents prepared in connection with the establishment or organization of Alta or that concern, describe, or analyze any financial risks that were presented by the Alta commercial enterprise or business plan.  This Request includes without limitation prospectus documents, business plans and descriptions, proposals, profitability studies, documents that describe Alta's financial security, presentations, analyses, recommendations, models (including financial models), documents showing the budgeting for the Alta projects, and similar documents which describe or analyze any such financial risks. This Request includes without limitation any documents that were internal to Alta

---

[1] As of July 2, 2022, Alta Power is not withholding any document reviewed from the universe of documents captured by the search methodology outlined in its search protocol (e.g. its search terms) that is responsive to any of GE's requests for production on the basis of any objection other than privilege.

and not provided to clients, members, buyers, or investors.

**RESPONSE:**  Alta Power objects that this Request is vague, overly broad, and unduly burdensome. Alta Power further objects to this Request because it fails to identify the documents it seeks with reasonable particularity.

Request for Production Number 4:

In Paragraphs 19, 20, 33 and 95 of your First Amended Answer and Counterclaim and Third- Party Petition, you state that the Alta projects had "budgets." Please provide documents that show or concern these budgets, and all documents that were prepared or collected by Alta in connection with the preparation of these budgets as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will produce all documents explicitly referenced in its First Amended Answer and Counterclaims and Third-Party Petition.

Request for Production Number 5:

In Paragraph 20 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that "[d]eveloping natural gas-fired peaker projects is a complex process" that includes various activities.  Please provide documents that show or concern the activities or actions of Alta in developing its natural gas-fired peaker projects, including without limitation documents collected or prepared by Alta in connection with "(1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing" as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 6:

In Paragraph 22 of your First Amended Answer and Counterclaim and Third-Party Petition, you state that Alta "identified several project sites through an extensive vetting process based on prevailing market conditions." Please provide documents that concern or that were prepared or collected by Alta in connection with this vetting process as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

APP.57

Request for Production Number 7:

Please produce all written communications between you and WattStock concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request because it is overly broad and unduly burdensome. Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 8:

Please produce all internal Alta communications and documents concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition involving Alta.

**RESPONSE:** Alta Power objects to this Request for Production to the extent it seeks the production of attorney-work product or documents protected from disclosure by the attorney-client privilege. Alta Power further objects to this Request for Production because it is overly vague, overly broad, and fails to identify the information it seeks with reasonable particularity. Subject to these objections, Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 9:

Please produce all written communications between you and GE concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 10:

Please produce all internal Alta communications and documents concerning the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition involving GE.

**RESPONSE:** Alta Power objects that this Request is vague, overly broad, unduly burdensome. Alta Power further objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Alta Power objects to the Request to the extent it seeks attorney work product and commands the production of documents protected by the attorney-client privilege. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents identified as responsive to this Request.

APP.58

<u>Request for Production Number 11:</u>

Please produce all documents which support, show or concern how you calculate the "more than one hundred million dollars of essential financing, profits related to (your) business, and millions in payments to GE and WattStock" as alleged in Paragraph 6 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power objects to this Request to the extent it calls for the production of attorney work-product or documents protected by the attorney-client privilege. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

<u>Request for Production Number 12:</u>

Please produce all written communications between you and any lender or any other person or business group or that concern financing for the transactions described in your First Amended Answer and Counterclaim and Third-Party Petition, including without limitation Deutche Bank and any other lender or financing person or business group.

**RESPONSE:**   Alta Power objects that this Request is vague, overly broad, unduly burdensome. Alta Power further objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

<u>Request for Production Number 13:</u>

Please produce all written communications between you and any "GE 'certified' companies that refurbished used aeroderivative gas turbines" with whom you met as described in Paragraph 31 your First Amended Answer and Counterclaim and Third-Party Petition, and between you and any other person or business group with whom you met or considered for the purchase of refurbished used aeroderivative gas turbines as alleged in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**   Alta Power objects that this Request is vague, overly broad, unduly burdensome. Alta Power further objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

<u>Request for Production Number 14:</u>

Please produce all written communications between you and any person or business group with whom you negotiated or contracted to sell and/or operate any of the gas turbine equipment described in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power objects that this Request is vague, overly broad, and unduly burdensome. Alta Power further objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Alta Power also objects to this Request because it fails to identify the documents it seeks with reasonable particularity.

Request for Production Number 15:

Please produce all of your Federal and State income tax returns for the past 10 years.

**RESPONSE:**  Alta Power objects to this Request because it is overly broad and unduly burdensome. Alta Power further objects to this Request because it seeks the discovery of information that is irrelevant to any cause of action in this case.

Request for Production Number 16:

Please produce all financial statements (both audited and unaudited) prepared by or for Alta over the last 10 years.

**RESPONSE:**  Alta Power objects to this Request because it is vague, overly broad, unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Alta Power also objects that this Request calls for the production of information that is irrelevant to any issue in this case. Alta Power will produce financial statements provided to entities in connection with its attempts to obtain financing related to the projects at issue

Request for Production Number 17:

Please produce all bid packages, proposals, and similar documents that you provided to any person or business group for the sale or operation of any aeroderivative gas turbines as described in your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power objects to this Request because it is vague, overly broad, and unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Subject to the foregoing, Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Request for Production Number 18:

Please produce a copy of the "Confidentiality Agreement" described in Paragraph 32 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will produce a copy of the Confidentiality Agreement referenced in Paragraph 32 of its First Amended Answer and Counterclaim and Third-Party Petition.

Request for Production Number 19:

Please produce a copy of the "True Package OEM warranty" identified in Paragraph 34 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 20:

Please produce all documents that show or concern the "detailed cost estimates" identified in Paragraph 42 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will produce any documents in its possession, custody, or control that are explicitly referenced in its First Amended Answer and Counterclaim and Third-Party Petition.

Request for Production Number 21:

Please produce all documents concerning your allegation in Paragraph 46 of your First Amended Answer and Counterclaim and Third-Party  Petition that GE is an "affiliate" or "representative" of WattStock.

**RESPONSE:**  Alta Power objects to this Request because it is vague, overbroad, and unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Alta Power also objects to this Request to the extent it seeks documents protected from disclosure by the work product doctrine or the attorney-client privilege. Subject to these objections, Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Regus for Production Number 22:

Please produce all documents that show or concern the "financial information for the acquisition of available units" identified in Paragraph 50 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power objects to this Request because it is vague, overbroad, and unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Alta Power also objects to this Request to the extent it seeks documents protected from disclosure by the work product doctrine or the attorney-client privilege. Subject to these objections, Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Regus for Production Number 23:

All communications between you and Ryan Castleman and/or Castleman Power Development LLC concerning the "trade secret" claim described in Paragraphs 79 and 80 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request because it is vague, overbroad, and unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Subject to the foregoing, none.

Request for Production Number 24:

All documents showing or concerning the "variety of funding structures" referenced  m Paragraph 90 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request because it is vague, overbroad, and unduly burdensome. Alta Power further objects that this Request fails to identify the documents it seeks with reasonable particularity. Alta Power also objects to this Request to the extent it seeks documents protected from disclosure by the work product doctrine or the attorney-client privilege. Subject to these objections, Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Request for Production Number 25:

Please produce all written communications between you and WattStock concerning WattStock's "inform(ing) Alta Power it was having financial issues" as described in Paragraph 98 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will perform a reasonable search for and produce documents responsive to this Request for Production.

Request for Production Number 26:

Please produce all written communications between you and Riverstone concerning your negotiations with Riverstone as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:**  Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Request for Production Number 27:

Please produce all written communications between you and Macquarie concerning your negotiations with Macquarie as described in Paragraph 101 of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power will perform a reasonable search for and produce documents responsive to this Request.

Request for Production Number 28:

Please produce all bills, invoices, time sheets, logs, expense records, receipts, proofs of payment, and similar records showing or concerning the services and amounts charged and paid for the "reasonable and necessary attorneys' fees" referenced in Section X (d) of your First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request because it seeks the production of attorney work-product and documents and information protected from disclosure by the attorney-client privilege. Expert discovery has not begun, thus this Request for Production is premature. However, Alta Power will comply with its obligations under the Federal Rules of Civil Procedure and the Court's Scheduling Order.

Request for Production Number 29:

Please produce your Initial Disclosures with all of the content and information described in Rule 194.2 of the Texas Rules of Civil Procedure.

**RESPONSE:** Alta Power will comply with its obligations under the Federal Rules of Civil Procedure.

Request for Production Number  30:

Please produce your Expert Disclosures and Reports with all of the content and information described in Rule 195.5 of the Texas Rules of Civil Procedure.

**RESPONSE:**  Alta Power will produce its "expert disclosures and reports" at the time and in the manner set out in the Federal Rules of Civil Procedure and the Court's Order(s).

# EXHIBIT E

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Andrew LeGrand
Direct: +1 214.698.3405
Fax: +1 214.571.2960
ALeGrand@gibsondunn.com

July 25, 2022

<u>VIA ELECTRONIC MAIL</u>

John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75001-2980

Joseph W. Golinkin, II
Jordan, Lynch & Cancienne PLLC
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056

Re:     *WattStock, LLC v. Alta Power LLC*

Dear John and Joseph:

    I write on behalf of Third-Party Defendant General Electric International Inc. ("GE") about the responses served by Alta Power LLC ("Alta") to GE's First Request for Production.

**A.     Alta Must Withdraw Its Boilerplate and "Subject-To" Objections**

    To begin with, Alta's responses are deficient because they contain boilerplate and "subject-to" objections that federal courts prohibit.  As you know, courts in this circuit routinely condemn boilerplate objections as inconsistent with the Federal Rules of Civil Procedure.  *E.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *7 (N.D. Tex. Nov. 8, 2021); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018); *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 281 (N.D. Tex. 2017).

    Alta objects to many requests stating merely that the requests are "overly broad," "unduly burdensome," or "irrelevant."  These are boilerplate objections because they "utilize 'standardized text' or 'ready-made or all-purpose language,'" and are "identical and not tailored to the specific discovery request." *VeroBlue*, 2021 WL 5176839, at *7 ((quotations omitted).  A party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad or irrelevant]." *United My Funds, L.L.C. v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *6 (E.D. Tex. Mar. 12, 2020) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)); *Lopez*, 327 F.R.D. at 580 ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

APP.65

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Andrew LeGrand
Direct: +1 214.698.3405
Fax: +1 214.571.2960
ALeGrand@gibsondunn.com

July 25, 2022

<u>VIA ELECTRONIC MAIL</u>

John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75001-2980

Joseph W. Golinkin, II
Jordan, Lynch & Cancienne PLLC
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056

Re:     *WattStock, LLC v. Alta Power LLC*

Dear John and Joseph:

I write on behalf of Third-Party Defendant General Electric International Inc. ("GE") about the responses served by Alta Power LLC ("Alta") to GE's First Request for Production.

**A.     Alta Must Withdraw Its Boilerplate and "Subject-To" Objections**

To begin with, Alta's responses are deficient because they contain boilerplate and "subject-to" objections that federal courts prohibit.  As you know, courts in this circuit routinely condemn boilerplate objections as inconsistent with the Federal Rules of Civil Procedure.  *E.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *7 (N.D. Tex. Nov. 8, 2021); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018); *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 281 (N.D. Tex. 2017).

Alta objects to many requests stating merely that the requests are "overly broad," "unduly burdensome," or "irrelevant."  These are boilerplate objections because they "utilize 'standardized text' or 'ready-made or all-purpose language,'" and are "identical and not tailored to the specific discovery request." *VeroBlue*, 2021 WL 5176839, at *7 ((quotations omitted).  A party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad or irrelevant]." *United My Funds, L.L.C. v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *6 (E.D. Tex. Mar. 12, 2020) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)); *Lopez*, 327 F.R.D. at 580 ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

APP.66

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
July 25, 2022
Page 2

objectionable."). To that end, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *Perera*, 2020 WL 1225042. at *6. A failure to offer evidence of the purportedly burdensome nature of a request "makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490. These boilerplate objections are invalid and should be withdrawn.

Similarly, Alta's objections that many requests are "vague" are insufficient. A "party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. A party objecting on these grounds must explain the specific and particular way in which a request is vague." *Id.* at 491 (internal quotation marks and citations omitted). "The responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories [or requests]" and, "[i]f necessary to clarify its answers, . . . may include any reasonable definition of the term or phrase at issue" and "[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Id.* You have failed to explain how any of the requests—all of which use non-technical language that an ordinary speaker of the English language can readily understand—are vague, nor have you requested clarification or given a response subject to a reasonable definition of the allegedly vague terms. Alta's objections on this basis are therefore insufficient and must be withdrawn.

Finally, Alta repeatedly states that it will produce responsive documents "subject to" its boilerplate objections, which is itself a deficient pleading practice. "[R]esponding to interrogatories and document[ ] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worst), and has no basis at all in the Federal Rules of Civil Procedure." *Firebirds Intl., LLC v. Firebird Rest. Grp., LLC*, 3:17-CV-2719-B, 2018 WL 3655574, at *6 (N.D. Tex. July 16, 2018); *accord VeroBlue*, 2021 WL 5176839, at *8; *Cicalese v. Univ. of Texas Med. Branch*, No. 3:17-CV-00067, 2020 WL 10762300, at *1 (S.D. Tex. July 20, 2020); *Holcombe v. Advanced Integration Tech.*, No. 4:17-CV-00522, 2018 WL 3819974, at *3 (E.D. Tex. Aug. 10, 2018); *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015). Your "subject-to" objections impermissibly leave GE guessing as to the scope of the documents or information to be provided as responsive, and therefore must also be withdrawn.

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
July 25, 2022
Page 3

### B.    Alta Must Produce Relevant Documents for RFPs 3, 14, and 15

Alta has refused to provide any information at all for RFPs 3, 14, and 15 based on the boilerplate objections noted above.  As these objections are insufficient, you must produce responsive documents for these requests or we will seek redress from the Court.

### C.    Your Refusal to Produce Evidence Relevant to Your Claim for Attorneys' Fees Is Impermissible

Alta's response to RFP 28, which seeks "all bills, invoices, time sheets, logs, expense records, receipts, proofs of payment, and similar records showing or concerning the services and amounts charged and paid for the 'reasonable and necessary attorneys' fees,'" is also deficient.  First, you assert that such records are subject to the protections of the work-product doctrine and attorney-client privilege, but it is blackletter law that when a party seeks to recover attorneys' fees, its billing records are relevant and discoverable.  *See, e.g.*, *Hernandez v. Scott*, No. SA-10-CV1051, 2011 WL 2619342, at *1 (W.D. Tex. July 1, 2011) (rejecting plaintiff's argument that fee agreement and billing statements need not be produced until after trial because "the information sought through these production requests will enable defendant to assess its total liability if plaintiff prevails on her claim"); *accord Simon v. State Farm Lloyds*, 7:14-CV-251, 2015 WL 12777219, at *4 (S.D. Tex. Apr. 9, 2015) (similar); *M3Girl Designs, LLC v. Blue Brownies, LLC*, 3:09-CV-2390-F, 2011 WL 13128965, at *5 (N.D. Tex. Aug. 31, 2011) (similar); *see also In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 816 (Tex. 2017) ("Making a claim for attorney fees . . . puts a party's attorney fees at issue in the litigation."); *Jeanbaptiste v. Wells Fargo Bank, N.A.*, 2014 WL 6790737, *3 (N.D. Tex. December 1, 2014) ("The Fifth Circuit has 'long recognized the general rule that matters involving the payment of [attorney's] fees . . . are not generally privileged.'" (citing *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990)).  By claiming attorney's fees, you have waived work-product and attorney-client privilege protections over all information in these documents that is relevant to the attorney's fees issue.

If your billing records contain privileged information that is irrelevant to the attorney's fees issue, the proper course is to produce the records while redacting the privileged information.  *See Simon*, 2015 WL 12777219, at *4; *see also Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 922 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (noting that the party submitted redacted billing records at trial); *Air Routing Int'l Corp. (Can.) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 694 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same).  But your total refusal to produce relevant documents is impermissible, and we must move to compel if you stand on this objection.

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
July 25, 2022
Page 4

Beyond the apparent refusal to produce attorney billing records, the rest of your response is confusing. You next state that "[e]xpert discovery has not begun, thus this Request for Production is premature." But this is irrelevant, as "the information sought through these production requests"—reflecting the extent of current attorney billings and the size of a potential attorney's fees award—"will enable [GE] to assess its total liability if [Alta] prevails on [its] claim, which encourages 'the just, speedy, and inexpensive determination' of this dispute." *Hernandez*, 2011 WL 2619342, at *2. That the amount of potential attorney's fees will increase once expert discovery begins does not lessen the relevance of attorney billings for services that have already been rendered.

Finally, after stating your objections, you add that "Alta Power will comply with its obligations under the Federal Rules of Civil Procedure and the Court's Scheduling Order." What is meant by this statement is unclear. If you are refusing to produce relevant documents, please say so. If not, please clarify the scope of what will be produced.

**D.     Your Offer to Allow "Inspection and Copying" of Your Documents Instead of Producing Them Violates the Stipulated ESI Protocol**

Alta's general objection to "producing documents as requested by GE" and its corresponding offer to instead make responsive documents "available for inspection and copying at the offices of Alta's counsel" is puzzling. If you are refusing to scan and produce relevant hard copy documents in your possession in an electronic format, then you are in clear violation of the Stipulated ESI Protocol that the parties agreed to and the Court entered on March 1, 2022. The ESI Protocol provides for "electronic production of hard copy documents," under which each party agreed to produce relevant "documents existing in hard copy form" in an electronic format by scanning them and producing them as a TIFF file. Stip. ESI Protocol § 5, Dkt. 34. Please clarify if your general objection instead meant to indicate an intention to abide by the ESI Protocol but not produce original versions or hard copies of your paper documents.

**E.     Your Refusal to Produce Documents as Requested By RFPs 4 and 20 Is Impermissible**

Your responses to RFPs 4 and 20 are deficient because you refuse to produce the full scope of documents requested and you offer no basis to justify your refusal to comply with your discovery obligations. In RFP 4, GE requested that Alta produce (1) all documents that "show or concern the[ ] budgets" mentioned in four paragraphs of the Third-Party Petition and (2) "all documents that were prepared or collected by Alta in connection with the preparation of these budgets." Your response states that Alta will produce only those budgets

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
July 25, 2022
Page 5

"explicitly referenced" in the Third-Party Petition. You thus appear to be significantly narrowing the scope of the documents you will produce for the first category of documents by disregarding the request for documents that "concern" the referenced budgets. You also ignore the second category of documents altogether. Your response provides no explanation for your refusal.

Alta's response to RFP 20 is similarly deficient. In RFP 20, GE requested that Alta produce "all documents that show or concern the 'detailed cost estimates' identified in Paragraph 42" of the Third-Party Petition. This paragraph states that "GE/WattStock presented Alta with detailed total cost estimates for each unit showing that if each unit identified could be acquired at or below the 'not to exceed price,' then the fully refurbished unit could be delivered within Alta Power's budgetary requirements." You say in your response that Alta will only produce documents "explicitly referenced" in the Third-Party Petition, and thus, as with RFP 4, you refuse to produce documents that "concern" the detailed cost estimates. And as with RFP 4, you offer no explanation for why you may disregard the full scope of the documents GE requested.

Because you have not interposed *any* objection—let alone an objection that would warrant withholding the requested documents—you have no basis for refusing to comply with these requests. You must therefore produce the requested documents or we will seek redress from the Court.

### F.      Your Claim that You Have No Relevant Documents for RFP 23 About Your Dispute with Castleman Is Implausible

Your response to RFP 23 is deficient because it contains boilerplate responses, but even as drafted, your response that you have no relevant documents is curious given your filings in this case. RFP 23 asks for all communications between Alta and Ryan Castleman/Castleman Power concerning the "trade secret" claim addressed in paragraphs 79–80 of the Third-Party Petition. The Third-Party Petition states in these paragraphs that "Castleman threatened to file a frivolous 'trade secret' lawsuit against Alta Power to stop the financing," and that Alta "worked to quickly resolve the frivolous dispute, and ultimately had no choice but to pay Castleman an extortion fee to settle the frivolous claim." Unless your position is that you have no documents showing Castleman's "threat" of a "frivolous 'trade secret' lawsuit," your efforts to "quickly resolve the frivolous dispute," or the "extortion fee" you paid to settle the dispute, it cannot possibly be the case that you have no relevant documents. Therefore, please clarify what you mean that there are "no" responsive documents to RFP 23. Otherwise, we will move to compel a response to this Request.

