**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone:   713.955.4028
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

*Co-Counsel for Alta Power LLC*

**BAKER BOTTS L.L.P.**
Jessica B. Pulliam (SBN 24037309)
John Lawrence (SBN 24055825)
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
Telephone:   214.953.6500
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| WATTSTOCK LLC, § <br> § <br> Plaintiff/Counter Defendant, § <br> § <br> v. § <br> § <br> ALTA POWER LLC, § <br> § <br> Defendant/Counter Plaintiff. § <br> § <br> v. § <br> § <br> GENERAL ELECTRIC INTERNATIONAL § <br> INC., d/b/a GE POWER SERVICES, § <br> § <br> Third-Party Defendant. § <br> § | Chapter 11 (Subchapter V) <br><br> Case No. 21-31488 (SGJ) <br><br><br> Adv. No. 21-03083 (SGJ) <br><br><br> *Removed from the District Court of Dallas County, Texas, 116th Judicial District* <br><br> Case No. DC-20-08331 |

**ALTA POWER LLC'S RESPONSE IN OPPOSITION TO
GENERAL ELECTRIC INTERNATIONAL INC.'S MOTION TO COMPEL**

# TABLE OF CONTENTS

SUMMARY ..................................................................................................... 1

BACKGROUND ............................................................................................ 2

    A.    The Case ................................................................................ 2

    B.    The Castleman dispute ......................................................... 3

    C.    Alta shared its search protocol with GE in February and has repeatedly agreed to modify its protocol to satisfy GE's demands. .. 4

    D.    GE demands that Alta Power add former lawyers as custodians and asks Alta Power to run these lawyers/law firms' names as search terms. ................................................................................................ 5

LEGAL STANDARDS .................................................................................. 6

DISCUSSION ................................................................................................. 7

    A.    Alta Power has reasonably searched for and produced documents responsive to GE's requests related to the Castleman dispute. ................................................................................................ 7

    B.    Alta Power does not have a legal right to collect its former law firms' emails with its other clients. .................................................... 11

    C.    The burden on Alta Power and its previous law firms far outweighs any benefit that GE would obtain from the searches. .... 12

CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*BancPass, Inc. v. Highway Toll Admin., LLC*,
No. A-14-CV-1062-SS, 2016 WL 4031417 (W.D. Tex. July 26, 2016) .......9

*Booth v. City of Dallas*,
312 F.R.D. 427 (N.D. Tex. 2015)................................................................6

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
No. CV 13-373-SDD-EWD, 2018 WL 276941 (M.D. La. Jan. 3, 2018)......8

*Merrill v. Waffle House, Inc.*
227 F.R.D. 475 (N.D. Tex. 2005)................................................................7

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*
319 F.R.D. 220 (N.D. Tex. 2016)..............................................................13

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
No. 15CIV0293LTSJCF, 2017 WL 2305398 (S.D.N.Y. May 18, 2017).......9

*Samsung Electronics Am., Inc. v. Yang Kun Chung.*
321 F.R.D. 250 (N.D. Tex. 2017)................................................................6

*VeroBlue Farms USA Inc. v. Wulf*,
No. 3:19-CV-764-X, 2021 WL 5176839 (N.D. Tex. Nov. 8, 2021).............8

Alta Power LLC ("Alta Power") files this Response in Opposition to Third-Party Defendant General Electric International Inc.'s ("GE") Motion Compel the Production of Documents (ECF 59).

## I. SUMMARY

In its Motion, GE asks the Court to order Alta Power to run search terms—including the word "partner"—on the email accounts of the lawyers who represented Alta Power in a separate dispute. The Court should deny this unreasonable and impractical request for three reasons.

*First,* the United States District Court for the Northern District of Texas has held that it will not dictate how a party should search for documents in response to a discovery request unless the record establishes that the party "abdicated its responsibility" to reasonably do so on its own. That is not the case here. Instead, the record confirms that Alta Power's document collection and review efforts have been both reasonable and comprehensive.

*Next,* Alta Power does not have a legal right to collect or search its former lawyers' email accounts because doing so would violate the rights of these lawyers' other clients.

