**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| WATTSTOCK LLC, | § | |
| | § | Chapter 11 (Subchapter V) |
| Plaintiff/Counter Defendant, | § | |
| | § | Case No. 21-31488 (SGJ) |
| v. | § | |
| | § | |
| ALTA POWER LLC, | § | Adv. No. 21-03083 (SGJ) |
| | § | |
| Defendant/Counter Plaintiff. | § | |
| | § | *Removed from the District Court of* |
| v. | § | *Dallas County, Texas, 116th Judicial* |
| | § | *District* |
| GENERAL ELECTRIC INTERNATIONAL | § | Case No. DC-20-08331 |
| INC., d/b/a GE POWER SERVICES, | § | |
| | § | |
| Third-Party Defendant. | § | |
| | § | |

**APPENDIX IN SUPPORT OF**
**ALTA POWER LLC'S RESPONSE IN OPPOSITION TO**
**GENERAL ELECTRIC INTERNATIONAL INC.'S MOTION TO COMPEL**

Alta Power, LLC ("Alta Power") respectfully submits this Appendix in

Support of its Response in Opposition to General Electric International Inc's ("GE")

Motion to Compel.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *Jeb Golinkin*
    Michael Cancienne
    State Bar No. 24055256
    Joseph W. ("Jeb") Golinkin II
    State Bar No. 24087606
    1980 Post Oak Blvd., Suite 2300
    Houston, Texas 77056
    Telephone: 713.955.4025
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com


    *and*

    BAKER BOTTS L.L.P.
    Jessica B. Pulliam
    State Bar. No. 24037309
    John Lawrence
    State Bar No. 24055825
    2001 Ross Avenue, Suite 900
    Dallas, TX 75201-2980
    Telephone: 214.953.6500
    jessica.pulliam@bakerbotts.com
    john.lawrence@bakerbotts.com

ATTORNEYS FOR ALTA POWER LLC


## CERTIFICATE OF SERVICE

    This certifies that a copy of the above and foregoing was sent to all counsel of record via the Court's electronic filing system on October 26, 2022.


    */s/ Joseph W. Golinkin*
    Joseph W. Golinkin I

# Appendix Contents

| Exhibit No. | Description | Appendix Page Nos. |
|---|---|---|
| 1 | 2/10/22 Email from Golinkin to Patel w/ attachment | 1-22 |
| 2 | 2/15/22 Email from Golinkin to Patel | 23-40 |
| 3 | 04/29/22 Email from Golinkin to Legrand and Patel | 41-78 |
| 4 | 06/23/22 Email from Patel to Golinkin attaching GE's Search Terms | 79-82 |
| 5 | 7/2/2022 Email from Golinkin to Patel | 83-87 |
| 6 | GE Subpoena to Castleman | 88-128 |
| 7 | GE Subpoena to Deutsche Bank | 129-147 |
| 8 | Declaration of Lee Kaplan | 148-151 |
| 9 | Email from Kelly Keller to Jacqueline Elson | 152-159 |

# Exhibit 1

| | |
|---|---|
| **From:** | Jeb Golinkin |
| **To:** | Patel, Pooja R.; LeGrand, Andrew; Cox, Trey |
| **Cc:** | Michael Cancienne; Pulliam, Jessica; Lawrence, John; Wallace, Kirstie; Kazlow, Jordan |
| **Subject:** | Re: WattStock v. Alta v. GE- GE Documents |
| **Date:** | Thursday, February 10, 2022 12:56:12 PM |
| **Attachments:** | Search Protocol[2][1].docx |
| | PO Redline[1].docx |
| | image001.png |

Pooja,

In July of 2021, I began a letter to GE's previous counsel with the following:

> As you know, Alta Power has been attempting to obtain basic
> discovery from GE for over six months. First, Alta Power served GE
> (which was not yet a party to this litigation) with a non-party
> document subpoena. GE agreed to produce documents to that
> subpoena, but documents were never produced. As a result, Alta
> Power had to serve GE virtually identical document requests after
> Alta Power joined GE to this case. GE responded to those requests
> over three weeks ago, but still has not produced *any* documents to
> Alta Power. GE seems to be attempting to thwart Alta Power
> attempts to move this case forward by engaging in discovery
> gamesmanship. Again, as we have requested for almost six months,
> please let us know a date certain when GE will begin producing the
> documents responsive to Alta Power's Requests for Production. (July
> 9, 2021 Letter from Golinkin to Fisse).

Shortly thereafter, Gibson Dunn appeared. Nothing changed, so on August 3, 2021, I wrote Andrew:

> Please let me know when we can expect to hear back from you on
> the issues raised in my June 29 and July 9 letters. Above all, we need
> to know when GE is going to produce documents. Alta Power has
> been trying to secure documents from GE for over a year, and GE
> has owed Alta Power documents for months. A protective order
> (based largely on the Court's form order) is already in place. There is
> no basis for GE to continue to withhold documents. (August 3, 2021
> Email from Golinkin to Legrand).

In response, we had a call and you claimed you could not produce documents
without amending the protective order. We did not oppose your amendments. GE
did not produce documents.

Fast forward to 2022. GE still has not produced a single document despite promising
to do so on our call. Your suggestion that your representations with respect to GE's
production timeline was tied to mediation is particularly frustrating. I
was *very* candid with everyone on our call about our need for documents and how

that impacted our position with respect to the scheduling order, and I expressly told you that I was willing to agree to less ambitious deadlines because I trusted Andrew that we would be getting documents in two weeks. That's on me—at some point, Charlie Brown should know what Lucy is going to do when he tries to kick the football. But whatever its reasons, GE's failure to produce documents is astounding and seems strategic.

Turning to the substance: your draft of the protective order deviates significantly from the NDTX's model protective order (redline attached). What does your proposed protective order add that you prefer to the model order?

On the protocol, the document you circulated is not what I had in mind nor do we think it is necessary. I was referencing a document—like ours, which is attached—that shows (1) the date range used to gather emails; (2) the custodians searched; and (3) the search terms employed to gather potentially responsive documents for review. I suggested the parties exchange this information in an email to Andrew in August.

The fact that you continue to promise to produce documents in "GE's possession that relate to the transaction at issue in this litigation" underscores why we need this information from GE. GE's knowledge of the market for used turbines, GE's relationships with customers who owned the turbines that Alta was presented with by WS (and contractual relationships between the parties), and, obviously, GE's relationship with WS (not limited to the "transactions at issue") are at the heart of our claims against GE. Given that reality, your suggestion that you will only be producing documents directly related to the Alta transaction seems to suggest GE is improperly confining the scope of its document search. This is also consistent with GE's failure to withdraw its boilerplate, frivolous objections that—as discussed at length in my August 9, 2021 letter—make it impossible to understand whether GE is complying with its obligations under the Rules. Given all these facts, the parties exchange of protocols along the lines I have described is essential. Our protocol is attached. Please let me know when we can expect yours.

As far as the form of our production, we have and will continue to produce our documents consistent with our obligations under the Federal Rules and in a form with which you will be intimately familiar. We are producing out of Relativity, and our documents will be produced so you can upload yours to a the same or a similar database which will allow you to manipulate, search, and do all the other things we have all come to expect to be able to do with our opponents documents.

Finally—and I think I have referenced this previously—but let me know if you do not already have the documents we produced to WS. If not, I will have our document vendor send them over so you can upload to your document management platform.

As always, we remain happy to discuss on the phone anytime if you think that would help. None of this should be controversial or difficult at this stage.

Jeb
--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, February 9, 2022 at 9:08 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, Michael Cancienne <mcancienne@jlcfirm.com>,
"LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael and Jeb,

Thank you for your emails. While we understand your concern regarding documents productions from GE Power, we never promised to produce documents within 14 days or provided you with a specific deadline for document productions. We discussed producing the documents within a couple of weeks of the parties' stipulating to the scheduling order and with plenty of time to review before mediation. Similarly, as discussed on our last call, we plan to produce the documents and communications in GE's possession that relate to the transaction at issue in this litigation, as specified in GE's response to your discovery requests. We asked you to review our substantial production and let us know if you believe there are other categories of documents that you think you need. You agreed to that plan.

In any event, our client is prepared to start producing documents within 3 business days of the parties agreeing to and filing with the Court a stipulated protective order and ESI protocol. Attached are drafts for your review. We're happy to discuss any revisions you have to either document. We will also send these to WattStock's counsel today.

Thanks,
Pooja


**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 5:58 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Patel, Pooja R. <PPatel@gibsondunn.com>;
LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

I can save you some time and your client some money: we will agree to the Northern District of
Texas' Model Protective Order. I have attached a copy to this email. If you want to pull it yourself,
you can also find it on the Northern District's website.

You guys are going to do what you are going to do, and I am not going to pretend that there's
anything I can do to make you produce documents this week as opposed to next week. But on our
call, Andrew gave me his word that we'd see documents within 14 days, and 12 days ago you
emailed me that you'd produce documents in the next "couple" of weeks. A couple of weeks have
passed and now you are telling me you are hoping to circulate a protective order by the end of the
week? Even though the Northern District of Texas has a model protective order?

What about the document search protocol I've requested on numerous occasions? Based on the
carefully worded nature of your representations to date, I am anticipating that we are going to have
to file a motion to compel unless you provide a protocol that confirms GE did not improperly limit
the scope of your document collection. Will you provide that protocol? If so, by when?

Thanks,

Jeb

~

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Date:** Tuesday, February 8, 2022 at 4:19 PM
**To:** "Patel, Pooja R." <PPatel@gibsondunn.com>, Jeb Golinkin <jgolinkin@jlcfirm.com>,
"LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

This shouldn't slow down a production, as we will agree to treat all documents as confidential until

the court enters the PO. I don't want to wait for several more weeks for this to get done.

Thanks,

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, February 8, 2022 5:17 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox,
Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

We are working on a draft protective order to circulate to you and Wattstock's counsel. As
discussed on our last call, we will need a protective order in this court before producing any
documents. We aim to circulate a draft by the end of the week and will begin producing documents
shortly after.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 10:49 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>;
Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Just following up. Will you be making a production this week?

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, January 26, 2022 at 8:43 AM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, "tberghman@munsch.com"
<tberghman@munsch.com>, "david.eastlake@bakerbotts.com"
<david.eastlake@bakerbotts.com>, "Nguyen, An" <anguyen@munsch.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
"Haitz, Eric" <EHaitz@gibsondunn.com>, Michael Cancienne <mcancienne@jlcfirm.com>,
"jessica.pulliam@bakerbotts.com" <jessica.pulliam@bakerbotts.com>, "Lawrence, John"
<John.Lawrence@bakerbotts.com>, "Kazlow, Jordan" <jordan.kazlow@BakerBotts.com>
**Subject:** RE: WattStock v. Alta - Scheduling Order

Hi Jeb,

As discussed on our call, GE will start producing relevant documents in the next couple of week.
These documents are related to the Alta-WattStock project.

Best,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Wednesday, January 26, 2022 8:03 AM

**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; tberghman@munsch.com; david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Jessica.pulliam@bakerbotts.com; Lawrence, John <John.Lawrence@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@BakerBotts.com>
**Subject:** RE: WattStock v. Alta - Scheduling Order

[WARNING: External Email]

Dear Pooja,

As we discussed on Monday, our agreement to move some of these deadlines back is subject to my receipt of something, in writing, confirming that GE will make a substantial document production in the next two weeks. It would also be helpful if you provided some guidance about how you went about identifying the universe of documents you guys reviewed (e.g. providing a list of custodians and search terms you used on the front end of your review). I believe I provided the same with regard to our own production previously. If I did not, please let me know and I will send it over.

Please confirm GE's agreement regarding the above.

Thanks,

Jeb

--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, January 25, 2022 8:28 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; tberghman@munsch.com; david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>
**Subject:** WattStock v. Alta - Scheduling Order

Thomas and Jeb,

Attached is an updated proposed scheduling order based on our conversation yesterday. Please let us know if you have any comments or changes.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

## WS/Alta: Draft Search Protocol

_Custodians_

- Matt Laterza
- Robert Perkins
- Bill Phelps
- Travis West

_Date Range_

January 1, 2018 – June 1, 2020

_Search Terms_

"Nuh*"

"WattStock*"

"WS"

"Goodlow*"

"GL*"

"LNTP*"

"Limited Notice to Proceed"

"GE*"

"General Electric*"

"Ethos*"

"Bosen*"

"Acarsoy"

"Ataer*"

"LM6000"

"TRUEpackage"

"Backstop"

"Backstop Letter"

"OEM"

"Alstom"

"Turkey"

"Equipment Purchase Agreement"

"EPA"

"Deutsche*"

"DB"

"Ares"

"EIG"

"ECP"

"GIP"

"John Hancock"

"Anchorage Capital"

"Blackstone"

"Arroyo Energy"

"Rockland Capital"

"Starwood Infrastructure"

"IFM Investors"

"ING"

"Blackrock Real Assets Team"

"Prudential"

"Apollo"

"Stonepeak"

"Fortress"

"Nomura"

"GE Capital"

"Macquarie"

"Riverstone"

"Summit Credit"

"MUFG"

"Investec"

"CIT"

"Deutsche Bank"

"BNP Paribas"

"Societe Generale"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 21-31488-sgj11V |
| WATTSTOCK, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | Subchapter V |
| | § | |
| | § | |
| WATTSTOCK, LLC, Plaintiff, | § | Adv. No. 21-3083 |
| | § | |
| v. | § | *Removed from the District Court* |
| | § | *of Dallas County, Texas,* |
| ALTA POWER LLC, Defendant, Counter-Plaintiff, | § | *116th Judicial District* |
| and     Third-Party Plaintiff, | § | |
| | § | *Cause No. DC-20-08331* |
| v. | § | |
| | § | |
| WATTSTOCK, LLC, Counter-Defendant, and | § | |
| | § | |
| GENERAL ELECTRIC INTERNATIONAL, INC., | § | |
| d/b/a GE POWER SERVICES, Third-Party | § | |
| Defendant. | § | |

## PROTECTIVE ORDER

This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential Information" or "Highly Confidential Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

1. Terms.

   a. "Confidential Information" means information that constitutes a trade secret or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), made applicable by Federal Rules of Bankruptcy Procedure 7026 and 9014, or other information required by law or agreement to be kept confidential.

   b. "Highly Confidential Information" means Confidential Information that any party, in good faith, believes to be particularly or especially sensitive and confidential, including, without limitation, data compilations, standard operating procedures, methodologies, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter and that would provide any other party in the litigation with an unfair advantage in the marketplace. Such information is to be viewed ONLY by a receiving party's counsel and is not to be shared with counsel's clients or others not within the scope of counsel's immediate legal team.

   c. *"Protected Documents" means materials, documents or discovery responses containing Confidential Information or Highly Confidential Information* disclosed or produced by any party in this litigation.

   d. "Confidential Material" means any document(s) claimed pursuant to Section 2(a) or (b) of this Order and any Confidential Information or Highly Confidential Information claimed to be contained therein, to the extent allowed by this Order.

2. Designation.

   a. A document (or portion of a document) that a party determines in good faith to be a Protected Document may be claimed as confidential or highly confidential by (1) stamping the term "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the document, or (2) using any other reasonable method agreed to by the parties. Such stamping shall not obscure any writings on the documents.

   b. A party may, on the record of a deposition or by written notice to opposing counsel not later than seventy-two hours after receipt of the deposition transcript, claim any portion(s) of the deposition as "CONFIDENTIAL" or "HIGHLY CONFIDENTIA" based on a good faith determination that any portions so claimed constitute a Protected Document. To the extent possible, any portions so claimed shall be transcribed separately and marked by the court reporter as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as appropriate.

   c. By claiming a document Confidential Material pursuant to Section 2(a) or 2(b), a party represents that it has made a bona fide, good faith determination that the document does, in fact, contain Confidential Information or Highly Confidential Information.

3. Challenge to Claim.

    a. Any party may challenge a claim made under Section 2(a) or 2(b) by written notice of its objection to counsel for the claiming party or nonparty. Challenge to a claim made under Section 2(b) may be made either upon the record of the deposition or as provided in the preceding sentence.

    b. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information.

    c. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

4. Use of Confidential Material Limited.

    a. Confidential Material shall be treated as confidential and used by counsel in this case solely for the litigation of this case. Except as set forth in Section 6, Confidential Material shall not be revealed without the express written consent of the party claiming same as Confidential Material or upon written order of the Court.

5. Permitted Disclosures.

Confidential Material may be shown, disseminated, or disclosed only to the following persons:

    a. The Court—Any party may disclose and submit CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION to the Court, including all persons employed by the Court. Any CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, and information derived therefrom, which are filed with the Court shall be filed in accordance with the following procedure: Any paper which reflects, contains or includes any material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" subject to this Protective Order must be filed using the Sealed and/or Ex Parte Motion event. The word "Sealed" must appear in the title or caption of any document intended for filing under seal (and any proposed order you believe should be filed under seal if entered by the judge).

    b. Outside Counsel—CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION may be disclosed to outside counsel for the parties in this action, including counsel's employees and outside contractors used to perform clerical functions.

c. Receiving Parties—CONFIDENTIAL INFORMATION may be disclosed (1) to in-house counsel and (2) to other employees of a Receiving Party whose participation in the prosecution or defense of the action is necessary in the good faith assessment of counsel for the Receiving Party. HIGHLY CONFIDENTIAL INFORMATION may be disclosed to two (2) in-house counsel for the Receiving Party whose participation in the prosecution or defense of the action is necessary in the good faith assessment of counsel for the Receiving Party. The parties agree that such in-house counsel shall be identified as such in writing to counsel for the designating party in advance of the disclosure and execute Exhibit A attached to this order in advance of receiving any HIGHLY CONFIDENTIAL INFORMATION to be subject to its terms.

d. Expert Witnesses—CONFIDENTIAL INFORMATION may be disclosed to outside experts retained to work on this action, including employees of such experts and persons providing clerical or support services. The parties agree that such persons shall execute Exhibit A attached hereto in advance of receiving any CONFIDENTIAL INFORMATION to be subject to its terms.

e. Employees And Former Employees Of The Producing Party—CONFIDENTIAL INFORMATION of the Producing Party may be disclosed by the Receiving Party during any deposition in this action or at trial of the action to any employee of the Producing Party or its affiliates and any former employee of the Producing Party or its affiliates who was employed by the Producing Party or its affiliates (1) on the date the document was prepared or dated, or (2) on the dates to which the information relates. Such information may also be disclosed to any attorney representing such person at his or her deposition. The parties agree that such persons shall execute Exhibit A attached hereto in advance of receiving any CONFIDENTIAL INFORMATION to be subject to its terms.

f. Non-parties—CONFIDENTIAL INFORMATION may be disclosed during any deposition in the action or at trial of the actions to a non-party witness (and any attorney representing such person at his or her deposition) so long as the non-party and its attorney execute Exhibit A attached to this order. By way of contrast, HIGHLY CONFIDENTIAL INFORMATION may not be disclosed to non-parties and in the event a non-party becomes a party, HIGHLY CONFIDENTIAL INFORMATION designated may not be provided to non-parties without express permission of the Producing Party.

g. Court Reporters—CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION may be disclosed to court reporters rendering court reporting services for depositions or the trial in the Civil Actions, including the employees of such court reporters.

6. Agreement by Recipients.

a. Before being given access to Confidential Material to persons described in paragraphs 5(c)-(f), the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A.

b. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

7. Nonparty Information

a. The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

8. Retention of Jurisdiction by Court.

a. This Court shall retain jurisdiction to make amendments, modifications, and additions to this Order as the Court may, from time to time, deem appropriate, as well as to resolve any disputes.

9. Clawback of Privileged Discovery Materials

a. *In accordance with Fed. R. Civ. P.* 502(d), the parties agree that the inadvertent or unintentional production of documents or information protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity shall not prejudice the producing party or otherwise constitute a waiver of, or estoppel as to, any applicable claim of privilege or other ground for withholding production in this proceeding or any other proceeding.

b. The receiving party will promptly notify the producing party of any inadvertent or unintentional disclosures it discovers. Upon discovery of any inadvertent or unintentional production of documents or information subject to any privilege or immunity:

1) The receiving party shall return or destroy, at the producing party's request (including in situations where the producing party first discovers the inadvertent or unintentional disclosure), all copies of the protected information, shall destroy all notes or other work product reflecting or relying upon the contents of such inadvertently or unintentionally disclosed material, and shall delete any such inadvertently or unintentionally disclosed material from any eDiscovery, litigation-support, or other database;

2)  In no event will the receiving party use the inadvertently or unintentionally disclosed information in the course of the litigation unless determined by the Court not to be protected information; and

3)  Any dispute between the parties with respect to the privileged or protected status of disclosed information will be handled in the same manner as if the inadvertently or unintentionally disclosed information had been withheld or redacted, and declared as such on a privilege log.

10. Production Not a Waiver.

    a.  The Production of Confidential Material pursuant to this Order is not intended to constitute a waiver of any privilege or right to claim the trade secret or confidential status of the documents, materials, or information produced.

11. Conclusion of Litigation

    a.  Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Highly Confidential Information, and to certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

12. Other Proceedings.

    a.  By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential Information or Highly Confidential Information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

13. Remedies.

    a.  It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

    b.  Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

Alta App.019

Signed this the _____ day of _____, 2021.

