```
 1              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
 2                      DALLAS DIVISION

 3

 4   IN RE:                 )   BK. NO:  21-31488-SGJ

 5                          )

 6   WATTSTOCK, LLC         )

 7        D E B T O R.      )

 8   _____

 9   WATTSTOCK v ALTA POWER )   ADV. NO:  21-3083

10

11

12

13              *   *   *   *   *   *   *   *   *   *

14                  TRANSCRIPT OF PROCEEDINGS

15              *   *   *   *   *   *   *   *   *   *

16

17

18

19

20       BE IT REMEMBERED, that on the 27th day of March, 2023,

21   before the HONORABLE STACEY G. JERNIGAN, United States

22   Bankruptcy Judge at Dallas, Texas, the above styled and

23   numbered cause came on for hearing, and the following

24   constitutes the transcript of such proceedings as hereinafter

25   set forth:
```

CINDY SUMNER, CSR (214) 802-7196

1                   P R O C E E D I N G S

2                   THE COURT:  We have some motions in WattStock.

3   WattStock is no longer a party, but the action is styled

4   WattStock versus Alta.  Adversary 21-3083.  We have, I guess

5   you'd say renewed motion to withdraw reference based on some

6   changed circumstances and then a motion for remand.

7        Let's start by getting lawyer appearances, please.

8                   MR. LeGRAND:  Good afternoon, Your Honor.

9   This is Andrew LeGrand, Gibson Dunn, on behalf of General

10  Electric, along with my partner Robert Kleiman from Gibson

11  Dunn.

12                  MR. KLEIMAN:  Good morning.

13                  THE COURT:  Okay.  Good afternoon.

14                  MR. KLEIMAN:  Good afternoon.

15                  MR. CANCIENNE:  Good afternoon, Your Honor.

16  Michael Cancienne, Jeb Golinkin, and Katherine Raunikar for

17  Alta Power.

18                  THE COURT:  Okay.  Good afternoon.

19       All right.  Well, it probably makes sense to hear

20  combined arguments instead of motion, response, reply,

21  motion, response, reply.  Any disagreement about that?

22                  MR. LeGRAND:  No, Your Honor.  I think that's

23  how we've structured it.

24                  MR. CANCIENNE:  Yeah, none from Alta Power.

25                  THE COURT:  Okay.  Well, as you filed the

1  first motion, Mr. LeGrand, I'll let you go first.

2            MR. LeGRAND:  Thank you, Your Honor.  And we

3  have a slide deck.  I brought printed copies, just in case we

4  have any issues with the tech.

5            THE COURT:  Okay.

6            MR. LeGRAND:  May I approach the --

7            THE COURT:  You may, uh-huh.

8            MR. LeGRAND:  Your Honor, may it please the

9  Court.

10            THE COURT:  Uh-huh.

11            MR. LeGRAND:  GE's motion to withdraw the

12  reference should be granted and Alta's motion to remand this

13  case to state court should be denied for three reasons.

14  First, the parties have litigated this case in federal court

15  under the federal rules for the last 16 months.  And any

16  change in forum at this stage from federal court to state

17  court would be incredibly disruptive and unnecessarily

18  expensive for the parties, and GE in particular.  Second, the

19  parties previously agreed and this Court and the District

20  Court ordered that the reference should be withdrawn when the

21  parties are ready for trial.  And, third, neither mandatory

22  nor equitable remand is warranted here.

23       Your Honor, I plan to cover sort of the relevant facts,

24  procedural history just to orient the Court about where the

25  parties stand.  And then I'll pass it over to my partner,

1  Mr. Kleiman, to handle the substantive arguments on the

2  motion to withdraw the reference --

3                 THE COURT:  Okay.

4                 MR. LeGRAND:  -- and the remand motion.

5        To start, if this is working -- it's not.  To start,

6  this case began when WattStock sued Alta in state court on

7  June 16th, 2020.  GE wasn't a party to this case until Alta

8  filed its third-party petition on February 24th, 2021.  About

9  six months after Alta filed it's third-party petition, that's

10 in August of 2021, WattStock filed for bankruptcy triggering

11 an automatic stay.  And the case was dormant for three months

12 until WattStock removed this case on November 9th, 2021.

13       During this three months of inactivity, Alta never

14 sought to lift the stay.  And after the case was removed,

15 Alta never sought a remand either of the whole case or of the

16 claims that it was asserting against GE.  Instead, on

17 December 13th Alta filed the motion to withdraw the reference

18 that Your Honor referenced earlier today to send this entire

19 case to federal district court.  Alta also argued that at

20 minimum, the dispute between Alta and GE should be sent to

21 federal court.  The reference should be drawn for that part

22 of the case.  And GE, for its part, agreed that the entire

23 case should be sent to the district court.  But WattStock

24 originally opposed the requested relief.

25       At the hearing on the motion to withdraw the reference,

1  WattStock indicated they no longer opposed and the Court

2  subsequently issued a report and recommendation to the

3  District Court to accept the case when the case is certified

4  as ready for trial.  The District Court accepted Your Honor's

5  report and recommendation on March 22nd, 2022.  And it

6  referred all pre-trial matters to this Court because of

7  concerns about efficiency and uniformity, considerations

8  related to the administration of the bankruptcy estate, which

9  obviously stemmed from the fact that WattStock was a party to

10  the case, both asserting claims against Alta and subject to

11  any liability on Alta's claims against WattStock.

12       Since then the parties have litigated this case in

13  federal court under federal rules for the last 16 months.

14  And, for example, GE wasn't a party, as I mentioned, to the

15  case in state court until later on after the case was

16  originally filed.  And it wasn't a party when WattStock and

17  Alta negotiated the stipulated protective order to protect

18  confidential information in that case.

19       After removal, one of the first things that we did, in

20  addition to negotiating a schedule, we agreed to a stipulated

21  protective order that was modeled on the Federal Court's,

22  this Court's protective order, which provides AEO

23  protections, et cetera.  So all of the documents that GE has

24  produced and some third parties, as I'll get to in a second,

25  have produced are all subject to that stipulated protective

1  order that provides certain protections to those documents

2  and the confidentiality within them.

3       The federal rules have also applied to the discovery

4  efforts that we've undertaken, including the initial

5  disclosures that were filed, the written discovery requests

6  and responses, and the depositions that have already been

7  conducted.  We've also been operating under this agreed

8  schedule which the parties have admittedly had to modify a

9  couple of times.  The operative scheduling order sets an

10 August 2023 trial readiness date.  And although we haven't

11 filed a joint motion yet, we have, I think, agreed in

12 principle to a new schedule that aligns with Your Honor's

13 instructions from the last hearing to set a trial readiness

14 date of October 2023.

15      On January 20th, as Your Honor mentioned, Alta and

16 WattStock filed their joint motion to dismiss each other from

17 the case, or the claims against each other from the case.

18 And the Court granted the motion on January 31st of this

19 year.  And the next day after we conferred both GE filed its

20 motion to withdraw the reference and Alta filed its motion to

21 remand.  And we agreed that the hearing on both motions could

22 be -- could be at the same time.