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
July 25, 2022
Page 6

We look forward to your prompt response.

Andrew LeGrand
APL/mmc

# EXHIBIT F

| From: | Jeb Golinkin |
|---|---|
| To: | Capoccia, Matt; LeGrand, Andrew; Patel, Pooja R. |
| Cc: | Michael Cancienne; jessica.pulliam@bakerbotts.com; kirstie.wallace@bakerbotts.com; John.Lawrence@bakerbotts.com |
| Subject: | RE: WattStock v. Alta v. GE - Letter regarding Alta"s Responses and Objections to GE"s First Request for Production |
| Date: | Tuesday, July 26, 2022 10:26:12 AM |
| Attachments: | image001.png |

**[WARNING: External Email]**

Dear Matt,

Thank you for your email and Andrew's letter.  During my last call with Andrew, we confirmed Alta was not withholding any documents responsive to GE's first RFPs. At GE's request, we amended our responses to GE's first RFPs, stating that "[a]s of July 2, 2022, Alta Power is not withholding any document reviewed from the universe of documents captured by the search methodology outlined in its search protocol (e.g. its search terms) that is responsive to any of GE's requests for production on the basis of any objection other than privilege."

To date GE has not made a similar representation so we'd ask GE to do the same.

As to the other issues raised in Andrew's letter:

1.  As our statement makes clear, we are not withholding documents based on objections so we do not believe it is necessary to withdraw any objections. We are happy to discuss this further at your convenience.

2.  GE's Complaints about RFPs 3. 14. And 15:

    a.  RFP 3: As noted, we have produced all of the documents responsive to this request that were captured by our existing search terms. We are happy to discuss additional searches GE thinks may be useful, but the RFP is very difficult to understand and seems to ask for every email every sent or received and/or every document prepared by an Alta employee related to the company.

    b.  RFP 14 is likewise overly broad, as it seeks every document ever exchanged with any company or business group "with whom you negotiated or contracted to sell and/or operate any of the gas turbine equipment described in the First Amended Counterclaim and Third Party Petition," *regardless of whether those communications had anything to do with Alta's business or even the subject matter of the case.* As noted previously, though, Alta Power is not withholding any documents captured by the agreed search terms that are responsive to this Request.

    c.  RFP 15: Alta provided documents responsive to this request (*see e.g.* Alta 0003271, Alta 0003302)

3.  Fees documents: We do not believe there is a need for this information at this stage.  We would

suggest the parties agree to defer litigation over attorneys' fees until we have prevailed.  Please let me know if this is agreeable.

4. GE's complaints about the "ESI Protocol": Alta has produced all the documents we have identified as responsive to GE's Requests for Production electronically and will amend our response to make clear if GE desires.

5. RFPs 4 and 20: We've produced all the documents responsive to this Request. Alta is willing to amend the RFP responses to reflect this if GE desires.

6. RFP 23: To the extent there are documents that are not captured by the search protocol that we agreed to (which includes the additional search terms GE requested a few weeks ago), Alta Power stands on its objections.

I hope this resolves GE's issues.  If GE has a question, we are happy to discuss further (as always).

Respectfully,

Jeb Golinkin
--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com |  Attorney Biography



---

**From:** Capoccia, Matt <MCapoccia@gibsondunn.com>
**Sent:** Monday, July 25, 2022 4:24 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; John.Lawrence@bakerbotts.com
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; jessica.pulliam@bakerbotts.com; kirstie.wallace@bakerbotts.com
**Subject:** WattStock v. Alta v. GE - Letter regarding Alta's Responses and Objections to GE's First Request for Production

Dear Jeb and John,

Please find attached GE's meet-and-confer letter regarding Alta's Responses and Objections to GE's First Request for Production.  We are also in receipt of and reviewing your responses to GE's Second Request for Production, and we anticipate sending a separate deficiency letter related to those responses in the near future.

Best,

Matt

**Matt Capoccia**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT G

GE's Proposed Search Terms to Alta
06.23.2022

|     | **GE's Proposed Terms** |
|-----|-------------------------|
| 1.  | partner* |
| 2.  | "memorandum of understanding" |
| 3.  | MOU |
| 4.  | "not to exceed" OR "not-to-exceed" |
| 5.  | "termination fee*" |
| 6.  | "competitive pricing" |
| 7.  | "Cemento" |
| 8.  | "Certified Turbine Power" or "CTP" |
| 9.  | "hand-in-hand" OR (hand w/2 hand) |
| 10. | "Pete Watson" OR "Watson" OR (Pete* w/2 Watson) |
| 11. | "LTSA" OR "Long Term Service Agreement*" |
| 12. | waive* w/25 fee* |
| 13. | Castleman* |
| 14. | "authorized service provider" OR (authorized w/3 provider) |
| 15. | "6.5 M*" OR "6,500,000" OR (six w/3 million) OR ("6" w/3 million) |
| 16. | stand w/2 behind |
| 17. | strong w/2 incentive* |
| 18. | principal OR agen* |
| 19. | "step-in" OR (step w/2 in) |
| 20. | negotiat* w/10 (contract OR agreement) |
| 21. | insist* w/10 (Contract OR Agreement) |
| 22. | (breach* OR violat*) w/10 (contract or agreement) |
| 23. | lost w/2 (profit* OR business) or (first w/2 mover) or (miss* w/2 opportunit*) |
| 24. | cancel* w/2 fee* |
| 25. | control* w/10 (relationship OR GE OR Wat%stock) |
| 26. | fraud* OR misrepresent* OR (fals* w/5 info*) or deceive* or deception or lie* or scam or bait w/2 switch or cheat or dishonest* or mislead* or trick* or swindle* |
| 27. | "8.125 M*" OR "8.125" OR "8.1 M*" OR "8,125,000" OR (eight w/3 million) OR ("8" w/3 million) |

GE's Proposed Search Terms to Alta
06.23.2022

| | |
|---|---|
| 28. | "1.5 M*" OR "1,500,000" OR (one w/3 million) OR "1" w/3 million) |
| 29. | "EFS" OR "Energy Financial Services" |
| 30. | "Laterza" OR "Matt" w/25 (GE or "general electric" or WS or WattStock)  [*in body of email only*] |
| 31. | "West" OR "Travis" w/25 (GE or "general electric" or WS or WattStock)  [*in body of email only*] |
| 32. | ethos and (condition or quality or status or "run down" or "worn down" or broken w/2 down or dilapidate* or "beat up" or *damage* or uncared w/2 for or excellent or good) |
| 33. | joint w/2 (venture or enterprise) |

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WATTSTOCK LLC, | |
| *Plaintiff/Counter Defendant,* | |
| v. | |
| ALTA POWER LLC, | 3:21-cv-03183 |
| *Defendant/Counter Plaintiff,* | |
| v. | |
| GENERAL ELECTRIC INTERNATIONAL, INC. | |
| *Third-Party Defendant.* | |

## ALTA POWER, LLC'S OBJECTIONS AND RESPONSES TO
## GENERAL ELECTRIC'S SECOND REQUESTS FOR PRODUCTION

TO:     Third-Party Defendant General Electric International, Inc ("GE"), by and through its attorneys of record, John T. Cox, III and Andrew LeGrand, Gibson, Dunn & Crutcher LLP, 2001 Ross Avenue, Suite 2100, Dallas, TX 75201 and Eric Haitz, Gibson, Dunn & Crutcher LLP, 811 Main Street, Suite 3000, Houston, TX 77002.

Pursuant to the Federal Rules of Civil Procedure, Alta Power LLC ("Alta" or "Alta Power") serves this, its Objections and Responses to Third-Party Defendant General Electric International, Inc.'s ("GE") Second Requests for Production.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By:      *Jeb Golinkin*
    Michael Cancienne
    State Bar No. 24055256
    Joseph W. ("Jeb") Golinkin II
    State Bar No. 24087596
    1980 Post Oak Blvd., Suite 2300
    Houston, Texas 77056
    Telephone:  713.955.4025
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com

BAKER BOTTS L.L.P.

    Jessica B. Pulliam
    State Bar No. 24037309
    John B. Lawrence
    State Bar No. 24055825
    Kirstie L. Wallace
    State Bar No. 24115920
    2001 Ross Avenue, Suite 900
    Dallas, Texas 75201
    Telephone: (214) 953-6500
    Facsimile: (214) 953-6503
    jessica.pulliam@bakerbotts.com
    john.lawrence@bakerbotts.com
    Kirstie.wallace@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the above and foregoing was sent to the following counsel of record by electronic mail on July 25, 2022:

Thomas D Berghman
Munsch, Hardt, Kopf & Harr, PC;
500 N. Akard St., Ste. 500
Dallas, TX 75201
*Attorneys for Wattstock LLC*

John Cox
Andrew LeGrand
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
TCox@gibsondunn.com
ALegrand@gibsondunn.com

and

Eric Haitz
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, TX 77002
EHaitz@gibsondunn.com
*Attorneys for Third-Party Defendant*
*General Electric International, Inc.*

_____*/s/ Jeb Golinkin*_____
Jeb Golinkin

## <u>GENERAL OBJECTIONS</u>

1.    Alta Power objects to GE's Definitions and Instructions contained in the discovery to the extent that same seek to alter or expand Alta's obligations to respond to same under the Federal Rules of Civil Procedure.

2.    To the extent the definition of "you" and "your" includes Alta Power's attorneys, the discovery seeks information protected from discovery by the attorney-client privilege and the attorney work product doctrine.

## OBJECTIONS AND RESPONSES TO
## SECOND REQUESTS FOR RODUCTION

**REQUEST FOR PRODUCTION NUMBER 31:**

All documents and communications that reference, describe, or summarize any meetings between or involving Alta, WattStock, and/or GE related to aeroderivative gas turbines.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 32:**

All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals between Alta and any other person that refurbished used aeroderivative gas turbines, including the "GE 'certified' companies" referenced in the Third-Party Petition.

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

**REQUEST FOR PRODUCTION NUMBER 33:**

All documents and communications that reference or constitute communications with the third-party owners of used aeroderivative gas turbines.

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

**REQUEST FOR PRODUCTION NUMBER 34:**

All documents and communications that reference, record, or show any money paid to WattStock by Alta related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

**REQUEST FOR PRODUCTION NUMBER 35:**

All documents and communications that reference, record, or show any money paid to GE by Alta related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 36:**

All documents and communications that reference, record, or show any goods or services provided to WattStock by Alta related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 37:**

All documents and communications that reference, record, or show any goods or services provided to WattStock by GE related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 38:**

APP.85

All documents and communications that reference, record, or show any goods or services provided to Alta by WattStock related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 39:

All documents and communications that reference, record, or show any goods or services provided to Alta by GE related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 40:

All documents and communications that reference, record, or show any goods or services provided to GE by Alta related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 41:

All documents and communications that reference, record, or show any goods or services provided to GE by WattStock related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 42:

All documents and communications in which Alta or any other person referenced a partnership, including "strategic alliance partnership," between GE and Alta, GE and WattStock, or WattStock and Alta.

APP.86

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 43:

All documents and communications in which Alta referred to any other person as a "partner," or referred to any other actual or anticipated contractual or business arrangement as a "partnership."

**RESPONSE:** Alta Power objects to this Request because it is overbroad, vague, and fails to identify the documents it seeks with reasonable particularity. Alta Power further objects that this Request is overbroad insofar as it seeks information and or communications about relationships that are unrelated to the subject matter of this case. To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, fails to identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power has—at GE's request—run a search for "partner" on the agreed custodians within the agreed date range, and will produce any of those search results that are responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 44:

All documents and communications in which Alta referred to any other person as a "principal" or "agent," or referred to any other actual or anticipated contractual or business arrangement as an "agency," "venture," or "enterprise."

**RESPONSE:** Alta Power objects to this Request because it is overbroad, vague, and fails to identify the documents it seeks with reasonable particularity. Alta Power further objects that this Request is overbroad insofar as it seeks information and or communications about relationships that are unrelated to the subject matter of this case.

## REQUEST FOR PRODUCTION NUMBER 46:

All documents and communications in which Alta referred to WattStock as GE's agent or otherwise reflected a belief that an agency relationship existed between WattStock and GE.

APP.87

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, fails to identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power further objects that this Request is vague insofar as responsiveness to this Request may not be obvious based on the four corners of the documents itself because it inquires about "beliefs." Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

**REQUEST FOR PRODUCTION NUMBER 47:**

All documents and communications related to your allegation, in paragraph 44 of the First Amended Answer and Counterclaim and Third-Party Petition, that "GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world."

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 48:**

All documents and communications related to your allegation, in paragraph 71 of the First Amended Answer and Counterclaim and Third-Party Petition, that "GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition," including all documents reflecting the EthosEnergy unit's allegedly "dilapidated" condition.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 49:**

All documents and communications reflecting Alta's knowledge of WattStock's governance structure and ownership, including communications or documents related to WattStock's articles of association, a corporate structure chart, ultimate beneficial owners, or the names of WattStock's directors or senior persons responsible for its operation, as well as any documents reflecting that WattStock shared such information with lenders or other third parties.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 50:**

All documents and communications that reference or constitute communications with or from WattStock related to its governance structure or ownership, including any communications by Alta or WattStock with any lender or any other person.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 51:**

All documents and communications related to any investigation by Alta into the nature of the legal relationship between WattStock and GE.

**RESPONSE:** Alta Power objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or the work product doctrine. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 52:**

All documents and communications reflecting the "extrinsic evidence" referenced in paragraph 111 of the First Amended Answer and Counterclaim and Third-Party Petition that you allege "shows actual control by GE over WattStock."

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 53:**

All documents and communications related to any "not to exceed price" for used aeroderivative gas turbines, including the $6.5 million "not to exceed price" for the two Nuh Cemento units referenced in the LNTP.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 54:**

All documents and communications referencing the two $750,000 payments referenced in paragraphs 92 and 93 of the Third-Party Petition.

APP.89

**RESPONSE:** Alta Power objects to this Request to the extent it seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 55:

All documents and communications related to Alta's allegations in the First Amended Answer and Counterclaim and Third-Party Petition that in 2020 Alta "remained financially committed to the project and was ready, willing, and able to go forward with the two Nuh Cemento units under the LNTP," including any documents supporting that allegation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

## REQUEST FOR PRODUCTION NUMBER 56:

The following documents referenced in Alta's Requests for Production:

- "LM6000PC TRUEPackage LNTP between GE and WattStock" (Alta RFP No. 18)
- "LM6000PC Contractual Services Agreement Budgetary Proposal" (Alta RFP No. 19)
- "September 16, 2019 proposal prepared by GE related to the 'ALTA LNTP project'" (Alta RFP No. 32)
- "GE Power Services-Aero Contract Change Order transmitted to or discussed with WattStock on November 22, 2019" (Alta RFP No. 33)
- "December 23, 2019 Limited Notice to Proceed Proposal to Alta for the Goodlow Peak Power Site for Two (2) TRUEpackage LM6000 PC Sprint GTG's" (Alta RFP No. 34)
- "'Equipment Purchase and Sale Agreement' between Acarsoy Energy Electric Oretim San. Ve Tic. AS. and WattStock" (Alta RFP No. 35)

**RESPONSE:** These documents have been produced.

## REQUEST FOR PRODUCTION NUMBER 57:

All documents and communications related to Alta's dispute with Castleman Power Development LLC ("Castleman"), including any pleadings, motions, transcripts, mediation statements, and/or settlement agreements.

**RESPONSE:** Alta Power objects to this Request because it is overbroad, vague, and does not seek relevant information.

**REQUEST FOR PRODUCTION NUMBER 58:**

All documents and communications showing, referencing, or relating to the terms and conditions of all nondisclosure agreements between Alta and any third parties concerning the transactions referenced in the First Amended Answer and Counterclaim and Third-Party Petition.

**RESPONSE:** Alta Power objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 58:**

All communications from 2018 through present with third parties related to Alta's planned entrance into the Texas renewable energy market and its projects involving used aeroderivative gas turbines for the Texas energy market.

**RESPONSE:** Alta Power objects to this Request because it is overbroad, vague, and fails to identify the information sought with reasonable particularity. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 60:**

All documents and communications concerning or related to Alta's funding or financing of this litigation.

**RESPONSE:** Alta Power objects to this Request on the ground that it fails to identify the information it seeks with reasonable particularity, and because it calls for the production of privileged information. Alta Power further objects that this Request is overbroad and is not likely to lead to the discovery of relevant evidence. To the extent this Request seeks documents supporting Alta Power's request for attorneys' fees, such documents will be produced before the end of discovery in this case.

**REQUEST FOR PRODUCTION NUMBER 61:**

All documents and communications received from any other person, including third parties, in response to any formal or informal request or subpoena made or served by you in connection with this litigation.

**RESPONSE:** Any documents received from third parties in connection with discovery in this case will be produced.

**REQUEST FOR PRODUCTION NUMBER 62:**

All documents that reference or relate to the "Memorandum of Understanding" between GE and WattStock referenced in the July 31, 2019 letter sent by GE to Alta.

**RESPONSE:** Alta Power objects to this Request insofar as it seeks documents protected by the attorney-client privilege and/or the work product doctrine. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 63:**

All documents and communications that reference or relate to any termination fee or cancellation fee associated with Alta's purchase of any used aeroderivative gas turbine from GE or WattStock.

**RESPONSE:** Alta Power objects to this Request because it fails to identify the documents sought with reasonable particularity. Alta Power further objects to this Request insofar as it seeks documents protected by the attorney-client privilege or the work product doctrine. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 64:**

All documents and communications that reference or related to any pricing discussed by Alta with WattStock or GE for any used aeroderivative gas turbine.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 65:**

All documents and communications that reference or relate to the terms and conditions of any long-term service agreement on any used aeroderivative gas turbine, including the proposed scope of work for Alta Power Site #1 and proposed pricing, that Alta intended or attempted to purchase related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power objects to this Request because it fails to identify the documents it seeks with reasonable particularity. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 66:**

All documents and communications related to any references by WattStock or GE that GE would "step in" for WattStock under the Master Agreement or LNTP as alleged in the Third-Party Petition at paragraph 78.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 67:**

All documents and communications showing, referencing, or relating to any false or fraudulent statements that you believe were made by GE or WattStock.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 68:**

All documents and communications that show or relate to any "lost profits" or "lost business" incurred by Alta that was allegedly caused by any party in this litigation.

**RESPONSE:** Alta Power objects that this Request is inappropriate and premature. Alta Power will produce documents that support its damages claims in this case at the time required under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NUMBER 69:**

All documents and communications concerning GE or WattStock related to the actual or prospective cost of any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 70:**

All documents and communications with any third-party concerning GE or WattStock that are related to any of the projects or transactions at issue in this litigation.

APP.93

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

### REQUEST FOR PRODUCTION NUMBER 71:

All documents and communications relating to your efforts to obtain financing, or financing obtained, in connection with any of the projects or transactions at issue in this litigation.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

### REQUEST FOR PRODUCTION NUMBER 72:

All documents and communications concerning WattStock or GE since January 1, 2018 that are related to any of the projects or transactions at issue in this litigation.

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

### REQUEST FOR PRODUCTION NUMBER 73:

All documents and communications concerning Castleman, including all documents related to the allegations in paragraphs 79 and 80 of the Third-Party Petition about how WattStock disclosed confidential information to Castleman, and all documents related to the allegations in paragraph 103 that "Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market."

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

## REQUEST FOR PRODUCTION NUMBER 74:

All documents and communications with any financial institutions or lenders, including Deutsche Bank, concerning Castleman.

**RESPONSE:** To the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

## REQUEST FOR PRODUCTION NUMBER 75:

All documents and communications concerning any "hidden liabilities" referenced in paragraph 54 of the Third-Party Petition that Alta claims to have burdened any used aeroderivative gas turbine that Alta intended or attempted to purchase.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request. Alta Power also refers GE to its own document production, which discusses the hidden liabilities referenced in Paragraph 54 of Plaintiff's First Amended Answer and Counterclaims against GE.

## REQUEST FOR PRODUCTION NUMBER 76:

All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals in which Alta claims that GE or WattStock misrepresented the nature of their relationship, created the impression that they were partners or agents, or in a joint venture together.