*Finally,* the burden associated with GE's demands far outweighs the relevance of the documents it seeks. Alta Power has already reviewed most if not all the documents that GE's "new" searches will capture, and it has produced the non-privileged results. There is no reason to force Alta Power to redo this work. Nor should outside law firms have to disclose their clients' privileged information

1

to a third party, particularly since neither these lawyers nor their clients have a stake in the outcome of this case.

## II.   BACKGROUND

### A.   The Case.

This lawsuit arises out of GE and WattStock's fraudulent representations related to GE/WattStock's sale of GE's "TruePackages." (GE App. 116.) Alta Power endeavored to develop and operate gas powered peaker power units. (*Id.*) These units would have supplied additional capacity to Texas' electrical grid when the grid needed it most. (*Id.* at 116-17.) To execute this business plan, Alta Power needed to purchase fully refurbished turbines. (*Id.*)

Alta Power could have bought the necessary units from multiple companies, but GE/WattStock persuaded Alta Power to purchase nine GE "TruePackages"— GE's trademarked term for a fully refurbished LM6000 backed by a GE warranty. GE repeatedly represented that Alta Power could acquire up to nine TruePackages for at or below $10 million per TruePackage if Alta Power agreed to buy these GE TruePackages from WattStock. (GE App. 123-25.)

Unfortunately, GE/WattStock never intended to honor their pricing promises. (*Id.*) And GE deliberately prevented Alta Power from acquiring *any* of these units by refusing to waive termination fees unless Alta Power agreed to enter into an oppressive Long-Term Services Agreement with GE. (*Id.*) As a result, Alta Power lost millions in profits it would have made but for GE/WattStock's tortious conduct. (*Id.*)

2

### B. The Castleman dispute.

Given the above, the scope of the damages Alta Power sustained as a result of GE/WattStock's tortious conduct will be a central issue in this case. Those damages will turn in part on two questions: (1) but for GE/WattStock's tortious conduct, *when* would Alta Power have had its peaker power units up and running (and thus generating income); and (2) *how many* units would have been running. Alta Power's damages model will also have to account for the cost of any debt it would have incurred to purchase the units themselves. It is in this context that the so called "Castleman dispute" arises.

In 2019, Alta Power was on the verge of obtaining a substantial loan from Deutsche Bank on favorable terms. (GE App. 130-31.) Alta Power never closed that deal, in part because Alta Power alleges WattStock breached its confidentiality obligation to Alta Power by disclosing the deal to Castleman. (*Id.*) Castleman, one of Alta Power's few competitors, then sent a letter to Alta Power in which it threatened to sue Alta Power for theft of trade secrets. (*Id.*) Castleman's letter had its intended effect: Alta Power notified Deutsche Bank of Castleman's letter, and Deutsche Bank paused all diligence related to the potential loan to Alta Power. (*Id.*)

Still, Alta Power hoped Deutsche Bank would fund Alta Power's project if Alta Power resolved Castleman's threatened claims. To that end, Alta Power hired three of Houston's most accomplished lawyers—Robin Gibbs of Gibbs and Bruns; Lee Kaplan of Smyser, Kaplan, and Veselka; and Richard Mithoff of Mithoff Law. After less than a month of negotiations, Alta Power settled Castleman's prospective claims. (GE App. 147-54.)

3

Even so, Deutsche Bank never reengaged. (*Id.* at 130-31.) Alta Power therefore alleges that WattStock's disclosure of its confidential information to Castleman "delay[ed] Alta Power's units to bring these units into service." (*Id.*)

### C. Alta shared its search protocol with GE in February and has repeatedly agreed to modify its protocol to satisfy GE's demands.

In its Motion, GE argues that Alta Power hid that it was not searching its former lawyers' emails for documents responsive to GE's requests for documents related to Alta Power's dispute with Castleman. (ECF 65 at 5-7.) In reality, Alta Power sent GE its full "discovery protocol" over eight months ago, even after GE refused to do the same. (Alta Power App. 3-5.) In the protocol, Alta Power disclosed (1) the date range it applied to its electronic searches; (2) the custodians whose emails it collected; and (3) the search terms it used to identify documents for review. (*Id.* at 10-12.)