**AGREED AS TO FORM:**

/s/ *[Draft]*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR THE DEBTOR

By: /s/ *[Draft]*
JORDAN, LYNCH & CANCIENNE PLLC
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713.955.4028
713.955.9644 Facsimile
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

and

BAKER BOTTS L.L.P.
Jessica B. Pulliam,
Texas Bar No. 24037309
John B. Lawrence
Texas Bar No. 24055825
Kevin Chiu, TX SBN 24109723
kevin.chiu@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone:     214.953.6500
Facsimile:     214.953.6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

/s/  *Eric T. Haitz*
John T. Cox III  (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
Pooja Patel (Tex. Bar No. 24104064)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100,
Dallas, TX 75201
Tel:    214.698.3100
Email: TCox@gibsondunn.com
          ALegrand@gibsondunn.com
          PPatel@gibsondunn.com

*and*

Eric T. Haitz (Texas Bar No. 24101851)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Tel:    346.718.6600
Email: EHaitz@gibsondunn.com

COUNSEL TO GENERAL ELECTRIC
INTERNATIONAL, INC.

-and-

David R. Eastlake, TX SBN 24074165
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:     713.229.1234
Facsimile:     713.229.1522
david.eastlake@bakerbotts.com

COUNSEL FOR ALTA POWER LLC

**APPENDIX A**
**AGREEMENT CONCERNING CONFIDENTIALITY**

I, _____, am employed as _____ by _____.

I hereby certify that:

1. I have read the Protective Order entered in the above-captioned action, and understand its terms.

2. I agree to be bound by the terms of the Protective Order entered in the above-captioned action and agree to use the information provided to me only as explicitly provided in this Protective Order.

3. I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

4. I submit to the jurisdiction of the United States Bankruptcy Court for the Northern District of Texas solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said Court.

5. I make this certification this _____ day of _____, 20__.

_____
SIGNATURE

# Exhibit 2

| | |
|---|---|
| **From:** | Jeb Golinkin |
| **To:** | Patel, Pooja R.; LeGrand, Andrew; Cox, Trey |
| **Cc:** | Michael Cancienne; Pulliam, Jessica; Lawrence, John; Wallace, Kirstie; Kazlow, Jordan |
| **Subject:** | Re: WattStock v. Alta v. GE- GE Documents |
| **Date:** | Tuesday, February 15, 2022 6:59:40 PM |
| **Attachments:** | Alta_Proposed Search Protocol.docx |
| | image001.png |

Pooja,

Yes, the production protocol as amended is fine. You have our consent to file it if that is what you want to do. Alternatively, you can treat this email as a Rule 11 whereby we agree to the amended protocol.

With regard to the protective order: the Court's Model Protective Order protects all of the parties' legitimate interests. Though we appreciate the context you provided on the call, we do not believe there is a compelling reason to deviate from Court's standard protective order in this case. To expedite this process, we are going to go ahead and move for entry of the Court's model protective order. Please let us know whether you are opposed. We will reach out to WattStock's counsel to obtain their position on this as well. Again, we will continue to treat all documents produced as confidential until such time as an order is entered.

Turning to documents: based on our call, I understand that GE did not run search terms on any custodians. Instead, GE simply pulled down some group of custodians' from "Alta Power Project Folders" and then reviewed the documents contained in those folders for responsiveness to our requests for production. This is not acceptable and does not comply with the FRCP.

We have been asking for GE's search protocol for months—specifically including the searches GE ran to identify the universe of potentially responsive documents. Now, after over six months of inquiry, you are telling us that GE is relying not on an ESI search protocol but instead on self-selection by custodians. While the folders you collected probably contain potentially responsive documents, the methodology you have employed is far too narrow. Specifically, this "method" will not capture essential information relevant to many of the subjects addressed by Alta's Amended Petition, including but not limited to:

- GE's relationship with WattStock (Amended Petition Paragraphs 3; 24-28);
- GE's knowledge related to Alta's competitors (*Id.* at Paragraph 37);
- GE's relationship and communications with the entities that were contemplating selling their units to Alta (via WS) (*Id.* at Paragraph 38) and the contents of the database of used LM6000 units (*Id.*);
- GE's communications with third parties about Alta Power (*Id.* at Paragraphs 47-48);
- GE's knowledge related to available units (*Id.* at Paragraph 51);
- GE's knowledge of and communications about the impact of the evolving regulatory framework in Turkey that made Turkish companies eager to get rid of their GE units around 2019 (*Id.* at Paragraph 53);
- GE's communications with the Turkish companies with which it had contractual relationships

around the same time period (*Id.* at Paragraph 54);

- GE's knowledge of demand related to the Ethos Energy package (*Id.* at Paragraphs 65 and 66);
- GE's knowledge related to the condition of the Ethos Energy unit (*Id.* at Paragraph 71);
- GE's knowledge concerning Castleman and WS' communications therewith (*Id.* at Paragraph 79);
- GE's knowledge concerning WS' faltering financial condition (*Id.* at Paragraph 92; 99);
- GE's knowledge related to the market for the Acarsoy and Nuh Cemento units and the true costs associated with these units (*Id.* at Paragraphs 88-89);
- GE's knowledge and relationships related to the Nuh Cemento Units (*Id.* at Paragraph 91);
- GE's knowledge and communications related to Nuh Cemento's termination fee (*Id.* at Paragraph 94); and
- GE's knowledge and communications related to the Bosen unit (*Id.* at Paragraph 95).

These subjects go to the heart of Alta Power's claims against GE, which is why Alta served GE with RFPs directed at all of these subjects. But the methodology GE used to select documents to review will unquestionably not capture most if not all of the communications related to our claims or responsive to our RFPs (*see e.g.* RFP Nos. 1-2, 21-24, 30, 35, 41-59).

Given this reality and my repeated requests for a list of search terms, I am struggling to understand how GE could have ever concluded that not running *any* search terms was an appropriate way of going about searching for responsive documents. GE (and its lawyers) have to know that what GE is doing to select documents to review prior to production is inadequate on many levels. It is become more and more apparent that over the last 18 months GE's goal has been to not respond to basic discovery and GE has no intention of complying with its obligations under the FRCP.

GE's current methodology is not acceptable. In an attempt to remedy this issue, we are providing a proposed search protocol. As you can see, most of the search terms we are asking GE to run are terms we ourselves ran on our own custodians' emails. The few terms that are new are targeted and specific to the various events that may have caused GE's Turkish clients to change their approach to the market (as alleged in our Amended Petition) and the letter GE provided to Deutsche Bank. Finally, the list of custodians in our proposal includes the GE employees we know were involved with the Wattstock relationship based on emails we possess (and have produced). If you know of more employees who were involved, please add them now so we do not have to go through this process again later.

Please let us know whether GE will agree to run these searches across these custodians for the dates listed, and whether GE will withdraw the objections.

If not, we will file a motion to compel promptly. We trust you'll agree that we have long ago satisfied our obligations to confer on this issue.

Thanks,

Jeb

Joseph W. Golinkin II
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Monday, February 14, 2022 at 4:39 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica"
<jessica.pulliam@bakerbotts.com>, "Lawrence, John" <John.Lawrence@bakerbotts.com>,
"Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Thanks, Jeb. GE is fine with removing "Export Controlled" from the list of fields in the ESI protocol.
Are you in agreement with the PO? If so, I will circulate the final versions of both to you and
WattStock's counsel for signatures.

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Monday, February 14, 2022 3:06 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael
Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>;
Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie
<kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

We can agree to add all of the fields you have listed below except for "Export Controlled" to future
productions. If that is acceptable, then we are unopposed to entry of the protocol, though we do not
think it is necessary.

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6557
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>

**Date:** Monday, February 14, 2022 at 1:06 PM

**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>

**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica"
<jessica.pulliam@bakerbotts.com>, "Lawrence, John" <John.Lawrence@bakerbotts.com>,
"Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@bakerbotts.com>

**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

Thanks for the call last Friday. As discussed, we know you're reviewing the draft PO and ESI protocol
that we circulated last week. We also went back to our client and document vendor to see if they
had any issues processing your previous productions (Volumes 1 – 4). They confirmed that Alta's
previous productions were standard format, and there were no issues with loading them. That said,
the productions are missing the metadata fields listed below from our proposed ESI protocol. It is
our understanding that most standard processing tools or review platforms should be able to include
these fields. As long as your vendor can include these missing fields for future productions, I think
that you'll find that the draft ESI protocol does not require additional work on your end but will
standardize the process for all parties. WattStock's counsel has signed off on our drafts. Please let
us know if you have any questions.

| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
|---|---|---|
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| TimeZone | The time zone in which files were standardized during processing (e.g., GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (e.g., <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |

| ConversationIndex | Email thread identification. | Email only. |
|---|---|---|
| Redacted | Denotes if file contains redactions. | All. |
| Confidentiality | Denotes confidentiality designation. | All. |
| Export Controlled | Denotes ECI designation. | All. |

Thanks,

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, February 10, 2022 9:09 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

11cst works. Feel free to circulate an agenda.

Thanks,

Jeb Golinkin
832-250-6567
jgolinkin@jlcfirm.com

Sent from my iPhone

On Feb 10, 2022, at 7:19 PM, Patel, Pooja R. <PPatel@gibsondunn.com> wrote:

Hi Jeb — We think it would make sense to discuss this on a call. Are you available tomorrow between 11am-12pm CT?

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, February 10, 2022 12:56 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica
<jessica.pulliam@bakerbotts.com>; Lawrence, John
<John.Lawrence@bakerbotts.com>; Wallace, Kirstie
<kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

In July of 2021, I began a letter to GE's previous counsel with the following:

> As you know, Alta Power has been attempting to obtain
> basic discovery from GE for over six months. First, Alta
> Power served GE (which was not yet a party to this
> litigation) with a non-party document subpoena. GE
> agreed to produce documents to that subpoena, but
> documents were never produced. As a result, Alta
> Power had to serve GE virtually identical document
> requests after Alta Power joined GE to this case. GE
> responded to those requests over three weeks ago, but
> still has not produced *any* documents to Alta Power. GE
> seems to be attempting to thwart Alta Power attempts

> to move this case forward by engaging in discovery gamesmanship. Again, as we have requested for almost six months, please let us know a date certain when GE will begin producing the documents responsive to Alta Power's Requests for Production. (July 9, 2021 Letter from Golinkin to Fisse).

Shortly thereafter, Gibson Dunn appeared. Nothing changed, so on August 3, 2021, I wrote Andrew:

> Please let me know when we can expect to hear back from you on the issues raised in my June 29 and July 9 letters. Above all, we need to know when GE is going to produce documents. Alta Power has been trying to secure documents from GE for over a year, and GE has owed Alta Power documents for months. A protective order (based largely on the Court's form order) is already in place. There is no basis for GE to continue to withhold documents. (August 3, 2021 Email from Golinkin to Legrand).

In response, we had a call and you claimed you could not produce documents without amending the protective order. We did not oppose your amendments. GE did not produce documents.

Fast forward to 2022. GE still has not produced a single document despite promising to do so on our call. Your suggestion that your representations with respect to GE's production timeline was tied to mediation is particularly frustrating. I was *very* candid with everyone on our call about our need for documents and how that impacted our position with respect to the scheduling order, and I expressly told you that I was willing to agree to less ambitious deadlines because I trusted Andrew that we would be getting documents in two weeks. That's on me—at some point, Charlie Brown should know what Lucy is going to do when he tries to kick the football. But whatever its reasons, GE's failure to produce documents is astounding and seems strategic.

Turning to the substance: your draft of the protective order deviates significantly from the NDTX's model protective order (redline attached). What does your proposed protective order add that you prefer to the model order?

On the protocol, the document you circulated is not what I had in mind nor do we think it is necessary. I was referencing a document—like ours, which is attached—that shows (1) the date range used to gather emails; (2) the custodians searched; and (3) the search terms employed to gather potentially responsive documents for review. I

suggested the parties exchange this information in an email to Andrew in August.

The fact that you continue to promise to produce documents in "GE's possession that relate to the transaction at issue in this litigation" underscores why we need this information from GE. GE's knowledge of the market for used turbines, GE's relationships with customers who owned the turbines that Alta was presented with by WS (and contractual relationships between the parties), and, obviously, GE's relationship with WS (not limited to the "transactions at issue") are at the heart of our claims against GE. Given that reality, your suggestion that you will only be producing documents directly related to the Alta transaction seems to suggest GE is improperly confining the scope of its document search. This is also consistent with GE's failure to withdraw its boilerplate, frivolous objections that—as discussed at length in my August 9, 2021 letter—make it impossible to understand whether GE is complying with its obligations under the Rules. Given all these facts, the parties exchange of protocols along the lines I have described is essential. Our protocol is attached. Please let me know when we can expect yours.

As far as the form of our production, we have and will continue to produce our documents consistent with our obligations under the Federal Rules and in a form with which you will be intimately familiar. We are producing out of Relativity, and our documents will be produced so you can upload yours to a the same or a similar database which will allow you to manipulate, search, and do all the other things we have all come to expect to be able to do with our opponents documents.

Finally—and I think I have referenced this previously—but let me know if you do not already have the documents we produced to WS. If not, I will have our document vendor send them over so you can upload to your document management platform.

As always, we remain happy to discuss on the phone anytime if you think that would help. None of this should be controversial or difficult at this stage.

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image005.jpg>

---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, February 9, 2022 at 9:08 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, Michael Cancienne <mcancienne@jlcfirm.com>, "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>

**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael and Jeb,

Thank you for your emails. While we understand your concern regarding documents productions from GE Power, we never promised to produce documents within 14 days or provided you with a specific deadline for document productions. We discussed producing the documents within a couple of weeks of the parties' stipulating to the scheduling order and with plenty of time to review before mediation. Similarly, as discussed on our last call, we plan to produce the documents and communications in GE's possession that relate to the transaction at issue in this litigation, as specified in GE's response to your discovery requests. We asked you to review our substantial production and let us know if you believe there are other categories of documents that you think you need. You agreed to that plan.

In any event, our client is prepared to start producing documents within 3 business days of the parties agreeing to and filing with the Court a stipulated protective order and ESI protocol. Attached are drafts for your review. We're happy to discuss any revisions you have to either document. We will also send these to WattStock's counsel today.

Thanks,
Pooja

Pooja Patel
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 5:58 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

I can save you some time and your client some money: we will agree to the Northern

District of Texas' Model Protective Order. I have attached a copy to this email. If you want to pull it yourself, you can also find it on the Northern District's website.

You guys are going to do what you are going to do, and I am not going to pretend that there's anything I can do to make you produce documents this week as opposed to next week. But on our call, Andrew gave me his word that we'd see documents within 14 days, and 12 days ago you emailed me that you'd produce documents in the next "couple" of weeks. A couple of weeks have passed and now you are telling me you are hoping to circulate a protective order by the end of the week? Even though the Northern District of Texas has a model protective order?

What about the document search protocol I've requested on numerous occasions? Based on the carefully worded nature of your representations to date, I am anticipating that we are going to have to file a motion to compel unless you provide a protocol that confirms GE did not improperly limit the scope of your document collection. Will you provide that protocol? If so, by when?

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image007.jpg>

---

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Date:** Tuesday, February 8, 2022 at 4:19 PM
**To:** "Patel, Pooja R." <PPatel@gibsondunn.com>, Jeb Golinkin <jgolinkin@jlcfirm.com>, "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

This shouldn't slow down a production, as we will agree to treat all documents as confidential until the court enters the PO. I don't want to wait for several more weeks for this to get done.

Thanks,

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, February 8, 2022 5:17 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

We are working on a draft protective order to circulate to you and Wattstock's
counsel. As discussed on our last call, we will need a protective order in this court
before producing any documents. We aim to circulate a draft by the end of the week
and will begin producing documents shortly after.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 10:49 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Just following up. Will you be making a production this week?

Thanks,

Jeb

--

**Joseph W. Golinkin II**

Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image009.jpg>

---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, January 26, 2022 at 8:43 AM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, "tberghman@munsch.com"
<tberghman@munsch.com>, "david.eastlake@bakerbotts.com"
<david.eastlake@bakerbotts.com>, "Nguyen, An" <anguyen@munsch.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey"
<TCox@gibsondunn.com>, "Haitz, Eric" <EHaitz@gibsondunn.com>, Michael
Cancienne <mcancienne@jlcfirm.com>, "Jessica.pulliam@bakerbotts.com"
<jessica.pulliam@bakerbotts.com>, "Lawrence, John"
<John.Lawrence@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@BakerBotts.com>
**Subject:** RE: WattStock v. Alta - Scheduling Order

Hi Jeb,

As discussed on our call, GE will start producing relevant documents in the next couple
of week. These documents are related to the Alta-WattStock project.

Best,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Wednesday, January 26, 2022 8:03 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; tberghman@munsch.com;
david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey
<TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>; Michael Cancienne
<mcancienne@jlcfirm.com>; Jessica.pulliam@bakerbotts.com; Lawrence, John
<John.Lawrence@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@BakerBotts.com>
**Subject:** RE: WattStock v. Alta - Scheduling Order

[WARNING: External Email]

Dear Pooja,

As we discussed on Monday, our agreement to move some of these deadlines back is subject to my receipt of something, in writing, confirming that GE will make a substantial document production in the next two weeks. It would also be helpful if you provided some guidance about how you went about identifying the universe of documents you guys reviewed (e.g. providing a list of custodians and search terms you used on the front end of your review). I believe I provided the same with regard to our own production previously. If I did not, please let me know and I will send it over.

Please confirm GE's agreement regarding the above.

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image010.jpg>

---

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, January 25, 2022 8:28 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; tberghman@munsch.com; david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>
**Subject:** WattStock v. Alta - Scheduling Order

Thomas and Jeb,

Attached is an updated proposed scheduling order based on our conversation yesterday. Please let us know if you have any comments or changes.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460

PPatel@gibsondunn.com · www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

## Alta Power: Proposed Search Protocol for GE

*Custodians*

- James ("Jim") Canon (james.canon@ge.com)
- Alex Babu (alex.babu@ge.com)
- Lance Herrington (lance.herrington@ge.com)
- Cherrylyn Aranas (cherrylyn.aranas@ge.com)
- Dhaval Amin (dhaval.amin@ge.com)
- Ashley Alston (ashley.alston@ge.com)
- Rachel T. Farr (rachelT.farr@ge.com)
- Daniel D. Hill (daniel.hill@ge.com)
- Rodrigo Puglisi (rodrigo.puglisi@ge.com)
- Esteban Hesse (esteban.hesse@ge.com)
- Michael Whelan (michael.whelan@ge.com)
- Valeriano Bernardi (valeriano.bernardi@ge.com)
- Ron Dahlin (Ron.Dahlin@ge.com)

*Date Range*

January 1, 2018 – October 31, 2020

*Search Terms*

"Alta"

"Laterza"

"WattStock*"

"WS"

"Nuh*"

"Goodlow*"

"GL*"

"LNTP*"

"Limited Notice to Proceed"

"Ethos*"

"Bosen*"

"Acarsoy"

"Ataer*"

"LM6000"

"Backstop"

"Alstom"

"Turkey"

"Ministry of Energy and Natural Resources"

"MENR"

"Electricity Market Regulatory Authority"

"EMRA"

"Energy Exchange Market"

Turkish Electricity Transmission Corporation

"TEİAŞ*"

"TEIAS*"

"EIGM"

"Deutsche*"

"DB"

"Ares"

"EIG"

"ECP"

"GIP"

"GE Capital" AND "Alta*"

"comfort letter*"

Alta App.041

# Exhibit 3

| From: | Jeb Golinkin |
| --- | --- |
| To: | Patel, Pooja R.; Michael Cancienne |
| Cc: | LeGrand, Andrew; Cox, Trey; "Pulliam, Jessica"; "Lawrence, John"; "Wallace, Kirstie"; "Kazlow, Jordan" |
| Subject: | Re: WattStock v. Alta v. GE- GE Documents |
| Date: | Friday, April 29, 2022 10:17:40 AM |
| Attachments: | Search Protocol.docx |
| | image001.png |

Dear Andrew and Pooja,

Thank you for your letter. I am glad we appear to be closing in on an agreement surrounding these long outstanding issues.

With regard to custodians, GE's proposal regarding Ms. Aranas is acceptable. We also agree that Ms. Farr's role seems to have been sufficiently limited that Alta agrees that GE does not need to undertake any additional steps to collect or run searches on her emails specifically.

With regard to Babu and Dahlin, Alta Power believes their emails ought to have been preserved. But since they were not, we understand GE will not be specifically collecting or running search terms on the emails sent and received by these custodians.

Turning to the proposed revisions to the search terms outlined in the chart set out in your April 19, 2022 letter:

- **Rows 6-8:** Alta does not agree to the proposed revisions in lines 6-8. Theoretically, your proposed search should yield the same number of hits but your own numbers suggest it excludes about 3,000 documents when you run the modified search. I agree that is strange, but given the importance of these search terms, we respectfully ask that you go ahead and review the unmodified terms here.
- **Row 10:** Alta Power agrees to withdraw "Alstom" as you propose in line 10 of your chart.
- **Row 11:** Alta Power agrees to narrow "LM6000", but does not agree to the specific search string GE has proposed. Instead, Alta Power asks GE to run: "LM6000" AND (alta* OR Wattstock* OR WS*)
- **Row 12:** Alta Power agrees to narrow "Turkey," but does not agree to the specific search string GE has proposed. Instead, Alta Power asks GE to run: Turk* AND ("LM6000" AND (refurb* OR purchase OR buy OR used OR "fired hours" OR replacement OR "terminat*"))

The remainder of search terms look good.

With regard to Alta Power's searches, I am re-sharing the attached protocol, which shows the custodians, search terms, and date ranges Alta Power employed when it collected the universe of documents it then reviewed for responsiveness to GE's (and WattStock's) Requests for Production. Let me know if you have any additional questions, etc.