23      From our perspective, Your Honor, the reference should

24 be withdrawn immediately or accelerated, I guess is maybe the

25 technical posture that we're in here, but I'll defer to my

1  colleague, Mr. Kleiman, because the District Court said

2  already that it's going to take this case.  And Alta wants to

3  now reverse course and send the case to state court.  But we

4  don't quite understand why.  It's not like the State Court is

5  more familiar with the dispute between GE and Alta than the

6  Federal Courts are, because we've been litigating this case

7  in federal court, again, under the federal rules for the last

8  16 months.  And it's not like a remand to state court would

9  somehow be more efficient or speed up the schedule to get to

10  trial.  Because at least as we are currently postured, we

11  have a trial readiness date, presumably, in October. Instead,

12  I think the remand will have the exact opposite affect.  That

13  is it will cause delay and cause unnecessary expense to both

14  GE and potentially to Alta, as well.

15      I think this is working now.  There it is.

16      I've already kind of covered, I think, the state court

17  litigation.  But just to kind of briefly hit it again, Your

18  Honor.  Just the key dates here are the February 24th, 2021

19  date in which GE was brought into the case.  And then the

20  August 17th date that WattStock filed for Chapter 11

21  bankruptcy.  In the interim, in that six month period, GE

22  essentially filed three, if you want to say three,

23  substantive pleadings in state court.  A Rule 91(a) motion,

24  which is a motion to dismiss.  A reply.  And then an answer.

25  And that was it.  Although Alta sent GE a third-party

1   subpoena before GE was involved in the case, WattStock

2   actually moved to quash that subpoena.  And so GE never had

3   to respond to that subpoena at all.

4       Now, in federal court we've made a lot of progress.

5   One of the things that Alta did while we were still in the

6   state court on May 7th, 2021 while GE's motion to dismiss was

7   pending, Alta served these requests for production of

8   documents.  GE timely served responses and objections.  And

9   the motion -- the Rule 91(a) motion was pending and was

10  ultimately denied.  As I mentioned, WattStock filed for

11  bankruptcy and the case went dormant.  But as soon as we got

12  to federal court and we negotiated a schedule, we negotiated

13  the protective order, as you can see here from our production

14  dates, a serial production of documents began.

15      We completed -- we were substantially complete with our

16  production of documents responsive to that first set of

17  discovery requests in August of 2022.  In October, Alta

18  served us a second set of requests for production of

19  documents and we substantially completed that production in

20  February of this year.

21      In total, in response to Alta's 89 requests for

22  production of documents, GE has produced over 8,300

23  documents.  And that's within the time period in which the

24  case was removed to federal court.  And, again, under the

25  stipulated protective order that the parties entered into

1   while here.

2       And admittedly, Alta has made substantial progress on

3   discovery, as well.  But there are a number of issues that

4   are still outstanding with respect to Alta's responses to

5   GE's request for production of documents and written

6   discovery requests.  For example, we've been conferring, I

7   think in good faith, about a request that Alta run certain

8   search terms and look for and produce documents related to,

9   for example, COVID-19 and its impact on its financing

10  applications, or financing requests.  We've asked them to

11  produce documents related to their recent entry into the

12  solar power market.  And we've asked them to produce

13  documents related to their CEO, Mr. Phelps, and any plans for

14  projects related to the project at issue in this litigation.

15      We've been conferring for quite a long time about these

16  issues.  And I think we've made substantial progress, but we

17  do have some ways to go.  And I think, again, this is all

18  subject to the federal rules.  We've served these RFPs under

19  the federal rules in this court.  And I'm not saying that

20  they would do it, but it certainly is plausible that when we

21  get to the state court, we might get an order that we have to

22  start over and send new requests and have new conferrals.

23      And finally, Your Honor, this Court -- we filed a

24  motion to compel with respect to certain documents that Alta

25  had not produced that were in the possession, custody,

1   control of its outside counsel.  This Court granted that

2   motion in November of 2022.  And we're still waiting for, I

3   think a small piece, not a large piece, but a small piece of

4   production of documents related to that order.  So there's

5   still some things outstanding.  I'm not going to say that

6   we're completely done.  But we've made substantial progress,

7   both GE and Alta, I believe.

8         Now, on -- with respect to -- to the request for

9   production of documents.  One thing I should flag, Your

10  Honor, is that one of the things that has, I believe, slowed

11  the process down a little bit is that we've received a lot of

12  responses and objections to our requests that have this

13  subject to and notwithstanding the foregoing language that,

14  you know, look, that might be totally permissible or at least

15  fair play in state court, but this jurisdiction has made

16  abundantly clear those types of objections are just not

17  appropriate.  And so we've had to confer a little bit about

18  that.  And, honestly, worried about how that will impact the

19  outstanding discovery if we get remanded to state court.

20        With respect to depositions.  There have been, I guess,

21  six fact depositions in this case since the remand -- excuse

22  me, since the removal.  One deposition of a WattStock witness

23  before the case was removed.  All but two GE fact witnesses

24  have been deposed.  We've -- GE has only had an opportunity

25  to depose one Alta witness, in part because of some issues

 1   with respect to availability, dates being provided and then

 2   withdrawn, but also in part because of some of the discovery

 3   disputes that I've mentioned it's kind of taken some time for

 4   us to work through.  But Alta's counsel sent us an email

 5   about two hours ago offering dates for their witness.  So

 6   hopefully we'll be able to depose their folks fairly --

 7   fairly soon.

 8        These are the remaining fact witness' depositions that

 9   I mentioned, all of the Alta folks and then former employee,

10   Lance Harrington, which I understand Alta's position is he's

11   a key witness in this case.  He's not a current employee of

12   GE.  And we're working with a schedule to make sure that we

13   put him up in short order.  And the corporate representative

14   deposition.  On the corporate representative deposition, I

15   know this -- I think this is an issue at the last hearing

16   that we served objections and we asked for a meet and confer.

17   That was in October of last year.  We -- I guess we received

18   an email in February suggesting that they were going to amend

19   their 30(b)(6) notice.  And we asked to see it.  And we can

20   meet and confer after we serve our objections.

21        I don't -- I just want to be clear that the process

22   that we followed is consistent with practice in this

23   jurisdiction.  That is, the Northern District of Texas has

24   made abundantly clear the parties have an obligation to meet

25   and confer on a 30(b)(6) deposition for good reason, because

1   the topics and the testimony are binding on the corporation

2   or the entity that's testifying as a corporate

3   representative.

4        So that's the purpose of our objections.  That's why

5   we've asked for a meet and confer.  We haven't made any

6   progress since we've learned that they were going to send an

7   amended notice in February.  But, you know, our obligation, I

8   believe, is to confer in good faith and try to narrow the

9   topics, or at least provide sufficient notice for us to

10  prepare a witness to testify about those topics.