**RESPONSE:** Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

APP.95

**REQUEST FOR PRODUCTION NUMBER 77:**

All documents and communications concerning the negotiation and execution of the Master Agreement or LNTP between Alta and WattStock, including drafts of these agreements and communications regarding contract terms, including Article 9 of the Master Agreement.

**RESPONSE:** Alta Power objects to this Request because it seeks documents protected and information protected by the attorney-client privilege and the work-product doctrine. Subject to the foregoing, Alta Power has performed a reasonable search for and has and/or will produce documents identified as responsive to this Request.

**REQUEST FOR PRODUCTION NUMBER 78:**

All documents and communications in which Alta referred to WattStock as GE's partner or otherwise reflected a belief that a partnership relationship existed between WattStock and GE.

**RESPONSE:** Alta Power objects that this Request is vague insofar as it inquires into a state of mind. Additionally, to the extent this Request requires Alta Power to expand the scope of its agreed search terms and/or custodians and/or date range, Alta Power objects that this Request is overbroad, unduly burdensome, does not identify the information sought with reasonable particularity, and fails to seek information relevant to any cause of action or issue in this case. Alta Power will produce any non-privileged documents it identifies as responsive to this Request based on Alta Power's review of the agreed search term hits run on the emails of relevant custodians sent and received between January 1, 2018 and June 1, 2020.

# EXHIBIT I

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

2001 Ross Avenue
Dallas, TX  75201
Tel 214.698.3100
www.gibsondunn.com

Andrew LeGrand
Direct: +1 214.698.3405
Fax: +1 214.571.2960
ALeGrand@gibsondunn.com

August 18, 2022

<u>VIA ELECTRONIC MAIL</u>

John B. Lawrence
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75001-2980

Joseph W. Golinkin, II
Jordan, Lynch & Cancienne PLLC
1980 Post Oak Blvd., Suite 2300
Houston, TX 77056

Re:    *WattStock, LLC v. Alta Power LLC*

Dear John and Jeb:

        I write on behalf of Third-Party Defendant General Electric International Inc. ("GE") about the responses served by Alta Power LLC ("Alta") to GE's Second Request for Production as well as Alta's reply to GE's meet-and-confer letter about Alta's responses to GE's First Request for Production.

**A.    You Must Withdraw Your Boilerplate and "Subject-To" Objections that Serve No Purpose Other Than to Confuse**

        As with your responses to GE's First Request for Production ("First R&O"), your second set of responses is littered with impermissible boilerplate and "subject-to" objections. *See Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 3:17-CV-2719-B, 2018 WL 3655574, at *6 (N.D. Tex. July 16, 2018); *e.g.* R&O to Second RFP at RFP 43–44 (objecting that the requests are "overbroad, vague, and fail[ ] to identify the documents [they] seek[ ] with reasonable particularity"), 56 (similar), 59 (similar), 60 (similar).  As mentioned in our previous letter, a party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad or irrelevant]." *United My Funds, L.L.C. v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *6 (E.D. Tex. Mar. 12, 2020) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) ("The party

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

APP.98

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 2

resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable."). To that end, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *Perera*, 2020 WL 1225042. at *6. Because you fail to make the requisite specific, detailed showing of how any of these requests are irrelevant, vague, or overly burdensome, the objections must be withdrawn and you must produce responsive documents for these RFPs.

Your explanation for why you are refusing to withdraw such objections does not make sense, nor does it reduce the confusion they cause. In your email on July 26 about your responses ("Reply") to the First Request for Production ("First R&O"), you stated that "we are not withholding documents based on objections so we do not believe it is necessary to withdraw any objections." You thus, on the one hand, admit that the boilerplate objections in the First R&O are pointless and you offer no reason for your insistence on keeping them. On the other hand, you have used boilerplate objections in the Second Request for Production ("Second R&O") that seemingly suggest that you will not produce any documents for certain requests, and you include no similar disclaimer that you are not withholding documents for these requests. In particular for RFP 57, which seeks documents and communications "related to Alta's dispute with Castleman Power Development LLC . . . including any pleadings, motions, transcripts, mediation statements, and/or settlement agreements," you state simply "Alta Power objects to this Request because it is overbroad, vague, and does not seek relevant information." No mention is made of any anticipated production related to this request. Likewise for RFP 44, which seeks documents in which Alta "referred to any other person as a 'principal' or 'agent,' " or referred to "any other actual or anticipated contractual or business arrangement as an 'agency,' 'venture,' or 'enterprise,' " you again interpose boilerplate objections but do not state you are producing responsive documents. Given that you affirm for 45 other responses in the Second R&O that you will produce responsive documents, the impression given by the combination of an absence of similar statements for RFPs 44 and 57 and the presence of boilerplate objections is that you are totally withholding documents for these requests. If you intend to withhold documents based on these boilerplate objections, for the reasons already stated they are insufficient and must be withdrawn. If instead you intend to state that you are not withholding documents related to these objections in the Second R&O, this is not a reasonably clear way to draft discovery responses. GE is entitled to an unambiguous answer in each response as to whether documents are being withheld. It is not

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 3

reasonable to require GE to have to parse prior emails and discovery responses to divine whether a previous representation that boilerplate objections do not signal withholding applies to a later response lacking the same representation.  Regardless of your exact intent, the result should be the same: you should withdraw all boilerplate and "subject-to" objections because they serve no purpose other than to confuse.

**B.      Your Responses Related to Requests for Castleman Documents Suggest You Are Either Wrongfully Withholding Documents or Are Being Evasive About Whether Certain Documents Have Been Captured Under the Search Protocol**

Your responses to RFPs 23, 57, 73, and 74—all of which are directed at documents that concern Castleman Power Development LLC—suggest that you are willing to produce documents that generally discuss Castleman, but obfuscate whether documents specifically related to Alta's dispute with Castleman exist, and if so, whether they are being withheld.  Your dispute with Castleman is central to your claim that you suffered harm from WattStock's alleged breach of the confidentiality provision, and thus documents about this dispute are relevant.  We are aware that you have produced documents in which Alta disclosed the Castleman dispute to Deutsche Bank, but no documents have been produced reflecting (1) any communication from Alta with anyone at Castleman about the dispute, (2) any internal Alta communications about the dispute or the effect it supposedly had on the Deutsche Bank financing, or (3) any Alta documents suggesting that Alta suspected that the Castleman dispute was related to WattStock's alleged breach of the non-disclosure agreement.  As noted below, if no responsive Castleman dispute documents beyond those already produced were captured under the agreed search protocol, please state so unambiguously. If the documents were captured but are being withheld, please state so unambiguously.  GE's position is that you have no legitimate ground for withholding such documents.

1.      **Your Response to RFP 57 Suggests You Are Withholding Castleman Dispute Documents Without Any Legitimate Basis**

As noted above, you have objected to producing documents for RFP 57 concerning your dispute with Castleman on the grounds that the request is "overbroad, vague, and does not seek relevant information."  Your response also omits any indication that you are producing responsive documents, which leads GE to believe that your failure to include any such

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 4

statement for RFP 57 while including it for 45 other responses means that you are withholding such documents.

Your objections are boilerplate and insufficient to support withholding, but even apart from that, your claim that such information is irrelevant is wrong. In the discovery context "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19- CV-1594-D, 2020 WL 7321174, at *2 (N.D. Tex. Dec. 11, 2020). Relevant information includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Moss v. Princip*, No. 3:14-CV-3088-BF, 2017 WL 2879694, at *1 (N.D. Tex. June 1, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)). The party resisting discovery bears the burden to show specifically how each request is not relevant or is otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

The Third-Party Petition alleges that the Castleman dispute is central to why Deutsche Bank declined to finance your deal, which makes it essential to your claims against WattStock and GE for WattStock's alleged breach of the non-disclosure agreement. The Third-Party Petition alleges that, in summer 2019, Alta sought financing from Deutsche Bank, who was Alta's "best source of funding" for its purchase. *Id.* ¶ 76. At "sometime before financing was closed," WattStock supposedly "disclosed to Ryan Castleman of Castleman Power Development LLC" that "financing from Deutsche Bank was imminent." *Id.* ¶ 79. This allegedly led Castleman to "attempt[ ] to scuttle Alta Power's financing" by "threaten[ing] to file a frivolous 'trade secret' lawsuit against Alta Power." *Id.* Alta was thus "forced to disclose this frivolous claim to Deutsche Bank," and while Alta worked to "quickly resolve the frivolous dispute," it ultimately had to "pay Castleman an extortion fee to settle the frivolous claim." *Id.* ¶ 80. "But the damage was already done," according to the Third-Party Petition, and "Castleman's strategy of causing delay to destroy financing worked" because "Deutsche Bank decided against providing financing to Alta Power." *Id.* ¶¶ 80–81. The failure to obtain financing from Deutsche Bank "delay[ed] Alta owner's ability to bring units into service." *Id.* ¶ 81. In Count III of the Third-Party Petition, you allege that "by disclosing confidential information about Alta Power and its financing to Castleman," WattStock "proximately caused injury to Alta Power" because its "breach caused Alta Power to lose project financing for its

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 5

unique strategy for developing power generation projects in the Texas market." You similarly assert that "had WattStock not breached the confidentiality provision, Alta Power would have closed financing with Deutsche Bank and been able to implement its unique strategy." *Id.* ¶ 117. And you claim that as a result of these breach that "Alta Power has been severely damaged." *Id.* ¶ 118. To sum up, your assertions about the Castleman dispute make clear (1) that it purportedly caused Deutsche Bank to decline financing and (2) that failure caused financial damage to you.

The information that GE seeks in RFP 57—the "pleadings, motions, transcripts, mediation statements, and/or settlement agreements" from "Alta's dispute with Castleman"—is relevant to defending against your claims on these points. First, these documents will answer the question of *when* the alleged threat of a lawsuit was first made, potentially undermining Alta's theory that the breach of the non-disclosure agreement proximately caused the financing to fall through. Second, the information will answer whether Castleman's claim really was—as you claim four times in paragraphs 79–80 of the Third-Party Petition—frivolous. Third, the documents will answer the fundamental question of whether there is a good-faith factual basis for your assertions about the threatened Castleman lawsuit and your efforts to resolve it.

2.  **Your Response to RFP 23 Is Evasive About Whether Castleman Dispute Documents Exist and Will Be Produced**

Given the allegations in your Third-Party Petition, we are puzzled by your response to RFP 23 (which likewise seeks information related to the Castleman dispute), which suggests you possess "no" responsive documents. While you claim in your Reply that you are not withholding documents that would be captured by the agreed search terms for this request, you do not say one way or the other whether any such documents will be produced. Because it is unclear whether you are producing documents for this request, this constitutes "an evasive or incomplete disclosure, answer, or response [that] must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

If it turns out that no additional responsive documents are captured by the agreed search protocol, this is itself a significant fact. As you know, one of the search terms agreed to include the term "Castleman*." Thus, *all* documents from the four Alta custodians listed that refer to Castleman at all should be captured. Three of the custodians listed are Alta's CFO Matt

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 6

Laterza, Alta's CEO Bill Phelps, and Alta's General Counsel Robert Perkins.  If somehow Alta's CEO, CFO, and general counsel do not have *any* additional relevant documents referring to Castleman's threatened lawsuit, which supposedly derailed the Deutsche Bank financing, the Third-Party Petition contains material misrepresentations for which GE will seek appropriate relief.  Thus, please give an unambiguous answer as to whether any documents responsive to RFP 23 were captured by the agreed search protocol and whether you intend to withhold such documents.

Your agreement to produce other information about Castleman does not lessen the need for a clear response to RFP 23.  In RFP 73, you agreed to produce "all documents referring and communications concerning Castleman," including information on how "WattStock disclosed confidential information to Castleman," and how "Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market." Your response does not clarify whether the "documents and communications concerning Castleman" that will be produced include any Castleman dispute documents.  Likewise your agreement to produce documents for RFP 74 regarding your communications with financial institutions or lenders "concerning Castleman" does not clarify this issue.  In any event, please confirm when you plan to produce those documents.

## C.    You Must Respond to RFP 45

You appear to have overlooked RFP 45, which is omitted in total in the Second R&O. Please revise your response to address this request.

## D.    Your Proposal to Delay Producing Relevant Information Regarding Attorney's Fees Is Unacceptable

While GE appreciates that your Reply appears to concede that you must produce attorney billing records because you are seeking attorney's fees, your proposal to delay that production until after a finding of liability is unacceptable because GE is entitled to the requested information now.  Courts within the Fifth Circuit typically require the production of attorney's fees information before a finding of liability, as that information "enable[s a] defendant to assess its total liability if plaintiff prevails on [its] claim." *Hernandez v. Scott*, No. SA-10-CV1051, 2011 WL 2619342, at *1 (W.D. Tex. July 1, 2011) (rejecting plaintiff's

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 7

argument that fee agreement and billing statements need not be produced until after trial); *see also Coleman v. Credit Mgt. LP*, No. 3:10-CV-02312-M-BK, 2011 WL 13128820, at *2 (N.D. Tex. July 13, 2011) (following *Hernandez*, granting motion to compel regarding "all documents reflecting attorney's fees, costs, fee arrangements, engagement letters, billing records and/or invoices from Plaintiff's attorneys," and noting that "n[o] authorities" support withholding of attorney billing records until after a plaintiff succeeds in establishing liability); *Zamora v. GC Services, LP*, No. EP-15-CV-48, 2016 WL 8853096, at *2 (W.D. Tex. Aug. 19, 2016) (ordering disclosure of attorney's fees information and rejecting argument that the information was irrelevant "before a favorable verdict"); *Lozada-Leoni v. MoneyGram Intl., Inc.*, No. 4:20-CV-68, 2020 WL 10046089, at *16 (E.D. Tex. July 8, 2020) (ordering disclosure of attorney's fees information before there had been a finding of liability); *Bustamante v. State Farm Lloyds*, No. 5:15-CV-184, 2016 WL 10655600, at *1 (S.D. Tex. June 20, 2016) (same); *Simon v. State Farm Lloyds*, No. 7:14-CV-251, 2015 WL 12777219, at *5 (S.D. Tex. Apr. 9, 2015) (same); *Dunn v. Schlumberger Tech. Corp.*, No. 08-CV-3238, 2010 WL 11646536, at *2 (S.D. Tex. July 20, 2010) (same).

You appear to be attempting to deprive GE of the requested information until *after* summary judgment at the earliest, which under the Joint Motion to Modify the Scheduling Order would be after May 1, 2023. This is unacceptable, and we must move to compel if you continue to refuse to produce such information.

**E.      Your Apparent Refusal to Promptly Produce Evidence Related to Lost Profits Is Impermissible**

Your response to RFP 68, which requests documents that "show or relate to any 'lost profits' or 'lost business' incurred by Alta," is deficient because it does not commit to making the production by the deadline imposed by the Rules. Indeed, the timeline that you have in mind for production of the requested information is unstated, but the fact that you refer to the request as "premature" suggests that you will not be producing these materials in the immediate future.

Rule 26(a)(1)(A)(iii) requires that a party "seeking damages provide the opposing party with a computation of the damages sought" and "the documents or other evidentiary material . . . on which such computation is based." Fed. R. Civ. P. 26(a)(1)(A)(ii). This must first be

**GIBSON DUNN**

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 8

provided in the initial disclosures, and this rule operates like a "standing interrogatory" in which a party has an "obligation to supplement under Rule 26(e) . . . once additional information is available."  8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedu*re § 2053 (3d ed.).  A failure to produce the required materials regarding lost profits will usually lead to their automatic exclusion under Rule 37(c)(1).  *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 633 (S.D.N.Y. 2005) (excluding lost profits where party refused to produce evidence of lost profits in discovery), aff'd in relevant part. Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006); *see also Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, CIV A 306-CV-0271-B, 2007 WL 4410370, at *7 (N.D. Tex. Dec. 14, 2007) (relying on Design Strategies in excluding evidence of damages for which plaintiff had not adequately disclosed in discovery).  Although you are required to produce such information supporting your claim for lost profits in your initial disclosures, the disclosures you served on August 3, 2022, do not provide the requisite detail or information required by the Rules.  Indeed, you provide no computation of consequential damages or even name a specific figure of such damages sought, and then you cite the entirety of your document production— consisting of over 76,000 pages—as the "the documents supporting these damages."  This is grossly deficient.  *LW Air I, L.L.C. v. Air 7, L.L.C.*, 3:16-CV-00546-L, 2017 WL 3209398, at *1 (N.D. Tex. Apr. 20, 2017) ("A party claiming damages has the obligation, when it makes its initial disclosures, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be." (quoting *Tendeka, Inc. v. Glover*, No. H-13-1764, 2015 WL 2212601, at *16 (S.D. Tex. May 11, 2015)).  Please amend your disclosures and produce the requested information by August 26, 2022.  Otherwise, we will move to compel production of this information.

**F.      Your Objections Relating to Producing Documents Reflecting Alta's "Beliefs" About the Existence of An Agency or Partnership Relationship Are Deficient**

Your objections in RFPs 44 and 78 on the ground that you cannot identify documents that reflect Alta's "beliefs" about the existence of a partnership or agency relationship between WattStock and GE is curious in the light of the allegations you have made in the Third-Party Petition.  For RFP 46, in which GE requested "[a]ll documents and communications in which Alta referred to WattStock as GE's agent or otherwise reflected a belief that an agency relationship existed between WattStock and GE," you claim the request is vague "insofar as responsiveness to this Request may not be obvious based on the four corners of the documents

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 9

itself because it inquires about 'beliefs.' "  You say the same thing for RFP 78, which asks for information in which "Alta referred to WattStock as GE's partner or otherwise reflected a belief that a partnership relationship existed between WattStock and GE."

These objections are deficient because, given your own allegations, a request for documents reflecting Alta's beliefs about the existence of an ostensible agency or partnership-by-estoppel relationship categorically cannot be vague. The Third-Party Petition is filled with language about how Alta believed GE's representations about its relationship with WattStock and reasonably relied on them.  *See* Third-Party Petition ¶¶ 44 ("GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world. GE and WattStock caused Alta Power to believe that WattStock had the financial resources to pay for the units"), 107 ("Alta Power justifiably relied on these representations), 109 ("an ostensible agency existed between WattStock and GE"), 150 ("Alta Power relied on GE and WattStock's representations regarding their relationship), 4 ("Alta Power relied on GE's and WattStock's representations regarding the nature of the WattStock/GE relationship").  Unless you are claiming that you yourselves cannot identify documents that reflect Alta's "belief" or "justifiable reliance" on the alleged representations of an agency/partnership relationship, then your objections based on vagueness should be withdrawn.  At a minimum, if you ever intend to use a document that supposedly reflects ostensible agency or partnership-by-estoppel, then those must be produced in response to this RFP, and you cannot hide behind a vagueness objection to avoid doing so.

## G.     Roy Hart Should Be One of Alta's Custodians

Our review of your document production has revealed that Alta repeatedly told third parties, including Deutsche Bank and other lenders, that its "principals or key employees" consisted of four individuals: William Phelps (CEO), Matt Laterza (CFO), Travis West (COO), and Roy Hart (Chief Development Officer). *E.g.* Alta 0029631; Alta 0004059; Alta 0041205. In addition to being one of the four principals at Alta, Roy Hart was at the center of the Castleman dispute, as he is one of the two employees named in the settlement agreement whose non-competes Alta was alleged to have tortuously interfered with.  Alta 0049934; *see also* Alta 0057371 (Castleman's cease-and-desist letter explaining that "Mr. Hart and Mr. West formerly provided consulting services to Castleman" and that Castleman secured a non-compete from

# GIBSON DUNN

John B. Lawrence
Joseph W. Golinkin, II
August 18, 2022
Page 10

each of them); Alta 0006187 (Hart's resume noting that in his work as President & CEO of Roy J. Hart LLC that he performed work for "Castleman Power Development/Agilon Energy – fully develop 4 100MW gas fired peakers in ERCOT"). Thus, given Mr. Hart's apparent role as one of the four principals during the time in question and his connection to the Castleman dispute, we request that you add him as a custodian.

**H.    Alta Should Collect Documents From William Phelps's Personal Email that Was Used To Conduct Alta Business**

Our document review has also revealed that Alta's CEO William Phelps often conducted Alta business from his personal email (wcp@wcphelps.com), but it does not appear that Alta has collected emails from his personal account. There are currently 544 emails that were produced that include Phelps's email somewhere in the thread, but all of these emails are ones in which Matt Laterza was included using his Alta email. *E.g.* Alta 0007020 (discussing the Master Agreement with Matt Laterza); Alta 0052649 (involved in financing discussions with Mitsubishi UFJ Financial Group in thread including Matt Laterza). Because these emails are discoverable and contain relevant information, we request that you collect and produce Mr. Phelps's relevant emails from his personal account.