GE fully understood the meaning and implications of Alta Power's protocol, which Alta Power has repeatedly tweaked at GE's request. For example, GE asked Alta Power to run 33 additional search terms on its custodians, including "Castleman*" and "partner" on the emails collected from Alta Power's custodians. (*Id.* at 80-81.) Alta Power agreed even though GE refused to run those same terms on its own custodians. (*Id.* at 84-85.)

To date, Alta Power has run 79 search terms—including "Castleman*," "Deutsche*," and "DB"—and reviewed more than 41,000 documents for responsiveness to GE's Requests for Production. (*Id.* at 10-12; 81-82.) Based on this review, Alta Power has produced 17,781 documents covering more than 80,000

4

pages. Meanwhile, GE has produced only 4,715 documents.

### D. GE demands that Alta Power add former lawyers as custodians and asks Alta Power to run these lawyers/law firms' names as search terms.

On September 1, 2022, GE asked Alta Power to add more custodians and run additional search terms. This time, GE demanded that Alta Power add Robin Gibbs, Lee Kaplan, Richard Mithoff, and all of their associates as custodians. (GE App. 180.) GE also asked Alta Power to review William Phelps' personal emails for responsiveness to its RFPs. (*Id.*) Finally, GE demanded that Alta Power "add the following search terms to capture these and other related documents: (1) *gibbs* or "bruns"; (2) "locke" or *lockelord* or renken or (david w/5 gregory); and (3) "kaplan" or "smyser" or "veselka" or "jarod steward" or "kelley keller" or *skv*" to its Search Protocol. (*Id.*)

In response, Alta Power agreed to collect and search Mr. Phelps' personal emails, but it declined to "add Robin Gibbs, Lee Kaplan, Richard Mithoff, or any of the other lawyers at their firms as custodians" or "run the law firm specific search terms [GE] requested that [Alta Power] add." (GE App. 178.) Alta Power also re-reviewed the documents it is withholding as privileged that relate to the Castleman dispute to determine whether further disclosure would be feasible without waiving privilege. (*Id.* at 177.) Based on this effort, Alta Power made a substantial supplemental production that included redacted versions of emails and letters (forwarded by counsel to Alta Power) between Alta Power's former lawyers and various third parties, including Deutsche Bank and Castleman's outside counsel.

Despite the above, GE demands that the Court take the unprecedented step

5

of ordering Alta Power's former law firms on an unrelated case to turn over all their emails that include the word "partner" (and others) under GE's RFPs related to the Castleman dispute. These firms of course cannot comply. Even if they could, the Court should reject GE's Motion.

### III. LEGAL STANDARDS

The Federal Rules of Civil Procedure permit a party to discover any non-privileged information, provided the information is relevant to its claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015). Though related, the concepts of relevance and proportionality are distinct requirements. *Samsung Electronics Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the requested production appears relevant, the burden shifts to the party resisting discovery to show that each request is nevertheless disproportionate to the needs of the case. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005).

### IV. DISCUSSION

In its Motion, GE nominally ask this Court to order "(1) Alta to promptly collect and produce relevant documents currently in the possession of its outside counsel" and "(2) search for and produce relevant documents currently within Alta's possession that involve Alta's outside counsel." (ECF 65 at 17.) As the above makes clear, Alta Power has already done both things. This prompts the question: what exactly is GE asking the Court to order Alta Power to do?

The answer is twofold. First, GE wants Alta Power to collect its former lawyers' emails, apply more than 70 search terms, and review the hits for

6

responsiveness to GE's RFPs. (ECF 65 at 8; GE App. at 177-78.) GE also asks this Court to order Alta Power to run its former lawyers' names as search terms on the documents Alta Power already collected. (*Id.*) For the reasons set out below, GE's Motion should be denied.

### A. Alta Power has reasonably searched for and produced documents responsive to GE's requests related to the Castleman dispute.

In its Motion, GE demands that the Court order Alta Power to add its former lawyers as custodians, collect their emails, and run sweeping searches on those emails. (ECF 65 at 8.) GE also insists that Alta Power run its former lawyers' names as search terms on its existing documents. (*Id.* at 1.) GE's demands do not withstand scrutiny, and fail under the applicable test.