Respectfully,

Jeb

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Tuesday, April 19, 2022 at 5:31 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, Michael Cancienne <mcancienne@jlcfirm.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
"'Pulliam, Jessica'" <jessica.pulliam@bakerbotts.com>, "'Lawrence, John'"
<John.Lawrence@bakerbotts.com>, "'Wallace, Kirstie'" <kirstie.wallace@bakerbotts.com>,
"'Kazlow, Jordan'" <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb and Michael,

Please see the attached correspondence regarding our April 8, 2022 meet and confer and GE's
search term proposal. We look forward to hearing from you.

Thanks,
Pooja

**Pooja R. Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Fax +1 214.571.2970
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, April 7, 2022 11:00 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; 'Pulliam,
Jessica' <jessica.pulliam@bakerbotts.com>; 'Lawrence, John' <John.Lawrence@bakerbotts.com>;
'Wallace, Kirstie' <kirstie.wallace@bakerbotts.com>; 'Kazlow, Jordan'
<jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Michael is in depositions. I can do tomorrow afternoon anytime 230 if that works.

-Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Wednesday, April 6, 2022 4:26 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; 'Pulliam, Jessica' <jessica.pulliam@bakerbotts.com>; 'Lawrence, John' <John.Lawrence@bakerbotts.com>; 'Wallace, Kirstie' <kirstie.wallace@bakerbotts.com>; 'Kazlow, Jordan' <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Michael and Jeb – Are you available for a call this Friday? We want to update you on this and discuss possible next steps regarding search terms and searching O365 data.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Patel, Pooja R.
**Sent:** Thursday, March 31, 2022 2:34 PM
**To:** 'Michael Cancienne' <mcancienne@jlcfirm.com>; 'Jeb Golinkin' <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; 'Pulliam, Jessica' <jessica.pulliam@bakerbotts.com>; 'Lawrence, John' <John.Lawrence@bakerbotts.com>; 'Wallace, Kirstie' <kirstie.wallace@bakerbotts.com>; 'Kazlow, Jordan' <jordan.kazlow@bakerbotts.com>

**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael and Jeb – I wanted to let you know that we are still evaluating reasonable ways to search O365 data for the relevant custodians. We expect to have an update for you by the end of the day tomorrow or no later than early next week.

Thanks,

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

---

**From:** Patel, Pooja R.
**Sent:** Tuesday, March 22, 2022 1:42 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael,

Our client is not opposed to conducting reasonable searches of the relevant custodians' O365 email data. It is just trying to find reasonable ways to do so. As I previously mentioned, GE is unable to run search terms within O365 itself. GE is currently investigating alternative options for running search terms on O365 email data, including by first collecting, ingesting, and processing that data, and the costs associated with those alternative options.

As soon as we have a further update, we will email you or schedule a call.

Thanks,

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Sent:** Friday, March 18, 2022 5:06 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Thanks for your email. I continue to not understand why this is a burdensome process for GE. The search for ESI is now fundamental to this type of litigation – so much so that is specifically addressed in the rules. For every company I've ever been involved with, this means searching for documents and not relying on self-selection (which is what GE is doing). Given prior experience, we continue to be confounded by GE's seemingly self-inflected difficulty with producing relevant information. Does GE have to engage in this exercise for each case its involved in?

As to the substance, I still do not understand why GE cannot search before collection for O365 employees. Is this not possible? Below you simply say, "to search email data accurately" GE's arcane process must be done. What does that mean? Parties can simply apply date and search parameters within O365 to search for documents. Parties then take what's located, placed those docs into a review platform where they are de-duped, and are reviewed for responsiveness. Is this not possible in GE's O365 platform? I suspect that it is (especially given the acknowledgment that GE can do it in the second to last paragraph), but GE seems to believe this wont yield accurate results. Why is that? What is the accuracy concern there? And which employees do not have O365? Did they previously have O365 and migrated? Cant we search their previously archived o365 accounts? What platform do they have now?

I'm more confused now than before, unfortunately. Would you be agreeable to a deposition of GE person to talk about this process so we can better understand? If so, when? Sooner is better.

In the meantime, I have no problem with you collecting and processing project-specific folders for the new custodians that have been identified. Of course, these electronic folders will not have any documents discussing the WS/GE relationship, as the folders only relate to the potential Alta transactions and GE's involvement in those specific transactions. And I suspect these documents would be located after a search but if GE prefers to get started with this approach, we have no objection. It remains curious how GE acknowledges that for custodians who didn't use the foldering system, GE can and is willing to "undergo the process of searching the O365 or computer data (if no O365 data exists) for these custodians and is willing to run reasonable search terms across their email files." This is, of course, what we think is appropriate for all custodians and is obviously doable.

Of course, we do not agree that such a process is consistent with GE's obligations under the FRCP, and we reserve all rights related to insisting that GE comply with its obligations.

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Friday, March 18, 2022 4:32 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Michael and Jeb,

I appreciate your patience as we gather more information from our client regarding the cost and burden associated with collecting, ingesting, processing, searching, and reviewing email data. GE confirmed that to search email data accurately, GE would need to pay its providers to collect O365 data from those employees who have O365 cloud data accounts (not all GE employees do), ingest all O365 data, narrow by a date range, and then apply search terms. For search terms hits and families of documents hitting on search terms, GE must pay its vendor to fully process text and metadata and to migrate the data into an industry-standard review database. GE will have to pay a vendor to host all of the data being searched and the emails that hit on search terms for the life of the matter.

As noted above, not all custodians have O365 data available for them based on their position and roles at GE. For those custodians, entire computer images must be collected, processed, and searched. Please note that the full forensic images of the custodians' computers have been or are being made. Their O365 accounts, if such exist, are frozen against deletion of any emails to ensure against any data loss for the duration of this matter.

Alta is essentially asking GE to process O365 and computer images so that data is searchable and can be culled by a date range, host that data, run search terms, and promote any hits to a review platform for our reviewers to manually review again. So either way, we will have to ingest, process, and host all data on a custodian's computer or O365 account before being able to run search terms and narrow by date range. We've asked our client to pull together more specific cost estimates, but they have confirmed that this would cost upward of $100,000. GE's costs to date are significant in its efforts to preserve all data sources, search data, and human review entire project folders of key project custodians without any search term limitations.

The second issue with processing all O365 email data to run search terms across each custodian's entire email account (after narrowing by time period) is that we cannot de-dupe those search results against what we've already collected, reviewed, and produced through our targeted collections. So we would be required to process and re-review the same emails we've already produced to you or have reviewed and are preparing to produce in production volume 003 (and all documents deemed non-responsive or privileged).

Our proposal is that we collect and process project-specific folders for the new custodians you've identified. If a custodian did not save documents and emails related to this transaction in project-specific folders, GE will undergo the process of searching the O365 or computer data (if no O365 data exists) for these custodians and is willing to run reasonable search terms across their email files. If, after reviewing our productions, you find that there are documents you expected to see missing, we are willing to work with you to investigate and identify those documents to the extent that the requests are reasonable.

Please let us know if you'd like to set up a call to discuss. We're happy to discuss any workarounds that you might have and check with our client about those options. We will further update you on costs to date to perform the work already completed as soon as the GE employee in charge of those costs is back in the office early next week.

Thanks,
Pooja
**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Sent:** Tuesday, March 15, 2022 7:06 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Great, thanks for the update. Look forward to hearing from you by end of week.

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)

713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Monday, March 14, 2022 8:24 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael,

We spoke to our client this afternoon, and they are gathering more information on this issue.  We expect to have an update at the end of this week.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Sent:** Thursday, March 10, 2022 5:03 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Hi Pooja – just following-up. Any guidance on the below?  If it's the case that GE cannot search over custodians prior to imaging we can discuss work-arounds.

Thanks,

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)

713.294.0073 (m)

**From:** Michael Cancienne
**Sent:** Wednesday, March 9, 2022 1:09 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Thanks for quick response – my question is why did GE do the first step if it only made it more difficult / expensive to search? That was what it seems like to me.

It would be unusual to have a system that didn't allow searching over the custodians emails prior to imaging.

Thanks again.

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Wednesday, March 9, 2022 1:00 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Michael – The custodians' computers have been forensically imaged, and this raw imaged data cannot be searched without being processed first. The raw data is not in a searchable or readable format prior to processing. Is this what you're asking? If not, can you please clarify?

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201

Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Sent:** Wednesday, March 9, 2022 12:48 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Is the data on the custodian's computers and emails searchable before extraction? Isnt that the easiest way to do this?

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Wednesday, March 9, 2022 12:41 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

Thanks for the call on Monday. We spoke to our client to get a better understanding of the costs associated with running search terms across custodians' computers and emails. The $100,000 estimate we provided includes costs associated with ingesting the imaged data, processing it so that it's searchable, searching documents and promoting to review those that hit on search terms, and producing responsive documents. Our client confirmed that raw, forensically imaged data is not in a searchable or user readable format. GE must pay for a vendor to process the forensic image, extract pst file contents, zip files and other container files, and file level metadata (date created, date sent, recipients, file name, etc.). The vendor also recovers deleted items. This includes materials that may have been deleted in the normal course of business prior to GE's involvement in any formal dispute between Alta and Wattstock.

During the processing, an industry standard "dtIndex' is created (this index is what makes files like .pdf files searchable, and it makes the metadata searchable, as well as other attributes of documents

not otherwise searchable in a regular windows environment). The processing stage also allows for deduplication. At that point the processed data is parsed into the agreed upon date range, ingested into a search engine, and data can be searched accurately for promotion to a review database, reporting, and returning accurate information about hit counts that include families. Files and their families with any search hits within the families are then placed into a database where human review then takes place for responsiveness, confidentiality, privilege, and any other case-specific criterion. GE would have to undergo this expensive and burdensome process before we are able to run searches and place results into a database for human review. For custodians who have saved documents in project-specific folders, this costly process does not make any sense because the results will include the same set of documents, if not a narrower set. In other words, we would be processing and searching these custodians' entire computers and emails only to find that the relevant documents are saved in the project-specific folders we've already identified. Please let us know if you have any questions or would like to discuss on a call.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Friday, March 4, 2022 2:05 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

4 works for us. Thx.

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC

(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography

JL&C

---

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Thursday, March 3, 2022 7:23 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Jeb,

Does 4pm on Monday work for you?  If so, I'll circulate a dial-in.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, March 3, 2022 5:58 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Do you have time for a call tomorrow or Monday for a call?

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>

**Date:** Thursday, March 3, 2022 at 5:01 PM

**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>

**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica"
<jessica.pulliam@bakerbotts.com>, "Lawrence, John" <John.Lawrence@bakerbotts.com>,
"Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@bakerbotts.com>

**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

Our client is willing to use search terms for certain custodians' emails and computer files, but we will
need to work with you regarding the scope of your proposed search terms. For custodians who
saved their documents and communications in project-specific folders, running search terms across
their entire computer and emails will be unduly burdensome and unreasonably expensive. Our
client estimates that your request would require it to process almost 6 to 7 terabytes of data, costing
them more than $100,000 in processing and hosting fees. Accordingly, GE will agree to run search
terms across emails and computer files for custodians who did not save documents and
communications regarding this deal in project-specific folders. As you can see from our first
production, we are producing every relevant, non-privileged document contained in these project
files. GE will be making a second production early next week.

It would be helpful to schedule a meet and confer on Monday if you're available, so we can discuss
our proposal.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201

Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, March 3, 2022 1:05 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael
Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>;
Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie
<kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Have you had a chance to speak with your client about search terms? Please let me know your
position—or if you'd like to have a call—before the end of the week.

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Monday, February 21, 2022 at 9:34 AM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>,
Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica"
<jessica.pulliam@bakerbotts.com>, "Lawrence, John" <john.Lawrence@bakerbotts.com>,
"Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Thanks, Jeb. We will add your signature to the PO and ESI protocol and get them on file. We expect
to start producing documents imminently.

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Monday, February 21, 2022 8:57 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael
Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>;
Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie
<kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

The amended po you circulated is fine.

Jeb Golinkin
832-250-6567
jgolinkin@jlcfirm.com

Sent from my iPhone

On Feb 20, 2022, at 1:39 PM, Patel, Pooja R. <PPatel@gibsondunn.com> wrote:

Jeb,

We understand that Alta does not have in-house counsel, but given the commercially-
sensitive nature of our AEO materials, we would not agree with employees who are not
in-house counsel viewing these documents. GE is fine with having no carve out at all
for in-house counsel or employees when it comes to AEO materials and removing this
sentence in its entirety. I've attached a revised draft PO with the language in this
section reverted back to the language in the model PO. If you approve this version of
the PO, we will circulate a final PO to WattStock for approval.

Our client is reviewing your list of custodians, and we will have more information about
your proposed additional custodians this week. With respect to the documents, we do
not believe Alta has met its meet and confer obligations that are required before
seeking relief from the court. The local rules require an actual conference and an
explanation for why an agreement could not be reached. As stated in our last email,

Paragraph 8 of your markup, you have added a sentence which allows AEO

smaterials to be shared with "two (2) in-house counsel for the receiving party who

are identified as such in writing to counsel for the designating party in advance of

the disclosure." Though we are not opposed to an addition that makes it easier

ofor all of us to communicate and work with our client representatives, Alta's client

rrepresentative is not a lawyer (because Alta is small). Accordingly, as written, this

Header: Alta App.057

we are willing to meet and confer this week, subject to your availability, to see if we can come to some agreement on this.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Friday, February 18, 2022 12:05 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Your modifications to the protective order are fine with one exception. In Paragraph 8 of your markup, you have added a sentence which allows AEO materials to be shared with "two (2) in-house counsel for the receiving party who are identified as such in writing to counsel for the designating party in advance of the disclosure." Though we are not opposed to an addition that makes it easier for all of us to communicate and work with our client representatives, Alta's client representative is not a lawyer (because Alta is small). Accordingly, as written, this proposed change is one sided. If you will agree to revise your proposed addition to state "two (2) *employees* of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, who are identified as such in writing to counsel for the designating party in advance of the disclosure," then we would be ok with the insertion and the protective order (as modified).

We do not think your list of custodians captures the people who will have responsive materials. The list of custodians I provided is not based on interviews, but rather based on my review of what GE employees actually sent and received

emails related to this project. For example, Alex Babu appears in 511 documents in our database of documents (none of which were produced by GE, because GE still has not produced any documents).

As for documents, GE's position continues to confuse us and we'll seek the appropriate relief from the Court.

Respectfully,

Jeb Golinkin

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image004.jpg>

---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Thursday, February 17, 2022 at 4:10 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica" <jessica.pulliam@bakerbotts.com>, "Lawrence, John" <John.Lawrence@bakerbotts.com>, "Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan" <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Jeb,

Because we're not in state court, we believe the final stipulated ESI protocol should be signed by all parties and filed with the Court. The ESI protocol designates confidentiality language based on the protective order, so we will wait to file the ESI protocol until we have a final protective order.

As explained on our call last Friday, we need a more stringent protective order governing the disclosure of confidential and highly confidential documents because of the commercially-sensitive nature of the types of documents we are producing. This includes drawings and blueprints of the various parts and turbines at issue in this case, as well as pricing and customer-specific information. In an effort to compromise and avoid any further delays that would be caused by the parties filing separate motions with the Court, GE is willing to agree to the model N.D. Tex. protective order with a few modifications, which we've included in the attached version in track changes. All we

are asking is to limit the number of people who can view highly confidential documents and require people who view our confidential and highly confidential documents to sign a confidentiality agreement prior to having access to those documents (and clarify the use of confidential materials during depositions). Relatedly, we included instructions on how the parties should handle inadvertent disclosures. These requests regarding confidential materials are typical in cases like this one which involves proprietary technology. *See Aspen Tech., Inc. v. Kunt*, No. 4:10-CV-01127, 2010 WL 11575498, at *3 (S.D. Tex. Oct. 14, 2010) (requiring experts, consultants, document authors and recipients, witnesses, deponents to execute a confidentiality agreement before having access to any confidential or highly confidential documents); *see also Premier Int'l Assocs., LLC v. Apple Computer, Inc.*, No. 2-05CV-506TJW, 2007 WL 7307061, at *3 (E.D. Tex. Sept. 11, 2007) (requiring that any person who is not the attorneys, in-house counsel, paralegals, or clerical employees to sign a confidentiality agreement before accessing confidential documents). If Alta is not amenable to these reasonable modifications, please let us know why. Absent an agreement on this, we will need the Court to weigh in, and GE will not produce any documents until the issue is resolved.

We also explained last week that GE stores its data and documents in the ordinary course of business by project type in project-specific folders. Given the nature of how GE stores its records, we interviewed custodians (listed below) who we reasonably believed might have potentially relevant materials because they worked on this project, and we confirmed where they stored relevant documents and communications. We then forensically collected each custodian's entire computer and ingested their project folders related to this transaction. After pulling all of those folders into our document review platform, we had attorneys manually review **every single document collected** for responsiveness, privilege, and confidentiality. We will review the additional custodians identified in your proposed search protocol and work with our client to investigate whether or not they are likely to have relevant materials. But we are not waiving our right to object to adding the additional custodians that you have proposed.

Custodians:

- James ("Jim") Canon
- Lance Herrington
- Cherrylyn Aranas
- Dhaval Amin
- Daniel D. Hill
- Ashley Young
- Heather Jubber
- Gavin Hall
- Patrick Georges

Given our explanation of how GE stores documents, the substantial burden and costs associated with your proposal (pulling all documents and communications from each custodian for the relevant time period, processing those documents into a searchable format, and then running your overly broad search terms before manually reviewing the document hits) are far outweighed by any potential benefits. We are willing to run your proposed search terms against all of the documents we have collected and

produce responsive documents that hit on your terms. But as explained last week, that will have the effect of narrowing the universe of documents that we had planned to produce to you.

Regarding the "subject areas addressed by Alta's Amended Petition," we disagree with any presumption that GE is required to produce documents based solely on allegations in Alta's Amended Petition. Not only are the "subject areas" you identified broader than your RFPs to GE, they also mischaracterize the claims against GE in Alta's Amended Petition. Moreover, your email does not cite the specific RFPs at issue with respect to any of these "subject areas."

For the RFPs you did list in your email (RFP Nos. 1-2, 21-24, 30, 35, 41-59), we are willing to meet and confer about our responses and objections and submit amended responses and objections based on our conversation. To be clear, we do not believe you have satisfied your obligation to confer in good faith on any or all of the issues you raised in your email. If you intend to comply with that obligation, please let us know when you're available next week for a meet and confer.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 15, 2022 7:00 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Yes, the production protocol as amended is fine. You have our consent to file it if that is what you want to do. Alternatively, you can treat this email as a Rule 11 whereby we agree to the amended protocol.

With regard to the protective order: the Court's Model Protective Order protects all of the parties' legitimate interests. Though we appreciate the context you provided on the call, we do not believe there is a compelling reason to deviate from Court's standard protective order in this case. To expedite this process, we are going to go ahead and move for entry of the Court's model protective order. Please let us know whether you are opposed. We will reach out to WattStock's counsel to obtain their position on this as well. Again, we will continue to treat all documents produced as confidential until such time as an order is entered.

Turning to documents: based on our call, I understand that GE did not run search terms on any custodians. Instead, GE simply pulled down some group of custodians' from "Alta Power Project Folders" and then reviewed the documents contained in those folders for responsiveness to our requests for production. This is not acceptable and does not comply with the FRCP.

We have been asking for GE's search protocol for months—specifically including the searches GE ran to identify the universe of potentially responsive documents. Now, after over six months of inquiry, you are telling us that GE is relying not on an ESI search protocol but instead on self-selection by custodians. While the folders you collected probably contain potentially responsive documents, the methodology you have employed is far too narrow. Specifically, this "method" will not capture essential information relevant to many of the subjects addressed by Alta's Amended Petition, including but not limited to:

- GE's relationship with WattStock (Amended Petition Paragraphs 3; 24-28);
- GE's knowledge related to Alta's competitors (*Id.* at Paragraph 37);
- GE's relationship and communications with the entities that were contemplating selling their units to Alta (via WS) (*Id.* at Paragraph 38) and the contents of the database of used LM6000 units (*Id.*);
- GE's communications with third parties about Alta Power (*Id.* at Paragraphs 47-48);
- GE's knowledge related to available units (*Id.* at Paragraph 51);
- GE's knowledge of and communications about the impact of the evolving regulatory framework in Turkey that made Turkish companies eager to get rid of their GE units around 2019 (*Id.* at Paragraph 53);
- GE's communications with the Turkish companies with which it had contractual relationships around the same time period (*Id.* at Paragraph 54);
- GE's knowledge of demand related to the Ethos Energy package (*Id.* at Paragraphs 65 and 66);
- GE's knowledge related to the condition of the Ethos Energy unit (*Id.* at Paragraph 71);
- GE's knowledge concerning Castleman and WS' communications therewith (*Id.*

at Paragraph 79);

- GE's knowledge concerning WS' faltering financial condition (*Id.* at Paragraph 92; 99);
- GE's knowledge related to the market for the Acarsoy and Nuh Cemento units and the true costs associated with these units (*Id.* at Paragraphs 88-89);
- GE's knowledge and relationships related to the Nuh Cemento Units (*Id.* at Paragraph 91);
- GE's knowledge and communications related to Nuh Cemento's termination fee (*Id.* at Paragraph 94); and
- GE's knowledge and communications related to the Bosen unit (*Id.* at Paragraph 95).