11       Finally, Your Honor -- maybe not finally, but close to

12  finally.  We've served a number of third-party subpoenas

13  under Rule 45.  And we did so because if Your Honor recalls,

14  one of the key issues, maybe the key issue in this case, at

15  least with respect to the damages being claimed, is that GE,

16  or WattStock, somehow breached -- or I guess WattStock

17  breached its obligation to keep its relationship with Alta

18  confidential, or breached its obligation to keep Alta's

19  impending financing from Deutsche Bank confidential by

20  disclosing that information to a competitor called Castleman

21  Power, LLC.

22       So obviously from our perspective, we want to know what

23  led to the denial of financing, because their theory of the

24  case is that this breach of confidentiality caused Deutsche

25  Bank and potentially other financial institutions to deny

1   their funding requests.  And so we've served, I think 19

2   third-party subpoenas after learning from the documents and

3   Mr. Laterza's testimony that they sought funding from about

4   80 or more lenders and investors and got no bites,

5   essentially.  And so we served these third parties to figure

6   out, okay, what was going on?  And what we've learned so far

7   is that there were some issues with, I think, issues with

8   Alta's business model, their business plan.  But some of

9   these subpoenas are still outstanding.  Documents, responses,

10  subpoenas haven't been complete.  The production hasn't been

11  completed.  And we intend to depose at least a couple of

12  these third parties all, again, under Rule 45.  Our subpoenas

13  were served under Rule 45.

14       Critically, Texas has not adopted the Uniform

15  Interstate Deposition & Discovery Act.  So what does that

16  mean for us, for the parties?  Well, theoretically, at least,

17  some of these third parties could say, well, if the case is

18  remanded, we're not in federal court any more.  So we don't

19  have an obligation to comply with your subpoena, and we're

20  not going to prepare and make someone available for a

21  deposition, unless you serve a subpoena consistent with the

22  state court rules that would apply because Texas, again,

23  isn't a member of the UIDDA.

24       I'm not saying that that will happen, but it certainly

25  is a cause for concern here, given that they key issue in the

1   case is, did they have financing lined up, and what happened,

2   what caused potentially the loss of financing?

3        As I mentioned, we do intend to depose some of these

4   third parties.  And Alta has indicated they intend to depose

5   some third parties, as well.  So this issue is not only going

6   to affect the subpoenas that were issued, but also the

7   depositions.

8        Finally, in state court, Your Honor, the litigation

9   between WattStock and Alta was under discovery plan level 2,

10  which places significant limitations on discovery as compared

11  to the federal rules.  This is kind of a summary chart, but

12  the real distinctions here are under level 2 in state court,

13  you get 50 hours total for depositions.  In federal court you

14  have ten depositions as the default rule, 7 hours each on the

15  record.  So there's a discrepancy between the number of hours

16  that the parties may take depositions for.  In state court

17  the rule is 6 hours per witness.  In federal court it's 7.

18  That may not seem like a lot, a big difference but, again,

19  the fact that Alta has deposed almost all of GE's fact

20  witnesses suggests that there is a little bit of an imbalance

21  there if we were to remand it back to state court and have to

22  take depositions.  And then, again, as I mentioned, there's

23  no Rule 45 equivalent in state court, because Texas has not

24  adopted the Uniform Interstate Deposition & Discovery Act.

25       Then finally, Your Honor, with respect to experts.

15

1   It's possible that the difference between Texas rules and

2   federal rules on experts could cause an issue.  We've been

3   operating under the assumption that the federal rules will

4   apply.  Both parties have disclosed -- maybe not disclosed,

5   as part of the protective order has disclosed that their

6   experts have obtained confidential information in the case.

7   So we both know that we have experts in this case.  And under

8   the federal rules it's pretty clear, you've got to have -- if

9   you have an expert, they have to have a report.  In state

10  court under the amendments, I think in 2021, it's now the

11  Court may order that the expert reduce his or her opinion to

12  tangible form or in writing.

13         I'll sum up here before I pass it over to Mr. Kleiman.

14  But as I mentioned earlier, the parties have essentially

15  worked out a new schedule consistent with Your Honor's

16  instruction to have this October trial readiness date.  And I

17  think -- I think we think that remand here would be

18  disruptive of the schedule.  It's not going to get us closer

19  to trial any sooner.  It's going to cause delays instead.

20  And as I mentioned, all of the discovery that's already taken

21  place would not be subject to the same rules, if we were

22  remanded because state court rules would apply.

23         So unless the Court has any questions about the

24  procedural history or the facts, how we got here, I will now

25  turn it over to Mr. Kleiman.

1          THE COURT:  Okay.  No questions.

2          MR. LeGRAND:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4      Mr. Kleiman.

5          MR. KLEIMAN:  Thank you, Your Honor.   For the

6  record, Robert Kleiman of Gibson Dunn on behalf of GE.

7      Your Honor, as Mr. LeGrand stated, following

8  WattStock's removal of this case to this court, Alta did not

9  move to remand the case back to state court.  Had every right

10 to.  Could have.  Made a conscious decision that it wanted to

11 stay in federal court and moved to withdraw the reference.

12     Six weeks after WattStock's notice of removal and

13 almost 15 1/2 months ago Alta chose district court as its

14 preferred venue and filed this motion to withdraw the

15 reference.  In connection with the motion to withdraw the

16 reference, Alta said, none of the claims invoke substantive

17 bankruptcy rights, we agreed.  And that the Bankruptcy Court

18 didn't have any particular specialized knowledge regarding

19 the claims.  And that the District Court was perfectly

20 capable of proceeding to hear these issues.  And GE agreed.

21 GE supported the relief and, you know, sought to have the

22 motion granted.

23     This Court agreed that the reference should be

24 withdrawn with the recommendation that all pre-trial matters

25 be handled by this Court and the actual trial be sent to the

1    District Court when it was trial ready.  The District Court

2    accepted this Court's recommendation and made room on its

3    calendar for the trial if and when it was ready, based on

4    this Court's actions.

5         So as we stand here today, the District Court, this

6    Court, Alta, and GE for the last 15 1/2 months have all

7    agreed that this matter should be withdrawn to the District

8    Court when the case is trial ready.  With the debtor's

9    dismissal from the case, the basis for referral to this Court

10   for pre-trial management no longer exists.  There's no longer

11   a basis to keep it in this court for judicial economy, to

12   work through the issues dealing with the bankruptcy matters.

13   And the Holland Factors, which were at issue previously in

14   the motion to withdraw the reference compelled that the

15   reference actually be accelerated -- the withdrawal of the

16   reference actually be accelerated.

17        The only change in this case from when the motion was

18   originally granted, besides the significant progress that

19   Mr. LeGrand identified, was that the debtor is no longer a

20   party.  So we think that the status quo should remain in

21   terms of being in the district court for trial.  The only

22   change is now that the debtor is not involved, the District

23   Court should take it now for judicial efficiency to make sure

24   that any motions that are ruled on, this Court doesn't have

25   to rule on and it can just be decided by the District Court,

1   which is going to be the Trial Court in the first instance.

2   The District Court obviously has the ability to control its

3   own docket and it's calendar.  And there's no temporal

4   limitation on the time in which all of the matter, pre-trial

5   and getting ready for trial, can be transferred over to the

6   District Court.

7         Now, Alta, just to reiterate, argued that the District

8   Court was well suited to hear all claims and legal issues.

9   And the matters present complex, non-bankruptcy claims and

10  legal issues with which District Courts are fully familiar

11  and can handle.  Now, Alta, to skip ahead, Alta asserts that

12  remand is required here, because the debtor is no longer a

13  party.  But that misses the mark.  Alta relies on Section

14  1334(c)(2), which applies only if an action based on state

15  law claims could not have been commenced in federal court

16  absent related-to jurisdiction.  But here we have an action

17  before this Court, before the District Court that could have

18  been commenced in federal court.  We have two diverse

19  parties.  Alta is a resident of Texas, GE is a citizen of

20  non-Texas jurisdictions, either Ohio or Delaware.  And the

21  amount in controversy is well above $75,000.