We look forward to your prompt response.

Andrew LeGrand
APL/mmc

# EXHIBIT J

**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Tel:  214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com
*Counsel to General Electric International, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** | **Case No. 21-31488-sgj11V** |
| *Debtor.* | **Chapter 11** |
| | **Subchapter V** |
| **WATTSTOCK LLC,** | **Adv. No. 21-03083-sgj** |
| *Plaintiff,* | *Removed from the District Court of Dallas County, Texas, 116th Judicial District* |
| **v.** | |
| **ALTA POWER LLC,** | **Case No. DC-20-08331** |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | |
| **v.** | |
| **WATTSTOCK LLC,** | |
| *Counter-Defendant,* **and** | |
| **GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES,** | |
| *Third-Party Defendant.* | |

1

## DECLARATION OF ANDREW LEGRAND IN SUPPORT OF GENERAL ELECTRIC INTERNATIONAL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM ALTA POWER LLC

Andrew LeGrand submits this declaration in support of GE's Motion to Compel Production of Documents from Alta Power LLC.

1.      My name is Andrew P. LeGrand.  My work address is 2001 Ross Avenue, Suite 2100, Dallas, Texas 75201.  I am an attorney at the law firm of Gibson, Dunn & Crutcher LLP. I am over the age of 18 years.

2.      I have personal knowledge of the facts stated in this Declaration and, if called as a witness in this case, could and would testify competently to those facts.

3.      I am an attorney for Third-Party Defendant General Electric International, Inc. ("GE")  in the above-styled case.

4.      On August 31, 2022, Alta's and GE's counsel participated in a meet-and-confer meeting regarding several discovery issues.  During this meeting, Alta's counsel clarified for the first time that (1) it was not withholding any responsive documents captured by the current agreed search terms for RFPs 23 and 57, (2) it had produced all such responsive documents, and (3) all additional relevant documents would be in the possession of its outside counsel.

5.      Upon learning that Alta was aware of other documents held by its outside counsel that had not been collected or mentioned in any discovery responses, I explained that such documents fell within the scope of the requests already made and that if there was any confusion on that point, GE was informing Alta of that fact as of that meeting.

6.      On September 22, 2022, Alta produced certain additional documents for which Alta's CFO Matt Laterza was listed as the custodian.

7.      Later that day, Alta's and GE's counsel participated in another meet-and-confer that involved the question of Alta's production of documents related to its dispute with

2

Castleman. During this meeting, Alta's counsel reiterated that its document production was substantially complete, that it would not collect and produce any further documents from Alta's outside counsel, and that Alta intended to produce no further Castleman documents. I then explained that if this was Alta's position, GE would seek relief from the Court related to this issue.

8.      On August 3, 2022, Alta served its initial disclosures on GE.  A true and correct copy of this document is attached as **Exhibit A**.

9.      On June 22, 2021, GE served its First Set of Interrogatories and Requests for Production of Documents on Alta Power LLC.  A true and correct copy of this document is attached as **Exhibit B**.

10.      On June 23, 2022, GE served its Second Set of Requests for Production of Documents on Alta Power LLC.  A true and correct copy of this document is attached as **Exhibit C**.

11.      On July 2, 2022, Alta served its First Amended Objections and Responses to General Electric's First Request for Production on GE.  A true and correct copy of this document is attached as **Exhibit D**.

12.      On July 25, 2022, GE's counsel sent Alta's counsel a meet-and-confer letter regarding several discovery issues.  A true and correct copy of this letter is attached as **Exhibit E**.

13.      On July 26, 2022, Alta's counsel Jeb Golinkin sent an email with a subject of "WattStock v. Alta v. GE – Letter regarding Alta's Responses and Objections to GE's First Request for Production."   A true and correct copy of this email is attached as **Exhibit F**.

14.      On June 23, 2022, GE proposed search terms to Alta that Alta agreed to run on

3

the documents it had collected for its custodians.  A true and correct copy of this document is attached as **Exhibit G**.

15.    On July 25, 2022, Alta served its Objections and Responses to General Electric's Second Requests for Production.  A true and correct copy of this document is attached as **Exhibit H**.

16.    On August 18, 2022, GE's counsel sent a meet-and-confer letter to Alta's counsel regarding several discovery matters.  A true and correct copy of this document is attached as **Exhibit I**.

17.    Alta has produced a document with a starting Bates number of Alta 0040837 that appears to reflect that attorneys acting on behalf of Castleman Power Development LLC served a cease-and-desist letter on Alta, Roy Hart, and Travis West on August 16, 2019.  A true and correct copy of this document is attached as **Exhibit L**.

18.    Alta has produced a document with a starting Bates number of Alta 0058007 that appears to reflect that a settlement was reached regarding the Castleman dispute on September 6, 2019.  A true and correct copy of this document is attached as **Exhibit M**.

19.    Alta has produced a document with a Bates Number of Alta 0027636 that appears to reflect an email thread with a subject of "Alta/Castleman Settlement" that involved Matthew Laterza, Joshua Presner, Jacqueline Elson, and Jeremy Eisman and which has emails stretching from September 6, 2019 to September 9, 2019.  A true and correct copy of this document is attached as **Exhibit N**.

20.    Alta has produced a document with a starting Bates number of Alta 0058118 that appears to reflect an email thread from September 12, 2019 with a subject of "Our Counsel" that involved Matthew Laterza and Joshua Presner.  A true and correct copy of this document is

attached as **Exhibit O**.

21.     Alta has produced a document with a starting Bates number of Alta 0010074 that appears to reflect an email sent on September 13, 2019 with a subject of "Release of Engagement" that involved Matthew Laterza, William Phelps, Joshua Presner, Robin Cresswell, and Jeremy Eisman.  A true and correct copy of this document is attached as **Exhibit P**.

22.     Alta has produced a document with a starting Bates number of Alta 0058223 that appears to reflect an email sent on August 22, 2019 with a subject of "DB/SKV Introduction" that involved Matthew Laterza, Kelley Keller, and Jacquelin Elson.  A true and correct copy of this document is attached as **Exhibit Q**.

23.     Alta has produced a document with a starting Bates number of Alta 0018967 that appears to reflect an email thread from August 26, 2019 with a subject of "Alta Power-Legal Expenses" that involved Matthew Laterza, Joshua Presner, Jeremy Eisman, and Jacquelin Elson. A true and correct copy of this document is attached as **Exhibit R**.

24.     Alta has produced a document with a starting Bates number of Alta 0078636 that appears to reflect an email thread from August 28, 2019 with a subject of "Alta Power/Castleman Power - Declarations" that involved Lee Kaplan, three individuals with emails with a domain of @whitecase.com, two with emails with a domain of @bakerbotts.com, and others with emails from domains including @gibbsbruns.com, @mithofflaw.com, @altapowerdev.com, and @skv.com.  A true and correct copy of this document is attached as **Exhibit S**.

25.     Alta has produced a document with a starting Bates number of Alta 0017997 that appears to reflect an email from August 13, 2019 with a subject of "Project Atom – Wattstock Underwriting Requirements" that involved Joshua Presner, Matthew Laterza, Hadi Makkaw, and Peter Dagher.  A true and correct copy of this document is attached as **Exhibit T**.

26.    Between September 1, 2022 and October 5, 2022, GE's counsel and Alta's counsel exchanged emails related to several discovery disputes, one of which concerns the issues raised in the current motion.   A true and correct copy of this correspondence is attached as **Exhibit U**.

I declare under penalty of perjury, under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 5th day of October, 2022

_/s/ Andrew LeGrand_
Andrew LeGrand (Tex. Bar No. 24070132)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel: (214) 698-3100
Fax: (214) 571-2900
Email: ALegrand@gibsondunn.com

COUNSEL TO GENERAL ELECTRIC
INTERNATIONAL, INC

# EXHIBIT K

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC.<br>*Plaintiff*<br><br>v.<br><br>ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,*<br><br>v.<br><br>WATTSTOCK LLC<br>*Counter-Defendant, and*<br><br>GENERAL ELECTRIC INTERNATIONAL,<br>INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | IN THE DISTRICT COURT OF<br><br><br><br>DALLAS COUNTY, TEXAS<br><br><br><br>116th JUDICIAL DISTRICT |

## ALTA POWER LLC'S FIRST AMENDED ANSWER AND COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION

Alta Power LLC ("Alta Power") files this First Amended Answer and Counterclaim and Original Third-Party Petition against Counter-Defendant WattStock LLC ("WattStock") and Third-Party Defendant General Electric International, Inc., d/b/a GE Power Services ("GE") and would respectfully show as follows:

### I.      SUMMARY OF ACTION

1.      This case is necessitated by repeated misrepresentation made by GE and WattStock to Alta Power concerning GE/WattStock's relationship, capabilities, and program to entice Alta Power to use GE/WattStock as the source of used aeroderivative gas turbines.

2.      Alta Power was created to develop power assets that would provide additional power capacity to the Texas energy grid when the grid was overburdened. As part of

ALTA POWER LLC'S FIRST AMENDED ANSWER AND
COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION - PAGE 1

this, Alta Power intended to purchase and place into service used aeroderivative gas turbines (essentially jet engines on skids) that can quickly turn on and off to meet instances where power demand exceeds available power supply. During these periods of excess demand, power prices are highest.

3.      GE was eager to participate in the used gas turbine market, a segment in which it historically had no presence. GE, however, did not want to be involved in the work of actually acquiring and selling the used turbines. Instead, GE engaged former GE employees who started WattStock to act as its sales force and point of entry into the used gas turbine market.

4.      Starting in 2018, GE and WattStock persuaded Alta Power to purchase used GE aeroderivative gas turbines, marketing the units as both more reliable and cost competitive, similar to the "Certified Pre-Owned Mercedes Benz$^{®}$" program. Critically, Alta Power relied on GE's and WattStock's representations regarding the nature of the WattStock/GE relationship, the total acquisition cost of used units, and the benefits of GE's "OEM certified program." Ultimately, Alta Power agreed to move forward with WattStock/GE.

5.      GE's and WattStock's representations were false and have caused Alta Power to miss opportunities in the marketplace. Instead of the benefits claimed by GE and WattStock, Alta Power put money into potential units that were never going to fit their budgetary requirements because the units were either (1) burdened by undisclosed liabilities related to GE's "Long Term Services Agreements," (2) were prohibitively expensive for refurbishment by GE, or (3) were not available as marketed. Simply put, the acquisition costs and the benefits lauded by GE and WattStock were false.

6.      GE and WattStock's breaches of contract and tortious conduct caused Alta Power to lose more than one hundred million dollars of essential financing, profits related to its

business, and millions in payments to GE and WattStock for undelivered equipment and phantom services. After investing millions, Alta Power has nothing to show for what it has paid to GE and WattStock.

## II.      DISCOVERY CONTROL PLAN

7.      Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

## III.      PARTIES

8.      Alta Power is the Defendant in this case originally filed by WattStock, the original Plaintiff and Counter-Defendant. Both Alta Power and WattStock have already appeared.

9.      Third-Party Defendant GE is a company incorporated under the laws of Delaware doing business in Texas and can be served with Citation through its registered agent in Texas, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## IV.      VENUE AND JURISDICTION

10.      This Court has personal jurisdiction over WattStock related to Alta Power's claims as WattStock originally filed this case. This Court has personal jurisdiction over GE because a substantial amount of the acts giving rise to Alta Power's causes of action arose in Texas.

11.      Venue is proper in Dallas County, Texas under Section 15.002 of the Texas Civil Practice & Remedies Code because all, or a substantial part of the events or omissions giving rise to the claims against WattStock and GE, occurred in Dallas County and WattStock's principal place of business is in Dallas County, Texas.

12.      As required by Rule 47(b) of the Texas Rules of Civil Procedure, Alta Power seeks monetary relief of more than $1,000,000. Alta Power also seeks pre-judgment and post judgment interest at the highest legal rate.

## V.    GENERAL DENIAL

13.    Alta Power denies all the allegations set forth in WattStock's Original Petition and any subsequent amended petition and demands strict proof thereof as required by the laws of Texas.

## VI.    AFFIRMATIVE DEFENSES

14.    Alta Power asserts the following affirmative defenses:

a.  WattStock's claims are barred because of WattStock's material breaches of the Master Agreement, the LNTP, and the Ethos Authorization; and

b.  WattStock's claim for attorneys' fees fails for lack of presentment.

## VII.    FACTUAL ALLEGATIONS

A.    **Alta Power develops a strategy for meeting peak energy demands.**

15.    Alta Power was established to provide additional capacity to an overloaded energy grid in a creative and profitable manner.

16.    The market for power in Texas has evolved from traditional gas and coal fired power plants to more renewable sources like wind and solar. In 2019, renewable energy sources accounted for about 11% of total U.S. energy consumption and about 17% of electricity generation. Texas now meets 20% of its sizeable electricity demand with wind power.

17.    As electrical providers move towards renewable power production, there are times when the energy grid has more demand than supply. Aeroderivative gas turbine "peaker plants" have become imperative to meet this imbalance since these plants turn on quickly—in less than 10 minutes.

18.    Pricing for this "peak demand" power is often at a premium and can be sold under long-term contracts with investment grade counterparties. Alta Power determined that

peaker plants could help meet this demand, profitably for Alta Power if Alta Power could acquire aeroderivative gas turbines at a competitive price and locate them appropriately.

19.     Because of the high cost of new aeroderivative gas turbines, Alta Power's strategy relied on acquiring used aeroderivative gas turbines, which was the only way to make the projects work within the required budget.

20.     Developing natural gas-fired peaker projects is a complex process, including (1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing.

21.     This complexity, along with relatively high entry costs, means that there were only a few companies competing with Alta Power. However, given the limited size of the market, being a first mover was critical.

22.     By April 2018, Alta Power had identified several potential project sites through an extensive vetting process based on prevailing market conditions. Through this work, Alta Power earned a head start on its competitors and found itself with a brief window during which it would be the first mover in this niche market.

23.     At this point Alta Power turned to identifying surplus aeroderivative gas turbines units, which, once contractually secured, would allow it to obtain project financing.

**B.     GE and WattStock's Partnership**

24.     GE is one of the limited suppliers of aeroderivative gas turbines.

25.     GE historically has not had a presence in the sale of used aeroderivative gas turbines but recognized a need to be present in this market at some point prior to 2018. As such,

GE partnered with WattStock, a group of former GE executives. WattStock marketed itself (along with GE) as a fully integrated locator, dealer, refurbisher, and servicer of used aeroderivative gas turbines. WattStock markets itself as a unique solution in the used aeroderivative gas turbines, and as the only authorized distributor of used GE aeroderivative gas turbines.

26.     In reality, GE intended for, and held out WattStock to be, the *de facto* sales force in the used aeroderivative gas turbine market for GE. GE and WattStock work "hand-in-hand" as "partners" to provide the "TRUEᴘᴀᴄᴋᴀɢᴇᵀᴹ" or Certified Turbine Power—CTPᵀᴹ1 system, "[t]he only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry."[2]

27.     GE and WattStock entered in a Memorandum of Understanding ("MOU") on June 26, 2018 that "outlines" their relationship. The MOU establishes that GE is in complete control, especially in the context of transactions related to aeroderivative gas turbines originally manufactured by GE.

28.     Consistent with their relationship, GE and WattStock held themselves out publicly and privately as "partners" both orally and in writing.

## C.    GE directs Alta Power to WattStock

29.     In 2018, Alta Power began to determine which used aeroderivative gas turbines would best suit its needs. Availability and total acquisition costs were key drivers in its decision on which aeroderivative gas turbines to select. Because the used aeroderivative gas turbines must be refurbished, acquisition costs necessarily include the costs associated with

---

[1]     GE/WattStock uses the TRUEpackageᵀᴹ descriptor on GE's Website and CTPᵀᴹ on WattStock' s website. *See*    https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions    and https://www.WattStock.com/ctp.

[2]     https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions.

purchasing the units, the costs of refurbishment, and the costs associated with placing the unit at the location and into service.

30.    After sharing these considerations with GE and WattStock, and after meetings with GE, WattStock and others, Alta Power determined that used GE LM6000 aeroderivative turbine packages were best suited for Alta Power's strategy of tapping into the niche peaker plant market in Texas based on assurances from GE and WattStock.

31.    GE/WattStock were not the only companies that marketed used and refurbished GE LM6000s. Indeed, Alta Power met with several GE "certified" companies that refurbished used aeroderivative gas turbines. None, however, offered a fully OEM-certified and warranted end-to-end product like the TRUEpackage$^{TM}$, which GE/WattStock marketed as their "exclusive" service offering of being the "only authorized OEM certified preowned package offering in the industry."

32.    Alta Power had several meetings with both GE and WattStock personnel mainly at GE's Jacintoport facility where WattStock is co-located. To protect Alta Power's confidential information concerning its unique strategy, the parties entered into a Confidentiality Agreement.

33.    During these meetings, Alta Power disclosed to GE/WattStock the detailed budgetary requirements of Alta Power's business model. Alta Power repeatedly emphasized the cost sensitivity of its projects; that is, the cost of the gas turbine units cannot exceed a certain price point if the project is to remain within budget and financeable. GE and WattStock repeatedly confirmed that used units could be obtained for the prices Alta Power needed.

34.    GE/WattStock also persuaded Alta Power that its exclusive TRUEpackage$^{TM}$ OEM warranty was superior to anything offered in the market because GE would

provide an end-to-end package warranty covering both the aeroderivative gas turbine and the electrical generation components. GE/WattStock further stated that other competitors could only warrant a portion of the package.

35.    During these meetings, GE and WattStock described themselves as "partners." GE made it clear that the only way Alta Power could obtain the TRUEpackage$^{TM}$ equipment certification and warranty was by working with the GE and WattStock partnership.

36.    Specifically, GE refused to provide equipment certifications and warranties without WattStock.

37.    In addition to the pricing and warranties, GE and WattStock knew time was of the essence for Alta Power, as competitors were also attempting to enter the market. GE made it clear that delivery could occur within the time frame required by Alta Power's plans if Alta Power used the GE/WattStock TRUEpackage$^{TM}$ program.

38.    GE/WattStock emphasized that (1) GE had a proprietary global database of used LM6000 units including the operational and maintenance history on each, and (2) only GE and WattStock had access to this "proprietary" database. This "proprietary" data was a key selling point for Alta Power.

39.    GE/WattStock represented that GE and WattStock could efficiently locate used units, generate a detailed refurbishment scope, and cost estimate and streamline the acquisition, refurbishment, and delivery process all within Alta Power's required budget.

**D.    WattStock and Alta Power enter into a "Master Agreement."**

40.    Based on the representations concerning the benefits of the TRUEpackage$^{TM}$ program, including, (1) the benefits from GE and WattStock "collaborating" as "partners;" (2) the ready availability of used units that met Alta Power's project budget; (3) the

ability to timely close purchases and refurbish units; and (4) the "benefits" of the warranty with respect to the overall economics of the project, Alta Power agreed to move forward with GE/WattStock for the acquisition of used GE aeroderivative gas turbines to effectuate Alta Power's unique strategy.

41.    Through their discussions, GE and WattStock were keenly aware of the specific unit price requirements of Alta Power, and GE and WattStock assured Alta Power on multiple occasions that sufficient suitable units were available.

42.    The parties began negotiating financial and contractual terms for the relationship in February 2019. At GE's insistence, Alta Power contracted directly with WattStock. GE/WattStock required that WattStock (with GE standing behind it) negotiate the purchase price of each used GE aeroderivative unit with the prior owner and acquire the unit in WattStock's name for an agreed not to exceed price. GE/WattStock presented Alta Power with detailed total cost estimates for each unit showing that if each unit identified could be acquired at or below the "not to exceed price," then the fully refurbished unit could be delivered within Alta Power's budgetary requirements.

43.    The parties also agreed that in the event Alta Power paid any amounts prior to the units being acquired, those interim payments would be credited towards the purchase price Alta Power ultimately agreed to pay.

44.    GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world. GE and WattStock caused Alta Power to believe that WattStock had the financial resources to pay for the units or complete the necessary steps leading to GE's certification under the TRUEpackage[TM] OEM program.