"A responding party is best situated to preserve, search, and produce its own [electronically stored information], which [p]rinciple is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel[,] and eschewing 'discovery on discovery,' unless a specific deficiency is shown in a party's production." *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *9 (N.D. Tex. Nov. 8, 2021) (internal citations and quotations omitted). "It is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility." *Id.*; *see also Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (noting that, unless a party's choice of custodians and search terms is "manifestly unreasonable or the requesting party

7

demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or . . . designating custodians"); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15CIV0293LTSJCF, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (same).

Thus, to prevail on its motion, GE must show that Alta Power "abdicated its responsibility" to reasonably search for documents responsive to its Castleman dispute. *VeroBlue Farms*, 2021 WL 5176839, at *9; *see also BancPass, Inc. v. Highway Toll Admin., LLC*, No. A-14-CV-1062-SS, 2016 WL 4031417, at *3 (W.D. Tex. July 26, 2016). GE does not make this showing. Instead, the record proves that Alta Power comprehensively searched for and produced non-privileged documents responsive to GE's various RFPs, including those related to the Castleman dispute. (Alta Power App. 10-12, 81-82.)

Alta Power originally ran 46 search terms—including "Deutsche*" and "DB"—on all the emails sent and received by Matt Laterza, William Phelps, Travis West, and Carlos Gaset, reviewed the hits, and produced the non-privileged documents it identified as responsive to one or more of GE's RFPs. (*Id.* at 10-12.) Then, at GE's request, Alta Power ran 33 additional search terms—including "Castleman*"—on its custodians emails. (*Id.* at 81-82.) Thus, Alta Power has run 79 search terms on its custodians' emails—including on individuals who retained and corresponded with its former lawyers and Deutsche Bank—and reviewed 41,843 documents for responsiveness to all of GE's RFPs. (*Id.* at 10-12, 81-82.)

Still, GE argues that there are "gaps" in Alta Power's production that justify

8

the radical relief it seeks. The below chart addresses each of GE's specific complaints:

| "Gap" | Response/Explanation |
|---|---|
| "The Castleman settlement mentions that the '[p]arties participated in voluntary mediation on September 6, 2019.' No documents reflecting any mediation statements or any other documents related to the mediation have been produced." (ECF 65 at 10.) | Mediation statements are privileged. And even if that were not the case, Alta Power's review of its other privileged communications indicate it did not prepare or submit a formal mediation statement. |
| "On August 22, 2019, Matt Laterza (Alta's CFO) wrote Deutsche Bank's internal counsel introducing her to "Kelly Keller at Smyser Kaplan & Veselka" and asked Keller to send the cease-and-desist letter and Alta's response to Deutsche Bank's counsel. APP162. This email has not been produced." (ECF 65 at 10.) | Alta Power did not produce this email because it incorrectly withheld it on privilege grounds. This document reads: "Jackie, Attached are the C&D letter and Alta's response. Please let me know if you need anything further. Best Regards, Kelly." But Alta Power has now produced this email, and it long ago produced copies of both attached documents. |
| "On August 26, 2019, Deutsche Bank's internal counsel replied to Laterza's questions about Deutsche Bank's review of the cease-and-desist letter and noted that 'we have an email chain going with your counsel, [White & Case], Baker Botts and myself and plan to speak this afternoon.' APP164. Neither this email thread nor any other emails Alta's counsel received from Deutsche Bank's internal counsel, White & Case, or Baker Botts have been produced. Alta has produced a single email reflecting certain documents that were sent to White & Case and Baker Botts on August 28, 2019, but this contains no reply." (ECF 65 at 10.) | Per Lee Kaplan's declaration, any substantive correspondence with third parties would have been forwarded to either Matthew Laterza and/or William Phelps. Alta Power's review of relevant materials (produced documents and otherwise responsive documents withheld on the basis of privilege) indicate that the first correspondence between Alta Power's former lawyers and Deutsche Bank, Baker Botts, and White & Case took place on August 28, 2019. GE admits Alta Power produced this document. |