These subjects go to the heart of Alta Power's claims against GE, which is why Alta served GE with RFPs directed at all of these subjects. But the methodology GE used to select documents to review will unquestionably not capture most if not all of the communications related to our claims or responsive to our RFPs (*see e.g.* RFP Nos. 1-2, 21-24, 30, 35, 41-59).

Given this reality and my repeated requests for a list of search terms, I am struggling to understand how GE could have ever concluded that not running *any* search terms was an appropriate way of going about searching for responsive documents. GE (and its lawyers) have to know that what GE is doing to select documents to review prior to production is inadequate on many levels. It is become more and more apparent that over the last 18 months GE's goal has been to not respond to basic discovery and GE has no intention of complying with its obligations under the FRCP.

GE's current methodology is not acceptable. In an attempt to remedy this issue, we are providing a proposed search protocol. As you can see, most of the search terms we are asking GE to run are terms we ourselves ran on our own custodians' emails. The few terms that are new are targeted and specific to the various events that may have caused GE's Turkish clients to change their approach to the market (as alleged in our Amended Petition) and the letter GE provided to Deutsche Bank. Finally, the list of custodians in our proposal includes the GE employees we know were involved with the Wattstock relationship based on emails we possess (and have produced). If you know of more employees who were involved, please add them now so we do not have to go through this process again later.

Please let us know whether GE will agree to run these searches across these custodians for the dates listed, and whether GE will withdraw the objections.

If not, we will file a motion to compel promptly. We trust you'll agree that we have long ago satisfied our obligations to confer on this issue.

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image005.jpg>

---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Monday, February 14, 2022 at 4:39 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey"
<TCox@gibsondunn.com>, Michael Cancienne <mcancienne@jlcfirm.com>,
"Pulliam, Jessica" <jessica.pulliam@bakerbotts.com>, "Lawrence, John"
<John.Lawrence@bakerbotts.com>, "Wallace, Kirstie"
<kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan"
<jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Thanks, Jeb. GE is fine with removing "Export Controlled" from the list of fields in the
ESI protocol. Are you in agreement with the PO? If so, I will circulate the final versions
of both to you and WattStock's counsel for signatures.

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

---

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Monday, February 14, 2022 3:06 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey
<TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam,
Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John
<John.Lawrence@bakerbotts.com>; Wallace, Kirstie
<kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

We can agree to add all of the fields you have listed below except for "Export

Controlled" to future productions. If that is acceptable, then we are unopposed to entry of the protocol, though we do not think it is necessary.

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image006.jpg>

---

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Monday, February 14, 2022 at 1:06 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>, Michael Cancienne <mcancienne@jlcfirm.com>, "Pulliam, Jessica" <jessica.pulliam@bakerbotts.com>, "Lawrence, John" <John.Lawrence@bakerbotts.com>, "Wallace, Kirstie" <kirstie.wallace@bakerbotts.com>, "Kazlow, Jordan" <jordan.kazlow@bakerbotts.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

Thanks for the call last Friday. As discussed, we know you're reviewing the draft PO and ESI protocol that we circulated last week. We also went back to our client and document vendor to see if they had any issues processing your previous productions (Volumes 1 – 4). They confirmed that Alta's previous productions were standard format, and there were no issues with loading them. That said, the productions are missing the metadata fields listed below from our proposed ESI protocol. It is our understanding that most standard processing tools or review platforms should be able to include these fields. As long as your vendor can include these missing fields for future productions, I think that you'll find that the draft ESI protocol does not require additional work on your end but will standardize the process for all parties. WattStock's counsel has signed off on our drafts. Please let us know if you have any questions.

| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
|---|---|---|
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| TimeZone | The time zone in which files were standardized during processing (e.g., GMT). | All. |

| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (e.g., <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
|---|---|---|
| ConversationIndex | Email thread identification. | Email only. |
| Redacted | Denotes if file contains redactions. | All. |
| Confidentiality | Denotes confidentiality designation. | All. |
| Export Controlled | Denotes ECI designation. | All. |

Thanks,

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Thursday, February 10, 2022 9:09 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

11cst works. Feel free to circulate an agenda.

Thanks,

Jeb Golinkin
832-250-6567
jgolinkin@jlcfirm.com

Sent from my iPhone

> On Feb 10, 2022, at 7:19 PM, Patel, Pooja R. <PPatel@gibsondunn.com> wrote:

> Hi Jeb – We think it would make sense to discuss this on a call. Are you available tomorrow between 11am-12pm CT?

> Thanks,
> Pooja

> **Pooja Patel**
> (she/her/hers)
> **GIBSON DUNN**

> Gibson, Dunn & Crutcher LLP
> 2001 Ross Avenue Suite 2100, Dallas, TX 75201
> Tel +1 214.698.3193 • Mobile +1 940.736.8460
> PPatel@gibsondunn.com · www.gibsondunn.com

> **From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
> **Sent:** Thursday, February 10, 2022 12:56 PM
> **To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
> **Cc:** Michael Cancienne <mcancienne@jlcfirm.com>; Pulliam, Jessica <jessica.pulliam@bakerbotts.com>; Lawrence, John <John.Lawrence@bakerbotts.com>; Wallace, Kirstie <kirstie.wallace@bakerbotts.com>; Kazlow, Jordan <jordan.kazlow@bakerbotts.com>
> **Subject:** Re: WattStock v. Alta v. GE- GE Documents

> [WARNING: External Email]

> Pooja,

> In July of 2021, I began a letter to GE's previous counsel with the following:

>> As you know, Alta Power has been attempting to obtain basic discovery from GE for over six months. First, Alta Power served GE (which was not yet a party to

this litigation) with a non-party document subpoena. GE agreed to produce documents to that subpoena, but documents were never produced. As a result, Alta Power had to serve GE virtually identical document requests after Alta Power joined GE to this case. GE responded to those requests over three weeks ago, but still has not produced *any* documents to Alta Power. GE seems to be attempting to thwart Alta Power attempts to move this case forward by engaging in discovery gamesmanship. Again, as we have requested for almost six months, please let us know a date certain when GE will begin producing the documents responsive to Alta Power's Requests for Production. (July 9, 2021 Letter from Golinkin to Fisse).

Shortly thereafter, Gibson Dunn appeared. Nothing changed, so on August 3, 2021, I wrote Andrew:

Please let me know when we can expect to hear back from you on the issues raised in my June 29 and July 9 letters. Above all, we need to know when GE is going to produce documents. Alta Power has been trying to secure documents from GE for over a year, and GE has owed Alta Power documents for months. A protective order (based largely on the Court's form order) is already in place. There is no basis for GE to continue to withhold documents. (August 3, 2021 Email from Golinkin to Legrand).

In response, we had a call and you claimed you could not produce documents without amending the protective order. We did not oppose your amendments. GE did not produce documents.

Fast forward to 2022. GE still has not produced a single document despite promising to do so on our call. Your

suggestion that your representations with respect to GE's production timeline was tied to mediation is particularly frustrating. I was *very* candid with everyone on our call about our need for documents and how that impacted our position with respect to the scheduling order, and I expressly told you that I was willing to agree to less ambitious deadlines because I trusted Andrew that we would be getting documents in two weeks. That's on me —at some point, Charlie Brown should know what Lucy is going to do when he tries to kick the football. But whatever its reasons, GE's failure to produce documents is astounding and seems strategic.

Turning to the substance: your draft of the protective order deviates significantly from the NDTX's model protective order (redline attached). What does your proposed protective order add that you prefer to the model order?

On the protocol, the document you circulated is not what I had in mind nor do we think it is necessary. I was referencing a document—like ours, which is attached—that shows (1) the date range used to gather emails; (2) the custodians searched; and (3) the search terms employed to gather potentially responsive documents for review. I suggested the parties exchange this information in an email to Andrew in August.

The fact that you continue to promise to produce documents in "GE's possession that relate to the transaction at issue in this litigation" underscores why we need this information from GE. GE's knowledge of the market for used turbines, GE's relationships with customers who owned the turbines that Alta was presented with by WS (and contractual relationships between the parties), and, obviously, GE's relationship with WS (not limited to the "transactions at issue") are at the heart of our claims against GE. Given that reality, your suggestion that you will only be producing documents directly related to the Alta transaction seems to suggest GE is improperly confining the scope of its document search. This is also consistent with GE's failure to withdraw its boilerplate, frivolous objections that—as discussed at length in my August 9, 2021 letter— make it impossible to understand whether GE is complying with its obligations under the Rules. Given all these facts, the parties exchange of protocols along the lines I have described is essential. Our protocol is attached. Please let me know when we can expect yours.

As far as the form of our production, we have and will continue to produce our documents consistent with our obligations under the Federal Rules and in a form with which you will be intimately familiar. We are

producing out of Relativity, and our documents will be produced so you can upload yours to a the same or a similar database which will allow you to manipulate, search, and do all the other things we have all come to expect to be able to do with our opponents documents.

Finally—and I think I have referenced this previously—but let me know if you do not already have the documents we produced to WS. If not, I will have our document vendor send them over so you can upload to your document management platform.

As always, we remain happy to discuss on the phone anytime if you think that would help. None of this should be controversial or difficult at this stage.

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image005.jpg>

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, February 9, 2022 at 9:08 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, Michael Cancienne <mcancienne@jlcfirm.com>, "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey" <TCox@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Michael and Jeb,

Thank you for your emails. While we understand your concern regarding documents productions from GE Power, we never promised to produce documents within 14 days or provided you with a specific deadline for document productions. We discussed producing the documents within a couple of weeks of the parties' stipulating to the scheduling order and with plenty of time to review before mediation. Similarly, as discussed on our last call, we plan to produce the documents and communications in GE's possession that relate to the transaction at issue in this litigation, as specified in GE's response to your discovery requests. We asked you to review our substantial production and let us know if you believe there are other categories of documents that you think you need. You agreed to that plan.

In any event, our client is prepared to start producing documents within 3 business days of the parties agreeing to and filing with the Court a stipulated protective order and ESI protocol. Attached are drafts for your review. We're happy to discuss any revisions you have to either document. We will also send these to WattStock's counsel today.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 5:58 PM
**To:** Michael Cancienne <mcancienne@jlcfirm.com>; Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

I can save you some time and your client some money: we will agree to the Northern District of Texas' Model Protective Order. I have attached a copy to this email. If you want to pull it yourself, you can also find it on the Northern District's website.

You guys are going to do what you are going to do, and I am not going to pretend that there's anything I can do to make you produce documents this week as opposed to next week. But on our call, Andrew gave me his word that we'd see documents within 14 days, and 12 days ago you emailed me that you'd produce documents in the next "couple" of weeks. A couple of weeks have passed and now you are telling me you are hoping to circulate a protective order by the end of the week? Even though the Northern District of Texas has a model protective order?

What about the document search protocol I've requested on numerous

occasions? Based on the carefully worded nature of your representations to date, I am anticipating that we are going to have to file a motion to compel unless you provide a protocol that confirms GE did not improperly limit the scope of your document collection. Will you provide that protocol? If so, by when?

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image007.jpg>

**From:** Michael Cancienne <mcancienne@jlcfirm.com>
**Date:** Tuesday, February 8, 2022 at 4:19 PM
**To:** "Patel, Pooja R." <PPatel@gibsondunn.com>, Jeb Golinkin
<jgolinkin@jlcfirm.com>, "LeGrand, Andrew"
<ALeGrand@gibsondunn.com>, "Cox, Trey"
<TCox@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

This shouldn't slow down a production, as we will agree to treat all documents as confidential until the court enters the PO. I don't want to wait for several more weeks for this to get done.

Thanks,

Michael Cancienne
Jordan, Lynch & Cancienne PLLC
713.955.4025 (o)
713.294.0073 (m)

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, February 8, 2022 5:17 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; LeGrand, Andrew
<ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** RE: WattStock v. Alta v. GE- GE Documents

Hi Jeb,

We are working on a draft protective order to circulate to you and Wattstock's counsel. As discussed on our last call, we will need a protective order in this court before producing any documents. We aim to circulate a draft by the end of the week and will begin producing documents shortly after.

Thanks,

Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Tuesday, February 8, 2022 10:49 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>
**Cc:** Michael Cancienne <mcancienne@jlcfirm.com>
**Subject:** Re: WattStock v. Alta v. GE- GE Documents

[WARNING: External Email]

Pooja,

Just following up. Will you be making a production this week?

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image009.jpg>

**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Wednesday, January 26, 2022 at 8:43 AM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>,

"tberghman@munsch.com" <tberghman@munsch.com>,

"david.eastlake@bakerbotts.com"

<david.eastlake@bakerbotts.com>, "Nguyen, An"

<anguyen@munsch.com>

**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>, "Cox, Trey"

<TCox@gibsondunn.com>, "Haitz, Eric" <EHaitz@gibsondunn.com>,

Michael Cancienne <mcancienne@jlcfirm.com>,

"Jessica.pulliam@bakerbotts.com"

<jessica.pulliam@bakerbotts.com>, "Lawrence, John"

<John.Lawrence@bakerbotts.com>, "Kazlow, Jordan"

<jordan.kazlow@BakerBotts.com>

**Subject:** RE: WattStock v. Alta - Scheduling Order

Hi Jeb,

As discussed on our call, GE will start producing relevant documents in the
next couple of week. These documents are related to the Alta-WattStock
project.

Best,
Pooja

**Pooja Patel**
(she/her/hers)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Mobile +1 940.736.8460
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Wednesday, January 26, 2022 8:03 AM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; tberghman@munsch.com;
david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey
<TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>;
Michael Cancienne <mcancienne@jlcfirm.com>;
Jessica.pulliam@bakerbotts.com; Lawrence, John
<John.Lawrence@bakerbotts.com>; Kazlow, Jordan
<jordan.kazlow@BakerBotts.com>
**Subject:** RE: WattStock v. Alta - Scheduling Order

[WARNING: External Email]
Dear Pooja,

As we discussed on Monday, our agreement to move some of these deadlines back is subject to my receipt of something, in writing, confirming that GE will make a substantial document production in the next two weeks. It would also be helpful if you provided some guidance about how you went about identifying the universe of documents you guys reviewed (e.g. providing a list of custodians and search terms you used on the front end of your review). I believe I provided the same with regard to our own production previously. If I did not, please let me know and I will send it over.

Please confirm GE's agreement regarding the above.

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography
<image010.jpg>

**From:** Patel, Pooja R. <PPatel@gibsondunn.com>
**Sent:** Tuesday, January 25, 2022 8:28 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>; tberghman@munsch.com; david.eastlake@bakerbotts.com; Nguyen, An <anguyen@munsch.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Cox, Trey <TCox@gibsondunn.com>; Haitz, Eric <EHaitz@gibsondunn.com>
**Subject:** WattStock v. Alta - Scheduling Order

Thomas and Jeb,

Attached is an updated proposed scheduling order based on our conversation yesterday. Please let us know if you have any comments or changes.

Thanks,
Pooja

**Pooja Patel**
(she/her/hers)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201

Tel +1 214.698.3193 · Mobile +1 940.736.8460
PPatel@gibsondunn.com · www.gibsondunn.com

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information
regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information
regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information
regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information
regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the
sole use of the intended recipient. Any review, disclosure, distribution by
others or forwarding without express permission is strictly prohibited. If it
has been sent to you in error, please reply to advise the sender of the
error and then immediately delete this message.

# WS/Alta: Draft Search Protocol

## *Custodians*

- Matt Laterza
- Robert Perkins
- Bill Phelps
- Travis West

## *Date Range*

January 1, 2018 – June 1, 2020

## *Search Terms*

"Nuh*"

"WattStock*"

"WS"

"Goodlow*"

"GL*"

"LNTP*"

"Limited Notice to Proceed"

"GE*"

"General Electric*"

"Ethos*"

"Bosen*"

"Acarsoy"

"Ataer*"

"LM6000"

"TRUEpackage"

"Backstop"

"Backstop Letter"

"OEM"

"Alstom"

"Turkey"

"Equipment Purchase Agreement"

"EPA"

"Deutsche*"

"DB"

"Ares"

"EIG"

"ECP"

"GIP"

"John Hancock"

"Anchorage Capital"

"Blackstone"

"Arroyo Energy"

"Rockland Capital"

"Starwood Infrastructure"

"IFM Investors"

"ING"

"Blackrock Real Assets Team"

"Prudential"

"Apollo"

"Stonepeak"

"Fortress"

"Nomura"

"GE Capital"

"Macquarie"

"Riverstone"

"Summit Credit"

"MUFG"

"Investec"

"CIT"

"Deutsche Bank"

"BNP Paribas"

"Societe Generale"

# Exhibit 4

**From:** Patel, Pooja R.
**To:** Michael Cancienne; Jeb Golinkin; "Pulliam, Jessica"; "Lawrence, John"; "kirstie.wallace@bakerbotts.com"
**Cc:** LeGrand, Andrew
**Subject:** WattStock v. Alta v. GE - Proposed Search Terms for Alta
**Date:** Thursday, June 23, 2022 4:07:25 PM
**Attachments:** 2022.06.23 GE_s Proposed Search Terms for Alta_105545063_2.DOCX

---

Hi Jeb,

Attached, please find GE's proposal for additional search terms. As discussed during our last meet and confer, will you please run searches to determine volumes and send us the hit count for each proposed term?

Thanks,
Pooja

**Pooja R. Patel**
(she/her)
GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Fax +1 214.571.2970
PPatel@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

GE's Proposed Search Terms to Alta
06.23.2022

|  | **GE's Proposed Terms** |
|---|---|
| 1. | partner* |
| 2. | "memorandum of understanding" |
| 3. | MOU |
| 4. | "not to exceed" OR "not-to-exceed" |
| 5. | "termination fee*" |
| 6. | "competitive pricing" |
| 7. | "Cemento" |
| 8. | "Certified Turbine Power" or "CTP" |
| 9. | "hand-in-hand" OR (hand w/2 hand) |
| 10. | "Pete Watson" OR "Watson" OR (Pete* w/2 Watson) |
| 11. | "LTSA" OR "Long Term Service Agreement*" |
| 12. | waive* w/25 fee* |
| 13. | Castleman* |
| 14. | "authorized service provider" OR (authorized w/3 provider) |
| 15. | "6.5 M*" OR "6,500,000" OR (six w/3 million) OR ("6" w/3 million) |
| 16. | stand w/2 behind |
| 17. | strong w/2 incentive* |
| 18. | principal OR agen* |
| 19. | "step-in" OR (step w/2 in) |
| 20. | negotiat* w/10 (contract OR agreement) |
| 21. | insist* w/10 (Contract OR Agreement) |
| 22. | (breach* OR violat*) w/10 (contract or agreement) |
| 23. | lost w/2 (profit* OR business) or (first w/2 mover) or (miss* w/2 opportunit*) |
| 24. | cancel* w/2 fee* |
| 25. | control* w/10 (relationship OR GE OR Wat%stock) |
| 26. | fraud* OR misrepresent* OR (fals* w/5 info*) or deceive* or deception or lie* or scam or bait w/2 switch or cheat or dishonest* or mislead* or trick* or swindle* |
| 27. | "8.125 M*" OR "8.125" OR "8.1 M*" OR "8,125,000" OR (eight w/3 million) OR ("8" w/3 million) |

| 28. | "1.5 M*" OR "1,500,000" OR (one w/3 million) OR "1" w/3 million) |
|---|---|
| 29. | "EFS" OR "Energy Financial Services" |
| 30. | "Laterza" OR "Matt" w/25 (GE or "general electric" or WS or WattStock) [in body of email only] |
| 31. | "West" OR "Travis" w/25 (GE or "general electric" or WS or WattStock) [in body of email only] |
| 32. | ethos and (condition or quality or status or "run down" or "worn down" or broken w/2 down or dilapidate* or "beat up" or *damage* or uncared w/2 for or excellent or good) |
| 33. | joint w/2 (venture or enterprise) |

# Exhibit 5

| From: | Jeb Golinkin |
|---|---|
| To: | Patel, Pooja R.; Michael Cancienne; "Pulliam, Jessica"; "Lawrence, John"; "kirstie.wallace@bakerbotts.com" |
| Cc: | LeGrand, Andrew |
| Subject: | Re: WattStock v. Alta v. GE - Proposed Search Terms for Alta |
| Date: | Saturday, July 2, 2022 12:12:37 PM |
| Attachments: | Alta Power's First Amended Responses to GE"s 1st RFPs.pdf |
| | GE's AEO Designations.xls |
| | image001.png |

Dear Pooja,

I think there is zero chance that "partner*" by itself is going to yield any even potentially responsive documents that no other search captured. It mostly appears to be bringing up vacation offers and other similar nonsense. But, in the spirit of compromise, we will go ahead and review them. Hopefully you will keep this in mind when you read next the next paragraph...

GE has marked a little over 21% (465/2164) of the documents it has produced to date AEO (spreadsheet of so designated docs attached). Very, very few of these documents even plausibly satisfies the criteria necessary to warrant this designation. Is GE will take another look at these documents and tell me which of these it *actually* satisfies this criteria for AEO? I believe if you do take another look, you will realize most of these can be lowered to "Confidential" without thinking twice. If you can agree to do that, I suspect we can probably agree on whatever is left over. Otherwise, we are going to go ahead and challenge all of the AEO designations and take this issue to the Court.

Finally, as you and Andrew requested, I have amended our responses to confirm our discussion about the impact of our objections on our responses, etc.