22        The 5th Circuit has ruled on these issues.  In GenOn,

23  for example, GenOn and various lessors -- GenMA, sorry, and

24  various lessors sued each other in New York State Court.  The

25  lessor suit included as defendants as corporate parents GenOn

1   and NFC.  After the lessor sued, GenOn and several

2   subsidiaries, but not GenMA, filed for bankruptcy in the

3   Southern District of Texas.  Certain providers of letters of

4   credit refused to honor draws, so they sued the lessors, the

5   Indenture Trustees, and GenMA in New York State Court.  GenMA

6   removed them to the Southern District of New York under 1452

7   and then GenMA moved to transfer them to the Southern

8   District of Texas for resolution before the Bankruptcy Judge

9   managing GenOn's reorganization.

10          NFC moved to remand to state court.  NFC argued that

11   under 1334(c)(2) a District Court with related-to bankruptcy

12   jurisdiction to abstain from hearing claims where the action

13   could not have been commenced in federal court and where

14   State Court could not have timely adjudicated those claims

15   should be remanded.  GenMA contested both points.  GenMA

16   stated that diversity jurisdiction would exist had the

17   removed claims -- now, remember, in the state court the

18   removed claims were only involving GenMA and the lessors, not

19   involving the debtor.  And those were diverse parties.  GenMA

20   argued that diversity jurisdiction would exist had the

21   removed claims started in federal court and that the

22   Bankruptcy Court could resolve it faster than State Court.

23          The 5th Circuit held that related-to jurisdiction

24   existed because of the impact the litigation would have on

25   the debtor.  But that was not the end of the issue.  The 5th

1   Circuit said diversity jurisdiction existed at the time the

2   Court considered the instant motion.  The Court recognized

3   that GenMA could not have initially removed claims to federal

4   court on any ground other than the related-to jurisdiction

5   because federal diversity of citizen jurisdiction depends on

6   the state of things at the time the action is brought.  But

7   when GenMA removed the NFC claims, which were non-debtor

8   claims, there were parties whose presence precluded diversity

9   jurisdiction.  So at the time for the motion to remand, the

10  facts had changed.  The only parties who were before the

11  Court were diverse.  And the contests involved tens of

12  millions of dollars.

13       Now, it's true, the Court recognized, that diversity

14  jurisdiction did not support removal of the claims at issue.

15  But that's not what Section 1334(c)(2) asks.  The statute

16  looks to whether the action regarding the claims before the

17  Federal District Court at the time could not have been

18  commenced in a federal district court absent bankruptcy

19  jurisdiction.  That's what we have here.  Now that WattStock

20  is out of the case and there's an issue of remand under

21  1334(c)(2), the issue is, is there a basis for jurisdiction

22  if this action that's before you had been commenced in state

23  court to actually have it brought in federal district court?

24  And the facts are that, yes, there's diversity jurisdiction

25  that would provide a basis for federal court jurisdiction

1   instead of just related-to jurisdiction.

2        Now, Alta ignored GenOn in its opening papers.  It

3   relied on -- I'm having a technical difficulty, Your Honor.

4   But wait.

5        And let me just go back to the statute itself, because

6   we've got to start with the statute.

7        1334(c)(2) requires Courts with bankruptcy jurisdiction

8   to abstain from hearing or remand, because the test is the

9   same, state law claims where four conditions are met.  And

10  all of these have to be met.  And the first one, an action

11  with respect to the state law claims could not have been

12  commenced in federal court absent bankruptcy jurisdiction.

13  Stated otherwise, remand is proper only if the action has no

14  independent basis of federal jurisdiction.  And there is

15  federal -- there is diversity jurisdiction here.

16       Now Alta's original argument was that remand is

17  appropriate because the parties involved could not have

18  removed the case from state court to federal court because

19  the one year statute to do so had passed.  So they're relying

20  on something other than 1334(c)(2) and the holding of the 5th

21  Circuit in GenOn for that argument.

22       But Alta and this case Mugica are wrong because they

23  erroneous conflate federal jurisdiction, meaning the ability

24  to render judgment in a case with removability, the ability

25  to transfer a case from state court to federal court.  Remand

1    under 1334(c)(2) has nothing to do with removal.  It deals

2    with the matters that are before the Court at the time that a

3    motion to remand is brought.  So Section 1334(c)(2) doesn't

4    mention removal or cross-reference Section 1446 one year

5    statute of limitation.

6         So here if we apply GenOn to our facts, it's true that

7    diversity jurisdiction didn't support the removal of the

8    claims at the time the matter was removed to bankruptcy

9    court.  When WattStock was involved, there was not diversity

10   of jurisdiction, diversity of the parties.  But the statute,

11   according to the 5th Circuit, says, we need to look at

12   whether an action, the action before the Court could have

13   been commenced in federal court.  And the answer here is,

14   yes.

15        Now, Alta made its original argument about the one year

16   statute in its opening papers.  And then when it was caught

17   or exposed that it hadn't dealt with GenOn came up with a

18   totally new argument in its reply.  And the new argument in

19   the reply is, the Court must abstain and remand the case

20   because diversity jurisdiction didn't exist when WattStock

21   removed this case to federal court.  That's not the test

22   under the 5th Circuit.  The test is, doesn't deal with the

23   time when WattStock removed the case.  Under the 5th Circuit

24   in GenOn, the test and the timing is, when we're here today

25   before you, could this action have been brought in federal

1    court under diversity or some other basis other than

2    related-to jurisdiction?  And the answer is, yes.

3        So as we put in our papers, you know, the time of

4    removal is irrelevant.  What matters are the claims before

5    the District Court.  And so the time for the Court to assess

6    the state of the case is today, not 15 or 16 months ago when

7    it was removed.

8        Now, discretionary remand is also unwarranted here.

9    First, as you've heard a number of times from Mr. LeGrand and

10   me in the last, last few minutes, Alta picked this court.

11   Alta decided when it had the opportunity to remand 15 months

12   ago, 16 months ago to move to withdraw the reference to have

13   the matters heard in front of the Federal District Court not

14   to remand to State Court.  And, in fact, in the alternate

15   they asked for the matters dealing with -- between Alta and

16   GE to be immediately removed to the federal district court,

17   in the event the Court didn't want to take the whole thing.

18   And GE relied on that.

19       As you've heard from Mr. LeGrand over the last 16

20   months, we've been operating under the federal rules and

21   there's a risk of significant prejudice if we're sent down to

22   the State Court which, frankly, knows nothing about this

23   case.  When GE was involved more than 18 months ago, there

24   were three non-material motions in terms of getting ready for

25   trial.  One was a motion to dismiss.  One was a reply.  And

1   one was another motion.  All of which were dispensed

2   summarily by the judge.

3        Second, Alta's identified no legitimate basis for

4   changing its stated preference for federal district court

5   compared to going to state court, particularly when GE -- and

6   they know GE has relied on that position over the last 15 1/2

7   or 16 months.  This case has been litigated with federal

8   rules in mind.  And the District Court has already said that

9   it's willing to take it when it's trial ready.  And we

10  believe, based on your recommendation, should take it on an

11  accelerated basis.