45.    On February 27, 2019 WattStock and Alta Power entered into a "Master Agreement" confirming the negotiations concerning how WattStock would be reimbursed for out-of-pocket expenses and as part of a negotiated purchase price after WattStock purchased and refurbished the used units. At no point was WattStock to be paid any mark-up on "down payments" made by Alta Power or on any out-of-pocket expenses for which Alta Power reimbursed WattStock.

46.    While not a named party to the Master Agreement, GE is an "affiliate" or "representative" of WattStock and, therefore, a party to the Master Agreement.

47.    In the Master Agreement, Alta Power and GE and WattStock agreed to a very strict confidentiality provision. GE/WattStock agreed to hold confidential information in "strict confidence" and agreed such information would "not be disclosed in any manner whatsoever." The Master Agreement also contains an exclusivity and non-circumvention provision under which WattStock (and by extension, GE) agreed that neither WattStock nor GE would directly or indirectly cause another person to either attempt to or purchase a unit inspected on behalf of Alta Power (a service for which Alta Power paid).

48.    Additionally, the confidentiality provision required WattStock and GE not to use any information obtained for any other purpose other than the agreed "business purpose," including but not limited to, providing any product or service, or establishing a relationship that is competitive with or against the best interest of Alta Power.

49.    Under the "Master Agreement," the parties also agreed that Alta Power would reimburse WattStock for specific out-of-pocket expenses incurred in arranging inspection and evaluation of the condition of used aeroderivative gas turbines, with prior written approval needed for expenditures more than $20,000.

**E.**    **WattStock and GE's misrepresentations continue.**

50.    Fully cognizant of the pricing sensitivities of Alta Power's projects, GE/WattStock presented Alta Power with financial information for the acquisition of available units.

51.    The knowledge of the availability of units was largely driven by GE's data. The financial information related to the acquisition of units included WattStock's own estimates based on its "experience" and data from GE based on GE's own data and detailed refurbishment pricing models for each unit.

52.    In February 2019, Pete Watson, WattStock's Vice President of CTP Operations, travelled to Turkey to begin inspections and negotiations on used GE aeroderivative gas turbine units. This was done at Alta Power's expense pursuant to the Master Agreement.

53.    Several used GE aeroderivative units were available in Turkey because changes in Turkish governmental regulations made the units uneconomical in country. In March 2019, WattStock presented Alta Power price and purchase options for nine used GE units based in Turkey.

54.    What WattStock and GE did not tell Alta Power was that the presented prices of the units were not the true prices. All the units GE/WattStock persuaded Alta Power to spend money on were burdened by hidden liabilities. Many of the potential units were significantly more expensive than represented because GE had Long Term Service Agreements ("LTSA") carrying hefty termination fees with the prior owners seeking to sell the used LM6000 aeroderivative gas turbine units. Units not burdened by LTSAs had other material undisclosed liabilities – all of which were driven by internal GE policies.

55.     These LTSAs generally required the prior owner pay GE millions of dollars to terminate. GE/WattStock failed to disclose the existence of these LTSA financial burdens to Alta Power up front. In fact, the LTSA termination fees were not disclosed until after (1) the units were targeted, (2) a purchase agreement was executed between the owners and WattStock, and (3) Alta Power paid WattStock millions of dollars in down payments associated with these purchase agreements.

56.     It was not until almost nine months after Alta Power had paid the first down payment that Alta Power learned of the existence of the LTSA termination fees. In February 2020, one of the sellers of two units, a Turkish company called Nuh Cemento, began demanding reimbursement for the LTSA termination fees to be paid GE in addition to the agreed upon purchase price. GE ultimately refused to waive the LTSA termination fee unless Alta Power entered into a multi-million dollar service agreement with GE. As a result, the project was burdened by expenses materially above Alta Power's project budgets.

57.     GE/WattStock were aware of the undisclosed termination fees before suggesting the Nuh Cemento units be targeted for acquisition. GE/WattStock knew adding the undisclosed termination fees would make the prices of those units higher than Alta Power's project budget. Utilizing a classic "bait and switch move," GE/WattStock deliberately hid the existence of the termination fees in the hope Alta Power would have no choice but to pay them at the 11th hour after Alta Power's project financing had been secured and the projects were already well underway.

58.     Prior to learning of the true cost of these units due to the undisclosed associated liabilities, Alta Power, relying on GE and WattStock, moved throughout 2019 and into 2020 attempting to purchase the two Nuh Cemento units.

59.     WattStock also improperly marked up Alta Power's down payment that would have never been made had Alta Power known the true price of the Nuh Cemento units. Per the terms of the Master Agreement, WattStock entered Equipment Purchase Agreements with Nuh Cemento. When WattStock sent an invoice to Alta Power for the $250,000 down-payment, WattStock added a "mark-up" of $125,000. Alta Power refused to pay the "mark-up" since it was inconsistent with the Master Agreement. Recognizing it had no entitlement to these funds, WattStock did not reiterate its demand for payment until litigation between the parties became imminent.

60.     WattStock, GE, and Alta Power identified an additional unit in Turkey owned by a Turkish company called Acarsoy.

61.     As with the Nuh Cemento units, WattStock/GE failed to disclose that the Acarsoy unit was burdened with a multi-million-dollar LTSA termination fee, which was not included in the pricing presented to Alta Power.

62.     Like with Nuh Cemento, Alta Power paid $475,000 in down payments related to this unit, unaware of the true cost of the unit. Alta Power would never have done so had GE/WattStock disclosed the liabilities associated with the unit which rendered it uneconomical for Alta Power's projects.

63.     Once again, WattStock even attempted to mark-up this down payment (as they did with every other payment from Alta Power) despite having no contractual basis to do so. Alta Power rebuffed these attempts, and WattStock recognized it had no basis for payments, and did not request the payments again until just before the filing of its lawsuit against Alta Power.

64.     In addition to units made uneconomical by LTSAs, WattStock also marketed units that were uneconomical for other reasons.

65.     In May of 2019, WattStock informed Alta Power of the existence of a package owned by EthosEnergy. WattStock suggested Alta Power purchase the package from EthosEnergy, claiming demand for the package was high. The "package" was essentially the housing for the aeroderivative gas turbine.

66.     GE and WattStock represented that Alta Power could obtain a gas turbine engine from the GE lease pool to marry with the EthosEnergy package and claimed a similar housing was available in Panama and could also easily be married with a lease pool engine.

67.     GE/WattStock claimed these leased units with the purchased housings would lead to a significantly lower price for Alta Power.

68.     Based on these representations, Alta Power purchased the EthosEnergy package for $200,000.

69.     When WattStock sent an invoice for this purchase, it marked up the purchase price initially by $175,000 and then later by $115,000.

70.     Once again Alta Power refused to pay the mark-up, as there was no contractual basis for such a mark-up. Indeed, the contractual relationship between Alta Power and WattStock contemplated that this package would not be marked up.

71.     GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition and was only suggested as a possibility so that GE/WattStock could increase their revenue stream for providing repairs. Furthermore, several months later when Alta Power inquired about the possibility of cost savings using the previously promised lease pool engines, WattStock and GE informed Alta Power that "that program was no longer being offered."

72.     Had GE/WattStock disclosed the true condition of the EthosEnergy unit or the unavailability of the lease pool, Alta Power would not have purchased the Ethos unit at any

price. Furthermore, WattStock still has possession of the EthosEnergy unit, despite having been paid for it.

73.    WattStock convinced Alta Power to make a down payment for a unit owned by a company in Turkey called Bosen. As with all other units, WattStock and GE represented that the delivered unit would be priced consistent with Alta Power's needs.

74.    Alta Power put $300,000 dollars down for the purchase of the Bosen unit. Alta Power was later informed that GE/WattStock would not service units containing non-GE components unless the non-GE components were first replaced—regardless of their condition.

75.    The Bosen unit contained non-GE components and as a result the "new" purchase price including the refurbishment work which was several million dollars higher than previously represented by GE/WattStock and the unit was uneconomical for Alta's projects.

**F.    WattStock scuttles Alta Power's efforts at financing.**

76.    Throughout 2019, Alta Power discussed potential financing options for its power project. Alta Power reached out to several sources of funding. In the summer of 2019, Alta Power identified its best source of funding for the purchase of the nine aeroderivative units: Deutsche Bank.

77.    Alta Power engaged in negotiations with Deutsche Bank concerning financing for its unique peaker plant strategy. As part of its due diligence, Deutsche Bank requested a meeting with WattStock. WattStock met with Deutsche Bank and during these meetings, WattStock confirmed that GE and WattStock were "partners."

78.    Of course, Deutsche Bank would rely not solely on WattStock's representation that GE and WattStock were "partners." Accordingly, Deutsche Bank formally asked GE to provide appropriate assurances. On July 31, 2019, GE responded to this request in a

letter confirming that if WattStock failed to meet its contractual obligations, GE would step in since GE and WattStock are partners in this venture. GE also confirmed that GE engineering will be overseeing WattStock's work and that GE has a "strong incentive" for the project to succeed.

79.     Sometime before financing was closed, WattStock disclosed to Ryan Castleman of Castleman Power Development LLC ("Castleman"), one of Alta Power's few competitors, that project financing from Deutsche Bank was imminent. Knowing the financing would decrease the available used units in the marketplace and would allow Alta Power's projects to come online first, Castleman predictably attempted to scuttle Alta Power's financing. Specifically, Castleman threatened to file a frivolous "trade secret" lawsuit against Alta Power to stop the financing.

80.     Alta Power was forced to disclose this frivolous claim to Deutsche Bank. Alta Power worked to quickly resolve the frivolous dispute, and ultimately had no choice but to pay Castleman an extortion fee to settle the frivolous claim. But the damage was already done. Castleman's strategy of causing delay to destroy financing worked.

81.     Deutsche Bank decided against providing financing to Alta Power, delaying Alta Power's ability to bring units into service.

**G.     WattStock steals $100,000 from Alta Power to finance WattStock's operations.**

82.     Despite the Deutsche Bank financing falling through, Alta Power remained committed to its unique peaker plant strategy and continued to explore other financing options in the fall of 2019.

83.     By the fall of 2019, GE and WattStock continued to lead Alta Power to believe that the targeted units could be acquired consistent with WattStock and GE's earlier pricing guidance. Because of this, Alta Power continued to fund the potential acquisition of units.

84.    In October 2019, Alta Power sent WattStock $100,000 for potential use in extending an option to purchase units from Bosen. During WattStock's negotiations with Bosen, Alta Power ultimately decided not to go through and told WattStock to cease negotiations. WattStock complied and the parties never entered into an agreement extending the option period with Bosen.

85.    WattStock never sent Alta Power's $100,000 to Bosen since the negotiations were called off before the $100,000 was used.

86.    Alta Power requested the return of the $100,000. WattStock acknowledged the funds would be returned, and repeatedly promised to do so on multiple occasions during the fall and winter of 2019-2020.

87.    WattStock broke these promises. Instead, WattStock converted Alta Power's $100,000 and used it to cover serious cash flow issues, which WattStock had previously failed to disclose to Alta Power and did not disclose until May of 2020.

**H.    <u>WattStock continues to fail to disclose the true costs of units.</u>**

88.    Despite the Deutsche Bank financing falling through, Alta Power was still committed to the development of its projects. Consistent with this and based on WattStock's false representations that other buyers were targeting the Turkish units, Alta Power paid WattStock over $200,000 for extensions to keep alive potential deals with Acarsoy and Nuh Cemento in the fall of 2019.

89.    At no time did WattStock inform Alta Power that the true costs of these units were inconsistent with WattStock's and GE's representations.

90.     During the fall of 2019, Alta Power considered a variety of funding structures, and decided to finance each project separately, rather than approaching potential lenders with a portfolio of three projects.

91.     Consistent with this, Alta Power and WattStock entered a Limited Notice to Proceed Proposal ("LNTP") on December 23, 2019 for two separate units to be acquired from Nuh Cemento. The total amount of the LNTP was almost $20 million. This included the "not to exceed price" of $6.5 million for WattStock to purchase the units from Nuh Cemento that GE/WattStock told Alta Power will be sufficient to purchase the units, with the balance for transportation, refurbishment, and installation of the units. This price included GE/WattStock's profit margin for the project.

92.     GE and WattStock represented to Alta Power that GE needed to be paid $1,500,000 to secure the purchase of long-lead hardware, start engineering activities and deliver preliminary drawings related to a potential TRUEpackage$^{TM}$ project. The $1,500,000 was divided into two payments of $750,000.

93.     Alta Power paid $750,000 on December 24, 2019 and paid another $750,000 on January 13, 2020.

94.     In February 2020, Alta Power was informed for the first time that the owner of the two Nuh Cemento units would only sell the two units for the agreed not to exceed price of $6.5 million **plus** the cancellation of GE's LTSA termination fee of over $1.4 million.

95.     The impact of the cancellation fee materially increased project costs above the previous budget and impacted Alta Power's ability to obtain financing for the project.

96.     For the units being considered (as with the Bosen unit), the significant liabilities were *not* disclosed until *after* Alta Power made the final payment to GE under the LNTP.

97.    By March 2020, the global economy was in the grips of the COVID-19 crisis. This delay impacted the closing of Alta Power's project financing. Regardless, Alta Power remained financially committed to the project and was ready, willing, and able to go forward with the two Nuh Cemento units under the LNTP.

98.    In the spring of 2020 WattStock informed Alta Power it was having financial issues. WattStock asked Alta Power to either provide a loan or acquire WattStock.

99.    During this time, Alta Power requested that GE step in and fulfill its commitment to Alta Power to assist in securing the units needed for Alta Power's project. GE refused.

100.    Alta Power was ready, willing, and able to go forward with the Nuh Cemento project with GE alone. GE refused to allow Alta to pay directly for the LNTP components, despite repeated requests by Alta Power due to concerns regarding WattStock's financial situation. And GE further refused to step in and take over for WattStock (despite contrary written representations) when Alta Power notified GE that WattStock was insolvent.

101.    Alta Power also continued to negotiate with other sources of funding for the Project, including Riverstone and Macquarie.

102.    Despite Alta Power's effort sand GE's prior representations, GE made it clear, once again, that it would only move forward with WattStock, thereby constructively cancelling the LNTP and the Nuh Cemento project.

103.    Consequently, Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market.

## VIII.    CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT (AGAINST GE AND WATTSTOCK)

104.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

105.    Alta Power seeks a declaratory judgment pursuant to Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.* Alta Power requests the Court to declare that:

a.  No contractual agreement exists by which WattStock is entitled to "mark-ups" on goods or services.

b.  GE and WattStock are principal/agent or partners such that GE is responsible for WattStock's torts and breaches.

c.  As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the Master Agreement, which excuses Alta Power of any further performance.

d.  As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the December 23, 2019 LNTP.

e.  GE's refusal to go forward with the Nuh Cemento project once WattStock became insolvent was a breach of the LNTP requiring GE to refund money paid to WattStock/GE by Alta Power.

### COUNT II: RESPONDEAT SUPERIOR (AGAINST GE)

106.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein. GE and WattStock represented to Alta Power that they were "partners" and that WattStock acted as GE's Authorized Service Provider.

107.    Alta Power justifiably relied on these representations by GE and WattStock in agreeing to the Master Agreement and the LNTP.

108.    In fact, without the representations, Alta Power would have never entered any contracts with WattStock.

109.    Accordingly, an ostensible agency existed between WattStock and GE.

110.    GE is estopped from denying liability for WattStock's breaches and torts and/or GE and WattStock engaged in a joint enterprise for which joint and several liability exists.

111.    Despite the fig leaf boiler-plate language in the MOU between GE and WattStock, the language of the MOU shows GE controlled WattStock. Accordingly, the "no partnership or agency" provision is a sham or subterfuge designed to conceal the true legal status of GE/WattStock. Extrinsic evidence also shows actual control by GE over WattStock.

112.    GE is *respondeat superior* liable for the breaches and torts of WattStock.

## COUNT III: BREACH OF CONTRACT (AGAINST WATTSTOCK)

113.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

114.    Alta Power and WattStock entered into the Master Agreement, which is and was a valid and enforceable contract. Alta has standing to sue for breach of the Master Agreement.

115.    Alta Power performed its obligations under the Master Agreement.

116.    WattStock breached the confidentiality provisions of the Master Agreement by disclosing confidential information about Alta Power and its financing to Castleman. WattStock's breach has proximately caused injury to Alta Power. Specifically, WattStock's breach caused Alta Power to lose project financing for its a unique strategy for developing power generation projects in the Texas market.

117.    Had WattStock not breached the confidentiality provisions, Alta Power would have closed financing with Deutsche Bank and been able to implement its unique strategy.

118.    As a direct result of WattStock's breaches, Alta Power has been severely damaged.

119.    Alta Power paid GE/WattStock $1.5 million related to the Nuh Cemento project for GE to acquire long-lead hardware, start engineering activities, and deliver preliminary drawings.

120.    The Master Agreement and LNTP were cancelled due to WattStock's insolvency.

121.    In addition to its liability under the theory of respondeat superior, GE is also vicariously liable for WattStock's breaches of the Master Agreement and LNTP. Consequently, GE must refund to Alta Power the $1.5 million under the contracts between the parties.

122.    To compensate it for the damages outlined above, Alta Power seeks unliquidated damages.

123.    Pursuant to Texas Civil Practice and Remedies Code section 38, Alta Power is entitled to attorney's fees, costs, and expenses, due to WattStock's breach of the agreement.

## COUNT IV: UNJUST ENRICHMENT (AGAINST GE)

124.    Alta Power incorporates each of the foregoing paragraphs as if fully set forth herein.

125.    GE has been unjustly enriched in the amount of $1.5 million to the detriment of Alta Power.

126.    Alta Power demands restitution of all amounts GE has been justly enriched.

## COUNT V: CONVERSION (AGAINST WATTSTOCK)

127.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

128.    In October 2019, Alta Power sent WattStock $100,000 to extend an option to purchase units from Bosen.

129.     Alta ultimately declined to extend the option and instructed WattStock to return the $100,000.

130.     Alta repeatedly demanded that WattStock return the $100,000 during the fall and winter of 2019-2020. WattStock refused (and continues to refuse) to return this money, and thereby assumed and exercised dominion and control over Alta's money in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Alta's rights.

## COUNT VI: TEXAS THEFT LIABILITY ACT (AGAINST WATTSTOCK)

131.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

132.     Alta has a possessory right to the $100,000 it paid WattStock.

133.     WattStock misappropriated and enjoyed these monies knowing full well it was not entitled to same.

134.     All of this was done without Alta's consent. WattStock intended to and did in fact deprive Alta of these monies which led Alta to suffer significant financial damages in an amount to be proven at trial, plus court costs and reasonable and necessary attorney's fees as allowed by the TLA.

## COUNT VII: FRAUD (AGAINST GE AND WATTSTOCK)

135.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

136.     GE and WattStock intentionally misrepresented the nature of their relationship to induce Alta Power to contract with GE/WattStock.

137.     GE represented it would "stand behind" WattStock. However, when the time came to do so GE did not.

138.    Simply put, the pricing provided by GE and WattStock was intentionally mispresented and did not include the true cost of acquisition of the units. Alta Power relied on these representations to its detriment.

139.    GE had the right under its MOU with WattStock to force WattStock to sell GE any gas turbine purchased pursuant to the TRUEPACKAGE™ program. In effect, GE had the right to push WattStock aside and ensure that any deal was consummated.

140.    Yet, when WattStock became insolvent GE refused to "stand behind" WattStock and take the necessary steps to consummate the LNTP with Alta Power and Nuh Cemento.

141.    GE/WattStock misrepresented the benefits of the TRUEpackage™ program.

142.    GE/WattStock represented that the program would enhance the ability to obtain financing when it did not.

143.    GE/WattStock represented that the program would be able to move quickly to service the narrow window Alta Power had for this unique strategy when in fact the GE/WattStock relationship created a bureaucracy that only slowed down projects.

144.    GE/WattStock represented that the TRUEpackage™ program was of a superior quality when in fact it was not.

145.    GE/WattStock represented that units from the TRUEpackage™ program were competitively priced with alternative refurbished gas turbine solutions when in fact they were not.

146.    GE/WattStock hid the existence of undisclosed liabilities on virtually every unit suggested using a classic bait and switch maneuver.

147.    GE/WattStock's misrepresentations were material and false.

148.    Both GE and WattStock knew these representations were false when they made them, or at the very least, these representations were made recklessly and without knowledge of their truth.