9

| "Gap" | Response/Explanation |
|---|---|
| "No documents reflecting any views that Baker Botts or Deutsche Bank shared with Alta about the Castleman dispute or settlement have been produced." (ECF 65 at 10.) | Per Lee Kaplan's declaration, any substantive correspondence with third parties would have been forwarded to either Matthew Laterza and/or William Phelps. Notably, Alta Power reviewed all documents that refer to "Deutsche Bank" or "DB." |
| No document of any type has been produced reflecting that Castleman had learned of Alta's financing from WattStock or that Alta or any other party believed that to be the case. Given what Alta has asserted in its Third-Party Petition, it seems implausible that there are no documents reflecting or even discussing how Alta came believe that WattStock disclosed confidential information to Castleman. (ECF 65 at 10.) | Matt Laterza testified Alta Power learned of WattStock's breach during a conversation with WattStock's President, Jay Manning. |

As the above makes clear, there are no "gaps" in Alta Power's production. Lee Kaplan's declaration confirms that he emailed his correspondence to third parties related to the Castleman dispute to Matt Laterza and/or William Phelps in 2019. (Alta App. 149-50.) Alta Power already reviewed these custodians' emails for information responsive to the Castleman RFPs. (*Id.* at 10-12.) There is thus no reason to believe that granting GE's Motion would result in Alta Power producing any evidence GE has not already received. And even if that were not the case, these "gaps" will be filled when GE receives the records that it directly subpoenaed from Castleman and Deutsche Bank. (*Id.* at 89-100, 130-45.)

10

### B. Alta Power does not have a legal right to collect its former law firms' emails with its other clients.

Even if Alta Power's search methodology were somehow deficient, Alta Power cannot collect or run search terms on its former outside lawyers' emails. A party is only in possession, custody, and control of documents under Rule 34 if it "has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016). Alta Power does not have actual possession, custody, or control of its former law firms' email accounts, nor does it have a legal right to obtain or even view most emails in its former lawyers' inboxes.

GE ignores this and instead provides a series of cases it claims supports its request for relief. (ECF 65 at 12-13.) But these cases are inapplicable, as they did not involve running search terms on outside counsel's emails. Nor do they address whether a court can order a party's *former* law firm on a *different matter* to turn over *all* of its emails to a party's outside counsel for search and review. These cases also do not apply because—unlike the parties ordered to search for and produce documents in the cases GE cites—Alta Power already reasonably searched for and produced documents responsive to GE's RFPs.

The outcome of GE's Motion turns on whether Alta Power can be compelled to run search terms on all of its former outside lawyers' emails, including those involving these lawyers' *other* clients, as it requests.[1] (ECF 65 at 8.) The answer to

---

[1] GE tries to hide the true nature of the relief it seeks, but the parties' correspondence demonstrates GE has never suggested a willingness to accept anything less than a search term based review by Alta Power's current counsel. (GE App. 178-79.)

11

this question is no. Alta Power has no legal right to access, much less review, every document in its former lawyers' email boxes that contain (among others) the word "partner." To answer otherwise would necessarily require Alta Power's former lawyers on a different case to allow Alta Power's current lawyers to review privileged correspondence with their other clients. GE does not point to any instance in which a court has ordered such an undertaking.

### C. The burden on Alta Power and its previous law firms far outweighs any benefit that GE would obtain from the searches.

Logistical issues aside, the Court should deny GE's Motion because the relief GE seeks would impose extraordinary burdens on Alta Power and its former law firms—burdens that will yield little, if any, new or relevant evidence.

*1. The evidence is minimally relevant.*

In its Motion, GE argues that the merits of Castleman's claims matter because Alta Power's "lost profits claim against GE is based entirely on its contention that Castleman threatened Alta with 'frivolous' litigation with the intent and effect of scuttling Alta's financing." (ECF 65 at 13.) GE is mistaken. Alta Power seeks lost profits from GE based on GE's own tortious acts—the viability of Castleman's cause of action against Alta has no bearing on this inquiry. (GE App. 140-41.)

The strength of Castleman's claim is not relevant to Alta Power's allegation that WattStock violated its confidentiality obligation by disclosing the Deutsche Bank deal to Castleman. Alta Power's contract with WattStock categorically prohibited WattStock from disclosing that it was working with Alta Power or any

12

information gleaned about Alta Power's business plans to any third party. (ECF 1-3 at 16.) Thus, the only relevant question is whether Castleman sent the trade secret letter because of the imminent Deutsche Bank deal.