Thanks,

Jeb

--

**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>
**Date:** Friday, July 1, 2022 at 3:09 PM
**To:** Jeb Golinkin <jgolinkin@jlcfirm.com>, Michael Cancienne <mcancienne@jlcfirm.com>,
"'Pulliam, Jessica'" <jessica.pulliam@bakerbotts.com>, "'Lawrence, John'"
<John.Lawrence@bakerbotts.com>, "'kirstie.wallace@bakerbotts.com'"
<kirstie.wallace@bakerbotts.com>

**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>
**Subject:** RE: WattStock v. Alta v. GE - Proposed Search Terms for Alta

Thanks, Jeb. We appreciate you sending us the total hit counts for the additional documents. While we understand your request, we think some of these documents will be responsive to RFP 43. GE is entitled to discovery regarding Alta's use of the term "partner" because of Alta's claims against GE. Accordingly, GE does not agree to strike that term. Please confirm that Alta will agree to review the 5,959 new documents.

Thanks,

Pooja

**Pooja R. Patel**
(she/her)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Fax +1 214.571.2970
PPatel@gibsondunn.com • www.gibsondunn.com

**From:** Jeb Golinkin <jgolinkin@jlcfirm.com>
**Sent:** Friday, July 1, 2022 1:34 PM
**To:** Patel, Pooja R. <PPatel@gibsondunn.com>; Michael Cancienne <mcancienne@jlcfirm.com>;
'Pulliam, Jessica' <jessica.pulliam@bakerbotts.com>; 'Lawrence, John'
<John.Lawrence@bakerbotts.com>; 'kirstie.wallace@bakerbotts.com'
<kirstie.wallace@bakerbotts.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Subject:** Re: WattStock v. Alta v. GE - Proposed Search Terms for Alta

[WARNING: External Email]

Pooja,

Overall, running these search terms would require the review of an additional 5,959 new (e.g. documents that have never been reviewed before) documents. But 1,792 of these documents are hits on "partner*" (and nothing else). If GE will agree to strike that term, Alta will review the remaining 4,167 documents. Is that agreeable?

Thanks,

Jeb

--
**Joseph W. Golinkin II**
Trial Attorney | Jordan, Lynch & Cancienne PLLC
(o) 713-955-4019 | (c) 832-250-6567
1980 Post Oak Blvd., Suite 2300 Houston, Texas 77056
www.jlcfirm.com | Attorney Biography



**From:** "Patel, Pooja R." <PPatel@gibsondunn.com>

**Date:** Thursday, June 23, 2022 at 4:07 PM

**To:** Michael Cancienne <mcancienne@jlcfirm.com>, Jeb Golinkin <jgolinkin@jlcfirm.com>, "'Pulliam, Jessica'" <jessica.pulliam@bakerbotts.com>, "'Lawrence, John'" <John.Lawrence@bakerbotts.com>, "'kirstie.wallace@bakerbotts.com'" <kirstie.wallace@bakerbotts.com>

**Cc:** "LeGrand, Andrew" <ALeGrand@gibsondunn.com>

**Subject:** WattStock v. Alta v. GE - Proposed Search Terms for Alta

Hi Jeb,

Attached, please find GE's proposal for additional search terms. As discussed during our last meet and confer, will you please run searches to determine volumes and send us the hit count for each proposed term?

Thanks,
Pooja

**Pooja R. Patel**
(she/her)
**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3193 • Fax +1 214.571.2970
PPatel@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# **Exhibit 6**

# UNITED STATES BANKRUPTCY COURT

_____ NORTHERN _____     District of _____ TEXAS _____

In re WattStock, LLC
_____
                Debtor

(Complete if issued in an adversary proceeding)

WattStock, LLC
_____
                Plaintiff
                    v.
Alta Power LLC
_____
                Defendant

Case No. 21-31488-sgj11-V

Chapter  11

Adv. Proc. No.  21-3083

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Castleman Power Development LLC
_____
                    (Name of person to whom the subpoena is directed)

☐ Testimony YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| Gibson, Dunn, & Crutcher, LLP, 811 Main St., Suite 3000, Houston, TX 77002 | 10/03/2022    9:00 am |

The deposition will be recorded by this method:
    Stenographic means and video

☐ Production  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
Set forth in Schedule A.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  8/ ☐ /2022

                CLERK OF COURT

                                                    OR    _____
        _____                   Attorney's signature
        Signature of Clerk or Deputy Clerk

The name, address, email address, and telephone number of the attorney representing (name of party)
General Electric International, Inc _____ , who issues or requests this subpoena, are:
Andrew LeGrand, 2001 Ross Ave. Suite 2100, Dallas, TX, 75201; alegrand@gibsondunn.com; 214.698.3405

                Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for (name of individual and title, if any)_____

on (date)_____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ (date) _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c)(d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of compliance.

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) For Other Discovery. A subpoena may command:

(A) production of documents, electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction ö which may include lost earnings and reasonable attorney's fees ön a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises ör to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt. The court for the district where compliance is required and also, after a motion is transferred, the issuing court, may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

The words and phrases used herein shall have the meanings ascribed to them by the Federal Rules of Civil Procedure and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas. In addition, the following terms shall have the meanings set forth below:

1.     "COMMUNICATION(S)," "COMMUNICATE," and "COMMUNICATED" mean the transmittal or conveyance of information by any means whatsoever.

2.     "THIRD-PARTY PLAINTIFF," "ALTA," or any variant thereof means Alta Power LLC, and includes its past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of ALTA.

3.     "WATTSTOCK" means WattStock, LLC, and includes its past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of WATTSTOCK.

4.     "RELATING TO," "RELATE TO," or "RELATED TO" means referring to, commenting on, regarding, discussing, describing, mentioning, reflecting, pertaining to, concerning, contradicting, constituting, supporting, proving, forming the basis for, undermining, or otherwise relating to in any manner.

5.     "GE" means Third-Party Defendant General Electric International, Inc., and includes past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of GE.

6.     "DOCUMENT" and "DOCUMENTS" have the broadest meaning under the Federal Rules of Civil Procedure, including, without limitation, the original and any non-identical copy (which is different from the original or any copy because of notations or attachments, or otherwise) of any written, printed, typewritten, handwritten, recorded, tape-recorded, videotaped, computer-generated, graphic, photographic, or other tangible matter or material from whatever source (however produced, reproduced, or recorded), including, without limitation, all of the following: correspondence, electronic mail, instant messages, text messages, drafts, notes, telegraphs, facsimiles, memoranda, contracts (including all drafts and changes), calendars, reports, studies, diaries, time-slips, log books, daybooks, work schedules, pamphlets, charts, maps, plans, drawings, tabulations, calculations, financial records, bank records, schedules, spreadsheets, tax returns, audit reports, invoices, drafts, workpapers, work sheets, books, computer printouts, computer cards, computer tapes, computer diskettes, e-mail, other similar or dissimilar repositories of computer-generated, computer-compiled, or computer-maintained information, minutes and minute books (of any meeting of any person(s), committee(s), or board(s)), statements, checks, receipts, administrative regulations, journals and authoritative texts, statistical or information accumulations or summaries, files, photographs, microfilm or mechanical reproductions, attachments, enclosures, and other materials related to any of the foregoing. "DOCUMENTS"

shall include documents received from Defendants.

7.     "YOU," "YOUR," "Castleman," or any variant thereof, means Castleman Power Development LLC, and includes its past and present directors, officers, agents, predecessors, successors, attorneys, members, general partners, limited partners, and employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of YOU.

8.     "LAWSUIT" means the case styled as *Wattstock, LLC v. Alta Power LLC*, Case No. 21-cv-31488-sgj11V, which has been removed to the United States Bankruptcy Court for the Northern District of Texas.

9.     "THIRD-PARTY PETITION" means the Alta's First Amended Answer and Counterclaim and Original Third-Party Petition filed in this LAWSUIT on February 24, 2021, a copy of which is attached as Exhibit 1.

10.    "FINANCING" means the process of providing funds for business activities, making purchases, or investing. It includes providing capital to businesses to help them achieve their goals.

11.    "HART" means Roy Hart, who was ALTA's Chief Development Officer in 2019 and who had performed contract work for YOU before his employment with ALTA. HART's personal email at the relevant time was royhart@rocketmail.com.

12.    "WEST" means Travis West, who was ALTA's Chief Operating Officer in 2019 and who had performed contract work for YOU before his employment with ALTA. WEST's personal email during the relevant time was twest44@earthlink.net.

13.    "DEUTSCHE BANK" means Deutsche Bank AG or any of its American subsidiaries, and includes past and present directors, officers, agents, predecessors, successors,

3

THIRD-PARTY DEFENDANT GENERAL ELECTRIC INTERNATIONAL, INC.'S DEPOSITION NOTICE TO CASTLEMAN POWER DEVELOPMENT LLC – SCHEDULE A

assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of DEUTSCHE BANK.

14.    Any reference to an individual person, either singularly or as part of a defined group, includes that person's past and present agents, legal representatives, non-legal representatives, personal representatives, attorneys, employees, heirs, successors, and assigns, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such individual person.

15.    Any reference to a non-natural person includes that person's past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such non-natural person.

16.    "ALL" and "ANY," whenever used separately, mean "any and all."

17.    "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

18.    The singular includes the plural and vice versa, and the masculine gender includes the feminine and vice versa.

19.    "THE" shall not be construed as limiting the scope of any Request.

20.    All other terms are to be interpreted under their normal usage.

21.    "INCLUDING" means including but not limited to.

## INSTRUCTIONS

1.      Notwithstanding any definition set forth above, each word, term, or phrase used in these Requests shall be construed to have the broadest meaning permitted under the Federal Rules of Civil Procedure and to provide for the broadest permissible discovery consistent with the context of a Request.

2.      This Request calls for the production of all of the materials requested below that are in YOUR possession, custody, or control, as well as any person acting on YOUR behalf, including, but not limited to, attorneys, agents, advisors, investigators, representatives, employees, or other persons acting on YOUR behalf, regardless of location.

3.      If YOU cannot fully respond to any Request, respond to the extent possible and explain (a) what information YOU refuse to produce or provide or cannot produce or provide and (b) why full compliance is not possible.

4.      If in answering these Requests YOU claim that any Request, definition, or applicable instruction is ambiguous, YOU should not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language YOU claim is ambiguous and the interpretation YOU used to respond to the individual Request.

5.      If YOU object to any Request in whole or in part, YOU shall state with specificity the legal and factual basis for the objection and the extent to which YOU are not complying with the Request.  Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to be waived.

6.      Each Request seeks production of DOCUMENTS or COMMUNICATIONS in their entirety, without abbreviation, modification, or redaction, including all attachments, enclosures, and materials affixed thereto.  DOCUMENTS or COMMUNICATIONS attached to

each other, including by staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information concerning the source and/or location of the DOCUMENTS or COMMUNICATIONS.

7.      Draft or non-identical copies are to be considered separate DOCUMENTS or COMMUNICATIONS for purposes of these Requests. All drafts and copies of each DOCUMENT or COMMUNICATION that are responsive to any DOCUMENT Request shall be produced, as shall all copies of such DOCUMENTS or COMMUNICATIONS that are not identical in any respect, including copies containing any handwritten notes, notations, stamps, highlightings, underlinings, interlineations, or any other markings. The author(s) of all handwritten notes should be identified.

8.      Versions of DOCUMENTS or COMMUNICATIONS created in different languages shall be considered separate DOCUMENTS or COMMUNICATIONS.

9.      If any DOCUMENT or COMMUNICATION referred to, or relied upon, in any answer to any Request, was, but is no longer, in YOUR possession, custody, or control, or in existence, YOU must state whether it: (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or involuntarily, to others; and/or (4) otherwise disposed of.

10.     In each instance when, as described in the preceding paragraph, a DOCUMENT or COMMUNICATION was, but no longer is, in YOUR possession, custody, control or in existence, YOU must in each instance state: the type of DOCUMENT or COMMUNICATION; its date and author; a brief summary of its contents, the date or approximate date it was lost, destroyed, transferred, and/or otherwise disposed of; the identity of all PERSONS authorizing or having

knowledge of the circumstances surrounding the disposal of the DOCUMENT or COMMUNICATION; and the identity of all PERSONS having knowledge of the contents thereof.

11. When DOCUMENTS or COMMUNICATIONS responsive to a Request are stored electronically, the DOCUMENTS or COMMUNICATIONS shall be produced in a form compliant with the ESI Protocols set forth in the E-Discovery Order issued in this LAWSUIT on March 3, 2022, *see* Dkt. 34.

12. Non-ESI DOCUMENTS or COMMUNICATIONS shall be scanned, processed with optical character recognition (OCR), and produced in the same manner. DOCUMENTS or COMMUNICATIONS from any single file shall be produced in the same order as they were found in such file. All tabs, labels, folders, envelopes, jackets, or any identification of the source of the DOCUMENTS or COMMUNICATIONS shall also be scanned and produced as part of the DOCUMENTS or COMMUNICATIONS.

13. YOU shall provide color copies of DOCUMENTS or COMMUNICATIONS.

14. If YOU withhold any DOCUMENT(S) or COMMUNICATION(S) or information under a claim of protection or privilege, including the attorney-client privilege or work product doctrine, or any other protection, privilege, or other defense, provide a privilege log with YOUR responses identifying the withheld DOCUMENT(S) or COMMUNICATION(S) or information by date, author, recipients, and subject matter and the basis for withholding the DOCUMENT(S) or COMMUNICATION(S) or information.

15. In the event YOU assert any form of protection or privilege to part of a DOCUMENT(S) or COMMUNICATION(S), redact that portion over which YOU claim a privilege or protection and produce the remainder. Redactions shall be clearly indicated on the

face of the DOCUMENT(S) or COMMUNICATION(S) and included on the privilege log referenced in the preceding Paragraph.

16.     This Request is continuing.     If any responsive DOCUMENT or COMMUNICATION comes to YOUR attention, possession, custody, or control, or the attention, possession, custody, or control of YOUR agents, employees, affiliates, subsidiaries, accountants, partners, members, officers, family members, directors, or attorneys after the filing of YOUR response, YOU are required to furnish such DOCUMENT or COMMUNICATION.

17.     These instructions are submitted for discovery and are not to be taken as waiving any objections that may be made at trial to the introduction of evidence on subjects covered by these Requests or as an admission at the trial of the relevance or materiality of any of the matters covered by these Requests.

18.     Unless otherwise specified in a particular Request, the time period relevant for these Requests is January 1, 2016 to the present, unless otherwise indicated.

### DEPOSITION TOPICS
The designated Rule 30(b)(6) witness or witnesses will be examined regarding the following Topics:

1.     An overview of the services HART and WEST performed for CASTLEMAN.

2.     Any contractual obligations that HART or WEST had to CASTLEMAN relating to confidentiality, non-solicitation, or non-competition.

3.     YOUR knowledge of ALTA's plan to purchase used aeroderivative gas turbines.

4.     YOUR threatened lawsuit against ALTA related to HART and WEST.

5.     The resolution of the dispute YOU and ALTA had related to HART and WEST.

6.     Any plan YOU had to thwart ALTA's plan to obtain financing.

7. An overview of CASTLEMAN's experience with gas-fired peaker plants in Texas from 2018-2021, including CASTLEMAN's experience related to its affiliate entity Agilon Energy Holdings that entered bankruptcy in June 2021.

## DOCUMENT REQUESTS

1. ALL DOCUMENTS reflecting internal COMMUNICATIONS or COMMUNICATIONS between YOU and any of ALTA, HART, WEST, or DEUTSCHE BANK RELATING TO ALTA's dispute with CASTLEMAN referenced in paragraphs 79–80 of the Third-Party Petition. Ex. 1 ¶¶ 79–80. Specifically, GE requests these materials RELATING TO the following: CASTLEMAN's "threat[ ] to file a frivolous 'trade secret' lawsuit against Alta Power to stop" ALTA from receiving financing; ALTA's "work[ ] to quickly resolve the frivolous dispute"; and ALTA's "pay[ment to] Castleman [of] an extortion fee to settle the frivolous claim." Ex. 1 ¶¶ 79–80.

2. ALL DOCUMENTS reflecting any pleadings, motions, transcripts, and mediation statements related RELATING TO ALTA's dispute with CASTLEMAN referenced in paragraphs 79–80 of the Third-Party Petition. Ex. 1 ¶¶ 79–80.

3. ALL DOCUMENTS reflecting COMMUNICATIONS between YOU and DEUTSCHE BANK RELATING TO ALTA's plan to purchase used aeroderivative gas turbines.

4. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any "strategy [CASTLEMAN HAD] of causing delay to destroy financing [for ALTA]" as alleged in paragraph 80 of the Third-Party Petition. Ex. 1 ¶ 80.

5. ALL DOCUMENTS reflecting any contractual obligations that HART or WEST had to YOU relating to confidentiality, non-solicitation, or non-competition.

9

# EXHIBIT 1

CAUSE NO. DC-20-08331

| | |
|---|---|
| WATTSTOCK LLC.<br>*Plaintiff* | IN THE DISTRICT COURT OF |
| v. | |
| ALTA POWER LLC,<br>*Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | DALLAS COUNTY, TEXAS |
| v. | |
| WATTSTOCK LLC<br>*Counter-Defendant, and* | |
| GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES<br>*Third-Party Defendants.* | 116th JUDICIAL DISTRICT |

## ALTA POWER LLC'S FIRST AMENDED ANSWER AND COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION

Alta Power LLC ("Alta Power") files this First Amended Answer and Counterclaim and Original Third-Party Petition against Counter-Defendant WattStock LLC ("WattStock") and Third-Party Defendant General Electric International, Inc., d/b/a GE Power Services ("GE") and would respectfully show as follows:

### I.   SUMMARY OF ACTION

1.     This case is necessitated by repeated misrepresentation made by GE and WattStock to Alta Power concerning GE/WattStock's relationship, capabilities, and program to entice Alta Power to use GE/WattStock as the source of used aeroderivative gas turbines.

2.     Alta Power was created to develop power assets that would provide additional power capacity to the Texas energy grid when the grid was overburdened. As part of

this, Alta Power intended to purchase and place into service used aeroderivative gas turbines (essentially jet engines on skids) that can quickly turn on and off to meet instances where power demand exceeds available power supply. During these periods of excess demand, power prices are highest.

3. GE was eager to participate in the used gas turbine market, a segment in which it historically had no presence. GE, however, did not want to be involved in the work of actually acquiring and selling the used turbines. Instead, GE engaged former GE employees who started WattStock to act as its sales force and point of entry into the used gas turbine market.

4. Starting in 2018, GE and WattStock persuaded Alta Power to purchase used GE aeroderivative gas turbines, marketing the units as both more reliable and cost competitive, similar to the "Certified Pre-Owned Mercedes Benz®" program. Critically, Alta Power relied on GE's and WattStock's representations regarding the nature of the WattStock/GE relationship, the total acquisition cost of used units, and the benefits of GE's "OEM certified program." Ultimately, Alta Power agreed to move forward with WattStock/GE.

5. GE's and WattStock's representations were false and have caused Alta Power to miss opportunities in the marketplace. Instead of the benefits claimed by GE and WattStock, Alta Power put money into potential units that were never going to fit their budgetary requirements because the units were either (1) burdened by undisclosed liabilities related to GE's "Long Term Services Agreements," (2) were prohibitively expensive for refurbishment by GE, or (3) were not available as marketed. Simply put, the acquisition costs and the benefits lauded by GE and WattStock were false.

6. GE and WattStock's breaches of contract and tortious conduct caused Alta Power to lose more than one hundred million dollars of essential financing, profits related to its

business, and millions in payments to GE and WattStock for undelivered equipment and phantom services. After investing millions, Alta Power has nothing to show for what it has paid to GE and WattStock.

## II.   DISCOVERY CONTROL PLAN

7.    Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

## III.   PARTIES

8.    Alta Power is the Defendant in this case originally filed by WattStock, the original Plaintiff and Counter-Defendant. Both Alta Power and WattStock have already appeared.

9.    Third-Party Defendant GE is a company incorporated under the laws of Delaware doing business in Texas and can be served with Citation through its registered agent in Texas, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## IV.   VENUE AND JURISDICTION

10.    This Court has personal jurisdiction over WattStock related to Alta Power's claims as WattStock originally filed this case. This Court has personal jurisdiction over GE because a substantial amount of the acts giving rise to Alta Power's causes of action arose in Texas.

11.    Venue is proper in Dallas County, Texas under Section 15.002 of the Texas Civil Practice & Remedies Code because all, or a substantial part of the events or omissions giving rise to the claims against WattStock and GE, occurred in Dallas County and WattStock's principal place of business is in Dallas County, Texas.

12.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Alta Power seeks monetary relief of more than $1,000,000. Alta Power also seeks pre-judgment and post judgment interest at the highest legal rate.

## V.    GENERAL DENIAL

13.    Alta Power denies all the allegations set forth in WattStock's Original Petition and any subsequent amended petition and demands strict proof thereof as required by the laws of Texas.

## VI.    AFFIRMATIVE DEFENSES

14.    Alta Power asserts the following affirmative defenses:

    a.  WattStock's claims are barred because of WattStock's material breaches of the Master Agreement, the LNTP, and the Ethos Authorization; and

    b.  WattStock's claim for attorneys' fees fails for lack of presentment.

## VII.    FACTUAL ALLEGATIONS

### A.    Alta Power develops a strategy for meeting peak energy demands.

15.    Alta Power was established to provide additional capacity to an overloaded energy grid in a creative and profitable manner.

16.    The market for power in Texas has evolved from traditional gas and coal fired power plants to more renewable sources like wind and solar. In 2019, renewable energy sources accounted for about 11% of total U.S. energy consumption and about 17% of electricity generation. Texas now meets 20% of its sizeable electricity demand with wind power.