12       Finally, the only truly changed circumstance in this

13  case impacting the choice between district court and state

14  court is in light of the case's substantial progress under

15  the federal rules makes remand even less appropriate now.

16  The parties have expended substantial resources.  We're here.

17  We're ready to go.  And the District Court has already

18  identified that it has reserved, however the District Court

19  does it in its magical way, time for trial when it's trial

20  ready.

21       In the alternative Alta says, okay.  If we can't have

22  remand, let's send the case to district court for trial, but

23  Your Honor should continue to handle all pre-trial matters.

24  In the pantheon of alternatives, we believe the matter should

25  be transferred as a whole to district court.  But in lieu of

1   going to state court where we think there's no business going

2   back to state court, particularly given diversity and the

3   reliance on the federal rules, we would obviously accept

4   being in front of Your Honor, if you wanted to retain

5   jurisdiction over all pre-trial matters.  I understand you

6   have a busy calendar.  The debtor is no longer involved.

7           THE COURT:  Well, I don't think there's

8   bankruptcy subject matter jurisdiction any more.  There's

9   either federal diversity jurisdiction or there's no federal

10  jurisdiction here, right?

11          MR. KLEIMAN:  Now, we didn't -- we didn't see

12  this as the appropriate venue to end up.  But if Your Honor

13  felt otherwise, we would continue with the status quo, have

14  all pre-trial matters handled here, and then we go to the

15  district court for trial.  But GE firmly believes that the

16  right answer, particularly given the diversity jurisdiction

17  between the parties, the 5th Circuit holding in GenOn, and

18  the reliance that GE had on being in federal court, that you

19  make a recommendation to the District Court to accelerate the

20  withdraw of the reference and to take the case starting

21  immediately.

22          THE COURT:  And my question, maybe it seems

23  academic, or maybe it's not, but I determined there was

24  bankruptcy subject matter jurisdiction early on when

25  WattStock was still a party.

1             MR. KLEIMAN:  Uh-huh.

2             THE COURT:  Because it was asserting claims

3  and I think Alta even filed a proof of claim in the

4  bankruptcy case, so there were mutual claims.  And so there

5  conceivably could have an impact on the bankruptcy estate

6  being administered.  So it was mere related-to, non-core

7  bankruptcy subject matter jurisdiction, but there was

8  bankruptcy subject matter jurisdiction.  Now those claims,

9  those mutual claims, you know, WattStock's been dismissed and

10 Alta has released its claims.  You know, there's no impact on

11 a bankruptcy estate.  Now, I mean, I know somebody threw out

12 a case that suggests, well, you look at when it was filed, if

13 there was bankruptcy subject matter jurisdiction.  And it

14 almost suggests it can't go, poof.  There can't be lack of

15 that federal bankruptcy subject matter jurisdiction, if

16 circumstances change.

17     It may seem like I'm just thinking out loud here.  But

18 it feels like I don't have bankruptcy subject matter

19 jurisdiction.  And there's either diversity jurisdiction, in

20 which case I should, you know, send another report and

21 recommendation to Judge Starr, I shouldn't be doing anything.

22 I shouldn't be doing pre-trial motions.  Or if there isn't

23 federal diversity jurisdiction, it should go back to state

24 court.  Right?

25             MR. KLEIMAN:  So we're on the same page with

1  you, Your Honor.

2              THE COURT:  Okay.

3              MR. KLEIMAN:  I mean, we didn't argue in our

4  papers that you should keep the case.  Although, we'd be

5  delighted if you wanted to.  But we think it should go to

6  Judge Starr.  And it's not in dispute by either side that

7  there's diversity jurisdiction.

8              THE COURT:  It's not in dispute?

9              MR. KLEIMAN:  It is not in dispute --

10             THE COURT:  Okay.

11             MR. KLEIMAN:  -- that as of today that there's

12  diversity jurisdiction.  They didn't contest that in their

13  papers.  GE made the argument.  And, therefore --

14             THE COURT:  I thought they were contesting it

15  somehow, but we'll hear from them.

16             MR. KLEIMAN:  I think they were contesting

17  that at the time of removal --

18             THE COURT:  Okay.  Okay.

19             MR. KLEIMAN:  -- there wasn't diversity.  And

20  that, therefore, that poisoned the well --

21             THE COURT:  I got it.

22             MR. KLEIMAN:  -- in terms of diversity

23  jurisdiction going forward for purposes of remand.

24       The 5th Circuit has put a total kibosh on that

25  argument.  And if there is diversity jurisdiction, which is

1    undisputed as of today, we agree with you that it should be

2    sent to Judge Starr.

3              THE COURT:  Okay.  Thank you.

4              MR. KLEIMAN:  Thank you.

5              THE COURT:  All right.  Alta.

6              MR. CANCIENNE:  Good afternoon, may it please

7    the Court.

8              THE COURT:  Good afternoon.

9              MR. CANCIENNE:  Your Honor, I think I'm going

10   to start where they ended --

11             THE COURT:  Okay.

12             MR. CANCIENNE:  -- obviously on the

13   jurisdictional piece, because I do think it's important.

14       Their characterization of GenOn that this Court should

15   assess the parties' status now is inconsistent with what the

16   Texas -- I'm sorry, what the United States Supreme Court in

17   Grupo Dataflux, what Judge Gregg Costa, who is now a partner

18   at Gibson Dunn has said, and that is you determine at the

19   time of removal.  You determine -- and here's Judge Costa's

20   language.  It says, It has long been the case that

21   jurisdiction of the Court depends on the state of things at

22   the time of the action brought.  Okay.  The long-standing

23   rule promotes efficiency.  It would be wasteful if

24   post-filing changes and facts determining jurisdiction

25   required dismissal of a case.  That's Double Eagle Energy

1   Services versus Markwest Utica.  It's not in the briefs.

2   Frankly, was looking for some case law and came across Judge

3   Costa's opinion.

4        What they're trying to do is say GenOn crafted an

5   exception to that test.  That test that's been around since

6   1826, according to Grupo Dataflux, which is a United States

7   Supreme Court case.  They're saying that GenOn crafted an

8   exception that this case should assess when -- the status of

9   the parties now.  That's inconsistent what happened in GenOn.

10  And that's inconsistent with Clearwall.

11       The Court -- the Court's inquiry in this case is what

12  should we do under 1334(c)(2)?  Do I have to remand the case

13  under 1334(c)(2)?  And then the next inquiry is, should I

14  remand it under equitable principles?  This case is exactly

15  like Judge Isgur's case in In re Mugica.  But I want to kind

16  of slow down and take you through a couple of issues.

17       The Court is familiar with the facts.  This case

18  involves state law claims.  And -- and -- between two parties

19  who are right now the only two remaining parties in this case

20  who are certainly diverse.  Up until WattStock's dismissal,

21  that was not the case.  When this action was commenced and

22  when this action was removed, there is no basis for diversity

23  jurisdiction between the parties.  And that's the moment in

24  time where the inquiry matters for 1332 -- for 1334(c)(2),

25  that moment in time when the case is removed.  And that's

1  what GenOn says.  If GenOn said otherwise, it would be

2  crafting an exception to the long-standing rule that Judge

3  Costa opined on in 2019 to the long-standing rule that

4  Justice Scalia talked about in In re Group -- I'm sorry, in

5  Grupo Dataflux.  There is one exception that's been

6  recognized and that was in the Caterpillar case.   And other

7  than that the Court should not consider subsequent changes in

8  the pleadings with respect to jurisdiction.