149.    These representations were made with the intent that Alta Power act on them.

150.    Alta Power relied on GE and WattStock's representations regarding their relationship.

151.    GE and WattStock's misrepresentations caused Alta Power injury well beyond the minimum jurisdictional limits of the Court.

152.    Alta Power has wasted at least $10 million based on GE/WattStock's misrepresentations.

153.    Had GE/WattStock not misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## COUNT VIII: NEGLIGENT MISREPRESENTATION (AGAINST GE AND WATTSTOCK)

154.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

155.    Alternatively, each fraudulent misrepresentation made by GE and WattStock were made negligently since GE/WattStock did not exercise reasonable care or competence in obtaining or communicating the information.

156.    Alta Power has wasted at least $10 million based on GE/WattStock's negligent misrepresentations.

157.    Had GE/WattStock not negligently misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## IX.    JURY DEMAND

158.    Alta Power requests trial by jury on all contested issues of fact. The requisite jury fee has been paid.

## X.    PRAYER

ACCORDINGLY, Alta Power prays that WattStock and GE be cited to appear and answer and that upon a final trial of this matter, the Court enter a final judgment against WattStock and GE awarding Alta Power the following relief:

a) An award of the full amount of actual damages incurred by Alta Power and caused by the acts and omissions of GE and WattStock;

b) An award of equitable damages, as requested above;

c) An award of exemplary damages;

d) Reasonable and necessary attorneys' fees;

e) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

f) Cost of court; and

g) Such other and further relief, general or special, at law or in equity, to which Alta Power may show itself to be justly entitled.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC


By: /s/ Michael Cancienne
      Michael Cancienne
      State Bar No. 24055256
      Kevin Jordan
      State Bar No. 11014800
      Joseph W. ("Jeb") Golinkin II
      State Bar No. 24087596
      1980 Post Oak Blvd., Ste. 2300
      Houston, Texas 77056
      713.955.4028
      713.955.9644 Facsimile
      mcancienne@jlcfirm.com
      kjordan@jlcfirm.com
      jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER
LLC**


**CERTIFICATE OF SERVICE**

    I hereby certified that a true and correct copy of the above pleading was served on all parties through the Court's electronic filing service on the 24th day of February, 2021.


      By:    /s/ Michael Cancienne
           Michael Cancienne

# EXHIBIT L



2800 JPMorgan Chase Tower, 600 Travis
Houston, Texas 77002-3095
Telephone: 713-226-1200
Fax: 713-223-3717
www.lockelord.com

David M. Gregory
Direct Telephone: 713-226-1344
Direct Fax: 713-229-2630
dgregory@lockelord.com

**Locke Lord** LLP

Attorneys & Counselors

August 16, 2019

**BY FEDERAL EXPRESS AND
E-MAIL (mlaterza@alta.energy.com)**

Alta Power LLC
c/o Mr. Matthew E. Laterza
4605 Post Oak Place Dr., Suite 270
Houston, Texas 77027

**BY FEDERAL EXPRESS AND
E-MAIL (royhart@rocketmail.com)**

Mr. Roy J. Hart
116 Springs Edge
Montgomery, Texas 77356
royhart@rocketmail.com

**BY FEDERAL EXPRESS AND
E-MAIL (twest44@earthlink.net)**

Mr. Travis West
36499 Plantation Blvd
Prairieville, LA 70769

Re:    **Demand to Immediately Cease and Desist and Preserve Evidence**

Gentlemen:

This firm represents Castleman Power Development LLC ("Castleman").  Please direct all communications regarding this matter to me.

As you know, both Mr. Hart and Mr. West formerly provided consulting services to Castleman related to the development of electricity generating facilities and assets in the ERCOT region.  As a result of those relationships, both were privy to, developed, and received confidential information and trade secrets belonging to Castleman.  To protect such information, Mr. Hart and Mr. West were, and remain, subject to certain contractual obligations of confidentiality, non-solicitation, and/or non-competition to Castleman, in addition to their common law and statutory obligations not to use or disclose Castleman's confidential information and trade secrets.

81223266v.1

APP.144

CONFIDENTIAL

Alta 0040837

August 16, 2019
Mr. Matthew E. Laterza
Mr. Roy J. Hart
Mr. Travis West

Castleman understands that Alta Power LLC or one of its subsidiaries or affiliates (collectively "Alta"), with the assistance of Mr. Hart and Mr. West, is in the process of developing electricity generating facilities or assets in the ERCOT region, as well as contacting vendors and seeking financing related to such developments.   As Alta is no doubt aware, Mr. Hart's involvement in such activities is a blatant violation of his continuing obligations to Castleman. Alta is facilitating those breaches and thus tortiously interfering with Castleman's contractual rights. Specifically, Mr. Hart is prohibited through, at the earliest, November 18, 2019, from becoming employed by or otherwise providing services (directly or indirectly) to any person or entity that is engaged in the business of developing, constructing, acquiring, owning, or operating electricity generating facilities or assets in the state of Texas.   Mr. Hart is also prohibited through, at the earliest, June 15, 2020, from calling on, soliciting, recruiting, or interfering with any customer, client, supplier, vendor, employee, or contractor of Castleman, and from inducing any such person or entity to cease or terminate their relationship with Castleman.

Moreover, it appears that Alta, Mr. Hart, and Mr. West are utilizing Castleman's confidential information and trade secrets in your current activities and in support of Alta's development of those facilities or assets.   In addition to violating the contractual confidentiality obligations owed to Castleman by Mr. Hart and Mr. West, this conduct violates the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act.   Lastly, it appears that Mr. Hart, Mr. West, and Alta made, and may still be making, false and damaging statements regarding Castleman to third parties in an attempt to harm Castleman's business.   This conduct has damaged Castleman and constitutes actionable defamation and tortious interference.

This letter is to place all of you on notice of Castleman's claims and intent to pursue those claims through litigation.   To be clear, Castleman intends to pursue and protect its rights and use its available remedies to do so, including seeking an injunction, potential seizure under the DTSA, economic and punitive damages, and attorneys' fees.   To the extent any assets or facilities are constructed utilizing Castleman's confidential information and trade secrets, Castleman will also seek a constructive trust on such assets or facilities and seek to gain rightful ownership over the fruits of, and any benefits received from, the misappropriation of Castleman's confidential information and trade secrets.

To the extent any of you are directly or indirectly engaged in any misappropriation and/or use of Castleman's confidential information and trade secrets, unfair competition, defamation, tortious interference, or any other conduct in derogation of Castleman's contractual, common law, or statutory rights, Castleman demands immediate cessation of any such activities.   Without limitation, Mr. Hart must cease his participation with Alta in violation of his contractual obligations to Castleman.   Castleman further demands that any of Castleman's information in any of your possession, custody, or control be returned and any electronic devices containing such information be turned over to Castleman for review and analysis by a digital forensic consultant. At minimum, Castleman demands that:   (1) Mr. Hart and Mr. West turn over any devices or accounts they used to store or retain Castleman's information to this firm for review by Castleman's digital forensic consultant; (2) to the extent not already done, Mr. Hart and Mr. West return any other documents or information of Castleman, in any form, in their possession, custody, or control that they retained from their work with Castleman; (3) Alta review its systems to confirm that neither Mr. Hart nor Mr. West placed any of Castleman's information on Alta's systems or incorporated it into their work for Alta; (4) Alta inform Castleman of whether it discovers any Castleman information in its possession, custody, or control; and (5) if applicable, Alta certify in writing to Castleman that it either: (a) has not received or used, directly or indirectly, any

2

81223266v.1

APP.145

CONFIDENTIAL                                                                                    Alta 0040838

August 16, 2019
Mr. Matthew E. Laterza
Mr. Roy J. Hart
Mr. Travis West

Castleman information retained by Mr. Hart or Mr. West, or (b) has secured on its system any Castleman information from access.  Given the importance of this matter, we request that you coordinate these efforts with us, so that we can ensure Castleman's confidential information and trade secrets are protected, and that appropriate remediation occurs where necessary.

Each of you is now on direct and specific notice of your evidence preservation obligations related to this matter.  Do not destroy or alter any evidence (*e.g.,* e-mails, text messages, direct messages, documents in hard copy or downloaded or saved onto your systems, invoices, plans, blue prints, specifications, phone call records, voicemails, or other communications) relating to: (1) any of the matters addressed in this letter; (2) Alta's recruitment and hiring or engagement of Mr. Hart and Mr. West; (3) Mr. Hart's and Mr. West's business activities on behalf of Castleman, including, without limitation, in the months preceding their departure from Castleman; (4) Mr. Hart's and Mr. West's business activities for Alta, including any work on developing or planning to develop electricity generating facilities or assets in the ERCOT region and any solicitation of Castleman's customers, clients, employees, contractors, suppliers, vendors, or financing sources on behalf of Alta; or (5) statements made by Alta, or anyone acting on its behalf, including, without limitation, Mr. Hart or Mr. West, to any customers, clients, employees, contractors, suppliers, vendors, or financing sources regarding Castleman or any of its management team, including Ryan Castleman and GP Manalac.  Any destruction of evidence may be presumed to be evidence of intent to cover up wrongdoing and result in significant adverse legal consequences.

Castleman's investigation into this matter is ongoing and this letter does not waive or relinquish any of Castleman's rights.

Very Truly Yours,

David M. Gregory

cc: Jeff McPhaul (Firm)
Rufino Gaytán III (Firm)

3

81223266v.1

APP.146

CONFIDENTIAL                                                                                          Alta 0040839

# EXHIBIT M

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Confidential Settlement Agreement and Release is between Castleman Power Development LLC ("CASTLEMAN"), Alta Power LLC ("ALTA"), Roy Hart ("HART") and Travis West ("WEST").

WHEREAS, CASTLEMAN caused its attorneys to send a cease and desist letter to ALTA, as well as HART and WEST on August 16, 2019;

WHEREAS, CASTLEMAN's August 16, 2019 letter alleged that HART and WEST violated their agreements with CASTLEMAN and misappropriated CASTLEMAN's trade secrets and confidential information, and that ALTA tortiously interfered with HART's and WEST's agreements and also misappropriated CASTLEMAN's trade secrets and confidential information;

WHEREAS, ALTA, HART, and WEST deny all of CASTLEMAN's allegations;

WHEREAS, the Parties participated in voluntary mediation on September 6, 2019, and have agreed to resolve their disputes consistent with the terms of this Settlement Agreement;

NOW, THEREFORE, and in consideration of the terms and conditions set forth herein, the Parties agree on the following terms:

1.0 **DEFINITIONS:** The capitalized terms used in this Settlement Agreement have the following meanings for purposes of this Settlement Agreement only:

1.1. "Affiliate" means any entity, including without limitation, any individual, corporation, company, partnership, limited liability company or group, that directly, or indirectly through one or more intermediaries, controls, is controlled by, and/or is under common control with such party, or any officer, board member, director, principal, employee, or consultant of such entity.

1.2. "Agreement" means this Confidential Settlement Agreement and Mutual Release.

1.3. "ALTA Released Parties" means ALTA, William Phelps, Matthew Laterza, and any and all of ALTA's Affiliates and lenders or equity investors, including but not limited to Deutsche Bank Securities Inc. and its Affiliates, along with each of their respective officers, directors, trustees, shareholders, agents, employees and attorneys, including but not limited to HART and WEST.

1.4. "CASTLEMAN Released Parties" means CASTLEMAN, Ryan Castleman, Pamela Castleman, GP Manalac, Locke Lord LLP, and any and all of CASTLEMAN's Affiliates, along with each of their respective officers, directors, trustees, shareholders, agents, employees and attorneys.

CONFIDENTIAL

Alta 0058007

1.5.    "C&D Letter" means the August 16, 2019 cease and desist letter sent on behalf of CASTLEMAN to ALTA, HART, and WEST.

1.6.    "Parties" means CASTLEMAN, ALTA, HART, and WEST collectively.

1.7.    "Party" means any of the Parties, individually.

1.8.    "Settlement Amount"

1.9.    "Settled Matters" means any and all past, present or future claims, counterclaims demands, actions, causes of action and liability, including but not limited to damages, prejudgment and statutory interest, expense, costs, statutory penalties, or attorneys' fees, whether known or unknown, asserted or unasserted, that arise under, relate to, or concern (1) the allegations in the C&D Letter and ALTA's responses thereto and (2) any denial, delay, or other changes of any kind in the terms of ALTA's financing of debt or equity for the peaking power plants known as GoodAlta Power Center, AltaJac Power Center, and Avocet Power Center, of any type or character, except for the obligations imposed by this Agreement. Settled Matters do not include any claim for breach of this Agreement. Settled Matters also do not include any claim or right of action arising from conduct occurring after the date of this Agreement that is unrelated to items (1) and (2) in this paragraph 1.9. Settled Matters do not include any claims against any of ALTA's lenders or equity investors, including but not limited to Deutsche Bank Securities Inc. and its Affiliates, arising from or related to engagement or business by or between those entities and CASTLEMAN that is unrelated to items (1) and (2) in this paragraph 1.9.

**2.0    CONSIDERATION:**    In consideration of the mutual promises set forth in this Agreement and for other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

2.1.    Payment. Within five (5) business days of full execution of this Agreement, ALTA shall pay or cause to be paid to CASTLEMAN the Settlement Amount. ALTA's payment of the Settlement Amount is the full and sole monetary contribution made by or on behalf of ALTA and the ALTA Released Parties in connection with this Agreement. CASTLEMAN acknowledges that ALTA's payment of the Settlement Amount satisfies all of ALTA's obligations to pay money in connection with this Agreement, including obligations for any taxes, interest, future benefits, attorney's fees, or costs.

2.2.    CASTLEMAN Releases. CASTLEMAN and the CASTLEMAN Released Parties hereby release and forever discharge ALTA and the ALTA Released Parties from any and all Settled Matters.

2.3.    ALTA Releases. ALTA and the ALTA Released Parties, including HART and WEST, hereby release and forever discharge CASTLEMAN and the CASTLEMAN Released Parties from any and all Settled Matters.

2

CONFIDENTIAL

2.4. <u>Confidentiality</u>. The terms of this Settlement Agreement, the amount of the Payment contained in this Settlement Agreement, and the negotiations at the September 6, 2019 mediation leading up to them, including any drafts of this Settlement Agreement shall be kept confidential, and not disclosed by the Parties, or by their respective counsel, either directly or indirectly, except as expressly provided in this paragraph. Disclosure of the Settlement Amount shall be permitted to those legal or business consultants of the Parties who reasonably need to know the information in order to provide their services to the disclosing entity, as well as to any lenders or equity investors of ALTA, including but not limited to Deutsche Bank Securities Inc. and its Affiliates; the entity retaining such consultants shall be liable under this Settlement Agreement for any subsequent disclosure by such consultants. Disclosure shall also be permitted upon receipt of a subpoena with notice to the other party for the opportunity to file any motion to quash or for protection, upon order of a court, or as required or requested by a governmental department, body or agency. The Parties also may disclose the terms of this Settlement Agreement, including the Settlement Amount contained in this Settlement Agreement, to the extent necessary to enforce its terms. The Parties and their respective counsel also may state that they have settled their disputes.

2.5. <u>Complete Bar Other Than to Enforce Settlement Agreement</u>. The releases in this Settlement Agreement shall forever be a complete bar to the commencement or prosecution of any action or proceeding concerning the Settled Matters, with the exception of any action to enforce the terms of this Settlement Agreement. The Parties covenant and agree not to file or participate in any lawsuit, action, or proceeding against any of the ALTA Released Parties or CASTLEMAN Released Parties, respectively, arising out of or related to the Settled Matters. If any Party hereafter sues or commences an arbitration for the purpose of pursuing any of the Settled Matters, this Agreement shall be a complete defense thereto, and the ALTA Released Parties or CASTLEMAN Released Parties, respectively, who are sued shall, in addition to all other remedies, be entitled to recover damages (which shall include reasonable expenses and attorney's fees) and to receive a declaratory judgment and/or an injunction against conduct or litigation which violates or threatens to violate this Agreement.

2.6. **Indemnification. CASTLEMAN and the CASTLEMAN Released Parties shall indemnify, defend, and hold harmless the ALTA Released Parties against any loss or liability arising from or related to any of the Settled Matters brought by any person or entity claiming by, through, on behalf of, or under CASTLEMAN or the CASTLEMAN Released Parties.**

**ALTA and the ALTA Released Parties shall indemnify, defend, and hold harmless the CASTLEMAN Released Parties against any loss or liability arising from or related to any of the Settled Matters brought by any person or entity claiming by, through, on behalf of, or under ALTA or the ALTA Released Parties.**

3

81318724v.1

APP.150

CONFIDENTIAL

Alta 0058009

2.7.  <u>Duty to Cooperate</u>.  CASTLEMAN shall cooperate in good faith and make best efforts to provide to ALTA or to execute and provide to ALTA any additional document consistent with the terms and intent of the Parties under this Agreement as may be requested by Deutsche Bank Securities Inc. or any other lender or equity investor for ALTA.  If there is a dispute over whether a request is consistent with the terms and intent of the Parties under this Agreement, it shall be mediated by Daryl Bristow or, if he is unavailable, any alternate mediator agreed to by the Parties.

**3.0    MERGER CLAUSE AND EXPRESS WAIVER OF RELIANCE**

CASTLEMAN and ALTA each have entered into this Settlement Agreement freely and without duress after having consulted with professionals of their choice.  CASTLEMAN and ALTA each expressly warrants and represents that no promise or agreement that is not expressed in this Agreement has been made to it in executing this Agreement and that neither is relying upon any statement or representation of any agent of the entities or persons being released hereby other than those expressly stated in this Agreement.  In entering into this Settlement Agreement, CASTLEMAN and ALTA expressly disclaim and waive any reliance on any written or oral representations, other than those expressly stated herein.  Additionally, CASTLEMAN and ALTA, both of which are sophisticated entities, are each relying on their own judgment, and each has been represented by legal counsel in the Lawsuit, and the negotiation and drafting of the Settlement Agreement.  CASTLEMAN and ALTA represent that their respective counsel have read and explained to it the entire contents of this Settlement Agreement as well as their legal consequences.  This Merger and Waiver of Reliance clause is not a boilerplate provision and has been specifically negotiated by the Parties.

**4.0    GENERAL TERMS:**

4.1.  <u>Joint Drafting</u>.  The Parties agree that the Parties mutually prepared this Settlement Agreement and that all Parties had an opportunity to review and revise the Agreement before it was executed.  If any ambiguity exists as to the terms of the Agreement, that ambiguity shall not be construed against the Party who drafted this Agreement, but instead shall be construed to effectuate the intent of the Parties as expressed in this Agreement

4.2.  <u>Change or Modification</u>.  No change or modification to this Settlement Agreement shall be binding unless it is in writing and executed by both CASTLEMAN and ALTA.  There are no verbal understandings or "side deals" between the Parties with respect to the terms of this Settlement Agreement.

4.3.  <u>Legal and Other Costs</u>.  CASTLEMAN and ALTA will each pay their own legal and other costs and expenses incident to this Settlement Agreement, including legal and other costs and expenses incurred in resolving this dispute.

4

CONFIDENTIAL

Alta 0058010

4.4. <u>Taxes</u>. The ALTA Released Parties shall have no responsibility to any local, state, or federal taxing authority for any tax liability or tax consequences to CASTLEMAN or the CASTLEMAN Released Parties arising from this Agreement. All such responsibility, including any tax, costs, attorney's fees, penalties, or interest, and the determination of such responsibility, is solely the responsibility of CASTLEMAN. CASTLEMAN shall indemnify, defend, and hold harmless the ALTA Released Parties from any taxes, assessments, penalties, losses, costs, attorney's fees, expenses, interest payments, damage, loss, or injury that the ALTA Released Parties may incur by reason of any claim brought against them arising out of, or in any manner related to, any local, state, or federal taxes allegedly due from CASTLEMAN or the CASTLEMAN Released Parties in connection with this Agreement.

4.5. <u>Governing Law and Venue</u>. This Settlement Agreement shall be governed by the laws of the State of Texas, without reference to any conflict of laws provision or analysis. In the event of any dispute relating to or arising from this Agreement, the Parties agree to the jurisdiction and venue of the Texas state courts in Harris County, Texas.

4.6. <u>Costs and Fees Regarding Enforcement</u>. In the event of any litigation between the Parties to enforce the terms of this Agreement, or in the event of litigation otherwise relating to or arising out of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorney's fees and costs related to that litigation, including costs of appeal and costs associated with collecting any resulting judgment.