Alternatively, GE argues that, "at a minimum," communications between Alta's counsel and third parties about the merits of Castleman's claims bear directly on Alta's contention that it had a "unique strategy" for peaker plants and was destined to be the "first mover" in that space. (ECF 65 at 13.) But GE makes no effort to explain how the merits of a trade secrets claim could directly bear on Alta Power's commercial position in a peaker plant transaction. Regardless, Alta Power already reviewed and produced every non-privileged document responsive to any of GE's RFPs sent or received by its custodians between January 1, 2018 and October 30, 2020 that contains the words "Castleman," "Deutsche," or "DB." (Alta Power App. 11, 81.)

GE's other arguments are equally unpersuasive. For instance, GE argues that "the requested documents will likely confirm or disprove Alta's allegations that WattStock breached the confidentiality agreement it had with Alta and that the Castleman dispute caused Alta to lose financing." (ECF 65 at 16.) This is inconsistent with the content of the documents which have already been produced. (GE App. 143-82.) In any event, most of the documents that the additional searches would capture will be both (1) privileged, and (2) duplicative of the documents that Alta Power has already reviewed. Even if Alta Power's thorough searches missed anything, GE has also already issued sweeping subpoenas to both Castleman and Deutsche Bank seeking the very documents that it again requests. (Alta Power App.

13

89-100, 130-45.)

GE finally argues that the documents in the possession, custody, and control of Alta Power's former lawyer "will likely shed light as well on the merits of Alta's claim that it was positioned to become the 'first mover' in a 'niche' peaker power plan market." (ECF 65 at 16.) This again is incorrect. Alta Power already reviewed and produced its former lawyers' correspondence with third parties, and the remaining documents related to Castleman in its outside counsel's possession, custody, and control are privileged. GE would know this had it requested a privilege log before filing this Motion.

    2.  *GE's request is extremely burdensome.*

On the other hand, granting Alta Power's Motion would impose an extreme burden on Alta Power because it already reviewed the documents GE seeks for responsiveness to GE's RFPs. (Alta Power App. 10-12, 81-82.) Lee Kaplan—who GE concedes was the lawyer who communicated with Deutsche Bank and Castleman's outside counsel (Locke Lord) about the Castleman dispute—confirms that it is his practice to forward any substantive correspondence between himself and third parties to his clients. (*Id.* at 149-51.) GE knows this is true because Alta Power has produced redacted copies of such correspondence that (without waiving privilege) that Mr. Kaplan forwarded to Alta Power.[2]

The same goes for GE's demands that Alta Power add "(1) *gibbs* or "bruns"; (2) "locke" or *lockelord* or renken or (david w/5 gregory); and (3)

---

[2] Alta Power also produced documents forwarded to Alta Power by Robin Gibbs.

14

"kaplan" or "smyser" or "veselka" or "jarod steward" or "kelley keller" or *skv*" to its Search Protocol. (GE App. 180.) Again, Alta Power already reviewed every document sent or received by Alta Power's custodians during the relevant period that contain the word "Castleman," "Deutsche," or "DB." (Alta Power App. 10-12, 81-82.) If non-privileged documents exist, these searches captured them. GE is simply seeking to impose an additional burden on Alta Power for no legitimate reason.

Finally, GE's demands would place an unprecedented and unjustified burden on Alta Power's former lawyers. Gibbs Bruns, SKV, and Mithoff Law do not represent Alta Power in this or any other case. Even if they did, these firms cannot just hand over their emails to Alta Power's counsel be searched. Each firm would have to conduct this search and review the documents themselves. There is no basis for requiring these firms to undertake this extraordinary task.

## IV.    CONCLUSION

At its core, GE demands that the Court compel Alta Power to undertake an incredibly burdensome search for minimally relevant evidence, even though that search will no additional relevant evidence. This combination is fatal, and GE's Motion should be denied.

15

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *Jeb Golinkin*
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087606
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
Telephone: 713.955.4025
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

*and*

BAKER BOTTS L.L.P.
Jessica B. Pulliam
State Bar. No. 24037309
John Lawrence
State Bar No. 24055825
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone: 214.953.6500
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC

**CERTIFICATE OF SERVICE**

This certifies that a copy of the above and foregoing was sent to all counsel of record via the Court's electronic filing system on October 26, 2022.

*/s/ Joseph W. Golinkin*
Joseph W. Golinkin II

16