17.    As electrical providers move towards renewable power production, there are times when the energy grid has more demand than supply. Aeroderivative gas turbine "peaker plants" have become imperative to meet this imbalance since these plants turn on quickly—in less than 10 minutes.

18.    Pricing for this "peak demand" power is often at a premium and can be sold under long-term contracts with investment grade counterparties. Alta Power determined that

peaker plants could help meet this demand, profitably for Alta Power if Alta Power could acquire aeroderivative gas turbines at a competitive price and locate them appropriately.

19.     Because of the high cost of new aeroderivative gas turbines, Alta Power's strategy relied on acquiring used aeroderivative gas turbines, which was the only way to make the projects work within the required budget.

20.     Developing natural gas-fired peaker projects is a complex process, including (1) identifying areas in the grid where a peaker plant fits (considering gas supply, offtake pricing, and interconnection feasibility); (2) navigating the state and federal regulatory waters of the electrical power market; (3) sourcing used aeroderivative gas turbines that can be purchased and refurbished within budget; and (4) obtaining project financing.

21.     This complexity, along with relatively high entry costs, means that there were only a few companies competing with Alta Power. However, given the limited size of the market, being a first mover was critical.

22.     By April 2018, Alta Power had identified several potential project sites through an extensive vetting process based on prevailing market conditions. Through this work, Alta Power earned a head start on its competitors and found itself with a brief window during which it would be the first mover in this niche market.

23.     At this point Alta Power turned to identifying surplus aeroderivative gas turbines units, which, once contractually secured, would allow it to obtain project financing.

**B.     GE and WattStock's Partnership**

24.     GE is one of the limited suppliers of aeroderivative gas turbines.

25.     GE historically has not had a presence in the sale of used aeroderivative gas turbines but recognized a need to be present in this market at some point prior to 2018. As such,

GE partnered with WattStock, a group of former GE executives. WattStock marketed itself (along with GE) as a fully integrated locator, dealer, refurbisher, and servicer of used aeroderivative gas turbines. WattStock markets itself as a unique solution in the used aeroderivative gas turbines, and as the only authorized distributor of used GE aeroderivative gas turbines.

26.    In reality, GE intended for, and held out WattStock to be, the *de facto* sales force in the used aeroderivative gas turbine market for GE. GE and WattStock work "hand-in-hand" as "partners" to provide the "TRUEPACKAGE™" or Certified Turbine Power—CTP™[1] system, "[t]he only authorized OEM [original equipment manufacturer] certified preowned package offering in the industry."[2]

27.    GE and WattStock entered in a Memorandum of Understanding ("MOU") on June 26, 2018 that "outlines" their relationship. The MOU establishes that GE is in complete control, especially in the context of transactions related to aeroderivative gas turbines originally manufactured by GE.

28.    Consistent with their relationship, GE and WattStock held themselves out publicly and privately as "partners" both orally and in writing.

## C.    GE directs Alta Power to WattStock

29.    In 2018, Alta Power began to determine which used aeroderivative gas turbines would best suit its needs. Availability and total acquisition costs were key drivers in its decision on which aeroderivative gas turbines to select. Because the used aeroderivative gas turbines must be refurbished, acquisition costs necessarily include the costs associated with

---

[1]    GE/WattStock uses the TRUEpackage™ descriptor on GE's Website and CTP™ on WattStock' s website. *See* https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions and https://www.WattStock.com/ctp.

[2]    https://www.ge.com/power/services/aeroderivative-gas-turbines/repowering-solutions.

purchasing the units, the costs of refurbishment, and the costs associated with placing the unit at the location and into service.

30.     After sharing these considerations with GE and WattStock, and after meetings with GE, WattStock and others, Alta Power determined that used GE LM6000 aeroderivative turbine packages were best suited for Alta Power's strategy of tapping into the niche peaker plant market in Texas based on assurances from GE and WattStock.

31.     GE/WattStock were not the only companies that marketed used and refurbished GE LM6000s. Indeed, Alta Power met with several GE "certified" companies that refurbished used aeroderivative gas turbines. None, however, offered a fully OEM-certified and warranted end-to-end product like the TRUEpackage™, which GE/WattStock marketed as their "exclusive" service offering of being the "only authorized OEM certified preowned package offering in the industry."

32.     Alta Power had several meetings with both GE and WattStock personnel mainly at GE's Jacintoport facility where WattStock is co-located. To protect Alta Power's confidential information concerning its unique strategy, the parties entered into a Confidentiality Agreement.

33.     During these meetings, Alta Power disclosed to GE/WattStock the detailed budgetary requirements of Alta Power's business model. Alta Power repeatedly emphasized the cost sensitivity of its projects; that is, the cost of the gas turbine units cannot exceed a certain price point if the project is to remain within budget and financeable. GE and WattStock repeatedly confirmed that used units could be obtained for the prices Alta Power needed.

34.     GE/WattStock also persuaded Alta Power that its exclusive TRUEpackage™ OEM warranty was superior to anything offered in the market because GE would

provide an end-to-end package warranty covering both the aeroderivative gas turbine and the electrical generation components. GE/WattStock further stated that other competitors could only warrant a portion of the package.

35.     During these meetings, GE and WattStock described themselves as "partners." GE made it clear that the only way Alta Power could obtain the TRUEpackage™ equipment certification and warranty was by working with the GE and WattStock partnership.

36.     Specifically, GE refused to provide equipment certifications and warranties without WattStock.

37.     In addition to the pricing and warranties, GE and WattStock knew time was of the essence for Alta Power, as competitors were also attempting to enter the market. GE made it clear that delivery could occur within the time frame required by Alta Power's plans if Alta Power used the GE/WattStock TRUEpackage™ program.

38.     GE/WattStock emphasized that (1) GE had a proprietary global database of used LM6000 units including the operational and maintenance history on each, and (2) only GE and WattStock had access to this "proprietary" database. This "proprietary" data was a key selling point for Alta Power.

39.     GE/WattStock represented that GE and WattStock could efficiently locate used units, generate a detailed refurbishment scope, and cost estimate and streamline the acquisition, refurbishment, and delivery process all within Alta Power's required budget.

**D.     WattStock and Alta Power enter into a "Master Agreement."**

40.     Based on the representations concerning the benefits of the TRUEpackage™ program, including, (1) the benefits from GE and WattStock "collaborating" as "partners;" (2) the ready availability of used units that met Alta Power's project budget; (3) the

ability to timely close purchases and refurbish units; and (4) the "benefits" of the warranty with respect to the overall economics of the project, Alta Power agreed to move forward with GE/WattStock for the acquisition of used GE aeroderivative gas turbines to effectuate Alta Power's unique strategy.

41.     Through their discussions, GE and WattStock were keenly aware of the specific unit price requirements of Alta Power, and GE and WattStock assured Alta Power on multiple occasions that sufficient suitable units were available.

42.     The parties began negotiating financial and contractual terms for the relationship in February 2019. At GE's insistence, Alta Power contracted directly with WattStock. GE/WattStock required that WattStock (with GE standing behind it) negotiate the purchase price of each used GE aeroderivative unit with the prior owner and acquire the unit in WattStock's name for an agreed not to exceed price. GE/WattStock presented Alta Power with detailed total cost estimates for each unit showing that if each unit identified could be acquired at or below the "not to exceed price," then the fully refurbished unit could be delivered within Alta Power's budgetary requirements.

43.     The parties also agreed that in the event Alta Power paid any amounts prior to the units being acquired, those interim payments would be credited towards the purchase price Alta Power ultimately agreed to pay.

44.     GE and WattStock caused Alta Power to believe that GE's involvement would insulate Alta Power from any concerns related to the financial viability of WattStock since GE is one of the largest companies in the world. GE and WattStock caused Alta Power to believe that WattStock had the financial resources to pay for the units or complete the necessary steps leading to GE's certification under the TRUEpackage™ OEM program.

45.     On February 27, 2019 WattStock and Alta Power entered into a "Master Agreement" confirming the negotiations concerning how WattStock would be reimbursed for out-of-pocket expenses and as part of a negotiated purchase price after WattStock purchased and refurbished the used units. At no point was WattStock to be paid any mark-up on "down payments" made by Alta Power or on any out-of-pocket expenses for which Alta Power reimbursed WattStock.

46.     While not a named party to the Master Agreement, GE is an "affiliate" or "representative" of WattStock and, therefore, a party to the Master Agreement.

47.     In the Master Agreement, Alta Power and GE and WattStock agreed to a very strict confidentiality provision. GE/WattStock agreed to hold confidential information in "strict confidence" and agreed such information would "not be disclosed in any manner whatsoever." The Master Agreement also contains an exclusivity and non-circumvention provision under which WattStock (and by extension, GE) agreed that neither WattStock nor GE would directly or indirectly cause another person to either attempt to or purchase a unit inspected on behalf of Alta Power (a service for which Alta Power paid).

48.     Additionally, the confidentiality provision required WattStock and GE not to use any information obtained for any other purpose other than the agreed "business purpose," including but not limited to, providing any product or service, or establishing a relationship that is competitive with or against the best interest of Alta Power.

49.     Under the "Master Agreement," the parties also agreed that Alta Power would reimburse WattStock for specific out-of-pocket expenses incurred in arranging inspection and evaluation of the condition of used aeroderivative gas turbines, with prior written approval needed for expenditures more than $20,000.

## E.    WattStock and GE's misrepresentations continue.

50.    Fully cognizant of the pricing sensitivities of Alta Power's projects, GE/WattStock presented Alta Power with financial information for the acquisition of available units.

51.    The knowledge of the availability of units was largely driven by GE's data. The financial information related to the acquisition of units included WattStock's own estimates based on its "experience" and data from GE based on GE's own data and detailed refurbishment pricing models for each unit.

52.    In February 2019, Pete Watson, WattStock's Vice President of CTP Operations, travelled to Turkey to begin inspections and negotiations on used GE aeroderivative gas turbine units. This was done at Alta Power's expense pursuant to the Master Agreement.

53.    Several used GE aeroderivative units were available in Turkey because changes in Turkish governmental regulations made the units uneconomical in country. In March 2019, WattStock presented Alta Power price and purchase options for nine used GE units based in Turkey.

54.    What WattStock and GE did not tell Alta Power was that the presented prices of the units were not the true prices. All the units GE/WattStock persuaded Alta Power to spend money on were burdened by hidden liabilities. Many of the potential units were significantly more expensive than represented because GE had Long Term Service Agreements ("LTSA") carrying hefty termination fees with the prior owners seeking to sell the used LM6000 aeroderivative gas turbine units. Units not burdened by LTSAs had other material undisclosed liabilities – all of which were driven by internal GE policies.

55. These LTSAs generally required the prior owner pay GE millions of dollars to terminate. GE/WattStock failed to disclose the existence of these LTSA financial burdens to Alta Power up front. In fact, the LTSA termination fees were not disclosed until after (1) the units were targeted, (2) a purchase agreement was executed between the owners and WattStock, and (3) Alta Power paid WattStock millions of dollars in down payments associated with these purchase agreements.

56. It was not until almost nine months after Alta Power had paid the first down payment that Alta Power learned of the existence of the LTSA termination fees. In February 2020, one of the sellers of two units, a Turkish company called Nuh Cemento, began demanding reimbursement for the LTSA termination fees to be paid GE in addition to the agreed upon purchase price. GE ultimately refused to waive the LTSA termination fee unless Alta Power entered into a multi-million dollar service agreement with GE. As a result, the project was burdened by expenses materially above Alta Power's project budgets.

57. GE/WattStock were aware of the undisclosed termination fees before suggesting the Nuh Cemento units be targeted for acquisition. GE/WattStock knew adding the undisclosed termination fees would make the prices of those units higher than Alta Power's project budget. Utilizing a classic "bait and switch move," GE/WattStock deliberately hid the existence of the termination fees in the hope Alta Power would have no choice but to pay them at the 11th hour after Alta Power's project financing had been secured and the projects were already well underway.

58. Prior to learning of the true cost of these units due to the undisclosed associated liabilities, Alta Power, relying on GE and WattStock, moved throughout 2019 and into 2020 attempting to purchase the two Nuh Cemento units.

59.     WattStock also improperly marked up Alta Power's down payment that would have never been made had Alta Power known the true price of the Nuh Cemento units. Per the terms of the Master Agreement, WattStock entered Equipment Purchase Agreements with Nuh Cemento. When WattStock sent an invoice to Alta Power for the $250,000 down-payment, WattStock added a "mark-up" of $125,000. Alta Power refused to pay the "mark-up" since it was inconsistent with the Master Agreement. Recognizing it had no entitlement to these funds, WattStock did not reiterate its demand for payment until litigation between the parties became imminent.

60.     WattStock, GE, and Alta Power identified an additional unit in Turkey owned by a Turkish company called Acarsoy.

61.     As with the Nuh Cemento units, WattStock/GE failed to disclose that the Acarsoy unit was burdened with a multi-million-dollar LTSA termination fee, which was not included in the pricing presented to Alta Power.

62.     Like with Nuh Cemento, Alta Power paid $475,000 in down payments related to this unit, unaware of the true cost of the unit. Alta Power would never have done so had GE/WattStock disclosed the liabilities associated with the unit which rendered it uneconomical for Alta Power's projects.

63.     Once again, WattStock even attempted to mark-up this down payment (as they did with every other payment from Alta Power) despite having no contractual basis to do so. Alta Power rebuffed these attempts, and WattStock recognized it had no basis for payments, and did not request the payments again until just before the filing of its lawsuit against Alta Power.

64.     In addition to units made uneconomical by LTSAs, WattStock also marketed units that were uneconomical for other reasons.

65. In May of 2019, WattStock informed Alta Power of the existence of a package owned by EthosEnergy. WattStock suggested Alta Power purchase the package from EthosEnergy, claiming demand for the package was high. The "package" was essentially the housing for the aeroderivative gas turbine.

66. GE and WattStock represented that Alta Power could obtain a gas turbine engine from the GE lease pool to marry with the EthosEnergy package and claimed a similar housing was available in Panama and could also easily be married with a lease pool engine.

67. GE/WattStock claimed these leased units with the purchased housings would lead to a significantly lower price for Alta Power.

68. Based on these representations, Alta Power purchased the EthosEnergy package for $200,000.

69. When WattStock sent an invoice for this purchase, it marked up the purchase price initially by $175,000 and then later by $115,000.

70. Once again Alta Power refused to pay the mark-up, as there was no contractual basis for such a mark-up. Indeed, the contractual relationship between Alta Power and WattStock contemplated that this package would not be marked up.

71. GE/WattStock also did not disclose that the EthosEnergy unit was in a dilapidated condition and was only suggested as a possibility so that GE/WattStock could increase their revenue stream for providing repairs. Furthermore, several months later when Alta Power inquired about the possibility of cost savings using the previously promised lease pool engines, WattStock and GE informed Alta Power that "that program was no longer being offered."

72. Had GE/WattStock disclosed the true condition of the EthosEnergy unit or the unavailability of the lease pool, Alta Power would not have purchased the Ethos unit at any

price. Furthermore, WattStock still has possession of the EthosEnergy unit, despite having been paid for it.

73.    WattStock convinced Alta Power to make a down payment for a unit owned by a company in Turkey called Bosen. As with all other units, WattStock and GE represented that the delivered unit would be priced consistent with Alta Power's needs.

74.    Alta Power put $300,000 dollars down for the purchase of the Bosen unit. Alta Power was later informed that GE/WattStock would not service units containing non-GE components unless the non-GE components were first replaced—regardless of their condition.

75.    The Bosen unit contained non-GE components and as a result the "new" purchase price including the refurbishment work which was several million dollars higher than previously represented by GE/WattStock and the unit was uneconomical for Alta's projects.

## F.   WattStock scuttles Alta Power's efforts at financing.

76.    Throughout 2019, Alta Power discussed potential financing options for its power project. Alta Power reached out to several sources of funding. In the summer of 2019, Alta Power identified its best source of funding for the purchase of the nine aeroderivative units: Deutsche Bank.

77.    Alta Power engaged in negotiations with Deutsche Bank concerning financing for its unique peaker plant strategy. As part of its due diligence, Deutsche Bank requested a meeting with WattStock. WattStock met with Deutsche Bank and during these meetings, WattStock confirmed that GE and WattStock were "partners."

78.    Of course, Deutsche Bank would rely not solely on WattStock's representation that GE and WattStock were "partners." Accordingly, Deutsche Bank formally asked GE to provide appropriate assurances. On July 31, 2019, GE responded to this request in a

letter confirming that if WattStock failed to meet its contractual obligations, GE would step in since GE and WattStock are partners in this venture. GE also confirmed that GE engineering will be overseeing WattStock's work and that GE has a "strong incentive" for the project to succeed.

79.     Sometime before financing was closed, WattStock disclosed to Ryan Castleman of Castleman Power Development LLC ("Castleman"), one of Alta Power's few competitors, that project financing from Deutsche Bank was imminent. Knowing the financing would decrease the available used units in the marketplace and would allow Alta Power's projects to come online first, Castleman predictably attempted to scuttle Alta Power's financing. Specifically, Castleman threatened to file a frivolous "trade secret" lawsuit against Alta Power to stop the financing.

80.     Alta Power was forced to disclose this frivolous claim to Deutsche Bank. Alta Power worked to quickly resolve the frivolous dispute, and ultimately had no choice but to pay Castleman an extortion fee to settle the frivolous claim. But the damage was already done. Castleman's strategy of causing delay to destroy financing worked.

81.     Deutsche Bank decided against providing financing to Alta Power, delaying Alta Power's ability to bring units into service.

### G.     WattStock steals $100,000 from Alta Power to finance WattStock's operations.

82.     Despite the Deutsche Bank financing falling through, Alta Power remained committed to its unique peaker plant strategy and continued to explore other financing options in the fall of 2019.

83.     By the fall of 2019, GE and WattStock continued to lead Alta Power to believe that the targeted units could be acquired consistent with WattStock and GE's earlier pricing guidance. Because of this, Alta Power continued to fund the potential acquisition of units.

84. In October 2019, Alta Power sent WattStock $100,000 for potential use in extending an option to purchase units from Bosen. During WattStock's negotiations with Bosen, Alta Power ultimately decided not to go through and told WattStock to cease negotiations. WattStock complied and the parties never entered into an agreement extending the option period with Bosen.

85. WattStock never sent Alta Power's $100,000 to Bosen since the negotiations were called off before the $100,000 was used.

86. Alta Power requested the return of the $100,000. WattStock acknowledged the funds would be returned, and repeatedly promised to do so on multiple occasions during the fall and winter of 2019-2020.

87. WattStock broke these promises. Instead, WattStock converted Alta Power's $100,000 and used it to cover serious cash flow issues, which WattStock had previously failed to disclose to Alta Power and did not disclose until May of 2020.

**H.** **WattStock continues to fail to disclose the true costs of units.**

88. Despite the Deutsche Bank financing falling through, Alta Power was still committed to the development of its projects. Consistent with this and based on WattStock's false representations that other buyers were targeting the Turkish units, Alta Power paid WattStock over $200,000 for extensions to keep alive potential deals with Acarsoy and Nuh Cemento in the fall of 2019.

89. At no time did WattStock inform Alta Power that the true costs of these units were inconsistent with WattStock's and GE's representations.

90.     During the fall of 2019, Alta Power considered a variety of funding structures, and decided to finance each project separately, rather than approaching potential lenders with a portfolio of three projects.

91.     Consistent with this, Alta Power and WattStock entered a Limited Notice to Proceed Proposal ("LNTP") on December 23, 2019 for two separate units to be acquired from Nuh Cemento. The total amount of the LNTP was almost $20 million. This included the "not to exceed price" of $6.5 million for WattStock to purchase the units from Nuh Cemento that GE/WattStock told Alta Power will be sufficient to purchase the units, with the balance for transportation, refurbishment, and installation of the units. This price included GE/WattStock's profit margin for the project.

92.     GE and WattStock represented to Alta Power that GE needed to be paid $1,500,000 to secure the purchase of long-lead hardware, start engineering activities and deliver preliminary drawings related to a potential TRUEpackage™ project. The $1,500,000 was divided into two payments of $750,000.

93.     Alta Power paid $750,000 on December 24, 2019 and paid another $750,000 on January 13, 2020.

94.     In February 2020, Alta Power was informed for the first time that the owner of the two Nuh Cemento units would only sell the two units for the agreed not to exceed price of $6.5 million **plus** the cancellation of GE's LTSA termination fee of over $1.4 million.

95.     The impact of the cancellation fee materially increased project costs above the previous budget and impacted Alta Power's ability to obtain financing for the project.

96.     For the units being considered (as with the Bosen unit), the significant liabilities were *not* disclosed until *after* Alta Power made the final payment to GE under the LNTP.

97.    By March 2020, the global economy was in the grips of the COVID-19 crisis. This delay impacted the closing of Alta Power's project financing. Regardless, Alta Power remained financially committed to the project and was ready, willing, and able to go forward with the two Nuh Cemento units under the LNTP.

98.    In the spring of 2020 WattStock informed Alta Power it was having financial issues. WattStock asked Alta Power to either provide a loan or acquire WattStock.

99.    During this time, Alta Power requested that GE step in and fulfill its commitment to Alta Power to assist in securing the units needed for Alta Power's project. GE refused.

100.    Alta Power was ready, willing, and able to go forward with the Nuh Cemento project with GE alone. GE refused to allow Alta to pay directly for the LNTP components, despite repeated requests by Alta Power due to concerns regarding WattStock's financial situation. And GE further refused to step in and take over for WattStock (despite contrary written representations) when Alta Power notified GE that WattStock was insolvent.

101.    Alta Power also continued to negotiate with other sources of funding for the Project, including Riverstone and Macquarie.