9       What happened in In re -- in GenOn is because of the

10  bankruptcy removal statute, only diverse parties were

11  removed.  And so Judge Smith said at that moment, that action

12  when it was removed, there was full diversity.  And that's

13  what mattered, according to Judge Smith.  That -- because it

14  was part of a broader group.  The defendants in that case

15  said, wait a second.  In state court we had all of these

16  parties who destroyed diversity.  But when the case got to

17  federal court, at that point the case was completely diverse.

18  And Judge Smith said that point, because there's complete

19  diversity then on that action, the case can stay and the

20  1334(c)(2) test did not -- was not satisfied.

21       Under 1334(c)(2) there are essentially four or five,

22  depending on who's writing the opinion, four or five

23  requirements that must be met for mandatory remand.  The only

24  one that the parties really talk about in this case is the

25  question about whether an action has been commenced in state

1   court and the proceeding has no independent basis for federal

2   jurisdiction aside from 1334(b).  That's the only one that's

3   really at issue here.

4         They say, yeah, because we're diverse now, that

5   means -- I guess the ignore the commenced word.  I get --

6   that means because we're diverse now, you should not --

7   that's the timing of the test.  Well, that's not what GenOn

8   says.  The timing of the test, according to Judge Isgur in

9   the Southern District in In re Mugica, which is exactly on

10  point, they just say he got it wrong.  And if you read GenOn

11  closely, the timing of the test is when the case was removed,

12  because that's what GenOn looked at, what was the status of

13  the parties at removal.  Here the action that was removed, an

14  action could -- had no diversity because WattStock was still

15  in it.

16        There's no dispute here that that's the case.  We don't

17  allege that Alta Power and GE are not diverse.  That's

18  clearly the case.  We're just saying the Court cannot focus

19  on the now.  That's not what the statute requires.  The

20  statute uses commenced.  When an action is commenced, did an

21  independent basis for jurisdiction exist?

22              THE COURT:  Let me ask what may seem a

23  simple-minded question, but I'm going to ask it.

24        Let's say I agree with your position and I remand.

25  What's to stop GE from then removing based on federal

1  diversity jurisdiction?

2              MR. CANCIENNE:  Judge Isgur addressed that in

3  Mugica, and it's because it's been over one year.

4      If this were a case in which -- so they can't remove --

5              THE COURT:  Well, okay.  Over one year.  And

6  you're counting from when to when, they were added?

7              MR. CANCIENNE:  From when the case was filed.

8  Which the original case was filed in 2020 -- I believe it was

9  2020.

10             THE COURT:  I thought they were not added

11 until February 2021?

12             MR. CANCIENNE:  But it's 30 days or one  year

13 from when the matter starts.  Regardless, they'd be outside

14 of a year is why they could not remove it.

15     And to be clear, Your Honor, that is what should happen

16 in any event.  If we go back down and they try to remove to

17 1332 -- under 1332, we go directly to the district court.

18 We're no longer in bankruptcy court, correct.  And the

19 District Court can then determine whether remand is

20 appropriate because they're outside the one-year limitation.

21 And that's exactly what -- that's what Judge Isgur addressed.

22             THE COURT:  Okay.  I really would like to

23 understand the one year thing.

24             MR. CANCIENNE:  Sure.

25             THE COURT:  So let's -- let's make sure I

 1  understand.

 2                        MR. CANCIENNE:  Sure.  Under 1332 -- if I may

 3  pull it.

 4                        THE COURT:  Okay.

 5                        MR. CANCIENNE:  Let me get the language, if

 6  it's okay for Your Honor.

 7                        THE COURT:  Sure.

 8                        MR. CANCIENNE:  Under 1441, Your Honor.

 9       Yeah, 1446, Your Honor.  Thank you.  The case may not

10  be removed on the basis of 1332 jurisdiction more than one

11  year after the commencement of the action.  That's

12  1446(c)(1).  Okay.  So the commencement of the action

13  matters.

14       If this were a case in which all of this had happened

15  within a year --

16                        THE COURT:  But you -- you couldn't -- you

17  start from the commencement of the action, not the

18  commencement of when GE became a party?

19                        MR. CANCIENNE:  Yes.  Yes.  And often times

20  when defendants are -- that is -- that is a limitation on

21  removing diverse cases to federal court.

22       They have not argued that we could be sent back down

23  and then would come back up.  We'd be sent -- that's not

24  what -- everyone agrees if we get sent back down, that's

25  where we belong and that's where we're staying.  The issue

1  here is whether you have to do it under a 1334(c)(2) and then

2  whether you can do it under (c)(1).  And I think your opinion

3  in In re Senior Care Centers got it right.  You said, you got

4  to go back and the alternative all the factors which GE

5  ignores in this case and focuses primarily on.  We've been

6  here a while.  There may be some issues they take issue with

7  with respect to the fact that they may be more comfortable in

8  federal court than state court.  But there was nothing

9  addressing the 14 factors which they characterize as a jumble

10  of factors that this Court addressed in In re Senior Centers.

11  All of those factors are either neutral or support remand in

12  this case.  And that's under the permissive remand, not the

13  mandatory remand.

14       They gloss over those and focus on equity and how much

15  progress the parties have made.  And thankfully we haven't

16  sat on our hands and we've been litigating the case.

17  Everything that we've done in the federal court certainly can

18  be used in the state court.  We're not going back to the

19  state court to start over.  We're not going to go back and

20  say, well, that deposition we took in federal court doesn't

21  count.  That's not what -- that's not how it works on a

22  remand.  And certainly that's not what we are attempting to

23  do.

24       The question for this Court is, in my view, do I have

25  to do it, remand?  We think the answer is, yes.  We think

1   GenOn supports that.  That comes down to this commencement

2   issue.  That comes down to GE's attempt to gain more from

3   WattStock's dismissal than it otherwise would have had.  In

4   other words, but for WattStock's dismissal, they acknowledge

5   that there would be no diversity.  Judge Isgur said, you

6   can't do that.  That's not how it works under 1334(c)(2).

7          In instances in which the case itself, the action was

8   removed and there was no diversity, you can't rely on newly

9   created diversity.  And that's his language from his opinion,

10  newly created diversity as a basis for jurisdiction under

11  1334(c)(2).

12         One of the things I think that is -- is -- that we're

13  talking past each other, the parties are talking past each

14  other is, the test requires an analysis of jurisdiction.

15  This Court has jurisdiction of this case.  This is a

16  statutory issue of remand, okay, whether this Court has to

17  remand it under 1334(c)(2).

18              THE COURT:  So my thinking out loud earlier, I

19  don't think I have bankruptcy subject matter jurisdiction any

20  more.  You disagree?

21              MR. CANCIENNE:  I disagree, Your Honor.

22              THE COURT:  Okay.

23              MR. CANCIENNE:  And the reason for that is

24  because the jurisdictional test is determined at the time of

25  removal.  You can't do things -- parties can't -- that's what

1   Judge Costa said in his opinion in Double Eagle is, you're

2   not going to look at some subsequent paper and determine --

3   and determine that jurisdiction no longer exists.  If it's a

4   1331 claim, I'd say I have a bevy of federal claims and I

5   have one or two state law claims.  Well, if the bevy of

6   federal claims have gone bad and I've dismissed them all, I

7   couldn't walk into court and say, you have no jurisdiction

8   any longer.  And that's what the Courts -- the Courts don't

9   look -- don't allow parties to do that.  And that's

10  effectively what GE is trying to do is say, at this point

11  there's diversity, therefore, ah-ha, you've got -- you've got

12  jurisdiction.  And they do that based on reading cases that

13  say what matters is jurisdiction at the time of judgment.