4.7. <u>Authority to Enter into Settlement</u>. The Parties and their undersigned representatives hereby represent and warrant that they are authorized to bind the entities on whose behalf they enter into this Settlement Agreement.

4.8. <u>Effective Date</u>. This Settlement Agreement shall be effective upon the execution of the Settlement Agreement by the Parties.

4.9. <u>Compromise of Disputed Claims</u>. This Agreement is a compromise of disputed claims. The terms and conditions of this Agreement and the negotiations at mediation leading up to it are not to be construed as an admission of liability or wrongdoing by any Party, or as a concession by any Party as to the correctness or incorrectness of either Party's position concerning the Settled Matters. The Parties acknowledge that this Agreement is entered into in good faith and for no collusive purpose. The Parties further recognize and agree that neither the settlement memorialized by this Agreement, nor the fact of settlement itself, constitutes precedent of any sort for the resolution of any other claim, dispute or lawsuit brought by any party against the Parties being released in this Agreement. Neither of the Parties shall be considered to be a prevailing party as a result of this settlement.

81318724v.1

APP.152

CONFIDENTIAL

Alta 0058011

4.10.  <u>Headings</u>.  The headings in this Agreement have been inserted for convenience of reference only, are not intended to be considered part of the Agreement, and shall not affect in any way the meaning, terms, and/or interpretation of this Agreement.

4.11.  <u>Provision Void or Unenforceable</u>.  Should any provision of this Agreement be found to be void or unenforceable, it shall be severed and the remainder of the Agreement will remain in full force and effect, and shall be interpreted to give effect to the intent of the Parties as expressed in the Agreement to the maximum extent permitted by law.  Moreover, the void or unenforceable part of the Agreement will be modified to the extent necessary to render it valid and enforceable, preserving to the fullest extent permissible the intent of the Parties set forth in this Agreement.

4.12.  <u>Binding Effect</u>.  Notwithstanding anything else in this Settlement Agreement, the Parties intend to be bound by this Agreement, and its provisions are binding upon each of them and their respective successors, assigns, attorneys and any other representatives.

**Remainder of this page intentionally left blank, signature blocks to follow.**

81318724v.1

APP.153

CONFIDENTIAL

Alta 0058012

**Signed this 6th day of September 2019 by:**

By: _RYAN L. CASTLEMAN_

Title: _CEO_

For:    CASTLEMAN POWER
          DEVELOPMENT LLC

RYAN CASTLEMAN

**Signed this 6th day of September, 2019 by:**

By: _Matthew E Lorenz_

Title: _CFO_

For:  ALTA POWER LLC

**Signed this 6th day of September, 2019 by:**

ROY HART

**Signed this 6th day of September, 2019 by:**

TRAVIS WEST

7

CONFIDENTIAL

APP.154

Alta 0058013

# EXHIBIT N

**To:** Matthew Laterza[mlaterza@altapowerdev.com]
**Cc:** Jeremy Eisman[jeremy.eisman@db.com]; Jacqueline Elson[jacqueline.elson@db.com]
**From:** Joshua Presner[joshua.presner@db.com]
**Sent:** Mon 9/9/2019 1:49:01 PM Central Daylight Time
**Subject:** RE: Alta/Castleman Settlement

Matt,
Our internal litigation group is reviewing the document but in the meantime, internal counsel has asked for Texas counsel (i.e. Baker Botts) to review so that they can confirm that they view this as enforceable under Texas law. Could you confirm you're willing to cover the cost of this review?
Thanks,
Josh



**Joshua Presner** | Global Credit Trading | Transportation, Infrastructure & Energy
60 Wall Street, New York | +1 (212) 250 1903 | joshua.presner@db.com

**From:** Matthew Laterza [mailto:mlaterza@altapowerdev.com]
**Sent:** Saturday, September 07, 2019 3:11 PM
**To:** Joshua Presner <joshua.presner@db.com>
**Cc:** Jeremy Eisman <jeremy.eisman@db.com>; Jacqueline Elson <jacqueline.elson@db.com>
**Subject:** RE: Alta/Castleman Settlement
Attached is the fully executed agreement.
Matt

**From:** Joshua Presner <joshua.presner@db.com>
**Sent:** Friday, September 6, 2019 8:03 PM
**To:** Matthew Laterza <mlaterza@altapowerdev.com>
**Cc:** Jeremy Eisman <jeremy.eisman@db.com>; Jacqueline Elson <jacqueline.elson@db.com>
**Subject:** Re: Alta/Castleman Settlement
Thanks Matt. DB Legal will review and revert to see if this satisfies internal requirements.

Joshua Presner
Deutsche Bank
Transportation, Infrastructure & Energy
D (212) 250-1903
M (917) 890-4618
joshua.presner@db.com
On Sep 6, 2019, at 8:15 PM, Matthew Laterza <mlaterza@altapowerdev.com> wrote:

> Please keep confidential.
> Get Outlook for iOS
> <Settlement Agreement and Mutual Release - Alta and Castleman REVISED (3).DOC>

---
This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

---
This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

CONFIDENTIAL                                                                          Alta 0027636

# EXHIBIT O

**To:** Matthew Laterza[mlaterza@altapowerdev.com]
**From:** Joshua Presner[joshua.presner@db.com]
**Sent:** Thur 9/12/2019 4:31:12 PM Central Standard Time
**Subject:** Re: Our Counsel

I doubt it. They've given their view, now it's up to the senior folks here to make a call.

Joshua Presner
Deutsche Bank

Transportation, Infrastructure & Energy
D (212) 250-1903
M (917) 890-4618
joshua.presner@db.com

On Sep 12, 2019, at 5:10 PM, Matthew Laterza <mlaterza@altapowerdev.com> wrote:

> Would it help to have Baker Botts speak with our counsel?

---

This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

APP.158

# EXHIBIT P

**To:** Joshua Presner[joshua.presner@db.com]; Robin Cresswell[robin.cresswell@db.com]; Jeremy Eisman[jeremy.eisman@db.com]
**Cc:** William Phelps[wphelps@altapowerdev.com]
**From:** Matthew Laterza[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8F6EED0B000C4F419C7E8DBD7C543FB2-MLATERZA_86]
**Sent:** Fri 9/13/2019 10:26:22 AM Central Daylight Time
**Subject:** Release of Engagement

---

Gentlemen:

Given the lack of progress over the past week, and the indication yesterday that this process is not likely to move forward, Alta Power formally requests a written release of our engagement with Deutsche Bank.

Regards,

**Matt Laterza**

Matthew E. Laterza
Chief Financial Officer
Alta Power Ltd.
4605 Post Oak Place Dr. Suite 270
Houston, TX 77027
(o) 832.397.6939
(f) 832.356.5202
(m) 713.859.9770
(e) mlaterza@altapowerdev.com

APP.160

CONFIDENTIAL

Alta 0010074

# EXHIBIT Q

**To:** Jacqueline Elson[jacqueline.elson@db.com]
**Cc:** Keller, Kelley[kkeller@skv.com]
**From:** Matthew Laterza[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8F6EED0B000C4F419C7E8DBD7C543FB2-
MLATERZA_86]
**Sent:** Thur 8/22/2019 12:22:20 PM Central Standard Time
**Subject:** DB/SKV Introduction

Jackie,
Per our conversation, I'd like to introduce you to Kelley Keller at Smyser Kaplan & Veselka.
Kelley,
Jackie is in the counsel's office at Deutsche Bank and will be reviewing the potential litigation risk on the matter we've been working with you on.
Can you please send Jackie a copy of the C&D letter and our response?
Thanks,
Matt

CONFIDENTIAL

Alta 0058223

# EXHIBIT R

**To:** Matthew Laterza[mlaterza@altapowerdev.com]
**Cc:** Joshua Presner[joshua.presner@db.com]; Jeremy Eisman[jeremy.eisman@db.com]
**From:** Jacqueline Elson[jacqueline.elson@db.com]
**Sent:** Mon 8/26/2019 11:03:03 AM Central Standard Time
**Subject:** RE: Alta Power- Legal Expenses

With respect to the first question, I will ask counsel. However I think it is a moving target given a formal complaint hasn't yet been filed, etc.
The partner at Baker Botts is Kevin Jacobs. Your counsel is already aware- we have an email chain going with your counsel, W&C, Baker Botts and myself and plan to speak this afternoon.
Best,
Jackie

Jacqueline Elson
Vice President | Counsel
Deutsche Bank AG, Filiale New York
Tel. +1 212 250-1558
Email: Jacqueline.elson@db.com

---

**From:** Matthew Laterza [mailto:mlaterza@altapowerdev.com]
**Sent:** Monday, August 26, 2019 12:01 PM
**To:** Jacqueline Elson <jacqueline.elson@db.com>
**Cc:** Joshua Presner <joshua.presner@db.com>; Jeremy Eisman <jeremy.eisman@db.com>
**Subject:** RE: Alta Power- Legal Expenses

Do we have a sense of how long the litigation review is going to take?
Also, can you send me the names of the Baker Botts team members that will be working on this? Our counsel knows a lot of the Baker Botts litigators here in Houston and would like to start getting them up to speed as soon as possible.
Thanks,
Matt

---

**From:** Jacqueline Elson <jacqueline.elson@db.com>
**Sent:** Monday, August 26, 2019 10:38 AM
**To:** Matthew Laterza <mlaterza@altapowerdev.com>
**Cc:** Joshua Presner <joshua.presner@db.com>; Jeremy Eisman <jeremy.eisman@db.com>
**Subject:** Alta Power- Legal Expenses

Hi Matt,

Please see below. We are happy to discuss at your convenience- please let us know your thoughts as soon as possible so we can instruct counsel as to whether they should continue work (on both the litigation from and the underlying deal).

==Fee Quotes:==

    A. White & Case's fee estimate for litigation due diligence is as follows:

       ○ Review of correspondence and complaint: **$10K**
       ○ Review of underlying agreements, initial review of New York and Federal law, and coordination with Texas counsel: **$35K**
    B. Baker Botts' (TX counsel) fee estimate for litigation due diligence is as follows:

       ○ **$35,000-40,000** based on the following assumptions.
       ○ Review of 10-15 pages of correspondence
       ○ Review of 2 short non-compete agreements
       ○ Necessary Texas law research
       ○ One or two discussions with counsel for Alta
       ○ Discussion with White & Case regarding the terms of Deutsche Bank's agreements with Castleman and Alta and review of those agreements if and
          as necessary
       ○ Initial review of a complaint by Castleman, if any
       ○ Preparation and delivery of initial conclusions and advice to Deutsche Bank regarding (a) the validity of the asserted or likely claims by Castleman
          against Alta and (b) the legal risk to Deutsche Bank of withdrawing from the Castleman project while still moving forward with the Alta project

==Retainer Request from W&C:==
  ○ As an initial matter, we believe that we are on pace to remain within the higher end of original budget of $900K to reach closing. The EPC diligence has been front-ended, Alta received the key financing documents and a list of the other financing documents (that have been drafted but they haven't seen yet), and the other diligence is ongoing. That said, this budget is subject to the assumptions we previously provided and in particular, schedule delay in light of the litigation diligence needed. Please note that this budgeted amount does not include any amounts required for litigation due diligence or items separate from our scope such as Alta's request of us to undertake the first draft of the asset management agreement, which we are happy to do so long as Alta confirms the scope of work.

    ○ **From our perspective, we need to ensure that the Firm's current exposure is addressed before recommencing work.**

      ○ As such, we propose that Alta make a payment equal to $600K. This will cover the approximately $329K in legal fees that has been incurred and issued under the July invoice. It will also cover a portion of the "Work in Progress" legal fees thus far in August (which as over overnight was approximately $307K).

      ○ In addition, we would put in place a rolling retainer for Alta of $100K that would cover the costs of the litigation diligence and the progress for the project. This would be drawn down upon on an ongoing basis. Any time that the retainer is below 20%, Alta would be required to refresh the amount to $100K. Of course, if there is any excess at the time of closing, the excess would be returned to Alta.

==We are confirming with Baker Botts if they will also require a retainer and will get back to you asap.==
Best,
Jackie

CONFIDENTIAL

Alta 0018967

Jacqueline Elson
Vice President | Counsel
Deutsche Bank AG, Filiale New York
Legal Department
60 Wall Street, New York, NY 10005
Tel. +1 212 250-1558
Email: Jacqueline.elson@db.com

---
This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

---
This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

APP.165

CONFIDENTIAL

Alta 0018968

# EXHIBIT S

**To:** Pell, Owen (opell@whitecase.com)[opell@whitecase.com]; Wohlferd, Clark (cwohlferd@whitecase.com)[cwohlferd@whitecase.com]; kevin.jacobs@bakerbotts.com
[kevin.jacobs@bakerbotts.com]
**Cc:** akaim@gibbsbruns.com[akaim@gibbsbruns.com]; Warner Hocker (WHocker@mithofflaw.com)[WHocker@mithofflaw.com]; rgibbs@gibbsbruns.com[rgibbs@gibbsbruns.com];
'rmithoff@mithofflaw.com'[rmithoff@mithofflaw.com]; Matthew Laterza[mlaterza@altapowerdev.com]; William Phelps[wphelps@altapowerdev.com]; Travis West
[twest@altapowerdev.com]; Roy Hart[rhart@altapowerdev.com]
**From:** Kaplan, Lee[lkaplan@skv.com]
**Sent:** Wed 8/28/2019 5:27:28 PM Central Standard Time
**Subject:** FW: Alta Power/Castleman Power - Declarations
**Attachment:** Declaration of Roy Hart.pdf
**Attachment:** Declaration of MIchael Laterza.pdf
**Attachment:** Declaration of Travis West.pdf

Kevin, Clark and Owen:

  Attached are three declarations from Roy Hart and Travis West, whose purported activities were the subject of the August 16 letter from the attorney for
Castleman Power Development, as well as Matthew Laterza, one of the principals at Alta Power. Upon receiving the August 16 letter, we quickly ascertained the
facts over the next few days and prepared drafts of declarations to use in case Castleman followed through. We also sent an August 21 letter responding to the
accusations. Castleman has taken no formal action, and with the passage of a week without litigation, it appears that it has reconsidered.

  However, we understand that Deutsche Bank has had some concerns about the facts. Rather than ask you to rely on Alta's lawyers, we asked Messrs.
Hart, West and Laterza to again confirm the facts and finalize their declarations for your review and, if you think it useful, to Deutsche Bank personnel on a
confidential basis.

  We think these straightforward declarations should put to rest any concerns about the validity of Castleman's accusations, but if you or your client have
any questions, please contact us so we may provide answers. Alta is committed to this transaction going forward promptly.

  Regards,
  Lee L. Kaplan



**Lee L. Kaplan**
Smyser Kaplan & Veselka, L.L.P.
717 Texas Avenue | Suite 2800
Houston, Texas 77002-2761
O: 713.221.2323 | C: 713.299.2282

website : bio : linkedin : vCard : map : email

*Top 10 U.S. Litigation Boutique*    *Litigation Department of the Year*
*2019 Benchmark Litigation*          *2018 Texas Lawyer*

This e-mail is confidential and/or privileged. If the reader is not the intended recipient, any review, dissemination or copying of any part of this e-mail is prohibited. If you received this e-mail in error, please notify
the sender by e-mail or at 713-221-2300 and then permanently delete this e-mail.

APP.167

CONFIDENTIAL

Alta 0078636

# EXHIBIT T

**To:** Matthew Laterza[mlaterza@altapowerdev.com]
**Cc:** Jeremy Eisman[jeremy.eisman@db.com]; Hadi Makkawi[hadi.makkawi@db.com]; Peter Dagher[peter.dagher@db.com]
**From:** Joshua Presner[joshua.presner@db.com]
**Sent:** Tue 8/13/2019 2:54:09 PM Central Daylight Time
**Subject:** Project Atom - Wattstock Underwriting Requirements

Matt,

Thanks for taking the time to discuss the GE/Wattstock relationship. We appreciate the letter provided by GE to Alta Power dated July 31st 2019. Unfortunately however, this does not offer the contractual protection we were seeking. I've spoken with my internal management and several members of our investment committee. Candidly, we will only be able to proceed with this transaction if GE is subject to an unconditional obligation to step into Wattstock's contract in the event of a Wattstock default. We are not asking GE to guarantee Wattstock, but rather have a fixed-price obligation to complete the all of refurbishment and equipment delivery obligations should Wattstock default. We suspect that this is something Wattstock will need to address more generally as they seek to present themselves as a bankable counterparty.

From a bankability perspective, we (and the rest of the financing market) fundamentally care about three primary criteria: (1) the experience and track record of the counterparty, (2) the financial strength of that counterparty and (3) the strength of the underlying documentation. While we understand that the individuals within Wattstock may be capable and experienced, that fact in and of itself is not sufficient for bankability. Wattstock as a company lacks both an established track record and a creditworthy balance sheet. Even if we get comfortable with #3, we absolutely need the backing of a creditworthy entity with an institutional track record, which in this case is GE.

Additionally, we expect to see Wattstock warranties to Alta Power in line with that of new equipment. Regardless of whether or not there is a default, those warranties will need to effectively be 'pass-throughs.' In other words, they will need to match the warranties provided to Wattstock from GE and will need to be fully assignable to Alta Power.

Let me know if you have any questions.

Thanks,
Josh



**Joshua Presner** | Global Credit Trading | Transportation, Infrastructure & Energy
60 Wall Street, New York | +1 (212) 250 1903 | joshua.presner@db.com

---

This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Please refer to https://db.com/disclosures for additional EU corporate and regulatory disclosures.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

APP.169

# EXHIBIT U

| | |
|---|---|
| **From:** | Capoccia, Matt |
| **To:** | "Jeb Golinkin"; Michael Cancienne; Pulliam, Jessica; Lawrence, John; kirstie.wallace@bakerbotts.com |
| **Cc:** | Fitzgerald, Cara; LeGrand, Andrew; Patel, Pooja R. |
| **Subject:** | RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info |
| **Date:** | Wednesday, October 5, 2022 2:55:00 PM |
| **Attachments:** | Hart Subpoena.pdf |

Jeb,

Thank you for confirming that you do not anticipate producing additional documents.  We believe we are at an impasse on our requests for documents related to the Castleman mediation and settlement and emails between Alta's counsel and third parties, including but not limited to Castleman, Castleman's outside counsel, Deutsche Bank, Deutsche Bank's outside counsel, and other lenders to the Castleman dispute.  Accordingly, we intend to file a motion to compel today.  We assume you oppose, but please let me know if I am incorrect.

In connection with our motion to compel, we will also file a motion for leave to seal certain Alta documents related to the Castleman dispute that have been labeled as confidential.  We will file a redacted version of our brief in support of our motion to today along with a redacted appendix, but our motion for leave will request permission to file our unredacted brief, corresponding declaration, and Alta's confidential exhibits under seal.  We assume you agree that the documents should be filed under seal.  But if you believe the documents do not need to be sealed, please let us know and we will withdraw our leave motion.

There are a couple of other issues that I wanted to check with you about as well.  First, regarding Roy Hart, we intend to serve the attached subpoena on him either today or tomorrow.
Second, we do not seem to have received your lost profits documents/calculation or attorneys' fees documents that you promised to produce within three weeks at the meet-and-confer on August 31.  As you may imagine, it is difficult for us to prepare to depose your witnesses on the issue of lost profits when we do not even know the basic contours of your calculation or the documents you think support your claim.  Please clarify when we should expect to receive these documents and your amended disclosures or if we need to seek relief from the Court on these issues.


Respectfully,
Matt
**Matt Capoccia**
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, September 27, 2022 1:46 PM
**To:** Capoccia, Matt <MCapoccia@gibsondunn.com>; Michael Cancienne
<mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John

<John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info

**[WARNING: External Email]**

Dear Matt,

You are correct: our document production is substantially complete. If there are discrete documents you expect to see which you do not, tell me what you think is missing and I will investigate. Otherwise, we do not anticipate producing additional documents.

On Hart, I will try to find out the exact date he left. But given his involvement, we disagree that we have any further obligations relative to documents.

During our call on Friday, Gibson Dunn mentioned that they would provide deposition dates soon. As you know, we've been asking for a couple months.  It was also mentioned Gibson Dunn would send around a modified schedule.  Please let us know the status of that as well.   If we don't get movement on either, we'll need to notice depositions unilaterally.