102.    Despite Alta Power's effort sand GE's prior representations, GE made it clear, once again, that it would only move forward with WattStock, thereby constructively cancelling the LNTP and the Nuh Cemento project.

103.    Consequently, Alta missed their opportunity to be a first mover in the highly competitive Texas peaking electricity market.

## VIII.    CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT (AGAINSTGE AND WATTSTOCK)

104.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

105.    Alta Power seeks a declaratory judgment pursuant to Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.* Alta Power requests the Court to declare that:

    a. No contractual agreement exists by which WattStock is entitled to "mark-ups" on goods or services.

    b. GE and WattStock are principal/agent or partners such that GE is responsible for WattStock's torts and breaches.

    c. As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the Master Agreement, which excuses Alta Power of any further performance.

    d. As of May 20, 2020, WattStock was insolvent and Alta Power was entitled to terminate the December 23, 2019 LNTP.

    e. GE's refusal to go forward with the Nuh Cemento project once WattStock became insolvent was a breach of the LNTP requiring GE to refund money paid to WattStock/GE by Alta Power.

### COUNT II: RESPONDEAT SUPERIOR (AGAINST GE)

106.    Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein. GE and WattStock represented to Alta Power that they were "partners" and that WattStock acted as GE's Authorized Service Provider.

107.    Alta Power justifiably relied on these representations by GE and WattStock in agreeing to the Master Agreement and the LNTP.

108.    In fact, without the representations, Alta Power would have never entered any contracts with WattStock.

109.    Accordingly, an ostensible agency existed between WattStock and GE.

110. GE is estopped from denying liability for WattStock's breaches and torts and/or GE and WattStock engaged in a joint enterprise for which joint and several liability exists.

111. Despite the fig leaf boiler-plate language in the MOU between GE and WattStock, the language of the MOU shows GE controlled WattStock. Accordingly, the "no partnership or agency" provision is a sham or subterfuge designed to conceal the true legal status of GE/WattStock. Extrinsic evidence also shows actual control by GE over WattStock.

112. GE is *respondeat superior* liable for the breaches and torts of WattStock.

### COUNT III: BREACH OF CONTRACT (AGAINST WATTSTOCK)

113. Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

114. Alta Power and WattStock entered into the Master Agreement, which is and was a valid and enforceable contract. Alta has standing to sue for breach of the Master Agreement.

115. Alta Power performed its obligations under the Master Agreement.

116. WattStock breached the confidentiality provisions of the Master Agreement by disclosing confidential information about Alta Power and its financing to Castleman. WattStock's breach has proximately caused injury to Alta Power. Specifically, WattStock's breach caused Alta Power to lose project financing for its a unique strategy for developing power generation projects in the Texas market.

117. Had WattStock not breached the confidentiality provisions, Alta Power would have closed financing with Deutsche Bank and been able to implement its unique strategy.

118. As a direct result of WattStock's breaches, Alta Power has been severely damaged.

119. Alta Power paid GE/WattStock $1.5 million related to the Nuh Cemento project for GE to acquire long-lead hardware, start engineering activities, and deliver preliminary drawings.

120. The Master Agreement and LNTP were cancelled due to WattStock's insolvency.

121. In addition to its liability under the theory of respondeat superior, GE is also vicariously liable for WattStock's breaches of the Master Agreement and LNTP. Consequently, GE must refund to Alta Power the $1.5 million under the contracts between the parties.

122. To compensate it for the damages outlined above, Alta Power seeks unliquidated damages.

123. Pursuant to Texas Civil Practice and Remedies Code section 38, Alta Power is entitled to attorney's fees, costs, and expenses, due to WattStock's breach of the agreement.

## COUNT IV: UNJUST ENRICHMENT (AGAINST GE)

124. Alta Power incorporates each of the foregoing paragraphs as if fully set forth herein.

125. GE has been unjustly enriched in the amount of $1.5 million to the detriment of Alta Power.

126. Alta Power demands restitution of all amounts GE has been justly enriched.

## COUNT V: CONVERSION (AGAINST WATTSTOCK)

127. Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

128. In October 2019, Alta Power sent WattStock $100,000 to extend an option to purchase units from Bosen.

129.     Alta ultimately declined to extend the option and instructed WattStock to return the $100,000.

130.     Alta repeatedly demanded that WattStock return the $100,000 during the fall and winter of 2019-2020. WattStock refused (and continues to refuse) to return this money, and thereby assumed and exercised dominion and control over Alta's money in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Alta's rights.

## COUNT VI: TEXAS THEFT LIABILITY ACT (AGAINST WATTSTOCK)

131.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

132.     Alta has a possessory right to the $100,000 it paid WattStock.

133.     WattStock misappropriated and enjoyed these monies knowing full well it was not entitled to same.

134.     All of this was done without Alta's consent. WattStock intended to and did in fact deprive Alta of these monies which led Alta to suffer significant financial damages in an amount to be proven at trial, plus court costs and reasonable and necessary attorney's fees as allowed by the TLA.

## COUNT VII: FRAUD (AGAINST GE AND WATTSTOCK)

135.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

136.     GE and WattStock intentionally misrepresented the nature of their relationship to induce Alta Power to contract with GE/WattStock.

137.     GE represented it would "stand behind" WattStock. However, when the time came to do so GE did not.

138. Simply put, the pricing provided by GE and WattStock was intentionally misrepresented and did not include the true cost of acquisition of the units. Alta Power relied on these representations to its detriment.

139. GE had the right under its MOU with WattStock to force WattStock to sell GE any gas turbine purchased pursuant to the TRUEPACKAGE™ program. In effect, GE had the right to push WattStock aside and ensure that any deal was consummated.

140. Yet, when WattStock became insolvent GE refused to "stand behind" WattStock and take the necessary steps to consummate the LNTP with Alta Power and Nuh Cemento.

141. GE/WattStock misrepresented the benefits of the TRUEpackage™ program.

142. GE/WattStock represented that the program would enhance the ability to obtain financing when it did not.

143. GE/WattStock represented that the program would be able to move quickly to service the narrow window Alta Power had for this unique strategy when in fact the GE/WattStock relationship created a bureaucracy that only slowed down projects.

144. GE/WattStock represented that the TRUEpackage™ program was of a superior quality when in fact it was not.

145. GE/WattStock represented that units from the TRUEpackage™ program were competitively priced with alternative refurbished gas turbine solutions when in fact they were not.

146. GE/WattStock hid the existence of undisclosed liabilities on virtually every unit suggested using a classic bait and switch maneuver.

147.     GE/WattStock's misrepresentations were material and false.

148.     Both GE and WattStock knew these representations were false when they made them, or at the very least, these representations were made recklessly and without knowledge of their truth.

149.     These representations were made with the intent that Alta Power act on them.

150.     Alta Power relied on GE and WattStock's representations regarding their relationship.

151.     GE and WattStock's misrepresentations caused Alta Power injury well beyond the minimum jurisdictional limits of the Court.

152.     Alta Power has wasted at least $10 million based on GE/WattStock's misrepresentations.

153.     Had GE/WattStock not misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## COUNT VIII: NEGLIGENT MISREPRESENTATION (AGAINST GE AND WATTSTOCK)

154.     Alta Power incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

155.     Alternatively, each fraudulent misrepresentation made by GE and WattStock were made negligently since GE/WattStock did not exercise reasonable care or competence in obtaining or communicating the information.

156.     Alta Power has wasted at least $10 million based on GE/WattStock's negligent misrepresentations.

157.    Had GE/WattStock not negligently misrepresented the true facts, Alta Power would have been able to successfully serve the niche market and has lost significant revenue as a result.

## IX.    JURY DEMAND

158.    Alta Power requests trial by jury on all contested issues of fact. The requisite jury fee has been paid.

## X.    PRAYER

ACCORDINGLY, Alta Power prays that WattStock and GE be cited to appear and answer and that upon a final trial of this matter, the Court enter a final judgment against WattStock and GE awarding Alta Power the following relief:

a) An award of the full amount of actual damages incurred by Alta Power and caused by the acts and omissions of GE and WattStock;

b) An award of equitable damages, as requested above;

c) An award of exemplary damages;

d) Reasonable and necessary attorneys' fees;

e) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

f) Cost of court; and

g) Such other and further relief, general or special, at law or in equity, to which Alta Power may show itself to be justly entitled.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: /s/ *Michael Cancienne*
    Michael Cancienne
    State Bar No. 24055256
    Kevin Jordan
    State Bar No. 11014800
    Joseph W. ("Jeb") Golinkin II
    State Bar No. 24087596
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713.955.4028
    713.955.9644 Facsimile
    mcancienne@jlcfirm.com
    kjordan@jlcfirm.com
    jgolinkin@jlcfirm.com

**ATTORNEYS FOR DEFENDANT,
COUNTER-PLAINTIFF AND THIRD-
PARTY PLAINTIFF ALTA POWER
LLC**

## CERTIFICATE OF SERVICE

I hereby certified that a true and correct copy of the above pleading was served on all parties through the Court's electronic filing service on the 24th day of February, 2021.

By:    /s/ *Michael Cancienne*
        Michael Cancienne

# **Exhibit 7**

Alta App.130

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__NORTHERN__ District of __TEXAS__

In re  WattStock, LLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

WattStock, LLC
_____
Plaintiff

v.

Alta Power LLC
_____
Defendant

Case No. __21-31488-sgj11-V__

Chapter __11__

Adv. Proc. No. __21-3083__

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Deutsche Bank Securities, Inc.
_____
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Set forth in Schedule A.

| PLACE | DATE AND TIME | |
|---|---|---|
| General Electric Corp, 285 Madison Ave, New York, NY 10017 | 10/14/2022 | 5:00 pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9/27/22

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR  _____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
General Electric International, Inc , who issues or requests this subpoena, are:

James N. Henry, Jr., 1445 Ross Ave. Suite 2400, Dallas, TX, 75202; jhenry@hallettperrin.com; 214.922.4155

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* _____
on *(date)* _____ .

■ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

The words and phrases used herein shall have the meanings ascribed to them by the Federal Rules of Civil Procedure and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas. In addition, the following terms shall have the meanings set forth below:

1.　"COMMUNICATION(S)," "COMMUNICATE," and "COMMUNICATED" mean the transmittal or conveyance of information by any means whatsoever.

2.　"THIRD-PARTY PLAINTIFF," "ALTA," or any variant thereof means Alta Power LLC, and includes its past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of ALTA.

3.　"WATTSTOCK" means WattStock, LLC, and includes its past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of WATTSTOCK.

4.　"RELATING TO," "RELATE TO," or "RELATED TO" means referring to, commenting on, regarding, discussing, describing, mentioning, reflecting, pertaining to, concerning, contradicting, constituting, supporting, proving, forming the basis for, undermining, or otherwise relating to in any manner.

5.      "GE" means Third-Party Defendant General Electric International, Inc., and includes past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, members, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of GE.

6.      "DOCUMENT" and "DOCUMENTS" have the broadest meaning under the Federal Rules of Civil Procedure, including, without limitation, the original and any non-identical copy (which is different from the original or any copy because of notations or attachments, or otherwise) of any written, printed, typewritten, handwritten, recorded, tape-recorded, videotaped, computer-generated, graphic, photographic, or other tangible matter or material from whatever source (however produced, reproduced, or recorded), including, without limitation, all of the following: correspondence, electronic mail, instant messages, text messages, drafts, notes, telegraphs, facsimiles, memoranda, contracts (including all drafts and changes), calendars, reports, studies, diaries, time-slips, log books, daybooks, work schedules, pamphlets, charts, maps, plans, drawings, tabulations, calculations, financial records, bank records, schedules, spreadsheets, tax returns, audit reports, invoices, drafts, workpapers, work sheets, books, computer printouts, computer cards, computer tapes, computer diskettes, e-mail, other similar or dissimilar repositories of computer-generated, computer-compiled, or computer-maintained information, minutes and minute books (of any meeting of any person(s), committee(s), or board(s)), statements, checks, receipts, administrative regulations, journals and authoritative texts, statistical or information accumulations or summaries, files, photographs, microfilm or mechanical reproductions, attachments, enclosures, and other materials related to any of the foregoing. "DOCUMENTS"

shall include documents received from Defendants.

7.      "YOU," "YOUR," "DEUTSCHE BANK," or any variant thereof, means Deutsche Bank Securities, Inc., and includes its past and present directors, officers, agents, predecessors, successors, attorneys, members, general partners, limited partners, parent corporations, subsidiaries, and employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of YOU.

8.      "CASTLEMAN" or any variant thereof, means Castleman Development, LLC, and includes its past and present directors, officers, agents, predecessors, successors, attorneys, members, managers, parent corporations, subsidiaries, and employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of CASTLEMAN.

9.      "ICF" or any variant thereof, means ICF International, Inc., and includes its past and present directors, officers, agents, predecessors, successors, attorneys, shareholders, parent corporations, subsidiaries, and employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of ICF.

10.     "LAWSUIT" means the case styled *Wattstock, LLC v. Alta Power LLC,* Case No. 21-cv-31488-sgj11V, Adversary No. 21-03083-sgj, removed to the United States Bankruptcy Court for the Northern District of Texas.

11.     "FINANCING" means the process of providing funds for business activities, making purchases, or investing. It includes providing capital to businesses to help them achieve their goals.

12.     Any reference to an individual person, either singularly or as part of a defined group, includes that person's past and present agents, legal representatives, non-legal

3

THIRD-PARTY DEFENDANT GENERAL ELECTRIC INTERNATIONAL, INC.'S SUBPOENA DUCES TECUM TO DEUTSCHE BANK SECURITIES, INC. – SCHEDULE A

representatives, personal representatives, attorneys, employees, heirs, successors, and assigns, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such individual person.

13.     Any reference to a non-natural person includes that person's past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such non-natural person.

14.     "ALL" and "ANY," whenever used separately, mean "any and all."

15.     "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

16.     The singular includes the plural and vice versa, and the masculine gender includes the feminine and vice versa.

17.     "THE" shall not be construed as limiting the scope of any Request.

18.     All other terms are to be interpreted in accordance with their normal usage.

## INSTRUCTIONS

1.     Notwithstanding any definition set forth above, each word, term, or phrase used in these Requests shall be construed to have the broadest meaning permitted under the Federal Rules of Civil Procedure and to provide for the broadest permissible discovery consistent with the context of a Request.

2.     This Request calls for the production of all of the materials requested below that are in YOUR possession, custody, or control, as well as any person acting on YOUR behalf,

4

THIRD-PARTY DEFENDANT GENERAL ELECTRIC INTERNATIONAL, INC.'S SUBPOENA DUCES TECUM TO DEUTSCHE BANK SECURITIES, INC. – SCHEDULE A

including, but not limited to, attorneys, agents, advisors, investigators, representatives, employees, or other persons acting on YOUR behalf, regardless of location.

3.       If YOU cannot fully respond to any Request, respond to the extent possible and explain (a) what information YOU refuse to produce or provide or cannot produce or provide and (b) why full compliance is not possible.

4.       If, in answering these Requests, YOU claim that any Request, or a definition or instruction applicable thereto, is ambiguous, YOU should not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language YOU claim is ambiguous and the interpretation YOU used to respond to the individual Request.

5.       In the event that YOU object to any Request herein, or part thereof, YOU shall state with specificity the legal and factual basis for the objection and the extent to which YOU are not complying with the Request. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to be waived.

6.       Each Request seeks production of DOCUMENTS or COMMUNICATIONS in their entirety, without abbreviation, modification, or redaction, including all attachments, enclosures, and materials affixed thereto. DOCUMENTS or COMMUNICATIONS attached to each other, including by staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information concerning the source and/or location of the DOCUMENTS or COMMUNICATIONS.

7.       Draft or non-identical copies are to be considered separate DOCUMENTS or COMMUNICATIONS for purposes of these Requests. All drafts and copies of each DOCUMENT or COMMUNICATION that are responsive to any DOCUMENT Request shall be

produced, as shall all copies of such DOCUMENTS or COMMUNICATIONS that are not identical in any respect, including copies containing any handwritten notes, notations, stamps, highlightings, underlinings, interlineations, or any other markings. The author(s) of all handwritten notes should be identified.

8.  Versions of DOCUMENTS or COMMUNICATIONS created in different languages shall be considered separate DOCUMENTS or COMMUNICATIONS.

9.  If any DOCUMENT or COMMUNICATION referred to, or relied upon, in any answer to any Request, was, but is no longer, in YOUR possession, custody, or control, or in existence, YOU must state whether it: (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or involuntarily, to others; and/or (4) otherwise disposed of.

10. In each instance when, as described in the preceding paragraph, a DOCUMENT or COMMUNICATION was, but no longer is, in YOUR possession, custody, control or in existence, YOU must in each instance state: the type of DOCUMENT or COMMUNICATION; its date and author; a brief summary of its contents, the date or approximate date it was lost, destroyed, transferred, and/or otherwise disposed of; the identity of all PERSONS authorizing or having knowledge of the circumstances surrounding the disposal of the DOCUMENT or COMMUNICATION; and the identity of all PERSONS having knowledge of the contents thereof.

11. When DOCUMENTS or COMMUNICATIONS responsive to a Request are stored electronically, the DOCUMENTS or COMMUNICATIONS shall be produced in a form compliant with the ESI Protocols set forth in the E-Discovery Order issued in this LAWSUIT on March 3, 2022, *see* Dkt. 34.

12. Non-ESI DOCUMENTS or COMMUNICATIONS shall be scanned, processed with optical character recognition (OCR), and produced in the same manner. DOCUMENTS or

6

THIRD-PARTY DEFENDANT GENERAL ELECTRIC INTERNATIONAL, INC.'S SUBPOENA DUCES TECUM TO DEUTSCHE BANK SECURITIES, INC. – SCHEDULE A

COMMUNICATIONS from any single file shall be produced in the same order as they were found in such file. All tabs, labels, folders, envelopes, jackets, or any identification of the source of the DOCUMENTS or COMMUNICATIONS shall also be scanned and produced as part of the DOCUMENTS or COMMUNICATIONS.

13.     YOU shall provide color copies of DOCUMENTS or COMMUNICATIONS.

14.     If YOU withhold any DOCUMENT(S) or COMMUNICATION(S) or information under a claim of protection or privilege, including the attorney-client privilege or work product doctrine, or any other protection, privilege, or other defense, provide a privilege log with YOUR responses identifying the withheld DOCUMENT(S) or COMMUNICATION(S) or information by date, author, recipients, and subject matter and the basis for withholding the DOCUMENT(S) or COMMUNICATION(S) or information.

15.     In the event YOU assert any form of protection or privilege to part of a DOCUMENT(S) or COMMUNICATION(S), redact that portion over which YOU claim a privilege or protection and produce the remainder. Redactions shall be clearly indicated on the face of the DOCUMENT(S) or COMMUNICATION(S) and included on the privilege log referenced in the preceding Paragraph.

16.     This Request is continuing. In the event that any responsive DOCUMENT or COMMUNICATION comes to YOUR attention, possession, custody, or control, or the attention, possession, custody, or control of YOUR agents, employees, affiliates, subsidiaries, accountants, partners, members, officers, family members, directors, or attorneys subsequent to the filing of YOUR response, YOU are required to furnish such DOCUMENT or COMMUNICATION.

17.     These instructions are submitted for the purposes of discovery and are not to be taken as waiving any objections that may be made at trial to the introduction of evidence on

subjects covered by these Requests or as an admission at the trial of the relevance or materiality of any of the matters covered by these Requests.

18.     Unless otherwise specified in a particular Request, the time period relevant for these Requests is January 1, 2017 to the present, unless otherwise indicated.

19.     Please complete and execute the Certificate of Authenticity attached as Exhibit 1 to this Schedule A.

## DEPOSITION TOPICS

The designated Rule 30(b)(6) witness or witnesses will be examined regarding the following Topics:

1.     YOUR assessment and evaluation of ALTA's business model, balance sheet, and risk of default, including, without limitation, all information ALTA provided to YOU regarding its business plans, such as ALTA'S projections of its future profitability and market research it sponsored.

2.     YOUR knowledge of ALTA's request for FINANCING to enter into a transaction with WATTSTOCK, including, without limitation, any discussions, meetings, recommendations, or decisions by YOU in response to ALTA's request.

3.     YOUR assessment of ALTA's ability to meet their financial obligations as they came due.

4.     YOUR knowledge of ALTA's business or operations, including, without limitation, ALTA's plan to purchase used aeroderivative gas turbines or ALTA's plans for project financing from YOU or any other lender.

5.     YOUR knowledge of GE or WATTSTOCK's relationship OR GE's involvement, if any, with the ALTA or WATTSTOCK.

6.     YOUR knowledge of CASTLEMEN's COMMUNICATIONS with YOU about ALTA or any of ALTA's projects and YOUR assessment of the information provided by CASTLEMEN with respect to ALTA or any of ALTA's projects.

7.     YOUR COMMUNICATIONS with CASTLEMAN regarding ALTA or ALTA's projects.

8.     YOUR assessment of CASTLEMAN's allegations in relation to ALTA or ALTA's projects.

9.     YOUR assessment of CASTLEMAN's demands to ALTA in relation to ALTA's projects ALTA's business.

## DOCUMENT REQUESTS

1.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ALTA's request for FINANCING to enter into a transaction with WATTSTOCK, including, without limitation, any discussions, meetings, recommendations, or decisions by YOU in response to ALTA's request.

2.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO the nature of the business or legal relationship between WATTSTOCK and GE.