14  But they're confusing the test under 1334(c)(2) with -- with

15  jurisdiction in the can the Court hear this case?  The Court

16  can hear this case.  This Court or the District Court.  I

17  mean, obviously you could hear it up until the moment that

18  you withdraw the reference and then it goes to the District

19  Court.

20       If WattStock were still here, or if there was a third

21  party here that destroyed diversity, say that we had added a

22  person who was a Texas resident and we could no longer -- but

23  we decided not to try to remand the case.  That action would

24  not be a nullity.  The action would be fine.  We couldn't

25  stand up in the Court of Appeals and say, no jurisdiction,

1   therefore, the whole thing was for a loss.  That's not what

2   the Court is determining.  The Court here is determining

3   whether under 1334(c)(2) it has to remand the case, and

4   whether under 1334(c)(1) it should it.  And the test under

5   1334(c)(2) that the parties are arguing about is this what

6   does it mean for an action to be commenced?  Because under

7   1334(c)(2) the status is could -- does the action -- an

8   action commenced -- could not have been commenced in the

9   United States District Court.  I think that's the language.

10      And so it's asking is there another basis for

11   jurisdiction for this case when it was commenced?  That's the

12   test, the commencement part.  And they're trying to say, what

13   matters is they want to thrust commencement the moment

14   WattStock was -- was dismissed.  And that's, frankly,

15   illogical.  It doesn't make any sense to read commenced as

16   meaning when WattStock was dismissed, but that's the only way

17   they can succeed.

18      Now, with respect to the one year and with respect to

19   the removal, that's addressed by Judge Isgur.  But the

20   reality is they know if within that one year and we went back

21   down, they probably could get back up under 1441 removal.

22   That's not an option to them, because the one year has

23   passed.  We go back down to state court, that's where we're

24   staying.  And I would argue that we have to go back down to

25   state court.  Their jurisdictional hook, this GenOn case,

1  doesn't support what they say it does.  It doesn't support

2  that at this moment we have an action that's commenced.  What

3  that case says is, when the case was removed, at that point

4  there was diversity jurisdiction between the parties.

5  Therefore, that basis for jurisdiction existed and the test

6  under 1334(c)(2) wasn't satisfied.  So the Court was not

7  required to abstain.  And that's how the issues have worked

8  out.

9       GenOn is not an exception to the general rule.  And

10  that, I think, is where the parties have a significant

11  disagreement with respect to how is that case going to be

12  applied.  GenOn, itself, focused on the time of removal.  It

13  didn't focus on the test GE is advocating.  GE is advocating

14  for an expansion of jurisdiction.  GE is advocating that the

15  test should not be when removal or at the time the action was

16  commenced at state court, if the parties are the same.

17  They're saying, look at the now.  Well, that's inconsistent

18  with the word, commenced.  And it's inconsistent with the

19  statute itself.

20       None of the cases they cite support the ruling that

21  they're asking for from the Court.  None of them support a

22  ruling from the Court that would allow this Court to stay

23  here.  None of the cases they cite support their

24  interpretation of 1334(c)(2).  None of the cases they cite,

25  be it the Bally's case out of the Northern District of

1   California, 16th Front Street, Grupo Dataflux, none of those

2   cases support interpretation of an action could not have been

3   commenced that they are pointing to to try to shoe horn this

4   Court into saying, oh, you have 1332 now, therefore, you had

5   it all along.  And as a result of that, you get to stay here.

6   That's not what -- that's not what any of the case law

7   touches on.

8        And finally I'll close with permissive remand.  This

9   Court understands that permissive remand is available to it.

10  And this Court knows the factors extremely well.  None of the

11  factors are present in the case here in the federal district

12  courts.  All of the factors are either neutral or they

13  support remand.  They gloss over that.  They focus on the

14  equity.  They say, let's just stay here.  We believe it's

15  equity.  We believe the Court's opinion should be quite

16  simple.  1332 -- 1334(c)(2) requires me to send this back.

17  And 1334(c)(1) allows me to do so because of the factors.

18  This part in Senior Care Centers talked about state court

19  claims being dominant, or I think the word the Court used

20  was, state law issues do not really predominate.  They

21  overwhelm.  And that is what in Senior Care Centers, that

22  tipped the balance to sending the case back to state court.

23       I'll talk briefly about the withdrawing the reference

24  issue, because I do think they confuse the issue there.  You

25  have jurisdiction.  That jurisdictional basis, although

1  WattStock is no longer a party, that jurisdictional basis

2  still exists.  This Court can and should handle the remaining

3  of the pre-trial proceedings consistent with the report and

4  recommendation this Court adopted -- this Court authored and

5  the District Court adopted.  There is no reason to send -- to

6  change horses right now on that, on that basis.  This Court

7  is very familiar with it.  I think we've sat in front of you

8  for about four or five hours now explaining the intricacies

9  of this case.  We still don't agree with a lot of them.  You

10  heard a motion to dismiss.

11       Curiously with respect to the state court judge versus

12  Judge Starr, it was very curious when they classified a Rule

13  91(a) motion to dismiss as non-substantive.  It was almost

14  the exact same motion that this Court rejected.  And I think

15  it's quite substantive.  And I think the judge in the Dallas

16  State Court did a good job of denying that motion as this

17  Court did.  For them to say that wasn't a substantive motion

18  is frankly inconsistent with reality and doesn't reflect the

19  work that all parties put in to arguing and briefing that

20  issue.  The state court judge certainly is more familiar with

21  this case than Judge Starr.  I believe you're more familiar

22  with it than both.  And I think that's pretty clear based on

23  how much progress we've made.  But our position is that

24  mandatory abstention under 1334(c)(2) requires this Court to

25  send the case down to state court.  And irrespective of the

1   Court's determination of 1334(c)(2), (c)(1) suggests that the

2   Court should do so, particularly in the interest of comity,

3   which the Court recognized at our last hearing in January.

4        If there are no further questions, I'll sit down.

5            THE COURT:  No questions.  Thank you.

6            MR. KLEIMAN:  Your Honor, may I be heard

7   briefly?

8            THE COURT:  All right.  GE gets the last word.

9            MR. KLEIMAN:  Thank you.

10       Your Honor, for the record, Robert Kleiman of Gibson

11  Dunn on behalf of GE.

12       Your Honor, it's pretty rare that this happens.  But

13  there must be two cases with different names that we've been

14  reading, GE and Alta.  Because Alta's counsel just got up and

15  said, once you have diversity when it's removed, you're

16  stuck, or no diversity can ever be cured, citing to Grupo

17  Dataflux and Caterpillar.  But I'm looking at Grupo Dataflux

18  and I'm quoting, Caterpillar broke no new ground, because the

19  jurisdictional defect it addressed had been cured --

20  jurisdictional defect meaning lack of diversity -- had been

21  cured by the dismissal of the party that had destroyed

22  diversity.  That method of curing a jurisdictional defect had

23  long been an exception to the time of filing rule.  But

24  Caterpillar involved an unremarkable application of this now

25  established exception.  Complete diversity had been lacking

1    at one point.  But by the time it came before the Court for

2    final adjudication, the diversity destroying defendant had

3    been out of the case.  So right now as we stand here today

4    before you to evaluate 1334(c)(2), there is complete

5    diversity.