Respectfully,


Jeb Golinkin
--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC

(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com |  Attorney Biography



---

**From:** Capoccia, Matt <MCapoccia@gibsondunn.com>
**Sent:** Thursday, September 22, 2022 9:06 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info


Dear Jeb,

Thank you for this email, for the production of the additional documents today, and for meeting and conferring on the scheduling order and on other outstanding discovery issues.  Pooja will follow up

separately once we've worked out a proposed revised scheduling order, but I write to follow up on two issues for which we'd appreciate an answer by close of business tomorrow.

- Castleman Documents:
  - You confirmed during the meet and confer today that you believe you are substantially complete on document production and that you do not intend to produce any further documents related to the Castleman dispute. Please let me know if I am mistaken.
  - We've reviewed your production of Castleman documents, which, in relevant part, appears to consist of some emails and related attachments in which Matt Laterza is listed as the custodian.  Putting to the side that it is unclear how any of these documents could ever have been erroneously tagged privileged, this does not change things related to your categorical refusal to collect and produce relevant documents that are currently held by your outside counsel and which are within Alta's possession, custody, and control for purposes of discovery.
  - As to your repeated assertions that the substance of the dispute with Castleman does not matter, we disagree.  For one, the dispute concerns whether Alta copied Castleman's peaker plants.  Alta's statements made defending against that charge are likely to be directly relevant to Alta's claims that it had a "unique strategy" for which it missed the opportunity to be a "first mover" in the "niche" peaker market in Texas. The documents your outside counsel currently possesses are likely to also be relevant to assessing the causal link between the Castleman dispute and Alta's failure to obtain financing, and may reasonably lead to other matters directly relevant to Alta's claims, such as whether Castleman learned of Alta's financing from another source and what the reasonable basis is for Alta's claim that WattStock breached its nondisclosure agreement.
- Roy Hart
  - Your reply does not address the two specific requests we made in our email on September 14, which I will restate: "Could you please identify the date (1) that Roy Hart left Alta's employment and (2) the date that Alta retained counsel or otherwise contemplated any lawsuit against WattStock or GE."
    - Your reply states that "[t]he last email to anyone else at Alta from Hart via his Alta account is dated March 20, 2020." You also note that he "formally stopped working for Alta Power sometime in the middle of 2020."  None of this identifies the date that Roy Hart left Alta's employment.   So once again, please identify that date.
    - You omitted from your email any identification of the date on which Alta retained counsel or otherwise contemplated any lawsuit against GE or WattStock.  This is important, as your description of Hart leaving Alta's employment in "the middle of 2020" coincides with general timeframe when WattStock sued Alta in the "middle of 2020" on June 16, 2020.
  - Your description of Roy Hart as having no relevance because he was uninvolved with "Alta Power's dealings with either GE or WattStock" is plainly wrong.  As noted below, Hart was deeply involved with many relevant aspects of this case, so we need to fully understand any failure on Alta's part to preserve his documents.
    - You are incorrect that "Hart did not meet with WS/GE."  In fact, the following

documents show that he was present at the Jacintoport meetings in May and
June 2018:

- Roy Hart (at his Alta email) was among the three people whom Travis
  West wrote on May 9, 2018 asking to meet in person "next Wednesday
  [May 16] around 1100" because "this will allow us time to meet with
  WattStock that afternoon." Alta 0080628.
    - Separately, we do not understand how the above email was only
      produced after it was recovered from Phelps's personal email
      account.  Matt Laterza, Travis West, and Roy Hart all received this
      email from their Alta accounts, and yet it was not produced for
      either Laterza or West.
- Hart was listed in WattStock's writeup of the Alta personnel they met
  during a "site visit" with Alta on May 17, 2018.  GEALTA_0001931.  Jay
  Manning wrote that "Roy Hart (Coastal/Castleman), Bob Phelps (Coastal),
  Travis (Castleman) formed company in September '17." *Id.*
- Hart was listed (albeit with an erroneous first name of Joe) among the
  people WattStock "met with" at a June 12, 2018 meeting with Alta at the
  Jacintoport facility, and he was specifically was noted as a "principal" of
  Alta.  GEALTA_0005188.
- These are among the meetings of central importance at which you allege
  WattStock and GE purportedly made many fraudulent representations.
  *See* Third-Party Petition ¶¶ 32–39.
- Hart's documents are therefore relevant to, at least, RFP 1 in addition to
  the general basis for the claims you are asserting against GE.

- As already explained, your view on the relevance of the merits of the Castleman
  dispute is wrong, and Roy Hart's central role in that dispute make all documents
  in his possession related to it relevant.  RFPs 23, 57, 73, 74.
- When Alta was accused of violating Hart's non-compete in August 2019 related
  to their development of peaker plants, Alta did not say a word about how Hart
  was uninvolved with Alta at the point.  The clear implication from Alta's litigation
  stance defending Hart's work is that he was involved with the only planned deals
  at the point, which were with WattStock.
- That he seems to have been working mainly on planning how Alta would employ
  the units that Alta was acquiring from WattStock at Alta's power plants does not
  mean that his documents are not responsive to our requests for production.
  Given Hart's involvement with site selection, financing, plant planning,
  development, permitting, construction, building, contracting, and handling
  vendors for peaker plants for Alta, *see* Alta 0078337, and his specific
  involvement at the Jacintoport meetings, he would likely have documents
  responsive to the following RFPs at a minimum:
    - RFP 5: "Documents that show or concern the activities or actions of Alta in
      developing its natural gas-fired peaker projects, including without
      limitation documents collected or prepared by Alta in connection with
      "'(1) identifying areas in the grid where a peaker plant fits' … [and]
      navigating the state and federal regulatory waters of the electrical power

market."

- RFP 6: Documents "that concern or that were prepared or collected by Alta in connection" with the the statement in paragraph 22 of the Third-Party Petition that Alta "identified several project sites through an extensive vetting process based on prevailing market conditions."
- RFP 8: All internal Alta communications and documents concerning the transactions described in the Third-Party Petition involving Alta.
- RFP 31: All documents and communications that reference, describe, or summarize any meetings between or involving Alta, WattStock, and/or GE related to aeroderivative gas turbines.
- RFP 32: All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals between Alta and any other person that refurbished used aeroderivative gas turbines, including the "GE 'certified' companies" referenced in the Third-Party Petition.
- RFP 48: All documents and communications related to your allegation, in paragraph 71 of the First Amended Answer and Counterclaim and Third-Party Petition, that "GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition," including all documents reflecting the EthosEnergy unit's allegedly "dilapidated" condition.
- RFP 58: All communications from 2018 through present with third parties related to Alta's planned entrance into the Texas renewable energy market and its projects involving used aeroderivative gas turbines for the Texas energy market.
- RFP 65: All documents and communications that reference or relate to the terms and conditions of any long-term service agreement on any used aeroderivative gas turbine, including the proposed scope of work for Alta Power Site #1 and proposed pricing, that Alta intended or attempted to purchase related to any of the projects or transactions at issue in this litigation.
- RFP 67: All documents and communications showing, referencing, or relating to any false or fraudulent statements that you believe were made by GE or WattStock.
- RFP 76: All documents and communications that reference, describe, or summarize any meetings, communications, offers, or proposals in which Alta claims that GE or WattStock misrepresented the nature of their relationship, created the impression that they were partners or agents, or in a joint venture together.

- There are numerous emails which we have already cited to you in which Alta continued to list Hart as a principal of Alta to lenders up through mid-2020. As a principal, it is likely that he would have documents discussing many aspects of Alta's business that did not solely concern his expertise in peaker plant development, which would cover the issues raised in other RFPs, including those related to the damages that Alta is apparently seeking in this case.
- In short, we have reason to believe that Roy Hart would have had relevant

documents in his possession and it is unclear why Alta thinks it had no duty to preserve his documents.

We look forward to your prompt response,

Respectfully,
Matt
**Matt Capoccia**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, September 22, 2022 9:34 AM
**To:** Capoccia, Matt <MCapoccia@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info

[WARNING: External Email]

Dear Matt,

We are producing additional documents because we re-reviewed documents tagged as privileged and determined several attachments of privileged documents that contained the term Castleman could be produced. These documents will be produced today along with the results of our review of Mr. Phelps' private emails.

As to Roy Hart's documents, as we mentioned, Hart was not involved in Alta Power's dealings with either GE or WattStock. Hart did not meet with WS/GE, nor are we aware of any correspondence between WS/GE and Alta Power where Hart was copied. This is a fishing expedition, and GE seems to continue to push Alta in an attempt to distract from GE's handling of written discovery, which has been both slower (by more than a year) and less robust (Alta Power has produced 17,781 documents/70,106 pages to GE's 4,551 documents/15,691 pages) than Alta Power's responses to GE's discovery requests.

GE seems to believe Hart's documents may be relevant because they go to the merits of *Castleman's* allegations. But the merits of Castleman's allegations are not relevant to any issue in this case. What is relevant under the live pleading is the fact that Castleman was made aware of Alta's plans and sent a demand in an attempt to thwart Alta's plans. The fact that Castleman sent a demand, and not the merits of Castleman's allegations, are what is at issue.

Regardless, Roy Hart, had little to no involvement at Alta Power from at least 2019, and formally stopped working for Alta Power sometime in the middle of 2020 at which point we believe his email was disabled. The last email to anyone else at Alta from Hart via his Alta account is dated March 20, 2020.

Respectfully,

Jeb Golinkin
--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC

(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



---

**From:** Capoccia, Matt <MCapoccia@gibsondunn.com>
**Sent:** Wednesday, September 14, 2022 3:09 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com>
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info

Jeb,

We appreciate your recent reply, but there are a few issues we need to clarify as we consider whether to move to compel.

1. You mention that you "will be producing additional documents responsive to your Castleman RFPs." Would you please elaborate what these documents are, when we will receive them, and why you failed to mention them at the meet-and-confer meeting? As a reminder, you unequivocally told use that you had produced all relevant Castleman documents and that any additional documents would be in the possession of your outside counsel. Your sudden discovery of additional documents without explanation raises concerns for us about the adequacy of your document collection efforts.

2. You state that "we cannot search [Roy Hart's] emails because he left the company before this case began and we do not have access to them." Could you please identify the date (1) that Roy Hart left Alta's employment and (2) the date that Alta retained counsel or otherwise contemplated any lawsuit against WattStock or GE.

We look forward to your response,

Best,
Matt

**Matt Capoccia**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, September 8, 2022 6:15 PM
**To:** Capoccia, Matt <MCapoccia@gibsondunn.com>; Michael Cancienne
<mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John
<John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com>
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info

[WARNING: External Email]

Dear Matt,

Taking your questions in order:

1. No, we are not going to add Robin Gibbs, Lee Kaplan, Richard Mithoff, or any of the other lawyers at their firms as custodians. We also will not run the law firm specific search terms you have requested that we add. That said, we will be producing additional documents responsive to your Castleman RFPs.

2. Confirmed re. RFP 23. On RFP 57, we continue to stand on our objections. Having said that, Alta Power is not withholding any document reviewed from the universe of documents captured by the search methodology outlined in the protocol (plus the additional search terms to which we previously agreed to run) that is responsive to RFP 57 on any basis other than privilege.

3. We outlined our position with respect to Mr. Hart in my May 25 email. In any event, we cannot search his emails because he left the company before this case began and we do not have access to them.

4. Yes, we are in the process of collecting Mr. Phelps' personal emails from 1/01/18 through 10/31/20. We intend to review the hits for the all of the search terms we have previously agreed to run except the following (which we will not be running):

   - partner*
   - stand w/2 behind
   - strong w/2 incentive

principal OR agen*
- "Laterza" OR "Matt" w/25 (GE or "general electric" or WS or WattStock" (in body of email only)
- "West" OR "Travis" w/25 (GE or "general electric" or WS or WattStock" (in body of email only)


Respectfully,

Jeb
--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC

(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



---

**From:** Capoccia, Matt <MCapoccia@gibsondunn.com>
**Sent:** Thursday, September 8, 2022 10:12 AM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info


Jeb,

We wanted to follow up to see if you have any response on the issues we discussed at the meet and confer last Wednesday and in the email we sent last Thursday.  To reiterate, we need you to answer the following: (1) whether you will obtain and produce the documents in the possession of your outside counsel related to the Castleman dispute, (2) whether you will confirm that you are not withholding Castleman dispute documents based on the objections to RFPs 23 and 57, (3) whether you will add Mr. Hart as a custodian, and (4) whether you will obtain relevant emails from Mr. Phelps's personal email.


Best,
Matt
**Matt Capoccia**
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com

**From:** Capoccia, Matt
**Sent:** Thursday, September 1, 2022 9:19 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; kirstie.wallace@bakerbotts.com
**Cc:** Fitzgerald, Cara <CFitzgerald@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Patel, Pooja R. <PPatel@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - GE Production of Re-Designated Documents - Additional Info

Hi Jeb,

Thank you for taking the time to confer with us yesterday on the outstanding discovery issues.  I write as a follow up to seek clarification on a few items and to further explain GE's positions.

1. Castleman Dispute Documents:

- Our understanding of your position is that Alta is withholding no documents based on its objections listed in RFPs 23 and 57.  If you could confirm that in writing, we would appreciate that.

- You mentioned at the meet and confer that any additional remaining communications about the Castleman dispute would be within the possession of Alta's outside counsel.  We would therefore like to add the following search terms to capture these and other related documents: (1) *gibbs* or "bruns"; (2) "locke" or *lockelord* or renken or (david w/5 gregory); and (3) "kaplan" or "smyser" or "veselka" or "jarod steward" or "kelley keller" or *skv* .

- We would reiterate our position that any documents held by Alta's outside counsel are within Alta's control for purposes of discovery, and all relevant non-privileged documents must be collected and produced.  *See Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) ("[D]ocuments held by outside counsel are in the possession, custody, and control of their clients."); *accord Metro. Prop. and Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, CV 15-12939-LTS, 2019 WL 13180448, at *2 (D. Mass. Feb. 1, 2019); *In re Anderson News, LLC*, 615 B.R. 45, 55 (Bankr. D. Del. 2020) ("it appears uncontroversial that things held by a party's outside counsel are still within that party's control."); *Wingnut Films, Ltd. v. Katja Mot. Pictures Corp.*, CV 05-1516-RSWL SHX, 2007 WL 2758571, at *12 (C.D. Cal. Sept. 18, 2007) ("Documents held by outside counsel that pertain to work performed for a client are within the 'possession, custody or control' of the client for purposes of Rule 34.").  We'd also note that in the relevant RFPs regarding the Castleman documents you have not asserted attorney-client privilege or the work-product doctrine.

- The documents we currently possess raise questions as to the completeness of Alta's collection and production of relevant documents related to the Castleman dispute.  For example, you have produced a document from February 2020 in which Matt Laterza sent Starwood Capital several documents reflecting the "written correspondence between the attorneys that represented us in the matter and Castleman (along with the settlement/release document)." He then stated that "**[t]here are some other emails that were exchanged that were fairly benign communications.  I can forward those to you if**

**you'd like to see them, it will just take a little more time searching.**" Alta 0040822
(emphasis added).  None of the emails that Matt Laterza mentioned that he could find with "a
little more time searching" appear to have been produced.  The attachments to Matt
Laterza's email also reflect gaps in Alta's collection of documents.  For instance, he attached a
letter dated September 3, 2019 from Mr. Renken of Locke Lord that says it was sent "by
email" to Gibbs & Bruns.  The first time this email appears in Alta's production, however, is
February 2020.  It seems likely that this communication would have been received by Alta at
some earlier time, and its absence suggests that there are some documents related to this
dispute that are not being captured.  If you could check with your client on the discrepancies
surrounding the absence of expected documents regarding the Castleman dispute, we would
appreciate it.

2. Roy Hart:  We took your position to be that your client told you that Mr. Hart has no relevant
information on this dispute and you are refusing to add him as a custodian.  It was not entirely clear,
but we thought you had agreed to ask Mr. Hart to search his emails from around August-September
2019 to see if he might have any additional relevant emails. We continue to believe that given Mr.
Hart's stated role as a principal and key employee of Alta and his starring role at the center of the
Castleman dispute that he is a clear candidate to be a custodian, and we are puzzled by your
resistance on this point.  If you could check once more confirm your client's position so that we can
determine whether to move to compel on this issue, we would appreciate it.

3.  William Phelps's Personal Email: Our understanding of your position related to Mr. Phelps's
personal email is that you would ask him about the scope of the relevant documents he has in his
personal email and would get back to us on what your client is willing to do.  We mentioned that
we'd send you some caselaw supporting Alta must collect and produce relevant emails from Mr.
Phelps's personal email.  Please find that below:

> See *Stoneeagle Services, Inc. v. Gillman*, 2013 WL 12124329, at *3 (N.D. Tex. Dec. 23,
> 2013) (ordering the plaintiff to obtain and produce "work-related or otherwise
> responsive documents or communications in [the custodians'] personal email
> account[s]"); see also *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at *2
> (N.D. Cal. Apr. 23, 2021) ("[T]he Court … disagrees that when BuyerQuest's CEO used
> his personal email to conduct company business, those emails are somehow outside
> the company's reach or discovery obligations. Such an approach would gut Rule 34
> and make it way too easy for high-level executives to hide evidence."); *Waymo LLC v.
> Uber Techs., Inc.*, 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017) ("Otto Trucking
> must produce responsive documents in the custody, control or possession of its
> officers . . . It cannot hide responsive documents simply because these officers' work
> for Otto Trucking was done using their personal email accounts, especially since they
> are all current Otto Trucking officers. It is thus unsurprising that Otto Trucking does
> not cite a single case that supports that remarkable proposition."); *Union Home
> Mortg. Corp. v. Jenkins*, 2021 WL 1110440, at *9–10 (N.D. Ohio Mar. 23, 2021)
> (granting motion to compel requiring employer to obtain and produce relevant
> emails and text messages in employees' personal email and cell phone accounts);
> *State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*, 2020 WL

7056039, at * 5 (E. D. Mich. Dec. 2, 2020) (granting motion to compel production of emails from employees' personal email accounts and noting that the defendants "have not cited any contrary authority suggesting employers do not have the legal right to obtain business communications in its current employees' or independent contractors' possession, and the Court knows of no such authority. Indeed, it appears the opposite is true."); *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 2018 WL 6305665, at *3 (D. Or. Dec. 3, 2018) (granting motion to compel and explaining that "a company's officer or agent should not be able to avoid the rules of discovery by using personal email, which is in the custody and control of that officer or agent, for work purposes."); *ID Ventures, LLC v. Chubb Custom Ins. Co.*, 2018 WL 8807125, at * 2 (E.D. Mich. Oct. 12, 2018) (requiring plaintiff to obtain and produce relevant emails from employees' personal email accounts); *CA, Inc. v. AppDynamics, Inc.*, CV132111WFKSIL, 2014 WL 12860591, at *3–4 (E.D.N.Y. Sept. 8, 2014) (ordering the production of work-related emails from the personal email accounts of two corporate officers, and collecting supporting caselaw).

We believe it is a non-controversial point that you must collect relevant emails from Mr. Phelps's personal email account, and we should flag now that you should impress on Mr. Phelps that he should make a thorough review of his emails as a part of any production.  If discovery from any third parties reveals that Mr. Phelps's self-identification of responsive emails was incomplete, we will flag the discrepancy for the Court and move to compel a review by Alta's counsel of Mr. Phelps's personal email account.  In similar cases in which an employee's self-identification has proven inadequate, courts have consistently required review by counsel as a part of granting a motion to compel.  *Tradeshift*, 20-CV-01294-RS (TSH), 2021 WL 1586283, at *2 (granting motion to compel where CEO's initial search of his email failed to uncover relevant emails from his personal email that were discovered from other sources, and noting that his employer "must have counsel review [his] emails for responsiveness. This review cannot be done by [the CEO] himself."); *Logtale, Ltd. v. IKOR, Inc.*, C-11-05452 CW (DMR), 2013 WL 3967750, at *2 (N.D. Cal. July 31, 2013) (similar and noting that "it is not enough for counsel to simply give instructions to his clients and count on them to fulfill their discovery obligations").  This follows from the fact that "Rule 26(g) places not only on the parties but also specifically on counsel an obligation to certify that a document production is complete."  *Tradeshift*, 2021 WL 1586283, at *2.

We look forward to your response,

Best
Matt
**Matt Capoccia**
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3249 • Fax +1 214.571.2987
MCapoccia@gibsondunn.com • www.gibsondunn.com