3.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO WATTSTOCK'S governance structure and ownership, including, without limitation, communications or documents related to WATTSTOCK'S articles of association, corporate structure chart, ultimate beneficial owners, or the names of WATTSTOCK'S directors or senior persons responsible for its operations.

4.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO YOUR evaluation of ALTA's business model, balance sheet, and risk of default, including, without limitation, all information ALTA provided to YOU regarding its business plans.

5.    ALL DOCUMENTS AND COMMUNICATIONS to or from ALTA's Chief Executive Officer Williams Phelps, his ALTA email account, AND/OR his personal email account, including wcp@wcphelps.com, RELATING TO ALTA's business, its request for FINANCING, OR its purported business plans.

6.    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any valuation analysis performed or reviewed by YOU of ALTA's business, business plan, or power peaker plants.

7.    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ALTA's market research on the Texas peaker market OR the Texas energy market AND/OR any analysis by DEUTSCHE BANK of any market research supplied by ALTA RELATING TO ALTA's business plans.

8.    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO meetings involving ALTA and DEUTSCHE BANK.

9.    ALL DOCUMENTS AND COMMUNICATIONS between YOU AND CASTLEMAN RELATING TO ALTA, ALTA's business plans OR power peaker plants, OR CASTLEMAN's allegations RELATING TO ALTA AND/OR ALTA's business plans OR power peaker plants.

10.    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any involvement or potential involvement of GE with respect to ALTA's business plans OR power peaker plants OR WATTSTOCK's business AND/OR YOUR analysis of any such involvement or potential involvement.

11.    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ALTA's slide decks provided to YOU.

12.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any market analysis performed by YOU OR ALTA for any ALTA peaker plant projects, including ALTA's Project Atom.

13.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any creditworthy analysis or guarantees associated with ALTA's business, business plans, AND/OR power peaker plants, OR the "GE/WATTSTOCK Entity."

14.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO the relationship, if any, between GE and WATTSTOCK.

15.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any statements of work, scopes of work, or master services agreements for ALTA's business, business plan, AND/OR power peaker plants, OR WATTSTOCK.

16.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any guarantees by GE of WATTSTOCK.

17.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any other lenders declining to provide FINANCING to ALTA or ceasing discussions with ALTA about FINANCING.

18.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any negotiations between ALTA AND WATTSTOCK.

19.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any negotiations between ALTA AND GE.

20.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any delays with respect to ALTA's peaker plant projects AND/OR Project Atom, AND/OR any impact of those delays.

21. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO WATTSTOCK's underwriting requirements OR any analysis or discussions by DEUTSCHE BANK of any issues RELATING TO WATTSTOCK's underwriting requirements.

22. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO correspondence from GE to ALTA dated July 31, 2019.

23. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any underwriting requirements or potential underwriting requirements for ALTA's Project Atom OR any other ALTA peaker plant project.

24. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any evaluation OR analysis of the impact OR alternatives if WATTSTOCK were to default on any contract with ALTA.

25. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO CASTLEMAN's demand that ALTA cease and desist or in any way limit ALTA's involvement with peaker plants, GE, OR WATTSTOCK.

26. ALL DOCUMENTS AND COMMUNICATIONS between DEUTSCHE BANK and Smyser Kaplan & Veselka OR any other counsel of ALTA RELATING TO any potential litigation or litigation involving ALTA.

27. ALL DOCUMENTS AND COMMUNICATIONS with ALTA or its counsel RELATING TO the merits of CASTLEMAN's trade secret claim or allegations against ALTA.

28. ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any analysis of potential claims OR allegations by CASTLEMAN against ALTA or any ALTA business, business plan, or power peaker plants.

29.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO the reasons for any delays in any FINANCING by DEUTSCHE BANK of any ALTA business, business plan, or power peaker plants.

30.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any request by ALTA to be released from any engagement or agreement with DEUTSCHE BANK.

31.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO any changes in the size or scope of any of ALTA's business, business plan, or power peaker plants OR any FINANCING requested by ALTA for its business, business plan, or power peaker plants.

32.     ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ICF's engagement with ALTA OR ICF's market analysis of ALTA's business, business plan, or peaker plant projects.

33.     ALL DOCUMENTS AND COMMUNICATIONS from DEUTSCHE BANK's investment committee regarding ALTA or its business, business plan, or peaker plant projects.

13

THIRD-PARTY DEFENDANT GENERAL ELECTRIC INTERNATIONAL, INC.'S SUBPOENA DUCES TECUM TO DEUTSCHE BANK SECURITIES, INC. – SCHEDULE A

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE WATTSTOCK, LLC, | § |
| | § |
| Debtor. | § Case No. 21-31488-sgj11V |
| | § |
| | § Chapter 11 |
| WATTSTOCK LLC, | § Subchapter V |
| | § |
| Plaintiff, | § Adv. No. 21-03083-sgj |
| | § |
| v. | § Removed from the District Court of |
| | § Dallas County, Texas, 116ᵗʰ Judicial |
| ALTA POWER LLC, | § District |
| | § |
| Defendant, Counter-Plaintiff, and Third- | § Case No. DC-20-08331 |
| Party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| WATTSTOCK LLC, | § |
| | § |
| Counter-Defendant, and | § |
| | § |
| GENERAL ELECTRIC | § |
| INTERNATIONAL, INC., d/b/a GE | § |
| POWER SERVICES, | § |
| | § |
| Third-Party Defendant. | § |

## CERTIFICATE OF AUTHENTICITY

I, _____, hereby certify that I am the custodian of the records of _____ and have personal knowledge of such records; that the enclosed documents are a true and complete copy of documents in _____'s possession, custody, or control regarding the materials requested in the subpoena issued by General Electric International, Inc. in this matter; that the enclosed documents are kept in the course of a regularly conducted business activity; and that it is the regular practice of _____ to create such records as the enclosed documents.

This _____ day of _____, 2022.

SIGNATURE: _____

PRINTED NAME: _____

TITLE: _____

SWORN AND SUBSCRIBED before me
this _____ day of _____, 2022.


_____
Notary Public for _____ (State)

My commission expires: _____

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WATTSTOCK LLC,

    *Plaintiff/Counter Defendant*,

v.

ALTA POWER LLC,

    *Defendant/Counter Plaintiff*,

v.

GENERAL ELECTRIC INTERNATIONAL
INC., d/b/a GE POWER SERVICES,

    *Third-Party Defendant*.

Case No. 3:21-CV-03183-X

Adv. Proc 21-03083

## DECLARATION OF LEE L. KAPLAN

My name is Lee L. Kaplan, my date of birth is January 26, 1952 and my business address is 717 Texas Avenue, Suite 2800, Houston, TX 77002. I declare under penalty of perjury that the following is true and correct.

1.    I am a founding partner with the firm of Smyser Kaplan & Veselka, LLP ("SKV"). A copy of my biography is available at https://skv.com/team/lee-kaplan/.

2.    In August of 2019, my law firm represented Alta Power in a dispute with Castleman Power ("Castleman").

3.    In August 2019, Castleman Power sent a series of letters to Alta Power LLC ("Alta Power") and two of Alta Power's then employees in which Castleman threatened to sue Alta Power for theft of unspecified trade secrets.

1

4.      Shortly thereafter, Alta Power retained SKV to represent it in connection with Castleman's threatened trade secret litigation. Alta Power also retained Robin Gibbs (of Gibbs Bruns LLP) and Richard Mithoff (of Mithoff Law) to represent it in connection with its dispute with Castleman Power.

5.      On September 6, 2019, Alta Power and Castleman Power entered into a Confidential Settlement Agreement and Mutual Release.

6.      SKV does not presently represent Alta Power in any capacity, and has never represented Alta Power in the above captioned lawsuit.

7.      As I understand it, General Electric ("GE") has served certain requests for production on Alta Power which aim to discover information related to the substance of the Castleman dispute. I understand that GE is asking the Court to order Alta Power to collect and search SKV's email accounts for documents responsive to its requests for production related to the Castleman dispute.

8.      Alta Power does not have possession, custody, or control of SKV's emails.

9.      Any general search of SKV's emails would entail the review of confidential attorney-client communications and attorney work product.

10.     To the extent I corresponded with third parties about Alta Power's dispute with Castleman, I would have forwarded that correspondence to Matthew Laterza and/or William Phelps.

11.     The burden of undertaking the searches proposed by GE would be extraordinary. Were the Court to grant GE's request, SKV would have to review thousands of emails—most of which will involve *other matters* for *other clients*—for

2

responsiveness to GE's requests for production in order to find documents that Alta Power has already produced or are privileged.

EXECUTED in Houston, Texas on the 23rd day of October, 2022.

Lee L. Kaplan

# Exhibit 9

**To:** Jacqueline Elson[jacqueline.elson@db.com]
**Cc:** Kaplan, Lee[lkaplan@skv.com]; Stewart, Jarod[jstewart@skv.com]; Matthew Laterza[mlaterza@altapowerdev.com]
**From:** Keller, Kelley[kkeller@skv.com]
**Sent:** Thur 8/22/2019 12:33:53 PM (UTC-05:00)
**Subject:** RE: DB/SKV Introduction
Cease and Desist Letter.pdf
2019.08.21 Ltr to Gregory.pdf

Jackie,

Attached are the C&D letter and Alta's response.

Please let me know if you need anything further.

Best regards,

Kelley



<div style="float:right">

**Kelley Keller** | Counsel
Smyser Kaplan & Veselka,
L.L.P.
717 Texas Avenue, Suite
2800
Houston, Texas 77002-2761
O: 713.221.2319 | F:
713.221.2320

website | bio | linkedin | vCard |
map | email

</div>

*Top 10 U.S. Litigation Boutique*     *Litigation Department of the Year*
*2019 Benchmark Litigation*     *2018 Texas Lawyer*

This e-mail is confidential and/or privileged. If the reader is not the intended recipient, any review, dissemination or copying of any part of this e-mail is prohibited. If you received this e-mail in error, **please notify the sender by e-mail or at 713-221-2300** and then permanently delete this e-mail.

---

**From:** Matthew Laterza [mailto:mlaterza@altapowerdev.com]
**Sent:** Thursday, August 22, 2019 12:22 PM
**To:** Jacqueline Elson
**Cc:** Keller, Kelley
**Subject:** DB/SKV Introduction

Jackie,

Per our conversation, I'd like to introduce you to Kelley Keller at Smyser Kaplan & Veselka.

Kelley,

Jackie is in the counsel's office at Deutsche Bank and will be reviewing the potential litigation risk on the matter we've been working with you on.

Can you please send Jackie a copy of the C&D letter and our response?

Thanks,

Matt



2800 JPMorgan Chase Tower 600 Travis
Houston, Texas 77002-3095
Telephone: 713-226-1200
Fax: 713-223-3717
www.lockelord.com

David M. Gregory
Direct Telephone: 713-226-1344
Direct Fax: 713-229-2630
dgregory@lockelord.com

August 16, 2019

**BY FEDERAL EXPRESS AND**
**E-MAIL (mlaterza@alta.energy.com)**

Alta Power LLC
c/o Mr. Matthew E. Laterza
4605 Post Oak Place Dr., Suite 270
Houston, Texas 77027

**BY FEDERAL EXPRESS AND**
**E-MAIL (royhart@rocketmail.com)**

Mr. Roy J. Hart
116 Springs Edge
Montgomery, Texas 77356
royhart@rocketmail.com

**BY FEDERAL EXPRESS AND**
**E-MAIL (twest44@earthlink.net)**

Mr. Travis West
36499 Plantation Blvd
Prairieville, LA 70769

Re:     **Demand to Immediately Cease and Desist and Preserve Evidence**

Gentlemen:

This firm represents Castleman Power Development LLC ("Castleman"). Please direct all communications regarding this matter to me.

As you know, both Mr. Hart and Mr. West formerly provided consulting services to Castleman related to the development of electricity generating facilities and assets in the ERCOT region. As a result of those relationships, both were privy to, developed, and received confidential information and trade secrets belonging to Castleman. To protect such information, Mr. Hart and Mr. West were, and remain, subject to certain contractual obligations of confidentiality, non-solicitation, and/or non-competition to Castleman, in addition to their common law and statutory obligations not to use or disclose Castleman's confidential information and trade secrets.

81223266v.1

CONFIDENTIAL

Castleman understands that Alta Power LLC or one of its subsidiaries or affiliates (collectively "Alta"), with the assistance of Mr. Hart and Mr. West, is in the process of developing electricity generating facilities or assets in the ERCOT region, as well as contacting vendors and seeking financing related to such developments. As Alta is no doubt aware, Mr. Hart's involvement in such activities is a blatant violation of his continuing obligations to Castleman. Alta is facilitating those breaches and thus tortiously interfering with Castleman's contractual rights. Specifically, Mr. Hart is prohibited through, at the earliest, November 18, 2019, from becoming employed by or otherwise providing services (directly or indirectly) to any person or entity that is engaged in the business of developing, constructing, acquiring, owning, or operating electricity generating facilities or assets in the state of Texas. Mr. Hart is also prohibited through, at the earliest, June 15, 2020, from calling on, soliciting, recruiting, or interfering with any customer, client, supplier, vendor, employee, or contractor of Castleman, and from inducing any such person or entity to cease or terminate their relationship with Castleman.

Moreover, it appears that Alta, Mr. Hart, and Mr. West are utilizing Castleman's confidential information and trade secrets in your current activities and in support of Alta's development of those facilities or assets. In addition to violating the contractual confidentiality obligations owed to Castleman by Mr. Hart and Mr. West, this conduct violates the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act. Lastly, it appears that Mr. Hart, Mr. West, and Alta made, and may still be making, false and damaging statements regarding Castleman to third parties in an attempt to harm Castleman's business. This conduct has damaged Castleman and constitutes actionable defamation and tortious interference.

This letter is to place all of you on notice of Castleman's claims and intent to pursue those claims through litigation. To be clear, Castleman intends to pursue and protect its rights and use its available remedies to do so, including seeking an injunction, potential seizure under the DTSA, economic and punitive damages, and attorneys' fees. To the extent any assets or facilities are constructed utilizing Castleman's confidential information and trade secrets, Castleman will also seek a constructive trust on such assets or facilities and seek to gain rightful ownership over the fruits of, and any benefits received from, the misappropriation of Castleman's confidential information and trade secrets.

To the extent any of you are directly or indirectly engaged in any misappropriation and/or use of Castleman's confidential information and trade secrets, unfair competition, defamation, tortious interference, or any other conduct in derogation of Castleman's contractual, common law, or statutory rights, Castleman demands immediate cessation of any such activities. Without limitation, Mr. Hart must cease his participation with Alta in violation of his contractual obligations to Castleman. Castleman further demands that any of Castleman's information in any of your possession, custody, or control be returned and any electronic devices containing such information be turned over to Castleman for review and analysis by a digital forensic consultant. At minimum, Castleman demands that: (1) Mr. Hart and Mr. West turn over any devices or accounts they used to store or retain Castleman's information to this firm for review by Castleman's digital forensic consultant; (2) to the extent not already done, Mr. Hart and Mr. West return any other documents or information of Castleman, in any form, in their possession, custody, or control that they retained from their work with Castleman; (3) Alta review its systems to confirm that neither Mr. Hart nor Mr. West placed any of Castleman's information on Alta's systems or incorporated it into their work for Alta; (4) Alta inform Castleman of whether it discovers any Castleman information in its possession, custody, or control; and (5) if applicable, Alta certify in writing to Castleman that it either: (a) has not received or used, directly or indirectly, any

2

CONFIDENTIAL

Castleman information retained by Mr. Hart or Mr. West, or (b) has secured on its system any Castleman information from access. Given the importance of this matter, we request that you coordinate these efforts with us, so that we can ensure Castleman's confidential information and trade secrets are protected, and that appropriate remediation occurs where necessary.

Each of you is now on direct and specific notice of your evidence preservation obligations related to this matter. Do not destroy or alter any evidence (e.g., e-mails, text messages, direct messages, documents in hard copy or downloaded or saved onto your systems, invoices, plans, blue prints, specifications, phone call records, voicemails, or other communications) relating to: (1) any of the matters addressed in this letter; (2) Alta's recruitment and hiring or engagement of Mr. Hart and Mr. West; (3) Mr. Hart's and Mr. West's business activities on behalf of Castleman, including, without limitation, in the months preceding their departure from Castleman; (4) Mr. Hart's and Mr. West's business activities for Alta, including any work on developing or planning to develop electricity generating facilities or assets in the ERCOT region and any solicitation of Castleman's customers, clients, employees, contractors, suppliers, vendors, or financing sources on behalf of Alta; or (5) statements made by Alta, or anyone acting on its behalf, including, without limitation, Mr. Hart or Mr. West, to any customers, clients, employees, contractors, suppliers, vendors, or financing sources regarding Castleman or any of its management team, including Ryan Castleman and GP Manalac. Any destruction of evidence may be presumed to be evidence of intent to cover up wrongdoing and result in significant adverse legal consequences.

Castleman's investigation into this matter is ongoing and this letter does not waive or relinquish any of Castleman's rights.

Very Truly Yours,

David M. Gregory

cc: Jeff McPhaul (Firm)
Rufino Gaytán III (Firm)

81223266v.1

3

# S|K|V

SMYSER KAPLAN & VESELKA, L.L.P.

717 TEXAS AVENUE · SUITE 2800 · HOUSTON, TEXAS 77002-2761
TELEPHONE 713.221.2300 · WWW.SKV.COM

Direct Dial Number:
(713) 221-2323

Author's E-mail Address:
lkaplan@skv.com

August 21, 2019

*By email: dgregory@lockelord.com*
Mr. David M. Gregory
Locke Lord LLP
2800 JPMorgan Chase Tower
600 Travis
Houston, Texas 77002-3095

Re: Castleman Power Development LLC ("Castleman")

Dear David,

I am writing to follow up on our telephone conversation earlier this week regarding your August 16, 2019 letter to Alta Power LLC, Roy Hart, and Travis West and to respond to the accusations in your letter.

Messrs. Hart's and West's employment with Alta is not in breach of any existing and enforceable contracts. Prior to the expiration of his non-competition period with Castleman, Mr. West was engaged as a consultant with an entity unaffiliated with Alta Power, but with similar ownership as Alta, that was exploring projects in Louisiana and Ohio and researching battery storage technology. And, to the extent the term on Mr. Hart's non-competition agreement had not yet expired, his performance thereunder was nonetheless excused by Castleman's failure to make the second installment payment owed. If it is your client's contention that Mr. Hart is currently bound by the terms of an enforceable non-competition or non-solicitation agreement, please provide an executed copy of any such agreement and proof of consideration to us for review and consideration.

Regarding your client's concerns that Alta is "utilizing Castleman's confidential information and trade secrets," please be advised that Alta has not used, and has no intention of using, any alleged confidential information or trade secrets of Castleman for any purpose. Alta's projects utilize ideas, technologies, processes, and methods well-known within the industry, and to the extent applicable, licensed proprietary programs of third parties. Your client's principal has acknowledged that publicly. Presumably you were unaware that Mr. Hart and Mr. Laterza developed a gas-fired power plant using refurbished equipment in 2006, employing the same methodology. Castleman may not prevent him from using the knowledge and skills he developed long before his association with Castleman.

As you know, ideas and information within the public domain are not subject to protection as trade secrets or confidential information. An internet search reveals a host of

companies currently engaged in the development and operation of similar peaking power plants in Texas and the details of the technologies employed by the various companies. Notably, most use the same turbine model that Ryan Castleman publicly announced the intent to use at the Castleman facilities in Victoria, Texas—the LM6000. Although an owner may choose from a variety of vendors and contractors, nothing about the construction and operation of the plants is novel or new. Alta's facilities will utilize turbines being refurbished by the OEM, in contrast to Castleman's publicized approach. Further, Alta's facilities are being built by a different contractor on a turnkey basis. These facts preclude any credible assertion of misappropriation of trade secrets or confidential information. Again, if your client has specific concerns about Castleman information or technologies it believes to be confidential or trade secrets that have been taken or used by my clients, please advise the specific trade secrets and the specific support for your client's accusation that either Hart or West misappropriated such information.

Alta reiterates that it has not used any alleged confidential information or trade secrets of Castleman in developing its own projects. We hope the parties can resolve this issue without litigation. However, in the event your client pursues legal action, our clients will vigorously defend any action on the supposed non-competition agreements, including asserting the defenses of failure of consideration and the overbreadth of the alleged agreements, as well as the absence of any protectable information taken or used. As I requested in our telephone conversation, should your client intend to proceed with any action, or seek extraordinary relief, we request at least three hours' notice so we may present our views to the court at the same time.

It has also come to Alta's attention that Ryan Castleman recently threatened a key Alta supplier with retaliation for doing business with Alta. We understand that similar statements have also been made to governmental authorities to damage Alta's business. Alta currently has projects in the final, critical phases of development and financing. Any further interference without legal justification by Castleman could result in significant financial losses to Alta. We formally demand that your client cease any communications with third parties calculated to interfere with Alta's business relationships. Any interference with Alta's business relations will result in a significant counterclaim and third-party claim for tortious interference with business relationships—against your business client as well as any individuals responsible for such interference.

Finally, insofar as you have demanded that our clients preserve documents, we make the reciprocal request to your client and its principals and employees.

Mr. Gregory
August 21, 2019
3 | P a g e

    I want to repeat that we prefer to resolve any dispute quickly and efficiently, and we are willing to meet with your side anytime. I look forward to hearing from you soon and reviewing any information your client believes supports the positions taken in your August 16, 2019, correspondence.

Sincerely,

Lee L. Kaplan

LLK:ma
cc:    Jarod Steward (firm)
       Kelley Keller (firm)

Alta 0080293