6         In addition -- and we cited to that in footnote 6 of

7    our papers.

8         In addition, Alta's counsel is just misreading GenOn.

9    In GenOn the party opposing -- or seeking remand says that

10   the statute's commencement requirements address the action

11   filed in state court, not the embedded state law claims

12   related to the bankruptcy.  And because NFC's state court

13   action indisputable involved non-diverse parties, the

14   abstention factor was satisfied according to NFC.

15        In clear language with no ambiguity the 5th Circuit

16   said, NFC misreads the statute.  Just like Alta is misreading

17   the statute.  Read plainly, according to the 5th Circuit, the

18   statute asks whether an action, and I'm quote, an action, any

19   action with respect to NFC's state law claims against GenMA

20   could have been commenced in a federal court.  Because the

21   answer is, yes, abstention is not required.  The other cases

22   -- so where we stand right now, all the parties, this Court

23   and the District Court said the case should be sent to

24   federal district court when it's ready for trial.  Because

25   Alta made the decision to dismiss WattStock, we believe the

1  withdraw should be accelerated.

2        On the other hand, based on GenOn and Grupo Dataflux,

3  there is diversity jurisdiction here today.  It is this

4  action, it's the action between the parties that's before you

5  that needs to be considered in terms of mandatory remand.

6  And sending us back to state court is inequitable.  Will put

7  us behind.  We relied on the federal rules to give up -- that

8  all of our parties have been -- most of our parties have been

9  deposed.  We're going to be at a disadvantage going forward.

10  There's no reason for it.  Particularly since Alta at the

11  moment of removal had the right to seek remand and didn't.

12  And so based on that decision, their motion to withdraw, GE

13  relied on the federal rules, going to federal district court.

14  And we'd respectfully request that Your Honor make the report

15  and recommendation, as we've requested, to the district

16  court.  Deny remand.  And let us get on with the case in

17  federal court.

18              THE COURT:  Okay.  I'm just going to ask it

19  one more time.  If I were to remand, do you agree that you

20  could not file a new notice of removal based on diversity

21  jurisdiction?

22              MR. KLEIMAN:  So there's a lot of case law

23  against it, Your Honor.  I wouldn't say, never.

24              THE COURT:  Okay.

25              MR. KLEIMAN:  But, you know, there's case law

1   against it.  We would have no choice but to appeal the ruling

2   to District Court, so the District Court would evaluate it.

3   Because we think it would be a material prejudice and

4   misreading of the statute.  So the whole issue, instead of

5   before it got to state court, would be appealed.  But we

6   don't think we should get to that point, Your Honor.  There's

7   too much prejudice, too much riding on it.  And, in fact, the

8   shift is now forum shopping by Alta now that they had the

9   opportunity to be in state court 16 months ago.   They chose

10  to be in federal district court.

11              THE COURT:  Well, I mean, this is a head

12  scratcher for a lot of reasons.  What do you think the Court

13  would have done way back when when they had filed a proof of

14  claim to protect their interest and WattStock, the debtor,

15  was a plaintiff?  You know, that would have been a hard sale

16  remanding.

17              MR. KLEIMAN:  It would have been.  But they

18  could have said, we want to remand.  And in the alternative,

19  we'll withdraw the reference.  They never even raised it.

20  They never raised their hand.  And now that all of the

21  parties have relied on that decision and endorsed that

22  decision, now they want to switch horses and unnecessarily

23  put us on our back foot when the District Court has said the

24  District Court will already take it for trial.

25              THE COURT:  Okay.  All right.  Thank you.

1                    MR. KLEIMAN:  Thank you, Your Honor.

2                    THE COURT:  Well, I feel the need to go back

3    and read these various cases.  The Judge Costa opinion, I

4    think you said it was not cited in the briefing, so can you

5    give me that one?

6                    MR. CANCIENNE:  Yes, Your Honor.

7         Would you like this -- we actually have a lot of the

8    cases here.

9                    THE COURT:  I'd love to get a copy, as long as

10   they see what you're handing me.

11                   MR. CANCIENNE:  Sure, sure, sure.  I've got In

12   re John, which I think is critical, we all agree.

13                   THE COURT:  Right.

14                   MR. CANCIENNE:  I've got In re Senior Care,

15   which the Court's aware of.

16                   THE COURT:  You don't need to hand me that

17   one.

18                   MR. CANCIENNE:  You don't need that one.

19        And then we've got --

20                   THE COURT:  There was a Judge Isgur opinion.

21                   MR. CANCIENNE:  Judge Isgur's opinion is

22   Mugica, which I'll -- I will note is 362 B.R.782.

23                   THE COURT:  Okay.

24                   MR. CANCIENNE:  And then Judge Costa's opinion

25   is Double Eagle Energy Services, LLC versus Markwest Utica,

1   936 F.3d 260, 936 F.3d 260.

2              THE COURT:  Okay.

3              MALE SPEAKER:  Not important enough to have a

4   copy.

5              MR. CANCIENNE:  I'm sorry, I was a bit

6   unorganized this morning.  I'm sure you guys have -- you can

7   go down the hall to Judge Costa --

8              MALE SPEAKER:  I'm just kidding.  I'm just

9   kidding.

10             MR. CANCIENNE:  That would be fine, you know.

11             MALE SPEAKER:  Well, he's in Houston.

12             MR. CANCIENNE:  He is in Houston.

13             MALE SPEAKER:  Not down the hall.

14             THE COURT:  Okay.

15             MR. LeGRAND:  Your Honor, if I could just make

16   one quick point.  I just want to raise it so that we don't

17   get accused of waiving it.

18        I do think there is an exception to the one year bar to

19   removal.  I'm not saying that it would apply.  But it is

20   certainly something that we would be able to explore because

21   the dismissal of WattStock came, my understanding, after no

22   discovery had been taken by Alta of WattStock since the

23   removal.  So I just want to make sure it's clear.  I think

24   Mr. Cancienne said that everyone agrees that if we got to

25   state court we'd stay in state court.  I don't think that's

1   our position at all.

2                    THE COURT:  Okay.  All right.

3          Well, did you have copies to hand --

4                    MALE SPEAKER:  I just have GenOn.  I don't

5   have the other ones, unfortunately.

6                    THE COURT:  That's okay.  I've got the cites.

7          All right.  I will get you all a decision before the

8   end of the week.

9                    MR. CANCIENNE:  Thank you, Your Honor.

10                   MR. LeGRAND:  Thank you very much, Your Honor.

11                   THE COURT:  Thank you.

12                        (End of Proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2              I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14                          /s/Cindy Sumner

15                          _____

16                          CINDY SUMNER, CSR #5832
                            Expires 10-31-2024
17                          Cindy Sumner, CSR
                            5001 Vineyard Lane
18                          McKinney, Texas 75070
                            214 802-7196
19

20

21

22

23

24

25